**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE    DISCOVERY,    LLC,    a
California limited liability company, and
STEVEN A. CERASALE, individually,

      Defendants.

---

**DEFENDANTS' VERIFIED RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

      Defendants, Unisource Discovery, LLC ("Unisource") and Steven A. Cerasale

("Mr. Cerasale"), by and through their undersigned counsel, file their Response in Opposition to

Plaintiff, Unisource Discovery, Inc.'s Motion for Preliminary Injunction (DE 18)

## INTRODUCTION

This lawsuit is a retaliatory (and baseless) strike by Plaintiff, Unisource Discovery, Inc. and arises from the business falling out of Mr. Cerasale and Noel Mijares—the Director primarily in charge of operating the day-to-day business of Unisource Discovery, Inc.

For more than twenty years, Unisource and Mr. Cerasale have been using the name "Unisource Discovery" as well as the subject distinctive mark. It was Mr. Cerasale and Unisource who allowed Plaintiff, Unisource Discovery, Inc., to use the mark and the name "Unisource Discovery" on a limited basis in Florida beginning in June 2006.

Things went well for several years. However, Unisource Discovery, Inc. began falling behind on its obligations to Mr. Cerasale and Unisource and further refused to pay dividends owed to Mr. Cerasale (who first owned 50% of Unisource-Florida's shares and now owns 40%). When Mr. Cerasale dared to request financial information from Unisource Discovery, Inc., Unisource Discovery, Inc. refused to produce the requested documents and filed this baseless lawsuit claiming trademark "infringement."

For the reasons set forth below, Plaintiff, Unisource Discovery, Inc.'s claims are meritless, and its Motion for Preliminary Injunction should be denied.

## BACKGROUND

*A.*      *Unisource Discovery, LLC – The Original "Unisource" since May 2001*

1.      On May 11, 2001, Mr. Cerasale organized Unisource in California. *See* Unisource Articles of Organization (Exhibit "1" hereto) at p. 1.

2.      In late 2001, Mr. Cerasale and Unisource created the following mark (the "Mark"):



3.	Also in late 2001, Mr. Cerasale and Unisource registered the domain www.unisourcediscovery.com and published the Mark on its website. *See* January 11, 2002 Print-Out of Website (Exhibit "2" hereto).

4.	Mr. Cerasale and Unisource were (and continue to be) in the business of providing state-of-the-art document retrieval and management services to their customers nationwide.

5.	For more than twenty years (i.e., since its inception in 2001 through to the present), Mr. Cerasale and Unisource have been using the Mark on its website, in its marketing materials, and throughout its business activities.

**B.	*Mr. Cerasale and Noel Mijares***

6.	Since about 2004, Noel Mijares has operated a subpoena processing company in Florida under the name of The Subpoena Summons & Affidavit Company (the "Subpoena Company").

7.	Noel Mijares's Subpoena Company projected itself as "specializ[ing] in reducing the costs of litigation associated with the service of process for the insurance industry, national law firms, litigation defense, health care associations and private firms in the State of Florida." *See* The Subpoena Company Website in March 2004 (Exhibit "3" hereto).

8.	Around early 2006, Noel Mijares represented to Mr. Cerasale that the Subpoena Company had a platform in Florida that could be used to establish a presence for Unisource in the Florida market.

9.	Mr. Cerasale and Noel Mijares agreed to attempt to leverage the Florida platform of the Subpoena Company to established a Florida presence for Unisource.

10.	In or around June 2006, Mr. Cerasale partnered with Noel Mijares to jointly operate a Florida branch of Unisource.

**C.      *Unisource Discovery, Inc. – The Florida Branch of "Unisource" since June 2006***

11.      On June 15, 2006, Mr. Cerasale and Noel Mijares incorporated Unisource Discovery, Inc. ("Unisource-Florida"). *See* Articles of Incorporation (Exhibit "4" hereto).

12.      The purpose of Unisource-Florida was to manage Unisource's customers in Florida and generate new business in Florida for the "Unisource Discovery" brand.

13.      Initially, Mr. Cerasale owned 50% of Unisource-Florida's outstanding shares of stock; Noel Mijares owned 25%; and Lisa Cote owned 25%. *See* Unisource-Florida's Operating Agreement (Exhibit "5" hereto) at p. 3.

14.      Mr. Cerasale and Noel Mijares agreed that Unisource-Florida would "have the exclusive rights to utilize the Florida Platform of 'The Subpoena Company' to establish a presence in the region [i.e., South Florida]." *See* Unisource-Florida's Operating Agreement (Exhibit 5 hereto) at p. 4.

15.      Because Mr. Cerasale and Noel Mijares intended that Unisource-Florida serve as a "Florida branch" of Unisource (which served nationwide customers), and because the interests of Unisource and Unisource-Florida were aligned, Mr. Cerasale and Noel Mijares agreed that Unisource (i.e., "the project which has brought them together") was "of significant value, market share potential and constitutes a national presence for all parties involved." *Id.* at p. 5. "Therefore," Mr. Cerasale and Noel Mijares agreed as follows:

> it is understood that the Directors [i.e., Mr. Cerasale and Noel Mijares] shall work together in good faith and spirit, to expand the services and obtain greater market share in the Records Retrieval business, by not competing against each other, but rather constitute a working relationship between … their respective outside business ventures [i.e., Unisource], and to collaborate in any foreseeable future ventures ….

Unisource-Florida's Operating Agreement (Exhibit 5 hereto) at p. 5.

16.    Additionally, because Mr. Cerasale was (and would continue to be) operating Unisource, Mr. Cerasale and Noel Mijares further agreed that "in the case that Steven Cerasale is no longer a Director, Officer or Agent of [Unisource-Florida], at that time the Board of Directors shall modify the current name of the Company 'UNISOURCE DISCOVERY' to be different in name only." *Id.*

17.    Mr. Cerasale, Unisource, Noel Mijares, and Unisource-Florida all agreed and understood that Unisource and Mr. Cerasale would continue to own, control, and use the Mark without restriction.

18.    The agreement and understanding struck between Mr. Cerasale and Noel Mijares was clear: Mr. Cerasale was to keep his ownership over the name "Unisource Discovery" and if he ceases to be associated with Unisource-Florida, then Unisource-Florida "shall modify the current name … to be different in name only." *Id.*

19.    In other words, Mr. Cerasale indisputably did not sell his rights to the name "Unisource Discovery" or to the Mark in exchange for his 50% ownership interest in Unisource-Florida.

20.    Mr. Cerasale and Noel Mijares agreed that Unisource-Florida would use for its business the same website and domain as Unisource (i.e., [www.unisourcediscovery.com](www.unisourcediscovery.com)) provided that Unisource-Florida pay its share of the costs associated with the website.

21.    Mr. Cerasale and Noel Mijares also agreed that Unisource-Florida would have a limited license to use the Mark and the name "Unisource Discovery" for its business, but that license would expire upon Mr. Cerasale's resignation or other disassociation from Unisource-Florida. *See* Unisource-Florida's Operating Agreement (Exhibit 5 hereto) at p. 5.

22.     Noel Mijares was the Director primarily in charge of the day-to-day operations of Unisource-Florida.

**D.     *Unisource-Florida's fraudulent registration of the Mark with the USPTO in 2008***

23.     On October 15, 2008, Unisource-Florida (through Noel Mijares) filed a registration with the U.S. Patent and Trademark Office (the "USPTO") to register the Mark. *See* Trademark Registration (Exhibit "6" hereto).

24.     Unisource-Florida's Trademark registration included the following material misrepresentations:

a.     The registration claimed that Unisource-Florida was the "owner" of the Mark when, in reality, Unisource was the owner.

b.     The registration claimed that Unisource-Florida first used the Mark "as early as March 1, 2001" when, in reality, Unisource-Florida did not use the Mark until after it was incorporated in June 2006. *See* Unisource-Florida's Responses to Request for Admissions (Exhibit "8" hereto) at ¶¶ 1–2 ("Admitted that Unisource[–Florida] did not use the Mark until … June 15, 2006 ….").

c.     The registration falsely declared that Unisource-Florida was the "owner" of the Mark and "no other person, firm, corporation, or association has the right to use the [M]ark in commerce" knowing full well that Unisource and Mr. Cerasale were the owners of the Mark, had been using the Mark since 2001, and had every right to continue using the Mark.

25.     Unisource-Florida went on to renew its trademark application for the Mark under Section 8 and 9.

26.     Unisource-Florida, however, never submitted a declaration of incontestability under Section 15, nor would any such declaration be warranted or allowed. *See* Trademark Status (Exhibit "7" hereto).

27.     Unisource-Florida, therefore, never obtained a certification of incontestability from the USPTO and, under the circumstances, is not entitled to any such certification.

**E.      *Unisource-Florida's Close Corporation Shareholder Agreement in June 2010***

28.     On June 28, 2010, Mr. Cerasale and Noel Mijares (along with prior shareholder Lisa Cote and new shareholder Alfred Lutter) signed a Close Corporation Shareholder Agreement (Exhibit "9" hereto).

29.     Again, because Unisource-Florida acknowledged and understood that Unisource and Mr. Cerasale operated (and would continue to operate) Unisource, the Shareholder Agreement provided that "presently existing businesses operated by the Directors [i.e., Mr. Cerasale and Noel Mijares] are complementary to the business of [Unisource-Florida], and it is anticipated that working relationships, cross referrals, another collaborative activities may be conducted between the Company and such other businesses." Shareholder Agreement (Exhibit 9 hereto) at p. 2.

30.     As to the trademark, the Shareholder Agreement acknowledged that Unisource-Florida registered the trademark. *Id*.

31.     However, Unisource-Florida acknowledged that the Mark nonetheless continued to belong to Unisource and Mr. Cerasale by providing that "the parties agree that [Unisource-Florida] shall be entitled to use the trademark 'Unisource Discovery,' as part of its corporate name … or as a fictitious name, or otherwise." *Id*.

32.     In other words, although Unisource-Florida did not ***own*** the "Unisource Discovery" name or the Mark, Unisource-Florida would be allowed to continue to use that name and Mark.

6

33.     It was agreed and understood, however, that Unisource and Mr. Cerasale still owned the Mark and could use the Mark without restriction.

34.     Unisource-Florida further restated that it "shall have exclusive rights to utilize the Florida Platform of 'The Subpoena Company' to establish a presence in the region [i.e., in Florida]," while Unisource and Mr. Cerasale would continue to serve customers nationwide. *Id*.

35.     Unbeknownst to Mr. Cerasale, on August 16, 2016, Noel Mijares (through the Subpoena Company) also attempted to register the following mark for the Subpoena Company that purposefully mimicked Unisource's design for the Mark:



*See* The Subpoena Company Trademark Registration (Exhibit "10" hereto). Noel Mijares, however, ultimately abandoned the trademark registration for the Subpoena Company.

36.     Noel Mijares otherwise continued to be the Director primarily in charge of operating the day-to-day business of Unisource-Florida.

37.     Unisource-Florida never exercised any supervision or control over the activities of Unisource or Mr. Cerasale with respect to the Mark or the trademark, nor did Unisource-Florida ever have the right or authority to exercise such supervision or control.

38.     Moreover, Unisource-Florida never controlled the products, marketing, services, or any other aspect of Unisource or Mr. Cerasale. It was agreed and understood that Unisource and Mr. Cerasale could use the Mark and trademark as they deemed fit without any interference, control, supervision, or say from Unisource-Florida.

**F.     *The falling out between Mr. Cerasale and Noel Mijares***

39.     In or around September 2018, Mr. Cerasale and Alfred Lutter (the new shareholder of Unisource-Florida) became concerned about the financial condition of Unisource-Florida in

7

light of several unpaid invoices to third parties and the fact that Unisource-Florida had not provided Mr. Cerasale or Alfred Lutter with any financial statements as required under the Shareholder Agreement and Florida Statutes.

40.     On September 28, 2018, Mr. Cerasale and Alfred Lutter delivered a request for corporate books and records under Florida Statutes § 607.1602 and § 607.1603 to Unisource-Florida. *See* September 28, 2018 Request (Exhibit "11" hereto).

41.     Unisource-Florida ignored the request.

42.     Because Unisource-Florida ignored the request, Mr. Cerasale and Alfred Lutter filed a lawsuit on October 24, 2018 under Florida Statutes § 607.1604 against Unisource-Florida to compel inspection of the requested books and records. *See* Complaint under Section 607.1604 (Exhibit "12" hereto).

43.     In their Complaint, Mr. Cerasale and Alfred Lutter explained that "[a]ccess to and production of the Corporate Records is necessary to evaluate the financial condition and management of Unisource[–Florida] and determine why neither Mr. Cerasale nor Mr. Lutter have received any dividend distributions in accordance with Unisource's Shareholder Agreement." *Id*. at ¶ 21.

44.     Unisource-Florida (through Noel Mijares) then decided to retaliate.

45.     First, Noel Mijares had Unisource-Florida stop payments to third-party vendors and Unisource-Florida creditors for loans guaranteed by Mr. Cerasale.

46.     Second, in or around September 2019, Noel Mijares demanded that changes be made to Unisource's website (i.e., [www.unisourcediscovery.com](www.unisourcediscovery.com)) to benefit Unisource-Florida while simultaneously refusing to have Unisource-Florida pay for any of the costs associated with the demanded changes.

8

47.     Because Unisource-Florida had not paid for any of the costs associated with the website for years, Mr. Cerasale and Noel Mijares agreed that Unisource-Florida would register a new website dedicated to Unisource-Florida.

48.     On September 16, 2019, Unisource-Florida registered the new website and domain (i.e., www.unisourcediscovery.net). *See* September 16, 2019 Email from Noel Mijares (Exhibit "13" hereto) at p. 1 ("here is our new website for Unisource Discovery, Inc. https://unisourcediscovery.net").

49.     Third, Unisource-Florida (through Noel Mijares) attempted to dismiss Mr. Cerasale and Alfred Lutter's state court Complaint and avoid producing the financial information they requested in their capacity as shareholders.

50.     On March 17, 2020, the Florida Circuit Court Judge denied Unisource-Florida's Motion to Dismiss and instructed Mr. Cerasale's undersigned counsel to submit a proposed Order. *See* March 17, 2020 Email (Exhibit "14" hereto) at p. 1 ("At the conclusion of the hearing this morning, the Judge requested that we submit a proposed Order setting forth the Court's ruling that the Motion to Dismiss is denied and that Defendants have until April 20, 2020 to file their answer (i.e., 20 days after March 31, 2020).").

51.     Unisource-Florida ignored the ruling denying their motion to dismiss until July 21, 2020, when it filed its Answer and Affirmative Defenses along with a Counterclaim.

52.     Finally, on February 21, 2020, Unisource-Florida (through Noel Mijares) attempted to "revoke" a supposed "license" that it ostensibly gave Unisource for the use of the Mark and trademark. *See* February 21, 2020 Letter (Exhibit "15" hereto) at p. 1 ("Unisource Discovery, LLC no longer has the Right to Use, Market or Transact business under the USPTO Registered Trademark of Unisource Discovery").

53.     Two months after its Motion to Dismiss Mr. Cerasale's state court action was denied (i.e., on May 12, 2020), Unisource-Florida (again, through Noel Mijares) sent another letter threatening to sue based upon Unisource continued use of the Mark—which belonged and continues to belong to Unisource and Mr. Cerasale. *See* May 12, 2020 Letter (Exhibit "16" hereto).

54.     Shortly thereafter, while continuing to refuse to allow Mr. Cerasale and Alfred Lutter to inspect the requested corporate books and records, Unisource-Florida (through Noel Mijares) filed this lawsuit.

55.     With the exception of Unisource-Florida's two demand letters in 2020 and this lawsuit, Unisource-Florida has never even attempted to control, supervise, police, or dictate in any way how Unisource uses the Mark or trademark, markets its products, or performs its services. During its more than twenty years of existence, Unisource (through Mr. Cerasale) has used the Mark as it deems fit in its sole discretion.

## ARGUMENT

**I.     Unisource-Florida does not have a likelihood of success on the merits.**

**A.     Unisource-Florida cannot show that Unisource and/or Mr. Cerasale "infringed" on any right to use the Mark or trademark.[1]**

It is undisputed that Unisource and Mr. Cerasale created the Mark. It is also undisputed that Unisource and Mr. Cerasale used the Mark *__first__*—predating Unisource-Florida's use of the Mark by over five years.

---

[1] As a threshold matter, Unisource-Florida's false contention that its "trademark" is incontestable is readily and conclusively refuted. Unisource-Florida never filed a Declaration of Incontestability under Section 15 with the USPTO, and the USPTO never issued a Certificate of Incontestability. For the reasons explained herein, the alleged trademark does not qualify to be "incontestable" in any event. However, without having filed a Section 15 Declaration or securing a Certificate of Incontestability, the trademark is unquestionably not incontestable. *See Frehling v. Int'l Select Group*, 192 F. 3d 1330 (holding that "a mark is incontestable" if "its holder has filed the required affidavit with the PTO, and the PTO has accordingly declared the mark 'incontestable'").

"Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080–81 (11th Cir. 2016) (quoting *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015)).

It cannot be disputed that Mr. Cerasale and Unisource first used the mark in commerce. As noted above, Unisource and Mr. Cerasale have been using the name "Unisource Discovery" as well as the subject distinctive mark for the past twenty years. Indeed, it was Mr. Cerasale and Unisource who allowed Plaintiff to use the mark and the name "Unisource Discovery" on a limited basis in Florida beginning in June 2006. In 2001—five years prior to Unisource-Florida's incorporation and initial use of the mark—Mr. Cerasale and Unisource had registered the domain www.unisourcediscovery.com and published the Mark on its website. Thus, Plaintiff cannot deny that Mr. Cerasale and Unisource have priority over Unisource-Florida regarding use of the mark.

At the outset, binding precedent confirms that Unisource Florida should be denied preliminary injunction because Mr. Cerasale and Unisource have a superior right use the mark. Plaintiff has not, and cannot, contest that Mr. Cerasale and Unisource have a superior right to use the mark based on first use. In *Choppers, Inc. v. Passaro*, the Eleventh Circuit affirmed the denial of a motion for preliminary injunction for failure to show a likelihood of success on the merits where from the evidence and arguments presented (which included conflicting affidavits as to whether plaintiff's knew and consented to defendant's use of the mark), on the reasoning that the Court "[could not] determine whether Defendants are actually violating Plaintiffs' rights, or whether, instead, this case involves a soured business arrangement under which Defendants retain some rights to deal with the goods at issue." 159 F. App'x 74, 75–76 (11th Cir. 2005).

11

Further, even if Unisource and Mr. Cerasale had not used the Mark first—which they indisputably did—any license that ostensibly would have been given by Unisource-Florida to Unisource and/or Mr. Cerasale would have been a naked license. "The owner of a trademark has not only a right to license the use of his trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark." *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123–24 (5th Cir. 1973).[2] "Failure to exercise such control and supervision for a significant period of time may estop the trademark owner from challenging the use of the mark and business which the licensee has developed during the period of such unsupervised use." *Id.* at 124. "This principle is an analogue to the estoppel against a trademark owner who knowingly sits silently by while infringers use his trademark over a significant period of time." *Id.*

Under binding precedent, Unisource-Florida should be estopped from challenging Mr. Cerasale and Unisource's use of the Mark. In *Shiela Shine*, the court "h[e]ld that SS California is estopped to challenge the business which SS Florida has built up under the mark Sheila Shine," due to the "undisputed failure by the [trademark owner] to exercise any supervision or control over the activities of Pan American or its successor SS Florida" for a period of six years. *Id.* at 124–25.

As noted above, Unisource-Florida knowingly failed to exercise any supervision or control over the activities of Unisource or Mr. Cerasale with respect to the Mark or the trademark since 2001 (when Unisource and Mr. Cerasale first used the Mark), since 2006 (when Unisource-Florida was incorporated), or since 2008 (when Unisource-Florida registered the trademark), nor did Unisource-Florida ever have the right or authority to exercise such supervision or control.

---

[2] *See, e.g.*, *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (recognizing that Fifth Circuit decisions prior to September 30, 1981 are binding on the Eleventh Circuit).

Moreover, Unisource-Florida never controlled the products, marketing, services, or any other aspect of Unisource or Mr. Cerasale. Further, it was agreed and understood that Unisource and Mr. Cerasale could use the Mark and trademark as they deemed fit without any interference, control, supervision, or say from Unisource-Florida. Finally, with the exception of Unisource-Florida's two demand letters in 2020 and this lawsuit, Unisource-Florida had never attempted to control, supervise, police, or dictate in any way how Unisource uses the Mark or trademark, markets its products, or performs its services. During its more than twenty years of existence, Unisource (through Mr. Cerasale) has used the Mark as it deems fit in its sole discretion.

Thus, even if Mr. Cerasale and Unisource did not have a superior right to the mark, Unisource-Florida would, nevertheless, be estopped from challenging use of the mark due its failure to exercise control and supervision over Mr. Cerasale and Unisource since the trademark was registered in 2009.

Finally, even if Unisource and Mr. Cerasale did not have superior rights to the Mark and even if Unisource-Florida had asserted any control over the Mark/trademark, Unisource-Florida still would not have a likelihood of success on the merits because it does not have an enforceable trademark. Specifically, Unisource-Florida made numerous material misrepresentations—under penalty of perjury—on its trademark registration.

"An applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1289 (11th Cir. 2012) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). "Fraud further requires a purpose or intent to deceive the PTO in the

13

application for the mark." *Id. See also Angel Flight*, 522 F.3d at 1210–11 (affirming cancellation on the basis of the applicant's purposeful failure to disclose a superior user of the mark).

Unisource-Florida knowingly made false material misrepresentations of fact in its trademark registration. It is well-established that "[p]urposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight*, 522 F.3d at 1210. In *Angel Flight*, the Eleventh Circuit affirmed the cancellation of a trademark due to the applicant's knowledge that another organization was using the mark at the time the registration application was filed, but failed to disclose such information to the Patent Trademark Office. *Id*. at 1210–11.

In this case, Unisource-Florida undeniably knew that Mr. Cerasale and Unisource had been using the name and mark "Unisource Discovery" in commerce prior to 2006 when Mr. Cerasale partnered with Noel Mijares to jointly operate a Florida branch of Unisource. In particular, Unisource-Florida's Shareholder Agreement shows that Mr. Cerasale, Unisource, Noel Mijares, and Unisource-Florida all agreed and understood that Unisource and Mr. Cerasale would continue to own, control, and use the Mark without restriction. Nevertheless, Unisource-Florida's Trademark registration included the following material misrepresentations:

1) that Unisource-Florida was the "owner" of the Mark when, in reality, Unisource was the owner;

2) that Unisource-Florida first used the Mark "as early as March 1, 2001" when, in reality, Unisource-Florida did not use the Mark until after it was incorporated in June 2006; and

3) that "no other person, firm, corporation, or association has the right to use the [M]ark in commerce" knowing full well that Unisource and Mr. Cerasale were

14

the owners of the Mark, had been using the Mark since 2001, and had every right to continue to use the Mark.

Thus, pursuant to binding precedent, Plaintiff's knowledge and failure to disclose that Unsiource and Mr. Cerasale were using the mark at the time the trademark application was filed sufficiently defeats any likelihood of Plaintiff's success on the merits.

Additionally, Plaintiff's material misrepresentation that Unisource-Florida had been using the mark since March 2001 is particularly egregious because the mark did not exist at that time. Mr. Cerasale and Unisource created the mark in April or May 2001. Thus, Plaintiff's purported use of the mark in March 2001 predates Mr. Cerasale and Unisource's creation and first use of the mark in April or May 2001.

Accordingly, even if Unisource and Mr. Cerasale did not have superior rights to the Mark and even if Unisource-Florida had asserted any control over the Mark/trademark, Unisource-Florida cannot succeed on the merits due to its awareness that Mr. Cerasale and Unisource were using the name "Unisource Discovery" prior to and at the time the registration was filed and purposeful failure to disclose that information to the Patent Trademark Office.

**B.**     **Unisource-Florida's claim under the Anticybersquatting Consumer Protection Act is equally meritless.**

Unisource-Florida cannot possibly establish a viable claim under the Anticybersquatting Consumer Protection Act (ACPA). The law is clear: to establish a claim under the Act, the plaintiff must show that the subject domain name was ***registered or used in bad faith***.

The facts are not disputable: Unisource and Mr. Cerasale registered the subject domain (i.e., [www.unisourcediscovery.com](http://www.unisourcediscovery.com)) in March 2001—years before Unisource-Florida even existed. When Unisource-Florida was incorporated in June 2006, Unisource-Florida ***used*** the same domain name registered by Unisource and Mr. Cerasale. It was not until Unisource-Florida refused

15

to pay for the costs associated with the subject domain in September 2019 that Unisource-Florida registered the domain www.unisourcediscovery.net.

It, therefore, is uncontroverted that Unisource and Mr. Cerasale used the domain name first (predating Unisource-Florida's domain name by more than eight years). It likewise is clear that Unisource and Mr. Cerasale used the subject domain in good faith without any indicia of bad faith.

To succeed on a ACPA claim, Unisource-Florida is required to prove that (1) "Unisource Discovery" is a distinctive or famous mark entitled to protection; (2) Mr. Cerasale and Unisource's domain names are "identical or confusingly similar to" Unisource-Florida's mark; and (3) that Unisource and Mr. Cerasale registered the domain names with the bad faith intent to profit from them. *See* 15 U.S.C. § 1125(d)(1). The statute, however, provides a safe harbor provision which states that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15. U.S.C. § 1125(d)(1)(B)(ii).

Plaintiff's assertion that Mr. Cerasale registered the domain name www.unisourcediscovery.com in bad faith to profit from Plaintiff's trademark registration lacks merit as a matter of fact and law.

Plaintiff does not, and cannot, dispute that Mr. Cerasale and Unisource registered the domain name in 2001, at least five years before the parties entered into a partnership. Subsequently, Mr. Cerasale and Noel Mijares agreed that Unisource-Florida would use for its business the same website and domain as Unisource (i.e., www.unisourcediscovery.com) provided that Unisource-Florida pay its share of the costs associated with the website. Then, on September 16, 2019, (approximately eighteen years after Mr. Cerasale and Unisource initially registered the domain name at issue) Unisource-Florida registered the new website and domain

16

(i.e., www.unisourcediscovery.net) due to its failure to pay its share of the costs associated with the website's operation. Finally, the agreement and understanding between Mr. Cerasale and Noel Mijares was clear that Mr. Cerasale was to keep his ownership over the name "Unisource Discovery" and if he ceases to be associated with Unisource-Florida, then Unisource-Florida "shall modify the current name … to be different in name only." *Id.*

In brief, both the timeline of events and the agreement between the parties regarding the domain name patently shows that Unisource and Mr. Cerasale believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful. Accordingly, Plaintiff has failed to meet its burden of showing that Mr. Cerasale and Unisource registered the domain name in bad faith. As such, Plaintiff's ACPA claim must fail.

## II.     Unisource-Florida cannot contend that it will suffer any irreparable injury.

To begin with, Unisource-Florida has, at best, sat on its ostensible "rights" for almost two decades. Since before Unisource-Florida was incorporated, Unisource and Mr. Cerasale used the Mark for the very same reason that Unisource-Florida now contends is "confusing" or "infringing." In fact, it is undisputed that Unisource and Mr. Cerasale used the Mark in their business with Unisource-Florida's full knowledge.

From May 2001 (when Unisource and Mr. Cerasale began using the Mark) through to February 2020, Unisource and Mr. Cerasale have been using the Mark as they deemed fit in their sole discretion—with Unisource-Florida full knowledge and understanding. It was not until February 2020 that Unisource-Florida, for the first time, objected to Unisource and Mr. Cerasale's use the Mark. And then, it was not until October 28, 2020 that Unisource-Florida filed a motion for preliminary injunction claiming "irreparable harm." What changed? What caused the same exact "use" of the Mark and trademark to be OK for almost two decades and suddenly supposedly cause "irreparable harm"?

The answer is: nothing. Unisource-Florida is not suffering—and will not suffer—irreparable harm.

Although Unisource-Florida's Motion attempts to distort the facts, the facts are clear. Unisource-Florida's Motion is a thinly-veiled retaliatory gambit to cause as much harm as possible to Unisource and Mr. Cerasale. This case has nothing to do with the Mark or trademark—which Unisource-Florida never policed, controlled, or otherwise directed.

Plaintiff's position that it will suffer irreparable harm is both contradicted and defeated by its delay in filing a complaint after discovering that Mr. Cerasale and Unisource alleged infringed on its mark, and its failure to quickly file a motion for a preliminary injunction after the complaint was filed.

It is well-established that "a plaintiff's delay in seeking an injunction in a trademark case 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.'" *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355–56 (S.D. Fla. 2002). *See, e.g.*, *Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").

In this case, Unisource Florida waited more than 15 years since it knew Mr. Cerasale and Unisource California were using the mark; more than 11 years since the mark was registered; and more than 82 days after it filed its Complaint before it filed its Motion for Preliminary Injunction. Unisource Florida has not provided any justification for its delay. Plaintiff has made no attempt to explain its delay. As such, Plaintiff's delay undercuts any sense of urgency and ultimately fails to demonstrate sufficient need for a preliminary injunction. *See Seiko Kabushiki Kaisha*, 188 F. Supp.

18

2d at 1356 (1 year delay between knowledge of defendant's activities and filing lawsuit failed to show irreparable harm); *Wreal LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 12550932, at *2 (S.D. Fla. Feb. 3, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016) (5 month delay in moving for preliminary injunction failed to show irreparable harm); *Del Monte Int'l, GMBH v. Ticofrut S.A.*, No. 16-23894-CIV, 2017 WL 3610582, at *12–13 (S.D. Fla. Mar. 7, 2017) (2 year delay in moving for preliminary injunction from the time the plaintiff was aware of defendant's activities failed to show irreparable harm); *Domond v. People Network APS*, No. 16-24026-CIV, 2017 WL 5640732, at *4 (S.D. Fla. Jan. 5, 2017) (4 year delay between knowledge of defendant's activities and filing motion for preliminary injunction shows that plaintiff would not suffer irreparable harm); *Pals Grp., Inc.*, 2017 WL 532299, at *6 ("Plaintiff sat on its rights for three months. Further, Plaintiff has failed to offer any explanation for its three-month delay and the Undersigned cannot discern from the record any valid justification for the delay.").

Even if Unisource-Florida had not delayed in filing its motion, the scant evidence presented does not show irreparable harm. Unisource-Florida's sole evidentiary basis of "irreparable harm" is one email chain with a customer. *See* Mijare's Affidavit (DE 18-1) at p. 7–8. This evidence is completely innocuous and does not support even one dollar of "harm." At best, the email chain merely shows Unisource and Unisource-Florida working together to answer a customer's question. *See id*. (thanking Unisource-Florida's request to remove Florida based email addresses while explaining that Unisource "not know why [customer] is emailing them still.").

III.   **Unisource and Mr. Cerasale would suffer greatly disproportionate hardship if Unisource-Florida's Motion were granted.**

As explained above, Unisource and Mr. Cerasale have been using the Mark for almost two decades—significantly longer than Unisource-Florida has used the Mark or trademark. Over those

19

two decades, Unisource and Mr. Cerasale built a nationwide brand; a brand from which Unisource-Florida benefitted.

Now, merely because Unisource-Florida was angered by Mr. Cerasale's request for financial information, Unisource-Florida is attempting to overreach. Unisource-Florida was intended to be Unisource's Florida branch. Unisource-Florida, however, is now attempting to use the Court to takeover Unisource's brand, name, and nationwide Mark and destroy Unisource's business.

For the reasons set forth herein, assuming Unisource-Florida were entitled to a preliminary injunction—which it certainly is not—such an injunction would essentially destroy Unisource's business. The requested injunction, therefore, would require Unisource-Florida to post a significant bond of several million dollars.[3]

Here, the balancing of harms also requires denial of the motion for injunction. The injunction would force Defendants' to stop using the Mark they have been using for more than 20 years (essentially shutting down their 20-year business) resulting in significant economic injury. *Domond v. People Network APS*, No. 16-24026-CIV, 2017 WL 5640732, at *4 (S.D. Fla. Jan. 5, 2017), *report and recommendation adopted sub nom.* No. 16-24026-CIV, 2017 WL 5642449 (S.D. Fla. Feb. 8, 2017) (balancing of harm weighs against injunction because plaintiffs failed to show an actual risk of harm and  knew of defendants' alleged infringement 4 years before filing its motion for preliminary injunction).

---

[3] *Cascades of Levitt Homes, Inc. v. Cascades of Sabatello Dev. Corp.*, No. 97-8513-CIV, 1997 WL 588848, at *10 (S.D. Fla. Aug. 7, 1997) ("In respect to the issue of bond, the Defendants presented no evidence of any monetary damages they would sustain should the preliminary injunction be granted. For example, there has been no evidence presented to this Court as to projection of any lost profits, advertising costs or other expenses that may be incurred should the Court grant the Motion For Preliminary Injunction. It is not for this Court to speculate or to anticipate any such damages which have not been presented or proven to this Court.").

## VERIFICATION

I, Steven Cerasale, individually and on behalf of Unisource Discovery LLC, hereby declare under penalty of perjury that the foregoing facts are true and correct.

STEVEN CERASALE, individually and
on behalf of Unisource Discovery LLC

Respectfully submitted,

/s/ Juan C. Zorrilla
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:    (305) 789-9201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on February 22, 2021, on all counsel or parties of record on the Service List below.

       /s/ Juan C. Zorrilla
       Juan C. Zorrilla

| **SERVICE LIST** *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* **Case No. 20-CIV-23276-DPG** | |
|---|---|
| Diego David Valdes, Esq. Fla. Bar No. 251010 Diego David Valdes, P.A. 2350 Coral Way, Suite 403B Coral Gables, Florida 33145 Telephone: (305) 910-6602 Facsimile: (305) 513-5924 E-mail: ddvlaw@gmail.com  *Counsel for Plaintiff, Unisource Discovery, Inc.* | |

22