THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNISOURCE DISCOVERY, INC.　　　　　　**Case No. 1:20-cv-23276-CIV-DPG**

Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, a
California Limited Liability Company
and STEVEN A. CERASALE, individually,

Defendants.

_____

**<u>PLAINTIFF UNISOURCE DISCOVERY, INC. REPLY
TO DEFENANTS' RESPONSE RELATED TO PLAINTIFF'S
MOTION FOR PRILIMINARY INJUNCTION</u>**

Plaintiff, Unisource Discovery, Inc. a Florida Corporation, (hereinafter "Plaintiff"

and "UNISOURCE"), by its undersigned counsel, submits this Reply to Defendants,

Unisource Discovery, LLC (hereinafter "UNI-CA"), a California Limited Liability

Company, and Steven Cerasale, (hereinafter "CERASALE") (collectively as

"Defendants"), Response [DE 61] to Plaintiff's Motion for Preliminary Injunction [DE

18] (the "Motion"), and states:

Plaintiff, UNISOURCE, seeks an application for entry of Preliminary Injunction

[DE 18], filed on October 28, 2020. The application of the preliminary injunction against

the Defendants that operate websites, email addresses, marketing. and print media that

infringe Plaintiff's respective trademark and promote and sell counterfeit versions of

Plaintiffs' respective legal products. Among other things, Plaintiff asks that the Court

enjoin Defendants from advertising and selling products which infringe its trademarks,

and that the Court seize control of the domain names of the infringing websites and

redirect the web traffic searching for those domains to another site that displays a copy of

1

the Plaintiff's Mark.

Plaintiff is suing Defendant UNI-CA and its principal officer, Cerasale, for trademark counterfeiting and infringement, false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a). In addition, the Defendants are within the ambit of cybersquatting under 15 U.S.C. section 1125(d), and unfair competition under Florida's common law. (*See generally* Compl. [DE 18]).

Plaintiff's Complaint alleges Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit and infringing versions of Plaintiffs' products within the Southern District of Florida through fully interactive commercial Internet website, emails, print media, marketing and operating under certain domain names that are virtually identical.

Plaintiff alleges Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their right to determine the manner in which Plaintiffs' trademarks are presented to the public; (2) defrauded the public into thinking Defendants' products are Plaintiff's authorized products; (3) deceived the public as to Plaintiff's association with Defendants' products and the websites, emails, print media which market and sell the products; and (4) wrongfully traded and capitalized on Plaintiff's respective reputations and goodwill as well as the commercial value of Plaintiff's trademarks.

Plaintiff moves for the issuance of a temporary restraining order, and, upon expiration of the temporary restraining order, a preliminary injunction against Defendants, pursuant to 15 U.S.C. section 1116 and Federal Rule of Civil Procedure 65, for alleged violations of the Lanham Act.

## II. SUMMARY OF FACTUAL BACKGROUND

UNISOURCE, a notably recognized digital document retrieval records company, conducts business throughout Florida and the Continental United States. It is headquartered in Miami-Dade County, Miami Florida. Amongst other and direct and indirect functions, UNISOURCE works with the legal community and businesses for litigation case management and support (a simple example, UNISOURCE offers digital records retrieval and service of process for nationally recognized insurance companies, law firms and the like.)

The Plaintiff is the registered owner of the following trademark on the Principal Register of The United States Patent and Trademark Office [USPTO], all of which are valid and incontestable pursuant to 15 U.S.C. section 1065 (the "UNISOURCE Mark"):



Registration Number: 3,634,516

Registration Date: June 9, 2009

Description: The Mark consist of the stylized word "Unisource" reversed out on a shaded rectangle, with the stylized word "Discovery" below it and the stylized wording "Digital Document Retrieval" below that. Serial No. 77-591,059, Filed 10/16/2008.

Cerasale is the owner and Managing Director of UNI-CA -- a California company. UNISOURCE has no relation to UNI-CA; that is, with the exception of CERASAL having been a Shareholder and Board of Director of UNISOURCE since 2006 (15 Years. UNI-CA sell, advertises, promotes, and sells in interstate commerce, including within this

3

Judicial District, similar legal products under Plaintiff's trademark.

Notably, UNI-CA did not register its identical Mark in any State or with the United States Patent and Trademark Office. UNI-CA does not have a Licensing Agreement with Plaintiff for Right to Use the Trademark. UNI-CA displays on its website www.unisourcediscovery.com that it is the registered owner of the Trademark [of Plaintiff] by publicly claiming that the Unisource Discovery and Logo are Registered Trademarks, even though UNI-CA does not own the Trademark and does not have legal rights to use Plaintiff's Mark.

The Defendants have achieved success in their intentional efforts. The Plaintiff furnished several informal demands upon the Defendants and served four (4) formal pre-suit notices to cease unauthorized use of Plaintiff's trademark in a span of time exceeding 12-months prior to filing Plaintiff's complaint. Clearly, none of Plaintiff's pre-suit attempts to prevent Defendants from continuing to injure Plaintiff were remotely successful. As a result, the Plaintiff filed its Complaint [DE 1] with this Honorable Court to prevent its trademark's further unauthorized use, infringement, to compensate Plaintiff for its damages, and effectively restoring Plaintiff back to business to the position it was prior to the damage intentionally caused by Defendants.

As discussed, and asserted in Plaintiff's Complaint, contractually the Defendants sold the Mark to Plaintiff over 15-years ago. The Defendants never disputed Plaintiff's ownership until Plaintiff filed the instant Complaint.

While the Defendants are clearly barred by the *statute of limitations* to challenge Plaintiff's ownership rights, the Defendants' proposed Amended Answer, Defenses and imposing a new counterclaim for "Cancellation of Trademark." Counterclaim; *See* Exhibit "A"

Under Florida law and Federal law, the Defendants new counterclaim to cancel Plaintiff's trademark after more than twelve (12) years is squarely barred by the applicable statute of limitations. *Ares Defense Systems, Inc. v. Karras*, 2016 WL 7042957 (M.D. Fla. March 10, 2016) *citing AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir. 1986) (The Lanham Act does not contain a statute of limitations. When the filing of a trademark infringement lawsuit, the Court ruled the statute of limitations is four-years)

Defendants are not now, nor have they been authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of Plaintiff's Marks. (*See* Compl. Generally [DE 18 and Mijares Affidavit DE 18-1]).

### III. LEGAL STANDARD

Plaintiff has filed claims pursuant to 15 U.S.C. sections 1114(1)(a), 1125(a), and 1125(d), and Florida's common law. Title 15 U.S.C. section 1116(a) provides the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the United States Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116. Injunctive relief is also available under section 1116(a) for a violation of section 1114(1)(a). *See id.* § 1116(d)(1)(A).

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non- movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*,

5

51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*See* FED. R. CIV. P. 65(b)(1)

Temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc.*, 415 U.S. 423, 439 (1974) (footnote call number omitted).

With respect to scope, generally, "persons who are not actual parties to the action or in privity with any of them may not be brought within the effect of an [injunctive] decree merely by naming them in the order." *Charles A. Wright & Arthur R. Miller,* FEDERAL PRACTICE AND PROCEDURE, § 2956 (2d ed. 1995) (footnote call number omitted). However, "a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)); *see also* FED. R. CIV. P. 65(d)(2).

Specifically relevant to this case, 15 U.S.C. section 1114(2)(D) implicitly provides the Court with authority to request or order "[a] domain name registrar, domain name registry, or other domain name registration authority . . . [to] deposit[] with a court, in

which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." 15 U.S.C. § 1114(2)(D)(i).

## IV. AGRUMENT

Simply put, in their Response [DE 61] the Defendants are asking this Court not to grant Plaintiff's injunction because not being permitted to continue use of the Plaintiff's Mark may injure them. However, the Defendants are directly asking this Court to completely ignore that Defendants accepted this risk when they sold the Mark to Plaintiffs [June 15, 2006] fifteen years ago, and have refused to enter into a Licensing Agreement for Right to Use of Trademark. The Defendants are asking this Court to ignore *executed* and *active* agreements [Closed Corporation Shareholder Agreement dated June 28, 2010] [DE 1 Exhibit C] between the parties related to the Name, Mark and Trademark. And the Defendants want this Court to somehow believe that the consideration Defendants received when they sold in 2006 the Name and Mark to Plaintiff did not adequately compensate them for loss of use; indeed, when Defendants sold the Name and Mark to Plaintiff that is what they bargained-for. In addition, Defendants did not object to Plaintiff filling for Trademark Registration and Protection with the United States Patent and Trademark Office USPTO on June 28, 2008 [ DE 1, Exhibit A, B] or when the USPTO published for Opposition Notice on March 24, 2009 [Exhibit B], or when USPTO Registered the Trademark on June 9, 2009 [Exhibit C]. Yet, the Defendants claim somehow that they were unaware, but interestingly enough have used the Trademark on published sales materials, marketing materials and website which reflects to the public that the Name and Logo are Registered Trademarks, for the past 12 years, with no objections – knowing full well that Defendants do not own the

7

Trademark.

Nonetheless, the Plaintiff will response categorically to Defendants' Response [DE 61] below.

**A.     Cerasale Contractually Relinquished All Ownership Rights To the Name and Mark**

In their Response [DE 61], the Defendants provide a factual account that is false and inaccurate. Essentially, Defendants are attempting to re-write decade-old [executed] and [active] agreements that govern their relationships. These agreements are attached to Plaintiff's Complaint [DE 1]. In essence, and for lack of better words, the Defendants are "rewriting the script" to fit their narrative.

In ¶ 18 of their Response [DE 61], the Defendants oddly assert that the agreement is "clear" -that it was/is the "understanding" for Defendant Cerasale to retain ownership of the name "Unisource Discovery". However, this argument is troubling because this "understanding" is nowhere to be found in the Closed Corporation Shareholder Agreement [DE 1, Exhibit C], and the Defendants conveniently did not tell this Court that in year 2006, Cerasale sold the Name and Mark to UNISOURCE for consideration and performance obligations, and this was "reaffirmed" in June 28, 2010 when Cerasale executed the Closed Corporation Shareholder Agreement, which is active and in full-force. As easily found in the Close Corporation Shareholder Agreement, entered into as of June 28, 2010, Cerasale contractually agreed and acknowledged that UNISOURCE owns the Name, Mark, and TRADEMARK to wit:

"1.3     Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise."

For over eleven (11) years after execution of the Closed Corporation Shareholder Agreement the Defendants have *never disputed* that UNISOURCE is the lawful owner of the Trademark – as wrongly argued in Defendants Response [DE 61].

Equally troubling, the Defendants furnished the Plaintiff a copy of their Amended Answer, Defenses, and Counterclaim. *See* Exhibit A"

In their affirmative defenses, ¶ 33, "*Defendants admit that Unisource Florida is the owner of Registration No.: 3634516 but deny the remaining allegations*." Consequently, in their Response [DE 61] the Defendants are arguing that UNISOURCE is not the owner of the Mark, and in direct conflict, in their Amended Answer, Defenses and Counterclaim they are "admitting" that UNISOURCE is the owner of the Mark. The Defendants are speaking through both sides of their mouth.

Clearly, the Plaintiff owns the Mark and the lengthy arguments imposed by Defendants in their Response [DE 61] are purely harassment.

**B.     Probability     of     Success     on     the     Merits**

In Section I.A. of Defendants' Response [DE 61], they begin by arguing that CERASALE, created and first used the Mark.  That is a distraction over the fact that the Mark was sold/transferred over fourteen (14) years ago to the Plaintiff, as enticement. Once again, Plaintiff's ownership of the Mark is undisputed because the Defendants admitted in his Amended Answer, Defenses, and Counterclaim that Plaintiff owns the Mark. *See* Exhibit "A"

Nonetheless, in order to somehow distort the facts, the Defendants are exerting tremendous effort into the history of ownership of the Mark that simply is not relevant to this case. The Defendants and Plaintiff memorialized Plaintiff's ownership of the Mark in the Closed Corporation Shareholder Agreements attached to the Plaintiff's Complaint

9

[DE 1, Exhibit C]. It has been undisputed that Plaintiff owns the Mark for more than fourteen (14) years.

**1.        Counterfeiting and Infringement – 15 U.S.C. section 1114**

Section 32 of The Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."

To prevail on a trademark infringement claim, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote call number and citation omitted).

To evaluate likelihood of consumer confusion in a Lanham Act trademark claim, the Eleventh Circuit has developed a seven-factor balancing test. *See Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). The seven factors are: "(1) type [or strength] of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313 (11th Cir. 2001) (citation omitted); *see also Dieter*, 880 F.2d at 326. No single factor is dispositive. *See Lipscher*, 266 F.3d at 1313.

Clearly, these seven factors in light of the submissions provided by Plaintiff shows there is a likelihood consumer would confuse Defendants' website, emails addresses and products with the Plaintiff's genuine versions of its products. In particular, the submissions provided by Plaintiff supports the strength of Plaintiff's Marks, show

10

that the products produced and sold by Defendants are nearly identical to Plaintiff's respective genuine products, indicate that both Plaintiff and Defendants target the same U.S. customers on the Internet, suggest that Defendants intended to benefit from the use of Plaintiffs' brand reputation, and show that consumers viewing Defendants' counterfeit products post-sale would actually confuse them for Plaintiff's real products.

Nothing asserted in the Defendants Response [DE 61] directly addresses these seven factors, above, provided in the *B & H Indus. of Sw. Fla., Inc.* in which the 11th Circuit mandates.

Accordingly, Plaintiff has shown a probability of success on the merits of their trademark counterfeiting and infringement claim under section 1114.

**2.        False Designation of Origin – 15 U.S.C. section 1125(a)**

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim — i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As just discussed in relation to Plaintiff's trademark counterfeiting and infringement claims, Defendants' products are likely to be confused by consumers for Plaintiffs' genuine products.

In their Response [DE 61], the Defendants failed to address 15 U.S.C. section 1125(a) in any relevant manner to this action.  For that reason, amongst others, the Plaintiffs have shown a likelihood of success on Plaintiffs' claim of false designation of origin.

**3.        Cybersquatting Claim – 15 U.S.C. section 1125(d)**

Where in paragraph I.B of Defendants' Response, they loosely assert that the Plaintiff cannot establish a viable claim because the Defendants first used the domain names. While it is unclear how this is relevant to the case, because the Defendants sold the Name and Mark to Plaintiff more than fourteen (14) years ago and Plaintiff registered the Name and Mark and obtained a Trademark over twelve (12) years ago, is undisputed, the Defendants are somehow arguing that because their respective corporate logos are similar as it is acceptable.

In essence, the Defendants are asking this Court to excuse their contractual obligations because they did not understand the agreements [DE 1 Exhibit A, B, C] clear terms before entering into them that indisputably sold the name and mark to Plaintiff, which Plaintiff registered with the USPTO as a Trademark of UNISOURCE.

As applicable, the Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d).

To prevail under the ACPA, the Plaintiff has indeed proved that: "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

As to the first element, the Plaintiff's Mark is inherently distinctive because they are arbitrary as applied to the products which they identify — i.e., they "[do] not suggest

or describe the goods or services offered thereunder." *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001) (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335–36 (11th Cir. 1999)). Moreover, the Plaintiff's Mark is indisputably known because they enjoy widespread recognition by consumers. Regarding the second element — use of confusingly similar domain names — Plaintiff has supplied its domain name allegedly used by Defendants to sell counterfeit versions of Plaintiff's products.

Plaintiffs have provided sufficient evidence in their submissions to support the conclusion that these domain names are confusingly similar to Plaintiff's Mark. With regard to the third element — whether Defendants registered the domain names with the bad faith intent to profit —considering the nine factors laid out in 15 U.S.C. section 1125(d)(1)(B)(i)(I)–(IX) --- the Plaintiff has clearly shown the submissions provided adequately demonstrate Defendant's either never registered its Mark or otherwise registered its Mark in bad faith to attract customers using the Plaintiff's Marks to sell them counterfeit versions of Plaintiffs' products.

Consequently, Plaintiff has shown a likelihood of success on the merits of their section 1125(d) claim.

**4.        Unfair Competition Under Florida's Common Law**

Whether a Defendants use of a plaintiff's trademark creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair

13

competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983).").

Importantly, Cerasale, had a contractual and statutory obligation not to compete with UNISOURCE.  Pursuant to the executed Close Corporation Shareholder Agreement [DE 1, Exhibit C], ¶ 1.10 *""Fiduciary Duties" The Existing Shareholders acknowledge that officers, directors, managing agents, and other executive or high-level employees (collectively referred to herein as an "Employee" or "Employees") maintain a relationship with the Company in which high degrees of confidence and trust are reposed in the Employee. (Controlling shareholders also have certain fiduciary duties to the other shareholders of a company.) An Employee's fiduciary duties to the Company include the following:"* (1) The Duty of Undivided Loyalty; and (2) The Duty to Avoid Conflicts of Interest. Thus, Cerasale, has his contractual obligations to UNISOURCE coupled with these statutory obligations.

As discussed in relation to Plaintiffs' trademark counterfeiting and infringement claims, Plaintiffs have established there is a likelihood of confusion regarding Defendants' use of Plaintiffs' Marks on their counterfeit and infringing products. Accordingly, Plaintiffs have also shown a likelihood of success on the merits.

### C.    Irreparable Injury

The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim,"[5] there is a "presumption of irreparable harm." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008) (citations omitted). However, the strength of this presumption has been called into question by the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *See N. Am. Med. Corp.*, 522 F.3d at

1227-28 (discussing *eBay*). After *eBay*, a court may grant preliminary injunctive relief "without the benefit of a presumption of irreparable injury," or may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions." *Id.* at 1228.

Simply put, the Defendants have no defense. As already discussed, based on Plaintiff's submissions to this point, there is a substantial likelihood that consumers will incorrectly believe Defendants' websites, email addresses, print media, and products are approved or sponsored by Plaintiff. Although the Court may be permitted to presume irreparable harm from the likely consumer confusion in this case, it is not necessary to rely on a presumption. The operation of Defendants' websites, email addresses and print media displaying Plaintiff's Mark and the sale of Defendants' goods to consumers is likely to cause irreparable damage to Plaintiffs' respective reputations if they continue because Plaintiffs will not have the ability to control the quality of what appears to be their products in the marketplace.

This damage to Plaintiff's respective reputation and goodwill could not be easily quantified nor could it be undone through an award of money damages. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008).

**D.      The Balance of Hardships**

The Court should be satisfied after reviewing Plaintiff's submissions that the risk to the reputations and goodwill associated with Plaintiff's Mark should Defendants' infringing activities continue outweighs any hardship to Defendants caused by enjoining those activities. It does not appear that Defendants will suffer any legitimate hardship if a temporary restraining order is issued because they have no legal right to use Plaintiff's

Mark on their website(s), emails, marketing materials, sales materials, or to sell counterfeit versions of Plaintiffs' products.

## C.   Public Interest

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.,* No. 96-2709-CIV-NESBITT, 1997 WL 244746 at *5 (S.D. Fla. Jan 10, 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief." (citing *Scarves By Vera, Inc. v. Todo Imports, Ltd.,* 544 /F.2d 1167 (2d Cir. 1976))). Here, Plaintiff has demonstrated that Defendants' website and products mislead consumers into believing they are approved or sponsored by Plaintiffs and make it more difficult for a consumer to be sure he or she is purchasing a Plaintiff's genuine product. Specifically, in the declaration of Noel Meares, CEO of UNISOURCE, he attaches, authenticates and references email from a confused consumer; Very notable, the confused consumer is a law firm that is arguably more knowledgeable than the average reasonable person.

## V. CONCLUSION

Based on Plaintiffs' Complaint, application for injunction, and evidentiary submissions, this Court must respectfully conclude that the four-part test for injunctive relief has been satisfied. The defendants raised no acceptable defense to imposing an injunction. Obviously, an injunction is critical to the Plaintiffs corporate future.

Moreover, because providing notice of this suit before granting injunctive relief would allow Defendants to funnel traffic to their current websites to new domains and allow Defendants to continue selling counterfeit products, which they have done and continue to do so under specifically created email accounts such as

16

recordsfl@unisourcediscovery.com to confuse UNISOURCE clients in Florida, a temporary restraining order should issue.

## CERTIFICATE OF SERVICE

I hereby certify that this notice was served via the PACER E-Filing Portal on this 12th day of March, 2021 upon: Juan C. Zorilla, Esq., **jzorilla@fowler-white.com**, Fowler, White, Burnett, P.A. counsel for Unisource Discovery, LLC and Steven A. Cerasale.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: /s/ *Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email:    ddvlaw@gmail.com
                   ddv@ddvlawgroup.com
Attorney for Plaintiff: Unisource Discovery, Inc.

17