UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23276-CIV-GAYLES/OTAZO-REYES

UNISOURCE DISCOVERY, INC.,

Plaintiff,

v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

Defendants.

_____

**EX PARTE AMENDED MOTION FOR PRELIMINARY INJUCTION AND
TO EXPEDIATE HEARING**

The Plaintiff, Unisource Discovery, Inc. ("Unisource" or "Unisource Florida"), by and

through its undersigned counsel, hereby moves the Court for an Ex Parte Amended Motion for

Preliminary Injunction and To Expediate Hearing against Defendants Unisource Discovery,

LLC ("Uni-CA" or "Unisource California") and Steven Cerasale.

In support of this Motion, Plaintiff states as following:

**PRELIMINARY STATEMENT OF FACTS**

1.     As a direct result of new and exceptionally damaging events, this Motion amends

Plaintiff's Motion for Preliminary Injunction [DE 18] that was filed on October 28, 2020.   In

addition, due to the emergency nature of these new events by Defendants that are causing immediate

and continuing damage to Plaintiff, an expediate hearing for the preliminary injunction is now crucial

on an *ex parte* basis.

2.     The Plaintiff integrates and merges into this Motion the Plaintiff's Motion for

Preliminary Injunction [DE 18] filed on October 28, 2020 – filed proximate to the time Plaintiff filed

1

its complaint [DE 1].

3.    Defendants were permitted to expediate its discovery and served Plaintiff with their request for production of documents and request for interrogatories on November 4, 2020. On January 27, 2021, the Plaintiff responded to Defendant's discovery requests. Consequently, the Defendants have been permitted to conduct discovery for this Motion and, therefore, the Defendants have completed discovery for an entry of an Order on an ex parte basis.

4.    The Plaintiff will be amending its Complaint [DE 1] in light of these new and material events and facts; however, because of the seriousness of the Defendants ongoing breaches, tortious interference, fraudulent acts *et al* the Plaintiff is immediately advancing this injunction because there is an immediate need at this time to prevent further injury.

5.    Attached hereto are affidavits verifying the allegations in this Motion. *See* Exhibit "A" and Exhibit "B"

**NEW AND ADDITIONAL FACTS**

A.    **Defendants are Currently Poaching and Stealing Unisource Florida Clients**

6.    Remarkably, during the pending litigation the Defendants continue to intentionally violate their contractual duties of non-competition, fiduciary duties, obligation to not tortiously interfere with Unisource Florida's business relations and make further fraudulent misrepresentations that will harm Plaintiff and Plaintiff's clients.

7.    The events surrounding Defendants actual and clear act of poaching and stealing Unisource Florida's client occurred merely days before this Motion is being filed; that is, the Plaintiff is advancing this Motion swiftly to prevent further damage to itself and its clients.

***New Factual Events -- Defendants Poaching and Stealing Unisource Florida's Client***

8.    The new and damaging events arose very recently on April 14, 2021. The Plaintiff has lost no time in seeking this Court's protection.

9.    On April 14, 2021, Mrs. Rudi Daka, the Operations Manager of Unisource Discovery,

Inc. [Plaintiff] received three (3) phone calls from a client of Unisource Florida located in Fort Lauderdale, Florida.

10.     Ms. Vivian Dalacio, a Paralegal employed by a Florida law firm commonly known as Lewis Brisbois Bisgaard & Smith called Unisource in-connection with trouble she was experiencing with her Unisource Online Account access.  Ms. Dalacio informed Unisource Florida that she was not able to login to their Online Account under User ID ending in XXXX75.  In response, Mrs. Daka informed Ms. Dalacio that "Orders Department" would be emailing her a secured message with updated password.

11.     Then, Mrs. Daka received a second phone call on or about 12:50 pm on the same day. Ms. Dalacio contacted Unisource Florida to check status on the password, however, Mrs. Daka informed her that Orders Department had already sent the email, and she was able to confirm receipt. At that time, and in light of the apparent confusion, Mrs. Daka asked Ms. Dalacio which website she was attempting to login from, and she confirmed [www.unisourcediscovery.net](www.unisourcediscovery.net).  And so, Mrs. Daka attempted to "walk" Ms. Dalacio through the account sign-in process, and she was able to access her Online Account.

12.     Thereafter, sometime approximate to 1:50 pm, Mrs. Daka received a third call from Ms. Dalacio that was genuinely concerning.  Ms. Dalacio informed Mrs. Daka that she was not able to locate a Subpoena Order she previously placed with Unisource Florida in March 2021. Ms. Dalacio wanted to check status and add additional Subpoena locations related to this Order.

13.     In response to Ms. Dalacio's urgent concern, Mrs. Daka then asked Ms. Dalacio for the order number to better assist her in searching the Subpoena in the Database.

14.     However, when Ms. Dalacio provided Mrs. Daka with the corresponding order number Mrs. Daka immediately realized that Ms. Dalacio's order number was not a Unisource Discovery, Inc. (Florida) order number.

15.     Mrs. Daka immediately realized that the order number provided by Ms. Dalacio was not

3

a Unisource Florida order number but a Unisource Discovery, LLC (California / Uni-CA) order number, because Plaintiffs order numbers are (5) five digits and Defendants order numbers are (6) six digits long.

16.     The following day, on April 15, 2021 at approximately 9:50 AM, Ms. Dalacio contacted Mrs. Daka a fourth time in connection with this same matter asking where she can send Unisource Florida a pre-pay facility invoice for records that she needed to obtain, and in response, Mrs. Daka provided her with Support Department email contact support@unisourcediscovery.net.

17.     Consequently, later the same day Mrs. Daka pulled the invoice she had received from Ms. Dalacio to inspect the information contained therein. Mrs. Daka immediately learned that it was billed to Unisource Discovery, LLC (UNI-CA) at 4502 Centerview Drive, Suite 113, San Antonio, TX 78228, and billed under Order # 174288-25 which belongs to Unisource Discovery, LLC (UNI-CA).

### *Previous Factual Events -- Defendants Poaching and Stealing Unisource Florida's Client*

18.     This is not the first, second or third time that Defendants have been actively undermining Plaintiff's operations in Florida, causing great confusion with Clients and ongoing damages.

19.     Another one of Plaintiffs clients, a Florida law firm named Cole, Scott & Kissane was also poached and mislead into thinking that they were dealing with Plaintiff, but instead they had been duped into sending Subpoena Orders to Defendants by using the deceptive "Florida Records" email that Defendant's created for this specific Fraud, under recordsfl@unisourcediscovery.com.

20.     On July 13, 2020, Dawn Winters, paralegal for Cole, Scott & Kissane sent a request to provide Additional Subpoenas to an Order for records, and this was emailed in error to recordsfl@unisourcediscovery.com. Plaintiff never received this additional Subpoena request and on July 21, 2020, Dawn Winters again emailed recordsfl@unisourcediscovery.com that there has been an Objection filed on those Subpoenas.  Plaintiff did not receive this important communication, because it went to Defendants.

21.      Defendants failed to inform Plaintiff's client that they had submitted a Subpoena Request Order to the wrong company.  In fact, Defendants had planned to poached as many clients as they can from Plaintiff, by creating a specific email called "Florida Records" to confuse the public, at whatever cost to Plaintiffs and Plaintiffs Clients, even if under Objection.

22.      On October 14, 2020, nearly (3) three months later, Dawn Winters issues another email notification and stated "*As per our previous emails, please destroy any and all copies of documents received in this matter. Do not issue any subpoenas*". However, this time, Dawn Winters included the email orders@unisourcediscovery.net, which is Plaintiffs Order Department Email, which allowed Plaintiff to respond and explain to Client that they needed to update the email records since they are sending emails to the wrong company, and avoid further confusion.

23.      To Plaintiffs surprise, Amy Castillo, Texas Operations Manager for Defendants, responded to the email chain, believing that the previous email response was from Defendants Customer Service Department, and stated *"Thank you for telling her* (Dawn Winters) *to remove the other email addresses.  I do not know why she is emailing to them still."*  Shortly thereafter, realizing that she had responded to Plaintiffs Customer Orders Department, and NOT to Defendants, Amy Castillo immediately sends a two-word reply: Sorry DISREGARD.

24.      Plaintiff immediately issued an email response to Defendants Cerasale and Uni-CA with a reminder to the Cease & Desist / 3rd Notice / Malicious Interference.

25.      This time, Defendants were caught in the act due to an Objection that was filed on a Subpoena Order, but since Defendants are from out-of-state, and do not fully understand the Florida Rules of Civil Procedure, they ignored the Objection for months, and continued to process records under the name and Trademark of Plaintiff, while using an email "recordsfl" created solely for the purposes of Fraud and Poaching.

26.      Here, these recent facts clearly evidence immediate and ongoing injury by the Defendants act of poaching and stealing these Unisource Clients – to the extent Unisource California is

knowingly maintaining a level of confusion amongst existing clients of Unisource Florida and duping them into believe the two companies are the same.

27.      Cumulatively, through the following methods, the Defendants continue to intentionally confuse, misrepresent, interference and steal Unisource clients, to wit:

a.  Uni-CA is continuing to use without authorization, despite a cease-and-desist letter served, the same Trademark owned by Plaintiff Unisource;

b.  As clearly evidence by these recent events that triggered this Motion, Uni-CA is causing confusion, consequently on-going damage through duping Unisource Florida clients into believing that they are working with Unisource Florida, when in reality their subpoena order is blindly going to San Antonio Texas and Orange County, California to Unisource California;

c.  The Uni-CA web address www.unisourcediscovery.com is using and marketing the name, mark, design and stating to the public that Unisource Discovery and Logo are Registered Trademarks of UNI-CA, when this is **not true**;  [*Employee Log in | Privacy Policy | ©2020, Unisource Discovery and Logo are Registered Trademarks | Site by Persechini*]*;* this is a clear violation of Trademark Law and advertising without a Licensing Agreement;

d.  Uni-CA created an email address called "Florida Records" recordsfl@unisourcediscovery.com  to further confuse the public, specifically created and aimed at Poaching and Stealing Unisource Florida clients, to the extent it can clearly confuse any client and/or consumer—and, in-fact, has done so and continues to do so as early as April 14, 2021; and

e.  As attested thereto in the attached affidavits, Unisource California is intentionally using Unisource Florida Forms to complete their fraud by way of contacting facilities under Unisource California Order numbers that have been converted from Unisource Florida

6

Templates and submitting "Follow-Up" letters under Uni-Ca Order # 165590-18 with a previous and former Unisource Florida office address.

ii.     ***Contractual Obligations -- Non-Competition***

28.     The parties executed a Close Corporation Shareholder Agreement ("Shareholders Agreement") on June 28, 2010.

29.     Pursuant to Shareholder Agreement ¶1.2(e),

> Without limiting the generality of the provisions of this Agreement set forth below relating to fiduciary duties, the Directors of the Company are ***prohibited from engaging in any business or employment activities competitive to the business of the Company***. The parties hereto acknowledge and agree that the business of the Company includes expansion plans nationwide in the business of records retrieval, eDiscovery, and legal discovery case and records management. The parties agree that presently existing businesses operated by the Directors are complementary to the business of the Company, and it is anticipated that working relationships, cross referrals, another collaborative activities may be conducted between the Company and such other businesses."

> (emphasis added)

30.     Pursuant to Shareholder Agreement ¶ 1.4, the parties agreed to separate territory when agreeing "The Subpoena Company. The parties acknowledge and agree that the Company shall have the exclusive rights to utilize the Florida Platform of "the Subpoena Company" to establish a presence in the region."

31.     Pursuant to Shareholder Agreement ¶1.10, the parties Fiduciary Duties agreed outlined and agreed upon, *to wit*,

> "The Existing Shareholders acknowledge that officers, directors, managing agents, and other executive or high-level employees (collectively referred to herein as an "Employee" or "Employees") maintain a relationship with the Company in which high degrees of confidence and trust are reposed in the Employee. (Controlling shareholders also have certain fiduciary duties to the other shareholders of a company.) ***An Employee's fiduciary duties to the Company include the following:***

(a)     **The Duty of Undivided Loyalty.** In addition to the straightforward meaning of those terms, the employee may not benefit himself, a competitor, or any other person, to the detriment of the Company, in anything which the employee does within the scope or during the term of his employment or on company time. All of employee's efforts and activities conducted while

7

being compensated by the Company, or within the scope and course of the employment relationship, must be ***The Duty to Avoid Conflicts of Interest. The employee may not place himself in a position where he has obligations to any third party, or interests of his own, which are in any way in conflict with or competitive to the interests of his Company. If any such conflicting obligations or interests arise, the employee must remove himself from the situation or relationship which gives rise to such a conflict of interest.***

(b)     **The Duty of Full Disclosure**. The employee is obligated to disclose to the Company all information which comes into the possession of the employee which is relevant to the business or affairs of the Company including, without limitation, all information relating to the activities of the employee within the course and scope of his employment.

(c)     **The Duty to Avoid Self-Dealing**. The employee may not engage in any transaction, directly or through the use of third parties, middlemen, or otherwise, with the Company, without full disclosure to and consent from the Company as to all of the material terms and details of the transaction. The employee is not permitted to make "secret profits" of any kind. Secret profits include any profit or other type of benefit obtained by the employee which results from the employment relationship, or from any of the activities of the employee conducted in the course and scope of the employment relationship, which have not been fully disclosed to, and consented to by, the Company in all material respects and detail.

(d)     **The Duty of Fair Dealing**. Transactions between the employee and the Company which are arranged, brought about, or conducted by the Employee, must be fair and reasonable as to the Company even if they are fully disclosed.

(e)     **The Duty to make available to the Company all "Corporate, Business, or Partnership Opportunities***".* All business or commercial opportunities which fall within the type of business conducted by the Company, or which are within the type of business planned for future activities by the Company, or which are within the general scope of the types of business activities into which the Company might reasonably be expected to expand its business, are considered to fall within the "Corporate Opportunity Doctrine" (also referred to as the "Partnership Opportunity Doctrine" or the "Business Opportunity Doctrine" depending upon the form of the business entity involved). All business opportunities which fit that description, and which become available to or known by the employee during the term of his employment must be disclosed to and made available to the Company. The employee may not take advantage of any such business opportunities for his own account unless and until the Company has knowingly elected not to avail itself of each such opportunity after full disclosure of all material elements and details of the opportunity. (The employee still may be unable to avail himself of such a business opportunity if doing so would violate any of the employee's other fiduciary duties.)

   ***In addition to and supplementing the foregoing fiduciary duties, there are also state and federal statutory and regulatory provisions, including, without limitation, Florida statute 607.0901,*** imposing duties and limitations with respect to transactions and activities of Company insiders and their affiliates.
   To the extent they serve as officers, directors, managing agents, or other employees of the Company, the Existing Shareholders agree to abide by all such fiduciary obligations to the Company and its shareholders."

8

(emphasis added)

32.     Pursuant Shareholder Agreement ¶12, the parties contractually agreed,

> "<u>Construction.</u> The parties have participated jointly in the negotiation and drafting of this Agreement. ***In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.*** The word "including" shall mean including without limitation and is used in an illustrative sense rather than a limiting sense. Terms used with initial capital letters will have the meanings specified, applicable to singular and plural forms, for all purposes of this Agreement. Reference to any gender will be deemed to include all genders and the neutral four."

(emphasis added)

33.     Under Shareholder Agreement ¶6 "<u>Further Acts</u> The parties to this Agreement shall promptly take such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement. Without limiting the generality of the foregoing, in the event any court, county recorder, secretary of state of any state, any federal agency, or any other governmental agency may require any additional or different documents or actions in order to effect the purposes contemplated by this Agreement, the parties to this Agreement shall execute the necessary documents and take the necessary steps to comply with those requirements.

34.     The Shareholders Agreement incorporates Florida statute 607.0901, and outlines significant obligations and duties including fiduciary duty.

## ANALYSIS

35.     Rule 65 permits the Court to enter a preliminary injunction or temporary restraining order. Fed. R. Civ. P. 65.

36.     Although the Court may issue a temporary restraining order with or without notice to the adverse party, the Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)–(b).

37.     However, "[t]he issuance of a temporary restraining order or preliminary injunctive

9

relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2001) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)).

38.     To obtain a temporary restraining order or preliminary injunction, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

39.     The Local Rules also require a motion for a temporary restraining order to contain or be accompanied by a supporting legal memorandum or brief.

40.     Additionally, the Court may issue a temporary restraining order or preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

41.     As argued in Plaintiffs Motion for Temporary Injunction, and incorporated herein, there is clearly a substantial likelihood of success on the merits.

42.     Because Unisource Florida has shown to be damaged, and more-so with the current events that triggered this expediated and ex parte motion, it is clear that irreparable injury has been done, and will continue to  be suffered if the relief is not granted.

43.      Undoubtedly, the threatened injury outweighs the harm the relief would inflict on the non-movant Unisource Florida.  Here, as clearly shown there are third parties that are being injured by Defendants fraudulent misrepresentations to clients of Unisource Florida.

44.     Clearly, entry of the relief would serve the public interest because it will be preventing further confusion and consequential damage to third-parties similar to the current event prompting this Motion.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that its Motion for an Ex Parte and Expedited Preliminary Injunction be granted forthwith. In the event an injunction is not issued, it will send a message to the Defendants to continue these types of injurious acts that forced the Plaintiff to seek this injunction.

Unisource Florida has clearly shown the immediate need for this Court to protect it from further and continuous damage intentionally caused by the Defendants.

**WHEREFORE**, the Plaintiff respectfully pray this Court:

A.      Rule on Plaintiff's motion on an expediated basis;

B.      Enter an Order ex parte;

C.      Enter an Order prohibiting Defendants from further use of Plaintiff's trademark;

D.      Enter an Order prohibiting Defendants from contacting any and all of Unisource Florida's Clients;

E.      Enter an Order directing Defendants will provide a current matrix of all their clients to determine further similar occurrences; and

F.      Any other relief this Court determines is fair and just.

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this notice was served via the Florida Court E-Filing Portal on upon: Juan C.

Zorilla, Esq., jzorilla@fowler-white.com Fowler, White, Burnett, P.A., counsel for Unisource

Discovery, LLC and Steven A. Cerasale on this day 20th of April, 2021.

**Diego David Valdes, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: /s/ *Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email: ddvlaw@gmail.com
Attorney for Plaintiff: Unisource Discovery, Inc.