**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE    DISCOVERY,    LLC,    a
California  limited  liability  company,  and
STEVEN A. CERASALE, individually,

      Defendants.

_____

**PLAINTIFF, UNISOURCE DISCOVERY, INC., REPLY TO DEFENDANTS,**
**UNISOURCE DISCOVERY, LLC, AND STEVEN A. CERASALE, RESPONSE [DE 95] TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DE 18] AND [DE 88]**

      The Plaintiff, Unisource Discovery, Inc. ("Uni-FL" or "Unisource Florida"), by and

through its undersigned counsel, hereby files this Reply to Defendants, Unisource Discovery,

LLC ("Uni-CA" or "Unisource California") and Steven Cerasale Response [DE 95] to

Plaintiff's Motion for a Temporary Injunction [DE 18 and 88], and states:

**PRELIMINARY STATEMENT**

      1.      To obtain a preliminary injunction, a party must demonstrate "(1) a substantial

likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not

granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant;

and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v.*

*Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Palmer v. Braun*, 287 F.3d 1325, 1329

(11th Cir. 2002) (citing *Suntrust Bank v. Houghton Mifflin Co*., 268 F.3d 1257, 1265 (11th Cir.

2001)); *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995).

2.      In their Response [DE 95], the Defendants make two arguments; one, because the Plaintiff did not one-by-one refute Defendants' affirmative defenses the Court must deny the preliminary injunction; and (2) Plaintiff's fail to allege "... *any harm at all*".

3.      These are addressed herein-below.

A.      **Defendants' Affirmative Defenses Do Not Prevent the Entry of an Injunction**

4.      Incredibly, the Defendants argue that because the Plaintiff did not refute their widely inapplicable affirmative defenses without any further evaluation this Honorable Court should summarily deny Plaintiff's preliminary injunction.

5.      The Defendants raise the following eight (8) affirmative defenses: (1) In their first affirmative defense the  Defendants state that Unisource Florida has abandoned its "Mark"; (2) in their second affirmative defense the Defendant assert estoppel;  (3) in their third affirmative defense the Defendants assert Estopped in-connection with Plaintiffs' use of the "Mark" is likely to cause confusion to Defendants' clients; (4) their fourth affirmative defense the  Defendants state that Unisource Florida has not incurred any actual damages from any alleged "infringement" or "deceptive or unfair trade practice" of Defendants; (5) in their fifth affirmative defense the Defendants state that their use of the "Unisource Discovery Digital Document Retrieval" name is "descriptive" of the services of Unisource California; (6) in their sixth affirmative defense the Defendants state that they adopted and used the "Mark" years before Unisource Florida's registration or use of the "Mark;  (7) in their seventh affirmative defense the Defendants raise Unclean hands; and (8)  in their eighth affirmative defense the Defendants  state that Trademark Registration No. 3,634,516 (Serial No. 77594059) should be cancelled due to Plaintiff's fraud on the United States Patent and Trademark Office.

       i.       **The Facts Clearly Establish That Plaintiff did Not Abandon the Mark**

6.      As their First Affirmative Defense the Defendants state that Unisource Florida has abandoned its "Mark" and therefore Defendants prior use provides priority.

7.      The Unisource Florida Mark is the subject of a valid and subsisting Trademark Registration, with a *clean and clear* chain-of-custody ownership from 2006 to present, under U.S. Registration No. 3634516, U.S. Serial No. 77594059, filed on October 16, 2008 and received USPTO Registration on June 9, 2009, with additional 10-year renewal accepted and granted under Section 8 (10/08/2015) and Section 8 and 9 (03/05/2019) and currently in good standing with the United States Patent and Trademark Office till next renewal date of June 9, 2028. *See generally Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1357 n.3 (11th Cir. 2007) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'" (citing 15 U.S.C. § 1057(b))). *USPTO Declaration of Use of Mark in Commerce Under Section 8*, [What They Say About Us Screen Shot] See Exhibit "A"

8.      Because Unisource California concedes it did not register the name or logo at any time, any rights to the mark must be established under the common law. "Under common law, trademark ownership rights are 'appropriated only through actual prior use in commerce.'" *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)); *New Wave*, 589 F. App'x at 528

9.      "[T]he use of a mark in commerce . . . must be sufficient to establish ownership rights for a plaintiff to recover against subsequent users under [S]ection 43(a)." *Crystal Entm't & Filmworks, Inc. v. Jurado,* 643 F.3d 1313, 1321 (11th Cir. 2011). Unisource Florida acquired ownership of the name and logo from Defendants in 2006, and filed to protect the name and logo

with the USPTO in 2008, receiving Registered Trademark status in 2009 and renewals thereof in 2015 and 2019.

10.     A two-part test is utilized to determine whether a party has proved "prior use" of a mark sufficient to establish ownership: a party must submit (1) evidence showing adoption, and (2) "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.*

11.     The Defendants have failed to present evidence supporting its alleged rights in the Mark. In fact, it's in direct conflict with referenced contractual agreement related to Unisource's Florida ownership of the Mark the Defendants executed.  The Defendants have not provided any competent evidence whatsoever that is sufficient to demonstrate adoption.

12.      However, swearing under penalty of perjury pursuant to 28 U.S.C. § 1746, Unisource Florida CEO, Noel Mijares, attests to the fact that Unisource Florida has a clean and clear chain-of custody of the Mark, and has been utilizing the name, logo and Mark on all of its products since the name and logo was transferred and sold to Unisource Florida in the year 2006, and Unisource Florida later filed for protection of the name and logo with an application to United States Patent and Trademark Office on October 16, 2008 and obtained Registered Status as a Trademark on June 9, 2009, with Section 8 and 9 renewals in 2015 and 2019.  See Mijares Affidavit [DE 88]

13.     In conclusion, this affirmative defense fails to prevent the entry of an injunction.

ii.     **Defendants' Estopel, "Confusion', and Descriptive Affirmative Defenses (Third and First Affirmative Defenses) Cannot Prevent the Entry of an Injunction**

14.     "The essential element of an action under § 43(a) is proof by the plaintiff that the alleged infringement by the defendant creates a likelihood of confusion on the part of consumers as to the source of the goods*." Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821,

4

831 (11th Cir. 1982) (citing *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 702 (5th Cir. 1981))

15.     "Courts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1327-28 (S.D. Fla. 2015) (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999)). "Of these factors, the type of mark and evidence of actual confusion are considered the most important." *Id*. at 1328 (citing Frehling, 192 F.3d at 1335).

16.     The likelihood of confusion element should not be determined "by merely analyzing whether a majority of the subsidiary factors indicate that such a likelihood exists . . . [r]ather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." *Id. (*quoting *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) and citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 649 (11th Cir. 2007)

17.     The Defendants have not provided this Court any instance of confusion whereas the Plaintiff has done so through an affidavit by Rudi Daka, Operations Manager of Unisource Florida and by Noel Mijares, the CEO of Unisource Florida.  Both, Mrs. Daka and Mr. Mijares affidavit's evidences confusion instances where Unisource Florida clients where confused or duped into believing that Plaintiff's Mark was referencing Unisource California. *See* Affidavits [DE 88]

     (a)     **The Strength of the Unisource Florida Mark verses Unisource California Mark**

18.     In classifying the Mark at issue, the district court is to determine whether the mark in question is "strong" or "weak." *Frehling,* 192 F.3d at 1335 ("Classifying the type of mark [p]laintiff has determines whether it is strong or weak.")).

19.     Four categories of distinctiveness are used to classify a mark, listed in ascending order of strength: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. *Id.* Simply put, "[t]he stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Id.*

20.     A generic mark, which refers to "a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor)," is entitled to no protection. *Frehling*, 192 F.3d at 1335

21.     A descriptive mark "describe[s] a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where glasses are sold. *Univ. of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535, 1540 (11th Cir. 1985) ("The general rule in this circuit is that proof of secondary meaning is required only when protection is sought for descriptive marks, as opposed to arbitrary or suggestive marks.").

22.     "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive" (e.g., "penguin" to describe a refrigerator). *Frehling*, 192 F.3d at 1335

23.     "The combination of two or more descriptive words as a composite mark may result in a suggestive term." *Tancogne v. Tomjai Enterprises Corp.,* 408 F. Supp. 2d 1237, 1244 (S.D. Fla. 2005)

24.     Here, the Defendants argue that the appropriate classification of their Mark is descriptive. On the other hand, as it pertains solely to the Defendants, the Plaintiff Mark would be clearly suggestive and requiring a leap of the imagination to get from the Mark's references to the Unisource Florida (not Unisource California) products to dissecting whether it is Plaintiff or Defendant offering the same services using the same Mark in the same geographical locations.

25.     The Defendants have converted the exact same Mark that Plaintiff contractually owns, registered, and used for well over 15-years without any dispute and/or disruption.  The Defendants use of the exact same Mark is only descriptive as to Unisource Florida, but suggestive to Defendants *illegal* issue of Plaintiff's Mark.

26.     In fact, the Defendants' use of Plaintiff's Mark has caused actual confusion with Plaintiff's clients as evidenced by sworn testimony [DE 88].

27.     "The likelihood of confusion is greater when an infringer uses the exact trademark." *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) aff'd, 128 F. App'x 755 (11th Cir. 2005) (citation omitted).

28.      Where the marks in question relate to similar products and the products in question are advertised and sold through similar means, a greater likelihood of confusion results. *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000); A*mBrit, Inc. v. Kraft, Inc*., 812 F.2d 1531, 1542 (11th Cir.1986); and J*ohn H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 976 (11th Cir. 1983)); *see also John H. Harland Co*. at 976 ("The greater the similarity between the products and services, the greater the likelihood of confusion.") (citation omitted).

29.     These factors clearly weigh in favor of finding a likelihood of confusion. Indeed, Plaintiff has shown that Defendants' illegal use of Plaintiff's Mark has factually caused confusion and will continue should this Court not enter an immediate injunction.

(b)      **Defendants' Intent**

30.      "If it can be shown that a defendants' adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling,* 192 F.3d at 1340 (citing John H. Harland Co., 711 F.2d at 977).

31.      "The intent of the defendant need not be conscious; 'intentional blindness' will also support a finding that defendant's intent was improper." *Cross Country Home Servs., Inc. v. Home Serv. USA Corp* (S.D. Fla. Jan. 20, 2010) (citing Frehling, 192 F.3d at 1340).

32.      In their response, the Defendants submitted what appears to be some sort of a statement of alleged invoices issued to Lewis Brisbois, but noticeably failed to provide a single actual invoice as proof.  Also, Defendants failed to mention Cole, Scott & Kissane, and Burglass Law Firm; two (2) additional Plaintiff clients that Defendants have poached, which curiously, Defendants do not mention, with intent, and in direct violation of the Closed Corporation Shareholder Agreement that Defendants are a signatory party.   Nonetheless, the Defendants are attempting, at every opportunity, to convert Plaintiffs own Trademark, into a weapon against Plaintiff, to mislead, fool and trick Plaintiff's clients into submitting legal orders to Defendants, instead.

33.      Here, the Plaintiff has presented evidence that its Mark was adopted with the specific intent necessary, *and Plaintiff went further in taking the necessary steps to protect the ownership of the name and logo by filing an application with the United State Patent and Trademark Office to Register said Mark for protection, (13) thirteen years ago*. The contractual agreements clearly provide this Court significant understanding of the ownership transfer of the name and logo from Defendant to Plaintiff over 15-years ago, and further evidenced by the execution of the Closed

Corporation Shareholder Agreement that the Defendant executed, acknowledging the "ownership" of the Trademark by Plaintiff, in said active Shareholder Agreement, dated June 28, 2010. Furthermore, the unfettered use of the Mark by Plaintiff as contractual owner, for 15 years, and the limited and restricted use of the Mark offered to Defendants that can be contractually withdrawn at any time, absent a Licensing Agreement. Contractually, the Defendant does not want to be held to an agreement it understood and bargained-for when entered over (15) fifteen years ago – **that simple.**

34. In conclusion, the Plaintiff first and third affirmative defenses should not prevent the entry of an injunction.

### iii. <u>**Defendants' Affirmative Defense of Unclean Hands Will Not Prevent the Entry of an Injunction**</u>

35. As their Seventh Affirmative Defense, Defendants state that Unisource Florida is not entitled to any equitable relief because it has unclean hands.

36. When the Defendants concede that "Even if its attempt to "revoke" its naked license to Defendants were effective  …" it loosely links revoking Defendants' use of the Mark to an allegation that has nothing in-common with this dispute before this Court – that is, Unisource Florida's revocation is an "alleged" retaliatory "punishment" as a result of Mr. Cerasale's request for financial records under Fla. Stat. § 607.1602.

37. It is a cardinal rule of equity that "he who comes into equity must come with clean hands." *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1366 (S.D. Fla. 2006); *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 241 (1933) ("He who comes into equity must come with clean hands."). Indeed, "[i]t is a self-imposed ordinance that closes the door . . . to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Id*.

38.     This defense, the affirmative defense of unclean hands, provides an equitable defense to a Lanham Act infringement claim. *See Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983); *see also Fuddruckers, Inc. v. Doc's* B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987) ("Unclean hands is a defense to a Lanham Act infringement suit." (citing *CIBA–GEIGY Corp. v. Bolar Pharmaceutical*, 747 F.2d 844, 855 (3d Cir. 1984), cert. denied, 417 U.S. 1137 (1985))).

39.     The Supreme Court made clear that when the owner of a trademark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trademark, or in his advertisements and business, be himself guilty of any false or misleading representation. C*linton E. Worden & Co. v. California Fig Syrup Co.,* 187 U.S. 516, 528 (1903).

40.     A district court is granted discretion in determining the applicability of the doctrine. *Shatel Corp.,* 697 F.2d at 1355 (citing Wolf v. Frank, 477 F.2d 467, 474 (5th Cir.), cert. denied, 414 U.S. 975 (1973).

41.     Ultimately, the affirmative defense of unclean hands requires the proponent to show that (1) "the plaintiff's wrongdoing is directly related to the claim," and (2) that "the defendant was personally injured by the wrongdoing." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

42.     An easy review of Defendants lack of evidence confirms that the first prong – the wrongdoing is "directly" related to the claim --- completely fails. In fact, the Defendants do not otherwise provide a basis on which to adjudge the validity of this defense.

43.     To the contrary, Defendant Cerasale entered into Unisource Florida with unclean hands, false and misleading representations, by originally claiming to Plaintiff that Cerasale owned

the Legal Discovery Case and Records Management Software, when he did not, and this revelation was the cause of a "Claw-Back" of 10% Shares from Cerasale under a Stock Purchase and Licensing Agreement dated June 28, 2010, for his fraudulent actions.  *See* Exhibit B.

44.     As such, this affirmative defense fails.

iv.     **Defendants' Fourth Affirmative Defense That Plaintiff Did Not  Incur Actual Damages – *And Defendant's second argument related to Plaintiff's Failure To Allege Harm --* is Premature and fails**

45.     Under the Lanham Act, a plaintiff may elect between actual or statutory damages ***at any time before final judgment***. See 15 U.S.C. § 1117(c). And under the Lanham Act, actual damages are measured by "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."2 15 U.S.C. § 1117(a) (emphasis added); see also *Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229, 1241 (11th Cir. 2008).

46.     "Any damages sustained by the plaintiff" include "'all elements of injury'" to the plaintiff's business "'proximately resulting from the infringer's wrongful acts' such as the costs of corrective advertising or injury to business reputation or goodwill." *Aronowitz,* 513 F.3d at 1241 (quoting *Ramada Inns, Inc. v. Gadsden Motel Co*., 804 F.2d 1562, 1564 (11th Cir. 1986)).

47.     The Plaintiff's claim for actual damage is further evidenced by the costs incurred in filing this claim, issues related to client confusion,  conversion of clients,  and loss of profits. The Defendants have not propounded any discovery related to Plaintiff's actual damages, in fact, the Defendants have not provided a single response to Interrogatories, Admissions and Request for Production, which were due on April 25, 2021.

48.     Therefore, this affirmative defense cannot prevent that entry of an injunction because the Plaintiff clearly made a *prima facia* showing of actual damages and failure of Defendants to propound discovery related to actual damages makes any determination premature.

## CONCLUSION

49.     The balance of Defendants' Affirmative Defenses is inapplicable to prevent the entry of an injunction or have otherwise been refuted.  Clearly, as shown the Defendants have not raised any affirmative defenses that would cause a Florida District Court to deny the entry of Plaintiff's injunction.

50.     In addition, plainly at this juncture of the litigation the Plaintiff made a rather significant showing of *prima facie* actual harm and resulting damage from Defendants ongoing acts of client conversion in-connection for their infringement of Plaintiff's Mark and in direct violation of the Closed Corporation Shareholder Agreement.

51.     Defendants attempt to paint Unisource Florida as a "branch" of Unisource California, is not only far-reaching, but completely misleading and a falsehood.  Defendants fail to provide a single piece of evidence to support such a claim.  As matter of fact, there is not a single legal document, agreement, contract, stipulation, provision, corporate filing, State or Federal, that would support such a false claim, because it's *not true.*

52.     This Honorable Court has ample basis to grant Plaintiff's injunction so to prevent further and continuous harm.

53.     What's more, contractually the Defendants transferred all rights and ownership of the name and logo to Plaintiff more than 15-years ago and should not be rewarded for now attempting to re-claim ownership and use a Registered Trademark it simply does not own nor have any legal and/or contractual right to use—as Defendants contractually bargained-for 15-years ago when they sold the name and logo to Plaintiff for value and consideration.

54.     In conclusion, the Defendants have offered no legal basis to prevent this Honorable Court from entering the injunction forthwith.

**WHEREFORE**, the Plaintiff respectfully pray this Court:

A.     Rule on Plaintiff's motion on an expediated basis;

B.     Enter an Order ex parte;

C.     Enter an Order prohibiting Defendants from further use of Plaintiff's trademark;

D.     Enter an Order prohibiting Defendants from contact any and all of Unisource Florida's Clients;

E.     Enter an Order directing Defendants will provide a current matrix of all of Defendants clients to determine further similar occurrences;

F.     Enter an Order directing Defendants to provide responses to Interrogatories, Admissions and Request for Production without Objections; and

E.     Any other relief this Court determines is fair and just.

## CERTIFICATE OF SERVICE

I hereby certify that this notice was served via the PACER E-Filing Portal on this 7th day of <u>May</u>, 2021 upon: Juan C. Zorilla, Esq., **jzorilla@fowler-white.com**, Fowler, White, Burnett, P.A. counsel for Unisource Discovery, LLC and Steven A. Cerasale.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: /s/ *Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email:     ddvlaw@gmail.com
              ddv@ddvlawgroup.com
Attorney for Plaintiff: Unisource Discovery, Inc.

13