**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, a California limited liability company, and STEVEN A. CERASALE, individually,

      Defendants.

_____

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendants, Unisource Discovery, LLC and Steven A. Cerasale ("Mr. Cerasale), by and through undersigned counsel, hereby file their Response in Opposition to Plaintiff, Unisource Discovery, Inc.'s Motion for Leave to File Amended Complaint (DE 114).

**INTRODUCTION**

Five months after the Court-imposed deadline to add new parties and amend pleadings and less than a month before the fact discovery cut-off, Plaintiff seeks to add a new party to this litigation and add new state-law claims based upon previously unalleged facts that Plaintiff has known about for years. At this stage in the litigation, there is insufficient time to propound new discovery to flesh out the conclusory allegations in Plaintiff's proposed First Amended Complaint (DE 114-1). Additionally, the new proposed state-law claims against Mr. Cerasale are identical to claims Plaintiff has already asserted against Mr. Cerasale in the pending state court action.

To be clear, Defendants do not oppose Plaintiff amending its Complaint to further flesh out the trademark infringement claims previously asserted against Defendants. Defendants, however, oppose Plaintiff adding a new party and introducing new state law claims.

## ARGUMENT

I.      **Counts XI, XII, and XIII[1] and all claims against Equicopy, Inc. should be disallowed.**

   A.      **Plaintiff has not even attempted to show "good cause" to seek leave to join an additional party and amend its Complaint after the Court-ordered deadline.**

Plaintiff's Motion (DE 114) completely fails to argue (much less establish) "good cause" for seeking leave to amend after the Court-ordered deadline to join parties and amend pleadings as set forth in Scheduling Order (DE 33). Rule 16(b)(4) and binding precedent requires a showing of good cause.

Rather than attempt to argue good cause (which Plaintiff cannot show as explained below), Plaintiff falsely states that its Motion "is brought to the court's attention at a time consistent with the Joint Scheduling Report [DE 14] and Scheduling Order [DE 33]." Motion (DE 114) at p. 2. Plaintiff's position is clearly refuted by the record.

The Court's Scheduling Order (DE 33) required Plaintiff to join additional parties and seek leave to amend the Complaint by no later than January 15, 2021 (i.e., five months ago). Plaintiff's motion to amend its Complaint to add to this litigation new, never before alleged facts and state-law claims and join an additional party is, therefore, severely untimely.

Rule 16(b)(4) provides that the Court-ordered "schedule may be modified ***only for good cause and with the judge's consent***." It is well established that "[w]hen leave to amend is sought after the deadline to amend the pleadings has passed, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a)." *Donaldson v. Carnival Corp.*, No. 20-23258-CIV, 2021 WL 65445, at *1 (S.D. Fla. Jan. 7, 2021). "That is, the movant must also show 'good cause' under Federal Rule of Civil 16(b)(4) in order to obtain the right to amend." *Id*. (citing *Sosa*

---

[1] Plaintiff's proposed First Amended Complaint mistakenly numbers Counts XII for Breach of Implied Covenant and Count XIII for Fraudulent Concealment as "Count V" and "Count VI." This Opposition will refer to these Counts by their correct numbers (i.e., Counts XII and XIII).

*v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). In other words, "[o]nly if 'good cause' for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play." *Id.*; *see also Marabella v. NCL (Bahamas), Ltd.*, No. 19-CV-25185, 2021 WL 24710, at *3 (S.D. Fla. Jan. 4, 2021) ("In this regard, a court's 'evaluation of good cause [under Rule 16] is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15.'"). "Accordingly, 'the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired.'" *Id.* (quoting *Donahay*, 243 F.R.D. at 699 citing *Sosa*, 133 F.3d at 1418).

Plaintiff's Motion, however, does not even attempt to show good cause.

However, even if Plaintiff had made an attempt to establish good cause, any such attempt would be meritless. "Good cause exists when 'evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed.'" *Marabella*, 2021 WL 24710, at *3.

None of Plaintiff's allegations supporting Counts XI, XII, or XIII were "unknown" or "discovery after the amendment deadline." To be clear, Counts XI, XII, and XIII are based upon the following allegations:

1. Mr. Cerasale allegedly been competing with and "converting clients of plaintiff … using his other businesses – specifically UNI-CA and Equicopy";

2. Mr. Cerasale allegedly "failed to disclose material information pertaining to creating [Unisource Discovery LLC and Equicopy, Inc.]"; and

3. "[t]hese foregoing acts by Steven Cerasale are direct breaches of his fiduciary duty owed to the Plaintiff."

First Am. Compl. (DE 114-1) at ¶¶ 127–131, 138–141, 143–146. None of these "facts" are new to Plaintiff.

*__On July 21, 2020__*—i.e., almost one year ago—Plaintiff filed a Counterclaim in the pending state court action styled, *Cerasale et al. v. Unisource Discovery, Inc. et al.*, Case No. 2018-036161-CA-01. A copy of that Counterclaim is attached hereto as Exhibit "1."

In that Counterclaim, Plaintiff—in no uncertain terms—alleges the following:

1. "[Mr.] Cerasale is the owner and managing member of Unisource Discovery LLC … and Equicopy, LLC., a California company";

2. "UNI-CA and Equicopy is in the same or similar business of legal support in the legal industry as Unisource [i.e., Plaintiff]";

3. "[Mr.] Cerasale, through Unisource-CA and Equicopy, is expanding its coverage-area to Florida" and "is seeking to compete and/or eliminate Unisource as competitor"; and

4. such act allegedly violated Mr. Cerasale's "obligation not to compete and interfere with Unisource's business."

Counterclaim (Exhibit 1 hereto) at ¶¶ 31–33. In fact, Plaintiff's state-court Counterclaim seeks damages against Mr. Cerasale under the identical Florida law and same underlying contract as Counts XI, XII, and XIII in the proposed First Amended Complaint. Specifically, in its state-court Counterclaim, Plaintiff raised the following claims against Mr. Cerasale: Breach of Fiduciary Duty (i.e., the same claim as Counts XI and XIII in the First Amended Complaint, which allege breach of fiduciary duty and fraudulent concealment) and "Breach of Shareholder Agreement" (i.e., the same claim as Counts XII, which alleges breach of contract under the Shareholder Agreement).

Therefore, at least as early as July 21, 2020 (*__almost one year ago__*), Plaintiff had already alleged in a state court proceeding the same exact allegations and the same claims that Plaintiff is now untimely attempting to introduce into this lawsuit via amendment. The conclusion is inescapable: Plaintiff's new state-court claims are not based upon allegations that "would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed.'" *Marabella*, 2021 WL 24710, at *3. To the contrary, Plaintiff's state-court claims are based

upon the identical (false) allegations that Plaintiff had already alleged in a state court proceeding almost one year ago.

      **B.**      **Even if Plaintiff had shown good cause (which it did not), the Motion should be denied under Rule 15 because it would cause extreme prejudice and undue delay and because the proposed amendments to the existing counts and the new counts are futile/fail to state a cause of action.**

Plaintiff did not attempt to show good cause under Rule 16. That failure mandates summary denial of Plaintiffs Motion. Plaintiff, however, improperly resorts to Rule 15(a) to argue that "there must be a 'justifying reason' for a court to deny leave." Motion (DE 114) at p.2. There are plenty of "justifying reasons" to deny Plaintiff's Motion.

To begin with, it would be extremely prejudicial to Defendants if Plaintiff were allowed to amend its Complaint to asserts its state-law claims and the claims against new party Equicopy, Inc. From its inception, this lawsuit has revolved around one core contention: that Defendants ostensibly "infringed" on Plaintiff's alleged trademark rights. Plaintiff's proposed First Amended Complaint, however, introduces a new party (Equicopy, Inc.). The proposed Amended Complaint also introduces new facts and new claims under Florida state law that have ***nothing*** at all to do with Plaintiff's alleged trademark.

The Court-imposed discovery cut-off date is July 5, 2021—i.e., less than one month away. If Plaintiff were allowed to introduce a new party, new claims, and new facts at this late stage in the litigation, Defendants would be left unable to propound new discovery and prepare for trial.

The case law upon which Plaintiff relies actually mandates against granting his Motion. For example, the court in *Taylor* held that the defendant would not be prejudiced by the amendment because "the parties [were] still in the early stages of litigation" and "discovery ha[d] not commenced and trial [was] not scheduled" for over and year and a half after plaintiff sought leave to amend. *Taylor v. Florida State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995). The facts

5

in our case are in stark contrast to those of *Taylor*. Plaintiff's untimely Motion was filed less than one month before the deadline to complete all fact discovery and less than six months before the trial date.

Second, there certainly was documented undue delay on Plaintiff's part in bringing its new claims. As explained in Section I.A above, none of the allegations supporting Plaintiff's new claims are new to the Plaintiff. To the contrary, ***almost one year ago*** (i.e., on July 21, 2020), Plaintiff filed a Counterclaim in the pending state court action where Plaintiff alleged the exact same allegations that it now seeks to introduce into this action via amendment (i.e., that Mr. Cerasale ostensibly incorporated Equicopy, Inc. and Unisource Discovery LLC to "compete and/or eliminate [Plaintiff] as competitor." Counterclaim (Exhibit 1 hereto) at ¶¶ 31–33. Because it is indisputable that Plaintiff knew about these "new" allegations almost one year ago and waited until ***five months*** after the deadline to amend pleadings to file its Motion, Plaintiff undeniably unduly delayed. By sitting on its hands and waiting until well after the Court-imposed deadlines passed, Plaintiff is abusing the privilege to amend by filling its untimely Motion now.

     **C.**     **Plaintiff's new state-law claims (Counts XI, XII, and XIII) are identical to the counterclaims Plaintiff has already asserted in the pending state-court action and, therefore, should be disallowed under the doctrine against splitting the cause of action.**

As explained in Part I.A above, Plaintiff's new state-law claims against Mr. Cerasale (i.e., Counts XI, XII, XIII) are identical or nearly identical to, and based upon the same allegations / same law / and same contract (i.e., the Shareholders' Agreement) as, Plaintiff's counterclaims against Mr. Cerasale in the pending state court action (Exhibit 1 hereto).

Specifically, Count IV of the state-court Counterclaim seeks damages against Mr. Cerasale for "Breach of Shareholders Agreement" based upon allegations that Mr. Cerasale was "seeking to compete and/or eliminate Unisource as competitor" by using "UNI-CA and Equicopy [ ] in the

same or similar business of legal support in the legal industry as [Plaintiff]." Counterclaim (Exhibit 1 hereto) at ¶¶ 31–33, 62–65.

Similarly, Counts XII of Plaintiff's proposed First Amended Complaint (DE 114-1) seeks damages against Mr. Cerasale for "Breach of Contract" based upon Mr. Cerasale's alleged breach of the same Shareholders' Agreement by "compet[ing] against Plaintiff in the same market," using "UNI-CA and Equicopy … contrary to any express provision of the … Shareholder Agreement." First Am. Compl. (DE 114-1) at ¶¶ 135–141.

Moreover, Count V of the state-court Counterclaim seeks damages against Mr. Cerasale for "Breach of Fiduciary Duty" based upon allegations that Mr. Cerasale "owed a legal and contractual fiduciary duty to [Plaintiff]" and "did not act in good faith when he undertook each of the above stated actions," which included using "UNI-CA and Equicopy [ ] in the same or similar business … as [Plaintiff]" and "seeking to compete and/or eliminate [Plaintiff] as competitor." Counterclaim (Exhibit 1 hereto) at ¶¶ 31–33, 75–81.

Similarly, Counts XI and XIII of the proposed First Amended Complaint seeks damages against Mr. Cerasale for "Breach of Fiduciary Duty" and "Fraudulent Concealment" based upon allegations that Mr. Cerasale owed "contractual fiduciary duties [ ] to Plaintiff" and breached those duties by "creating other competitive -- … Equicopy -- that could be a competitor against Plaintiff" and "fail[ing] to disclose" such competition. First Am. Compl. (DE 114-1) at ¶¶ 125 –130, 143–147.

As is clear from the above, Counts XI, XII, and XIII of the proposed First Amended Complaint and Counts IV and V of the state-court Counterclaim involve the same two parties (i.e., Plaintiff and Mr. Cerasale) and are based upon the same operative facts, the same theories of liability, the same law, and the same underlying contract. If Plaintiff's state-law claims were

allowed to proceed in this Court, then the same claims, same witnesses, and same factual and legal issues would be address simultaneously by two different courts (i.e., the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, and this Court). Such an untenable situation exposes the parties to the very real possibility of inconsistent results, inconsistent findings of facts, inconsistent interpretations of law, and possible double recovery.

"The rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action" and "is predicated on the following basic policy considerations: (1) finality in court cases promotes stability in the law; (2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and (3) multiple lawsuits cause substantial delay in the final resolution of disputes." *Dep't of Agric. & Consumer Servs. v. Mid-Fla. Growers, Inc.*, 570 So. 2d 892, 901 (Fla. 1990).

The Eleventh Circuit (as well as the Florida Supreme Court) have made the following abundantly clear: "The law presumes that a single cause of action can be tried and determined in one suit, and will not permit the plaintiff to maintain more than one action against the same party for the same cause," and "if the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary" and must be dismissed. *Bowman v. Coddington*, 517 Fed. Appx. 683, 685 (11th Cir. 2013); *see also Greene v. H & R Block E. Enterprises, Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) ("[A] plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.' ... [T]he later-filed suit [must] be dismissed if it 1) involves the same parties or their privies; and 2) arises out of the same transaction or series of transactions as the first suit.").

The plaintiff in *Bowman v. Caddington* attempted to do exactly what Plaintiff is attempting to do in this case (i.e., raise the same or similar claims in state court and federal court), and the Eleventh Circuit held that the federal court claim was properly dismissed. Specifically, the plaintiff in *Bowman* filed a lawsuit in "State Court … alleg[ing] he was a 50% owner of USSD" and "sought to dissolve USSD and sought damages from USSD and Coddington for actions involving the management of USSD." *Id.* "In the federal suit, Bowman seeks to impose successor corporate liability on FPS by claiming FPS was a continuation of or alter ego of USSD. Bowman specifically asserted that FPS was USSD." *Id.* The Eleventh Circuit held that "[a]t most, Bowman seeks a different remedy in each court, however, he has not explained why he cannot obtain the declaratory relief he seeks in federal court in the previously filed state court action." *Id.*

Like the plaintiff in *Bowman*, Plaintiff here is attempting to assert the same (or very similar) claims against Mr. Cerasale in both the state court action and this action. Plaintiff "has not explained [and cannot explain] why he cannot obtain the [same] relief he seeks in gederal court in the previously filed state court action." *Id.* Plaintiff's attempt to raise the same or similar claims in both pending actions is contrary to the rule against splitting causes of action, which "requires that all relief arising out of a single transaction or event be sought, and recovered, in one action." *Eckert Realty Corp. v. Eckert*, 941 So. 2d 426 (Fla. 4th DCA 2006); *Georgia-Pac. Corp. v. Squires Dev. Corp.*, 387 So. 2d 986, 993 (Fla. 4th DCA 1980) ("The law of this State generally provides that all damages accruing to a party as a result of a single wrongful act must be claimed and recovered in one action or not at all. This rule is designed to prevent a multiplicity of suits.").

**D.     The claims against new Defendant Equicopy, Inc. should be disallowed for several reasons.**

Although the First Amended Complaint does not raise any claims directly against Equicopy, Inc., it presumably attempts to seek damages against Equicopy, Inc. in those Counts

that are asserted against "All Defendants," i.e., Counts IV, VIII, IX, X. All such claims against Equicopy, Inc. are based upon an alleged "infringement" of Plaintiff's trademark. *See* First Am. Compl. (DE 114-1) at ¶¶ 76, 104, 110, and 117.

The claims against Equicopy, Inc. should be disallowed for several reasons.

First, as explained in Part I.A and I.B above, it is far too late in this litigation to introduce new parties. The Court-imposed deadline to join "any additional parties" was January 15, 2021 (i.e., five months ago). Additionally, the fact discovery cut-off is July 5, 2021—i.e., in less than one month. There is, therefore, no time left to flesh out through discovery what exactly is the basis of Plaintiff's claims against Equicopy, Inc. (because it is not alleged with any specificity in the First Amended Complaint)—i.e., what did Equicopy, Inc. ostensibly do or not do to warrant being sued by Plaintiff? When did Equicopy, Inc. ostensibly do or not do the alleged wrongs? How did Equicopy, Inc.'s acts or omission harm Plaintiff?

Importantly, the First Amended Complaint's allegations relating to Equicopy, Inc. do not support any claim against Equicopy, Inc. Each such allegation will be addressed below.

First, Plaintiff alleges that "Unisource California, Equicopy, and Steven Cerasale—acted in conspiracy and intended to cause devastating damage to Plaintiff … by engaging in a scheme comprising specific and intentional torts" and they "knew these improper and unlawful actions would have devastating effects." First Am. Compl. (DE 114-1) at ¶ 9. For self-evident reasons, this allegation is completely conclusory and cannot support a claims against Equicopy, Inc. Moreover, the Amended Complaint does not allege or raise any claim for "conspiracy."

Second, Plaintiff alleges that "Equicopy has repeatedly offered to sell and sold trademark-infringing products" through "an interactive website … where Floridians can order the accused products." First Am. Comp. (DE 114-1) at ¶ 11. This is the only allegation in the First Amended

Complaint (made in the background allegations) that in any way relates to Equicopy, Inc. ostensibly doing anything relating to Plaintiff's alleged trademark.

However, because the First Amended Complaint lumps together all Defendants (including Equicopy, Inc.) as having allegedly "infringed" on Plaintiff's alleged trademark in Counts IV, VIII, IX, X, "it is unclear which allegations are aimed directly at [which] Defendant and whether Plaintiff intends to assert a claim of direct or contributory infringement against [any of the] Defendant." *Mainstream Advert., Inc. v. Moniker Online Services, LLC*, 16-CV-61316, 2016 WL 4729647, at *5 (S.D. Fla. Sept. 12, 2016). "[W]hen a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant. … Indeed, a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8." *Id.*

Finally, every other allegations in the First Amended Complaint relating to Equicopy, Inc. relates to the alleged "Unisource Software Programs"—which are alleged to support the state law claims against only Mr. Cerasale (Counts XI, XII, XIII) and do not relate to any claim asserted against Equicopy, Inc. *See* First Am. Compl. at ¶¶ 48–53, 127, 139, 143.

## II. Plaintiff's allegations relating to "Alter-Ego" should be disallowed/stricken.

Plaintiff's Motion should also be denied as to the gratuitous and conclusory "alter-ego" allegations of paragraph 13–17. *See* Am. Compl. (DE 114-1) at ¶¶ 13–17.

To be clear, the proposed First Amended Complaint ***does not*** raise a single claim against any Defendant on the basis of "alter-ego." For this reason alone, Plaintiff's allegations relating to "alter-ego" (i.e., paragraph 13–17) should be disallowed / stricken as redundant, immaterial, and impertinent. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter.").

11

Moreover, it is entirely unclear for what purpose Plaintiff makes such "alter-ego" allegations. Does Plaintiff intend to pierce the corporate veil and seek damages against Mr. Cerasale for the torts of Unisource Discovery LLC? Does Plaintiff intend to pierce the corporate veil and seek damages against Mr. Cerasale for some unalleged tort of Equicopy Inc.? Does Plaintiff intend to "reverse pierce" Mr. Cerasale and seek damages against Equicopy Inc. for Mr. Cerasale's alleged torts? Does Plaintiff intend to establish personal jurisdiction over Equicopy Inc. under an "alter-ego" theory? The First Amended Complaint does not even suggest an answer.

Finally, even if the First Amended Complaint had attempted to raise an "alter-ego" claim (which it did not), the First Amended Complaint does not allege any facts to state such a claim. Rather, the First Amended Complaint alleges the following conclusions:

4. "Cerasale controls and directs the activities of UNI-CA and Equicopy."

5. "Cerasale is a managing member, officer, and director of UNI-CA and Equicopy";

6. "there existed … a unity of interest in ownership between … Cerasale and UNI-CA and between … Cerasale and Equicopy";

7. "Cerasale uses Equicopy and UNI-CA as an instrumentality to carry-out his wrongful and unlawful acts against Plaintiff";

8. "UNI-CA and Equicopy was conceived, established, intended and used by … Cerasale as a device to avoid individual liability";

First Am. Compl. (DE 114-1) at ¶¶ 13–17. The First Amended Complaint is completely devoid of any other allegations regarding "alter-ego."

To allege a claim for "alter ego" liability, the plaintiff must allege that the "fraudulent or improper use of the corporate form ***caused injury to the claimant***." *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (emphasis added); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("To 'pierce the corporate veil' [it] …

must be proven … [that] the fraudulent or improper use of the corporate form caused injury to the claimant.").

In other words, the plaintiff must allege that the defendant's ***misuse of the corporate form*** (itself) is what caused the injury to the plaintiff. Florida law is clear: "[c]ausing a corporation to … commit conversion, without more, does not mislead or defraud creditors such that the corporate veil should be pierced" under an "alter-ego" theory. *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299, 1308 (M.D. Fla. 2009). Rather, the plaintiff must allege that the corporate form was misused in such a way that it caused harm to the plaintiff—i.e., the "alter ego [defendant] transfer[ed] funds out of the corporation such that the corporation's creditors cannot collect on their claim." *Id.*

The First Amended Complaint does not come close to alleging the necessary causation for "alter-ego" liability. To the contrary, Plaintiff merely alleges—in completely conclusory terms— that "[Mr.] Cerasale use[d] Equicopy and UNI-CA as an instrumentality to carry-out his wrongful and unlawful acts against Plaintiff." Florida law requires more.

In fact, courts have routinely rejected allegations almost identical to those of Plaintiff's Amended Complaint.

For example, the Southern District of Florida dismissed an "alter-ego" claim, holding that the following allegations are "conclusory allegations [that] have not alleged sufficient information to pierce the corporate veils …, nor do they adequately set forth allegations to support any claim that any of the Defendants is the alter ego of another": allegations that (1) "[t]here existed a unity of interest in ownership between Defendants such that there is no individuality or separateness between them"; (2) Defendants are alter egos of one another and exert control over each other"; (3) "[t]hey shared officers and made all decisions … with a uniform voice"; and (4) "defendants

13

acted in concert with respect to the conduct described herein." *Borchardt v. Mako Marine Intern., Inc.*, 08-61199-CIV, 2009 WL 3856678, at \*6 (S.D. Fla. Nov. 17, 2009).

Additionally, the court in *Parisi v. Kingston* held that "the amended complaint merely alleges, in conclusory fashion, that 'Oxen Group is operated as the alter-ego of Parisi, and was used fraudulently for the improper purpose of defrauding Decedent and the Estate and stealing the property that rightfully belonged to the Decedent and rightfully belongs to the Estate' .… These allegations are not only insufficient to pierce the corporate veil of Oxen Group, but also are wholly insufficient to establish personal jurisdiction over Parisi under the alter-ego theory." 314 So. 3d 656, 664–65 (Fla. 3d DCA 2021).

### III.   Count VIII should be disallowed because it is entirely duplicative of Count IV.

Count IV attempts to allege a claim for "Florida Common Law Unfair Competition" and alleges that (1) "Defendants have infringed Unisource's Mark in violation of its trademark rights"; (2) "Defendants have demonstrated a deliberate intent"; (3) "Defendants' deliberate use of Unisource's Mark … is likely to cause confusion"; and (4) "[t]his conduct constitutes unfair competition under Florida common law."  *See* First Am, Comp. (DE 114-1) at ¶¶ 76–81.

Count VIII attempts to allege a claim for "Unfair Competition (Florida Common Law)" and alleges that (1) Defendants have "misappropriat[ed] and us[ed] the identical and therefore confusingly similar 'UNISOURCE' name"; (2) "Defendants have falsely designated and falsely represented that the goods they promote … are connected with, authorized by, or otherwise associated with [Plainitff], who owns a federal registration for its [ ] Trademark"; (3) "Defendants' actions have been willful [and] deliberate"; and (4) "Defendants' actions constitute unfair competition under Florida common law." *Id.* at ¶¶ 104–108.

14

As is evidently clear from the above, Counts IV and VIII are the same claim, raised against the same Defendants, and based upon the same allegations and the same law. Count VIII, therefore, should be disallowed / stricken as duplicative / redundant.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on June 11, 2021, on all counsel or parties of record on the Service List below.

    /s/ Victor M. Velarde
    Victor M. Velarde

| **SERVICE LIST**<br>*Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale*<br>**Case No. 20-CIV-23276-DPG** | |
|---|---|
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |

16