**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE   DISCOVERY,   LLC,   a
California limited liability company, and
STEVEN A. CERASALE, individually.

      Defendants.

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT (DE 141)**

Defendants, Unisource Discovery, LLC ("Unisource") and Steven A. Cerasale

("Mr. Cerasale"), by and through their undersigned counsel, file their Response in Opposition to

Plaintiff, Unisource Discovery, Inc.'s Motion for Partial Summary Judgment Against Count I of

Defendants' Counterclaim for Cancellation of Trademark (DE 141).

## INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment against Defendants' Counterclaim for Cancellation of Trademark (DE 141) should be denied for several fundamental reasons.

First, the Counterclaim for Cancellation of Trademark specifically and completely pleads fraud.

Second, the statute of limitations does not bar Defendants' Counterclaim for Cancellation of Trademark on the basis of Plaintiff's fraud to the USPTO.

Third, contrary to Plaintiff's red-herring argument, the Counterclaim for Cancellation of Trademark is based upon Plaintiff's fraud upon the USPTO, not upon "prior use in commerce." Plaintiff's argument regarding "prior use" is, therefore, irrelevant and does not support summary judgment. And even if it were relevant, Defendants' prior use of the Mark is undisputed.

Fourth, Plaintiff's argument regarding Defendants' Affirmative Defenses does not support his Motion for several reasons. To begin with, Plaintiff is not seeking summary judgment as to any of its claim. Defendants' Affirmative Defenses to Plaintiff's claims, therefore, do not affect Plaintiff's motion. Nonetheless, even if they were relevant to the analysis, Defendants' Affirmative Defenses are supported by the undisputed material facts.

Fifth, Plaintiff's Motion is procedurally flawed because it was not accompanied by a separate and contemporaneously filed and served Statement of Material Facts.

## ARGUMENT

**I.      The Counterclaim for Cancellation of Trademark specifically and completely pleads fraud.**

Plaintiff first argues that Defendants' Counterclaim for Cancellation of Trademark fails because the allegations "fall[] far short of alleging fraud with particularity, and it is unclear from the allegation … what exact statement or representation was misleading." Motion (DE 141) at p. 7. A cursory review of the Counterclaim's allegations conclusively refutes this argument.

"Rule 9(b) is satisfied when the complaint states (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation omitted).

It cannot be disputed (in good faith) that Defendants' Counterclaim satisfies the requirements of Rule 9(b).

As to the first requirement (i.e., "precisely what statements were made in what documents"), the Counterclaim specifically alleges that Plaintiff's "Trademark registration application included the following material misrepresentations:

> 1)    that Unisource-Florida was the 'owner' of the Mark when, in reality, Unisource was the owner;
> 2)    that Unisource-Florida first used the Mark 'as early as March 1, 2001' when, in reality, Unisource-Florida did not use the Mark until after it was incorporated in June 2006; and
> 3)    that 'no other person, firm, corporation, or association has the right to use the [M]ark in commerce' knowing full well that Unisource and Mr. Cerasale were the owners of the Mark, had been using the Mark since 2001, and had every right to continue to use the Mark."

Counterclaim (DE 81-1) at ¶ 30; *see also id*. at ¶¶ 68–72. In other words, the Counterclaim specifically quotes the exact misrepresentations Plaintiff made and identifies the document where the Plaintiff made those misrepresentations (i.e., in Plaintiff's trademark registration application).

As to the second requirement (i.e., "the time and place of each such statement and the person responsible for making … same"), the Counterclaim specifically alleges that "[o]n October 15, 2008, Unisource Florida (through Noel Mijares) filed a registration with the U.S. Patent and Trademark Office to register the Mark," which contained the misrepresentations. *Id*. at ¶ 29.

As to the third requirement (i.e., "the content of such statements and the manner in which they misled"), Defendants set forth—with direct quotations—the content of each of Plaintiff's misrepresentations. *Id.* at ¶¶ 30, 66–71. Defendants also alleged the way in which such misrepresentations misled—i.e., Plaintiff secured the trademark registration by misleading the USPTO.

As to the fourth and final requirement (i.e., "what the defendants obtained as a consequence of the fraud"), the Counterclaim specifically alleges that Plaintiff's fraud caused the USPTO to register the trademark. *Id.* at ¶ 72.

Plaintiff's argument that Defendants' Counterclaim fails to plead fraud with particularity, thus, fails as a matter of law.

## II.     The statute of limitations does not bar Defendants' Counterclaim for Cancellation of the Trademark on the basis of Plaintiff's fraud to the USPTO.

Next, Plaintiff's Motion (DE 141) makes the same argument that the Court has already considered, heard argument of counsel, and ruled against. Specifically, "Plaintiff argues that … the cancellation claim is barred by the applicable statute of limitations." Motion (DE 141) at pp. 6, 8 ("The pertinent limitations period for this type of action in Florida in four years."). Plaintiff's argument fails as a matter of law for several reasons.

3

As previously explained in this litigation, this exact argument has been expressly (and repeatedly) rejected by the courts—including this Court.

For example, the plaintiff in *Marshak v. Treadwell* "argue[d] that the fraudulent procurement defense and counterclaim are time-barred," and the court ruled that "a claim for cancellation of a mark based on fraudulent procurement and a defense to an otherwise incontestable mark on a similar ground ***may be asserted at any time***" and are not time-barred by any statute of limitations. 240 F.3d 184, 192–94 (3d Cir. 2001) (emphasis added).

In another example, the plaintiff in *Progressive Emu, Inc. v. Nutrition & Fitness, Inc.* sought to amend its complaint to "add[] a new 'Count V,' seeking 'cancellation of registration'" on the basis of fraud, and the defendant argued that the subject "trademark was registered in 2002 … [which] is many years too late to meet … [the] state of limitations for fraud claims." 2013 WL 12133659, at *3 (N.D. Ala. Oct. 18, 2013). The court disagreed. "[C]ancellation claims for fraud … can be brought '***at any time***.'" *Id*. at *5 (emphasis added).

In yet another example, the court in *Kelly v. Estate of Arnone ex rel. Ahern* held that "actions to cancel a registration based on fraudulent procurement … ***may be brought at any time*** and are not subject to a statute of limitations." 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009) (emphasis added).

The reason for these rulings is clear. Although the Lanham Act does not have a statute of limitations for infringement claims for damages, the Lanham Act ***does*** have a statute of limitations for trademark-cancellation claims. Under Section 1064, claims to "cancel a registration of a mark" must be brought "[w]ithin five years from the date of the registration" ***unless*** the "registration was obtained fraudulently." 15 U.S.C.A. § 1064(1) and (3). When the trademark "registration was obtained fraudulently," the cancellation claim may be brought "[a]t any time." *Id*.

4

"The reason for this rule is quite simple—the interest vindicated by Section 14 [for fraud-based cancellation of trademarks] is not just the injury to the challenging party, but the integrity of the register. Where the interest at issue is the integrity of the federal register, a statute of limitations should not operate to frustrate that interest." *Marshak*, 240 F.3d at 194.

Defendants' Counterclaim seeks a declaration cancelling Plaintiff's trademark because Plaintiff "procured its registration via ***fraud***." *See* Counterclaim (DE 81-2) at p. 11 ("Trademark Registration No. 3,634,516 (Serial No. 77594059) should be cancelled ***due to Plaintiff's fraud*** on the United States Patent and Trademark Office …") (emphasis added); *see also id*. at p. 23 ("[Plaintiff] procured its registration via fraud ….").

Under the plain wording of the Lanham Act and the applicable case law, Defendants' Counterclaim to cancel Plaintiff's trademark registration is not time-barred.

Although the above legal authorities mandate summary denial of Plaintiff's argument, Defendants will also address the case law cited by Plaintiff.

Plaintiff cites *Kason Indus., Inc. v. Component Hardware Group, Inc.* and *Ares Defense Systems, Inc. v. Karras* to support its "statute of limitations" argument. Neither of these cases support Plaintiff's argument.

Simply put, *Kason Indus., Inc.* and *Ares Defense Systems, Inc.* ***do not*** relate to claims for cancellation of trademarks. The plaintiff in *Kason Indus., Inc.* "brought claims for both monetary and injunctive relief … under … 15 U.S.C. § 1125(a) [i.e., for false designation of origin], the Georgia Fair Business Practices Act, … and state common-law claims of trademark infringement and unfair competition." *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1201 (11th Cir. 1997). Similarly, the plaintiff in *Ares Defense Systems, Inc.* filed claims "for

5

allegedly infringing its rights in the [ ] mark in violation of the Lanham Act." *Ares Def. Sys., Inc. v. Karras*, 615CV1107ORL22DAB, 2016 WL 1554127, at *1 (M.D. Fla. Apr. 18, 2016).

Because neither case Plaintiff cites relates to claims for cancellation of trademark, the "statute of limitation" analysis in those cases are completely inapposite.

Moreover, it is well established that under Florida law, "[t]here is no statute of limitation defense as to a compulsory counterclaim." *Stein v. Feingold*, 629 So. 2d 998, 999 (Fla. 3d DCA 1993). "[O]nce a party files an affirmative action, he cannot thereafter profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from that action." *Allie v. Ionata*, 503 So. 2d 1237, 1240 (Fla. 1987).

Plaintiff's then states that "Defendants fail to plead any legally justifiable reason(s) for the twelve years per se delay to cancel Plaintiff's trademark." Motion (DE 141) at p. 9. For numerous reasons, this assertion is not only irrelevant, but it is also meritless.

First, when Defendants "discovered" Plaintiff's fraud is irrelevant because (as explained above) the statute of limitations does not apply to Defendants' claim for cancellation on the basis of fraud.

Equally important, Defendants did not delay in asserting their cancellation of trademark claim. As noted in Plaintiff's Motion, binding precedent provides that "delay is to be measured from the time at which the [party] knows or should know [they have] a provable claim." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1206 (11th Cir. 1997).

Defendants have repeatedly made clear that "Defendants did not learn of the facts underlying their … Counterclaim until January 27, 2021 … and February 4, 2021" as a consequence of Plaintiff's delays in responding to Defendants discovery requests. *See* Motion (DE 81) at p. 2; *see also* Declaration of Defendants (DE 148-1) at ¶ 31. The day after learning of

the misrepresentations, Defendants (through counsel) attempted to confer with Plaintiff's counsel about the trademark cancellation claim. Shortly thereafter, on March 24, 2021, Defendants filed their proposed Counterclaim for Cancellation of Trademark. Proposed Counterclaim (DE 81-2). Accordingly, not only did Defendants not delay, but it was actually Plaintiff who unduly delayed in responding to discovery requests that revealed the basis for the Counterclaim. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986).

### III.   The Counterclaim is not based upon "prior use"; it is based upon Plaintiff's fraud upon the USPTO.

Plaintiff next argues that "[t]o state a claim for trademark infringement, a plaintiff must plead, among other elements, prior use of the mark in commerce," and the Counterclaim fails to make this allegation. Motion (DE 141) at p. 10. This argument is without merit.

To begin with, Defendants are not "stat[ing] a claim for trademark infringement." Rather, Defendants are seeking to cancel the trademark as a result of Plaintiff's fraud upon the USPTO. "Prior use" is not an essential element of a claim for trademark infringement on the basis of fraud. Plaintiff's argument, therefore, is a red herring.

Second, Plaintiff has repeatedly admitted (and cannot deny) that Defendants, in fact, did use the subject Mark years before Plaintiff was even incorporated—i.e., it is undisputed that Defendants used the subject Mark before Plaintiff. Specifically, in response to Plaintiff's Second Set of Requests for Admission, Plaintiff stated as follows: "[Defendant] Unisource Discovery, LLC ___used [ ] the name and logo prior to 2006___"—i.e., before Plaintiff was incorporated. Plaintiff's Response to Second Request for Admissions (DE 148-5); *see also* Plaintiff Dep. (DE 148-12) at 211:18–19 (admitting that Defendants created the Mark); Plaintiff Dep. (DE 148-12) at 18:24–19:1 ("[I]n 2000, 2001, that's when [Mr. Cerasale] … opened Unisource Discovery, LLC. So yes, I knew all about it, of course.").

Third, the Counterclaim specifically alleges that "Mr. Cerasale and Unisource California had been using the 'Unisource Discovery Digital Document Retrieval' name and the Mark before 2006" in commerce. *See* Proposed Counterclaim (DE 81-1) at ¶¶ 66–68. Plaintiff's argument that the Counterclaim fails because it did not allege "prior use" necessary to establish "a claim for trademark infringement" is conclusively refuted by the Counterclaim's clear allegations. Motion (DE 141) at p. 11.

Fourth, there is evidence in the record of Defendants' "prior use," which was submitted to the Court on February 22, 2021 (i.e., five months before Plaintiff's Motion). *See* (DE 58-2) (setting forth a January 11, 2002 print-out of Defendants' website using the subject mark in commerce).

Finally, Plaintiff argues that the "allegations do not allege Defendants continuously used the misappropriated products, prior to Plaintiff, 'in a way sufficiently public to identify … the marked goods as belonging to Defendants.'" Motion (DE 141) at. p. 11. Plaintiff's argument completely ignores the factual allegations set forth in Defendants' Counterclaim.

The Counterclaim specifically alleges that "In 2001, Mr. Cerasale and Unisource California created the … Mark"; that "Mr. Cerasale and Unisource California were (and continue to be) in the business of providing state-of-the-art document retrieval and management services to their customers nationwide," and that "[f]or more than twenty years (i.e., since its inception in 2001 through to the present), Mr. Cerasale and Unisource California have been using the Mark on its website, in its marketing materials, and throughout its business activities." Proposed Counterclaim (DE 81-1) at ¶¶ 7–11. The Counterclaim also alleges that "the 'Unisource Discovery Digital Document Retrieval' name is—and has been since 2001—the name of Unisource California's business and is otherwise descriptive of the services of Unisource California." *Id*. at ¶ 100. Plaintiff's argument that Defendants did not allege continuous use "of the misappropriated

8

products, prior to Plaintiff, in a way sufficiently public to identify the marked goods as belonging to Defendants" is, thus, conclusively refuted by the Counterclaim's allegations.

Moreover, Plaintiff's argument is also conclusively refuted by Plaintiff's own admissions. Plaintiff has admitted that it knew, on or about 2005 or early 2006,  that Unisource California was formed in 2000 or 2001 and that the Mark was being used in commerce by Unisource California at that time. Plaintiff Dep. (DE 148-12) at 18:24–19:1, 25:11–15; 140:9–17. Notably, Plaintiff specifically admitted that Mr. Cerasale created the name and Mark. *Id*. 211:18–19 ("Steven Cerasale, when he created the logo and the name at the beginning …").

Thus, while the Counterclaim for Cancellation of Trademark is based upon Plaintiff's fraud upon the USPTO, not upon "prior use in commerce," Plaintiff's argument fails as a matter of law because Defendants' prior use of the mark is undisputed.

## IV.     The Counterclaim adequately alleges the elements of trademark cancellation.

Next, Plaintiff argues that Defendants' Counterclaim fails to plead the elements of trademark cancellation. Plaintiff's argument is defeated by binding precedent.

As Plaintiff noted, "[i]n order to prosecute successfully a petition for cancellation, petitioner must prove: (1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991).

As to the first element, Defendants undeniably have standing to seek cancellation. "Courts in this district have held that the Defendant's standing to bring an action to cancel Plaintiff's trademark registrations is inherent in its position as a defendant in the original proceeding. … It is clear from [the party's] position as defendant in the main lawsuit that it may be damaged by the Plaintiff's trademark registration." *Amerikooler, LLC v. Coolstructures, Inc.*, 17-24420-CIV, 2019

WL 2373560, at *2–3 (S.D. Fla. June 5, 2019). Accordingly, Defendants certainly have standing to cancel Plaintiff's trademark registration.

As to the second element, Plaintiff's fraud upon the USPTO "valid grounds for discontinuing registration." *Coach House Rest., Inc.*, 934 F.2d at 1557. The Eleventh Circuit has held that "[p]urposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008). The Lanham Act also confirmed that a "registration [that] was obtained fraudulently" is a valid basis for cancellation of the trademark "at any time." 15 U.S.C. § 1064(3).

As to the second element, Plaintiff argues that "[p]ursuant to 15 U.S.C. § 1064, a mark registered beyond five (5) years can only be cancelled on limited grounds" Motion (DE 141) at p. 12. As explained above, this analysis does not apply to a claim for cancellation based upon fraud. All of the cases Plaintiff cites in support of its argument are inapposite because they involved cancellation claims brought under 15 U.S.C. § 1064(1) and not on the basis of fraud pursuant to 15 U.S.C. § 1604(3). *Coach House*, 934 F.2d at 1556 ("Coach House petitioned … to cancel the registration of the service mark because Coach House has the prior trade identity rights in the mark."); *see also Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 1333 (M.D. Fla. 1998) (considering a trademark cancellation claim based upon "prior use of a confusingly similar mark" because "the allegation of non-use in commerce is a proper ground [for cancellation]"). Defendants' Counterclaim is based upon Plaintiff's fraud upon the USPTO, not upon "prior use in commerce."

Next Plaintiff argues that Defendants have not disclosed when they allegedly learned of the fraud. Motion (DE 141) at p. 13. Contrary to Plaintiff's contention, Defendants have repeatedly

10

made clear that "Defendants did not learn of the facts underlying their … Counterclaim until January 27, 2021 … and February 4, 2021" as a consequence of Plaintiff's delays in responding to Defendants discovery requests. *See* Motion (DE 81) at p. 2; *see also* Declaration of Defendants (DE 148-1) at ¶ 30.

Finally, Plaintiff argues that "the Defendants allegations concerning the grounds for cancellation are completely conclusory." Motion (DE 141) at p. 13. While Plaintiff does not offer any support for its position, Plaintiff's argument is patently false.

Specifically, Defendants' Counterclaim alleges that "Unisource Florida falsely claimed it was the 'owner' of the Mark and 'no other person, firm, corporation, or association has the right to use the [M]ark in commerce' knowing full well that Unisource California was the owner of the Mark, had been using the Mark since 2001, and had every right to continue using the Mark" and that "Unisource Florida, in failing to disclose these material facts to the USPTO, intended to procure a registration to which it was not entitled." Counterclaim (DE 81-1) at ¶¶ 30(c), 72. As to "who," these allegations specifically allege that Plaintiff made a material misrepresentation and "what" the content of the misrepresentation consisted of. Moreover, as to "when," "where," and "how," the Counterclaim specifically alleges that "[o]n October 15, 2008, Unisource Florida (through Noel Mijares) filed a registration with the U.S. Patent and Trademark Office to register the Mark." *Id*. at ¶ 29.

**V.     Plaintiff's contention that Defendants' "affirmative defenses will not prevent the entry of Plaintiff's summary judgment" is inapposite and does not support the Motion for Summary Judgment.**

Finally, Plaintiff argues that "Defendants affirmative defenses do not prevent the entry of summary judgment" in Plaintiff's favor. Motion (DE 141) at p. 16. This argument is meritless for several reasons.

To begin with, Plaintiff is not seeking summary judgment as to any of Plaintiff's claims. Defendants' Affirmative Defenses to Plaintiff's claims, therefore, have nothing to do with Plaintiff's Motion for Summary Judgment. What does Defendants' Affirmative Defenses to Plaintiff's claims have to do with Plaintiff's Motion for Summary Judgment as to the Counterclaim?

In the event the Court considers Plaintiff's argument regarding Defendants' Affirmative Defenses (which Defendants respectfully submit is irrelevant), Defendants will address Plaintiff's argument below.

**A.     Defendants' Affirmative Defenses of Naked License and Estoppel are supported by the undisputed facts.**

Plaintiff argues that summary judgment is not precluded by Defendants' naked license defense because (1) "the Plaintiff has been continuously using the Mark for over fifteen years without interruption," and (2) "Defendants employ the catch-phrase naked license that is entirely undefined and therefore has no bearing on the entry of summary judgment as a matter of law." Motion (DE 141) at pp. 15–16. Plaintiff's argument does not make sense.

Whether "Plaintiff has been continuously using the Mark" is completely irrelevant to Defendants' "Naked License" Affirmative Defense. Pursuant to binding precedent, "[t]he owner of a trademark has not only a right to license the use of his trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark." *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123–24 (5th Cir. 1973). [1] "Failure to exercise such control and supervision for a significant period of time may estop the trademark owner from challenging the use of the mark and business which the licensee has developed during the period of such unsupervised use." *Id*. at 124. "This principle is an analogue to the estoppel against a trademark

---

[1] *See, e.g.*, *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (recognizing that Fifth Circuit decisions prior to September 30, 1981 are binding on the Eleventh Circuit).

owner who knowingly sits silently by while infringers use his trademark over a significant period of time." *Id*.

In other words, Plaintiff's use of the Mark without interruption is wholly irrelevant. Rather, it is a Defendants' unrestricted use of the Mark that is determinative.

And Plaintiff's own admissions also conclusively establish that Plaintiff did not exercise any control or supervision over the subject Mark for a period of at least eleven years. Specifically, Plaintiff admitted at his deposition that Defendants used the Mark in commerce as early as 2006, and their use of the Mark "not changed—or did not need to be changed between 2005 and 2006, all the way through, let's say 2009." Plaintiff Dep. (DE 148-12) at 212:6–13; *see also id*. at 213:1– 18. Plaintiff further admitted that after 2009, Defendants continued to use the Mark without interference until February 21, 2020. *Id*. at 211:3–13 ("Q. … [F]rom 2009 to … February 2020 Unisource Discovery, LLC was fine to use the trademark without any licensing agreement necessary because that was the way [Plaintiff was] doing business since 2006 … and Unisource Discovery, LLC would continue to use the trademark, essentially the same way they used the mark before this trademark, right? A. Correct."); *see also id*. at 216:5–9 (Defendants "continued to use the mark without interference, if you will, until February 21, 2020, correct? A. Correct.").

Pursuant to binding precedent, Plaintiff should be estopped from challenging Mr. Cerasale and Unisource's use of the Mark. In *Shiela Shine*, the court "h[e]ld that SS California is estopped to challenge the business which SS Florida has built up under the mark Sheila Shine," due to the "undisputed failure by the [trademark owner] to exercise any supervision or control over the activities of Pan American or its successor SS Florida" for a period of six years. *Id*. at 124–25.

13

**B.**     **Defendants' Affirmative Defense of First Use is conclusively established by the undisputed facts.**

Plaintiff next argues that summary judgment is not precluded by Defendants' Affirmative Defense of First Use because Plaintiff registered the mark after its ownership was transferred to Plaintiff in 2006 and "[i]f anything, the Plaintiff provided the Defendants a conditional license that was revoked." Motion (DE 141) p. 15. Again, Plaintiff's arguments are conclusively refuted by Plaintiff's own admissions and, thus, fail as a matter of law.

As noted above, contrary to Plaintiff's contention that it provided Defendants a conditional license that was revoked, Plaintiff admitted that "the company never felt the need to have a license agreement during that time" (i.e. from 2009 to February 2020). Plaintiff Dep. (DE 148-12) at 211:3–212:8; *see also id*. at 211:3–13 ("***[F]rom 2009 to … February 2020 Unisource Discovery, LLC was fine to use the trademark without any licensing agreement*** necessary because was the way you were doing business since 2006 … and Unisource Discovery, LLC would continue to use the trademark, essentially the same way they used the mark before this trademark, right? A. ***Correct***.") (emphases added).

It is well established that "[r]ights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080–81 (11th Cir. 2016) (quoting *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015)).

It is undisputed that Mr. Cerasale and Unisource first used the mark in commerce. As noted above, Plaintiff admitted that on or about 2005 or early 2006,  Plaintiff knew that Unisource California was formed in 2000 or 2001, Plaintiff Dep. (DE 148-12) at 18:24–19:1, and that it was using the subject Mark in commerce at that time. *Id*. 25:11–15; *see also id*. 140:9–17. Notably,

Plaintiff specifically admitted that Mr. Cerasale created the name and Mark. *Id*. 211:18–19 ("Steven Cerasale … created the logo and the name").

> ### C.   Defendants' Affirmative Defense of Cancellation is supported by the undisputed facts.

Finally, Plaintiff argues that summary judgment is not precluded by Defendants' Affirmative Defense of Cancellation. Motion (DE 141) p. 16. Again, Plaintiff's argument fails as a matter of law because it is conclusively refuted by Plaintiff's own admissions and binding precedent.

As previously noted, Plaintiff knew that Defendants had been using the name and Mark "Unisource Discovery" in commerce prior to 2006 when Mr. Cerasale partnered with Noel Mijares to jointly incorporate Plaintiff. In particular, Plaintiff admitted that, as of the time of the parties initial meeting in 2006, Plaintiff knew that Mr. Cerasale was operating a document retrieval business under the name Unisource Discovery, LLC. Plaintiff Dep. (DE 148-12) at 18:4–14. Plaintiff further admitted that as of 2005 or early 2006, it knew that Unisource California was formed in 2000 or 2001, *id*. 18:24–19:1, and admitted that it knew the Mark was being used by Unisource California in commerce at that time. *Id*. 25:11–15; *see also id*. 140:9–17. Moreover, Plaintiff also admitted that Mr. Cerasale created the name and Mark. *Id*. 211:18–19.

Plaintiff also admitted that Unisource Discovery, LLC had the right to use the Mark in commerce (without interference) from 2006 through to 2009. *Id*. 214:20–24 ("Q. … So that's correct: that Unisource Discovery, LLC had the right to use the mark in its business from 2006 to 2009, right? A. Yes."); *id*. at 216:5–9 ("Q. And [Defendants] continued to use the mark to the present, but at least they continued to use the mark without interference, if you will, until February 21, 2020, correct? A. Correct."); *id*. at 215:10–15 ("Q. Unisource Discovery, LLC has used the mark from 2016 through 2020 without restriction, correct? … A. I said, 'Yes. Correct.'").

Despite Plaintiff's self-admitted knowledge, Plaintiff's trademark registration application included the following material misrepresentations:

(1)     that Plaintiff was the "owner" of the Mark when, in reality, Unisource was the owner;

(2)     that Plaintiff first used the Mark "as early as March 1, 2001" when, in reality, Plaintiff did not use the Mark until after it was incorporated in June 2006; and

(3)     that "no other person, firm, corporation, or association has the right to use the [M]ark in commerce" knowing full well that Unisource and Mr. Cerasale were the owners of the Mark, had been using the Mark since 2001, and had every right to continue to use the Mark.

Plaintiff further admitted that Noel Mijares (not Defendnats) commissioned, reviewed, and signed the trademark registration application on behalf of Plaintiff. Plaintiff Dep. (DE 148-12) at 142:20–21, 145:17–19, 150:2–25. "An applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1289 (11th Cir. 2012) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). "Fraud further requires a purpose or intent to deceive the PTO in the application for the mark." *Id.*; *see also Angel Flight*, 522 F.3d at 1210–11 (affirming cancellation on the basis of the applicant's purposeful failure to disclose a superior user of the mark).

Moreover, Plaintiff (through Noel Mijares) acknowledged that it was "warned that willful false statements and the like so made are punishable by fine or imprisonment, or both," that such

misrepresentations "may jeopardize the validity of the application or any resulting registration," and went on to declare "that all statements made of his [ ] own knowledge are true; and that all statements made on information and belief are believed to be true." *See* Trademark Registration Application (DE 148-4) at p. 4.

The undisputed facts show that Plaintiff knowingly made false material misrepresentations of fact in its trademark registration application. It is well established that "[p]urposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight*, 522 F.3d at 1210. In *Angel Flight*, the Eleventh Circuit affirmed the cancellation of a trademark due to the applicant's knowledge that another organization was using the mark at the time the registration application was filed, but failed to disclose such information to the USPTO. *Id.* at 1210–11.

**VI.      Plaintiff's Motion should be denied because it fails to comply with Local Rule 56.1.**

Plaintiff's Motion also should be denied because it is procedurally flawed. Specifically, the Motion fails to comply with Local Rule 56.1, which provides that "[a] motion for summary judgment and the opposition to it shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts." Local Rule 56.1(a)(1). In this case, Plaintiff failed to file a separate statement of material facts as required by the Local Rules. Instead, the Motion merely includes a section of "Relevant Facts" without citations to any evidence on the record. Motion (DE 141) at pp. 2–4.

Additionally, Plaintiff failed to comply with the requirement that statements of material facts shall "[c]onsist of separately numbered paragraphs, limited as far as practicable to a single material fact, with each fact supported by specific, pinpoint references to particular parts of record material." Local Rule 56.1(b)(1)(B). The Motion's "Relevant Facts" section consists of unnumbered paragraphs that are not limited to a single material fact or supported by specific

references to the record. Plaintiff's noncompliance also negatively impacts Defendants' ability to comply with the requirement that "an opponent's Statement of Material Facts shall correspond with the order and paragraph numbering format used by the movant." *Id*. at (b)(2)(A).

"If a party files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate." Fed. R. Civ. P. Local Rule 56.1(d).

<u>**CONCLUSION**</u>

For the forgoing reasons, Defendants, Unisource Discovery, LLC and Steven A. Cerasale, respectfully request this Court to deny Plaintiff's, Unisource Discovery, Inc., Motion for Partial Summary Judgment against Count I of Defendants' Counterclaim for Cancellation of Trademark.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice

of Electronic Filing generated by CM/ECF, on August 6, 2021, on all counsel or parties of record

on the Service List below.

 /s/ Victor M. Velarde
Victor M. Velarde

| **SERVICE LIST**<br>*Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale*<br>**Case No. 20-CIV-23276-DPG** | |
|---|---|
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |