**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
      Plaintiff,
v.

UNISOURCE DISCOVERY, LLC, a
California limited liability company, and
STEVEN A. CERASALE, individually.
              Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AS TO COUNTERCLAIM FOR CANCELLATION OF TRADEMARK[1]**

Pursuant to Fed. R. Civ. P. 56, Defendants, Unisource Discovery, LLC and Steven A. Cerasale ("Mr. Cerasale"), hereby move for summary judgment in their favor as to Defendants' Counterclaim for Cancellation of Trademark, and in support states as follows:

**LEGAL STANDARD**

"Summary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). Which facts are material depends on the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 448 F. App'x 17, 19 (11th Cir. 2011).

---

[1] The Court granted Defendants leave to file their Counterclaim but ordered that Defendants "may file their … Counterclaim … after a ruling has been issued on Plaintiff's pending Motion for Leave to File Amended Complaint." Court Order (DE 118) at p. 7. Plaintiff's Motion for Leave to File Amended Complaint has not yet been ruled upon. However, because the Court deadline to file dispositive motions is August 6, 2021, Defendants hereby respectfully timely submit their Motion for Summary Judgment.

## ARGUMENT

The undisputed facts and binding precedent unequivocally shows that Defendants are entitled to summary judgment on their Counterclaim for Cancellation of Trademark.

**I.     As a threshold matter, Defendants have standing to petition for cancellation and statutorily valid grounds exist for discontinuing Plaintiff's trademark registration.**

"In order to prosecute successfully a petition for cancellation, petitioner must prove: (1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991).

Defendants have standing to petition for cancellation of Plaintiff's trademark. "Courts in this district have held that the Defendant's standing to bring an action to cancel Plaintiff's trademark registrations is inherent in its position as a defendant in the original proceeding. … It is clear from [the party's] position as defendant in the main lawsuit that it may be damaged by the Plaintiff's trademark registration." *Amerikooler, LLC v. Coolstructures, Inc.*, 17-24420-CIV, 2019 WL 2373560, at *2–3 (S.D. Fla. June 5, 2019). Accordingly, Defendants certainly have standing to cancel Plaintiff's trademark registration.

Defendants have valid grounds to cancel Plaintiff's trademark registration. The Lanham Acts provides in no uncertain terms that "[a] petition to cancel a registration of mark … may… be filed … [a]t any time if the registered mark … was obtained fraudulently." 15 U.S.C. § 1064 (3).

As explained in detail below, Plaintiff's trademark registration was obtained based upon known material misrepresentations to the U.S. Patent and Trademark Office ("USPTO"). It is undisputed that the "registration was obtained fraudulently." *Id. See also Soro v. Citigroup*, 287 F. App'x 57, 59 (11th Cir. 2008) (per curiam) ("A mark may be cancelled … at any time if … the mark was obtained or is being used fraudulently.").

**II.    Defendants are entitled to summary judgment as a matter of law on their Counterclaim for Cancellation of Trademark.**

Plaintiff's fraud upon the USPTO is undisputed.

**A.    First Undisputed Misrepresentation to the USPTO: Defendants' right to use the Mark.**

When Plaintiff filed its Trademark Registration Application on October 15, 2008 (DE 150-4), Plaintiff knew that Defendants had the pre-existing (and ongoing) right to use the name "Unisource Discovery" and the subject Mark  in commerce.

**The Truth:** Plaintiff admitted at its deposition that "Unisource Discovery, LLC used the mark in 2006, … 2007, and 2008." Plaintiff Dep. (DE 150-10) at 213:1–18. Plaintiff further admitted that "from 2009 … to February 2020, Unisource Discovery, LLC was fine to use the trademark without any licensing agreement necessary because that was the way [the parties] were doing business since 2006 … and Unisource Discovery, LLC would continue to use the trademark, essentially the same way they used the mark before this trademark." Plaintiff Dep. (DE 150-10) 211:3–13 (emphasis added).

**The Lie:** Despite this knowledge, Plaintiff lied to the USPTO in its Trademark Registration Application by knowingly misrepresenting that "no other person, firm, corporation, or association has the right to use the [M]ark in commerce." *See* Trademark Registration Application (DCED 150-4) at p. 4. As Plaintiff admitted at its deposition, when Plaintiff filed its Trademark Registration Application, Plaintiff knew full well that Unisource Discovery, LLC had been using the Mark since 2001 and had every right to continue to use the Mark.

This material misrepresentation alone warrants cancellation of Plaintiff's trademark. But, the lies do not end there.

Case 1:20-cv-23276-DPG   Document 151   Entered on FLSD Docket 08/06/2021   Page 4 of 17

**B.**      **Second Undisputed Misrepresentation to the USPTO: Plaintiff's first use of the Mark.**

When Plaintiff filed its Trademark Registration Application on October 15, 2008 (DE 150-4), Plaintiff knew that Plaintiff was not incorporated until June 2006 and, therefore, did not (and could not) use the Mark until after June 2006.

**The Truth:** Plaintiff was incorporated on June 15, 2006. *See* Plaintiff's Articles of Incorporation (DE 150-11). Plaintiff did not use the Mark until after it was incorporated on June 15, 2006. *See* Plaintiff's Dep. (DE 150-10) at 105:21 – 25 ("June 15, 2006, well, that's when we registered the company legally as a Florida corporation. That's when the name was given to the company; that's when the logo was given to the company …."); *id.* at 101:13–20 ("[O]ne of the toys … that Mr. Cerasale brought to the sandbox was the name and logo of Unisource Discovery, Inc. … that was brought ... in 2006 … That's why the company [Plaintiff] is legally named Unisource Discovery, Inc. ... otherwise, our company would be named something else."). In fact, in response to Defendants' Request for Admission, Plaintiff "[a]dmitted that [Plaintiff] did not use the Mark until … June 15, 2006." Plaintiff's Responses to Request for Admissions (DE 150-5) at ¶¶ 1–2.

**The Lie:** Despite this knowledge, Plaintiff lied to the USPTO in its Trademark Registration Application by knowingly misrepresenting that Plaintiff's "first use anywhere" of the Mark was "[a]t least as early as ***03/01/2001***." *See* Trademark Registration Application (Exhibit 4 hereto) at p. 2 (emphasis added). In other words, Plaintiff misrepresented to the USPTO that Plaintiff had been using the Mark in commerce "[a]t least as early as" ***five years before Plaintiff existed***.

This clear—and admitted—material misrepresentation is enough alone to mandate cancellation of Plaintiff's Mark. But, Plaintiff's misrepresentations did not end there.

4

**C.**     **Third Undisputed Misrepresentation to the USPTO: Ownership of the Mark.**

When Plaintiff filed its Trademark Registration Application on October 15, 2008 (DE 150-4), Plaintiff knew that Plaintiff did not own the Mark or the name "Unisource Discovery."

**The Truth:** At all material times, the name "Unisource Discovery" and the subject Mark was owned by Defendants. The name and Mark was "brought to the table" to Plaintiff by Mr. Cerasale. As Plaintiff testified in his deposition, "one of the toys … that Mr. Cerasale brought to the sandbox was the name and logo [i.e., the Mark] of Unisource Discovery, Inc. … that was brought ... in 2006 … That's why [Plaintiff] is legally named Unisource Discovery, Inc. ... otherwise, [Plaintiff] would be named something else." Plaintiff's Dep. (DE 150-10) at 101:13–20; *see also id.* at 24:1–3 ("So part of his [Mr. Cerasale's] contribution, okay, was the name, the logo [i.e., the Mark], the software. That was the contribution, okay?").

Although Plaintiff contended that Mr. Cerasale's contribution to Plaintiff (in exchange for 50% of Plaintiff's outstanding shares of stock) was the name "Unisource Discovery" and the Mark, Plaintiff conceded that Mr. Cerasale's "contribution" is memorialized in the June 15, 2006 Operating Agreement of Plaintiff (DE 150-3). Specifically, Plaintiff admitted that "the contribution that Mr. Cerasale brought to Unisource Discovery, Inc. … is all set forth in writing, in the agreements … signed to govern Unisource Discovery, Inc." and that "the name and the logo [i.e., the Mark] were part of his [Mr. Cerasale's] contribution when he took 50 percent of Unisource Discovery, Inc." on June 15, 2006. *Id.* at 26:2–6, 25:17–20; *see also id.* at 98:2–3 ("The transfer happened way before, in 2006.").

And the June 15, 2006 Operating Agreement is clear: "in the case that Steven Cerasale is no longer a Director, Officer or Agent of [Plaintiff], at that time ***the Board of Directors shall modify the current name of the Company 'UNISOURCE DISCOVERY' to be different in name only***." Plaintiff's Operating Agreement (DE 150-3) at p. 5. Plaintiff further admitted that this

wording in the Operating Agreement was intended to "cover ourselves. We don't know who we are [i.e., Mr. Cerasale and Noel Mijares do not know each other well.] We just signed this. If this blows up in our face in six months, boom, everybody walks away." Plaintiff's Dep. (DE 150-10) at 74:18–75:1; Declaration (Exhibit 1 hereto) at ¶ 15.

In other words, when Mr. Cerasale agreed to incorporate Plaintiff with Noel Mijares in June 2006, neither Mr. Cerasale nor Unisource Discovery, LLC agreed to sell the name "Unisource Discovery" or the Mark to Plaintiff. Rather, Plaintiff, Noel Mijares, Lisa Cote, and Mr. Cerasale agreed that if Mr. Cerasale was no longer a director or agent of Plaintiff, Plaintiff would change its name to something different—something other than "Unisource Discovery." *See* Declaration (DE 150-1) at ¶¶ 15–16. In other words, if Mr. Cerasale leaves, the name and Mark go with him. Whatever Mr. Cerasale's contribution to Plaintiff was, it was indisputably not all the rights to the name "Unisource Discovery" or ownership of the Mark. Rather, as Plaintiff admitted, if Mr. Cerasale walks away from Plaintiff, "everybody walks away," and Defendants (not Plaintiff) keep the name "Unisource Discovery" and the Mark.

Plaintiff further admitted that "this document [i.e., the Operating Agreement] was active *from 2006 until the new Closed Shareholder Corporation Agreement was enacted [in 2010]*." Plaintiff Dep. (DE 150-10) at 31:21–24. In other words, the Operating Agreement—and all its provisions—governed Plaintiff when Plaintiff filed its Trademark Registration Application (DE 150-4) on October 15, 2008.

**The Lie:** Despite this knowledge, Plaintiff lied to the USPTO in its Trademark Registration Application by knowingly misrepresenting that Plaintiff was the "owner" of the Mark as of October 15, 2008. *See* Trademark Registration Application (DE 150-4) at p. 1 (declaring that Plaintiff was

the "owner of mark"); *id.* at p. 4 ("[Plaintiff] believes the applicant to be the owner of the trademark/service mark sought to be registered ….").

This material—and documented—misrepresentation to the USPTO is enough alone to mandate cancellation of Plaintiff's Mark.

**D.      Plaintiff's three material and undisputed misrepresentations to the USPTO mandate cancellation of Plaintiff's trademark.**

Pursuant to binding precedent, "[a]n applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1289 (11th Cir. 2012); *see also Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210–11 (11th Cir. 2008) (affirming cancellation on the basis of the applicant's failure to disclose a superior user of the mark).

It is well-established that "[p]urposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight*, 522 F.3d at 1210. In *Angel Flight*, the Eleventh Circuit affirmed the cancellation of a trademark due to the applicant's knowledge that another organization was using the mark at the time the registration application was filed, but failed to disclose such information to the USPTO. *Id*. at 1210–11.

As noted above, it is undisputed that Plaintiff knowingly made material misrepresentations of fact in its Trademark Registration Application (DE 150-4). In its Trademark Registration Application, Plaintiff (through Noel Mijares) acknowledged that it was "warned that willful false statements and the like so made are punishable by fine or imprisonment, or both" and "that such willful false statements, and the like, may jeopardize the validity of the application or any resulting

7

registration." *Id.* Knowing full well that the material representations to the USPTO set forth above were false, Plaintiff (through Noel Mijares) went on to declare "that all statements made of his [ ] own knowledge are true; and that all statements made on information and belief are believed to be true." *See id.*

Accordingly, binding precedent confirms that Defendants are entitled to summary judgment as a matter as to its Counterclaim for Cancellation of Trademark.

**III.   None of Plaintiff's Affirmative Defenses to Defendants' Counterclaim preclude summary judgment in Defendants' favor.**

It is well established that "affirmative defenses … raised before the Court at the summary judgment stage, must be supported by evidence or present a genuine issue of material fact in the evidence or they will not contradict the Motion." *Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1361–62 (M.D. Fla. 2008), *aff'd*, 306 F. App'x 471 (11th Cir. 2009). None of Plaintiff's Affirmative Defenses can prevent the entry of summary judgment in favor of Defendants as to Defendants' Counterclaim for Cancellation of Plaintiff's Trademark.

**A.   Most of Plaintiff's Affirmative Defenses are barebones conclusions that lack the necessary factual support and, therefore, are nullities.**

Plaintiff does not allege a single fact to support its Affirmative Defenses Numbers Four (evidence of ownership), Six (time-barred by the statute of limitations), Eight (trademark infringement), Eleven (failure to plead prior use), Twelve (elements of trademark cancellation), Thirteen (waiver, acquiescence, and estoppel), Fourteen (damages), Fifteen (unclean hands), Sixteen (irreparable harm), Seventeen (failure to mitigate), Eighteen (fraud), Nineteen (abandonment), Twenty (action of others), and Twenty-One (contractual and promissory estoppel). *See* Plaintiff's Affirmative Defenses (DE 147) at pp. 6–9.

For example, Plaintiff's Thirteenth Affirmative Defense merely states that Defendants' Counterclaim "is barred by the doctrines of waiver, acquiescence, and estoppel" without alluding

8

to a single fact in support. *Id.* at p. 8. Likewise, Plaintiff's Fifteenth Affirmative Defense only states that "Defendants' claims are barred by the doctrine of unclean hands" without stating any facts to show such unclean hands. *Id.* As yet another example, the Eighteenth Affirmative Defense merely states that "the Counterclaim is barred, in whole or in part, by fraud on the Plaintiff" without alleging the substance of the supposed "fraud," when the "fraud" was committed, by whom, who relied on such "fraud," or how it ostensibly harmed Plaintiff. *Id.*

Plaintiff's conclusory Affirmative Defenses are a nullity. It is well established that "a defendant must allege some additional facts supporting the affirmative defense." *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 333 F.R.D. 594, 596 (S.D. Fla. 2019); *see also Progressive Express Ins. Co. v. Star Painting & Waterproofing, Inc.*, 333 F.R.D. 600, 602 (S.D. Fla. 2019) (holding that "affirmative defenses are woefully conclusory, as they fail to allege sufficient facts to support their boilerplate legal conclusions."); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2019 WL 2475179, at *5 (S.D. Fla. June 13, 2019) (striking "[t]welve of the affirmative defenses" because they "are merely one sentence long and many of them fail to describe in any way how a defense applies."); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) ("a court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint.").

Affirmative Defenses fail as a matter of law and will be stricken if they do not recite more than barebones conclusory allegations. *See Merrill Lynch Bus. Fin. Serv. v. Performance Mach. Sys.*, 2005 WL 975773, at *11 (S.D. Fla. March 4, 2005) (affirmative defenses of failure to state a claim, failure to mitigate damages, waiver and estoppel, and unclean hands stricken because each of these affirmative defenses contained only "a bare-bones conclusory allegation which simply

names a legal theory but does not indicate how the theory is connected to the case at hand"); *see also Luxottica Grp. S.P.A. v. Cash Am. E., Inc.*, 198 F. Supp. 3d 1327, 1329 (M.D. Fla. 2016) ("[E]ven if the defense were appropriate here, Defendant has failed to plead any facts to support it.").

Courts in the Eleventh Circuit routinely strike conclusory Affirmative Defenses such as those raised by Plaintiff. *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2019 WL 2475179, at *5 (S.D. Fla. June 13, 2019) (striking "[t]welve of the affirmative defenses" including defenses of failure to state a claim, waiver, estoppel, unclean hands, failure to mitigate, laches, and statute of limitations on the basis that they were "merely one sentence long and many of them fail to describe in any way how a defense applies."); *see also Interim Healthcare, Inc. v. Interim Healthcare of Se. Louisiana, Inc.*, No. 19-CV-62412, 2020 WL 3078531, at *19 (S.D. Fla. June 10, 2020) (rejecting party's "conclusory and unsubstantiated affirmative defenses of estoppel due to abandonment, acquiescence, or laches in an effort to rebut ..allegations."); *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp.*, LLC, No. 18-CV-81606, 2019 WL 7376779, at *8 (S.D. Fla. Sept. 19, 2019) (rejecting affirmative defense of "prior use in commerce" because "Defendant cannot prove that its use of the Mark pre-dated Plaintiff's use, rendering the prior use defense inapplicable. As such, no triable issue remains relating to the prior use defense and the motion is granted as to the prior use defense"); *Pollo Campestre, S.A. DE C.V. v. Campero, Inc.*, No. 19-CIV-20001, 2019 WL 5577933, at *2 (S.D. Fla. Oct. 29, 2019) (holding that affirmative defenses of naked licensing, abandonment, and estoppel, unclean hands, and trademark misuse are too conclusory and must be stricken because there was no explanation as to how they apply to the facts of this case); *United Fixtures Co. v. Base Mfg.*, No. 6:08CV506ORL28GJK, 2008 WL

4550212, at *4 (M.D. Fla. Oct. 8, 2008) (rejecting affirmative defense of fraud because "it provides no more than a bare bones conclusory allegation.").

> **B.**     **The remainder of Plaintiff's Affirmative Defenses to Defendants' Counterclaim fail as a matter of law.**

Plaintiff's Affirmative Defense Numbers One (defendants never disputed plaintiff's ownership), Two (contractual ownership of trademark), Third (ignoration of cease and desist letters), Four (evidence of ownership), Five (laches—statute of limitations), Six (Count I is time-barred by the statute of limitations), Seven (statute of limitations—delay), Eight (trademark infringement), Nine (fraud), Ten (failure to seek judicial notice), Eleven (failure to plead prior use elements), and Twelve (elements of trademark cancellation) fail as a matter of law.

Courts in the Eleventh Circuit have routinely held that summary judgment is proper where the non-moving party's affirmative defenses fail as a matter of law. *Miller v. Gizmodo Media Grp., LLC*, 407 F. Supp. 3d 1300, 1308 (S.D. Fla. 2019), *aff'd*, 994 F.3d 1328 (11th Cir. 2021) (granting summary judgment given that there was "no triable issue of fact on [non-moving party's] affirmative defense"); *see also Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp.*, LLC, No. 18-CV-81606, 2019 WL 7376779, at *8 (S.D. Fla. Sept. 19, 2019) (holding that "no triable issue remain[ed] relating to the prior use defense and the motion is granted as to the prior use defense" … where the non-moving party "cannot prove that its use of the Mark pre-dated Plaintiff's use, rendering the prior use defense inapplicable.").

Plaintiff's Fourth Affirmative Defense that "[a] certificate of registration acts as prima facie evidence of the mark's validity" is circular and misses the mark. Plaintiff's Answer (DE 147) at p. 6. To begin with, whether Plaintiff has "prima facie evidence of the mark's validity" is inconsequential. The undisputed facts clearly show that Plaintiff committed fraud upon the

11

USPTO. More fundamentally, a "prima facie" showing of "validity" (which itself was obtained through fraud) certainly cannot shield Plaintiff from the consequences of its fraud.

Plaintiff's Fifth and Sixth Affirmative Defenses regarding laches and the statute of limitations fail as a matter of law for several reasons. To begin with (and as previously explained in this litigation), this argument has been expressly (and repeatedly) rejected by the courts— including this Court.

For example, the plaintiff in *Marshak v. Treadwell* "argue[d] that the fraudulent procurement defense and counterclaim are time-barred," and the court ruled that "a claim for cancellation of a mark based on fraudulent procurement and a defense to an otherwise incontestable mark on a similar ground ***may be asserted at any time***" and are not time-barred by any statute of limitations. 240 F.3d 184, 192–94 (3d Cir. 2001) (emphasis added).

In another example, the plaintiff in *Progressive Emu, Inc. v. Nutrition & Fitness, Inc.* sought to amend its complaint to "add[] a new 'Count V,' seeking 'cancellation of registration'" on the basis of fraud, and the defendant argued that the subject "trademark was registered in 2002 … [which] is many years too late to meet … [the] state of limitations for fraud claims." 2013 WL 12133659, at *3 (N.D. Ala. Oct. 18, 2013). The court disagreed. "[C]ancellation claims for fraud … can be brought '***at any time***.'" *Id*. at *5 (emphasis added).

In yet another example, the court in *Kelly v. Estate of Arnone ex rel. Ahern* held that "actions to cancel a registration based on fraudulent procurement … ***may be brought at any time*** and are not subject to a statute of limitations." 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009) (emphasis added).

The reason for these rulings is clear. Although the Lanham Act does not have a statute of limitations for infringement claims for damages, the Lanham Act ***does*** have a statute of limitations for trademark-cancellation claims. Under Section 1064, claims to "cancel a registration of a mark" must be brought "[w]ithin five years from the date of the registration" ***unless*** the "registration was obtained fraudulently." 15 U.S.C.A. § 1064(1) and (3). When the trademark "registration was obtained fraudulently," the cancellation claim may be brought "[a]t any time." *Id*.

"The reason for this rule is quite simple—the interest vindicated by Section 14 [for fraud-based cancellation of trademarks] is not just the injury to the challenging party, but the integrity of the register. Where the interest at issue is the integrity of the federal register, a statute of limitations should not operate to frustrate that interest." *Marshak*, 240 F.3d at 194.

Defendants' Counterclaim seeks a declaration cancelling Plaintiff's trademark because Plaintiff "procured its registration via ***fraud***." *See* Counterclaim (DE 81-2) at p. 11 ("Trademark Registration No. 3,634,516 (Serial No. 77594059) should be cancelled ***due to Plaintiff's fraud*** on the United States Patent and Trademark Office …..") (emphasis added); *see also id*. at p. 23 ("[Plaintiff] procured its registration via fraud …..").

Under the plain wording of the Lanham Act and the applicable case law, Defendants' Counterclaim to cancel Plaintiff's trademark registration is not time-barred.

Additionally, the undisputed facts show that Defendants did not delay in asserting their cancellation of trademark claim. Defendants have repeatedly made clear that "Defendants did not learn of the facts underlying their … Counterclaim until January 27, 2021 … and February 4, 2021" as a consequence of Plaintiff's delays in responding to Defendants discovery requests. *See* Motion (DE 81) at p. 2; *see also* Declaration of Defendants (DE 150-1) at ¶ 31. The day after learning of the misrepresentations, Defendants (through counsel) attempted to confer with

13

Plaintiff's counsel about the trademark cancellation claim. Shortly thereafter, on March 24, 2021, Defendants filed their proposed Counterclaim for Cancellation of Trademark. Proposed Counterclaim (DE 81-2). Accordingly, not only did Defendants not delay, but it was actually Plaintiff who unduly delayed in responding to discovery requests that revealed the basis for the Counterclaim. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986).

Plaintiff's Eighth Affirmative Defense of trademark infringement fails as a matter of law because it is completely inapposite to Defendants' claim for cancellation. to be clear, Defendants' Counterclaim for Cancellation is based upon Plaintiff's fraud upon the USPTO. Plaintiff's Eighth Affirmative Defense alleges that "Defendants' trademark infringement breaches all agreement with Plaintiff." What does an ostensible "breach" of "all agreements" have anything to do with Plaintiff's fraud upon the USPTO?

Plaintiff's Tenth Affirmative Defense that "Defendants referred to another case in Florida State Court without first seeking this Honorable Court to take judicial notice" is meritless and cannot prevent summary judgment. Plaintiff's Answer (DE 147) at p. 7. Defendants' Counterclaim has nothing to do with any "Florida State Court" case. Rather, the Counterclaim related to Plaintiff's material misrepresentations to the USPTO. As explained above, those misrepresentations are documented, admitted to, and material.

Plaintiff's Eleventh Affirmative Defense (i.e., "Failed to Plead 'Prior Use'") is likewise meritless. In this defense, Plaintiff alleges that Defendants "do not allege Defendants continuously used the misappropriated products, prior to Plaintiff, in a way sufficiently public to identify." Plaintiff's Answer (DE 147) at p. 7. Again, what does Defendants "use of misappropriated products" have to do with Plaintiff's fraud upon the USPTO? To the extent Plaintiff is attempting to contend that Defendants do not have standing to seek cancellation, the law is clear: "Courts in

14

this district have held that the Defendant's standing to bring an action to cancel Plaintiff's trademark registrations is inherent in its position as a defendant in the original proceeding. … It is clear from [the party's] position as defendant in the main lawsuit that it may be damaged by the Plaintiff's trademark registration." *Amerikooler, LLC v. Coolstructures, Inc.*, 17-24420-CIV, 2019 WL 2373560, at \*2–3 (S.D. Fla. June 5, 2019).

Similarly, Plaintiff's defense that Defendants "fail[ed] to mitigate damages" is completely inapposite. Plaintiff's Answer (DE 147) at p. 8. Defendants are not seeking damages against Plaintiff. Defendants are seeking to cancel Plaintiff's trademark as a result of Defendants' fraud upon the USPTO.

Plaintiff's Affirmative Defense that "Plaintiff is not liable for the acts of other over whom it has no control" is equally meritless. *Id.* To be clear, Defendants' Counterclaim is based upon Plaintiff's (through its CEO, Noel Mijares) own—and admitted—material misrepresentations to the USPTO. No one else's.

Finally, Plaintiff's Additional Defense (Reservation of Rights) is improper and fails as a matter of law. It is well-established that reservation of rights "is a nullity and surplusage as Defendants will still have to move for leave to amend to raise new defenses." *Merrill Lynch Business Financial Services, Inc. v. Performance Machine Systems U.S.A., Inc.*, 2005 WL 975773, \*12 (S.D. Fla. 2005); *see also United Fixtures Co. v. Base Mfg.*, No. 6:08CV506ORL28GJK, 2008 WL 4550212, at \*4 (M.D. Fla. Oct. 8, 2008) (holding that affirmative defense of "reservation of rights" "be dismissed with prejudice" [b]ecause the matters pled do not constitute affirmative defenses").

## CONCLUSION

For the forgoing reasons, Defendants, Unisource Discovery, LLC and Steven A. Cerasale, respectfully request this Court grant summary judgment in their favor as to Count I of Defendants'

15

Counterclaim for Cancellation of Trademark, and for such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on August 6, 2021, on all counsel or parties of record on the Service List below.

 /s/ Victor M. Velarde
Victor M. Velarde

| **SERVICE LIST** *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* **Case No. 20-CIV-23276-DPG** | |
| --- | --- |
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |