**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
        Plaintiff,
v.

UNISOURCE   DISCOVERY,   LLC,   a
California  limited  liability  company,  and
STEVEN A. CERASALE, individually.
        Defendants.

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## EX PARTE AMENDED MOTION FOR PRELIMINARY INJUNCTION

Defendants hereby file their Opposition to Plaintiff, Unisource Discovery, Inc.'s Ex Parte

Amended Motion for Preliminary Injunction (DE 139).

### INTRODUCTION

Plaintiff's *Ex Parte* Amended Motion for Preliminary Injunction (DE 139) should be

summarily denied for two fundamental reasons.

First, the Motion is fatally flawed because it fails to address (much less defeat) any of

Defendants' Affirmative Defenses. Plaintiff, therefore, cannot establish the first essential element

of preliminary injunction—i.e., a substantial likelihood of success on the merits. And even if

Plaintiff had attempted to refute the Affirmative Defenses, the undisputed facts show that

Defendants' Affirmative Defenses defeat Plaintiff's claims.

Second, the Amended Motion failed to allege (much less establish with any evidence) any

harm at all. The Amended Motion also completely fails to explain any reason for seeking the

extraordinary relief of an *ex parte* injunction as required by Rule 5.4(d)(1).

Finally, the Amended Motion attempts to enjoin Equicopy, Inc. who is not a party to this

action and whom Plaintiff has admitted did not infringe on any alleged trademark rights.

## FACTUAL BACKGROUND

**A.**    *Unisource Discovery, LLC – The Original "Unisource" since May 2001*

1.    On May 11, 2001, Defendant Steven Cerasale ("Mr. Cerasale") organized Defendant Unisource Discovery, LLC in California. Dec. (Ex. "1" hereto) at ¶¶ 2–3; *see also* Art. of Org. (Ex. "9" hereto); Pl. Dep. (Ex. "10" hereto) at 18:24–19:1, 19:11–14.

2.    In late 2001, Defendants created the following mark (the "Mark"):



Pl. Dep. (Ex. 10 hereto) at 211:18–19:1, 101:13–17; Dec. (Ex. 1 hereto) at ¶ 4.

3.    Also in late 2001, Defendants registered the domain www.unisourcediscovery.com and published the Mark on its website. *See* Jan. 11, 2002 Print-Out (Ex. "2" hereto); *see also* Pl. Dep. (Ex. 10 hereto) at 67:18–21 ("Q. Before … June 15, 2006, the website unisourcediscovery.com was already in existence, correct? A. Yes."); Dec. (Ex. 1 hereto) at ¶ 5.

4.    Defendants were (and continue to be) in the business of providing state-of-the-art document retrieval and management services to their customers nationwide. Pl. Dep. (Ex. 10 hereto) at 18:24–19:1; *see also* Dec. (Ex. 1 hereto) at ¶ 6.

5.    For more than twenty years, Defendants have used the Mark on its website, in marketing materials, and in its business without any interference, supervision, or say whatsoever from Plaintiff. Pl. Dep. (Ex. 10 hereto) at 18:4–14, 211:18–19; Dec. (Ex. 1 hereto) at ¶ 7.

**B.**    *Mr. Cerasale and Noel Mijares*

6.    In June 2006, Mr. Cerasale partnered with Noel Mijares to incorporate a Florida branch of Unisource Discovery, LLC. *See* Pl. Dep. (Ex. 10 hereto) at 18:14–14; *see also* Dec. (Ex. 1 hereto) at ¶ 8.

7.      At that time, Plaintiff was aware that Defendants were operating a document retrieval business based in California under the name "Unisource Discovery, LLC" and were using the Mark in commerce. Pl. Dep. (Ex. 10 hereto) at 18:14–14; *see also* Dec. (Ex. 1 hereto) at ¶ 9.

**C.      *Unisource Discovery, Inc. – The Florida Branch of "Unisource" since June 2006***

8.      On June 15, 2006, Mr. Cerasale and Noel Mijares incorporated Plaintiff. *See* Art. of Inc. (Ex. "11" hereto); Pl. Dep. (Ex. 10 hereto) at 22:16–18; *see also* Dec. (Ex. 1 hereto) at ¶ 10.

9.      Plaintiff was to manage Unisource Discovery, LLC's customers in Florida and generate new business in Florida for the "Unisource Discovery" brand. Pl. Dep. (Ex. 10 hereto) at 50:25–51:3; *see also* Dec. (Ex. 1 hereto) at ¶ 11.

10.      Initially, Mr. Cerasale owned 50% of Plaintiff's shares of stock; Noel Mijares owned 25%; and Lisa Cote owned 25%. Plaintiff's Operating Agreement (Ex. "3" hereto) at p. 3; *see also* Pl. Dep. (Ex. 10 hereto) at 40:3–15; Dec. (Ex. 1 hereto) at ¶ 12.

11.      Mr. Cerasale and Noel Mijares agreed that "in the case that Steven Cerasale is no longer a Director, Officer or Agent of [Plaintiff], at that time the Board of Directors shall modify the current name of the Company 'UNISOURCE DISCOVERY' to be different in name only." Plaintiff's Operating Agreement (Ex. 3 hereto) at p. 5; *see also* Pl. Dep. (Ex. 10 hereto) at 74:18–75:1; Dec. (Ex. 1 hereto) at ¶ 15.

12.      The agreement was clear: Mr. Cerasale owned the Mark and name "Unisource Discovery," and if he ceases to be associated with Plaintiff, then Plaintiff "shall modify the current name … to be different in name only." Plaintiff's Operating Agreement (Ex. 3 hereto) at p. 5; *see also* Pl. Dep. (Ex. 10 hereto) at 74:18–75:1; Dec. (Ex. 1 hereto) at ¶ 15.

13.     Therefore, when Mr. Cerasale agreed to incorporate Plaintiff in June 2006, neither he nor Unisource Discovery, LLC agreed to sell the name "Unisource Discovery" or the Mark to Plaintiff. Pl. Dep. (Ex. 10 hereto) at 74:18–75:1; Dec. (Ex. 1 hereto) at ¶¶ 15–16.

14.     Mr. Cerasale, Noel Mijares, and Plaintiff agreed that Unisource Discovery, LLC and Mr. Cerasale would continue to own, control, and use the Mark without restriction. Pl. Dep. (Ex. 10 hereto) at 216:5–9; *see also id.* at 212:20–213:22; Dec. (Ex. 1 hereto) at ¶ 17.

15.     Unisource Discovery, LLC was not a party to Plaintiff's Operating Agreement. *See* Pl. Dep. (Ex. 10 hereto) at 27:18–21; *see also id.* at 33:15–17; 35:3–6; Dec. (Ex. 1 hereto) at ¶ 18.

16.     Unisource Discovery, LLC did not sell any of its rights to the name "Unisource Discovery Digital Document Retrieval" or to the Mark to Plaintiff. *See* Pl. Dep. (Ex. 10 hereto) at 27:18–21; *see also id.* at 33:15–17; 35:3–6; Dec. (Ex. 1 hereto) at ¶ 19.

17.     Mr. Cerasale did not sell his rights to the name "Unisource Discovery" or to the Mark in exchange for his 50% ownership interest in Plaintiff. Pl. Dep. (Ex. 10 hereto) at 216:5–9; *see also id.* at 212:20–213:22; Dec. (Ex. 1 hereto) at ¶ 20.

18.     Mr. Cerasale and Noel Mijares agreed that Plaintiff would use for its business the same website and domain as Unisource Discovery, LLC (i.e., www.unisourcediscovery.com) provided that Plaintiff pay its share of the costs associated with the website. Pl. Dep. (Ex. 10 hereto) at 67:18–68:6, 70:8–13; Dec. (Ex. 1 hereto) at ¶ 21.

19.     Mr. Cerasale and Noel Mijares also agreed that Plaintiff would have a limited license to use the Mark and the name "Unisource Discovery" for its business, but that license would expire upon Mr. Cerasale's resignation or disassociation from Plaintiff. *See* Pl.'s Operating Agreement (Ex. 3 hereto) at p. 5; *see also* Dec. (Ex. 1 hereto) at ¶ 22.

4

20. Noel Mijares was primarily in charge of the day-to-day operations of Plaintiff. Pl. Dep. (Ex. 10 hereto) at 142:20–21, 145:17–19, 150:2–25; *see also* Dec. (Ex. 1 hereto) at ¶ 23.

21. Mr. Cerasale was a Director in Unisource Discovery, Inc. in 2008, but he was not aware of any Board of Director meeting to agree on filing a trademark registration application with the U.S. Patent and Trademark Office (the "USPTO"). Dec. (Ex. 1 hereto) at ¶ 25.

**D.** ***Plaintiff's fraudulent registration of the Mark with the USPTO in 2008***

22. On October 15, 2008, Plaintiff (through Noel Mijares) filed a registration with the USPTO to register the Mark. *See* Trademark Registration (Ex. "4" hereto); *see also* Pl. Dep. (Ex. 10 hereto) at 148:187–149:20; Dec. (Ex. 1 hereto) at ¶ 24.

23. Neither Mr. Cerasale nor Unisource Discovery, LLC knew the contents of Plaintiff's trademark application until it was received in discovery. Pl. Dep. (Ex. 10 hereto) at 143:1–5; *see also id.* at 145:6–19; Dec. (Ex. 1 hereto) at ¶¶ 29–32.

24. Noel Mijares was the Director solely and/or primarily involved in the process of, and leading up to the, filing the trademark registration application of the Mark with the USPTO. Pl. Dep. (Ex. 10 hereto) at 145:3–19; *see also* Dec. (Ex. 1 hereto) at ¶ 26.

25. Plaintiff's trademark registration application included material misrepresentations:

   a. Plaintiff claimed that it was the "owner" of the Mark when, Unisource Discovery, LLC was the owner.

   b. Plaintiff claimed that it first used the Mark "as early as March 1, 2001" when, Plaintiff did not use the Mark until June 2006. *See* Plaintiff's Responses to Request for Admissions (Ex. "5" hereto) at ¶¶ 1–2 ("Admitted that [Plaintiff] did not use the Mark until … June 15, 2006 ….").

5

       c.     Plaintiff falsely declared that "no other person, firm, corporation, or association has the right to use the [M]ark in commerce" knowing full well that Unisource Discovery, LLC was the owner of the Mark, had been using the Mark since 2001, and had every right to continue using the Mark.

Pl. Dep. (Ex. 10 hereto) at 150:12–151:10; *see also* Dec. (Ex. 1 hereto) at ¶ 27.

26.     Noel Mijares admitted that he (not Defendants) commissioned and/or completed, reviewed, and signed the trademark application on behalf of Plaintiff. Pl. Dep. (Ex. 10 hereto) at 142:20–21; *see also id.* 145:17–19; 150:2–25; Dec. (Ex. 1 hereto) at ¶ 28.

27.     Defendants were not involved in Plaintiff's trademark registration application process. *See* Pl. Dep. (Ex. 10 hereto) at 143:1–5, 145:6–19; Dec. (Ex. 1 hereto) at ¶¶ 29–30.

28.     Defendants did not have any knowledge regarding the misrepresentations that Plaintiff made in the trademark registration application. *See* Pl. Dep. (Ex. 10 hereto) 143:1–5; *see also id.* at 145:6–19; Dec. (Ex. 1 hereto) at ¶ 31.

29.     Defendants first learned of the contents of Plaintiff's trademark registration application in late January 2021 or early February 2021 when Plaintiff submitted a copy of its trademark registration to Defendants' counsel in response to requests for production of documents. *See* Pl. Dep. (Ex. 10 hereto) at 143:1–5; *see also id.* at 145:6–19; Dec. (Ex. 1 hereto) at ¶ 32.

30.     Plaintiff never submitted a declaration of incontestability under Section 15, nor would any such declaration be warranted or allowed. *See* Trademark Status (Ex. "12" hereto).

31.     Plaintiff, therefore, never obtained a certification of incontestability from the USPTO and, under the circumstances, is not entitled to any such certification. *See id.*

### E.      *Plaintiff's Close Corporation Shareholder Agreement in June 2010*

32.      On June 28, 2010, Mr. Cerasale and Noel Mijares (along with Lisa Cote and new shareholder Alfred Lutter) signed a Close Corporation Shareholder Agreement (Ex. "6" hereto).

33.      Unisource Discovery, LLC was not a party to the Shareholder Agreement. *See* Pl. Dep. (Ex. 10 hereto) at 27:18–21; *see also id.* at 33:15–17; 35:3–6; Dec. (Ex. 1 hereto) at ¶ 36.

34.      Under the Close Corporation Shareholder Agreement, the ownership of Plaintiff was set forth as follows: Mr. Cerasale owned 40%; Alfred Lutter owned 10%; Noel Mijares owned 25%; and Lisa Cote owned 25%. Pl. Dep. at (Ex. 10 hereto) at 133:11–134:4; *see also* Dec. (Ex. 1 hereto) at ¶ 34.

35.      Mr. Cerasale did not sell the name "Unisource Discovery Digital Document Retrieval" or the Mark to Plaintiff in connection with the Close Corporation Shareholder Agreement. *See* Plaintiff's Shareholder Agreement (Ex. 6 hereto); Dec. (Ex. 1 hereto) at ¶ 35.

36.      The Shareholder Agreement acknowledged that Plaintiff registered the trademark. Shareholder Agreement (Ex. 6 hereto) at p. 2; *see also* Dec. (Ex. 1 hereto) at ¶ 38.

37.      However, Plaintiff acknowledged that the Mark continued to belong to Unisource Discovery, LLC by providing that "the parties agree that [Plaintiff] shall be entitled to use the trademark 'Unisource Discovery,' as part of its corporate name … or as a fictitious name, or otherwise." Shareholder Agreement (Ex. 6 hereto) at p. 2; *see also* Dec. (Ex. 1 hereto) at ¶ 39.

38.      In other words, Plaintiff did not ***own*** the "Unisource Discovery" name or the Mark but would be allowed to continue to use that name and Mark. *See* Shareholder Agreement (Ex. 6 hereto) at p. 2; *see also* Dec. (Ex. 1 hereto) at ¶ 40.

39.     Noel Mijares otherwise continued to be the Director primarily in charge of operating the day-to-day business of Plaintiff. Pl. Dep. (Ex. 10 hereto) at 142:20–21, 145:17–19, 150:2–25; *see also* Dec. (Ex. 1 hereto) at ¶ 43.

40.     From June 15, 2006 through to February 21, 2020, Plaintiff did not exercise any supervision or control over the activities of Unisource Discovery, LLC or Mr. Cerasale with respect to the Mark or the trademark, nor did Plaintiff ever have the right or authority to exercise such supervision or control. Pl. Dep. (Ex. 10 hereto) at 212:20–213:22; *see also id.* at 211:10–13; 216:5–8; Dec. (Ex. 1 hereto) at ¶ 44.

41.     Moreover, Plaintiff never controlled the products, marketing, services, or any other aspect of Unisource Discovery, LLC or Mr. Cerasale.

42.     It was agreed and understood that Unisource Discovery, LLC and Mr. Cerasale could use the Mark and trademark as they deemed fit without any interference, control, supervision, or say from Plaintiff. Pl. Dep. (Ex. 10 hereto) at 212:20–213:22; *see also id.* at 211:10–13; 216:5–8 (Defendants "continued to use the mark without interference, if you will, until February 21, 2020, correct? A. Correct."); Dec. (Ex. 1 hereto) at ¶ 45.

**F.     *The falling out between Mr. Cerasale and Noel Mijares***

43.     On September 28, 2018, Mr. Cerasale and Alfred Lutter delivered a request for corporate books and records under Florida Statutes § 607.1602 and § 607.1603 to Plaintiff. *See* September 28, 2018 Request (Ex. "13" hereto).

44.     Plaintiff ignored the request.

45.     Mr. Cerasale and Alfred Lutter then filed a lawsuit on October 24, 2018 under Florida Statutes § 607.1604 against Plaintiff to compel inspection of the requested books and records. *See* Complaint under Section 607.1604 (Ex. "14" hereto).

8

46.     Plaintiff (through Noel Mijares) then decided to retaliate.

47.     In or around September 2019, Noel Mijares demanded that changes be made to Unisource's website (i.e., www.unisourcediscovery.com) to benefit Plaintiff while simultaneously refusing to have Plaintiff pay for any of the costs associated with the demanded changes. *See* Verified Facts (DE 61) at p. 8 ¶ 46.

48.     Because Plaintiff had not paid for any of the costs associated with the website for years, Mr. Cerasale and Noel Mijares agreed that Plaintiff would register a new website dedicated to Plaintiff. *Id.* at p. 9 ¶ 47.

49.     Plaintiff registered a new website and domain (i.e., www.unisourcediscovery.net) on September 16, 2019. *See* Email from Noel Mijares (Ex. "15" hereto) at p. 1.

50.     Plaintiff (through Noel Mijares) also attempted to dismiss Mr. Cerasale and Alfred Lutter's state court Complaint and avoid producing the financial information they requested in their capacity as shareholders. *See* Verified Facts (DE 61) at p. 9 ¶ 49.

51.     On March 17, 2020, the Florida Circuit Court Judge denied Plaintiff's Motion to Dismiss and instructed Mr. Cerasale's undersigned counsel to submit a proposed Order. *See* March 17, 2020 Email (Ex. "16" hereto) at p. 1 ("[T]he Judge requested that we submit a proposed Order setting forth the Court's ruling that the Motion to Dismiss is denied and that Defendants have until April 20, 2020 to file their answer (i.e., 20 days after March 31, 2020).").

52.     Plaintiff ignored the ruling denying their motion to dismiss until July 21, 2020, when it filed its Answer and Affirmative Defenses along with a Counterclaim.

53.     Finally, on February 21, 2020, Plaintiff (through Noel Mijares) attempted to "revoke" a supposed "license" ostensibly given to Unisource Discovery, LLC for the use of the

Mark and trademark. *See* February 21, 2020 Letter (Ex. "7" hereto) at p. 1; *see also* Pl. Dep. (Ex. 10 hereto) at 206:9–21; Dec. (Ex. 1 hereto) at ¶ 46.

54.     Two months after its Motion to Dismiss was denied (i.e., on May 12, 2020), Plaintiff (again, through Noel Mijares) sent another letter threatening to sue. *See* May 12, 2020 Letter (Ex. "8" hereto); *see also* Dec. (Ex. 1 hereto) at ¶ 47.

55.     Several months later, Plaintiff (through Noel Mijares) filed this lawsuit.

56.     With the exception of two demand letters in 2020 and this lawsuit, Plaintiff has never even attempted to control, supervise, police, or dictate in any way how Unisource Discovery, LLC uses the Mark or trademark, markets its products, or performs its services. Pl. Dep. (Ex. 10 hereto) at 211:10–13, 212:20–213:22; 216:5–8; Dec. (Ex. 1 hereto) at ¶ 48.

## ARGUMENT

**I.     Plaintiff did not (and cannot) show a substantial likelihood of success on the merits.**

**A.     Plaintiff does not address (much less refute) any Affirmative Defense.**

The Amended Motion fails to address (much less defeat) any of Defendants' Affirmative Defenses. "On a motion for preliminary injunction, plaintiffs **_must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses_**." *Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1318 (S.D. Fla. 2020) (emphasis added); *Fibertex Corp. v. New Concepts Distributors Int'l, LLC*, No. 20-CV-20720, 2020 WL 8458852, at \*4 (S.D. Fla. Oct. 19, 2020), *rep. and rec. adopted*, No. 20-20720-CIV, 2021 WL 302645 (S.D. Fla. Jan. 29, 2021) ("To establish a substantial likelihood of success on the merits, **_Plaintiff must demonstrate a likelihood of success at trial as to_** … **_the affirmative defenses_** asserted by the non-moving party." (emphasis added)).

Federal courts summarily deny motions for preliminary injunction that fail to refute the non-moving party's affirmative defenses. *See Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016) (Plaintiff was "not entitled to injunctive

[relief] ... unless it can overcome each of the affirmative defenses"); *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) (Plaintiffs "did not have a substantial likelihood of success on the merits because [defendant] may well prevail on its affirmative defense"); *Great Am. Ins. Co. v. Fountain Eng'g, Inc*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015); (Plaintiff failed to establish a substantial likelihood of success due to "failure to respond to [defendants'] denials and defenses with requisite factual support"); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-CV-23066, 2014 WL 11881020, at *1–2 (S.D. Fla. Sept. 29, 2014) (Plaintiff failed to establish a likelihood of success on the asserted affirmative defense because it had "not proffered any evidence rebutting [defendants'] declaration").

Here, Plaintiff failed to present any factual support for to respond to Defendants' Affirmative Defenses. This failure alone mandates a denial of the Amended Motion.

**B.      Even if Plaintiff had attempted to address the Affirmative Defenses, the undisputed facts establish that Plaintiff does not have a likelihood of success as to any of the Affirmative Defenses.[1]**

       **1.      First Use.**

It is undisputed that Defendants created the Mark. It is also undisputed that Defendants used the Mark *first*—predating Plaintiff's use of the Mark by over five years. *See* Pl. Dep. (Ex. 10 hereto) at 18:24–19:1 ("[I]n 2000, 2001, that's when [Mr. Cerasale] … opened Unisource Discovery, LLC. So yes, I knew all about it, of course."); *id.* at 211:18–19:1 ("Steven Cerasale … created the logo and the name at the beginning"); *see also id.* at 101:13–17; 140:9–17; *see also* Plaintiff's Responses to Request for Admissions (Ex. 5 hereto) at ¶¶ 1–2 ("Admitted that [Plaintiff] did not use the Mark until … June 15, 2006 ….").

---

[1] As a threshold matter, Plaintiff's contention that its "trademark" is incontestable is conclusively refuted. Plaintiff never filed a Declaration of Incontestability under Section 15, and the USPTO never issued a Certificate of Incontestability. The trademark is unquestionably not incontestable. *See Frehling v. Int'l Select Group*, 192 F. 3d 1330 (11th Cir. 1991).

"Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080–81 (11th Cir. 2016) (quoting *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015)).

In *Choppers, Inc. v. Passaro*, the Eleventh Circuit affirmed the denial of a motion for preliminary injunction for failure to show a substantial likelihood of success on the merits where the evidence (which, unlike here, included conflicting affidavits as to whether plaintiff's knew and consented to defendant's use of the mark) did not establish "whether Defendants are actually violating Plaintiffs' rights, or whether, instead, this case involves a soured business arrangement under which Defendants retain some rights to deal with the goods at issue." 159 F. App'x 74, 75–76 (11th Cir. 2005).

### 2.      Naked License and Estoppel.

"The owner of a trademark has … a concurrent duty to exercise control and supervision over the licensee's use of the mark. … Failure to exercise such control and supervision for a significant period of time may estop the trademark owner from challenging the use of the mark and business which the licensee has developed during the period of such unsupervised use." *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123–24 (5th Cir. 1973).

Plaintiff's admissions fully support Defendants' Affirmative Defenses of naked license and estoppel. In particular, Plaintiff admitted that Defendants used the Mark in commerce as early as 2006, and their use of the Mark had "not changed—or did not need to be changed between 2005 and 2006, all the way through, let's say 2009." Pl. Dep. (DE 148-12) at 212:6–13; *see also id*. at 213:1–18. Plaintiff further admitted that after 2009, Defendants continued to use the Mark without interference until February 21, 2020. *Id*. at 211:3–13 ("[F]rom 2009 to … February 2020 Unisource Discovery, LLC was fine to use the trademark without any licensing agreement necessary because

12

was the way you were doing business since 2006 … and Unisource Discovery, LLC would continue to use the trademark, essentially the same way they used the mark before this trademark, right? A. Correct."); *see also id.* at 216:5–9 (Defendants "continued to use the mark without interference, if you will, until February 21, 2020, correct? A. Correct.").

In *Shiela Shine*, the court "h[e]ld that SS California is estopped to challenge the business which SS Florida has built up under the mark Sheila Shine," due to the "undisputed failure by the [trademark owner] to exercise any supervision or control over the activities of Pan American or its successor SS Florida" for a period of six years. *Sheila Shine*, 486 F.2d at 124–25.

Plaintiff knowingly failed to exercise any supervision or control over the activities of Defendants with respect to the Mark or the trademark since 2001 (when Defendants first used the Mark), through 2006 (when Plaintiff was incorporated), through 2009 (when Plaintiff registered the trademark), all the way through to February 21, 2020 when Plaintiff decided to deliver a demand letter to Defendants. With the exception of Plaintiff's two demand letters in 2020 and this lawsuit, Plaintiff had never attempted to control, supervise, police, or dictate in any way how Defendants use the Mark or trademark, markets their products, or performs their services. Pl. Dep. (Ex. 10 hereto) at 211:10–13; *see also id.* at 212:20–213:22; 216:5–8; Dec. (Ex. 1 hereto) at ¶ 48.

### 3.    Cancellation of Trademark based on Plaintiff's Fraud.

Plaintiff's own admissions establish that Plaintiff knowingly made three material misrepresentations in its trademark registration application (Ex. 4 hereto).

**First Misrepresentation:** Plaintiff admitted that "Unisource Discovery, LLC used the mark in 2006, … 2007, and 2008 and that "from 2009 … to February 2020, Unisource Discovery, LLC was fine to use the trademark without any licensing agreement necessary because that was the way [the parties] were doing business since 2006 … and Unisource Discovery, LLC would

13

continue to use the trademark, essentially the same way they used the mark before this trademark." Pl. Dep. (Ex. 10 hereto) at 213:1–18, 211:3–13.

Despite this knowledge, Plaintiff lied to the USPTO by knowingly misrepresenting that "no other person, firm, corporation, or association has the right to use the [M]ark in commerce." *See* Trademark Registration Application (Ex. 4 hereto) at p. 4. As Plaintiff admitted, when Plaintiff filed its trademark registration application, Plaintiff knew full well that Unisource Discovery, LLC had been using the Mark since 2001 and had every right to continue to use the Mark. This material misrepresentation alone warrants cancellation of Plaintiff's trademark. But, the lies do not end there.

**Second Misrepresentation:** Plaintiff was incorporated on June 15, 2006 and did not use the Mark until after it was incorporated on June 15, 2006. *See* Plaintiff's Dep. (Ex. 10 hereto) at 105:21 – 25 ("June 15, 2006, well, that's when we registered the company legally as a Florida corporation. That's when the name was given to the company; that's when the logo was given to the company …."); Plaintiff's Responses to Request for Admissions (Ex. 5 hereto) at ¶¶ 1–2 ("Admitted that [Plaintiff] did not use the Mark until … June 15, 2006.").

Despite this knowledge, Plaintiff lied to the USPTO by knowingly misrepresenting that Plaintiff's "first use anywhere" of the Mark was "[a]t least as early as *03/01/2001*." *See* Trademark Registration Application (Ex. 4 hereto) at p. 2 (emphasis added). This clear—and admitted—material misrepresentation is enough alone to mandate cancellation of Plaintiff's Mark. But, Plaintiff's misrepresentations did not end there.

**Third Misrepresentation:** At all material times, the name "Unisource Discovery" and the subject Mark was owned by Defendants. Although Plaintiff contended that Mr. Cerasale's contribution to Plaintiff (in exchange for 50% of Plaintiff's outstanding shares of stock) was the

14

name "Unisource Discovery" and the Mark, Plaintiff conceded that "the contribution that Mr. Cerasale brought to Unisource Discovery, Inc. … is all set forth in writing, in the agreements … signed to govern Unisource Discovery, Inc."—i.e., the June 15, 2006 Operating Agreement of Plaintiff (Ex. 3 hereto). Plaintiff's Dep. (Ex. 10 hereto) at 26:2–6, 25:17–20; *see also id.* at 98:2–3 ("The transfer happened way before, in 2006."). And the Operating Agreement is clear: "in the case that Steven Cerasale is no longer a Director, Officer or Agent of [Plaintiff], at that time ***the Board of Directors shall modify the current name of the Company 'UNISOURCE DISCOVERY' to be different in name only***." Plaintiff's Operating Agreement (Ex. 3 hereto) at p. 5. Plaintiff further admitted that "this document [i.e., the Operating Agreement] was active ***from 2006 until the new Closed Shareholder Corporation Agreement was enacted [in 2010]***." Pl. Dep. (Ex. 10 hereto) at 31:21–24. In other words, the Operating Agreement—and all its provisions—governed Plaintiff when Plaintiff filed its Trademark Registration Application (DE 139-1) on October 15, 2008.

Despite this knowledge, Plaintiff lied to the USPTO by knowingly misrepresenting that Plaintiff was the "owner" of the Mark as of October 15, 2008. *See* Trademark Registration Application (DE 139-1) at p. 1 (declaring that Plaintiff was the "owner of mark"); *id.* at p. 4 ("[Plaintiff] believes the applicant to be the owner of the trademark/service mark sought to be registered …."). This material—and documented—misrepresentation to the USPTO is enough alone to mandate cancellation of Plaintiff's Mark.

Plaintiff's three material and undisputed misrepresentations to the USPTO irrefutably support Defendants' Affirmative Defense of Cancellation. "Purposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight*, 522 F.3d at 1210.

15

### C. Plaintiff's claim under the Anticybersquatting Consumer Protection Act is equally meritless.

Plaintiff cannot possibly establish a viable claim under the Anticybersquatting Consumer Protection Act (ACPA). The law is clear: to establish a claim under the Act, the plaintiff must show that the subject domain name was registered or used in bad faith.

The facts are not disputed: Defendants registered the subject domain (i.e., www.unisourcediscovery.com) in March 2001—years before Plaintiff even existed. When Plaintiff was incorporated in June 2006, Plaintiff *used* the same domain name registered by Defendants. It was not until Plaintiff refused to pay for the costs associated with the subject domain in September 2019 that Plaintiff registered the domain www.unisourcediscovery.net. Pl. Dep. (Ex. 10 hereto) at 67:18–21 ("Q. Before you signed the operating agreement in June 15, 2006, the website unisourcediscovery.com was already in existence, correct? A. Yes."); Dec. (Ex. 1 hereto) at ¶ 5.

It, therefore, is uncontroverted that Defendants used the domain name first (predating Plaintiff's domain name by more than eight years). It likewise is clear that Defendants used the subject domain in good faith without any indicia of bad faith.

In fact, Plaintiff attached only one piece of documentary evidence to its Amended Motion (i.e., DE 139-1), which Plaintiff contends shows its "extensive marketing … in the fiercely competitive market in Florida." That "evidence" conclusively shows confirms that Plaintiff itself (not Defendants) was directing customers to visit Defendants' website as the website for "Unisource Discovery." *See* Exhibit A to Amended Motion (DE 139-1) at p. 6 ("Noel Mijares is President and Chief Executive Officer of [Plaintiff] … ***Contact him at advantage@unisourcediscovery.com*** …."); *id.* at p. 10 (same); *id.* at pp. 11, 15–16, 22–30

(reflecting Defendants' website "unisourcediscovery.com" as the website of "Unisource Discovery").

The undisputed / admitted facts show that Defendants had (at least) reasonable grounds to believe that their use of the domain name was lawful given Plaintiff admissions and course of actions over a period of more than a decade.

## II.   Plaintiff has not shown that it would suffer any irreparable harm.

From May 2001 (when Defendants began using the Mark) through to February 21, 2020, Defendants used the Mark as they deemed fit in their sole discretion—with Plaintiff full knowledge. It was not until February 21, 2020 that Plaintiff, for the first time, objected to Defendants' use the Mark. And then, it was not until July 12, 2021 that Plaintiff filed its Amended Motion claiming "irreparable harm." What changed? What caused Defendants' same exact "use" of the Mark and trademark to be OK for two decades and then suddenly cause "irreparable harm"?

The answer is: nothing. Plaintiff is not suffering—and will not suffer—irreparable harm.

Plaintiff's Motion is a thinly-veiled retaliatory gambit to cause as much harm as possible to Defendants. This case has nothing to do with the Mark or trademark—which Plaintiff never policed, controlled, or otherwise directed. Plaintiff's position that it will suffer irreparable harm is both defeated by its delay in filing a complaint and its failure to diligently seek injunctive relief.

"[A] plaintiff's delay in seeking an injunction in a trademark case 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.'" *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355–56 (S.D. Fla. 2002); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").

17

Plaintiff waited more than 15 years since it knew Defendants were using the Mark; more than 11 years since the Mark was registered; and more than 11 months after it filed its Complaint before filing its Amended Motion. Plaintiff has not provided any justification for its delay.

Plaintiff's delay confirms that there is no irreparable harm. *See Seiko Kabushiki Kaisha*, 188 F. Supp. 2d at 1356 (one year delay between knowledge of defendant's activities and filing lawsuit failed to show irreparable harm); *Wreal LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 12550932, at \*2 (S.D. Fla. Feb. 3, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016) (five month delay in moving for preliminary injunction failed to show irreparable harm); *Del Monte Int'l, GMBH v. Ticofrut S.A.*, No. 16-23894-CIV, 2017 WL 3610582, at \*12–13 (S.D. Fla. Mar. 7, 2017) (two-year delay in moving for preliminary injunction from the time the plaintiff was aware of defendant's activities failed to show irreparable harm); *Domond v. People Network APS*, No. 16-24026-CIV, 2017 WL 5640732, at \*4 (S.D. Fla. Jan. 5, 2017) (four-year delay between knowledge of defendant's activities and filing motion for preliminary injunction shows that plaintiff would not suffer irreparable harm); *Pals Grp., Inc.*, 2017 WL 532299, at \*6 ("Plaintiff sat on its rights for three months … [and] failed to offer any explanation for its three-month delay.").

Even if Plaintiff had not delayed (for years), the "evidence" presented does not show irreparable harm. Plaintiff does not support its Amended Complaint with any evidence other than its supposed "marketing materials" (DE 139-1) and filings/communications with the USPTO (DE 139-2 and 139-3). This evidence does not even begin to show any harm ostensibly suffered by Plaintiff. And even if Plaintiff had establish some modicum of harm (which it did not even attempt to do), Plaintiff has certainly not shown how monetary damages would be insufficient to address such harm. Without such a showing, preliminary injunction cannot be granted. *See IT Strategies Group, Inc. v. Allday Consulting Group, L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla.

2013) ("During oral argument on the instant motion, the undersigned inquired of counsel for the Plaintiff why an award of damages would not sufficiently compensate the Plaintiff for the injuries it alleges. Counsel could only cite the possibility that potential customers would visit the Defendants' website, find the product to be undesirable and decide not to buy any calculator, when otherwise the Plaintiff's calculator might have been purchased. The undersigned finds that this possibility is too speculative and remote to support a finding that irreparable injury will result if a preliminary injunction is not issued.")

Additionally, to obtain an *ex parte* order pursuant to Rule 65(b), "a party must show: 1) immediate and irreparable harm from specific facts by affidavit; and 2) the reasons supporting the claim that notice should not be required." *Revelex Corp. v. World Travel Holdings, Inc.*, No. 07-80002-CV, 2007 WL 42964, at *1 (S.D. Fla. Jan. 4, 2007) (internal quotations omitted). Plaintiff has not even attempted to meet its burden. Plaintiff's Amended Motion makes unsupported assertions (i.e., Defendants allegedly "duped [one] client into trusting that [Mr. Cerasale] was [Plaintiff]")." Motion (DE 139) at ¶ 8. Plaintiff, however, does not cite to a scintilla of evidence to support this baseless accusation. Moreover, this Court has compelled Plaintiff's to produce documents Defendants have requested that would support this allegation. *See* Order (DE 106). Plaintiff has not produced a single document that could support this contention.

## III. The Amended Motion should be denied because Defendants would suffer greatly disproportionate hardship if Plaintiff's Motion were granted.

Defendants have been using the Mark for almost two decades—significantly longer than Plaintiff has used the Mark or trademark. Over those two decades, Defendants built a nationwide brand; a brand from which Plaintiff benefitted. For the reasons set forth herein, assuming Plaintiff were entitled to a preliminary injunction—which it certainly is not—such an injunction would essentially destroy Unisource Discovery, LLC's business. The requested injunction, therefore,

19

would require Plaintiff to post a significant bond of several million dollars. *Domond v. People Network APS*, No. 16-24026-CIV, 2017 WL 5640732, at \*4 (S.D. Fla. Jan. 5, 2017), *rep. and rec. adopted sub nom.* No. 16-24026-CIV, 2017 WL 5642449 (S.D. Fla. Feb. 8, 2017) (balancing of harm weighs against injunction because plaintiffs failed to show an actual risk of harm and  knew of defendants' alleged infringement four years before filing its motion for preliminary injunction).

**IV.      Plaintiff cannot secure an injunction against Equicopy, Inc.**

In its Amended Motion, Plaintiff seeks to enjoin Equicopy, Inc. "for unlawful use and trading on Plaintiff's well-known registered 'Unisource' Trademark." Am. Motion (DE 139) at p.1. Plaintiff's position, however, fails for two fundamental and independent reasons.

First, Plaintiff has not been granted leave to join Equicopy, Inc. and, therefore, has not served it with process. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)).

Second, even if Plaintiff had served Equicopy, Inc., Plaintiff admitted that Equicopy, Inc. has not engaged in any infringement of the subject trademark: "Q. … So Equicopy [Inc.] did not infringe on the trademark? A. No." Pl. Dep. (Ex. 10 hereto) at 158:2–3, 155:7–8. Accordingly, as to Equicopy, the Amended Motion is defeated by Plaintiff's own clear admissions.

20

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on August 9, 2021, on all counsel or parties of record on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde

| SERVICE LIST | |
|---|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale*<br>**Case No. 20-CIV-23276-DPG** | |
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |

21