**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-23276-CIV-GAYLES/OTAZO-REYES

UNISOURCE DISCOVERY, INC.,

                Plaintiff,

v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

                Defendants.

---

## PLAINTIFF, UNISOURCE DISCOVERY, INC., SECOND AMENDED COMPLAINT

Plaintiff, Unisource Discovery, Inc. a Florida Corporation ("Unisource") hereby files its Second Amended Complaint against Defendants, Unisource Discovery LLC (hereinafter "UNI-CA"), a California Limited Liability Company, and Equicopy, Inc. a California corporation ("Equicopy") and Steven A. Cerasale, (hereinafter "CERASALE" or "Steven Cerasale") a California Resident, and alleges as follows:

### JURISDICTION AND VENUE

1.      This action arises under Acts of Congress relating to: (a) trademark infringement and unfair competition under 15 U.S.C. §§ 1114, 1116-1118, 1125, the federal Lanham Act, 15 U.S.C. § 1051, and subject matter jurisdiction pursuant to, *inter alia*, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

2.      This Court has personal jurisdiction over UNI-CA and Equicopy because, among other things: (a) UNI-CA and Equicopy maintains and operates websites that are accessible to residents of the State of Florida through which they actively advertise and promote

the infringing products; (b) UNI-CA and Equicopy have purposefully availed itself of the benefits and protections of Florida law by doing and transacting business in this forum; and (c) UNI-CA and Equicopy have extensive, systematic, and continuous contacts with this forum.

3.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims in this action occurred in this judicial district, and/or because Defendants actively promote, advertise, offer for sale, sell, and distribute the infringing products in this judicial district.

4.    Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims, because these claims arise from the same case and controversy and transactions and occurrences and derive from a common nucleus of operative facts.

5.    Defendant Equicopy is also subject to the general and specific personal jurisdiction of this Court under Florida law, including Florida's long-arm statute, F.S. § 48.193 (1)(a)-(b), (f)(1)-(2), and (g), and Federal Rule of Civil Procedure 4.

6.    Equicopy is also subject to supplemental judgement because, amongst other reasons, the claims arise from a common nuclease of operative facts.

7.    Upon information and belief, all defendants have separately or in concert engaged in acts giving rise to the claims in this Second Amended Complaint within this jurisdiction, in this Judicial District and throughout the United States.

8.    This action arises out of and relates to the business transactions, commission of injury and other specific and general business activities of the defendants in Florida, including in the Southern District of Florida, and throughout the United States. These transactions, commissions of injuries, and activities are described throughout this Amended Complaint and the original Complaint. As a result of these transactions, commissions of injuries, and unlawful activities purposefully directed at Plaintiff Unisource Discovery, Inc., (Florida) (a resident of the

forum) and Equicopy, the defendants are subject to personal jurisdiction in the Southern District of Florida.

9.       Each corporate and individual -- Unisource California, Equicopy, and Steven Cerasale -- as defendants acted in conspiracy and intended to cause devastating damage to Plaintiff in Florida by engaging in a scheme comprising specific and intentional torts as described in this Amended Complaint and the original Complaint.

10.      Each corporate and individual -- Unisource California, Equicopy, and Steven Cerasale --- defendant knew that these improper and unlawful actions would have devastating effects on Unisource Florida that would be felt here in Florida and thus are individuals that have committed intentional torts aimed at Florida.

11.      Defendant Equicopy has repeatedly offered to sell and sold trademark-infringing products in this judicial district. Equicopy has an interactive website available to all Floridians at www.equicopy.com where Floridians can order the accused products in Florida or otherwise have sold accused products in Florida, or sold them through UNI-CA.

12.      Both UNI-CA and Equicopy are majority owned by defendant Steven Cerasale..

## **ALTER EGO**

13.      Steven Cerasale uses Equicopy and UNI-CA as an *instrumentality* to carry-out his wrongful and unlawful acts against Plaintiff as alleged herein.

14.      Defendant Steven Cerasale is a managing member, officer, and director of UNI-CA and Equicopy --- both entities conduct substantially the same business, work with the same or similar clients, share the same employees, and publicizes and promotes its same/similar products in the same geographical areas.

15.      Upon information and belief, there existed, at all times mentioned herein, a unity of interest in ownership between Defendant Steven Cerasale and UNI-CA and between

Defendant Steven Cerasale and Equicopy such that any individuality and separateness between Defendant Steven Cerasale and UNI-CA and Equicopy has ceased.

16.     UNI-CA and Equicopy are the alter egos of Defendant Steven Cerasale, in that UNI-CA and Equicopy was conceived, established, intended, and used by Defendant Steven Cerasale as a device to avoid individual liability.

17.     Upon further information and belief, Defendant Steven Cerasale controls and directs the activities of UNI-CA and Equicopy.

**<u>THE PARTIES</u>**

18.     Plaintiff, UNISOURCE is a Corporation duly organized under the laws of the State of Florida with its principal place of business in the United States located at 555 NE 15th Street, 9th Floor, Suite 934-A, Miami, FL 33132. Unisource is, in part, engaged in the business of Litigation Support Services, Digital Records Retrieval and Service of Process, throughout the United States and within this Judicial District, high quality records retrieval and service of process under Federally registered trademark, include but not limited to the mark:



(the "Mark").

19.     Defendant, UNI-CA is a limited liability company duly organized under the laws of the State of California with its principal place of business in the United States located at 625 The City Drive, Suite 303, Orange, CA 92868.

20.     Defendant, UNI-CA conducts business within this jurisdiction and is directly engaging in the sale of infringing products within this District, as alleged herein.

21.     Defendant, Equicopy, Inc. is a corporation duly organized under the laws of the

4

State of California in year 2016 --- 15 years after UNI-CA incorporation --- with its principal place

of business in the United States located at 540 River Park Dr, Sacramento, CA 9581

    22.    Defendant, Equicopy Inc., conducts business within this jurisdiction and is directly

engaging in the sale of infringing products within this District, as alleged herein.

    23.    Upon information and belief, Defendant Steven Cerasale is an individual residing

in the State of California, and a purported officer/member of Defendant UNI-CA.

    24.    Defendant Steven Cerasale is a Shareholder and owner of Plaintiff UNISOURCE,

UNI-CA, and Equicopy.

## FACTUAL ALLEGATIONS

A.    **UNI-CA and Steven Cerasale**

25.  UNISOURCE is the owner of the following United States Federal Trademark:



Registration No. 3,634,516 and Serial No. 77594059, which registered on June 9, 2009 in

International Class 045 and is used in connection with legal research. The Plaintiff's registration

is incontestable. A copy of the U.S. Trademark Registration is attached hereto as (Exhibit A).

26.  The Mark has been used in interstate commerce to identify and distinguish

Unisource's high-quality legal support services and has been renewed under Section 8 (6-YR)

and Section 8 (10-YR) on April 5, 2019. (Exhibit B)

27.  By way of background, UNISOURCE had an ongoing business relationship with

UNI-CA and defendant Steven Cerasale that began in year 2006.  For Eleven (11) years

UNISOURCE permitted UNI-CA the Right to Use of Trademark to market and use the

Registered Trademark in connection with the business relationship, at no cost to UNI-CA for

such privilege. During this time, both companies co-owned a shared website, emails, and marketing materials.

28.   In and around year 2016, defendant Steven Cerasale, in violation of the UNISOURCE Close Corporation Shareholder Agreement, abandoned his fiduciary responsibilities to UNISOURCE and initiated an active campaign to damage UNISOURCE operations, including removal of UNISOURCE information from the co-owned website under URL www.unisourcediscovery.com and on May 14, 2021 Cerasale deleted the email accounts assigned to UNISOURCE under URL www.unisourcediscovery.com which have been co-owned and actively in use since June 2006.  Cerasale's actions have caused destruction of evidence. (See Exhibit C)

29.   On February 21, 2020, UNISOURCE notified UNI-CA and Defendant Steven Cerasale that the Right to Use of Trademark had been revoked and served proper notice via Email and U.S. Certified Mail to both parties.  Amongst other things, the notice provided UNI-CA with the option to cease all further use of the Trademark and requested that if UNI-CA wanted to continue to use the Trademark, it would be required to enter into a Licensing Agreement with UNISOURCE.  Failure to act would result in a Cease-and-Desist Letter. (Exhibit D)

30.   On May 12, 2020, UNISOURCE Counsel sent a Cease-and-Desist letter to UNI-CA and Defendant Steven Cerasale via Email and U.S. Certified Mail of their continued Infringement of Trademark Rights of UNISOURCE. (Exhibit E)

31.   The Mark has never been assigned or licensed to the Defendants.

32.   Defendants, seeking to capitalize on UNISOURCE'S reputation for high quality and ethical Legal Support Services service products, and the success of UNISOURCE, are advertising, promoting, distributing, selling, and offering for sale an identically named product, "UNISOURCE".

33.   Through UNI-CA's Internet presence, and with the Internet's concomitant ability to reach instantly millions of online consumers throughout the United States, including Florida, Defendants' have continuously and deliberately attempted to create a false impression of identification to diminish the distinctiveness of the UNISOURCE Trademark. UNISOURCE has expended substantial time and money developing, advertising, and promoting the Mark on a National level, including with the National Football League and Taste of the NFL, Cuban American Bar Association, Toys for Tots Foundation, Susan G. Komen for the Cure, CLM and publishing national articles by UNISOURCE CEO with the Association of Legal Administrators (ALA) (See Exhibit F)

34.   The Mark is a symbol of UNISOURCE's quality, reputation and good will and has never been abandoned.

35.   UNISOURCE has extensively used, advertised, and promoted the Mark in the United States in connection with Legal Support Services and has carefully monitored and policed the use of the Mark. (See Exhibit G) ADVERTISEMENT ADDS

36.   As a result of Unisource's efforts, and expense, the legal industry readily identifies the Mark as being high quality Legal Support Services.

37.   Defendants continue to use the Mark without permission or authority.

38.   Defendants have adopted not only the Mark itself, but also the look and feel of the Mark via the use of font, spacing, design and continue to "advertise" to the public on their website www.unisourcediscovery.com that Unisource Discovery is a Registered Trademark, even though UNISOURCE is no longer affiliated with Defendants nor their website and have no Right of Use.

39.   Upon information and belief, and as affirmed and executed in the Close Corporation Shareholder Agreement, and at all times relevant hereto, the Defendants in this

action had <u>full knowledge</u> of Unisource's ownership of the Mark, including its exclusive right to use and license the Mark and the goodwill associated therewith.

40.  Upon information and belief, the Defendants acted willfully and with intent to deceive consumers in its adoption and unauthorized use of the Mark.

B.     **Equicopy and Steven Cerasale**

41.  Equicopy was incorporated in year 2016 in the State of California and Defendant Steven Cerasale has a controlling interest in the company.

42.   Defendant Steven Cerasale clearly has the ongoing ambition and intent to maintain the fraudulent appearance of a separate business entity whereas Equicopy is not separate from Defendant Steven Cerasale's other businesses --- specifically UNI-CA.

43.  In fact, UNI-CA and Equicopy are in the same business, selling same or similar products, same or similar type of clients, share same employees, and in the same geographical coverage area in the United States --- including this District.

44.  As architect of this fraudulent design, defendant Steven Cerasale clearly and intentionally created Equicopy to be a pawn in his scheme against UNISOURCE.

45.   Defendant Steven Cerasale's intentional acts of creating competitive entities against Plaintiff is *contractually prohibited* since he agreed to refrain from forming/creating any business that competes with Plaintiff and/or be in any position to compete with Plaintiff, as stipulated in the Closed Corporation Shareholder Agreement.  (See Exhibit H)

46.  Defendant Steven Cerasale breached the following contractual provisions of the Close Corporation Shareholder Agreement (this "Agreement") entered into as of June 28, 2010, to *wit:*

A.     <u>Further Acts</u>:   Pursuant to provision 6, Defendant Steven Cerasale violated/breach because he did not inter alia "….  promptly take such further acts

and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement.

B.    <u>General Corporate Management</u>:    Pursuant to provision 1.11, Defendant Steven Cerasale breached this contractual provision when "…. Notwithstanding the foregoing, neither the Company nor any officer or Director of the Company may engage, permit, waive, or suffer any breach of fiduciary duty to the Company or its shareholders other than with the express written consent of all of the Shareholders."

47.    At no time did defendant Steven Cerasale confer with UNISOURCE that he would be creating other businesses – here, Equicopy -- that would be a competitor with Plaintiff.

48.    Moreover, defendant Steven Cerasale never disclosed to Plaintiff that Equicopy would be integrated into Plaintiff Unisource Software Programs – that is, Equicopy is a foreign company defendant Steven Cerasale unilaterally imbedded into Plaintiff's business operational software platform, thereby invading its protected client information and protected client privacy. (See Exhibit I)

49.    On or about March 2016, defendant Steven Cerasale also unilaterally changed the Unisource Florida Records Retrieval Software when he altered Plaintiff's ability to provide the same level of services to its clients and resulted in a material loss of business.

50.    These breakdowns were also a direct result of defendant Steven Cerasale imbedding Equicopy directly into the software since it downgraded Unisource Florida's ability to operate at full capacity. For example, all of Florida's legal template forms were removed by defendant Steven Cerasale from the system, and to date Plaintiff can only use three (3) out of (32) legal template forms, and this has caused great damage and loss of

business. (See Exhibit J)

51.   The direct consequence of defendant Steven Cerasale's unilateral acts of installing/imbedding Equicopy into Plaintiff's operational software has been critical because the monthly revenue averages have been steadily falling month-to-month, year-to-year, by sixty-five percent (65%).   This revenue dive is substantially or wholly connected to Plaintiff's clients being prevented from processing online orders, properly using legal templates, check order status, obtain affidavits, obtain updates on orders, and more, due to the impact caused.

52.   As a consequence of defendant Steven Cerasale actions and inactions, all these functions ceased working and clients canceled their order(s) and services.

53.   As another direct consequence of the foregoing, Plaintiff's software is functioning at sixty-percent (60%) none-useability that is preventing Plaintiff from growing its business base because it cannot maintain the same volume of orders/subpoena with this marked reduction.

**COUNT I**
**Trademark Infringement (15 U.S.C. § 1114)**
*Against UNI-CA and Steven Cerasale*

54.   Unisource hereby readopts and re-alleges the allegations set forth in Paragraphs 1 through 53 above.

55.   This is an action for trademark infringement against the Defendants.

56.   Defendants' use of the Trademark



in connection with Legal Records Retrieval Services is likely to cause confusion, mistake

and deception among consumers, the public, and the trade as to whether Defendants' products or services are affiliated with, sponsored by, or endorsed by Plaintiff.

57.     Defendants' action, as set forth, constitute infringement of Plaintiff's trademark registration in violation of the Lanham Act, 15 U.S.C. § 1114(1).

58.     Defendants have acted with actual or constructive knowledge of Plaintiff's Mark and registration, and upon information and belief, with deliberate intention to confuse consumers, or willful blindness to Plaintiff's rights. Defendants have actively targeted UNISOURCE clients in Florida and Louisiana and have used the Mark to confuse the consumer in the process.

59.     Defendants have made and will continue to make substantial profits and/or gains to which they are not entitled.

60.     By reason of the foregoing, Plaintiff has been and will continue to be irreparably harmed and damaged. Plaintiff's remedies at law are inadequate to compensate for this harm and damage.

**COUNT II**
**<u>False Designation of Origin and Unfair Competition</u>**
*Against UNI-CA and Steven Cerasale*

61.     Unisource hereby readopts and re-alleges the allegations set forth in Paragraphs 1 through 53 above.

62.     Unisource owns a valid Registered Trademark entitled to protection under the Lanham Act.

63.     Defendants have demonstrated a deliberate intent to trade off the goodwill of Unisource's Mark as a means of increasing Defendants' own sales volume at the expense of Unisource.

64.     The Defendants' deliberate conduct is likely to result in consumers purchasing the Defendants' services in mistaken belief that it originates from Unisource, and this is happening in

Florida and Louisiana with Unisource clients believing that they are ordering with Unisource in Florida, when they are being tricked and re-directed to Defendant's business instead.

65.     Defendants' unauthorized use of the Mark, which is owned by Unisource in connection with identical or highly similar goods is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Unisource, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Unisource.

66.     Defendants' action, as set forth, constitute false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Defendants have made and will continue to make substantial profits and/or gains to which they are not entitled.

68.     Defendants have failed to respond to the numerous attempts by Unisource to enter into a Licensing Agreement.

69.     By reason of the foregoing, Plaintiff has been and will continue to be irreparably harmed and damaged. Plaintiff's remedies at law are inadequate to compensate for this harm and damage.

## COUNT III
### Florida Common Law Trademark Infringement
*Against UNI-CA and Steven Cerasale*

70.     Unisource hereby readopts and re-alleges the allegations set forth in Paragraphs 1 through 53  above.

71.     Unisource owns a valid trademark entitled to protection under Florida common law.

72.     Defendants' use of the Trademark



in connection with Legal Support Services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Defendants' services are affiliated with, sponsored by, or endorsed by Plaintiff.

73.     This conduct constitutes trademark infringement under Florida common law, and has caused and will continue to cause, Unisource to incur damage.

74.     By reason of the foregoing, Plaintiff has been and will continue to be irreparably harmed and damaged. Plaintiff's remedies at law are inadequate to compensate for this harm and damage.

## COUNT IV
### **Florida Common Law Unfair Competition**
*Against All Defendants*

75.     Unisource hereby readopts and re-alleges the allegations set forth in Paragraphs 1 through 53 above.

76.     Defendants have infringed Unisource's Mark in violation of its trademark rights.

77.     Defendants have demonstrated a deliberate intent to trade off the goodwill of Unisource's Mark as a means of increasing Defendants' own sales volume at the expense of Unisource.

78.     The Defendants' deliberate use of Unisource's Mark or a similar variation thereof in connection with identical or highly similar goods is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Unisource, or as to the origin, sponsorship, or approval of Defendants' good, services, or commercial activities by Unisource.

79.     The Defendants' deliberate conduct is likely to result in consumers

purchasing Defendants' services in mistaken belief that it originates from Unisource, and this is currently happening.

80.     This conduct constitutes unfair competition under Florida common law, and has caused, and will continue to cause, Unisource to incur damage.

81.     By reason of the foregoing, Plaintiff has been and will continue to be irreparably harmed and damaged. Plaintiff's remedies at law are inadequate to compensate for this harm and damage.

**COUNT V**
**<u>Trademark Counterfeiting (15 U.S.C. § 1114)</u>**
*Against UNI-CA and Steven Cerasale*

82.     Plaintiff incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

83.     Defendants, intentionally and without authorization from UNISOURCE, have used and are continuing to use counterfeit marks or spurious designations that are identical to, or substantially indistinguishable from, UNISOURCE Trademark.

84.     Defendants' use of the identical name "UNISOURCE" is confusingly similar to UNISOURCE® trademark and has caused and/or is likely to cause confusion, mistake and/or deception among members of the relevant consuming public, and/or is likely to continue to deceive, the public into believing that the goods and services promoted, and/or old and/or performed by Defendants are UNISOURCE products and/or otherwise authorized or licensed by UNISOURCE.

85.     Defendants' actions constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

86.     Defendants' actions have been willful, deliberate, and intended to benefit Defendants at UNISOURCE'S expense.

87.     Defendants' actions have caused, and will continue to cause, irreparable harm to UNISOURCE, and will continue to so harm UNISOURCE unless preliminarily and permanently enjoined.

88.     Furthermore, Defendants are realizing profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause UNISOURCE monetary damage in amounts to be determined at trial.

**COUNT VI**
**Federal False Designation Of Origin and**
**False Advertising (15 U.S.C. § 1125(a))**
*Against UNI-CA and Steven Cerasale*

89.     Plaintiff incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

90.     By misappropriating and using the identical and therefore confusingly similar "UNISOURCE" name, Defendants have falsely designated and falsely represented that the goods they promote, advertise, offer for sale, sell and/or distribute originate from, are endorsed by, are connected with, authorized by, or otherwise associated with UNISOURCE, who owns a federal registration for its UNISOURCE® Trademark.

91.     Defendants' promotion, advertising, distribution, sale and/or offering for sale of its purportedly generic product, together with Defendants' use of other indicia associated with UNISOURCE's … UNISOURCE® branded product, is intended or is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of Defendants' goods, or is intended, or is likely to cause such parties to believe in error that Defendants' "UNISOURCE" products have been authorized, sponsored, approved, endorsed or licensed by UNISOURCE, or that Defendants are in some way affiliated with UNISOURCE.

92.     Defendants' actions have been willful, deliberate, and intended to benefit

Defendants at UNISOURCE's expense.

93.     Defendants' actions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Defendants' actions have caused, and will continue to cause, irreparable harm to UNISOURCE, and will continue to so harm UNISOURCE unless preliminarily and permanently enjoined.

95.     Furthermore, Defendants are realizing profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause UNISOURCE monetary damage in amounts to be determined at trial.

**COUNT VII**
**<u>Trademark Infringement</u>**
**(Florida Common Law)**
*Against UNI-CA and Steven Cerasale*

96.     UNISOURCE incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

97.     Defendants have infringed UNISOURCE's rights in the UNISOURCE® trademark by, among other things, using in commerce the identical and confusingly similar name "UNISOURCE" in connection with the promotion, advertising, sale, offering for sale, and distribution of their legal services product.

98.     Defendants' use of the identical name "UNISOURCE" is confusingly similar to UNISOURCEs' UNISOURCE® trademark and has caused and/or is likely to cause confusion, mistake and/or deception among members of the relevant consuming public as to the origin or affiliation of Defendants' goods and has deceived, and/or is likely to continue to deceive, the public into believing that the goods promoted, sold and/or distributed by Defendant emanate from, or are associated with, UNISOURCEs and its goods, all to the damage and detriment of UNISOURCEs' reputation, goodwill and sales.

99.     Defendants' actions have been willful, deliberate, and intended to benefit Defendants at UNISOURCEs' expense

100.    Defendants' actions constitute trademark infringement under Florida common law.

101.    Defendants' actions have caused, and will continue to cause, irreparable harm to UNISOURCE, and will continue to so harm UNISOURCE unless preliminarily and permanently enjoined.

102.    Furthermore, Defendants are realizing profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause UNISOURCE monetary damage in amounts to be determined at trial.

**COUNT VIII**
**<u>Unfair Competition</u>**
**(Florida Common Law)**
*Against All Defendants*

103.    UNISOURCE incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

104.    By misappropriating and using the identical and therefore confusingly similar "UNISOURCE" name, Defendants have falsely designated and falsely represented that the goods they promote, advertise, offer for sale, sell and/or distribute originate from, are endorsed by, are connected with, authorized by, or otherwise associated with UNISOURCEs, who owns a federal registration for its UNISOURCE® Trademark.

105.    Defendants' actions have been willful, deliberate, and intended to benefit Defendants at UNISOURCE's expense.

106.    Defendants' actions constitute unfair competition under Florida common law.

107.    Defendants' actions have caused, and will continue to cause, irreparable harm to UNISOURCEs, and will continue to so harm UNISOURCEs unless preliminarily and

17

permanently enjoined.

108.    Furthermore, Defendants are realizing profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause UNISOURCE monetary damage in amounts to be determined at trial.

## COUNT IX
### Deceptive Trade Practice Under Florida Law
### (Fla. Stat. Ann. § 501.204)
#### *Against All Defendants*

109.    UNISOURCEs incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

110.    Defendants have engaged in unfair and deceptive acts or practices by misappropriating, imitating and/or copying UNISOURCE® trademark in connection with the "UNISOURCE" legal services they promote, advertise, offer for sale, sell and/or distribute in the state of Florida, thereby creating a likelihood of public confusion as to the source of Defendants' goods and services.

111.    Defendants have deceptively and falsely represented to consumers that are not distinguishable from Plaintiff.

112.    Defendants' actions have been willful, deliberate, and intended to benefit Defendants at UNISOURCE's expense.

113.    Defendants' actions constitute deceptive trade practices in violation of Section 501.204 of the Florida Statutes.

114.    Defendants' actions have caused, and will continue to cause, irreparable harm to UNISOURCE, and will continue to so harm UNISOURCE unless preliminarily and permanently enjoined.

115.    Furthermore, Defendants are realizing profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause

UNISOURCEs monetary damage in amounts to be determined at trial.

**COUNT X**
**Misleading Advertising Under Florida Law**
**(Fla. Stat. Ann. § 817.41)**
*Against All Defendants*

116.     UNISOURCEs incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

117.     By misappropriating and using the identical and therefore confusingly similar "UNISOURCE" name, Defendants are falsely and misleadingly designated and/or falsely and misleadingly represented that the goods/services it/he/they promotes, advertises, offers for sale, and/or sells originate from, are endorsed by, are connected with, authorized by, or otherwise associated with UNISOURCE, who owns a federal registration for its UNISOURCE® trademark.

118.     Defendants promotion, advertising, sale and/or offering for sale of its goods, together with Defendants use of other indicia associated with UNISOURCE's UNISOURCE® branded product, is intended or is likely to confuse, mislead, or deceive consumers, the public, and the trade in Florida.

119.     Defendants actions have been willful, deliberate, and intended to benefit Defendant at UNISOURCE's expense

120.     Defendants actions constitute misleading advertising in violation of Section 817.41 of the Florida statutes.

121.     Defendants actions have caused, and will continue to cause, irreparable harm to UNISOURCE, and will continue to so harm UNISOURCE unless preliminarily and permanently enjoined.

122.     Furthermore, the Defendants are realizing profit and will continue to realize a profit from its unlawful actions. Defendants unlawful actions are causing and will cause

UNISOURCE monetary damage in amounts to be determined at trial.

## COUNT XI
### Breach of Contract / Implied Covenant of Good Faith and Fair Dealing
*Against Steven Cerasale*

123.    UNISOURCEs incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

124.    Steven Cerasale entered into a binding and enforceable contract with Plaintiff – the Close Corporate Shareholder Agreement.

125.    Specifically, by way of a Stock Purchase Agreement, Steven Cerasale has the obligation not to create and/or use any company against Plaintiff or otherwise compete against Plaintiff in the same market.

126.    These obligations include an implied covenant of good faith and fair dealing.

127.    That covenant embodied an obligation to advise Plaintiff of information material to the proper operation of Unisource Florida even if not expressly forbidden by any contractual provision.

128.    The implied promised not to deny Unisource Florida material information pertaining to UNI-CA and Equicopy is not contrary to any express provision of the Close Corporation Shareholder Agreement.

129.    The failure of Steven Cerasale to disclose this information to Plaintiff constitutes a breach of the Stock Purchase Agreement.

130.    Plaintiff suffered damages as a result of the breach of contract by Steven Cerasale.

## COUNT XII
### Fraudulent Concealment
*Against Steven Cerasale*

131.    UNISOURCEs incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

132.    Steven Cerasale failed to disclose material information pertaining to using UNI-CA and Equicopy in violation of the Close Corporation Shareholder Agreement through concealing that his companies, Equicopy and UNI-CA, were converting clients of Plaintiff and competing against Plaintiff.

133.    Steven Cerasale was/is obligated to disclose any information that could reasonably bear on Plaintiffs' operation, and as alleged herein Steven Cerasale owed a contractual obligation to the Plaintiff.

134.    Steven Cerasale concealed this information from the Plaintiff for his own personal financial benefit and thereby denied Plaintiff material information pertaining UNI-CA and Equicopy competitive positioning.

135.    Steven Cerasale understood such concealment also violated his contractual obligations in both the Close Corporation Shareholder Agreement and the Stock Transfer and Licensing Agreement.

136.    Steven Cerasale knew that the Plaintiff was relying upon his false and incomplete information.

137.    Plaintiff justifiably relied on defendant Steven Cerasale material omissions resulting in damages in the amount of $840,000.00, plus interest, costs, and attorney's fees.

## COUNT XIII
### Specific Performance
*Against All Defendants*

138.    UNISOURCE incorporates the allegations in paragraphs 1 through 53 as if fully set forth herein.

139.    The value of the property/trademark is uncertain or not readily ascertainable in

the open market

140.    Additionally, the damages resulting from the breach of the contract are too uncertain or indefinite because the breaches have been ongoing, and the value of the trademark cannot be calculated to any certainty.

141.    The good will of Plaintiff's business and the value of a going business and the profits involved cannot be readily ascertained. As such, the estimation of value would be so indefinite recovery would not furnish a complete and adequate remedy at law.

142.    If Defendants continue their actions the Plaintiff will suffer irreparable injury, including losing its ability to operate its business.

143.    Plaintiff is extremely likely to prevail on the merits of this matter,

144.    Defendant will not suffer any irreparable injury in being required to simply comply with the terms and conditions of the Unisource Stock and the License Agreement and Close Corporation Shareholder Agreement, and the public interest will be served by requiring Defendants to comply with the terms and conditions of the Unisource Stock and License Agreement.

145.    The Unisource Stock and License Agreement and the "exact" language in the Close Corporation Shareholder Agreement itself recognizes that specific performance is appropriate in the event of Defendants' breach and authorizes specific performance as a remedy.

146.    Specifically, paragraph 8 states, "Further Acts. The parties to this Agreement shall promptly take *such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement.* Without limiting the generality of the foregoing, in the event any court, county recorder, secretary of state of any state, any federal agency, or any other governmental agency may require any additional or different documents

or actions in order to effect the purposes contemplated by this Agreement, the parties to this Agreement shall execute the necessary documents *and take the necessary steps to comply with those requirements*." (emphases added)

147.    Paragraph 6 of the Close Corporation Shareholder Agreement similarly states, "<u>Further Acts.</u> The parties to this Agreement shall promptly take such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement. Without limiting the generality of the foregoing, in the event any court, county recorder, secretary of state of any state, any federal agency, or any other governmental agency may require any additional or different documents or actions in order to effect the purposes contemplated by this Agreement, the parties to this Agreement shall execute the necessary documents *and take the necessary steps to comply with those requirements*." (emphases added)

148.    As such, the Defendants must be compelled to specifically perform its obligations under the Unisource Stock and License Agreement and Close Corporation Shareholder Agreement to cease using Plaintiff's trademark.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff UNISOURCE respectfully requests judgment against Defendants as follows:

A.    Permanently enjoining and restraining Defendants and their respective officers, directors, principals, partners, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendants, from:

1.    Using on or in connection with the production, manufacture, advertisement, promotion, display on the Internet or otherwise, displaying for sale, offering for sale, sale, or distribution of any articles of merchandise, or for any purposes whatsoever, the UNISOURCE® Trademark, or any colorable imitations thereof or any mark confusingly

similar thereto;

      2.     Representing by any means whatsoever, directly, or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive purchasers into believing that Defendants' products originate with or are the products of UNISOURCE or that there is any affiliation or connection between Plaintiff and its products and Defendants or their products and from otherwise competing unfairly with UNISOURCE;

      3.     Using any mark in a manner so as to cause the dilution of the distinctive quality of the Plaintiff's UNISOURCE® trademark, including, but not limited to, by using the designation "UNISOURCE";

      4.     Making any false and misleading representations of material facts in advertising and promotional material, including, but not limited to, the representations that Defendants' legal product is an alternative to UNISOURCE's UNISOURCE® legal products and services;

      5.     Assisting, aiding, or abetting any other person or business entity in engaging in or in performing any of the activities referred to in the above-referenced subparagraphs.

    B.     Directing that Defendants, at their own expense, recall all marketing, promotional and advertising materials that bear or incorporate any mark or design with "UNISOURCE" or any mark confusingly similar to the UNISOURCE® trademark, and to reimburse all customers from which said materials are recalled.

    C.     Directing that Defendants deliver to UNISOURCEs' attorneys or representatives for destruction all products – including, but not limited labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements – in their possession or under their control, bearing the "UNISOURCE" name or any simulation, reproduction, copy or colorable imitation of UNISOURCE's UNISOURCE® trademark, and all plates, molds, matrices, and any other means of

making the same.

D.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from forming any erroneous impression that any product and service sold or otherwise promoted by Defendants is authorized by UNISOURCEs or related in any way to UNISOURCEs' UNISOURCE® legal product.

E.      Directing Defendants to file with this Court and to serve upon UNISOURCEs within thirty (30) days after service upon Defendants of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction.

F.      Awarding UNISOURCE as damages against the Defendants' joint and severally per paragraph 5 of Close Corporation Agreement, their profits, royalties, and revenue from their sale of their "UNISOURCE" product under 15 U.S.C. § 1117(a).

G.      Joint and severally, per paragraph 5 of Close Corporation Agreement, awarding UNISOURCE treble damages permitted by the Lanham Act, 15 U.S.C. § 1117(a) and (b), based upon Defendants' willful infringement and counterfeiting.

H.      Joint and severally, as per paragraph 5 of Close Corporation Agreement, awarding UNISOURCE statutory damages in an amount not to exceed Two Million Dollars ($2,000,000) per counterfeit mark per type of goods sold, offered for sale, or distributed by Defendants, as the Court considers just, pursuant to 15 U.S.C. § 1117(c)(2).

I.      Joint and severally as per paragraph 5 of Close Corporation Agreement, awarding UNISOURCE its damages by reason of Defendants' acts of common law trademark infringement, unfair competition, and for deceptive trade practices under the Florida Statues, in an amount to be established at trial.

J.      Awarding UNISOURCE its damages, joint and severally per paragraph 5 of Close

Corporation Agreement, by reason of Defendant UNI-CA false and misleading advertisements under the Florida Statutes, in an amount to be established at trial.

      K.     Awarding UNISOURCE punitive damages, joint and severally per paragraph 5 of Close Corporation Agreement, by reason of Defendants' willful, intentional, and malicious acts of common law trademark infringement and unfair competition, in an amount to be established at trial.

      L.     Enter a ruling that Steven Cerasale breach his contractual duties;

      M.     Enter a ruling that Steven Cerasale fraudulently concealed information from Plaintiff as alleged;

      N.     Find Steven Cerasale in Breach of Contract / Implied Covenant of Good Faith and Fair Dealing;

      O.     Awarding UNISOURCEs reasonable attorneys' fees, costs, and expenses pursuant to the Lanham Act, 15 U.S.C. § 1117 and Florida law; and

      P.     Awarding UNISOURCEs such further relief as this Court deems proper.

      Q.     The Court exercise its equitable powers to compel Defendants to specifically perform its obligations by ceasing all use of Plaintiff's Trademark. In conjunction with such order of specific performance, Plaintiff further prays the Court to award it all court costs, attorneys' fees, and prejudgment interest from the date of Defendants' breach through the date it specifically performs its obligations.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven A. Cerasale, on August 23, 2021.

Respectfully submitted,

/s/ *Diego David Valdes*

Diego David Valdes, Esq.
Florida Bar No. 251010
Email: ddvlaw@gmail.com
      ddv@ddvlawgroup.com

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

Counsel for Plaintiff: Unisource Discovery, Inc.