Exhibit "F"

# automating
# document
# retrieval





BY NOEL MIJARES

**Advances in document retrieval technology have increased the efficiency of law firms and law departments who use the technology in-house. But these same advances have also increased the value of going outside – outsourcing the entire process of managing documents. Administrators can play key roles in ascertaining how their organizations manage this critical area.**

Document retrieval technology has been advancing steadily since the days of paper-based filing systems. Speed and storage capacity have increased by orders of magnitude. Storage has evolved from small racks of floppy disks holding a few megabytes to giant client/server networks holding terabytes and even petabytes.

Ease of use has been transformed; retrieval is simple and fast. Adding a document to a case file, or auditing a case file, is no longer a tedious process of looking through rooms full of paper to find the right boxes. It involves only a few minutes of work at a computer keyboard. Documents are easily shared. Today, in many law firms, technology has replaced Bankers Boxes with document servers and the wheeled litigation bag with a laptop.



**Noel Mijares**, *President and Chief Executive Officer*, UNISOURCE DISCOVERY

An outside document **retrieval company** can put everything in order for a law firm's litigated case: **by claim, by plaintiff name, or by internal file name**. But while it does all these things for the law firm, it **also allows** the firm to *retain control* of its files.

Most law firm leaders now recognize that they can use state-of-the-art document retrieval technology to boost the productivity of their litigation support units (comprising legal administrators, office managers, paralegals and legal assistants); take on more business (increase profits); and handle cases more consistently, accurately and quickly – and, therefore, close cases faster.

### THE GROWTH OF OUTSOURCING

As document retrieval technology became ever more powerful and popular, law firms started outsourcing their document management tasks to specialists: digital document retrieval companies. This trend began in the late 1970s. It took off in the 1980s as more and more law firm leaders recognized the business value.

In the 1990s, outsourcing became even more popular, as document technology took a giant leap, from microfiche to scanner. A paralegal, a member of the litigation support unit, could now physically retrieve and scan an entire file, versus depending on what's on that microfiche and hoping that nobody left something out.

Some law firm and law department professionals chose to buy technology directly and use it in-house. The technology gave them leverage: higher efficiency. Other firms switched to (or stayed with) a digital document retrieval company. These specialist companies added leverage *on top of the technology's leverage*, thanks to the cumulative value of experience.

In other words, the value was analogous to the value of hiring an accounting firm or an executive search firm. Naturally, the people in the outside company are better at their specialty than their clients are. But also, they *want to remain* in the specialty – their source of income. What legal

administrator wants to remain deeply involved in the minutiae of document management? What legal assistant wants to stand at a copy machine all day, every day?

And for *smaller* law firms and law departments, a digital document retrieval company offers tremendous reserves of manpower; in effect, a law firm with only four people can have the resources of 100 employees behind it.

After 2000, digital document retrieval companies grew even faster, as computer technology prices plummeted. They could offer more availability, larger document volumes and greater efficiency and business value.

### WHAT THE COMPANIES DO

In the days before the big technology advances, a law firm or law department had to depend on every single piece of paper. A litigator might obtain nine records and be unaware of a tenth record that could decide a multimillion-dollar case.

So the law firm or legal department had to put all its boxes of paper somewhere safe – usually paying fees to a storage company to store them. When the firm wanted to go back and audit a file, or retrieve something, or add something, someone had to go through the process of requesting the file to be delivered again, and then go through all of those boxes of paper.

Today, law firms and law departments don't have to endure all of that. They can rely on digital document retrieval companies to manage hundreds of millions of documents in their servers and backup storage facilities. These companies enable their clients – from anywhere and at any time – to immediately access files that could be six months old or six years old. Everything is accessible.

## THE FIRST STEPS TO PRESENTING YOUR PLAN

You already know you need automated document retrieval – but the thought of presenting a plan to your managing partner can be daunting. Solution: Build the presentation as you go. Follow these seven steps:

1. **Estimate the soft savings.** Automation and outsourcing will improve the productivity of your litigation support unit by up to 40 percent. Plan how you would reassign people and how you would modify people's behaviors. Write it all down. You have just written the first installment of your presentation.

2. **Estimate the hard savings.** Automation and outsourcing can cut your hard-dollar costs (service of process, retrieval, storage, etc.) by up to 50 percent. Apply these numbers to your situation. Add the cost savings to the presentation.

3. **Determine the scope.** Pilot test or immediate conversion? One location or all? Why? Explain it all in the presentation.

4. **Identify proven companies.** Via web searches and networking with your fellow administrators, collect names of established companies.

5. **Interview them.** Invite them in. Show them your objectives. Drill them for the wisdom of their experience. Are your expectations realistic? Ask for proposals tailored to your firm.

6. **Study each proposal.** Could the company do everything well, from start to finish? Interview employees and clients. Become an expert on what they offer.

7. **Wrap up the presentation.** You now have enough information to finish your presentation. Describe the situation now, the situation after conversion and the potential savings. Put it all in quantitative and analytical terms.

Document retrieval has become a lot more user-friendly. Today, paralegals at a law firm can log on to a company's secure website. There, they can enter orders, review the status of orders, download records, archive records and add information to existing orders.

### LITIGATION CASE MANAGEMENT

An outside document retrieval company can put everything in order for a law firm's litigated case: by claim, by plaintiff name, or by internal file name. But while it does all these things *for* the law firm, it also allows the firm to *retain control* of its files.

Ultimately, such law firms will close cases faster, and they will do it at minimum cost. Typically, a law firm or law department that outsources to a digital document retrieval company will see immediate savings in operating costs. Outsourcing document retrieval typically reduces both soft and hard costs.

Savings in soft costs come from freeing the staff from less-productive tasks, such as requesting checks and calling custodians for follow-up. Research indicates that the typical increase in staff productivity can be as high as 40 percent. Savings in hard costs come from the digital document retrieval company's ability to consolidate and standardize. For example, some law firms are paying $20 to $35 to serve a subpoena, whereas with digital records retrieval, they are paying one fee for everything.

### ASKING GOOD QUESTIONS

Many law firms and law department leaders have recognized that an outside company, especially if it owns and properly uses the latest technology, can offer great business value. You may be thinking likewise.

- You may be considering a move to outsourcing, but have not decided whether to go ahead.
- You may have decided to move, but are considering whether to do it now or later.
- You may have decided on the move and the schedule, but may not have chosen a company.

In any of these three situations, you can benefit by asking questions that will shine a spotlight on the important competitive differences between companies. It will help you to decide if outsourcing is right for you at this time, or not. And, if it is, it will

help you to ascertain which company seems likely to give you the most valuable service at the best price, while keeping you in control of all of your records.

Based on my experience in the digital document retrieval business – including years of listening to the requests and needs law firm and legal department managers – I have learned what matters most in the selection of a company. Ask the following key questions:

- **Technology infrastructure.** How current is the company's technology infrastructure? Does the company own (as opposed to rent) its infrastructure and its IT department? What are the provisions for reliability, accessibility and security?
- **Use of technology.** How well does the company make use of its technology? How consistent, fast and accurate is the service? Is it available 24/7? What types of documents does the company handle – for example, film breakdowns that include dates of service, types of exams, number of films available and costs? Are all documents available to you digitally, in real time? How easy is it to add or share documents?
- **Beyond technology.** For U.S. firms, are all records compliant with the Health Insurance Portability and Accountability Act (HIPAA)? How and where will the company store your backup documents? Are paper documents bound and paginated? Does the company handle service of process? Does the company deal directly with notifying opposing counsel? Does the company deal directly with custodians? Does it issue checks for custodial fees and fund the payments? Can the company offer you complete, turnkey service – become your back office – if you want that? How well does the company keep *you* in control?
- **Flexibility.** Can the company meet your needs and preferences regarding the forms of documents? Can you choose to receive documents digitally, on paper or both, as you prefer? Will you be able to transfer files between offices? Will the company bill by adjuster, by law firm, in sequence of invoice number, or by case? Will you have to pay a minimum fee, regardless of activity level?

- **Staging.** If you decided to partner with this company, would you be able to outsource your work gradually, evaluating success as you go, or would you be forced to make an all-or-nothing decision?
- **The bottom line.** How well does the company control the costs associated with litigated files? Can the company reliably predict your overall cost savings and the cost of each litigation? Overall, how much faster will you close your cases? Can you interview a few of the company's employees and current clients before you decide to become a client?

## SOME QUESTIONS FOR *YOU*

Here are some overarching questions about what you want from the company and what you think of it:

- **Your goals.** How important is the need to relieve your litigation support unit from copying, scanning and chasing documents so you can assign them more profitably? How many members of your litigation support unit do you want to relieve in this way? How and where would you assign them?
- **How do you feel?** What is your intuitive feeling about this company? Do you feel that you would have peace of mind and remain in control? Do the employees seem professional? Do you believe they would cater to your specific needs and preferences, or do they exhibit a "one-size-fits-all" attitude?

If you can manage to get useful answers to most of these questions, you will have put yourself far ahead of your competition – whether or not you decide to hire a document retrieval company. And if you do decide to hire a company, you will have made a profitable relationship much more likely. ✱

*about the author*

**Noel Mijares** is President and Chief Executive Officer of Unisource Discovery, a digital document retrieval and e-discovery company. Contact him at *advantage@unisourcediscovery.com* or 866.580.0002.



### RELIEVING

# CONGESTION

## IN RECORDS AND TRACKING

LAW FIRMS AND LEGAL DEPARTMENTS NO LONGER HAVE TO WAIT MONTHS TO COMPLETE THEIR CASE FILES. THEY CAN NOW SUBSTANTIALLY SHORTEN RECORDS RETRIEVAL TIME BY OUTSOURCING TO SPECIALISTS: DIGITAL DOCUMENT RETRIEVAL COMPANIES.



BY NOEL MIJARES

Law firms and legal departments can no longer afford traditional methods of retrieving and tracking records. Records retrieval, which is in the critical path to closing a case, often takes months to complete. Congestion uses up staff time and budgets, forcing trial lawyers to work for little or nothing. Congestion also can cause adjusters to drop law firms who can't control costs.

The good news: Specialized technology, methods and skills can relieve the congestion. What once took months with traditional methods can now be done in weeks. And while staff in law firms and legal departments can clear *some* of the congestion, business partner specialists can clear it *all* – totally offloading the onerous work from legal administrators and their colleagues. *You never really did enjoy chasing custodians, did you?*

## WHERE CONGESTION OCCURS, AND WHY

The most common congestion point is the front end of the retrieval process, when the litigation support unit is thoroughly dependent on custodians, prepays, invoices and film breakdowns. An attorney may be demanding immediate availability of records; meanwhile, a paralegal is trying to juggle 10 or 20 locations that are still missing from the case file.

Attorneys need to have their legal assistants and paralegals at their sides for a variety of reasons: to remind them of what took place in a deposition, or to tell them where to find something the plaintiff mentioned, or to help with myriad other things that make attorneys more effective. But all too often, the litigation support unit is busy chasing custodians, paying fees and receiving and responding to hundreds of e-mails each day.

Members of the litigation support unit were neither hired nor *trained* to do those things. As a result, they cannot be expected to have the time or the motivation to do them well. So, they do their ordering and tracking in bursts. To prevent congestion, however, ordering and tracking should be part of a smooth, continuous, daily process. The lack of this daily process – and the technology that enables it – is the main cause of congestion.

The other common point of congestion is at the back end, when members of the litigation support unit have done everything they need to do, have paid for the records and have set a schedule to copy the records – and then find that they don't have the complete file.

If the litigation support unit is stuck trying to find a missing record, an attorney may go less than fully prepared to a deposition, mediation, pre-trial hearing or trial. The attorney may ask for something to be admitted into evidence that should have been discussed during discovery. And, as you know, judges tend to remember these discrepancies and which firms commit them.

So, it's important to be able to expedite case files so attorneys can have the information they need. Legal administrators must have systems in place that give attorneys quick access to information. That information should be digitized and immediately downloadable – *not* in the form of paper records sitting in file cabinets or storage areas.

## TECHNOLOGY, METHODS AND SKILLS

Fortunately, law firms and legal departments no longer have to suffer congestion and wait months to complete their case files. They can now substantially shorten records retrieval time by outsourcing to specialists: digital document retrieval companies. These companies have three capabilities that are difficult to replicate within a law firm or legal department:

- **Technology.** Specialists employ scaled-up systems – not only massive data centers and backup systems, but also high-capacity networks, scanners and copiers. They use custom retrieval and tracking software and are constantly expanding and adapting the software to meet clients' changing requirements and expectations. And, of course, they can supply any record in digital or hard-copy form – whatever the client prefers.
- **Methods.** Staff members are tracking all day, every day, and they know every status change within seconds. For example, they begin tracking each subpoena immediately when it's created. They know when it's been sent to the client for signature, when the signed copy has been received and when it has been sent to opposing counsel for notice of discovery. When records arrive, staff members scan them, process them for quality assurance, upload them and notify the client and opposing counsel. The methodology provides total accountability.
- **Skills.** The staff members are hired and trained to specialize in records retrieval and tracking. Some staffers do nothing but track records; they know, from start to finish, every aspect of a record and the case file it goes in. They know where a record is at any moment. To the litigation support unit at a law firm, tracking is a distraction; to an employee at a specialist business partner, tracking is a step in a career.

With these capabilities, specialists can retrieve your records faster: typically within 30 to 45 days, often less than 30 days and even within a few hours on a rush order. (Other work does *not* come to a halt while the rush order is being filled.)



_____ **Noel Mijares**, _President and Chief Executive Officer,_ UNISOURCE DISCOVERY

Legal administrators **must have systems in place** that give attorneys **quick access** to information. That information should be **digitized** and immediately **downloadable** – not in the form of paper records sitting in file cabinets or storage areas.

### THE IMPORTANCE OF CONSOLIDATION

The most important thing an experienced business partner does to relieve congestion is to _consolidate_. What the law firm or legal department did in 18 to 20 steps, the company does in three. Consider the differences in process.

For a _traditional_ retrieval, performed inside a law firm or legal department:

1. An attorney issues subpoenas.
2. Legal assistants and paralegals prepare subpoenas for signatures.
3. Subpoenas get dropped into a bin for pickup.
4. A process server picks up a subpoena.
5. The process server serves the subpoena.
6. A legal assistant or paralegal receives an affidavit and usually must follow up on its status.
7. The litigation support unit chases the custodian: _Are records ready?_
8. The custodian finally declares: _Records are ready._
9. The litigation support unit requests a check from accounting.
10. Accounting cuts a check
11. A legal assistant or paralegal mails the check.
12. A legal assistant or paralegal receives records via mail.
13. A legal assistant or paralegal opens records.
14. A legal assistant or paralegal puts records in an inbox.
15. A legal assistant or paralegal hole-punches records.
16. A legal assistant or paralegal Bates-stamps and paginates the records.
17. Legal assistant or paralegal files records in the case folder
18. An attorney or paralegal reviews the records.
19. An attorney or paralegal OKs the records or, worse, discovers gaps in the records.
20. The litigation support unit starts over at Step 7.

A _consolidated_ retrieval process, performed by a specialist partner, has three steps:

1. Prepare the documents.
2. Serve the documents.
3. Obtain the records

Inside law firms or legal departments, legal administrators and litigation support units can alleviate several burdens. They no longer need to worry about getting subpoenas served or potential overcharges or delays. They don't have to worry about making custodial calls looking for records they haven't received because the business partner has a call center to handle that. They don't have to worry about requesting checks from the accounting department for witness fees or custodial fees because the business partner cuts those checks. They don't have to worry about getting the records organized, Bates-stamped, paginated and digitized. They never have to sit in front of a copier all day – or all week.

Their attorneys also don't have to drag boxes with them when they travel. They simply log on to a website. Everything is at their fingertips in seconds. They have the information they need, and they can arrive at "case closed" a lot sooner.

Ultimately, the business partner consolidates all process servers and all other vendors. To the law firm or legal department, the partnership delivers one point of reference – and a wealth of resources and service. ✳

_about the author_
**Noel Mijares** is President and Chief Executive Officer of Unisource Discovery, a digital document retrieval and e-discovery company. Contact him at _advantage@unisourcediscovery.com_ or 866.580.0002.







5/21/2021

Mail - Noel Mijares - Outlook









Case 1:20-cv-23276-DPG   Document 159-7   Entered on FLSD Docket 08/23/2021   Page 17 of 21

5/21/2021

Noel Mijares - Outlook

https://outlook.office.com/mail/inbox/id/AAQkAGNmNjQ4MzAyLWZmZWItNGU1OC1iNGQ0LTA2NTBmZDZmMmQ1YQAQAG6yickLhwIBgFuHtTNqIY... 1/1



**ALA** ®
**Association of Legal Administrators**

"*I was pleased to feature an article by Unisource Discovery President and CEO Noel Mijares, "Automated Document Retrieval," in a recent issue of Legal Management, the flagship educational magazine of the Association of Legal Administrators (ALA). As Editor-in-Chief, I am always looking for thought leadership from experts who can effectively communicate important and complex issues to our readers. On the topic of document retrieval technology, I found that Noel Mijares took a potentially complicated subject for the ALA audience and made it quite easy to understand, all while emphasizing how firm administrators can play key leadership roles in this critical area.*"

*John Delavan*
*Editor-in-Chief, Legal Management*
*Association of Legal Administrators*



**ASSOCIATION OF**

**ALA**

**LEGAL ADMINISTRATORS**

SOUTH FLORIDA CHAPTER

*A Chapter of the Association of Legal Administrators*

**In appreciation of your outstanding commitment & dedication to our Chapter's 2010 community efforts & the**

**Susan G. Komen For The Cure**

**Unisource Discovery Star Island Sponsor**





AWARD RECIPIENT
**DR. MARK HYMAN**
*Four times NY Times bestselling author*
VOLUNTEER DOCTOR
PARTNERS IN HEALTH

KEYNOTE SPEAKER
**JANE TUTOKI**
*Chief Claims Officer*
ZURICH NORTH
AMERICA COMMERCIAL

# SPONSORS


STOCKWELL
HARRIS
WOOLVERTON
MUEHL















































Mail - Noel Mijares - Outlook
5/21/2021

August 12, 2011

Ms. Jill Nolden
Director of Corporate Communications
Unisource Discovery
5570 NE 4th Avenue
Miami, FL 33137

Dear Ms. Nolden,

When Jane and her family first came to Women In Distress, she was fearful and could not make eye contact with her counselor due to the long term abuse that had been inflicted on her. Her children cried of fear and anxiety when left in our respite center during counseling sessions.

Because of your support, Women In Distress is able to provide vital services to thousands of people like Jane each year. Jane has been able to rebuild her self-esteem and has the tools she needs to build a new life. Today, Jane has a full-time job; she is able to support her family and no longer lives in fear of her abuser.

Thank you, Unisource Discovery, for your generous donation of **15 Samsung cellular phones**, which you have valued at **$825.00**. Each gift makes a difference in the lives of families affected by domestic violence and helps put them on the road to a new life free of fear and violence.

As the only nationally accredited, state-certified, full service domestic violence center serving Broward County, Women In Distress is committed to keeping families safe. Domestic violence knows no boundaries, and in partnership with you, we could be helping a friend, neighbor or colleague close to your heart.

WID has opened its new Jim and Jan Moran Family Center campus in Deerfield Beach to better meet the needs of our community. With this expansion, the amount of space to help families will double.

If you would like to learn more about the "Project SAFE Place" capital campaign and tour our new facility, please contact me at 954-760-9800 ext. 1235 or by email at dpelaez@womenindistress.org

Your gift changes lives and creates a positive impact in our community. Thank you for your commitment to our organization and the families that we serve.

With gratitude,

DaNay Pelaez
Development Director

WOMEN IN DISTRESS™
OF BROWARD COUNTY, INC.
Establishing "SAFE"
Stop Abuse For Everyone™

BOARD OF DIRECTORS

AUDREY RING
AUTO-NATION
RAYMOND DE LA FEUILLIEZ
JAMES A. CUMMINGS, INC.
CARLA ALBANO
ALTERNATIVE HOME HEALTH CARE
ARLENE PECORA
SIGNATURE GRAND
STUART ROSENFELDT
ROSENFELDT & BIRKEN, P.A.
JOSETTE VAN PUTTEN
NORTHERN TRUST BANK
MARY RIEDEL
WOMEN IN DISTRESS
ASHLEA AYER
SUNTRUST BANKS, INC.
CINDY BASHAM
HOLLAND & KNIGHT, LLP
MARCIA BARRY-SMITH
BANKATLANTIC
ANJALI BESLEY
BANK OF AMERICA
SANDY BENZ
MEMORIAL HEALTHCARE SYSTEM
JANET A. BOYLE
COMMUNITY VOLUNTEER
KIM FEELEY
WIDA
HOWARD M. GITTEN
EDWARDS ANGELL PALMER & DODGE LLP
DAVID GUZMAN
WACHOVIA,
A WELLS FARGO COMPANY
TOM HARRINGTON
FORT LAUDERDALE POLICE DEPT.
HAL JERMAN
WORTH INTERNATIONAL MEDIA GRP
KIM MILLER
POLLO TROPICAL
FATIMA PEREZ
AKERMAN SENTERFITT
DR. IRVING ROSENBAUM
NOVA SOUTHEASTERN
JUDY THIEL
COMMUNITY VOLUNTEER
PHYLLIS THOMAS
COMMUNITY VOLUNTEER

COA

Florida Department of CHILDREN & FAMILIES


United Way

In conformity with IRS regulations, please be advised that, unless otherwise stated, we have not provided you with any goods or services in consideration of this contribution.
Please save this gift acknowledgement for your tax return.

POST OFFICE BOX 676, FORT LAUDERDALE, FLORIDA 33302
CRISIS HOT LINE: 954-761-1133 ▪ OFFICE: 954-760-9800 ▪ FAX: 954-832-9487 ▪ WEBSITE: www.womenindistress.org
Broward County's Only State Certified Comprehensive Domestic Violence Center

5/21/2021

Noel Mijares - Outlook

https://outlook.office.com/mail/inbox/id/AAQkAGNmNjQ4MzAyLWZmZWItNGU1OC1iNGQ0LTA2NTBmZDZmMmQ1YQAQAG6yickKLhwlBgFuHtTNqlY ...  1/1



**Susan G. Komen FOR THE CURE**

Miami/Ft. Lauderdale Affiliate
12350 SW 132nd Court • Suite 104
Miami, Florida 33186
T 305-383-7116
F 305-971-6493
www.komenmiaftl.org

December 29, 2010

**Andrea Orane, MPH**
President

**Elaine Greksa**
Vice-President

**Leslie Monreal-Feil**
Secretary

**Gisselle Lopez-Velasco**
Treasurer

**Bobbi Meyers**
Executive Director

**Board Members**
Monica Cepero
Sue Cleveland
Kim Heard-Hobbs
Jennifer Jarema
Grace Lopez
Amy Powers
Sharon Philip
Odalys Smith
Patricia Thomson
Judy Zucker

**Linda Burrowes**
"A Buddie For You"
Administrator

Unisource Discovery Inc.
5810 Biscayne Blvd.
Miami, FL 33137

To Whom It May Concern:

We would like to thank Unisource Discovery Inc. for the thoughtful and generous donation of $1,000.00 in support of Susan G. Komen for the Cure®.

Our goal is to save lives and end breast cancer forever by empowering people, ensuring quality care for all, and energizing science to find the cures. Since 1982, not a single advancement in breast cancer treatment and research has been done without Komen funding. Susan G. Komen for the Cure provides community grants for breast health education, screening and treatment.

Because 10 million women around the world could die from breast cancer in the next 25 years without the cure, Susan G. Komen for the Cure is fighting every minute of every day to save every life.

Again, thank you so much for your support of Susan G. Komen for the Cure, Miami/Ft. Lauderdale®. It is with help like yours that we have been able to achieve so much.

To comply with the IRS requirements regarding charitable donations, we affirm that no goods or services have been provided to you, in whole or in part, in consideration for your contribution. This letter will serve as confirmation of your donation for income tax purposes.

Sincerely,

Bobbi Meyers
Executive Director

**Our Vision:**
a world without breast cancer