**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DE 151]**

Plaintiff, Unisource Discovery, Inc. by and through its undersigned attorney, files its

Opposition to Defendants' Motion for Summary Judgment [DE 151] pursuant to *Fed. R. Civ. P.* 56,

and states the following:

**INTRODUCTION**

Plaintiff contends that because disputed facts exist regarding the alleged representations made

to the USPTO well over thirteen (13) years ago, summary judgment is inappropriate on Defendants'

Count I for Cancelation of Trademark. Count I alleges that Plaintiff made both affirmative false

statements and material omissions which fraudulently induced USPTO to permit registration of

Plaintiff's Trademark in year 2009.

Specifically, the Defendants allege that, "**The Lie:** Despite this knowledge, Plaintiff lied to the

USPTO in its Trademark Registration Application by knowingly misrepresenting that "no other

person, firm, corporation, or association has the right to use the [M]ark in commerce." *See* Trademark

Registration Application (DCED 150-4) at p. 4. As Plaintiff admitted at its deposition, when Plaintiff

1

filed its Trademark Registration Application, "Plaintiff knew full well that Unisource Discovery, LLC had been using the Mark since 2001 and had every right to continue to use the Mark" and "This material misrepresentation alone warrants cancellation of Plaintiff's trademark. But the lies do not end there."

However, as discussed below the Defendants do not tell this Court that the oath does not require an applicant to disclose all other persons who may be ***using the mark***. It only requires an applicant to disclose those persons who the applicant believes possesses the legal right to use the mark. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 671 (7th Cir. 1982).

The Defendants also do not tell this Court that Defendant Steven Cerasale, at all relevant times, was a very active board member and remains a current shareholder of Plaintiff Unisource. When Plaintiff was registering the Unisource logo to be trademarked with the USPTO, the Defendant Steven Cerasale had actual knowledge of every-step of the registration process. As board member and shareholder that transferred the logo to Plaintiff – as discussed below – Defendant Steven Cerasale had actual knowledge of Plaintiff's registration at all relevant times. However, at no time did Defendant Steven Cerasale file an Opposition with the USPTO to Plaintiff's application, nor did Defendant's dispute ownership of the Trademark for approximately 13-years after registration and Plaintiff's continuous use.

For this reason and more, Defendants are advancing a very congested summary judgment motion [DE 151] that attempts to make arguments as to which agreement controls – the year 2006 Shareholder Operating Agreement or the year 2010 Close Corporation Shareholder Agreement. Defendants have asserted that a 2006 Shareholder Operating Agreement controlled at the time Plaintiff registered the Mark and therefore the operative agreement. The Defendants do not factually dispute that during and after Plaintiff's registration of the Trademark the Defendants did not dispute and/or file an opposition to the registration of the Trademark. And in complete conflict with Defendants' own

position that the 2006 Shareholder Operating Agreement somehow controls, when the Defendants entered into a year 2010 Close Corporation Shareholder Agreement, the parties mutually negotiated a very detailed integration/merger clause that squarely addresses all prior agreements – as addressed fully below, which also included the ownership of Trademark by Plaintiff.

The Defendants have not met their burden of showing the existence of a disputed material fact, or that they are otherwise entitled to judgment as a matter of law, on the theory of alleged affirmative misrepresentations. Defendants have not offered any *undisputed facts* that Plaintiff made affirmative misrepresentations to the USPTO.

Likewise, in Plaintiff's Answer [DE 86] the Plaintiff denies all of Defendants allegations of fraud and raised applicable affirmative defenses, as discussed below. The Defendants did not offer any facts by affidavit, or cite to any portions of the record, that support the assertion that affirmative false representations were made--other than the sole deposition testimony that was certainly "spun".

Defendants have not produced evidence in support of the required element of fraudulent intent. Again, the Defendants completely relies upon the testimony of Plaintiff Unisource CEO, Noel Mijares, who testified, in general, about the year 2006 Shareholder Operating Agreement, its existence until the parties entered into the year 2010 Close Corporation Shareholder Agreement, and nothing more related to Plaintiff's actual "intent" et al.

At summary judgment, however, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in Plaintiff's favor. Plaintiff has provided a declaration of Noel Mijares, CEO of Plaintiff Unisource, who stated simply that Plaintiff could not knowingly make false, material representations of facts on its trademark application. *See* Exhibit "A" (Declaration of Noel Mijares).

Because there is no evidence of an affirmative misrepresentation, Defendants are not entitled to judgment on this theory of fraud. Defendants' theory of fraud based on alleged material omissions

also lacks sufficient evidentiary support. Similarly, the Defendants have genuinely failed to satisfy the applicable three (3) legal burdens to warrant summary judgement for Count I [cancelation of trademark] alleging fraud on the PT), *to wit:*

(1)     the summary judgement standard of no factual dispute in the light move favor to the non-moving party;

(2)     the Rule 9 burden of pleading with particularity when alleging fraud; and

(3)     for trademark cancellation the burden of proof is "clear and convincing" evidence.

Simply put, and as shown below, the Defendants made a tremendous effort to amplify and "spin" the deposition testimony of Unisource CEO, Noel Mijares, in their attempt to provide evidentiary support for their fraud claim; but, the Defendants did not offer any supportive evidence and now forces this Court and the reader to "infer", without particularity or anything remotely close to "clear and convincing", that Mr. Mijares deposition testimony, alone, creates enough evidentiary *inferences* to satisfy the fraud and clear/convincing burdens.

<u>**LEGAL STANDARD AND EVIDENTIARY BURDENS**</u>

The Defendants have one legal standard and two legal burdens to satisfy when using fraud to advance their cancelation of trademark claim under Count I. These are Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 9, and cancelation of trademark has its own separate burden of proof, *to wit:*

A.     <u>**Summary Judgment Standard**</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to

demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (internal quotation marks omitted); see *also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir. 2007)

B.    **Cancellation Of Trademark Standard**

A party that seeks cancellation of a trademark registration for fraudulent procurement "bears a heavy burden of proof." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

"[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with ***clear and convincing evidence***. There is no room for speculation, inference or surmise and, obviously, any doubt

must be resolved against the charging party." *Id.* (emphasis added) (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B.1981).[1]

To establish a *prima facie* case of fraud in procuring a trademark registration, a party must show, *by clear and convincing evidence*, that:

(1) the challenged statement was a false representation regarding a material fact;

(2) the registrant knew the representation was false (scienter);

(3) the registrant intended to deceive the USPTO;

(4) the USPTO reasonably relied on the misrepresentation; and

(5) the party suffered damages proximately resulting from such reliance

*San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.,* 849 F.2d 468, 473 (10th Cir. 1988)

"[A]bsent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Id.*

To succeed on a petition for cancellation, a plaintiff must prove: (1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991).

Under 15 U.S.C. § 1120, any person who procures a registration "by a false statement or fraudulent declaration or representation" may be liable in a civil action. Under 15 U.S.C. § 1064(3), a party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently."

---

[1] Similar law is applied in other jurisdictions. *Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.,* 842 F.2d 650, 653 (2d Cir. 1988) ("A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by 'clear and convincing evidence."); *L.D. Kichler Co. v. Davoil, Inc*., 192 F.3d 1349, 1351 (Fed. Cir. 1999)  (citation omitted) (Fraud in procuring a . . . mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application.")

If "the mark at issue has been on the federal Principal Register in registrant's name for *less than five years*, the mark may be cancelled if petitioner can prove that the registration should have been barred in the first instance under Lanham Act § 2." *Id.* (emphasis added)

C. **Fed. R. Civ. P. 9 Standard**

The Eleventh Circuit stated "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001) U. *S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002). Allegations of date, time, or place satisfy the requirement of Rule 9(b) that the circumstances of the fraud be alleged with particularity, but alternative means are also available to satisfy the rule. *Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988).

**DISCUSSION**

As an initial matter, the Plaintiff's Unisource Trademark has been on the federal Principal Register more than five years (13-years) – since year 2008.

Second, the Defendants primarily makes three (3) factual allegations to support Count I of its Complaint for cancelation of Plaintiff's Trademark. In particular, Defendants allege that Plaintiff Unisource fraudulently procured its federal trademark registration and application because it made false statements to the USPTO, and Plaintiff Unisource committed and continues to commit such fraud (based solely on deposition testimony from CEO of Plaintiff Unisource and no other evidence) for over a decade while Defendant Steven Cerasale held a board position and is the largest single

shareholder with ownership interest in Plaintiff Unisource at all relevant time periods. *See* Exhibit "B" [Deposition of Noel Mijares]

    A. **Invalidity based on False Oaths and Unisource Logo verses Unisource Trademark**

    As discussed above, the Defendants force the reader to engage in a continuous exercise of "interferences" when citing and spinning Noel Mijares deposition testimony with no other evidentiary support. Also, the Defendants do not address Plaintiff's "intent" (both subjective and objective) to commit fraud upon the USPTO. Simply put, the complete catalog of evidence the Defendants bring-to-the-table for their summary judgement is the deposition testimony of Mr. Noel Mijares.

    As referenced above in *Money Store*, the Defendants fail to inform the reader that the oath does not require an applicant to disclose all other persons who may be using the mark; it only requires an applicant to disclose those persons who the applicant believes possesses the legal right to use the mark. *Id*. This omission and distinction also illustrates Defendant's lack of "particularity" under Rule 9.

    i.    **Unisource Logo**

    The parties do not dispute that prior to Plaintiff's creation, through USPTO registration, of the Trademark all that existed was a Unisource Discovery "logo"[2] that Defendants had contractually transferred ownership to Plaintiff -- as memorialized in the year 2010 Close Corporation Shareholder Agreement;

    Pursuant to ¶ 1.3 of the year 2010 Close Corporation Agreement [DE 1],

> "Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery",

---

[2] In Defendants Answered Answer, Affirmative Defenses and Counterclaim [DE 166] ("Defendants' Amended Answer") the Defendants did not clarify they never registered the Unisource Discovery "logo" with USPTO as a trademark. Instead, Defendants improperly misrepresent this distinction. The following ¶ 26 of Defendants' Amended Answer is an example:

> "25. Mr. Cerasale did not sell any of his rights to the name "Unisource Discovery Digital Document Retrieval" or to the Mark in exchange for his 50% ownership interest in Unisource Florida.

as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise."[3]

The Defendants never owned or created a Unisource registered "trademark", and therefore, Plaintiff (subjectively and/or objectively) cannot fraudulently take something that simply did not exist at that time, *i.e.*, the actual Trademark.  Additionally, the above cited ¶ 1.3 of the year 2010 Close Corporation Shareholder Agreement both subjectively and objectively shows the contractually memorialized intent of the parties as it relates to Plaintiff's ownership and use of the Trademark and logo.

Nonetheless, the Defendants primarily references a year 2006 Shareholder Operating Agreement as the operative agreement. Not so. Pursuant to the negotiated integration/merger clause in ¶ 8 of the year 2010 Close Corporation Shareholder Agreement,

> "Entire Agreement. This Agreement together with the exhibits hereto and the Stock Purchase and License Agreement effective concurrently herewith constitute the entirety of the agreements between the parties hereto concerning the subject matter hereof and *supersede all prior and contemporaneous agreements, understandings, negotiations*, *and discussions, whether oral or written, of the parties*, and there are no warranties, representations or agreements, express or implied, among the parties except as set forth herein. No amendment, supplement, modification, waiver, or termination of this Agreement, or any provision hereof, shall be binding unless executed in writing by the party against whom any of the foregoing is sought to be enforced. No waiver of any provision of this Agreement shall constitute a waiver of any other provision (whether similar or not), nor shall any waiver constitute a continuing waiver unless otherwise expressly provided hereunder or in writing signed by the party against whom any such waiver is sought to be enforced.

> (Emphasis added)

According to ¶ 9 of the year 2010 Close Corporation Shareholder Agreement, the actual "intent" of the parties as it relates to prior agreements is also memorialized in the year 2010 Close Corporation Shareholder Agreement, *to wit,*

> Construction. *The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this*

---

[3] As referenced in the Close Corporation Shareholder Agreement [DE 1] "Company" is defined as Plaintiff "… Unisource Discovery, Inc., a Florida corporation …".

> *Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.* The word "including" shall mean including without limitation and is used in an illustrative sense rather than a limiting sense. Terms used with initial capital letters will have the meanings specified, applicable to singular and plural forms, for all purposes of this Agreement. Reference to any gender will be deemed to include all genders and the neutral four.

(Emphasis added)

Sensibly, if it was the parties "intent" for some or all the terms of the 2006 Shareholder Operative Agreement to survive the execution of the 2010 Close Corporation Shareholder Agreement there would be provision(s) that would address survival because the Defendants "… *participated jointly in the negotiation and drafting of this 2010 Close Corporation Shareholder Agreement …*" and the enforceability of the 2010 Close Corporation Shareholder Agreement has never been disputed to date.

Under 15 U.S.C. § 1051(a), the application for use of a trademark must contain a verified statement regarding the applicant's knowledge or belief regarding the accuracy of the application and the existence of any other user's right to the same or a similar mark. It is established that "the oath in an application for registration must be truthful." *Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983). The Federal Circuit has stated:

> "[I]n some instances a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration. However, the rights of a junior user *must be clearly established* and must be in an identical mark or one so similar as to be clearly likely to cause confusion." Id. (emphasis added)

In *Rosso* and *Mastracco, Inc.* the court concluded, "[s]ince the issue of likelihood of confusion was not a clear and simple one, and was not resolved until this decision, we cannot on this record say that the oath was knowingly false." *Id.* McCarthy on Trademarks reflects a similar view: "***The signer of an application oath should not be put in the position of a fortune teller*** as to what the courts will

hold in the future as to the trademark rights of others." 2 McCarthy on Trademarks §31:76. (emphasis added).

The year 2010 Close Corporation Shareholder Agreement, itself, clearly shows in the light most favorable to Plaintiff that Defendants failed to provide sufficient facts to show – by clear and convincing evidence and particularity under Rule 9 -- Plaintiff made a false oath to the USPTO and subjectively intended to do so. Indeed, pursuant to ¶ 1.3 of the Close Corporation Shareholder Agreement [DE 1] *inter alia*, " … **UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company …".**

It is factually undisputed that ¶ 1.3 of the year 2010 Close Corporation Shareholder Agreement forecloses any inference(s) related to the subjective and/or objective intent of Plaintiff to commit fraud on the USPTO as well as the intent of the parties (Defendants and Plaintiff). According to the year 2010 Close Corporation Shareholder Agreement the parties were 100% aware of the trademark registration, were 100% aware of Plaintiff's use of the name and logo as a registered trademark since 2009 and were 100% contractually agreed under the specific 2010 Close Corporation Shareholder Agreement that the Trademark is -- owned -- and used by Plaintiff.

And lastly and *in arguendo*, contrary to the Defendants arguments that the year 2006 Operating Shareholder Agreement does provide support to Plaintiff's position.  In ¶4.10 of the year 2006 Operating Shareholder Agreement the parties contractually agreed to permit Plaintiff to use the logo.  Plaintiff did so. Then, in the year 2010 Close Corporation Shareholder Agreement the parties clearly agreed, in writing, to transfer ownership of the logo that was now a registered Trademark.  And finally, approximately 13-years after registering the Trademark and 11-years after the execution of the year 2010 Close Corporation Shareholder Agreement, the Defendants dispute Plaintiff's ownership interest in their counterclaim.  Paragraph 4.10 of the year 2006 Operating Shareholder Agreement, states:

11

"LICENSE AND NAME USE: It is understood by the Board of Directors that the name UNISOURCE DISCOVERY, INC. is a Florida Registered Corporation, clear and clean of any titles, and it's not subject to nor under any form Agreement to transact in business. It is understood by the Board of Directors that the use of Name was chosen as a means to move forward, but in no way a constitution to that particular Use of Name, since the Board of Directors agree that certain other entities that utilize similar names deriving from the words such as "Discovery" and this Agreement shall govern and restrict any unlawful part of the Company name. The Board of Directors further agrees that Steven Cerasale is no longer a Director, Officer or Agent of the Corporation Board of Directors shall modify the current name of the Company "UNISOURCE DISCOVERY" to be different in name only."

Given the foregoing, the Defendants have entirely failed to submit sufficient evidence to meet their burden of clear and convincing evidence, failed to allege these facts with particularity, and failed to show that there are no issues of material fact as to this claim.

B .   **Invalidity based on Fraudulent Statements**

Where a party challenges a trademark registration, "the applicant's subjective belief" is at issue. *Stanfield v. Osborne Indus.*, 52 F.3d 867, 874 (10th Cir. 1995); *Bose*, 580 F.3d at 1244 ("[A] trademark is fraudulently obtained under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the USPTO. Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis.").   The "Plaintiff's inability to prove the second element is dispositive of the claim." *Id*.

As to the second element of fraudulent procurement, Defendant only provides evidence that Plaintiff had knowledge of Defendants' prior "use" of a "logo" and not a trademark.   To date, all discovery has been taken and Defendants can provide *no evidence* that raises a genuine issue of material fact that Plaintiff had a subjective intent to deceive the USPTO.

Rather, Defendants unclearly argues that *after* twelve (12) years that Plaintiff registered the Trademark with the USPTO and Plaintiff's open and continuous use in commerce – with *all* Defendants full and actual knowledge (as Defendant Steven Cerasale is an *active shareholder* of Plaintiff since 2006, and was a board member (2006-2018) and has an *active ownership* interest in

12

Plaintiff Unisource) and pursuant to the year 2010 Close Corporation Shareholder Agreement – somehow Defendants claim that Plaintiff not only committed an alleged fraud on the USPTO but subjectively intended to do so. *Stanfield v. Osborne Indus.*, 52 F.3d 867, 874 (10th Cir. 1995) (Where a party challenges a trademark registration, "the applicant's subjective belief" is at issue).  A rather lofty interference Defendants is advancing.

Here, and as stated above, the Defendants are "oceans apart" from offering sufficient evidence to meet their burden to show that there are no issues of material fact as to this claim. In fact, the Defendants argument was in conflict with the terms of the active and enforceable year 2010 Close Corporation Shareholder Agreement and certainly did not satisfy the Rule 9 burden nor clear and convincing burden.

### C.      **Deposition of Noel Mijares**

The Defendants use, and have "spun", the deposition testimony of CEO, Noel Mijares, as their primary supportive evidence offered to prove their fraud claim with particularity, with clear and convincing evidence, and the light move favorable to Plaintiff.[4]

However, the Plaintiff will forgo addressing just how the Defendants literally distorted Mr. Mijares deposition testimony and will solely address the "common argument" that is threaded throughout this portion of Defendants' Motion for Summary Judgment [DE 151].

It is strikingly clear that the testimony quoted by Defendants from Mr. Mijares deposition is used to badly emphasize that the year 2006 Shareholder Operating Agreement should control over the year 2010 Close Corporation Shareholder Agreement.  However, the Defendants fail to notify the Court that prevailing law only requires an applicant to disclose those persons who the applicant

---

[4] When the Defendants reference selected portions of Mr. Mijares testimony they continuously begin with stating "*In order words …*". Then, the Defendants pen a rather lengthy dialogue that attempts to unravel and explain just what Mr. Mijares really meant in the cited testimony.  However, Plaintiff argues that if Mr. Mijares testimony was "clear" and "convincing" than Defendants would not need to explain and interpret his testimony to such a considerable extent – Mr. Mijares testimony would speak for itself because its "clear" when read without Defendants interpretation and inferences.

believes possesses the legal right to use the mark. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 671 (7th Cir. 1982).

First, Plaintiff did not investigate if the "logo" was used by Defendants since year 2001 because Plaintiff is not obligated to do so.  Plaintiff had no reason to investigate if Defendants was using the logo as a trademark because factually the logo was not a registered trademark at that time. A logical conclusion.  And lastly, the Plaintiff did not investigate how the Defendants were using the logo, and likewise Plaintiff was not legally obligated to investigate.

In fact, at all times the Defendants had actual knowledge that Plaintiff filed their application to register the name and logo with the USPTO in year 2008 and Defendants knew when Plaintiff received their Registered Trademark certificate in 2009, and did nothing for approximately 13-years. Then, in year 2010 the parties memorialized Plaintiff's ownership interest and use of the Trademark in the year 2010 Close Corporation Shareholder Agreement – only one-year (1) after Plaintiff registered the name and logo as a Trademark with the USPTO.

Here, the Defendants are asking the Court to make a rather sizable "interference" that because Plaintiff registered the logo as a Trademark and used the Trademark before the execution of the year 2010 Close Corporation Shareholder Agreement that Plaintiff somehow – applying clear and convincing evidence -- had objective and subjective intent to commit fraud upon the USPTO.

Likewise, Plaintiff argues its very strong, valid and logical non-inference that is a fact – that is, because Defendants had undisputed actual knowledge before, during, and after registration of the logo as a Trademark with the USPTO in year 2008 [by the Plaintiff] and did nothing for well-over twelve (12) years -- coupled with entering in the year 2010 Close Corporation Shareholder Agreement -- the Defendants either waived all claims if any, or agreed/acquiesced verbally or through Defendants conduct that Plaintiff owned the Trademark until its use/ownership was contractually memorized in the year 2010 Close Corporation Shareholder Agreement.

And another non-inference that is a fact, Plaintiff argues that because Plaintiff's ownership interest and uninterrupted use for over twelve (12) years was contractually memorialized in the year 2010 Close Corporation Shareholder Agreement *it was always the parties' "intent"* for Plaintiff Unisource to own and use the name and logo as a registered trademark. Indeed, it would certainly make no sense to agree to ¶ 1.3 of the year 2010 Close Corporation Shareholder Agreement[5] [DE 1] unless that "interference" was true.

Plaintiff offers substantial support to its above two non-inferences when making the following deposition testimony,

> A:    So you have -- I think -- so we don't mince words, that -- the name and the logo were part of his contribution when he took 50 percent of Unisource Discovery, Inc.   That's what he brought to the company; and more importantly, the software, because without the software we could not operate, to the degree of the services we wanted to offer.   So those are the things he brought to the table, Steven Cerasale, so just to be clear on the record." [DE 148-12 TR: 24: 17-25

Unlike the deposition excerpts Defendants elected to cite and argue with much needed inferences, interpretation, and explanations, here Mr. Mijares did not "… mince words …" and wanted to be "… clear on the record." Mr. Mijares' testimony is clearly true because before, during, and after the Defendants knew the name and logo was registered as a trademark, they did nothing to oppose/dispute Plaintiff's use and/or ownership for approximately 13-years.

As a matter of law and applying the Rule 9 burden coupled with the clear and convincing burden, the Defendants effort to use Noel Mijares deposition testimony as their primary supportive evidence entirely fails in the light most favorable to Plaintiff.

D.     **Plaintiff's Affirmative Defenses**

---

[5] As mentioned above, ¶ 1.3 of the year 2010 Close Corporation Shareholder Agreement states, "***Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company***. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise." (emphasis added)

15

In Plaintiff's Answer [DE 86], it provided applicable affirmative defenses with sufficient evidence to create a material issue of fact for trial. *See Harvey v. Lake Buena Vista*, 568 F. Supp. 2d 1354, 1361-62 (M.D. Fla. 2008) (citing *Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir. 1987)) ("The mere assertion of an affirmative defense on which [Plaintiff] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment.").

These are as follows:

I. <u>Defendants Never Disputed Plaintiff's Ownership of the Mark – Twelve (12) Years</u>: At no time prior to Plaintiff advancing its instant Complaint [DE 1] did Defendant's dispute – formally or informally -- Plaintiff's trademark registration issued by the USPTO. After Plaintiff openly registered the trademark in year 2009, the Defendant never pursued a cancellation of registration with the Trademark Trial & Appeal Board (TTAB) by filing an opposition or similar. It is only after 12-years of Plaintiff's open, notorious, and continuous use of the Mark are Defendants now attempting to cancel that registration as a counterclaim that is nothing more than a clear litigation tactic.  The Defendants never registered the Mark.

II. <u>Plaintiff Contractually Owns the Trademark</u>: The Trademark is contractually owned by Plaintiff.  Pursuant to Section 1.3 of the executed Close Corporation Shareholder Agreement entered into as of June 28, 2010.

III. <u>Plaintiff's Evidence of Ownership</u>: "A certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark." *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) (citing 15 U.S.C. §§ 1057, 1115(a))

IV. <u>Laches – Statute of Limitations</u>: Defendants' claim is barred by laches, in that Defendants have unreasonably delayed efforts to enforce their rights, if any, despite its

16

full awareness of Plaintiff's actions. Plaintiff will be unduly prejudiced by Defendants'12-year delay in asserting their claim; and Defendants have not offered, alleged and/or pled any single reason the delay was excusable.

V.       <u>Defendants failed to Allege Fraud With Particularity Under Rule 9 – Fraud & Statute of Limitations</u>: Amongst other pleading deficiencies, the Defendants failed to plead "when" and "where" and "who" discovered that Plaintiff was [allegedly] wrongfully using the trademark.

VI.      <u>Defendants' Failed to Plead "Prior Use" And Its Elements</u>: Defendants' allegations do not allege Defendants continuously used the misappropriated products, prior to Plaintiff, in a way sufficiently public to identify . . . the marked goods as belonging to Defendants

VII.     <u>Elements of Trademark Cancellation</u>: The Defendants failed to plead the elements for cancellation of registration under 15 U.S.C. section 1064.

VIII.    <u>Waiver, Acquiescence, and Estoppel</u>: Each of the purported claims set forth in this Complaint is barred by the doctrines of waiver, acquiescence, and estoppel.

IX.      <u>Unclean Hands</u>: Defendants' claims are barred by the doctrine of unclean hands.

X.       <u>Abandonment</u>: The claim made in the Counterclaim is barred, in whole or in part, by abandonment of any marks at issue.

XI.      <u>Contractual & Promissory Estoppel</u>:   The Defendants contractually promised the Plaintiff that it owned the name and logo of Unisource Discovery and should have expected the Plaintiff to act or not act based on that contractual promise.

The forgoing affirmative defenses directly address Defendant's counterclaim and prevents the claims as a matter of law.

17

## CONCLUSION

Simply put, the reason(s) asserted or not asserted for Defendants 13-years delay of seeking to cancel Plaintiff's registered Trademark entirely lacks sufficient evidentiary support as a matter of law.

As raised herein-above, the Defendants simply did not satisfy the summary judgment standard and in the light more favorable to Plaintiff several factual disputes that still remain. The Defendants attempt to employ Noel Mijares' deposition testimony as their primary basis and evidentiary support for arguing the year 2006 Shareholder Operating Agreement controls over the year 2010 Close Corporation Shareholder Agreement -- despite having a comprehensive integration/merger provision that addresses same, and included Trademark ownership memorialized under Section 1.3.

And lastly, the Defendants have entirely failed to satisfy the heavy burden of clear and convincing evidence for cancellation of trademark. And certainly, Defendants' Amended Complaint does not contain the required particularity to satisfy the stringent burden under Rule 9.

For the forgoing reasons, this Honorable Court must find that as a matter of law Defendants Motion for Summary Judgment [DE 151] is denied forthwith and enter an Order accordingly.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter an Order denying Defendant's Motion for Summary Judgment on Count I for Cancellation of Trademark, award Plaintiff reasonable attorneys' fees and costs, and any other relief this Court find just and fair.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven A. Cerasale, on this 13th day of September, 2021.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By:*/s/Diego David Valdes*
Diego David Valdes, Esq.
Florida Bar No. 251010
Email: ddvlaw@gmail.com
        legal@ddvlawgroup.com
Counsel for Plaintiff: Unisource Discovery, Inc.