**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
     Plaintiff,
v.

UNISOURCE   DISCOVERY,   LLC,   and
STEVEN A. CERASALE, individually,
     Defendants.

---

### OPPOSITION TO RENEWED MOTION FOR LEAVE TO AMEND, AND IN THE ALTERNATIVE, RECONSIDERATION ON <u>ORDER DENYING LEAVE TO AMEND COMPLAINT</u>

Defendants hereby file their Opposition to Plaintiff's Renewed Motion for Leave to Amend, and in the Alternative, Reconsideration on Order Denying Leave to Amend Complaint (DE 171).

### I.   Plaintiff's contention that it acted "diligently" is demonstrably false.

Plaintiff's Renewed Motion (DE 171) is entirely based upon one falsehood: that Plaintiff "did not know and even with the utmost diligence – [ ] could not have learned -- of Equicopy [Inc.] as a threat and part of the scheme to poach clients … until the Defendants 'responded' to the discovery" after the January 15, 2021 deadline to amend the Complaint." *See* Aff. of Noel Mijares (DE 171-1) at ¶ 8; *see also* Renewed Motion (DE 171) at p. 8 ("[D]uring the course of discovery it was learned that Equicopy [Inc.] was being exploited to convert Plaintiff's clients.").

In other words, Plaintiff claims that it could not have sought leave to amend its Complaint before the January 15, 2021 deadline because Plaintiff ostensibly first learned that Equicopy, Inc. was "poaching clients" from Defendants' responses to Plaintiff's discovery requests.

For a variety of reasons, Plaintiff's contention is demonstrably false and perpetrates a fraud upon the Court.

**A.**     **None of Defendants' "discovery responses" mention "Equicopy" or reference any "clients"—let alone any "poaching" of clients.**

Plaintiff's Renewed Motion (DE 171) does not even attempt to identify a single "discovery response" that ostensibly caused Plaintiff to "learn[] of Equicopy [Inc.] as a threat and part of the scheme to poach clients."

The reason Plaintiff does not identify a single discovery response is because Plaintiff's contention that it "learned" of Equicopy, Inc. "poaching clients" from Defendants' discovery responses is plainly false.

None of Plaintiff's discovery requests mention (or relate to) Equicopy, Inc. And none of Defendants' discovery responses mention (or relate to) Equicopy, Inc.

Moreover, Plaintiff did not propound a single discovery request until ***March 25, 2021***— more than two months after the Court-ordered deadline to amend the Complaint. The fact that Plaintiff waited to propound discovery until two months after the deadline to amend the Complaint confirms Plaintiff's complete lack of diligence.

Even under Plaintiff's own theory (i.e., that Plaintiff needed discovery to "learn" about Equicopy, Inc.), Plaintiff has not been diligent. In fact, Plaintiff has already admitted that it simply ***chose*** to ignore the Court-imposed deadlines and ***chose*** not to engage in discovery in this case until March 25, 2021 because Plaintiff "did not wish to incur the significant costs and fees associated with discovery while the case was not even at issue and the Motions to Dismiss remained pending." Motion to Modify Case Management (DE 172) at p. 2. And as explained above, none of Plaintiff's March 25, 2021 discovery requests mention or relate to Equicopy, Inc.

**B.      Plaintiff has already testified that it supposedly "knew" as early as August 1, 2017 that Equicopy, Inc. was allegedly "poaching clients."**

On *August 1, 2017*, Plaintiff organized a company by the name of "Equicopy, LLC" in Florida. *See* Plaintiff Dep. (DE 150-10) at 159:8–17. According to Plaintiff, it organized Equicopy LLC on August 1, 2017 precisely because Equicopy, Inc. was "poaching" Plaintiff's clients.

Below are excerpts of Plaintiff's deposition testimony wherein Plaintiff testified under oath that it "knew" as early as August 1, 2017 that Equicopy, Inc. was ostensibly poaching clients:[1]

Q.      So if I understood your testimony, this [Plaintiff organizing Equicopy, LLC] was in response to Mr. Cerasale organizing Equicopy, Inc., in California, correct?

A.      That is correct. That is exactly correct.

Q.      So as of August 1st, 2017, you and Unisource Discovery, Inc. knew that Mr. Cerasale had organized Equicopy [Inc.] in California, correct?

A.      That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually. They haven't been changed -- … poaching clients from Unisource Discovery, Inc. …

Q.      So you organized Equicopy, LLC [on August 1, 2017] to prevent the poaching of clients?

A.      Yes, and we did that as a protective measure for our clients …

Q.      Well, when you mentioned that you organized Equicopy, LLC [on August 1, 2017] to protect Unisource Discovery, Inc. What sort of protection were you envisioning?

---

[1] To be clear, none of these allegations are true. Plaintiff's assertions of "poached clients" are a fabrication raised to waste fees and cause unnecessary litigation. But, the truth of these allegations is not relevant at this time. What is relevant is the fact that nothing stopped Plaintiff from seeking to amend its Complaint before the January 15, 2021 deadline. Plaintiff's failure to timely seek leave to amend was caused by nothing other than Plaintiff's own lack of diligence.

> A. What is currently happening to the company today, by the actions of Steven Cerasale, which is poaching of our clients.
>
> …
>
> Q. So that I understand, you organized Equicopy, LLC [on August 1, 2017] to prevent the poaching of clients by Equicopy, Inc. in California, right?
>
> A. I believe that was one of the purposes, yes.

Plaintiff Dep. (DE 150-10) at 159:11–160:4, 173:14–17, 171:17–172:13.

Despite this clear testimony, Plaintiff now attests—under oath—the exact opposite. Plaintiff now attests that it "did not know and even with the utmost diligence – [ ] could not have learned – of Equicopy [Inc.] as a threat and part of the scheme to poach clients … until the Defendants 'responded' to the discovery" after January 15, 2021. Aff. of Noel Mijares (DE 171-1) at ¶ 8. Plaintiff's sham affidavit cannot support its Renewed Motion.

## II. Plaintiff's Motion is frivolous (and should be denied) because none of the proposed claims against Equicopy, Inc. have anything to do with "poaching clients."

Even if Plaintiff learned that Equicopy, Inc. was supposedly "poaching clients" from Defendants' discovery responses (which is false), the Renewed Motion should still be denied.

It is undisputed that Plaintiff knew about Equicopy, Inc. as early as 2017. It is further undisputed that "the facts supporting the addition of Equicopy [Inc.] as a defendant in this action were known to Plaintiff nearly six months before the Court's January 15, 2021 deadline." Order (DE 161) at p. 4.

Plaintiff, however, now claims that even though it knew about Equicopy, Inc. since 2017, even though it already filed a claim in state court in July 2020 relating to Steven Cerasale's actions in connection with Equicopy, Inc., Plaintiff did not know that Equicopy, Inc. was "poaching clients" until after January 15, 2021. However, ***none of Plaintiff's proposed claims against Equicopy, Inc. relate to the "poaching of clients."***

Plaintiff's proposed Amended Complaint sought to introduce two types of claims: (1) claims against Steven Cerasale, individually, based upon state law for allegedly "poaching clients"; and (2) claims against Equicopy, Inc. based upon "trademark infringement."

As to the proposed claims against Steven Cerasale, "Plaintiff agreed to … exclude the three additional claims against [Steven] Cerasale." Order (DE 161) at p. 2. Those state-law claims against Steven Cerasale related to the "poaching of clients." *See* Proposed Amended Complaint (DE 114-1) at p. 21 ("Steven Cerasale, individually and as shareholder of Plaintiff Unisource, has been actively converting clients of plaintiff Unisource ….").

As to the proposed claims against Equicopy, Inc. (Counts IV, VIII, IX, and X), those claims are ***based solely upon allegations of trademark infringement***—not "poaching of clients."

Specifically, Count IV is based upon allegations that Equicopy, Inc. "infringed Unisource's Mark in violation of its trademark rights." Proposed Amended Complaint (DE 114-1) at § 76.

Count VIII is based upon Equicopy, Inc.'s alleged "misappropriati[on] and us[e of] the identical and therefore confusingly similar 'UNISOURCE' name," which allegedly "falsely designated and falsely represented that the goods" Equicopy, Inc. sells are "associated with UNISOURCE, who owns a federal registration for its UNISOURCE® Trademark." *Id.* at § 104.

Count IX is based upon Equicopy, Inc.'s alleged "unfair and deceptive acts or practices [of] misappropriating, imitating and/or copying UNISOURCE® trademark." *Id* at § 110.

And Count X is based upon Equicopy, Inc. allegedly "misappropriating and using the identical and therefore confusingly similar 'UNISOURCE' name," which "falsely and misleadingly designated … that the goods/services it … sells … [are] associated with UNISOURCE, who owns a federal registration for its UNISOURCE® trademark." *Id.* at § 117.

Therefore, whether Plaintiff first learned of the "poaching of clients" after January 15, 2021 is completely irrelevant. None of Plaintiff's proposed claims against Equicopy, Inc. have to do with the supposed "poaching of clients."

Moreover, Plaintiff has already testified that Equicopy, Inc. did not use or otherwise infringe on Plaintiff's trademark. Below is an excerpt of Plaintiff's deposition:

> Q.   Right. And what kind of business do you believe Equicopy is engaged in?
>
> A.   Similar business: in the records retrieval. Based on their website, they do records retrieval business, the same as Unisource Discovery.
>
> Q.   *__Did they [Equicopy, Inc.] use the Unisource logo on the website?__*
>
> A.   *__Not that I'm aware of.__* But they were implemented -- they were implemented into the Unisource records retrieval software, and what transpired after that was a full scale of events. …
>
> Q.   Understood. So the software -- the changes to the software caused a detrimental effect to Unisource Discovery, Inc.; did I understand that correctly?
>
> A.   Correctly, yeah.
>
> Q.   *__That has nothing to do with the actual trademark?__*
>
> A.   *__No.__*
>
> Q.   Okay. I just wanted to make sure. Okay. So Equicopy doesn't necessarily use -- as far as you know, doesn't use the trademark logo of Unisource Discovery, Inc., but [what] Equicopy did, from your understanding, was change the software in a way that affected Unisource Discovery, Inc.'s business, correct?
>
> A.   Yes, but more than that. More than that, actually. What Equicopy did was -- what Steven Cerasale did by opening Equicopy was violate the Closed Corporation Shareholder Agreement, which does not authorize him, or no one else that signed that agreement, to open a competing business. …

> Q.   Right, right, but ***that doesn't affect the trademark, though, correct?***
>
> A.   ***As it pertains to Equicopy, no, no.*** As it pertains to Unisource Discovery, LLC, yes.
>
> Q.   Understood. ***So Equicopy did not infringe on the trademark?***
>
> A.   ***No.***

Plaintiff Dep. (DE 150-10) at 155:2–158:3 (emphasis added).

Based upon Plaintiff's own admissions, Equicopy, Inc. has not used or infringed Plaintiff's alleged trademark. Therefore, Plaintiff's proposed claims against Equicopy, Inc. would be—by Plaintiff's own admissions under oath—completely futile even if Plaintiff had diligently sought leave to amend.

## **CONLCUSION**

For the foregoing reasons, Defendants respectfully request the Court to deny Plaintiff's Renewed Motion (DE 171) and award Defendants their attorney's fees and costs incurred in connection with Plaintiff's Motion (DE 171).

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on September 16, 2021, on all counsel or parties of record on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620

| SERVICE LIST | |
|---|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* **Case No. 20-CIV-23276-DPG** | |
| Diego David Valdes, Esq. Fla. Bar No. 251010 Diego David Valdes, P.A. 2350 Coral Way, Suite 403B Coral Gables, Florida 33145 Telephone: (305) 910-6602 Facsimile: (305) 513-5924 E-mail: ddvlaw@gmail.com *Counsel for Plaintiff, Unisource Discovery, Inc.* | |

8