**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
     Plaintiff,
v.

UNISOURCE   DISCOVERY,   LLC,   and
STEVEN A. CERASALE, individually,
     Defendants.

---

### REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendants hereby file their Reply to Plaintiff's Opposition to Motion for Summary

Judgment (DE 174).

**I.      The First Lie: Plaintiff's Opposition confirms that Plaintiff defrauded the USPTO as to Unisource Discovery, LLC's right to use the subject mark.**

Plaintiff contends that "the oath [to the USPTO] does not require an applicant to disclose

all other persons who may be using the mark. It only requires an applicant to disclose those persons

***who the applicant believes possesses the legal right to use the mark***." Opposition (DE 174) at p. 2

(emphasis added). This argument confirms that Plaintiff defrauded the USPTO.

As Plaintiff argues, the USPTO "requires an applicant to disclose those persons who the

applicant believes possesses the legal right to use the mark." *Id.* Plaintiff admitted at his deposition

that it "knew" / "believed" that Defendant Unisource Discovery, LLC had the right to use the mark:

> Q.      … [A]s to the use from 2006 through 2009, before the registration of the trademark, Unisource Discovery, LLC had the right to use the mark in its business, correct?
>
> A.      I think I've already answered that multiple times.
>
> Q.      Well, I apologize. I just want to summarize. So that's correct: that ***Unisource Discovery, LLC had the right to use the mark in its business from 2006 to 2009, right?***
>
> A.      ***Yes.***

Plaintiff Dep. (DE 150-10) at 213:13–24 (emphasis added); *see also id.* at 140:9–13 ("Q. Going back to the logo, so before the registration of the trademark of the logo, Unisource Discovery, LLC and Unisource Discovery, Inc. both had the right to use the logo in their business, correct? A. Yes.").

Plaintiff's Opposition states and repeats that "prevailing law only requires an applicant to disclose those persons who the applicant believes possesses the legal right to use the mark." Opposition (DE 174) at pp. 13–14; *see also id.* at p. 8 ("[T]he oath … only requires an applicant to disclose those persons who the applicant believes possesses the legal right to use the mark."); *id.* at p. 2 (same).

Under Plaintiff's own theory, Plaintiff committed fraud upon the USPTO.

Plaintiff admitted that it knew "that Unisource Discovery, LLC had the right to use the mark in its business from 2006 to 2009," Plaintiff knows that the USPTO "requires an applicant to disclose those persons who the applicant believes possesses the legal right to use the mark," nonetheless Plaintiff knowingly attested to the USPTO that "no other person, firm, corporation, or association [other than Plaintiff] has the right to use the mark in commerce." Trademark Registration Application (DCED 150-4) at p. 4.

This clear misrepresentation alone is enough to cancel the trademark. The Eleventh Circuit has made clear, "to prove the fraud claim based on misrepresentations in the declaration oath, [the defendant] was required to establish that [the plaintiff] '***was aware*** other organizations were using the ... mark (either in an identical form or a near resemblance) and '***knew or believed' those other organizations had a right to use the mark***.'" *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Florida Priory of Knights Hospitallers of Sovereign Order*

*of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1290 (11th Cir. 2012) (emphasis added).

Plaintiff does not—and cannot—claim or attest that it "subjectively believed" that Unisource Discovery, LLC did not have a right to use the mark. And, in fact, Plaintiff already admitted at its deposition that it knew and believed that Unisource Discovery, LLC had the right to use the mark.

Plaintiff was indisputably "aware" that Unisource Discovery, LLC was using the mark. Plaintiff indisputably "knew" or "believed" that Unisource Discovery, LLC had a right to the use the mark. However, Plaintiff indisputably attested under oath to the USPTO that "no other person, firm, corporation, or association has the right to use the mark in commerce." Trademark Registration Application (DCED 150-4) at p. 4.

This misrepresentation, alone, is sufficient to grant summary judgment. *See, e.g.*, *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 660–61 (2d Cir. 2016) (affirming summary judgment to cancel a trademark based upon fraud because "no material issue of fact existed as to [the applicant's] *actual knowledge* of falsity with respect to the misrepresentations alleged by Plaintiffs," which included the fact that the applicant "knew that others had rights to use the mark").

## II. The Second Lie: Plaintiff's Opposition does not address (and, therefore, admits) the fact that Plaintiff knowingly lied to the USPTO when Plaintiff falsely attested that it "first used" the subject mark "as early as 03/01/2001."

Plaintiff knew that it did not—and could not—use the subject mark until after it was incorporated on June 15, 2006. *See* Plaintiff's Dep. (DE 150-10) at 105:21 – 25 ("June 15, 2006, well, that's when we registered the company legally as a Florida corporation. That's when the name was given to the company; that's when the logo was given to the company …."); *id.* at 101:13–20 ("[O]ne of the toys … that Mr. Cerasale brought to the sandbox was the name and logo of Unisource Discovery, Inc. … that was brought ... in 2006 … That's why the company [Plaintiff] is

3

legally named Unisource Discovery, Inc. ... otherwise, our company would be named something else."); *see also* Plaintiff's Responses to Request for Admissions (DE 150-5) at ¶¶ 1–2 ("Admitted that [Plaintiff] did not use the Mark until … June 15, 2006.").

Despite this knowledge, Plaintiff lied to the USPTO by knowingly misrepresenting that Plaintiff's "first use anywhere" of the subject mark was "[a]t least as early as ___03/01/2001___." *See* Trademark Registration Application (Exhibit 4 hereto) at p. 2 (emphasis added). In other words, Plaintiff lied to the USPTO to give the false impression that Plaintiff had been using the subject mark before Defendants began using the subject mark.

Plaintiff does not—and cannot—contend that it "subjectively believed" that it began using the mark in commerce in March 2001. To the contrary, Plaintiff has already admitted at its deposition and in responses to Request for Admission that it knew that it had not used the subject mark until 2006. Plaintiff's Opposition (DE 174) does not even attempt to address or explain this material misrepresentation. And neither Plaintiff's Opposition (DE 174) nor Plaintiff's Affidavit (DE 174-1) even attempt to rebut that undisputed fact that Plaintiff lied.

This clear—and admitted—material misrepresentation alone is enough to mandate cancellation of Plaintiff's Mark.

III.     **The Third Lie: Plaintiff's Opposition does not present any evidence to create a genuine dispute that Plaintiff knew it did not own the subject mark.**

Plaintiff knowingly misrepresented to the USPTO that Plaintiff was the "owner" of the subject mark as of October 15, 2008. *See* Trademark Registration Application (DE 150-4) at p. 1 (declaring that Plaintiff was the "owner of mark"); *id.* at p. 4 ("[Plaintiff] believes the applicant to be the owner of the trademark/service mark sought to be registered ….").

Plaintiff does not argue—or present any evidence—that Plaintiff owned the subject mark when it filed the trademark registration application on October 15, 2008. To be sure, Plaintiff has

already admitted in its deposition that as of the date it filed the trademark registration application, the Plaintiff and Mr. Cerasale were bound by Plaintiff's 2006 Operating Agreement. And the 2006 Operating Agreement provided that "in the case that Steven Cerasale is no longer a Director, Officer or Agent of [Plaintiff], at that time *__the Board of Directors shall modify the current name of the Company 'UNISOURCE DISCOVERY' to be different in name only__*." Plaintiff's Operating Agreement (DE 150-3) at p. 5; Plaintiff's Dep. (DE 150-10) at 74:18–75:1. As plaintiff testified, Plaintiff and Mr. Cerasale agreed to this wording to "cover ourselves. We don't know who we are. We just signed this. If this blows up in our face in six months, boom, everybody walks away"—i.e., Plaintiff walks away without any right to the subject mark. Plaintiff's Dep. (DE 150-10) at 74:18–75:1.

Plaintiff further admitted that the 2006 Operating Agreement "was active *__from 2006 until the new Closed Shareholder Corporation Agreement was enacted [in 2010]__*." Plaintiff Dep. (DE 150-10) at 31:21–24. In other words, Plaintiff's "ownership" or non-ownership of the subject mark was governed by the 2006 Operating Agreement when Plaintiff filed its trademark registration application on October 15, 2008.

In other words, Plaintiff did own the subject mark or name on October 15, 2008. Rather, if Mr. Cerasale left Plaintiff on or before October 15, 2008, the subject mark and name would go with him, and Plaintiff's "Board of Directors shall modify the current name of the Company … to be different in name only." Plaintiff's Operating Agreement (DE 150-3) at p. 5.

What Plaintiff now argues is that in "the year 2006 Operating Shareholder Agreement the parties contractually agreed to *__permit__* Plaintiff to use the logo," and that "in the year 2010 Close Corporation Shareholder Agreement the parties clearly agreed, in writing, to *__transfer ownership__* of the logo that was now a registered Trademark." Opposition (DE 174) at p. 11 (emphasis added).

5

It is indisputable, therefore, that Plaintiff knew that it did not "own" the subject mark when it submitted the USPTO registration application on October 15, 2008.[1] Despite this knowledge, Plaintiff misrepresented to the USPTO that it was the "owner of mark" and "believes the applicant to be the owner of the trademark/service mark sought to be registered." Trademark Registration Application (DE 150-4) at pp. 1, 4.

**IV.     Plaintiff's Opposition does not present any evidence to create a dispute regarding the undisputed facts in Defendants' Motion for Summary Judgment.**

As explained above, Plaintiff does not present any evidence to rebut or create any dispute about Plaintiff's three material misrepresentations to the USPTO. Rather, Plaintiff admits that its "recollection of every detail, and every step in the trademark application process is not as sharp as if it was yesterday, last month, or in the last few years" and candidly admits that "[b]ecause this was so long ago, I really cannot offer the finite details as to what occurred and/or did not occur when the logo was registered as a trademark." Plaintiff's Affidavit (DE 174-1) at ¶¶ 4, 12.

While Plaintiff claims he does not remember "what occurred and/or did not occur," Plaintiff believes that Plaintiff's "intent was to protect and build a strong national Records Retrieval Service

---

[1] To be clear, Defendants never transferred their ownership in the subject mark or name to Plaintiff. Nothing in the 2006 Operating Agreement or 2010 Shareholders Agreement provide that Defendants are transferring any ownership rights to Plaintiff. Moreover, even if the agreement provided for any "transfer of ownership" (which they do not), Unisource Discovery LLC was never a party to either agreement. Plaintiff has already admitted as much. *See* Plaintiff's Dep. (DE 150-10) at 56:3–9, 57:6–58:22. ("A. Well, the document speaks for itself, Counsel. … there is no where on this document that mentions Unisource Discovery, LLC. And for a reason. And the reason is, it's not mentioned because it wasn't part of the contribution. … Walt Disney World isn't mentioned in this contract either, okay; google is not mentioned in this contract; other things are not mentioned in this contract. Does that make them part of the contract? Again, if … the intent from Mr. Steven Cerasale, at the time, was that Unisource Discovery, LLC played a role, in Florida, then I would assume it would be included in this contract. … As a matter of fact, Counsel, Unisource Discovery, LLC is not mentioned in any of the legal registered agreements, contracts, filings, at all, as it pertains to Unisource Discovery, Inc., because it has nothing to do with Unisource Discovery, Inc. … But, no, Unisource Discovery, LLC is not in this contract.").

of Process company" and that "I can tell you that subjectively my actions did not, and could not, amount to fraud." Plaintiff's Affidavit (DE 174-1) at ¶ 13.

Plaintiff seems to believe that it can survive summary judgment by merely attesting—in completely conclusory fashion—that it did not "subjectively" intend to commit fraud. Plaintiff is mistaken.

"[T]he scienter standard for fraud on the [US]PTO is met only when an applicant ***actually knew*** that material statements in the trademark application were false, and that it is not enough that the applicant ***should have*** known about such falsity." *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016). However, a trademark applicant cannot survive summary judgment on a cancellation claim by merely claiming it acted in good faith. *Id.* ("We agree with Tarntino about the degree of scienter required for a plaintiff successfully to allege fraudulent trademark procurement, but nevertheless find no genuine issue of material fact that Tarntino fraudulently obtained his mark.").

Courts grant summary judgment on trademark cancellation claims based upon fraud when the undisputed facts show that the applicant ***knew*** that the representations made to the USPTO were false. *See E. W., LLC v. Rahman*, 896 F. Supp. 2d 488, 509 (E.D. Va. 2012) (granting summary judgment on claim for cancellation of trademark based upon fraud because even if "Defendant Rahman truly believed this licensing arrangement to be the case when he submitted the application, Defendant Rahman's statement that no other person had the right to use the mark in commerce would still constitute a false and misleading statement"); *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 661 (2d Cir. 2016) (affirming the entry of summary judgment on a claim for trademark cancellation based upon fraud because the trademark applicant "knew fully well that

other [ ] locations used the [ ] mark … [and, therefore] could not have believed earnestly that 'no other person, firm, corporation, or association ha[d] the right to use the [ ] mark'").

Plaintiff does not deny that it knew that Unisource Discovery, LLC had the right to use the mark when Plaintiff filed its trademark application. Plaintiff does not deny that it first used (and knew that it first used) the subject mark in June 2006 and not in March 2001. Plaintiff does not deny that it knew that its interest (including any "ownership" interest) in the subject mark was governed by the 2006 Operating Agreement, which provides that Plaintiff does not own the subject mark.

Plaintiff, therefore, knowingly lied to the USPTO on October 15, 2008 when Plaintiff attested that (1) no other company had the right to use the mark, (2) Plaintiff first used the mark in March 2001, and (3) Plaintiff owned the mark.

Plaintiff's conclusory and boilerplate assertions of "subjective good faith" and ignorance over "what occurred and/or did not occur" falls woefully short of creating a genuine dispute and preventing summary judgment.

### V.      Plaintiff has not provided a scintilla of evidence to create any sort of dispute regarding its Affirmative Defenses.

Plaintiff contends that its "Answer [DE 86] … provided applicable affirmative defenses with sufficient evidence to create a material issue of fact for trial." Opposition (DE 174) at p. 16. Of course, Plaintiff's Answer sets forth mere allegations; it does not provide any "evidence"—let along "sufficient evidence to create a material issue of fact for trial." And Plaintiff's Opposition does not present any evidence to support any of Plaintiff's Affirmative Defenses.

Plaintiff candidly quotes from binding precedent that "[t]he mere assertion of an affirmative defense on which [Plaintiff] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment." *Id.* By Plaintiff's own candid

8

admission, the fact that it asserted Affirmative Defenses is insufficient to survive a motion for summary judgment. Plaintiff bears the burden of establishing its Affirmative Defenses with evidence.

"Plaintiff's response to the motion for summary judgment should include affidavits and any other documents or materials required by [Rule] 56 and Local Rule 56.1(A). Plaintiff is cautioned that he must dispute or contradict defendant's argument with evidence of a substantial nature as distinguished from legal conclusions. Plaintiff cannot successfully defeat a motion for summary judgment with mere formal denials or general allegations that do not disclose the facts in detail and with precision, nor can he simply rely upon the pleadings. A general denial unaccompanied by any evidentiary support will not suffice." *Green v. McHugh*, 5:06CV222/MCR/MD, 2008 WL 11462992, at *1 (N.D. Fla. Feb. 13, 2008); *see also* Fed. R. Civ. P. 56 ("A party asserting that a fact … genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions … affidavits or declarations.").

Contrary to binding precedent (precedent to which Plaintiff itself cites), Plaintiff merely relies on its allegations and general denials to attempt to survive summary judgment. *Taffe v. Wengert*, 775 Fed. Appx. 459, 465 (11th Cir. 2019), *cert. denied,* 140 S. Ct. 1106 (2020) ("[T]o preclude summary judgment, Taffe cannot rely on 'mere allegations' in her pleadings, and instead must put forward evidence that creates a *genuine* dispute of material fact. … Taffe has not met this burden.").

Plaintiff, therefore, has not met its burden to establish any genuine dispute of material fact. Summary judgment in favor of Defendants, therefore, is warranted.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice

of Electronic Filing generated by CM/ECF, on September 20, 2021, on all counsel or parties of

record on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620

| SERVICE LIST |  |
| --- | --- |
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* |  |
| **Case No. 20-CIV-23276-DPG** |  |
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* |  |

10