**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**SUPPLEMENTAL AND AMENDED**
**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Unisource Discovery, Inc. by and through its undersigned attorney, amends and supplements its previously filed Motion for Summary Judgment [DE 141] on Defendants Count I (Cancelation of Trademark) through merging this Supplemental and Amended Partial Motion For Summary Judgment on Plaintiff's Count I (Trademark Infringement), Count II (False Designation or Origin and Unfair Competition), Count V (Trademark Counterfeiting) and Count III/VII (Common-law Trademark Infringement), and Count VII (Misleading Advertising Under Florida Law -- Fla. Stat. Ann. § 817.41), pursuant to *Fed. R. Civ. P*. 56(c), and states, as follows:

**PRELIMINARY STATEMENT**

First, the analysis for trademark infringement under the Lanham Act also applies to claims for common law trademark infringement. *Chanel*, *Inc. v. Italian Activewear of Fla*., *Inc*., 931 F.2d 1472, 1475 n.3 (11th Cir. 1990)

In relation to the false designation claim, "The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with

1

respect to trademark infringement under 15 U.S.C. § 1114." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503–04 (11th Cir. 1985) ("); *see Taylor v. Trapeze Mgmt., LLC,* No. 0:17-cv-62262-KMM, 2019 WL 1468515, at 4 (S.D. Fla. Feb. 27, 2019) ("In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same as a trademark infringement or false association claim.").

Simply put, the claims arise from Defendants continued and illegal use of Plaintiff Unisource's registered trademark ("Mark" or "Trademark") that is legally identified with particularity in Plaintiff's Complaint [DE 1] and below.

## FACTUAL BACKGROUND

UNISOURCE is the owner of the following United States Federal Trademark:



Registration No. 3,634,516 and Serial No. 77594059, which registered on June 9, 2009 in International Class 045 and is used in connection with legal research. The Plaintiff's registration is incontestable.

The Trademark has been used in commerce and the same channels to identify and distinguish Unisource's high-quality legal support services and has been renewed under Section 8 (6-YR) on October 6, 2015 and Section 8 & 9 (10-YR) on March 5, 2019.

Plaintiff Unisource had an ongoing business relationship with Defendant Unisource California and Cerasale that began in year 2005.  During the time Plaintiff registered the name and logo as a Trademark, the Defendants provided Plaintiff Unisource an "implied license" to use the name and logo. Then, the parties executed the year 2010 Close Corporation Shareholder Agreement, whereas Defendants sold the name and logo to Plaintiff.  Similarly, Plaintiff Unisource then granted Defendant Unisource California an implied license to continue using the Trademark.

Sometime proximate to year 2015, Cerasale and Defendants began an active [and obvious]

campaign to expand business of Defendant Unisource California that included converting Plaintiff's clients. Consequently, on February 21, 2020, Plaintiff Unisource notified the Defendants that the implied license to use Plaintiff's Trademark had been revoked and served proper notice via Email and U.S. Certified Mail. Amongst other things, the notice provided Defendants with the option to cease all further use of the Trademark and requested that if Defendants wanted to continue to use the Trademark, it would be required to enter into a new licensing agreement.  Defendants ignored and thus rejected the offer.

On May 12, 2020, Plaintiff's Counsel sent a cease-and-desist letter to Defendants via Email and U.S. Certified Mail of their continued Infringement of Trademark Rights of Plaintiff Unisource. The name and mark have never been assigned or licensed to the Defendants or any third party.

Using the same channels, and same advertising forums, the Defendants have been capitalizing on Plaintiff Unisource's reputation for high quality and ethical legal support service and products through their continued advertising, promoting, distributing, selling, and offering for sale an identically named service and product.

This has caused consumer confusion.

Through Defendant Unisource California's Internet presence Defendants have intentionally created a false impression of identification that continues to confuse the consumer coupled with diminishing the distinctiveness of the Plaintiff Unisource Trademark.  Here, the Plaintiff's Trademark is classified as "arbitrary" -- that is, a "one-of-a-kind" name that was is an amalgam of several words (as discussed more fully below).

Plaintiff Unisource has continuously used, advertised, and promoted the name and logo in the same channels in connection with the same legal and litigation support services. As of today, the Defendants intentionally continue to use the Trademark without permission or authority in the same channels as Plaintiff. In fact, the Defendants have adopted not only the name and style the name (font, spacing, and design), but also the "logo" in-connection to the arbitrary 'Unisource Discovery" name.

3

On August 27, 2021, the Defendants imposed a counterclaim for cancellation of trademark [DE 166] claiming the Plaintiff somehow committed fraud during the registration of the logo as a Mark with the USPTO approximately 13-years ago.  Clearly, this confirms Defendant's "intent" to continue its illegal use of Plaintiff's Trademark that has proven to confuse Plaintiff's consumers and causing Plaintiff to suffer losses.

## **LEGAL STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (internal quotation marks omitted); see *also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co*., 398 U.S. 144,

158-59 (1970). A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir. 2007).

## DISCUSSION

### A.    Claim for Trademark Infringement

To prevail on a claim for trademark infringement, a plaintiff must show that: "(1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) (holding the analysis for trademark infringement under the Lanham Act also applies to claims for common law trademark infringement). It is axiomatic that, to prove the first prong, the plaintiff must show "that it had trademark rights in the mark or name at issue," *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)—simply, that it owned the mark at issue.

Thus, to satisfy the first prong, Plaintiff must prove four separate factors: (1) it had "rights in the Trademark" (simply, that it owns the Trademark); (2) that its granting Defendant Unisource California use the Trademark (3) that it terminated Defendant Unisource California use upon sending cease-and-desist letters; and (4) that Plaintiff continued to use the Trademark in commerce. *See Burger King Corp.*, 710 F.2d at 1492; *Lone Star Steakhouse*, 106 F.3d at 358.

Plaintiff will address each of these requirements in turn.

### B.    First Prong: Use of the Trademark in Commerce Without Plaintiff's Consent

#### 1.    Ownership of the Trademark

Pursuant to the year 2010 Close Corporation Shareholder Agreement [DE 1] Plaintiff owns the Unisource name and logo, and therefore, the Trademark -- that has been continuously used in commerce since year 2008.   *See Sream, Inc. v. Grateful J's, Inc.*, 2017 WL 6409004, at 3 (S.D. Fla.

Oct. 13, 2017) ("[A]ssignment of a trademark under the Lanham Act requires (1) sale or transfer of all rights in the mark; and (2) assignment as well of the business's goodwill connected with the mark's use.").

The dispute that remains is whether Plaintiff owned the Unisource name and logo when Trademark was registered in year 2008. However, this is discussed below in the analysis on the third factor—whether Plaintiff terminated the Defendants use upon sending its two (2) cease-and-desist letters [DE 1]. For purposes of this first factor, Plaintiff believes it is sufficient to establish that Plaintiff took ownership of the Trademark in 2008 and contractually memorized in the year 2010 Close Corporation Shareholder Agreement when ownership of the Unisource name and logo was transferred to Plaintiff.

Defendants raises a novel argument here, now essentially challenging the validity of the 2008 registration with the USPTO. They claim that Plaintiff committed fraud in obtaining the Trademark. Defendants contend Plaintiff made material misrepresentations to the USPTO in registering it. Thus, at the very least, Defendants insists Plaintiff obtained "ownership" of the Trademark improperly in 2008.

This Court must reject this novel theory by Defendants. At best, this is a contrived allegation, calculated only to defeat summary judgment. *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("A nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."). In this instance, the Plaintiff will show, below, that there is no basis in fact to support this theory.

Therefore, for the first factor—ownership of the Trademark—should be found to be undisputed that Plaintiff owned the Trademark in 2008 and upon execution of the year 2010 Close Corporation Shareholder Agreement [DE 1] when Plaintiff's ownership of the Unisource name and logo was contractually memorized. This factor weighs in favor of Plaintiff.

2. **The Grant of Use as an Implied License**

6

It is also undisputed that, following the 2008 registration of the logo as Plaintiff's Trademark and after the execution of the year 2010 Close Corporation Shareholder Agreement, Plaintiff allowed Defendant Unisource California to continue operating its business under the name bearing the Trademark pursuant to ¶ 1.3,

> "Trademark. Plaintiff Unisource DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise.

The only way to interpret this is an *implied license* by Plaintiff to Defendant Unisource California. "Acquiescence to one's use of a trademark is analogous to an implied license to use the mark." *Coach House Rest*., *Inc*. *v*. *Coach & Six Rests*. *Inc*., 934 F.2d 1551, 1563 (11th Cir. 1991).

The law does not require any express contract, promise, or even certain words to find an implied license. The very nature of an implied license is creation-by-conduct—that the owner "permits the use of a copyrighted work in a particular manner." *Karlson v*. *Red Door Homes*, *LLC*, 611 F. App'x 566, 569 (11th Cir. 2015) (quotation omitted). In other words, "[t]he grant of a nonexclusive license does not require a writing under the Copyright Act, and it may occur orally or may be implied from the copyright owner's conduct." *Id*.

As a consequence, Plaintiff allowed and thus "knew" Defendants Unisource California operated under the name of the Trademark and allowed it to continue after the execution of the 2010 Close Corporation Shareholder Agreement [DE 1] under an implied license.

Here, Plaintiff argue there are sufficient facts to establish an implied license.

### 3.        Termination of the Implied License

It is well established that an implied license is terminable at will. *Menendez v*. *Holt*, 128 U.S. 514, 524 (1888). Of course, the successful termination of an implied license, however, presupposes ownership over the trademark. That is to say, the licensor purporting to terminate the licensee's allowed use of the trademark must own the mark at the time of termination.

Plaintiff serving its first cease and desist letter on February 21, 2020 [DE 1] and the second cease and desist letter on May 12, 2020 [DE 1] terminated the implied license for Defendant Unisource California to have Right of Use of the Trademark.   Plaintiff owns the Trademark and continues to own it through its sending the two (2) cease-and-desist letters.

Defendant, however, argues through its counterclaim [DE 166] that Plaintiff committed fraud when registering the logo as a Trademark with the USPTO in year 2008 and, therefore, has no legal justification to terminate the implied license.

Defendants' position undoubtedly lacks evidentiary support. Cancelation of trademark under a fraud theory required Defendant's counterclaim [DE 166] to be pled pursuant to Rule 9 (particularity) and Defendants must prove Plaintiff's alleged fraud with "clear and convincing evidence" that "bears a heavy burden of proof." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

"[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with *clear and convincing evidence*. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* (emphasis added) (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B.1981)

As a matter of law, Plaintiff provides sufficient evidence of a termination of the license provided to Defendant.

### 4.     Continuing Use of the Trademark

The final factor of the first prong— that Defendant Unisource California continues to use the Trademark in commerce after Plaintiff attempted to terminate the implied license—is undisputed. Defendants do not dispute that it continues to use the Trademark today.

### C.     <u>Likelihood of Confusion</u>

For the second prong, "[c]ourts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists:

(1) type of mark;

(2) similarity of mark;

(3) similarity of the products the marks represent;

(4) similarity of the parties' trade channels and customers;

(5) similarity of advertising media;

(6) the defendant's intent; and

(7) actual confusion."

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ.*, *Inc.*, 91 F. Supp. 3d 1265, 1274 (S.D. Fla. 2015); *see also ATP Sci. Proprietary*, *Ltd. v. Bacarella*, 2020 WL 3868701, at 4-6 (S.D. Fla. July 9, 2020).

"Of these factors, the type of mark and evidence of actual confusion are considered the most important." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1274. Moreover, these factors "are just that— factors." *ATP Sci. Proprietary*, *Ltd.*, 2020 WL 3868701, at 6; *see also You Fit*, *Inc. v. Pleasanton Fitness*, *LLC*, 2013 WL 521784, at 2 (M.D. Fla. Feb. 11, 2013) ("When balancing the factors, the issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.").

## 1.      The Type of Trademark

The Eleventh Circuit instructs the district courts first to classify the type of mark to determine "whether it is strong or weak." *Frehling Enters.*, *Inc. v. Int'l Select Grp.*, *Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (establishing four categories of marks: generic, descriptive, suggestive, and arbitrary). Of the four categories, arbitrary marks, those that bear no relationship to the product, "are the strongest."[1] *Id.*

---

[1] "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Frehling Enters. v. Int'l Select Group, Inc.* , 192 F.3d 1330, 1335 (11th Cir. 1999).  There are four types of marks (listed in order of weakest to strongest): generic, descriptive, suggestive, and arbitrary. *Id.* The types of marks are "based on the relationship between the name and the service or good it describes:" generic marks bear a name that is entirely connected to the service or good it describes ("liquor store" as applied to a store that sells liquor), *id.* , and arbitrary marks that bear "a word in common usage applied to a service unrelated to its meaning" ("Sun Bank" as applied to banking services). *Freedom Sav. & Loan Ass'n v. Way* , 757 F.2d 1176, 1182 n.5 (11th Cir. 1985). "Descriptive marks describe a characteristic or quality of an article or service" ("vision center" as applied to a store that sells glasses) and "suggestive

Here, the Trademark is an arbitrary mark, entitled to the strongest protection under the case law. The "Unisource Discovery" Trademark is a portmanteau of "discovery" in litigation, "Uni" means "one" and "source" means "where something can be obtained."—creating the original name "Unisource Discovery."

"Also important in gauging the strength of a mark is the degree to which third parties make use of the mark." *Frehling Enters.*, 192 F.3d at 1336. "There is no hard- and-fast rule about the number of other users which diminish a mark's strength. Courts have found that a mark has been weakened by third-party use based on a relatively small number of third-party users." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1276 (internal citation omitted).

Here, there is no indication that anyone other than Defendants are a third-party user of the Trademark. Thus, with only *one* third-party user in alleged violation of the trademark, Plaintiff's position is strong.

However, another factor weakens Defendant's position is its unlawful use of the Trademark is in the same field. *See Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1276 ("Third-party use is also considered more potent when the users are operating in the same field as the plaintiff.").

Nevertheless, when the Court balances all of this, and, in so doing, the Court will certainly find the Trademark is entitled to the strongest protection. The Trademark is arbitrary. It is an amalgamation of three words, one of which was an original name for a "discovery" is defined in every court in the United States and found under their rules of procedure; and is used by only one third-party user.

Therefore, this prong heavily weighs in favor of Plaintiff.

2.      **The Similarity of the Trademark**

---

marks suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive" ("penguin" is suggestive of refrigerators). *Frehling Enters.* , 192 F.3d at 1335

For the second factor, the Court is to "compare[] the marks and consider[] the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters.*, 192 F.3d at 1337.

This prong does not demand a rigorous analysis -- Plaintiff and Defendant Unisource California use the exact same Trademark. Thus, this prong must weigh in favor of Plaintiff, as well. *See*, *e.g.*, *Eli Research*, *LLC v. Must Have Info Inc.*, 2015 WL 5934611, at 5 (M.D. Fla. Oct. 6, 2015) ("Defendants use the exact same mark as AAH—the CPC mark. As such, the similarities of the mark indicate to the Court that the use of the CPC mark is likely to cause confusion.").

### 3. The Similarity of the Products the Trademark Represents

For the third factor, "the Court must examine whether the parties' services are the kind that the public attributes to a single source." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1277. "The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983). This inquiry "does not turn on whether the services can be distinguished by consumers, but on whether the services are so related in the minds of consumers that they get the sense that a single producer is likely to" offer both services." *Id.*

Plaintiff Unisource Florida uses the Trademark for the sale of legal goods and litigation/attorney support services in interstate commerce across the United States and specifically Florida. Similarly, Defendant Unisource California uses the Trademark on their website, internet advertising, and therefore advertises its same goods/services in the same channels that caters to the same types of customers.

Here, this factor also heavily favors Plaintiff's position. The complete lack of dichotomy between Plaintiff's business of selling litigation support services and goods and Defendant Unisource California business of selling litigation support service and goods is sufficient to find it will create the likelihood of confusion.

### 4.    The Similarity of the Parties' Trade Channels and Customers

"Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers." *Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1369 (M.D. Fla. 2000).

It follows that "[d]issimilarities between the retail outlets for the parties' services reduce the possibility of confusion." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1184 (11th Cir. 1985); *see also Fehling*, 192 F.3d at 1339. "This factor takes into consideration where, how and to whom the services are sold. The Court also must consider the level of sophistication and investment required of the parties' customers, which can influence the likelihood of confusion based on a mark." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1279 (internal citation omitted).

"While 'the parties' outlets and customer bases need not be identical, some degree of overlap should be present' to weigh in favor of a likelihood of confusion." *Id.* (quoting *Frehling*, 192 F.3d at 1339).

Plaintiff takes the position that the third and fourth factors are closely related. Comparable products and services obviously attract similar customers and use similar trade channels.

In *Florida International University Board of Trustees*, the court determined this factor favored the defendant Florida National University ("FNU"), despite the plaintiff FIU and defendant FNU both being post-secondary educational institutions and both serving the same customers that are students. *Id.* at 1279. Vetting several affidavits and exhibits presented by FNU, the court found the "differences between the schools' respective student populations." *Id.* ("[A]bout 70 percent of FNU's students are seeking either associate's degrees or attending ESL programs that are not offered by FIU.

In other words, FNU's predominant customers are in the market for educational services that FIU simply doesn't provide. This was enough to determine the two schools did not serve the same customer base. *Id.* This contrast shows the distinction between case similar to *Fla. Int'l Univ. Bd. of Trs.* and the instant case.

12

Here, unlike *Fla. Int'l Univ. Bd. of Trs.*, Plaintiff  has presented enough for the Court to make a meaningful determination as to their customer base. Because Defendants' use of the Trademark exists on the internet and internet related advertising throughout the United States, and Plaintiff advertises in the 'exact" same manner on the "exact"  same forums. This is a virtual guarantee that the two entities cater to the same clientele and work through the same channels.

Most importantly for the summary judgment analysis here, Plaintiff provided proof in its favor in finding it has offered sufficient evidence for this Court to consider this element satisfied.

### 5.       The Similarity of Advertising Media

For the fifth factor, the Court must consider the advertising media used by each party. *Deltona Transformer Corp.*, 115 F. Supp. 2d at 1369. Clearly, "[i]f a plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable." *Id.* "A court may properly consider the overall advertising campaigns." *Id.*

In its Complaint [DE 1], Plaintiff states, "Through UNI-CA's Internet presence, and with the Internet's concomitant ability to reach instantly millions of online consumers throughout the United States, including Florida, Defendants' have consciously and deliberately attempted to create a false impression of identification to diminish the distinctiveness of the Defendants trademark[2]. Plaintiffs has expended substantial time and money developing, advertising, and promoting the Name and Mark." *See* Pl. Comp. ¶ 17

Attached to Mr. Mijares Declaration is an authenticated print-out of Defendants' first and last pages of its Internet site that advertises and manages its customers (*See* Exhibit "A").  Lastly, the Defendants do not deny that they advertise on the Internet and caters to the same customer base.

Like the previous factor, Plaintiff has submitted sufficient record evidence to prove this element.

---

[2] Please note that Plaintiff noticed a patent scrivener's error --  "Defendants" Trademark" is in error and Plaintiff meant "Plaintiff's" Trademark.

**6.      The Defendants' Intent**

"In determining whether consumer confusion is likely, the Court must also examine the defendant's intent, to determine whether the defendant 'had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent.'" *Fla Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1281 (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)).

"[L]ikelihood of confusion can be found as a matter of law if Plaintiff shows that Defendants intended to derive benefit from Plaintiff's trademark." *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1354 (S.D. Fla. 2002). While objective factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent." *Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1244 (S.D. Fla. 2018).

Subjective intent, no matter the cause of action or type of proceeding before a court, almost never can be proved by direct evidence. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 1981 WL 40564, at 6 (N.D. Ga. May 15, 1981) ("Since improper motive is rarely, if ever, admitted . . . the court can only infer bad intent from the facts and circumstances in evidence.").

Plaintiff argues that Defendant's intent to derive benefit from the Trademark could not be clearer – Defendants are still currently using the Trademark despite two (2) served cease and desist letters. In addition, Defendants are advancing a counterclaim [DE 166] against Plaintiff for cancelation of trademark – another clear act to deprive Plaintiff of its Trademark.

Here, the Plaintiff' offers sufficient evidence for this factor and, therefore, has sufficiently proved this factor.

**7.      Evidence of Actual Confusion**

As for the seventh and final factor, "evidence of actual confusion . . . is the best evidence of the likelihood of confusion . . . ." *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1282. There is no litmus

test; that is, the applicable cases instruct of no magical amount of evidence of customer confusion a party must show. *Caliber Auto. Liquidators*, *Inc. v. Premier Chrysler*, *Jeep*, *Dodge*, *LLC*, 605 F.3d 931, 937 (11th Cir. 2010).

In fact, "the quantum of evidence needed to show actual confusion is relatively small." *Id*. And, the burden on the defending party is much greater than that on the moving party. As the Fifth Circuit has stated: "[R]eason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *World Carpets*, *Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).

Before and during the instant litigation there has been sixteen (16) instances of actual customer confusion logged by Plaintiff. Several of these instances of customer confusion were made known prior to the instant litigation and, amongst other reasons, triggered the filing of Plaintiff's complaint [DE 1].

Mr. Mijares Declaration references the sixteen (16) instances of actual customer confusion which is sufficient to establish this factor. (*See* Exhibit "B") *Amstar Corp. v. Domino's Pizza*, *Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (holding that *three instances* of customer confusion was not sufficient) (emphasis added). Because Mr. Mijares' testimony is not hearsay as proof of these allegations, such testimony is admissible.

As for the seventh and final factor, Plaintiff has sufficiently showed actual confusion.

D.     **Claim for Trademark Counterfeiting (15 U.S.C. § 1114)**

Federal law prohibits counterfeiting of a registered mark. 15 U.S.C. § 1114. The aim of a counterfeiter is typically to create a duplicate of a renowned product, and to market the duplicate to a confused public as the genuine article. *Fila U.S.A., Inc. v. Kim,* 884 F. Supp. 491, 494 (S.D. Fla. 1995).

A "counterfeit" mark, as applicable here, is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

The test for whether marks are substantially indistinguishable is more rigorous than the test for likelihood of confusion. *Id.*; *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2011)

A simple examination of the parties' Marks establishes that a reasonable trier of fact could find them "substantially indistinguishable." Here, the evaluation is easy because Defendant admits that they are using the "exact" same trademark with the same name, font, style and logo – by all definitions this would constitute "substantially indistinguishable." *See GMA Accessories, Inc.,* 765 F. Supp. 2d at 471-72 (granting summary judgment on counterfeiting claim where marks contained different words); *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc.,* 486 F. Supp. 2d 286, 290-91 (S.D.N.Y. 2007) (differences in spelling and font variations of marks not "trivial").

In other words, the Plaintiff and Defendants' Trademark is more than confusingly similar – it is *exactly the same* as Plaintiff's Trademark; and understanding this to the case that is not disputed, no reasonable fact-finder could determine that the Marks are not identical and/or "substantially indistinguishable."

As such, as a matter of law this Court should enter and Order granting summary judgment for Plaintiff with respect to the counterfeiting claim.

E. **Claim For Misleading Advertising Under Florida Law (Fla. Stat. Ann. § 817.41)**

As Eleventh Circuit stated in *Smith v. William Wrigley Jr. Co*., 663 F.Supp.2d 1336, 1339 (S.D. Fla. 2009):

> "To state a claim for equitable relief under FDUTPA, Plaintiff must allege, at a minimum, that it has been aggrieved. *See Macias v. HBC of Florida, Inc*., 694 So. 2d 88, 90 (Fla. 3rd DCA 1997) ("in order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act"). A claim for damages under FDUTPA requires the Plaintiff to allege the following three elements: "(1) a

deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), review denied, 962 So. 2d 335 (Fla. 2007))."

### 1. Sufficiency of Allegations

To the extent Plaintiff was still in the process of obtaining more evidence related to incidences during litigation – as the Joint Scheduling Order deadlines have prevented Plaintiff from obtaining more evidence on this issue --- it has [very] sufficiently plead its claim under the circumstances. In the event this Court disagrees as to the sufficiency of Plaintiff's allegation, *in arguendo*, Plaintiff respectfully ask this Court to defer ruling on the merits of this argument until after Plaintiff has an opportunity to take additional discovery.

### 2. Pleading § 817.41 Claim With Particularity

Plaintiff has fully complied with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure because this claim is considered one for fraudulent inducement. S*mith v. Mellon Bank,* 957 F.2d 856, 858 (11th Cir. 1992).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *Fed. R. Civ. P.* 9(b). The particularity requirement of Rule 9(b) serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The application of Rule 9(b), however, must not abrogate the concept of notice pleading under the federal rules. Id.; *Friedlander v. Nims,* 755 F.2d 810, 813 n.2 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.").

More specifically, the Eleventh Circuit stated in *Ziemba* that: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral

representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." 256 F.3d at 1202; *U. S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). Allegations of date, time, or place satisfy the requirement of Rule 9(b) that the circumstances of the fraud be alleged with particularity, but alternative means are also available to satisfy the rule. *Durham v. Business Management Associates,* 847 F.2d 1505, 1512 (11th Cir. 1988).

The Complaint [DE 1] does allege with particularity a description when, who, where, why and how the incidents were occurring (and still are occurring), those specific persons and individuals that partook in the incidences, and their reasons (Defendants' intent) to do so.  In fact, the Complaint's [DE 1] critical paragraphs sufficiently alert Defendants to the precise misconduct with which they are charged in this case.

3. **Conclusion**

Plaintiff, with particularity under Rule 9, has sufficiently stated a claim for misleading advertising under Florida law for this Court to grant summary on this claim.

Because the Plaintiff's Complaint [DE 1] was pled with tremendous detail, the allegations for trademark infringement and all other claims, and the sufficiently of Plaintiff's evidence, are the same to prove the elements of misleading advertising pursuant to Florida law. As such, as a matter of law the Plaintiff has sufficiently proved this claim.

## CONCLUSION

In this Motion, as a matter of law the Plaintiff carefully and methodically brings the reader though each element and each burden for its claims for an entry of summary judgment.  As a result, the Plaintiff has provided substantial evidentiary support in proving its claims.

Because the Plaintiff's Trademark is considered "arbitrary" it is afforded the highest level of protection under the law. Even today, the Defendants do not dispute that they continue to use the exact same Trademark, in the exact same channels of commerce, and cater of the same types of clients. In fact, the Defendants do not dispute their intent to use the exact same Mark.

However, ownership of the Unisource name and logo was contractually transferred to Plaintiff under the terms of the year 2010 Close Corporation Shareholder Agreement, which was mutually prepared by Plaintiff and Defendant, and executed by all parties (See Exhibit "C").  Plaintiff's use prior to year 2010 shows that Defendants granted the Plaintiff an implied license. And likewise, after Plaintiff purchased the logo and name in year 2010 the Plaintiff conditionally granted Defendants an implied license.

When Plaintiff learned of incidences of customer confusion, and direct breach of the 2010 Close Corporation Shareholder Agreement by Defendants, and Defendants were capitalizing upon the confusion caused by their use of Plaintiff's Trademark, Plaintiff revoked Defendants right the use the Trademark under the implied license. The Defendants ignored Plaintiff notices to cease-and-desist their illegal use of the Trademark and continue their effort to convert Plaintiff's customers today.

Lasty, with particularity and on the same basis as Plaintiff's other claims, the Plaintiff has sufficiency pled its case for misleading advertising pursuant to Florida law.

Even in the light most favorable to Defendants, the Plaintiff has sufficiently stated their claims with no factual disputes and certainly satisfied its evidentiary burdens for the grant of partial summary judgment.

**WHEREFORE,** the Plaintiff asks this Honorable Court to:

1.      Enter an Order granting partial summary judgment on Court I, Count II, Count III, Count VII and Count VII of Plaintiff's Complaint [DE 1];

2.      Enter an Order for Defendants to cease all further use of the Trademark, name, and logo;

4.      Enter an Order granting Plaintiff reasonable attorneys' fees and reasonable costs; and

5.      Any other relief this Court finds just and fair.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of

Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler,

White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven A. Cerasale, on

this 1st day of October, 2021.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By:*/s/Diego David Valdes*
Diego David Valdes, Esq.
Florida Bar No. 251010
Email: ddvlaw@gmail.com
        legal@ddvlawgroup.com
Counsel for Plaintiff: Unisource Discovery, Inc.