**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
     Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, and
STEVEN A. CERASALE, individually,
     Defendants.

---

**MOTION IN LIMINE TO EXCLUDE TESTIMONY**
**AND DOCUMENTARY EVIDENCE**

Pursuant to the Court's Scheduling Order Setting Civil Trial Date (DE 33), Defendants

Unisource Discovery LLC and Steven Cerasale ("Mr. Cerasale") hereby move to exclude

testimony, documentary, and/or other evidence as set forth below:

**I.      The Court should exclude evidence relating to non-party Alfred Lutter's April 15, 2010 demand letter and its referenced underlying dispute because the low probative value (if any) of such evidence is substantially outweighed by its unfair prejudice.**

In discovery, Plaintiff produced an April 15, 2010 demand letter sent by Alfred Lutter's ("Mr. Lutter") attorney and related letters / email communications from April 2010 and May 2010. The demand letter and communications related to Mr. Lutter's demand that Unisource Discovery, Inc. not use Mr. Lutter's software.

During his deposition, Plaintiff's corporate representative repeatedly brought up (without being asked) Mr. Lutter's demand letter and underlying dispute relating to Mr. Lutter's software. *See* Plaintiff Dep. (DE 150-10) at 22:8–10 ("[W]e received a legal threat letter from Alfred Lutter."); *id.* at 26:16–22 ("[W]e were presented with legal threat of a lawsuit from Mr. Lutter …."); *id.* at 53:9–13 (referring to the letter from Mr. Lutter as a "crisis in the company"); *id.* 63:7–13 ("[A]s I mentioned earlier, with the … legal threat from Alfred Lutter …"); *id.* at 80:6–10 ("[H]ere we are, threatened with a lawsuit by Alfred Lutter …."); *id.* at 84:25–85:4 ("Remember, we learned of this very bad situation … from Alfred's attorneys, Alfred Lutter. Alfred Lutter's attorney sent us a letter, a demand letter, a threatening letter, 'We're going to sue you and stop all your business.'").

It is, therefore, very likely that Plaintiff intends to introduce testimony and documentary evidence at trial regarding Mr. Lutter's demand letter.

Mr. Lutter's April 15, 2010 demand letter and the underlying dispute have absolutely nothing to do with any issue in this case. This case is about Plaintiff's claim that Defendants have used Plaintiff's alleged trademark without permission beginning in February 2020. This case is also about Plaintiff's fraud upon the USPTO when Plaintiff submitted its trademark application with three material—and known—falsehoods. Conversely, Mr. Lutter's April 15, 2010 demand

letter and its referenced underlying dispute relate to Unisource Discovery, Inc.'s authority to use software that does not have anything to do with any claims or defense in this case.

This case has nothing to do with a dispute with Mr. Lutter in 2010 (which was amicably resolved in 2010). Plaintiff will likely attempt to use the demand letter and dispute with Mr. Lutter at trial in the same way Plaintiff's corporate representative attempted to use it during his deposition—i.e., to gratuitously badmouth Mr. Cerasale.

Mr. Lutter's demand letter and its referenced underlying dispute does not tend to make any fact at issue more likely or less likely, nor do they have anything to do with any claims, defenses, or disputed facts in this case. Mr. Lutter's April 2010 demand letter and its referenced underlying dispute, therefore, are not relevant Under Federal Rule of Evidence 401. *See* Fed. R. Civ. P. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Additionally, if Plaintiff were to introduce evidence relating to Mr. Lutter's 2010 demand letter and the referenced dispute, Defendants would then have to introduce rebuttal evidence— including, but not limited to, testimony from non-party Mr. Lutter—to counteract the unfair prejudice that such evidence would cause. Plaintiff's introduction of such evidence, therefore, would lead to a mini-trial on the merits, correspondence, and resolution of a non-party dispute from April 2010 that was amicably resolved just a few months later in 2010.

As explained above, evidence relating to Mr. Lutter's demand letter and dispute in 2010 has no probative value and should, therefore, be excluded from trial. However, even assuming it has some probative value, such probative value is minimal and substantially outweighed by the danger of unfair prejudice, ability to mislead the jury, confuse the issues, and waste time. The Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger

3

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II.   The Court should exclude any testimony or documentary evidence relating to Equicopy, Inc.

Plaintiff filed an untimely motion for leave to amend its Complaint to join Equicopy, Inc. as a defendant in this action. *See* Motion (DE 114). The Court denied Plaintiff's Motion (DE 161). Despite that denial, Plaintiff then filed an untimely Renewed Motion for Leave to Amend its Complaint (DE 171) based upon the false statement that Plaintiff had recently learned that Equicopy, Inc. was ostensibly "part of a scheme to poach clients." (DE 171-1) at ¶ 8.

The Court has not yet ruled upon Plaintiff's untimely "Renewed Motion" (DE 171) or on Defendants' Motion to Strike the Renewed Motion (DE 173). However, if the Court denies Plaintiff's Renewed Motion, then Defendants respectfully submit that the Court should also exclude evidence at trial relating to Equicopy, Inc.

It is likely that Plaintiff will attempt to introduce evidence of Equicopy, Inc. at trial to argue that Equicopy, Inc. was "poaching clients" and, therefore, Mr. Cerasale is somehow to blame. It is evident that any such evidence would serve only the purpose of prejudicing the jury against Mr. Cerasale, confusing the issues, and wasting time. None of Plaintiff's claims against Defendants have to do with Equicopy, Inc.

This case is not about non-party Equicopy, Inc. "poaching clients." Rather, this case is about Plaintiff's alleged trademark. And Plaintiff has already admitted that Equicopy, Inc. did not infringe on Plaintiff's alleged trademark. Plaintiff Dep. (DE 150-10) at 155:2–158:3 ("Q. Understood. So Equicopy did not infringe on the trademark? A. No.").

Such evidence, therefore, is not relevant under Federal Rule of Evidence 401.

4

Additionally, if Plaintiff were allowed to introduce evidence relating to Equicopy, Inc., then Defendants would have to introduce rebuttal evidence to disprove Plaintiff's false—and gratuitous—contention that Equicopy, Inc. was "poaching clients" of Plaintiff. This would include, but would not be limited to, introducing evidence of Equicopy, Inc. that may be proprietary or sensitive financial information and would also likely require the testimony of a representative of non-party Equicopy, Inc.

Additionally, if Plaintiff were to introduce evidence relating to Equicopy, Inc. ostensibly "poaching clients," Defendants would be placed in the unfair position of proving a negative—i.e., proving that Equicopy, Inc. did not "poach" any clients. This is especially unfair to Defendants in light of the fact that Plaintiff has not once identified a single supposed "client" that Equicopy, Inc. supposedly "poached."

Any evidence relating to Equicopy, Inc., therefore, should be excluded—even if it were relevant—under Federal Rule of Evidence 403 because such evidence has minimal (if any) probative value that is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

**III.    The Court should exclude evidence relating to any alleged "client confusion" and "damages" that Plaintiff did not timely produced in discovery and Bates Stamp.**

Plaintiff has made discovery extraordinarily difficult. Plaintiff has required the Court to conduct numerous discovery hearings and enter several Orders to compel Plaintiff to comply with its discovery obligations.

Two important discovery requests that Plaintiff refused to respond to until the Court (more than once) compelled a response are the following:

1)    Produce "all documents and/or communications you contend support your allegations that your clients have been confused as a result of [Defendants'] use of the Mark and/or Trademark"; and

2)    Produce and identify "all documents … that you contend support the amount of damages and calculation" for "each category of damages you are seeking against each Defendant."

**A.    Evidence of Customer Confusion.**

As to the first request (i.e., relating to customer confusion), Defendants served this request as part of their First Request for Production of Documents on November 4, 2020. Plaintiff required more than one hearing and more than one Court Order to finally respond to this request.

On January 19, 2021, the Court entered an Order (DE 46) compelling Plaintiff to "fully respond without objection and produce all documents responsive to Defendants' Request for Production of Documents," which included the request to produce all documents relating to customer confusion. *See* Court Order (DE 46) at p. 1.

After being compelled to do so, Plaintiff finally responded to the above discovery request on January 22, 2021 (DE 47). However, in defiance of the Court' Order, Plaintiff raised numerous meritless objections contending he was doing so "without raising objection(s)." This required yet another hearing and another Court Order (DE 54) striking all objections set forth in Plaintiff's responses to Defendants' First Request for Production.

6

In a striking display of defiance, Plaintiff (through its representative, Noel Mijares) then committed perjury before the Court by attesting on October 1, 2021—after "having taken an oath" and "declar[ing] under penalty of perjury that these statements are true and correct"—that "***Defendants did not ask about instances of customer confusion***" and "***Defendants' discovery did not ask us to disclose instances of confusion***." *See* Affidavit of Noel Mijares (DE 182-1) at p. 2 (emphasis added). This statement is, of course, demonstrably false and contradicts the many hearings and Orders compelling Plaintiff to produce such documentation.

Plaintiff then used this demonstrably and knowingly false statement to justify raising—for the first time in October 2021, more than three months after the close of discovery and almost one year after Defendants requested the documents on November 4, 2020—instances of "customer confusion." In its perjurious affidavit, Plaintiff claims to have in its possession numerous documents showing instances of "customer confusion" (documents that would have been responsive to Defendants' discovery request of November 2020) but did not produce any such documents.

Even if Plaintiff now produces such documents (assuming they exist), Defendants would be severely prejudiced because they would be left without the opportunity to ask Plaintiff about such documents at a deposition. Defendants would also be left without the opportunity to gather evidence from the non-party "customers" that Plaintiff claims were "confused."

It is clear that Plaintiff intends to sandbag Defendants at trial with never-before-produced documents and other "evidence" relating to customer confusion—even though Plaintiff was ***more than once*** compelled by the Court to produce all such documentation to Defendants.

Such manifestly unfair litigation tactics are expressly prohibited by the Rules and by the Court's Orders that compelled Plaintiff to produce those documents many months ago. Rule 26(e)

required Plaintiff to supplement timely its discovery responses. Fed. R. Civ. P. 26(e) ("A party …
who has responded to an interrogatory, request for production, or request for admission—must
supplement or correct its … response … in a timely manner if the party learns that in some material
respect the disclosure or response is incomplete or incorrect …."); *see also DAG Enters v. Exxon
Mobil Corp.*, 226 F.R.D. 95, 110 (DDC 2005) (stating that Rule 26(e) does not grant litigants the
"right to produce information in a belated fashion").

Under binding case law, "[a] party who 'fails to provide information ... as required by
Rule 26(a) ... ***is not allowed to use that information or witness to supply evidence ... at a trial***,
unless the failure was substantially justified or is harmless.'" *Romero v. Drummond Co., Inc.*, 552
F.3d 1303, 1323 (11th Cir. 2008) (emphasis added).

Plaintiff, therefore, should not be allowed to present any evidence at trial relating to
"customer confusion" that Plaintiff has not already timely produced in discovery and properly
Bates Stamped.

### B.     Evidence of Damages.

On March 24, 2021, Defendants served their Second Set of Interrogatories and Third
Request for Production on Plaintiff. Defendants' Interrogatory No. 3 asked Plaintiff to state the
following: "For each category of damages you are seeking against each Defendant in this case,
state the amount of damages, state how you calculated the damages, and ***identify all documents***
and witnesses ***that you contend support the amount of damages and calculation***." Defendants'
Third Set of Requests for Production then requested Plaintiff to produce "[a]ll documents you
identified in your answers to … Second Set of Interrogatories."

Once again, Plaintiff required a hearing and Court Order to respond. On May 25, 2021, the
Court entered an Order (DE 111) compelling Plaintiff to "[s]erve an amended sworn answer to
Interrogatory No. 3 of Defendants' Second Set of Interrogatories that: … ***identifies by bates***

_**number any documents in Plaintiff's production that support Plaintiff's damages claim**_." Court Order (DE 111) at pp. 1–2 (emphasis added).

On May 26, 2021, Plaintiff served its amended answer to Interrogatory No. 3 of Defendants' Second Set of Interrogatories. In its amended response, Plaintiff identified 62 pages of documents—i.e., "Verified Calculated Damages – Bates Stamped 0001–0062"). _See_ Plaintiff's Amended Answer (Exhibit "1" hereto) at pp. 2–3.

In light of Plaintiff's litigation tactics to date, Defendants believe that Plaintiff will attempt to introduce evidence at trial to support its damages above and beyond the 62 pages Plaintiff identified in its amended answer.

For the same reasons explained above, Plaintiff should not be allowed to unfairly sandbag Defendants at trial with never-before-produced "damages" documents. Plaintiff has had opportunity after opportunity to produce all documents supporting its claim for "damages" and has chosen to identify only 62 Bates Stamped pages.

The Court, therefore, should preclude Plaintiff's from attempting to introduce documentary evidence relating to "damages" other than the documents Plaintiff produced and identified— i.e., Bates Stamped 0001–0062.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice

of Electronic Filing generated by CM/ECF, on October 6, 2021, on all counsel or parties of record

on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620

| SERVICE LIST |  |
| :---: | :---: |
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* |  |
| **Case No. 20-CIV-23276-DPG** |  |
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* |  |