UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-23276-CIV-DPG

UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**PLAINTIFF'S VERIFIED REPLY TO DEFENDANT'S MOTION TO STRIKE RECONSIDERATION [DE 173]; (2) DEFENDANTS' RESPONSE IN OPPOSITION OF EXTENSION OF TIME/SCHEDULING [DE 176]; AND (3) DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO AMEND, AND IN THE ALTERNATIVE, RECONSIDERATION ON ORDER DENYING LEAVE TO AMEND COMPLAINT [DE 175]**

Plaintiff, Unisource Discovery, Inc. by and through its undersigned attorney, files its Reply to Defendants Motion to Strike Reconsideration [DE 173] and Defendants Response in Opposition of Extension of Time/Scheduling [DE 176] and; (3) Defendants Opposition to Plaintiff's Renewed Motion for Leave to Amend, and in the Alternative, Reconsideration on Order Denying Leave to Amend Complaint [DE 175], pursuant to Federal Rules of Procedure, and states, as follows:

**I.      PRELIMINARY STATEMENT**

The thrust of Plaintiff's argument to modify the JSO is that newly found "evidence" of customer conversion was recently realized proximate to the expiration of the critical deadlines under the Joint Scheduling Order [DE 33] ("JSO") that was not foreseeable and merits a modification. The Plaintiff is not manufacturing new legal theories that it is relying upon. *Mays v. U.S.P.S.*, 122 F.3d 43, 46 (11th Cir. 1997).

The record reflects that Plaintiff first learned of the instances of customer conversion proximate to when the discovery deadlines under the JSO [DE 33] were expiring, but it did not receive *evidence* until after

1

the deadline passed. As such, the Plaintiff shows that the JSO cannot " … be met despite the diligence of the party seeking the extension." *Id*. at *Sosa*

This is the Plaintiff's first request for a modification of the JSO.

When the Court declined Plaintiff's Motion to Amend Plaintiff's Complaint on August 23, 2021 [DE 161], the Plaintiff has been placed in the difficult position to strongly contemplate filing another complaint against the Defendants in the Southern District Court based upon the very same instances of customer conversion, the same substantial and ongoing customer confusion, and the same loss in revenue -- all directly arising from the same nucleus of operative facts as the instant case.

After considering Plaintiff's argument set forth-below and addressing Defendant's mischaracterizations and falsities in their Reponses [DE, 173, 175, 176], in light of the applicable legal standards, Plaintiff believes this Court will conclude that Plaintiff's Motion for Reconsideration [DE 171] should be granted. Indeed, Plaintiff presents an intervening change of facts, and respectfully explains how the Court committed an error of reasoning in its Order Denying Plaintiff's Motion to Amend Plaintiff's Complaint [DE 161]

In addition, the Plaintiff will demonstrate that it exercised diligence in obtaining the new information as it disclosed exactly when it discovered this new evidence of customer theft and conversion and intentional confusion. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)) ("If the party seeking relief "was not diligent, the [good cause] inquiry should end.")

## II.    LEGAL STANDARDS

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992); *Reyher v. The Equitable Life Assurance Soc'y of the U.S.*, 900 F. Supp. 428, 430-31 (M.D. Fla. 1995) (accord) (denying motion for reconsideration of order denying motion to amend because movant failed to assert a proper ground). "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine*, 808 F.

Supp. at 1563.

> [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court . . . already thought through-rightly or wrongly. . . . The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Id.* (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

A motion for reconsideration should be denied where the movant relies on new legal theories or previously undisclosed facts or evidence. *Mays v. U.S.P.S.*, 122 F.3d 43, 46 (11th Cir. 1997).

Federal Rule of Civil Procedure 16(b)(1) requires a district court to enter a scheduling order that limits the time to amend pleadings. The scheduling order may only be amended for good cause and with the judge's consent. *FED. R. CIV. P.* 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint, Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting 1983 Advisory Comm. Notes, subdivision (b)); *see also Equity Lifestyle Props., Inc. v. Florida Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) ("In deciding whether to grant a party leave to amend a pleading, a district court may consider several factors, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment'"); *Foman v. Davis*, 371 U.S. 178, 182(1962).

Therefore, in order to prevail on his Motion for Relief From Order, Plaintiff must demonstrate that he is entitled to reconsideration under the first standard *and* that his request for leave to amend is appropriate under the second. *Cf. Reyher*, 900 F. Supp. at 430.

### III. ANALSIS

Besides addressing Defendants' Motions, deciding whether Plaintiff is entitled to amend the JSO and

extend the deadlines raises two overarching issues. The first is whether "good cause" exists pursuant to Rule 16(b) only days after the deadline set forth in the Scheduling Order [DE 33] had expired. The second is whether there is a "substantial reason" to deny extending the deadlines under the JSO [DE 33], such as if an amendment to Plaintiff's complaint [DE 114] would be futile or would cause undue prejudice to Defendant.

### A.   Good cause for seeking leave after the Scheduling Order deadline

First, unlike Defendants astounding arguments through mischaracterizing deposition testimony of Plaintiff's corporate representative, the record does not establish that prior to JSO deadlines the Plaintiff had been dilatory or had failed to actively pursue discovery from Defendants. In fact, Plaintiff served Defendants with substantial discovery and this case has been very active.

As mentioned, the record reflects that Plaintiff first learned of the instances of customer conversion very proximate to when the discovery deadlines under the JSO were expiring, but it did not receive *evidence* until after the deadline passed.

Second, Plaintiff filed its Motion to Modify the JSO [DE 172] within days of receiving the facts necessary to warrant seeking modification of the JSO. Under these circumstances alone, Plaintiff shows good cause is satisfied. *See, e.g., Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.,* No. 19-CV-61365, 2020 WL 639400, at *4 (S.D. Fla. Feb. 11, 2020); *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III,* No. 8:13-CV-128-T-24-TGW, 2014 WL 10915507, at *3 (M.D. Fla. June 16, 2014). However, Plaintiff will further address Defendants false arguments and further show this Honorable Court that reconsideration should be granted.

### B.   Defendants Motion to Strike Reconsideration [DE 173] Lacks Basis; Defendants Have Substantially Mischaracterized The Deposition Testimony of Plaintiff's Corporate Representative.

As an initial matter, procedurally this motion must be disregarded in its entirety because "[M]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." *Lowery v. Hoffman,* 188 F.R.D. 651, 653 (M.D. Ala. 1999)) (citing 2 James Wm. Moore, et al., Moore's Federal Practice § 12.37[2] (3d ed. 1999)); *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.,* 904 F. Supp. 500, 504 (E.D. Va.

1995) (same).

Nonetheless, the Plaintiff will address Defendant's argument out of caution. The Defendants Motion to Strike Reconsideration [DE 173] entirely relies upon the deposition testimony of Plaintiff's corporate representative, Noel Mijares, as its sole basis to strike reconsideration. However, as shown below – and easily visible – the Plaintiff's corporate representative did not provide any testimony that it knew and had evidence of actual customer theft/conversion at any time prior to when it sought to extend the deadlines under the JSO – employing the required due diligence. The testimony does state that Plaintiff only knew of Equicopy as early as year 2017 and it took some precautions to prevent possible customer "poaching" , but that is the full extent of Plaintiff's knowledge of Equicopy California.

Defendants make clear their legal basis in the second paragraph, *to wit*,

> "Plaintiff's Motion (DE 171) is based upon one falsehood: that Plaintiff "did not know and even with the utmost diligence -- we could not have learned -- of Equicopy [Inc.] as a threat and part of the scheme to poach clients ... until the Defendants 'responded' to the discovery [after the January 15, 2021 deadline to amend the Complaint]." *See* Aff. of Noel Mijares (DE 171-1) at ¶ 8; *see also* Motion (DE 171) at p. 8 ("[D]uring the course of discovery it was learned that Equicopy [Inc.] was being exploited to convert Plaintiff's clients.")."

The Defendants continue with this false statement,

> "Despite this clear testimony, Plaintiff now attests—under oath—the exact opposite. Plaintiff now attests that it "did not know and even with the utmost diligence – [ ] could not have learned – of Equicopy [Inc.] as a threat and part of the scheme to poach clients ... until the Defendants 'responded' to the discovery" after January 15, 2021. Affidavit of Noel Mijares (DE 171-1) at ¶ 8. Plaintiff's sham affidavit is a fraud upon the Court."

The Defendants flawed argument (above) of "one falsehood", itself, is tantamount to a "falsehood". Amongst other reasons that will be addressed, the Plaintiff shows just how the Defendants substantially mischaracterize the deposition testimony of Plaintiff Unisource corporate representative, Noel Mijares, to find support and false basis to strike.[1]

In simple fashion, the Plaintiff will accurately show this Court how the Defendants

---

[1] Because the Defendants have mischaracterized the corporate representative's testimony, Plaintiff did not correct the errata sheet for errors in the testimony pursuant to Rule 30(e).

mischaracterize the Plaintiff's corporate representative's deposition testimony through locating the Defendants selected deposition excerpt(s)/testimony directly next to the actual deposition excerpt(s)/testimony.

****

**Defendants Selected Excerpt**:

Q.     So if I understood your testimony, this [Plaintiff organizing Equicopy, LLC] was in response to Mr. Cerasale organizing Equicopy, Inc., in California, correct?

A.     That is correct. That is exactly correct.

**Plaintiff's Actual And Full Testimony**:   Below, the Plaintiff shows that it did not testify that it had "evidence" of intentional client conversion prior to the JSO deadlines but did testify that it knew Equicopy was incorporated in year 2017 and was concerned about customer theft. Defendants make a rather generous "leap" that somehow knowing that Equicopy was incorporated in year 2017 somehow means that Plaintiff also knew its customers were also being converted as far back as year 2017.  That "leap" is simply not true and noticeably not the testimony Plaintiff provided.

Q     So if I understood your testimony, this was in response to Mr. Cerasale organizing Equicopy, Inc., in California, correct?

A     That is correct.   That is exactly correct.

Q.  So as of August 1st, 2017, you and Unisource Discovery, Inc. knew that Mr. Cerasale had organized Equicopy [Inc.] in California, correct?

A.     That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually.

***

**Defendants Selected Excerpt**:

Q.     So as of August 1st, 2017, you and Unisource Discovery, Inc. knew that Mr. Cerasale had organized Equicopy [Inc.] in California, correct?

A.     That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually.

**Plaintiff's Actual And Full Testimony**: Below, the Plaintiff's full testimony shows it was suspicious of the customer conversion when Defendants began using Defendant Equicopy Inc. (California). However, the deponent clearly did not testify that it had actual knowledge of specific instances of customer conversion, nor did Plaintiff have any evidence that Mr. Carasele was currently using Equicopy Inc. to convert Plaintiff's customers. This a material and substantial difference and distinction that Defendants has intentionally blurred.

Q     So as of August 1, 2017, you and Unisource Discovery, Inc. knew that Mr. Cerasale had organized Equicopy in California, correct?

A     That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually. They haven't been changed – were aggressive and with ill intent, and we took steps to ensure that we will not be caught off guard by any illegal acts. And by the way, he has continued to do them, to this day, poaching clients from Unisource Discovery, Inc., ***using Unisource Discovery, LLC*** [the Defendant] in taking Florida clients, which we have provided evidence and proof thereof. (emphasis added)

\*\*\*
**Defendants Excerpt:**

Q.     So you organized Equicopy, LLC [on August 1, 2017] to prevent the poaching of clients?

A.     Yes, and we did that as a protective measure for our clients

**Plaintiff's Actual And Full Testimony**: Here, the Defendants have taken liberty to misconstrue the corporate representative's testimony. When asking "So you organized Equicopy, LLC to prevent the poaching of clients?" and the response was "yes, and …", noticeably the Plaintiff did not testify that at the time of incorporation it knew of actual instances of customer "poaching". In fact, Plaintiff does not provide such testimony anywhere in the deposition. This is a pure assumption and a change to the testimony. The Plaintiff's corporate representative merely testified that Plaintiff incorporated Equicopy LLC in Florida in an attempt to prevent Defendants from initiating "poaching" -- however, Plaintiff did not acquire any evidence of customer "poaching" nor testified that it had evidence of actual instances of client conversion until July 14, 2021. A markedly material and substantial misinterpretation by Defendants.

Q     So you organized Equicopy, LLC to prevent the poaching of clients?

7

A.      Yes, and we did that as a protective measure for our clients -- for this shareholder not to come after our business, but he still did.   So not only did he violate it

Q.      What was the –

A      Not only did he violate it, the Closed Shareholder Agreement, by opening a company that competes against us, that's a direct violation, but he then, you know, went and started using our own trademark against us, in fooling our clients into believing they're giving us the orders, when, in fact, they're not; they're giving them to Texas and California.

        ***

**Defendants Excerpt:**

Q.      Well, when you mentioned that you organized Equicopy, LLC [on August 1, 2017] to protect Unisource Discovery, Inc. What sort of protection were you envisioning?

A.      What is currently happening to the company today, by the actions of Steven Cerasale, which is poaching of our clients.

        **Plaintiff's Actual And Full Testimony**:   The below full testimony clearly shows, as the corporate representative testified,   that "What is *currently* happening to the company *today*, by the actions of Steven Cerasale, which is poaching of our clients." (emphasis added) In other words, Plaintiff's corporate representative testified that "currently" and "today" there is customer "poaching" and clearly did not testify it knew of "poaching" anytime earlier than "currently" and "today."

Q.      Well, when you mentioned that you organized Equicopy, LLC to protect Unisource Discovery, Inc. What sort of protection were you envisioning?

A      What is currently happening to the company today, by the actions of Steven Cerasale, which is poaching of our clients.

Q      So he –

A      He has been poaching clients, but now he's just doing it, you know, to harm Unisource Discovery, LLC, and using our registered trademark to fool and bamboozle our clients into believing they're giving us the orders, when they're orders are going to Texas and California, and now Florida. So, yeah, that's exactly what we're trying to avoid.   Unfortunately, that's why we're involved in litigation.   That's why we had to do litigation, because your client, Steven Cerasale, has been poaching/stealing our clients.

        ***

**Defendants Excerpt:**

Q.      So that I understand, you organized Equicopy, LLC [on August 1, 2017] to prevent the poaching of clients by Equicopy, Inc. in California, right?

A.      I believe that was one of the purposes, yes.

**Plaintiff's Actual And Full Testimony:** Similar to the above argument, the corporate representative testified that it incorporated Equicopy LLC in Florida "to prevent" poaching of its clients in light of its concerns; however, there is no testimony that Plaintiff had evidence, and at that time knew of actual instances of customer poaching.

Q      So that I understand, you organized Equicopy, LLC to prevent the poaching of clients by Equicopy, Inc. in California, right?

A      I believe that was one of the purposes, yes.

Q      And the reason why to use a name that's similar -- Equicopy, LLC was similar to Equicopy, Inc. -- are you –

A      No –

Q.      Are you saying that's similar so that you can prevent Equicopy, Inc. taking customers, and, therefore, you can use Equicopy, LLC to redirect those customers, correct?

A      No, absolutely not.   A hundred percent, the only reason was to prevent Steven Cerasale from coming to Florida and competing against the business –

        \*\*\*

In conclusion, and candidly, the Plaintiff does not understand just how the Defendants are arguing that the above selected deposition testimony experts proves that Plaintiff knew and had evidence of customer "poaching" any time prior to when it sought to extend the deadlines under the JSO. In fact, no reader will locate any such testimony throughout the entire deposition transcript because the corporate representative provided no such testimony.

Defendants' sizable mischaracterization of the deposition testimony creates a pure fabrication with the obvious goal of manufacturing support that otherwise does not exist for Defendants' Motion to Strike.

        **C.      Defendants Opposition to Plaintiff's Renewed Motion for Leave to Amend, and in the Alternative, Reconsideration on Order Denying Leave to Amend Complaint [DE   175] Does Not Prevent Reconsideration; Defendants Continue To Improperly Mischaracterize The Deposition Testimony        of        Plaintiff's        Corporate        Representative.**

        It is certainly no secret that a critical element to having this Court grant reconsideration for

9

modification of the JSO (and/or extension of the deadlines) requires a showing of due diligence. Understanding due diligence is arguably of the most critical elements, the Defendants have effectively dedicated this entire motion [DE 175] to convince this Court Plaintiff completely failed in this respect. Defendants' argument is simply unsupported by the record and untrue factually.

In this motion [DE 175], the Defendants central argument is rolled into one-sentence, "Plaintiff's contention that it acted "diligently" is demonstrably false." Defendants then argue,

> "Plaintiff's Renewed Motion (DE 171) is entirely based upon one falsehood: that Plaintiff "did not know and even with the utmost diligence – [ ] could not have learned -- of Equicopy [Inc.] as a threat and part of the scheme to poach clients ... until the Defendants 'responded' to the discovery" after the January 15, 2021 deadline to amend the Complaint." *See* Aff. of Noel Mijares (DE 171-1) at ¶ 8; *see also* Renewed Motion (DE 171) at p. 8 ("[D]uring the course of discovery it was learned that Equicopy [Inc.] was being exploited to convert Plaintiff's clients.")."

However, "[t]he scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Friedman v. Coffman*, No. 10-60989, 2012 WL 668021, at *1 (S.D. Fla. Feb. 29, 2012). A scheduling order may be modified "only for good cause and with the judge's consent." *Fed. R. Civ. P.* 16(b)(4); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418–19 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Friedman*, 2012 WL 668021, at 1; *see also Fed. R. Civ. P.* 16 advisory committee's note.

Here, the Plaintiffs exercised diligence in pursuing its claims and in complying with the scheduling order. The Plaintiff has demonstrated, below, the necessary good cause.

The Plaintiff's due diligence is described as follows. During this self-audit on Tuesday, May 18, 2021, Plaintiff's Quality Assurance Department Manager, Rosalva Alvarez, found in a data storage destruction folder, a record response that had been received on July 14, 2020 and flagged it because the file met some of the criteria that Plaintiff had been searching under the audit.

The document was a response from a records custodian, which had been listed and faxed to Plaintiff's Florida 866-580-9070 number, and it was addressed to *Equicopy, Inc. in California*. The obtained

document/evidence includes workers' compensation records and provided Plaintiff with an Equicopy Order number which was included in the notice and certificate.

This had immediately triggered substantial concern because, for the first time, Plaintiff obtained documentary evidence that Equicopy was in-fact using the identical Order numbers as Defendant Unisource Discovery, LLC.

Due to Plaintiff's due diligence, it immediately notified Plaintiff's Legal Department of this new evidence (the Equicopy documents) that had been initially set-aside for data destruction.  However, because of Plaintiff's internal audit, this new documentary evidence connected both Defendant Unisource Discovery, LLC and Equicopy under the same client Order number system which was being used by Mr. Cerasale to further convert customers.

Consequently, the Plaintiff immediately proceeded to amend its Complaint [DE 114] on May 28, 2021, and filed its motion to modify the JSO and extend the deadlines [DE 172].

First, the record does not establish that prior to July 05, 2021 (the Deadline for fact discovery under the JSO), Plaintiff had been dilatory or had failed to actively pursue discovery from Defendants. If anything, the record supports the opposite inference.

Second, the record reflects that Plaintiff inquired about Equicopy and customer conversion before the amendment deadline, but it did not receive evidence at that time.

Third, Plaintiff filed its motion to extend the deadline and motion to modify the JSO [DE 172] within days of receiving the facts necessary to warrant seeking leave to amend and extension of the deadlines under the JSO.

These details circumstance show that good cause was/is satisfied. *Wopshall v. Travelers Home & Marine Ins. Co.*, No. 18-14424-CIV, 2019 WL 5697986, at *2 (S.D. Fla. Nov. 4, 2019).

Defendants continue their unsupported argument when stating, "Plaintiff's Renewed Motion (DE 171) does not even attempt to identify a single "discovery response" that ostensibly caused Plaintiff to "learn[] of Equicopy [Inc.] as a threat and part of the scheme to poach clients."

That is true. However, it is noticeable that Defendants did not cite any case, statute, or Rule that directs the Court to "discovery responses" as only method to learn of such these facts. Also, the Defendants discovery noticeably does not ask that question(s), or make any request(s), related to Equicopy. And more noticeably, the cited deposition transcript of the Plaintiff's corporate representative evidences the Defendants avoided all questions specifically directed towards instances of customer "poaching"/conversion with specific dates, evidence and the like. Plaintiff's corporate representative simply answered all questions proffered unless objected-to (which there are no objections to this line of questioning).

Uncovering the Defendants true motivation, Defendants clearly asked selected and targeted deposition and discovery questions/requests with the goal of creating a false scenario to argue lack of due diligence. This is simply a pure fiction -- as demonstrated by Plaintiff.

Then, the Defendants assert that "Plaintiff has already testified that it supposedly 'knew' as early as August 1, 2017 that Equicopy, Inc. was allegedly "poaching clients." To provide support to this false argument the Defendants use the following excerpts of Plaintiff's corporate representative's deposition testimony, *to wit*:

> "Q.    So if I understood your testimony, this [Plaintiff organizing Equicopy, LLC] was in response to Mr. Cerasale organizing Equicopy, Inc., in California, correct?
>
> A.    That is correct. That is exactly correct.
>
> Q.    So as of August 1st, 2017, you and Unisource Discovery, Inc. knew that Mr. Cerasale had organized Equicopy [Inc.] in California, correct?
>
> A.    That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually. They haven't been changed -- ... poaching clients from Unisource Discovery, Inc. ...
>
> Q.    So you organized Equicopy, LLC [on August 1, 2017] to prevent the poaching of clients?
>
> A.    Yes, and we did that as a protective measure for our clients ...
>
> Q.    Well, when you mentioned that you organized Equicopy, LLC [on August 1, 2017] to protect Unisource Discovery, Inc. What

12

sort of protection were you envisioning?

This is exceptionally troubling. Here, the Defendants did not simply mischaracterize the deposition testimony --- it doctored and effectively rewrote/tempered with the deposition testimony from the actual testimony in the transcript.

The Defendants argues that Plaintiff's corporate representative provided the following testimony,

"A. That is correct. And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually. They haven't been changed -- ... poaching clients from Unisource Discovery, Inc."

However, the following it the actual unedited and unchanged deposition testimony,

"A. That is correct.  And we also knew, based on Steven Cerasale's behavior at the time and the actions that was taken against the company at the time – and current, actually.  They haven't been changed – *were aggressive and with ill intent, and we took steps to ensure that we will not be caught off guard by any illegal acts. And by the way, he has continued to do them, to this day,* poaching clients from Unisource Discovery, Inc., *using Unisource Discovery, LLC* [the Defendant] in taking Florida clients, which we have provided evidence and proof thereof.' (emphasis added)

When including the omitted portions (references and sentences) from the corporate representative's deposition testimony the entire meaning of the testimony is completely different.  And when the Defendants fraudulently removed the reference to "Unisource Discovery LLC"  (the Defendants) and substituted "Equicopy LLC" in its place, the Defendants literally altered/doctored the Plaintiff's testimony. The corporate representative testified that "Unisource Discovery LLC (the Defendant)" --- and *not* "Equicopy" -- was being used by Mr. Carasele as far back as " ... August 1, 2017 that Equicopy, Inc. was allegedly 'poaching clients ... '".

Defendants act of altering/doctoring the corporate representative's deposition testimony is not simply an act of "mischaracterization" but fraud on the court through omitting/removing words/sentences and substituting other words in its place, coupled with connecting selected unconnected sentences to change its true meaning.  Consequently, Courts may exercise their inherent power to impose sanctions in response to abusive litigation practices. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632, (1962), Such inherent power may be appropriately exercised particularly where a party "commits perjury or ... doctors evidence" that

13

"relates to the pivotal or 'linchpin' issue in the case." *Qantum Commc'ns. Corp. v. Star Broad., Inc.,* 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) (citing *Vargas v. Peltz,* 901 F. Supp. 1572, 1581-82 (S.D. Fla. 1995)).

Defendants bad act also speaks sharply on their willingness to take a rather bold gamble when publishing this fraudulent altercation. If anything, the act alone must cast serious doubt as to the entire varsity behind Defendant's arguments in their responses [DE 173, DE 175, DE 176].

In section II of Defendants' motion [DE 175], the Defendants continue with their effort when asserting "Plaintiff's Motion is frivolous (and should be denied) because none of the proposed claims against Equicopy, Inc. have anything to do with "poaching clients" and "Even if Plaintiff learned that Equicopy, Inc. was supposedly "poaching clients" from Defendants' discovery responses (which is false), the Renewed Motion should still be denied."

Simply put, as with the entire motion [DE 175] the Defendants fail to cite any case-law, opinion(s), etc. that tells this Court what constitutes "frivolous" in the realm of modifying a JSO or extending deadlines or otherwise cite law to support their arguments. Plaintiff anticipated legal claims against Equicopy will not be even remotely close to "frivolous". However, in response to Defendants argument that "none of the proposed claims against Equicopy Inc. have anything to do with 'poaching clients', the Plaintiff only agrees that it needs to modify the JSO to advance its claims against Equicopy – something Plaintiff is asking this Court.

In this context, Defendants cannot make a plausible argument that "none of the proposed claims against Equicopy, Inc. have anything to do with "poaching clients" because Plaintiff has not had the opportunity to draft and advance its proposed claims. For the Defendants to argue that Plaintiff's claims will be frivolous -- when Plaintiff has not had the opportunity to advance its claims against Equicopy -- is nonsensical and conclusory.

In conclusion, the Plaintiff have clearly shown the Court that Defendants have observably doctored the corporate representative's deposition testimony – not simply making a mischaracterization. The Plaintiff is asking this Court to Strike Defendants' Opposition to Plaintiff's Renewed Motion for Leave to Amend [DE

14

175] or otherwise enter a denial.

**D.    Defendants Response in Opposition of Extension of Time/Scheduling [DE 176] on the same Basis Lacks and Should Not Prevent the Extension of Time and Reconsideration**

As with Defendants other responses [DE 173; DE 175], the Defendants continue the same argument that Plaintiff did not use due diligence. Specifically, in Defendants first two paragraphs they argue that "Plaintiff's Motion contends that "Plaintiff believes that good cause has been shown to grant the requested continuance," but Plaintiff's Motion does not present a single basis to show good cause" and "Rather, Plaintiff merely contends that there was some sort of "inability of the parties to complete discovery" that "was not due to any lack of diligence; rather, the parties did not wish to incur the significant costs and fees associated with discovery while the case was not even at issue and the Motions to Dismiss remained pending." See ¶1 and ¶2

Again, the Defendants make numerous conclusory arguments thorough their Response [DE 176] and offers no citations, references to testimony or documents, supporting law, and the like, Throughout the entire Response [DE 176] the Defendants discusses matters that have no evidentiary support and have not been proved to any minimal extent -- pure conjecture.

However, and without restating the same argument, the Plaintiff incorporates section C, above, into this response – that is, section C provides specific details related to Plaintiff's due diligence. It is also noteworthy the nowhere in the deposition transcript, and Defendants' discovery, does the Defendants ask any questions or seek any documents related to "due diligence".

Consequently, the Plaintiff has provided ample support that evidences that it immediately engaged in the legal mandated due diligence. and therefore, satisfied this stringent legal element for this Court to permit modification of the JSO and/or extension of the deadlines.

**IV.    CONCLUSION**

In Defendants' Opposition to Plaintiff's Renewed Motion for Leave to Amend, and in the Alternative, Reconsideration on Order Denying Leave to Amend Complaint [DE 175] they have altered and doctored the

15

Plaintiff's corporate representative's deposition testimony to the extent it appears to be fraud on the Court. Otherwise, and in the same thread, the Defendants materially mischaracterized the deposition testimony solely to provide support to their position that otherwise lacks support [in reality].

The Plaintiff has satisfied the element of "due diligence" and shows that the JSO cannot " … be met despite the diligence of the party seeking the extension." *Id.* at *Sosa*

In conclusion, the Defendants' responses [DE 173, 175, 176] should not prevent this Court from granting reconsideration [171], modifying the joint scheduling order [DE 172], and allowing Plaintiff to use its new evidence to advance its new claim against Equicopy LLC for client conversion.

**WHEREFORE**, the Plaintiff respectfully request that this Court to;

A.      Grant Plaintiff's Motion for Reconsideration [DE 171];

B.       Grant Plaintiff's motion to extend the deadlines under joint scheduling Order [DE 172];

C.      Entirely disregard Defendants Opposition to Plaintiff's Renewed Motion for Leave to Amend, and in the Alternative, Reconsideration on Order Denying Leave to Amend Complaint [DE 175];

D.      Award Plaintiff costs and reasonable attorney's fees; and

C.      Any other relief this Court believes is just and fair.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., <u>jzorilla@fowler-white.com</u>, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven A. Cerasale, on October 8, 2021.

Respectfully submitted,
/s/ *Diego David Valdes*

Diego David Valdes,
Esq. Florida Bar No.
251010 Email:
ddvlaw@gmail.com
ddv@ddvlawgroup.com

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite
403B Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

Counsel for Plaintiff: Unisource Discovery, Inc.

17

## VERIFICATION

County of Miami-Dade      )
State of Florida             )

**BEFORE ME**, the undersigned authority, personally appeared Noel Mijares, who is personally known to me, after being first duly sworn, deposes and states "*Under penalties of perjury, I declare that I have read the foregoing and the facts stated in it are true and correct.*"

**SWORN TO AND SUBSCRIBED** before me on this 8th day of October 2021.

Noel Mijares

Notary Public, _____

My Commission Expires:

(SEAL)

RUDINA DAKA
Notary Public-State of Florida
Commission # GG 322224
My Commission Expires
April 17, 2022

18