**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.
     Plaintiff,
v.

UNISOURCE   DISCOVERY,   LLC,   and
STEVEN A. CERASALE, individually,
     Defendants.

---

**RESPONSE TO SECOND MOTION FOR SANCTIONS AND ATTORNEY'S FEES**
**PURSUANT TO FLORIDA STATUTE § 57.105**

Defendants hereby file their response to Plaintiff's Second Motion for Sanctions and Attorney's Fees Pursuant to Florida Statute § 57.105 and respectfully request that sanctions be imposed (including dismissal of the Complaint and attorney's fees) against Plaintiff and its counsel for filing yet another meritless Motion for Sanctions.

**I.     The Court has already ruled: Plaintiff's argument that the Counterclaim is "inadequately pled" is not a proper basis for sanctions.**

To begin, Plaintiff has once again called upon this Court to issue sanctions, in part, for the same improper reason that Plaintiff previously sought sanctions: "Defendants' [Counterclaim] does not contain the required particularity to satisfy the stringent burden under Rule 9." Second Motion for Sanctions (DE 183) at p. 6. Plaintiff goes on to cite the seminal pleading case *Ashcroft v. Iqbal* to argue that "Defendant's allegations amount to no more than 'an unadorned, the-defendant-unlawfully-harmed me accusation.'" *Id.*

The Court has already heard argument and ruled: "Plaintiff argues that it is entitled to sanctions against Defendants pursuant to Fla. Stat. § 57.105 because Defendants' Cancellation of Trademark Counterclaim is … inadequately pled. … [T]he purported pleading deficiency, is 'not sufficient, in and of itself, to support a finding that [Defendants'] claim [is] so lacking in merit as

to justify the invocation of [Fla. Stat. §] 57.105.' … Therefore, there is no basis for imposing sanctions on Defendants." Order (DE 167) at p. 4.

While the Court's Order (DE 167) was clear, Plaintiff nonetheless defiantly again seeks sanctions peddling the same baseless argument—i.e., that "Defendants' [Counterclaim] does not contain the required particularity to satisfy … Rule 9." Second Motion for Sanctions (DE 183) at p. 6. For the same reasons the Court already heard and ruled upon, this argument is baseless.

Although the Court declined to sanction Plaintiff for filing its first baseless Motion for Sanctions, Defendants respectfully submit that Plaintiff has disregarded and will continue to disregard this Court's rulings unless sanctions are imposed.

## II.    The Court has already ruled (more than once): Plaintiff's argument that the Counterclaim is time-barred lacks merit and is not a basis for sanctions.

For the third time, Plaintiff is arguing that Defendants' Counterclaim is time-barred; and for the second time, Plaintiff is seeking sanctions on this already-rejected and baseless argument.

This time, Plaintiff argues that "13-years after registration of the Trademark, the Defendants never objected, formally and/or informally, to Plaintiff's use and registration with the USPTO of the Trademark." Second Motion for Sanctions (DE 183) at p. 5.

This is the identical argument Plaintiff made to oppose Defendants' Motion for Leave to File the Counterclaim: "At no time before, during or after Plaintiff registering its Trademark, and for the next 12 consecutive years, Defendants did not notice the USPTO or Plaintiffs, of any disputes or objections, but Defendants actually raised these objections after Plaintiffs filed this instant Complaint, 12 years later." Opposition (DE 86) at p. 5.

The Court unequivocally rejected that argument: "the limitations period invoked by Plaintiff does not apply to Defendants' proposed amendment because it is based on Plaintiff's alleged fraud and such claims can be brought 'at any time.'" Order (DE 118) at p. 6.

2

Despite the Court's ruling, Plaintiff proceeded with its First Motion for Sanctions (DE 115), making the same argument: "Defendants do not state any reason(s) for the 12-year delay in seeking to cancel Plaintiff's trademark. … Defendants delayed their frivolous and non-sensical claim for cancellation as long as twelve (12) years." First Motion for Sanctions (DE 115) at pp. 4, 10.

For a second time, the Court rejected that argument: "[a]s to Plaintiff's statute of limitations argument, the undersigned already found it to be lacking in merit because Defendants' Cancellation of Trademark Counterclaim is 'based on Plaintiff's alleged fraud and such claims can be brought "at any time."'" Order (DE 167) at p. 4.

Now, Plaintiff is yet again seeking sanctions based upon the identical baseless argument. This argument is baseless for the same reasons that have already been presented to, argued to, and ruled upon by the Court more than once. Whether Defendants "delayed" is not relevant[1] because "the interest vindicated by Section 14 [for fraud-based cancellation of trademarks] is not just the injury to the challenging party, but the integrity of the register. … [T]he interest at issue is the integrity of the federal register." *Marshak v. Treadwell*, 240 F.3d 184, 194 (3d Cir. 2001). "[S]uch claims can be brought 'at any time.'" Order (DE 167) at p. 4.

Again, Defendants respectfully submit that Plaintiff has disregarded and will continue to disregard this Court's rulings unless sanctions are imposed.

---

[1] To be clear, Defendants have not "delayed." As they attested to more than once, Defendants first learned during discovery that Plaintiff lied to the USPTO, and Defendants promptly moved for leave to file their Counterclaim on that basis. These facts, however, are not relevant to Plaintiff's Second Motion for Sanctions.

**III.**    **Defendants' Motion for Summary Judgment (DE 151) is well supported and based upon clear evidence confirming that Plaintiff knew, at the time of filing its trademark application, that its representations to the USPTO were false.**

Plaintiff's Second Motion for Sanctions next argues that "Defendants' Motion for Summary Judgment [DE 151] did not satisfy the burden of proving their cancelation of trademark claim by 'clear and convincing' evidence." Second Motion for Sanctions (DE 183) at p. 4. To somehow support this contention, Plaintiff argues that "Defendants **_allegations_** in their entirety are anything but 'clear' and anything but 'convincing.'" *Id.* at p. 5 (emphasis added).

As explained above, the Court has already ruled that the sufficiency of Defendants' allegations are not a proper basis for sanctions. *See* Order (DE 167) at p. 4. Additionally, Defendants' allegations are certainly sufficiently clear: Defendants' Counterclaim specifically **_quotes_** word-for-word Plaintiff's three material misrepresentations, identifies to whom Plaintiff made these misrepresentations (i.e., the USPTO), and states the exact date when Plaintiff made those misrepresentations (i.e., the date that Plaintiff filed its trademark application). *See* Counterclaim (DE 166) at pp. 16–17.

Next, Plaintiff claims that "Defendants cite and 'spin' the deposition testimony of Noel Mijares [as the corporate representative of Plaintiff]." Second Motion for Sanctions (DE 183) at p. 5. Of course, Plaintiff does not even attempt to explain how Defendants' direct quotations of Plaintiff's deposition transcript in any way was "spun," nor does Plaintiff even attempt to explain how any such "spinning" would be a proper basis for sanctions.

To be clear, Defendants' Motion for Summary Judgment (DE 151) is based upon the following three material misrepresentations that Plaintiff made to the USPTO:

1)      Plaintiff represented to the USPTO that Plaintiff first used the subject mark "as early as March 1, 2001."

Plaintiff admitted that this was not true: "[a]dmitted that [Plaintiff] did not use the Mark until … June 15, 2006." Plaintiff's Responses to Request for Admissions (DE 150-5) at ¶¶ 1–2; *see also* Plaintiff's Dep. (DE 150-10) at 105:21–25 ("June 15, 2006, well, that's when we registered the company legally as a Florida corporation. That's when the name was given to the company; that's when the logo was given to the company ….").

2)      Plaintiff represented to the USPTO that "no other person, firm, corporation, or association has the right to use the mark in commerce."

Plaintiff also admitted that this was not true. Specifically, Plaintiff admitted at its deposition that "Unisource Discovery, LLC had the right to use the mark in its business from 2006 to 2009." Plaintiff Dep. (DE 150-10) at 213:13–24. Tellingly, Plaintiff's Opposition to Defendants' Motion for Summary Judgment (DE 174) does not even attempt to (and cannot in good faith) explain away this clear misrepresentation.

3)      Plaintiff represented to the USPTO that Plaintiff was the "owner" of the mark.

Unlike the two above misrepresentations, Plaintiff did not explicitly admit that this representation was false. However, Plaintiff did testify at its deposition that its ownership interest in the subject mark (as of the date of the trademark application) was set forth in the 2006 Operating Agreement. *See* Plaintiff Dep. (DE 150-10) at 31:21–24. Plaintiff went on to testify that the 2006 Operating Agreement allowed "everybody [to] walk away" and leave Defendants (not Plaintiff) with the exclusive right to the subject mark. *See* Plaintiff's Dep. (DE 150-10) at 74:18–75:1. A review of

5

the 2006 Operating Agreement confirms that Plaintiff was not provided an ownership interest in the subject mark. Plaintiff, therefore, could not have possibly held a good faith belief that it owned the subject mark when it filed its trademark application in October 2008.

Applicable case law has found sufficient "scienter" to grant summary judgment for cancellation of a trademark on the basis of fraud when the "applicant actually ***knew*** that material statements in the trademark application were false, and … not [just] … that the applicant ***should have known*** about such falsity." *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016).

The above evidence (which is more fully supported and argued in Defendants' Motion for Summary Judgment) makes clear: Plaintiff knew that its representations to the USPTO were false.

**IV.    Plaintiff's Second Motion for Sanctions then argues that "Defendants [ ] make a very unclear argument that the 2006 Shareholder Operating Agreement is the controlling agreement for the Court to evaluate." Second Motion for Sanctions (DE 183) at p. 5. This argument mischaracterizes Defendants' Motion for Summary Judgment.**

To be clear, Defendants' Counterclaim is not a claim for breach of the Operating Agreement or breach of any other contract. There is, therefore, no "controlling agreement for the Court to evaluate." To the contrary, Defendants' Counterclaim and Motion for Summary Judgment are about Plaintiff's three material misrepresentations to the USPTO in October 2008. Those misrepresentations are set forth in detail in Defendants' Motion for Summary Judgment (DE 150) and are summarized above.

One such misrepresentations was Plaintiff's representation to the USPTO that Plaintiff was the "owner" of the subject mark in October 2008. As explained above, Plaintiff admitted at its deposition that whatever "ownership" interest it had in the subject mark from 2006 to 2010 was fully set forth in the 2006 Operating Agreement and no other agreement. In turn, that 2006 Operating Agreement did not provide that Plaintiff had any ownership interest in the subject mark.

6

This is why the 2006 Operating Agreement is relevant to the analysis. The 2006 Operating Agreement is the only document that Plaintiff pointed to at his deposition that ostensibly confirms Plaintiff's "ownership" of the mark as of October 2008. While Plaintiff may now contend that "in year 2010" (two years *after* it submitted the trademark application) "the parties entered into the Close Corporation Shareholder Agreement that … makes the 2006 Shareholder Operating Agreement unenforceable," that contention is irrelevant to the analysis. Again, Defendants' Counterclaim and Motion for Summary Judgment do not argue a breach of the 2006 Operating Agreement.

As explained above, the relevant analysis is whether Plaintiff misrepresented facts to the USPTO in October 2008 and whether Plaintiff knew that those representations were false. Plaintiff's deposition testimony and the 2006 Operating Agreement confirm (1) that Plaintiff lied to the USPTO when Plaintiff represented to be the "owner" of the mark as of October 2008; and (2) that Plaintiff knew it was lying when it made those representations.

**V.     To the extent Plaintiff's Second Motion for Sanctions is based upon Plaintiff's unsupported Affirmative Defenses to the Counterclaim, the Motion is baseless.**

Although it is unclear, it seems Plaintiff's Second Motion for Sanctions may be partly based upon Plaintiff's own Answer and Affirmative Defenses to Defendants' Counterclaim. Specifically, Plaintiff argues, as a basis for the imposition of sanctions, that "in Plaintiff's Answer [DE 86] the Plaintiff denies all of Defendants allegations of fraud and raised applicable affirmative defenses." Second Motion for Sanctions (DE 183) at p. 3.

Plaintiff has had an opportunity to respond to Defendants' Motion for Summary Judgment and did not present any evidence (other than an affidavit admitting that Plaintiff did not remember the details of the relevant events) to support any Affirmative Defense. "To defeat summary judgement, Defendant must support his affirmative defenses with sufficient evidence to create a

material issue of fact for trial. … The mere assertion of an affirmative defense on which [Defendant] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment." *Great Am. Ins. Co. v. Mueller*, 8:19-CV-3170-TPB-JSS, 2021 WL 1720284, at *3 (M.D. Fla. Apr. 30, 2021).

The fact that Plaintiff's Answer "denies all of Defendants allegations of fraud and raised applicable affirmative defenses" is not enough to survive summary judgment and is certainly not enough to impose sanctions against Defendants.

**VI.     Plaintiff's repeated disregard of the Court's Orders (as reflected in the Second Motion for Sanctions) is willful, and no sanctions short of dismissal of the Complaint with prejudice will deter continuing disregard of the Court's Orders.**

Throughout this litigation, Plaintiff has disregarded Court Order after Court Order—including disregarding the Court's Order imposing sanctions against Plaintiff, which Plaintiff has not complied with to date. To be clear, Plaintiff has disregarded numerous Court Orders, and when the Court imposed monetary sanctions against Plaintiff for disregarding Court Orders, Plaintiff disregarded the Court's Order imposing sanctions. Despite having already been sanctioned, Plaintiff continues to disregard the Court's Orders.

Plaintiff's Second Motion for Sanctions (DE 183) is self-evidently baseless and filed to vexatiously multiply the litigation and waste fees as well as the Court's resources. As explained above, the Court has already rejected the majority of Plaintiff's arguments supporting its Second Motion for Sanctions.

Moreover, the Court has already sanctioned Plaintiff and its counsel (more than once) for disregarding the Court's Orders.

For example, as early as December 2, 2020, the Court "awarded the reasonably attorney's fees" to Defendants "as a remedy for Plaintiff's counsel's non-compliance with the [Court's prior]

8

Order." Order (DE 32) at p. 3; *see also* Order (DE 40) at p. 2 (awarding monetary sanctions to Defendants).

Also, on June 14, 2021, the Court ruled that "Defendants shall recover from Plaintiff their reasonable attorney's fees and costs incurred in connection with filing the notices and attending the hearings listed above," which related to hearing caused by Plaintiff's disregard of the Court's Orders. Order (DE 118) at p. 7. The Court then ruled that "Defendants SHALL RECOVER from Plaintiff the amount of $9,513.00, as a discovery sanction." Order (DE 140) at p. 2.

When Plaintiff did not comply with the Court's Order imposing monetary sanctions, the Court instructed the undersigned to file a Motion to Compel Compliance, which the undersigned then filed on August 23, 2021. *See* Motion to Compel Compliance (DE 160). Plaintiff never responded to that Motion to Compel.

To date, Plaintiff has refused to comply with the Court's Order imposing monetary sanctions (DE 140), has ignored every attempt to confer regarding its non-compliance, and has simply (and without explanation) disregarded the Court's ruling. "The fact that [Plaintiff] refused to pay attorney's fees as a lesser sanction establishes [its] willful refusal to comply and is evidence that other lesser sanctions would not suffice." *Baltimore v. Jim Burke Motors, Auto.*, 300 F. App'x 703, 706–07 (11th Cir. 2008).

In fact, Plaintiff has made such a habit of ignoring Court Orders that the Court has had to admonish Plaintiff in writing as follows: "Plaintiff is advised that failure to comply with this Order will result in the undersigned's immediate issuance of a recommendation that Plaintiff's case be dismissed as a discovery sanction … ***given Plaintiff's repeated disregard for the undersigned's prior Discovery Orders.***" Order (DE 106) at p. 2 (emphasis added).

Plaintiff's disregard for the Court's Orders has permeated throughout this litigation, multiplying the proceedings. And Plaintiff has made abundantly clear that monetary sanctions will not deter such misconduct. It is clear that Plaintiff's actions are not negligent, not reckless, but rather are willful.

Plaintiff's Second Motion for Sanctions further confirms that Plaintiff will simply ignore the Court's rulings and cause the Court to waste resources on arguments that the Court has already rejected (more than once).

Defendants respectfully submit that no sanction short of dismissal with prejudice will deter Plaintiff from continuing to disregard Court Orders.

The Eleventh Circuit has made clear that when the "Plaintiff was warned repeatedly that his failure to comply with the court's orders could result in dismissal of his case" and "[i]n the face of these warnings, Plaintiff, without explanation, fail[s]" to comply with Court Orders, there is "no abuse of discretion in the dismissal of Plaintiff's complaint." *Thomas v. Montgomery Cty. Bd. of Educ.*, 169 F. App'x 562, 563–64 (11th Cir. 2006); *see also McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 854 (11th Cir. 2010) ("We hold that the district court did not abuse its discretion in sua sponte dismissing McDonald's complaint … for failure to comply with court orders. We note that the dismissal was appropriate because (1) the record shows that McDonald's repeated conduct of noncompliance rose to a level of willfulness and bad faith rather than that of mere negligence, and (2) the district court specifically found that lesser sanctions would not have sufficed."); *Baltimore v. Jim Burke Motors, Auto.*, 300 F. App'x 703, 706–07 (11th Cir. 2008) ("[T]he court properly dismissed the case as a sanction for Baltimore's repeated refusal to comply with the court's orders. Despite numerous warnings and many opportunities to comply, Baltimore failed to submit discovery, pay sanctions, or respond to orders."); *Shortz v. City of Tuskegee, Ala.*,

352 F. App'x 355, 359–60 (11th Cir. 2009) ("The district court did not abuse its discretion in dismissing with prejudice Shortz's claims. … In light of Shortz's continued failure to comply with the court's orders and his failure to offer an explanation for his non-compliance, the district court did not abuse its discretion in making this finding. …. Accordingly, we affirm the district court's dismissal of Shortz's lawsuit."); *Whitchurch v. Elarbee Thompson Wilson & Sapp, LLP*, 814 F. App'x 547, 549 (11th Cir. 2020) ("Failure to comply with a court order can result in a dismissal with prejudice, and when a litigant has been warned of the consequences of non-compliance such dismissal generally will not constitute an abuse of discretion.").

<u>**CONCLUSION**</u>

For the reasons sets forth above, Defendants respectfully request the Court to deny Plaintiff's Second Motion for Sanctions (DE 183), dismiss Plaintiff's Complaint with prejudice, and award Defendants their reasonable attorney's fees and costs incurred in connection with Plaintiff's Second Motion for Sanctions.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

*Counsel for Defendants*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice

of Electronic Filing generated by CM/ECF, on October 14, 2021, on all counsel or parties of record

on the Service List below.

      /s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620

| SERVICE LIST | |
|---|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale*<br>**Case No. 20-CIV-23276-DPG** | |
| Diego David Valdes, Esq.<br>Fla. Bar No. 251010<br>Diego David Valdes, P.A.<br>2350 Coral Way, Suite 403B<br>Coral Gables, Florida 33145<br>Telephone: (305) 910-6602<br>Facsimile: (305) 513-5924<br>E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |

12