**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO SECOND MOTION FOR
SANCTIONS AND ATTORNEYS FEE PURSUANT FLORIDA STATUTE 57.105**

Plaintiff, Unisource Discovery, Inc. by and through its undersigned attorney, files its Reply to

Defendants Response to Second Motion for Sanctions and Attorney's Fees Pursuant to Florida Statute

57.105 [DE 186], and states the following:

**PRELIMINARY STATEMENT**

At this stage of the case -- and for the reasons set-forth in Plaintiff's Response to Defendants'

Motion for Summary Judgement [DE 174], Plaintiff's Motion for Sanctions [DE 183], and herein -- the

Defendants have knowingly struggled, and continue to struggle, proving Plaintiff's fraud and fraudulent

intent with clear and convincing evidence and per Rule 9. In fact, given the serious and fatal deficiencies in

proving Defendants' fraud/cancellation of trademark claim at this stage, it is nearly impossible to accept

the Defendants have not known with certainty their counterclaim is baseless, entirely lacks evidentiary

support, and advanced solely to harass the Plaintiff.

As detailed in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, the Plaintiff's

deposition testimony was altered; indeed, this is especially observable when the Plaintiff positioned the

1

correct and actual deposition testimony excerpts next to the altered testimony excerpts offered by Plaintiff in its Opposition to Defendants' Motion for Summary Judgment [DE 174].

The Defendants have knowingly failed to prove Plaintiff's intent/scienter to commit the alleged fraud on the USPTO *over 13-years ago* – in light of the fact that Defendants know, or should know, of the seminal case of *In re Bose*, 580 F.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009) at this stage.

In *In re Bose*, the Board had determined that there must be a specific intent to deceive the United States Patent & Trademark Office ("USPTO") when acquiring a trademark registration that pertains to a material fact. A party alleging fraud in a proceeding *bears the heavy burden of proving fraud with clear and convincing* evidence. Today, the Board will not find fraud, if a false statement is made but with a reasonable and honest belief that it was true. Moreover, absent the intent to deceive even a material misrepresentation would not qualify as fraud. *See King Auto. Inc., v. Speedy Muffler Inc.*, 667 F.2d 1008, 212 USPQ 801 (CCPA 1981).  The Defendants never made this evaluation in their Motion for Summary Judgement [DE 151] -- or any other filed paper -- and therefore never established Plaintiff did not have a "reasonable and belief that it was true." *Id*.

Understanding that intent to deceive the USPTO can be inferred [applying clear and convincing evidence] from indirect and circumstantial evidence, case-law has also supported the proposition that intent to deceive may be inferred if the accused party's testimony lacks credibility, see *Global Maschinen GmbH v. Global Banking System*, 227 USPQ 862 (TTAB 1985).  However, throughout the litigation the Defendants have "markedly" failed to offer – with clear and convincing evidence and per Rule 9 – any indirect and/or circumstantial evidence. In addition, the Plaintiff cannot locate any filed document/motion/memorandum in the Court record that clearly proves testimony provided by Plaintiff that lacks credibility (nor has this been argued by Defendants). The Plaintiff cannot locate any filed document/memorandum/motion by Defendants that "clearly" shows -- by clear and convincing evidence, per Rule 9, and Rule 56(c) in the light most favorable to Plaintiff -- indirect and/or circumstantial evidence

2

that proves Plaintiff "intent" to commit fraud and proves Plaintiff did not have an honest belief that it was true 13-years ago. *Id at King* Auto. Inc.

The Defendants defects in its cancellation of trademark/fraud claim are clearly patent, obvious, and fatal – that is, the fatal defects are so pronounced that the Defendants cannot simply argue at this stage of the litigation they are not fully aware its counterclaim lacks the necessary proof and evidentiary support.

Nonetheless, the Plaintiff will address Defendant's arguments, below.

**1.     Plaintiff's Response to Defendants' argument that the Court has already ruled (more than once): Plaintiff's argument that the Counterclaim is time-barred lacks merit and is not a basis for sanctions."**

The crux of Defendants manufactured argument is as follows:

"The Court unequivocally rejected that argument: "the limitations period invoked by Plaintiff does not apply to Defendants' proposed amendment because it is based on Plaintiff's alleged fraud and such claims can be brought 'at any time.'" Order (DE 118) at p. 6."

Comparable to Defendants' Motion for Summary Judgement [DE 151] whereas they not only misquote Plaintiff's deposition testimony but literally fabricate Plaintiff's testimony that did not exist (as addressed more fully below and addressed in Plaintiff's Opposition to Defendants' Motion for Summary Judgment [DE 174]), the Defendants are unmistakably constructing *another* sham argument that Plaintiff is continuing to assert the statute of limitations defense.  Not true.

The Plaintiff is clearly *not* attacking Defendants defectively pled/drafted fraud claim under the applicable statute of limitations. Frankly, Plaintiff does not understand just how Defendants are make this untruthful argument – it is rather clear that there is <u>no location</u> in Plaintiff's Opposition to Defendants' Summary Judgment [DE 174] that pens the words "statute of limitations" or otherwise advances/argues a "statute of limitations" defense to defeat Defendants' claim. And again, the Defendants are intentionally concocting another false argument because Defendants clearly know they lack the evidentiary support for advance their Motion for Summary Judgment [DE 151] and address Plaintiff's highly substantiated Opposition to Defendants' Summary Judgment [DE 174].

Even so, the Plaintiff does repeatedly observe that Defendants did delay challenging the Trademark registration with both the Plaintiff and the USPTO for 13-year (formally and informally). The Defendants very long 13-year delay simply cannot be ignored or disregarded – as the Defendants wish; that is, the Defendants are fully aware that Plaintiff has raised applicable affirmative defenses (other than statute of limitations) and Defendants very long 13-year delay must be reviewed in the context of habit, routine, and practice.

Plaintiff correctly argues that Defendants' prior inactions for this lengthy 13-year delay are offered to establish habit and therefore be admissible under Rule 406 of the Federal Rules of Evidence.  Although the Eleventh Circuit has noted "[t]he difficulty in distinguishing inadmissible character evidence from admissible habit evidence," *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985).

According to Rule 406 (Habit; Routine Practice),

"Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."

Plaintiff's allegations plainly constitute proper proof of habit, and not simply character. In essence, Plaintiff shows and establishes that Defendants acted in conformity with an alleged character of "never" publishing any complaints, formally or informally, to Plaintiffs and/or the USPTO related to Plaintiff's registration and use the trademark for exceptionally long period of 13-years.  This is an undisputed fact, that Defendants have shown proof of Routine Practice and Habit under Rule 406 by using for approximately [4,745 days] Plaintiffs Registered Trademark in sales, marketing, distribution and online content.  (*Emphasis added*)

Character is a generalized description of one's disposition with respect to a general trait; habit, on the other hand, is more specific and describes one's regular and repeated response to a recurring event. *Id*. This might include descending a particular stairway two stairs at a time, giving the hand signal for a left

turn, alighting from railway cars while they are moving, or, as in *Loughan*, a regular practice of drinking at work. *Id*. This habitual action might become semi-autonomous. *Id*. In *Loughan,* and akin this to case, for example, the court found habit through a "regular practice" that evinced a "uniform pattern of behavior" spanning "an extended period of time." *Id.* at 1523-24. ]

In other words, a habit is a behavior that is repeated often.

Here, Plaintiff's allegations, accepted as true at this stage in litigation, establishes admissible evidence of Defendants habit of "intentional" inaction for over 13-years in-connection with Plaintiff's registering/ownership [with the USPTO] and use of the Trademark -- and not character evidence unsaved by Rule 406 of the Federal Rules of Evidence.

The Defendants and Plaintiff -- throughout the 13-years Plaintiff had registered [with the USPTO] and used the Trademark -- had multiple shareholder disagreements and disputes that were regularly addressed and regularly resolved (as evidenced by no prior lawsuits between the Shareholders or Defendants).  In-fact, the Trademark was never a disputed matter historically.

The past 13-years of Defendants' intentional conduct clearly evidences the inference that corporate disputes amongst shareholders were regularly raised and resolved, and therefore, clearly shows "regular practice" that evinced a "uniform pattern of behavior" spanning "an extended period of time." *Id.*

 Because there is an established pattern of conduct (*i.e.*, habit) to resolve disputes amongst shareholders, as well as those provided in the 2010 Close Corporation Shareholders Agreement [DE 1], when Plaintiff's use and ownership "intentionally" was never disputed formally or informally by Defendants it clearly evidences the Defendants habit over the lengthy 13-years that simply cannot be disregarded.

When the Defendants 100% knew of Plaintiff's registration of the Trademark with the USPTO, 100% knew of Plaintiff's uninterrupted use of the Trademark for over 13-years, the Defendants habit establishes the clear inference that they would have otherwise disputed Plaintiff's use and registration of the Trademark sometime within the 13-year time period, and prior to the instant dispute. As Defendants

already knew, even before filing their counterclaim [DE 151], their long-established habit shows Defendants intentionally did not dispute Plaintiff's registration, use, and ownership of the Trademark.

Indeed, the counterclaim for trademark cancellation is purely retaliatory and sanctionable.

Likewise, besides the statute of limitations defense the Plaintiff raised several affirmative defenses that clearly touches and concerns the Defendants incredibly long 13-year delay. Amongst other affirmative defenses raised, in this context the Plaintiff's applicable affirmative defenses include:

1. Defendants Never Disputed Plaintiff's Ownership of the Mark – Twelve (12) Years;

2. Plaintiff Contractually Owns the Trademark under the Close Corporation Shareholder Agreement;

3. Defendants failed to Allege Fraud with Particularity Under Rule 9 – Fraud & Statute of Limitations;

4. Elements of Trademark Cancellation;

5. Waiver, Acquiescence, and Estoppel;

6. Fraud;

7. Abandonment; and

8. Contractual & Promissory Estoppel

As with several of Defendants' arguments, here it is unclear just how Defendants have offensively argued, "… Plaintiff is yet again seeking sanctions based upon the identical baseless argument. This argument is baseless for the same reasons that have already been presented to, argued to, and ruled upon by the Court more than once."

Whether an inexcusable attempt to [again] concoct an argument that does not otherwise exist, the Defendants contention that Plaintiff is still advancing the defense of statute of limitation is deliberately false and this falsity now been repeated to this Court too numerous times – in-itself meriting additional sanctions.

**2.    Plaintiff's Response to "Defendants' Motion for Summary Judgment (DE 151) is well supported and based upon clear evidence confirming that Plaintiff knew, at the time of filing its trademark application, that its representations to the USPTO were false."**

Very troubling -- in this portion of Defendants' Response [DE 186] they are clearly making a rather extensive effort to re-ague and plainly cleanse the fraudulent arguments advanced in their Motion for Summary Judgment [DE 151].  Defendants are also avoiding the material argument of how they entirely failed to satisfy the Rule 9 burden and "clear and convincing evidence" burden to establish Plaintiff's intent, particularly related to the fraudulent trademark registration, and their cancellation.

Now, in an effort to "explain" and literally attempt to sterilize their fraudulent misquoting of Plaintiff's deposition testimony in the Defendants' Motion For Summary Judgement [DE 151], the Defendant now make new arguments labeling it as an effort "To be clear …" and provides three reasons, *to wit*,

"1)     Plaintiff represented to the USPTO that Plaintiff first used the subject mark "as early as March 1, 2001;

2)      Plaintiff represented to the USPTO that "no other person, firm, corporation, or association has the right to use the mark in commerce."; and

3)      Plaintiff represented to the USPTO that Plaintiff was the "owner" of the mark."

Even if an objective person would accept Defendants above arguments are possibly true – that above are the three reasons Defendants allege misrepresentation -- it still does not explain "why" Defendants plainly cut-and-pasted and connected/threaded various areas of Plaintiff's deposition testimony to change Plaintiff's testimony, coupled with dramatic spins that are visibly different then what Plaintiff actually said in response to questions. This is clearly shown in Plaintiff Response to Defendants Summary Judgment [DE 174].

It cannot be avoided through any subtle effort that Defendants' Motion for Summary Judgment cannot – and never could -- satisfy the burden of Rule 9, nor clear and convincing evidence burden. Defendants' claim is completely devoid of any heightened pleading as to "when, where and why", nor have Defendants offered any explanation of "why" for 13-years they did nothing in relation to

7

Plaintiff's registration and use of the Trademark.

The Defendants are claiming "fraud" on the USPTO without any details and/or specificity nor have they made an effort to address "intent"; especially since a trademark applicant is only required to disclose those persons who the applicant **believes** possesses the **legal right** to use the mark. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 671 (7th Cir. 1982).  However, with only one-sentence the Defendants broadly asserts that ' … cancellation of a trademark on the basis of fraud when the "applicant actually **_knew_** that material statements in the trademark application were false, and ... not [just] ... that the applicant **_should have known_** about such falsity." *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016)."

Even using Defendants cited *MPC Franchise, LLC*, given that Plaintiff subjectively and correctly believed that Defendants do not have a "legal right' to own the Trademark upon registration literally 13-years ago, the Plaintiff did not "*actually knew*" that subjectively its registration was false. *Id*.

The law is clear and rather simple: a party that seeks cancellation of a trademark registration for fraudulent procurement "bears a heavy burden of proof." *In re Bose Corp*., 580 F.3d 1240, 1243 (Fed. Cir. 2009).  And critically, the Defendants burden is "clear and convincing evidence." *Id.* (emphasis added) (quoting *Smith Int'l, Inc. v. Olin Corp*., 209 USPQ 1033, 1044 (T.T.A.B.1981).

Under applicable law that Defendants cannot simply disregard, the Defendants' Motion for Summary Judgement [DE 151] visibly fails to establish a *prima facie* case of fraud in procuring a trademark registration because a party must show, *by clear and convincing evidence*, that:

(1) the challenged statement was a false representation regarding a material fact;

(2) the registrant knew the representation was false (scienter);

(3) the registrant intended to deceive the USPTO;

(4) the USPTO reasonably relied on the misrepresentation; and

(5) the party suffered damages proximately resulting from such reliance.

*San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.,* 849 F.2d 468, 473 (10th Cir. 1988)

Despite the fact the Defendants did not even make a minimal effort to satisfy the above five (5) factors to establish fraud for trademark registration – because they cannot do so – they continue to advance their retaliatory counterclaim. However, any serious discussion related to the "clear and convincing burden" and the Rule 9 burden has been noticeably avoided in Defendants Response [DE 186], their Motion for Summary Judgment [DE 151] and most other documents filed by Defendants.

Lastly, in addition to applicable Federal law cases the Plaintiff also relies upon several easy-to-find USPTO decisions that affords material support to Plaintiff's well-grounded arguments, *to wit,*

1. *Cf. Asian and Western Classics B.V. v. Selkow*, 92 USPQ2d 1478 (TTAB 2009) (improperly pleaded fraud claim cannot be basis for summary judgment);

2. *University Games Corp. v. 20Q.net Inc.*, 87 USPQ2d 1465, 1468 (TTAB 2008) (rebuttable presumption that opposer lacked **willful intent to deceive Office** arises when registrant amended identification of goods during ex parte prosecution);

3. *Tri-Star Marketing LLC v. Nino Franco Spumanti S.R.L.*, 84 USPQ2d 1912, 1916 (TTAB 2007) (fraud not found where statement identifying goods in application, although inartfully worded, was not false).

4. *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312, 91 USPQ2d 1656, 1670 (Fed. Cir. 2009) ("[P]leadings on information and belief require an allegation that the necessary information lies within the defendant's control, and … such allegations must also be accompanied by a statement of the facts upon which the allegations are based") (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)); *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986);

5. *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 212 USPQ 801, 803 (CCPA 1981) (fraud must be pleaded with particularity);

6. *Bart Schwartz International Textiles, Ltd. v. The Federal Trade Commission*, 289 F.2d 665, 129 USPQ 258, 260 (CCPA 1961) ("[T]he obligation which the Lanham Act imposes on an applicant is that he will not make **knowingly** inaccurate or **knowingly** misleading statements in the verified declaration forming a part of the application for registration.") (emphasis added); and

7. *Smith International, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981) (fraud requires a **willful intent to deceive**).

Clearly, the Defendants have disregarded these decisions and similar decisions.

**3.     Plaintiff's Response to 'Plaintiff's Second Motion for Sanctions then argues that "Defendants**

**make a very unclear argument that the 2006 Shareholder Operating Agreement is the controlling agreement for the Court to evaluate." Second Motion for Sanctions (DE 183) at p. 5. This argument mischaracterizes Defendants' Motion for Summary Judgment."**

The Defendants assert in this section of their Response [DE 186] that,

"One such misrepresentations was Plaintiff's representation to the USPTO that Plaintiff was the "owner" of the subject mark in October 2008. As explained above, Plaintiff admitted at its deposition that whatever "ownership" interest it had in the subject mark from 2006 to 2010 was fully set forth in the 2006 Operating Agreement and no other agreement."

Nonetheless, there is no location in the Plaintiff's deposition transcript whereas "Plaintiff admitted at its deposition that whatever "ownership" interest it had in the subject mark from 2006 to 2010 was fully set forth in the 2006 Operating Agreement and no other agreement … ", nor has the Defendants identified and cited a location in the deposition transcript evidencing that exact testimony.

The Defendants assert the following,

"This is why the 2006 Operating Agreement is relevant to the analysis. The 2006 Operating Agreement is the only document that Plaintiff pointed to at his deposition that ostensibly confirms Plaintiff's "ownership" of the mark as of October 2008. While Plaintiff may now contend that "in year 2010" (two years ***after*** it submitted the trademark application) "the parties entered into the Close Corporation Shareholder Agreement that ... makes the 2006 Shareholder Operating Agreement unenforceable," that contention is irrelevant to the analysis. Again, Defendants' Counterclaim and Motion for Summary Judgment do not argue a breach of the 2006 Operating Agreement."

This is another convoluted argument presented by Defendants. Even "if" Plaintiff believed its ownership is derived from the 2006 Operating Agreement, that alleged belief would still satisfy the law set-forth in Plaintiff's cited *Money Store v. Harriscorp Finance, Inc.* case (applicant is only required to disclose those persons who the applicant *believes* possesses the *legal right* to use the mark) and Defendants' cited *MPC Franchise, LLC v. Tarntino* case ("Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with his application.").

In other words, and sensibly speaking, if had Plaintiff believed in year 2009 it had a lawful right to use and register the Mark that was [allegedly] derived from the year 2006 Operating Agreement, *then likewise the Plaintiff cannot have the necessary scienter to commit fraud.*

In sum, the aforementioned cases (and Rule 9) support that Defendants must "prove" Plaintiff's subjective intent/scienter – something Defendants have woefully failed to accomplish – and *with clear and convincing evidence*. *Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) ("A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by clear and convincing evidence."); *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96 (E.D.N.Y. 2012)) ("To rise to the level of fraud, the false statement must be made knowingly and have been material to the PTO's decision to grant [the] trademark application.")

To somewhat "short-cut" the Defendants sham argument, in Defendants' Response [DE 186]  it is rather clear that Defendants are still struggling [at the summary judgement stage] to prove Plaintiff's subjective "intent" and "scienter" over *13 years ago*.  Defendants unending effort "To be clear …" lends itself to this inverse conclusion; that is, at this stage of the litigation the Defendants cannot -- and still have not -- satisfied their burdens of proof in the light most favorable to the non-moving party (the Plaintiffs) and with clear and convincing evidence.

**4.   Plaintiff Response "To the extent Plaintiff's Second Motion for Sanctions is based upon Plaintiff's unsupported Affirmative Defenses to the Counterclaim, the Motion is baseless."**

The Defendants begin this portion of their Response [DE 186] by ironically stating "Although it is unclear, it seems Plaintiff's Second Motion for Sanctions may be partly based upon Plaintiff's own Answer and Affirmative Defenses to Defendants' Counterclaim."

Likewise, the Plaintiff has trouble understanding Defendant's argument.

Here, the Defendants continue to assert "To defeat summary judgement, Defendant must support his affirmative defenses with sufficient evidence to create a material issue of fact for trial. ... The mere assertion of an affirmative defense on which [Defendant] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment." *Great Am. Ins. Co. v. Mueller*, 8:19-CV-3170-TPB-JSS, 2021 WL 1720284, at *3 (M.D. Fla. Apr. 30, 2021)."

However,  for cancellation of trademark the exceptionally heavy burdens rest solely with

11

Defendants. These are: (a) the summary judgment burden under Rule 56; (b) the cancellation of trademark burden of clear and convincing evidence; and (c) the Rule 9 burden of pleading fraud with particularity. *In arguendo*, and although not the case in actuality, if Plaintiff stood-still, froze, did nothing and did not respond to Defendants' Motion for Summary Judgement [for cancellation of trademark], the Defendants still have not even remotely satisfied these heavy burdens at the summary judgment stage.

It is noteworthy that the Defendants never moved to strike Plaintiff's several of the affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). Rather, they are relevant to factual and legal issues presented in this case and they include much more than just a denial of various paragraphs from Defendants' counterclaim for cancellation of trademark [DE 166]. In fact, the affirmative defenses provide adequate information to give Defendants sufficient notice of the arguments asserted by Plaintiff -- even now at the summary judgement stage, the Defendants are fully aware and know that they simply cannot defeat the Plaintiff's several affirmative defenses because the Defendants cancellation of trademark/fraud simply does not have the necessary evidentiary support nor was plead properly under Rule 9.

5. **Defendants' Response to "Plaintiff's repeated disregard of the Court's Orders (reflected in the Second Motion for Sanctions) is willful, and no sanctions short of dismissal of the Complaint with prejudice will deter continuing disregard of the Court's Orders."**

Not surprising, the Defendants exploit a commonly read paragraph when stating, "Plaintiff's Second Motion for Sanctions (DE 183) is self-evidently baseless and filed to vexatiously multiply the litigation and waste fees as well as the Court's resources. As explained above, the Court has already rejected the majority of Plaintiff's arguments supporting its Second Motion for Sanctions." Ironically, the Plaintiff has provided actual support in its well-grounded position that Defendants retaliatory/unsupported fraud/cancellation of trademark claim is " … self-evidently baseless and filed to vexatiously multiply the litigation and waste fees as well as the Court's resources ...".

Likewise, it is also Plaintiff's position that any allegation by Defendant that "…Plaintiff has disregarded Court Order after Court Order …" still does not address, nor resolve Defendants obvious lack of evidence – especially at the summary judgement stage -- to support their counterclaim. Nor do

Defendants explain their augmenting and altering Plaintiff's deposition testimony to manufacture facts that do not exist, and lack clear and convincing evidence not in compliance with Rule 9.

As for the matter relating to the attorneys' fees - though Plaintiff is not clear how this is relevant to sanctions, Defendant's sham counterclaim, and Defendants obvious lack of evidentiary support –this Court issued an Order to Show Cause [DE 192] with a response deadline of November 15, 2021. In light that Order [DE 192] and November 15, 2021, deadline, it is Plaintiff's reasonable position that the Court provided an opportunity to explain the outstanding attorneys' fees issue not here, but when Plaintiff responds to the Court's Order. As such, the Plaintiff will reserve on this matter until responding to the Order to Show Cause [DE 192] on November 15, 2021.

Here, the Defendants do not state the Rule they are traveling under for Sanctions. Therefore, the Plaintiff will presume that Defendants seek sanctions pursuant to Rule 11,

As potential sanctions, the Defendants are requesting that the Court award attorney's fees and costs, impose monetary sanctions against Plaintiff and its counsel, as well as dismissing its claims.

Sanctions, under Rule 11, are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose. *Cook-Benjamin v. MHM Corr*. Servs., 571 F. App'x 944, 948 (11th Cir. 2014) (citing *Jones v. Int'l - 3 - Riding Helmets, Ltd*., 49 F.3d 692, 694 (11th Cir. 1995)); *see also Fed. R. Civ. P*. 11(b), (c).

In analyzing whether Rule 11 sanctions are appropriate, a district court first must determine whether the challenged claims are "objectively frivolous" in view of the facts or law. *Jone*s, 49 F.3d at 695. If the court finds they are, it must determine whether the person who signed the pleading "should have been aware that [it was] frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Id*. "The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)

(citation and quotation omitted).

Upon review of the parties' memoranda, the file, and the relevant factors under Rule 11, the Court will find Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." *Fed. R. Civ. P.* 11 advisory committee's note to 1993 amendment; *see also FCOA, LLC v. Foremost Title & Escrow Servs.*, No. 17-CIV-23971, 2018 WL 624497, at *2 (S.D. Fla. Jan. 30, 2 The advisory committee notes also indicate that Rule 11 motions should not "be prepared to emphasize the merits of a party's position . . . ." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. - 4 - 2018) (unpublished) (***denying a motion for Rule 11 sanctions because the court found that the defendant's motion for sanctions was an "improper attempt to convert a disagreement over the factual allegations and legal arguments in [the plaintiff's complaint into a sanctions dispute***")(emphasis added); *Bigford v. BESM, Inc.*, No. 12- 61215-CIV, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) (unpublished) (explaining that Rule 11 is an extraordinary remedy that "should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits" (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 244 F.R.D. 70, 74 (D. Me. 2007))).

Although very unclear, Defendant's motion for sanctions appears to ask the Court to rule on the merits of Plaintiff's claim, dismiss its pleadings, and therefore Rule 11 is not the proper avenue to decide this issue. Additionally, there are pending dispositive motions before the Court. *See Fed. R. Civ*. P. 11 advisory committee's note to 1983 amendment (stating that "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation . . . ."); *FCOA*, 2018 WL 624497, at 3 (stating that "the Eleventh Circuit has found [that] Rule 11 sanctions are ordinarily not determined until the end of a case" (emphasis omitted)).

In light of the above -- and because both parties currently have dispositive motions pending before the Court coupled with this Court Order to Show Cause [DE 192] --  the Defendants are inappropriately

using sanctions to raise issues as to the legal sufficiency of Plaintiff's claims. As such, this Honorable Court should decline to sanction Plaintiff.

## CONCLUSION

As repeated, at this late stage in the litigation the Defendants are knowingly advancing a sham counterclaim for fraud/cancellation of trademark that entirely lacks evidentiary support, fails to satisfy the Rule 9 burden, the clear and convincing burden, and the Summary Judgement burden under Rule 56(c). But more-so, the Defendants have noticeably avoided addressing and proving the Plaintiff's scienter/intent to commit fraud upon the USPTO literally13-years ago, and noticeably avoided establishing any semblance of details or supportive evidence in-connection with Plaintiff making ***knowingly*** inaccurate and/or ***knowingly*** misleading representations to the USPTO. *Bart Schwartz International Textiles, Ltd. v. The Federal Trade Commission*, 289 F.2d 665, 129 USPQ 258, 260 (CCPA 1961)

The Defendants for 13-years have shown proof of Routine Practice and Habit under Rule 406 of the Federal Rules of Evidence, by using for approximately [4,745 days] Plaintiffs Registered Trademark in Defendants sales, marketing, distribution and online content.

Given the gravity and seriousness of Defendants' entirely unsupported fraud/cancellation of trademark claim, and the fact the Defendants have had ample opportunity to withdraw their counterclaim, sanctions are entirely warranted. Likewise, the Defendants claims for retaliatory sanctions has no merit, and if anything, premature.

As a consequence, Plaintiff is indeed entitled to sanctions and this Court should deny Defendants' request for sanction as premature.

15

## CERTIFICATE OF SERVICE

I hereby certify that this notice was served via the CM/ECF Court E-Filing Portal on this 5<u>th</u> day of November 2021 upon: Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., Counsel for Unisource Discovery, LLC and Steven A. Cerasale.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: */s/ Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email:  ddvlaw@gmail.com
        ddv@ddvlawgroup.com
Attorney for Plaintiff:
Unisource Discovery, Inc.