**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

    Plaintiff,

    v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

    Defendants.

_____

## PLAINTIFF, UNISOURCE DISCOVERY INC., OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON AMENDED MOTION FOR PRELIMINARY INJUNCTION [DE 250]

Plaintiff, Unisource Discovery, Inc. (Unisource) by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure Rule 72(a), S.D. Fla. L.R., Mag J Rule 4, and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida, files this Objection to the Report and Recommendation On Amended Motion for Preliminary Injunction (also referred to as" R&R") [DE 250], and states:

### I.    Introduction

Plaintiff initially filed its Complaint against Defendants on August 6, 2020 ("Complaint") [DE 1]. In Plaintiff's Complaint, it claims Defendants violated the Lanham Act, 15 U.S.C. §§ 1051 et seq., for infringing on the following United States Federal Trademark (hereafter "Unisource Mark" *Registration No. 3,634,516 and Serial No. 77594059*):



On July 12, 2021, the Plaintiff filed its Ex Parte Amended Motion for Preliminary Injunction [DE 139] against Defendants' unlawful activities, which have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of their right to determine the manner in which Plaintiff' trademarks are presented to the public; (2) defrauded the public into thinking Defendants' goods and services are the same; and (3) deceived the public as to Plaintiff' association with Defendants through, amongst other false misrepresentations, using same/similar website/email address[es] and has/continues to create confusion so to advance an effort to convert Unisource clients; and (4) Defendants use of multiple owned and controlled entities by Steven Cerasale, including Defendant Unisource Discovery, LLC and Equicopy to further the foregoing acting of trademark infringement and poaching/converting Plaintiff's existing clients that are causing further market confusion surrounding the Unisource name.

The Plaintiff and Defendant Steven Cerasale entered into a Close Corporation Shareholder Agreement (Agreement) which the Parties acknowledged and executed on June 28, 2010. *See* Pl. Am. Comp. Exh A.  Under the Close Corporation Shareholder Agreement, Section 1.3. TRADEMARK, clearly states the "intent" of the Parties in the Agreement that Plaintiff is the <u>owner</u> of the Trademark; ***UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US*** <u>***trademark of the Company.***</u>  (emphasis added)

Plaintiff asserts the following claims against Defendants:

Count I:       Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1).

Count II:      False Designation or Origin and Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a).

Count III:     Florida Common Law Trademark Infringement.

Count IV:     Florida Common Law Unfair Competition.

Count V:      Trademark Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

Count VI:     Federal False Designation of Origin and False Advertising under Section 43(a) ofthe Lanham Act, 15 U.S.C. 1125(a).   2

Count VII:      Common Law Trademark Infringement.

Count VIII:     Common Law Unfair Competition.

Count VI:       Deceptive Trade Practice under Fla. Stat. § 501.204.

Count VII:      Misleading Advertising under Fla. Stat. § 817.41.


The Plaintiff's registration is incontestable. For over 12 years, there has been no filing in opposition to the Trademark with the USPTO.  A self-authenticated copy of the U.S. Trademark Registration. *See Complaint* [DE 1].

The Mark has been used in interstate commerce to identify and distinguish Unisource's high-quality legal support services and has been renewed under Section 8 (6-YR) and Section 8 & 9 for (10-YR) as of April 5, 2019.

For the past (eleven) 11 years Unisource allowed Defendants the Right to Use of Trademark under an implied license, to market and use the Registered Trademark in connection with the business relationship, at no cost to Defendants for such privilege.  During this time, both companies co-owned and shared website www.unisourcediscovery.com, emails, and marketing materials with Plaintiffs Trademark.

On February 21, 2020, Unisource notified Defendants that the Right to Use of Trademark under implied license had been revoked and provided proper notice via Email and U.S. Certified Mail. The notice informed Defendants to stop all further use of the Trademark and Defendants were provided the option to enter into a Licensing Agreement. Failure to act would result in a Cease-and-Desist Letter. Defendants ignored this notice. *See* Pl. Comp.

On May 12, 2020, Unisource Counsel sent a Cease-and-Desist letter to Defendants via Email and U.S. Certified Mail of Defendants continued Infringement of Trademark. Defendants ignored this notice.  *See* Pl. Comp.

Plaintiff has maintained complete physical control of the Registered Trademark, through media, marketing, advertising, corporate agreements, federal filings and multiple renewals with the

3

USPTO under Section 8 and Section 8 & 9.  Any changes to the presentation of the Unisource Registered Trademark require the approval of Plaintiff.

## II.   *De Novo* Review

As a preliminary matter, in the Eleventh Circuit, a district judge may accept, reject or modify the Magistrate Judge's Report and Recommendation after conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); *see Williams v. Wainright*, 681 F.2d 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specify those findings or recommendations to which the objection is made." 28 U.S.C. § 636(b)(1). Accordingly, this requires the district judge to "give fresh consideration to those issues to which the specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.,* 896, F. 2d 507, 512 (11th Cir. 1990) (quoting H. R. 1609, 94th Cong. § 2 (1976)).

Federal Rule of Civil Procedure 72 requires that all objections to the Magistrate Judge's Report and Recommendation be both timely and specific. Accordingly, Plaintiff objections are set forth below in accordance with those requirements.

## III.  Standard

Plaintiff have filed claims pursuant to 15 U.S.C. sections 1114(1)(a), 1125(a), and 1125(d), and Florida's common law. Title 15 U.S.C. section 1116(a) provides the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116.

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted); *see also Levi Strauss & Co. v.*

4

*Sunrise Int'l. Trading Inc*., 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1).

Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc.,* 415 U.S. 423, 439 (1974) (footnote call number omitted). With respect to scope, generally, "persons who are not actual parties to the action or in privity with any of them may not be brought within the effect of a[n injunctive] decree merely by naming them in the order." Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2956 (2d ed. 1995) (footnote call number omitted)

However, "a decree of injunction not only binds the parties but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)); see also FED. R. CIV. P. 65(d)(2).

Specifically relevant to this case, 15 U.S.C. section 1114(2)(D) implicitly provides the Court with authority to request or order "[a] domain name registrar, domain name registry, or other domain name registration authority . . . [to] deposit[] with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." 15 U.S.C. § 1114(2)(D)(i).

5

## IV.     Objections to Report and Recommendation as to Findings Of Facts

**Plaintiff's Objection #1:**

In ¶11 of the R&R, the Magistrate opined,

"However, Unisource LLC continued using the Unisource Mark without objection from Unisource Inc., who did not seek a licensing agreement from Cerasale or Unisource LLC."

The Plaintiff must respectfully object.

In Florida, and not addressed in the R&R, the Plaintiff is not required to enter into a written license agreement.  "Acquiescence to one's use of a trademark is analogous to an implied license to use the mark." *Coach House Rest.*, *Inc*. *v*. *Coach & Six Rests*. *Inc*., 934 F.2d 1551, 1563 (11th Cir. 1991).

In the Eleventh Circuit, the law ***does not*** require any express contract, promise, or even certain words to find an implied license. The very nature of an implied license is creation-by-conduct is that the owner "permits the use of a copyrighted work in a particular manner." *Karlson* *v*. *Red Door Homes*, *LLC*, 611 F. App'x 566, 569 (11th Cir. 2015).

In other words, "[t]he grant of a nonexclusive license does not require a writing under the Copyright Act, and it may occur orally or may be implied from the copyright owner's conduct." *Id.*

Because Defendants was/are using the Mark under an implied license – that was not addressed in the R&R -- the Plaintiff would have no need to object in that manner.

 For these reasons, the Plaintiff must object.

**Plaintiff's Objection #2**:

On the very same basis as above, Objection #1, the Plaintiff must object to the following,

"Since that time: both Plaintiff and Defendants have used the Unisource Mark; Plaintiff has been aware of Defendants' use of the Unisource Mark; and Plaintiff has not restricted Defendants' ability to use the Unisource Mark or sought a licensing agreement from Unisource LLC or Cerasale to use the Unisource Mark."

**Plaintiff's Objection #3:**

The Plaintiff objections to the following,

"Although Plaintiff registered the Unisource Mark with the USPTO in 2009 and the Shareholder Agreement signed by Cerasale and Mijares in 2010 allowed Plaintiff to use the Unisource Mark, it did not in fact restrict Defendants use of the Unisource Mark. See Close

Corporation Shareholder Agreement, Pl.'s Ex. 222-6; Defs.' Ex. 213-10. Thus, the undersigned rejects Mijares' claim that the 2010 close corporation Shareholder Agreement gave Plaintiff exclusive rights to use the Unisource Name and Unisource Mark and accepts Cerasale's claim that the 2010 close corporation Shareholder Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff, but merely gave Plaintiff the right to use them."

Here, the Plaintiff presumes that the Magistrate is also specifically referencing section 1.3 of the Close Corporation Agreement that states,

"1.3     Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL **is a registered US trademark of the Company**. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise."

The Plaintiff must specifically object to the Court's interpretation of the plain meaning of section 1.3 coupled with the Court not addressing the parties contractual intent in its interpretation. *Ocean Reef Club, Inc. v. UOP, Inc*., 554 F. Supp. 123, 128 (S.D. Fla. 1982) ("[w]hether a contract is or is not ambiguous is a question of law to be determined by the trial court."); *See also Centennial Mortgage, Inc. v. SG/SC, Ltd*., 772 So. 2d 564, 565-66 (Fla. 1st DCA 2000).

Initially, the Plaintiff is not aware of any location in the R&R that the Magistrate determined that the 2010 Close Corporation Agreement is unclear and/or ambiguous -- specifically section 1.3. *Handi-Van, Inc. v. Broward Cnty., Fla*., 2010 WL 1223776, at 2 (S.D. Fla. Mar. 29, 2010) aff'd, 445 F. App'x 165 (11th Cir. 2011) (citing *Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. 3d DCA 2007) (If it is determined that no ambiguity exists, then the contract is interpreted according to its plain meaning."

A.     The Plain Meaning of Contract Terms Apply.

Under Florida law, contract interpretation begins with plain meaning of words used, and words are "to be given their natural, ordinary meaning." *See Ferox, LLC v. ConSeal Int'l, Inc.,* 175 F. Supp. 3d 1363, 1371 (S.D. Fla. 2016). "In order to determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001).

The Court may draw reasonable inferences from unambiguous contract language to determine what the parties intended. *Bombardier Capital Inc. v. Progressive Mktg. Grp., Inc.,* 801 So. 2d 131, 134

7

(Fla. 4th DCA 2001).

First, the Plaintiff turns its attention to the plain meaning of the following first sentence in section 1.3 "Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL *is a* registered US trademark of the Company." (emphasis added")  Merriam-Webster defines the word "is" as "to show or describe (someone or something) clearly and completely" (last visited January 23, 2022). The New Oxford American Dictionary defines the word "is" as "having a definite outline or specifications, precisely marked or stated".

Then, the Plaintiff closely analyzes the plain meaning of the next sentence in section 1.3, "Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, *or otherwise*." (emphasis added).  Merriam-Webster defines "or otherwise" as "used to refer to something that is different from something already mentioned" (last visited January 23, 2022). The New Oxford American Dictionary defines "otherwise" as "circumstances different from those present or considered, or else."

When the parties mutually agreed to insert the first sentence that states, in part, "UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company" it was mutually intended to describe Plaintiff Unisource's ownership of the Mark --- using the defined plain meanings as "… clearly and completely …" and with a "… definite outline or specifications …".

By including the words "…  or otherwise …" the parties intended to include this defined "catch-all" that clearly encompasses all rights that Plaintiff has in the Mark, including Plaintiff's ownership.  This is especially true when read directly in conjunction with the plain meaning of the first sentence using the word "is" to define Plaintiff's ownership of the registered Trademark.

The Plaintiff and Defendants freely and mutually drafted the terms of the 2010 Close Corporation Shareholder Agreement under section 12, *to wit*,

"Construction. The ***parties have participated jointly in the negotiation and drafting*** of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden

of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement."

(emphasis added)

There is no testimony or evidence in the record that is inconsistent with this plain meaning of section 1.3, and the parties intent that the Mark is owned by Plaintiff Unisource under its terms. "[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted." *See BMW of N. Am., Inc. v. Krathen,* 471 So. 2d 585, 587 (Fla. 4th DCA 1985);

The Eleventh Circuit has noted that an interpretation is not reasonable if it requires a rewriting of the contract. *John M. Floyd & Associates, Inc. v. First Florida Credit Union,* 443 F. App'x 396, 398 (11th Cir. 2011) (finding that one interpretation was not reasonable where that interpretation "would require inserting words into the provision"); see *also Hill v. Deering Bay Marina Ass'n, Inc.*, 985 So. 2d 1162, 1166 (Fla. 3d DCA 2008) ("As this and many other courts have stated, courts do not rewrite contracts.").

B.       Intent of the Contracting Parties Controls

"It is well-established that the parties' intent governs contract construction and interpretation." *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So.2d 381, 383 (Fla. 5th DCA 2005); *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier,* 620 So.2d 786, 788 (Fla. 4th DCA 1993). "A court should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its purpose." *Feldkamp,* 773 F. Supp. 2d at 1280–81; *Maines v. Davis*, 491 So. 2d 1233, 1235 (Fla. 1st DCA. 1986)(citing *Blackshear Mfg. Co. v. Fralick*, 88 Fla. 589, 102 So. 753, 754 (Fla.1925)).

The contracting parties are Plaintiff and Defendants. Therefore, the Court should endeavor to determine their intent, which will, in turn, direct the Court's interpretation. Here, intent of the parties can be found in the other 2010 Close Corporation Shareholder Agreement provisions when read in-conjunction with section 1.3.

These other 2010 Close Corporation Shareholder Agreement provisions are as follows:

i.        Section 1.4 of the 2010 Close Corporation Agreement: "The Subpoena Company. The parties acknowledge and agree that the Company shall have the exclusive rights to utilize the Florida Platform of "the Subpoena Company" to establish a presence in the region".   This provision shows the parties "intent" to make a distinction between an item that "*is a* registered US trademark of the Company" verse the 1.4 provision that the Subpoena Company will simply have "exclusive rights"[1] that does not connote ownership.   This shows that when the parties intended to defined ownership, and certain rights, they did so contractually.

ii.       Section 12 of the 2010 Close Corporation Agreement: "Construction".   As mentioned above, there is no dispute that the parties participated jointly in the negotiation and drafting of the 2010 Close Corporation Shareholder Agreement. Therefore, the 2010 Close Corporation Shareholder Agreement must be interpreted in this context.

iii.      Section 6 of the 2010 Close Corporation Shareholder Agreement: This section is labeled " Further Acts" and contractually means that  the "… parties to this Agreement shall promptly take such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement …".   Factually, this is exactly what occurred historically when: (1) Defendant Steven Cerasele failed to formally object in writing to the registered trademark with the USPTO (or object to any party formally or informally) for over 11 years and until the Plaintiff initiated this instance action; and (2) because the Plaintiff did register the Mark with the USPTO -- and without objection for over 11-years by the Defendants -- it must be determined that it (the registration of the Mark with the UPSTO and Defendants failure to object) was the intent of the parties that was contractually "… necessary to carry out the spirit and letter of this Agreement …".

        In sum, the Plaintiff must respectfully object for these well-ground reasons.

---

[1] Backs Law Dictionary defines "exclusive right" as "A privilege or right that is exclusive or special to the person possessing it."

**Plaintiff's Objection #4**:

 On the same basis of both Plaintiff's objection #3 and objection #1, above, the Plaintiff must sincerely object to the following,

> "With respect to Defendants' intent, the evidence shows that Cerasale created the Unisource Mark; that the 2020 close corporation Shareholders Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff, but merely gave Plaintiff the right to use them: that Plaintiff did not object to Defendants' continued use of the Unisource Mark throughout the parties' long business relationship; and that Plaintiff never sought a licensing agreement from Defendants. Thus, Defendants did not intend to derive a benefit from Plaintiff's business reputation; rather, the parties engaged in the joint use of the Unisource Mark for their mutual benefit."

**Plaintiff's Objection #5**:

Plaintiff objects to the following,

> "In 2006, Cerasale and Mijares formed Unisource Inc. and Cerasale allowed Plaintiff to begin using the Unisource Mark as part of their joint venture to expand the "Unisource Discovery" brand beyond California. Since that time: both Plaintiff and Defendants have used the Unisource Mark; Plaintiff has been aware of Defendants' use of the Unisource Mark; and Plaintiff has not restricted Defendants' ability to use the Unisource Mark or sought a licensing agreement from Unisource LLC or Cerasale to use"

The Plaintiff specifically objects because certain terms of the 2010 Close Corporation Shareholder Agreement does "restrict" Defendants' use, and fact that the Defendants was granted an "implied" license under Eleventh Circuit case law.

First, there are provisions found in the 2010 Close Corporation Shareholder Agreement that restricts any actions that could harm or conflict with the interest of Plaintiff Unisource or potentially damage other shareholders. Under section 1.10 there are numerous contractual fiduciary duties that effectively create a "… high degrees of confidence and trust are reposed" between the parties …" As such, when looking at this other 2010 Close Corporation Shareholder Agreement provisions the Defendants do have restrictions on their conduct, and therefore, the method which the Plaintiff contractually restricted the Defendants use until serving the cease and desists letters.

Second, in connections with the Court's position that is never sought a licensing agreement, the Plaintiff integrates and incorporates the same arguments in Objection #1, above.

Based upon the foregoing, the Plaintiff must object on this basis.

## CONCLUSION

For the above reasons, the Court should not adopt the Report and Recommendation of the Magistrate Judge and should enter its Order consistent with the Plaintiff's above objections.

## REQUEST FOR ORAL ARGUMENT

Plaintiff, Unisource Discovery, Inc., requests oral argument in connection with its above-stated objections.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven Cerasale, individually on this 24th Day of January, 2022.

Respectfully submitted,

/s/ *Diego David Valdes*

Diego David Valdes,
Esq. Florida Bar No.
251010 Email:
ddvlaw@gmail.com
ddv@ddvlawgroup.com

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite
403B Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

Counsel for Plaintiff: Unisource Discovery, Inc.