UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-23276-DPG

UNISOURCE DISCOVERY, INC.,

Miami, Florida

Plaintiff(s),

December 9, 2021

vs.

UNISOURCE DISCOVERY, LLC,

Defendant(s).          Pages 1 - 119
------------------------------------------------------------

MOTION HEARING VIA ZOOM VIDEOCONFERENCE
BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):   DIEGO VALDES
                        Diego David Valdes, P.A.
                        16155 S.W. 117th Avenue
                        Suite B17
                        Miami, FL 33177
                        ddvlaw@gmail.com


FOR THE DEFENDANT(S):   VICTOR MARIANO VELARDE
                        Fowler White Burnett, P.A.
                        Brickell Arch
                        1395 Brickell Avenue
                        14th Floor
                        Miami, FL 33131
                        vvelarde@fowler-white.com


REPORTED BY:            JILL M. WELLS, RMR, CRR, CSR
                        Official Court Reporter
                        400 N. Miami Avenue
                        Miami, Florida 33128
                        jill_wells@flsd.uscourts.gov

I N D E X

Description                                              Page


NOEL MIJARES

Direct                  by Mr. Valdes           10

Cross                   by Mr. Velarde          21

Redirect                by Mr. Valdes           35

Recross                 by Mr. Velarde          39

STEVEN CERASALE

Direct                  by Mr. Velarde          51

Cross                   by Mr. Valdes           55


E X H I B I T S


Plaintiff K and Q                                9

Plaintiff C                                      66

Defense 8                                        66

(Case called to order of the court at 10:33 a.m.)

THE DEPUTY CLERK: Calling case number 20-CV-23276, Unisource Discovery, Inc. v. Unisource Discovery, LLC.

Counsel for the plaintiff, please state your appearance for the record.

MR. VALDES: Diego Valdes, on behalf of Unisource Discovery, Inc.

THE DEPUTY CLERK: Thank you.

Counsel for the defendant.

MR. VELARDE: Victor Velarde, from Fowler White Burnett, for the defendants.

THE COURT: Thank you very much. I set a very ambitious agenda for today because of the fact that so many of the motions have become ripe.

I will tell you that I don't have anything else set for today so we can take the time to address all of these matters. Probably your best option will be to take a lunch break sort of as to, you know, not to kill ourselves trying to get everything done without eating. That's usually not a good idea.

So the first matter that I wanted to address, which is the one matter that I believe requires, if at all, any presentation of evidence would be the plaintiff's, quote, ex parte amended motion for preliminary injunction.

I don't know that the motion really is ex parte

because it's part of the record and there's been a response by the defendant.  So I am just addressing it as a motion for preliminary injunction.

I note that there are exhibit and witness lists that were submitted.

I would ask counsel if there is agreement and non-objection as to any of the exhibits, if we could initially just make those a matter of record, and then if there is any disputes --

MR. VELARDE:  Your Honor, Victor Velarde.

THE COURT:  Can I finish?

MR. VELARDE:  I apologize.

THE COURT:  If there's any disputes as to any of the particular exhibits, then I will address those as the party proposing the exhibit addresses it.

So I will hear from you, Mr. Velarde.  I think maybe you had a comment to make about my remark.

MR. VELARDE:  Yes, your Honor, and I apologize.  I thought your Honor was completed.  I didn't mean to interrupt.

So I have two administrative points that I wanted to bring up, your Honor, before we begin.

First is the order of the motions that are going to be heard today.  We have four motions set for hearing.  Three of those motions have to deal with the defendant's counterclaim, and then we have the one motion that has to do with the

preliminary injunction.

Your Honor, I would submit, and I will leave it for Mr. Valdes to comment as well, that it would be better to have the three motions on the counterclaim heard first, and then after have the amended motion for preliminary injunction heard, for a couple of reasons.

One of the reasons, your Honor, would be, that would allow us -- if your Honor doesn't rule today on the summary judgment motions, that would allow us as counsel to confer over the break about all the exhibits that were listed in the exhibit list to see if we can reach an agreement as to the exhibits before we begin the evidentiary portion of this hearing.

Secondly, your Honor, I think it makes sense to have the summary judgment motion heard first, because that has to do with record evidence, and we wouldn't have to submit additional evidence for your Honor's consideration of that motion.

THE COURT: Well, I appreciate the comment, and I would have anticipated that counsel would have met and conferred regarding the exhibits and resolved disagreement, but if you haven't done that, we will proceed.

The reason for me to proceed with the preliminary injunction hearing is because that is the only one that really requires any live evidence, if at all. So that is the reason why I want to do that one first.

And I understand that the other motions, there is some confluence among them, and I will be happy -- generally, when I address cross-motions for summary judgment, I urge the parties not to duplicate their arguments.

So in any event -- and you said four motions, Mr. Velarde, but I also did set the defendant's motion to strike, et cetera, for a hearing. I don't know if maybe you are or are not prepared to address that.

MR. VELARDE: You have, your Honor, and we will discuss it a little later when that comes up, but I was under the impression that at least a portion of that motion was mooted.

THE COURT: That's fine, that's fine. I just wanted to make sure that you were on the same page with my order setting the matters for a hearing.

MR. VELARDE: Yes, your Honor.

THE COURT: So with respect to your suggestion, Mr. Velarde, I would like to go forward with the motion for preliminary injunction.

Let me just remind you, these matters have been referred to me by Judge Gayles. Because they are dispositive matters, preliminary injunction and motions for summary judgment, there is no way that I could rule on them at the hearing. All I can do is submit a report and recommendation. So don't expect a ruling from me on those today, but obviously

a report and recommendation in due course.

So it is plaintiff's motion.  Let me hear first from Mr. Valdes.

What evidence do you propose to submit, either by way of testimony or by way of documentary evidence?  And if any of the documents are already part of the record, then we can just accept them by reference to their docket entries to avoid additional submissions, but we will mark them for purposes of this hearing.

When we are live, we get all these papers shuffling back and forth, but here we are on Zoom.  All I am saying is -- and I am noticing in Mr. Valdes's submission, he does have cross-references to docket entries.  So let's keep that in mind so that when things need to be looked up, we can find them in the record.

Mr. Valdes, let me hear from you, what evidence you propose to present.  Not presented yet, but just tell me what you propose to present.

MR. VALDES:  Yes, Judge, thank you.

The evidence that we are going to propose that we had filed in the record, which is from Exhibit I, Exhibit J --

THE COURT:  I'm sorry, hold on just a second. Exhibit I, J -- okay.

MR. VALDES:  -- K, and Exhibit Q for the preliminary injunction motion.

THE COURT:  All right.  Are there -- let me ask, and I don't want to put you on the spot, Mr. Velarde, but do you have objections to those, or are there any that can go in without objection?

MR. VELARDE:  Your Honor, I would object to just I, J, and L.

THE COURT:  I didn't hear.  I thought he said I, J, K, and Q.  Did I miss something?

MR. VALDES:  I said I, J, K, and Q, yes, Judge.

MR. VELARDE:  Understood.  So I and J, your Honor.

THE COURT:  You object to I and K?  So J can come in without objection?

MR. VELARDE:  No, your Honor.  I and J.  J, as in Jack.

THE COURT:  Okay, I'm sorry.  With the audio it's not coming out clear.

Can you tell me if there's any that you do not object to?

MR. VELARDE:  Yes, your Honor.  I don't object to any of the other exhibits that Mr. Valdes has identified, only as to two, and that's I, which is Docket Entry 222-9, and J, which is Docket Entry 222-10.

THE COURT:  So K, Docket Entry 222-11, and Q, Docket Entry 222-17, are admitted without objection, and we will address the objections to I and J as they are presented.

(Plaintiff Exhibits K and Q received in evidence.)

THE COURT: Do you intend to present any live testimony, Mr. Valdes?

MR. VALDES: Any live testimony? From my client, Judge, Mr. Noel Mijares.

THE COURT: You intend to call Mr. Mijares?

MR. VALDES: Yes.

THE COURT: I don't see him on the Zoom. Is he with you?

MR. VALDES: He is with me. We went on one computer, because every time this sets up, it starts getting, like, the background. So it's better just to have us in here.

THE COURT: All right. So go ahead and call your witness.

MR. VALDES: I call Mr. Noel Mijares.

NOEL MIJARES,

   called as a witness by the Plaintiff,

   having been duly sworn, testified as follows:

THE COURT: Let's have Mr. Mijares, for the benefit of the court reporter, spell his first and last name.

THE WITNESS: N-O-E-L, M-I-J-A-R-E-S.

THE COURT: Mr. Valdes, you understand that you are only questioning Mr. Mijares with respect to the motion for preliminary injunction. So just stick to whoever you need to present to the court in support of that motion.

MR. VALDES:  Yes, Judge.

THE COURT:  Make sure you are close to the mic so we can all hear you.

MR. VALDES:  Yes.  I am going to hand Mr. Mijares Exhibit Q, which was not -- it was not objected to, and I want him to review it.

THE COURT:  I'm sorry, which exhibit?

MR. VALDES:  Exhibit Q.

THE COURT:  Okay, Exhibit Q.

Are you able to share the screen, Mr. Valdes?  I know some people are not comfortable.

MR. VALDES:  It's difficult here, the way we are set up here today.

THE COURT:  That's all right.  I can look at it as you speak from the docket entry.  Let me just pull that.

I have Docket Entry 222-17 on my screen so I can follow along.

DIRECT EXAMINATION

BY MR. VALDES:

Q.  Mr. Mijares, were you able to read over your affidavit that was entered through Exhibit Q?

A.  Yes.

Q.  Would you just briefly state, in summary, what your affidavit states and how it relates to this injunction motion?

A.  This affidavit was created on the 20th of April of 2021,

and it relates to an incident that occurred with one of our clients in the state of Florida in which we had been -- we had been notified that there had been an objection on one of their files, and they wanted for us to stop serving subpoenas.

Now, when we looked at it, we did not have that order, that case in our system. So we were not able to do anything as it pertains to that objection that had been raised.

That caused a great deal of confusion, a lot of hand holding with the client, if that makes sense. We had to explain to the client that they had accidentally sent the order over to Unisource California, and the client was under the impression that the order was with Florida, but it was not.

It also appears that, at the time we had the conversation with the client, the client informed us, Vivian Dalacio, which is the head paralegal for the law firm, informed us that she had spoken at the time with Joe May, and also had received calls from Amy Castillo out of the Texas office for Unisource California.

She was under the impression that that was our company, and I explained to her what happened. She immediately notified them to stop all work, and all the orders were then resubmitted back to us.

That was the affidavit in a nutshell.

Q. When you state that when you reached out to the client, was that a client you said that was based in Florida?

A.  Yes, that client is out of Fort Lauderdale.  I believe the affidavit also talks about another client incident out of the Orlando area that happened, the same thing.

Q.  And how long was Unisource Discovery, Inc., the Florida Unisource, working with this client?

A.  With that client, for years.

Q.  And where, at that point, did you get the client -- did the client -- how did you clear that situation up?

A.  We had to do a lot of holding hands.  You know, the objection was a serious one.  The attorney was very upset.  We had to explain to the attorney that we had no control over those files because we didn't have them.

He wanted to know how that happened.  We explained to him that it had gone to an email that was set up, pretty much what we believed, to be a confusing email because it says Records FL or flrecords@unisourcediscovery.com, and that caused confusion.  They thought that was a Florida email.

So the triggering point also was why didn't they -- were notified that -- at the time that those orders had gone to the wrong location, and I couldn't answer that for them because I am not Joe May and I am not Amy Castillo.

Q.  Okay.  I am going to go look at the back part of the affidavit of Rudi Daka.

Who is Rudi Daka?

A.  She is our operations manager in Florida.

Q.   Okay.   And what was her position with this situation?

A.   She's the one that fielded the original phone calls from the client and the office.   Once it was elevated, she is the one that handled that.

Q.   Okay.

A.   She's been with the company for, I would say, almost 15, 14 years.

Q.   And Mr. Mijares, how many incidents like this has occurred since you have been working with Unisource California?

A.   How many incidences like this have occurred in the past few months, in the past year, in the past 15 years?

Q.   Let's say in the last three years.

A.   It's all happened pretty much in the last year and a half, two years, to our knowledge, that we have been able to find. We have already recorded, I believe, over 19 instances where we have had different clients being reached out to.   We have had orders being poached.

We have had, you know, a lot of problems with that because it's affecting our business.   It's affecting our services.   The owners are going to California.   They don't understand the process, the Florida Rules of Civil Procedure process.   They don't understand the ePortal process.

So, you know, they are going under our name filing things that are incorrect, not following through when there is an objection, not knowing what to do, not filing ePortal

correctly, not submitting notices of production with the reports and with the case information.

All of this comes back to us, and then they call us asking what's going on, what are you guys doing? So it's very frustrating.

We have recorded 19 or 20 instances to date with clients, names, dates, times, case information, the amount of orders. I mean, some of these orders are 85 subpoenas. These are significantly big, important, you know, cases. So it adds up. So it's been very, very bad for us.

MR. VALDES: Judge, Mr. Velarde, I am going to enter Exhibit I. I think that was another one that was not objected to. I think J and K were the objected ones. Exhibit I --

MR. VELARDE: Let me confirm that. I am pretty sure Exhibit I was one of the objected ones.

THE COURT: I and J were objected to; K and Q were not.

MR. VALDES: Your Honor, I have Exhibit K now in front of me.

THE COURT: Docket entry 222-11, Exhibit K, I have it on my screen.

BY MR. VALDES:

Q. Mr. Mijares, can you take a minute and review that document?

In summary, what does that document state? And if you

could explain that to the court.

A.   This is one of the known instances we received last October.  We received an email from a client to please destroy all copies of documents and records received on a specific matter and not to issue any additional subpoenas.

With regards to that email from the attorney, we did an internal review.  We found that the records -- the order had gone to California Unisource, and it was handled by California/Texas office.

They had copied on that email -- actually, they had sent on that email to Florida Records that it's not one of our emails.  We don't have an email called Florida Records or recordsfl@unisourcediscovery.com.

So there was also copied Amy Castillo, and myself, Jeanette Castillo, from a law firm, Ryan Sawyer, the attorney from that law firm, Don Winters, the paralegal from that law firm, and, basically, we responding back from our customer orders department letting them know that we will obviously stop all work if we have that case under objection, which we did not.

We informed them to please remove certain specific emails, like recordsflorida@unisourcediscovery.com, advantage@unisourcediscovery.com, amy@unisourcediscovery.com, and we informed the client that they needed to send their orders and requests to orders@unisourcediscovery.net and

advantage@unisourcediscovery.net.

That was followed up by an email, and the email was from Amy Castillo. And it's a confusing email. We believe that she was confused. She was responding to customer orders, which is us, and she thought it was responding to her customer orders, saying thank you for telling her to remove the other email addresses.

I do not know why she is emailing to them still. And then when she realized that she did that error, she immediately emailed again saying sorry, disregard, in capital letters, knowing that she had made an error in saying that.

So it was clear to us that the intent of California and Texas at this junction was to actively take our clients. It was actively poaching our business in Florida.

That was followed up by an email to Steven Cerasale, which, basically, we were trying to get his attention on this matter because it's affecting our revenue, it's affecting our business, affecting our clients with objections that are not being properly attended to, and it's affecting our staff, and it's affecting everything. So we sent an email to Steven, and that email is cease and desist third notice, malicious interference.

"Steven, it appears that you continue to actively interfere with Unisource Discovery business clients in multiple states."

That includes -- the reference in multiple states was that we had also learned about a Louisiana client.  There was another law firm in Louisiana from one of our national carriers that was also approached by Amy Castillo and Joe May, and they canceled all the orders we had with them even though we showed them we are the ones that actually have the national carrier contract.  That caused a great confusion as well.

But going back to this email.

"Your actions are in further violation of the shareholder agreement.  Govern yourself accordingly."

When I wrote that to him, my intent at the time of writing was for him to really seriously stop these actions, to basically go and tell his staff you need to stop going after Unisource Florida clients.

For starters, they can't do that.  Steven is barred by the shareholder agreement from going after business in Florida. He knows that.  Everyone that signed the agreement knows that. But that didn't stop it.  That email went out on October 14. It was followed up again just to make it more clear.

"Steven, for the record, your actions have caused damages."

By that time, we had learned already that the attorney out of Orlando was no longer going to use our services.  That was a bad thing that happened, and we had to say to him the seriousness of it.

So the email said: "For the record, your actions have caused damages. You have stolen orders from Unisource Discovery, Inc. clients with full knowledge thereof. Your staff has responded to OC on a stolen order that is under objection."

That's the intent of this. And this was followed again on May 26 with another email to Mr. Steven Cerasale.

"We have been informed that you are actively interfering with our business operations in Louisiana and Florida. In specific, you have tortuously interfered with our AIG national preferred vendor status account with the law firm of Burglass & Tankersley and the law firm of Cole, Scott & Kissane. Your office located at 4502 Centerview Drive, Suite 113, San Antonio, Texas 78228 has been actively trying to undermine our operations in Louisiana and has portrayed Unisource Discovery, Inc. in a negative light, maliciously providing false information to purge our clients. As a 40 percent shareholder of Unisource Discovery, Inc. you are hereby put on notice that your actions have caused, and continue to cause, great damage to Unisource Discovery, Inc. shareholders, employees, and clients. You are hereby noticed to cease and desist immediately from contacting Unisource Discovery clients."

I think the email speaks for itself on the record.

We have made numerous attempts to try to resolve this

amicably.  We tried to resolve this in a way that it didn't get to this point, but here we are, and we are suffering for it because we are being, and continue to be, damaged.

MR. VELARDE:  Your Honor, I need to object.  I move to strike the testimony that was just given.

We have a currently pending state court action where the plaintiff in this case alleged breaches of fiduciary duties, alleged breaches of the shareholder agreement based on the same allegations that the plaintiff's representative just testified to.

This has nothing to do with our case.  Our case is a trademark infringement case and the cancellation of that trademark.

The breach and, quote-unquote, poaching and taking clients is not relevant to our claim and certainly not relevant to anything said in the amended motion for preliminary injunction.

So I would move to strike the testimony that was just given.

THE COURT:  Since we are not before a jury, I will note what to consider and what not to consider.

But I will remind Mr. Valdes again that we are here on the plaintiff's motion for preliminary injunction.  The main prong of the analysis, substantial likelihood of prevailing on the merits as to his trademark infringement claims, and -- let

me see.

I read in the motion that it's predicated on claims for trademark infringement and counterfeiting 15 U.S.C., Section 1114, claims for false designation of origin, 15 U.S.C. 1125(a), and claim for Anti-Cybersquatting Consumer Protection Act, ACPA.

That's what I picked up from the motion.  Those are the claims that the motion is predicated on.  So the evidence needs to be restricted to that motion and anything that supports that motion.

And as everybody well knows, the four prongs of the preliminary injunction calculus are substantial likelihood of prevailing on the merits, irreparable harm, and then the balancing of the equities as to the two parties, and then the public interest.

So I would ask Mr. Valdes to limit his evidence to those matters that he needs to show for purposes of this hearing.

So I will note what to consider and what not to consider, but let's not waste time on extraneous stuff.

MR. VALDES:  Thank you, your Honor.

I just wanted to bring up the motion to strike, because if we are going to go down this route, we are essentially going to have a trial on the alleged allegations in the state court case.  I will have to present evidence

regarding everything that was just testified to, which is why I felt I moved, your Honor.

But I appreciate your ruling, and I understand it.

THE COURT:  All right.  So again, Mr. Valdes, stick to the script.

MR. VALDES:  Yes, Judge.

Considering the others have been objected to, our other exhibits, I don't think that I am going to have Mr. Mijares give any more testimony at this point.  So I'd like to pass Mr. Mijares.  He can step down now.

THE COURT:  Well, he's subject to cross-examination.

MR. VALDES:  Correct.  I'm sorry, yes.

MR. VELARDE:  I do have follow-up questions.

CROSS-EXAMINATION

BY MR. VELARDE:

Q.  Mr. Mijares, you testified today regarding Lewis Brisbois as one of the clients; am I correct?

A.  That's correct.

Q.  Are you aware of Lewis Brisbois has been a client of Unisource Discovery, LLC, the defendant in this case, since 2001?

A.  I am aware Lewis Brisbois is a national law firm with offices in 48 states.

Q.  Is that a yes?

A.  I don't know.  I don't know what clients California has.  I

am not privy to that information.

Q.   You do not know whether Lewis Brisbois is a client of Unisource Discovery, LLC?

A.   Again, I am not privy to the clients that Unisource Discovery, LLC has.

Now, I am sure, because we deal with a lot of law firms, Lewis Brisbois being a very large one and with a large presence, like I stated, in like 48 states, but, again, the Lewis Brisbois that we are speaking of in my affidavit is out of Fort Lauderdale, Florida, a client of ours out of Unisource Discovery, Inc.

Q.   Did you know where Lewis Brisbois' headquarters is located?

A.   I don't see the relevancy of that question.

THE COURT:  I'm sorry, sir.  It's not up to you to object on relevance.  That's your attorney's job.

A.   I don't know.  I don't know where the headquarters of Lewis Brisbois is.  That's why -- I don't know.

BY MR. VELARDE:

Q.   Do you know if Lewis Brisbois' headquarters is in California?

A.   I do not.

Q.   Did you know who at Lewis Brisbois contracts with vendors for the company, for the firm?

A.   I only know who Lewis Brisbois contracts in the state of Florida, where we service them, and I also know that we dealt

with multiple offices for Lewis Brisbois throughout the years.

MR. VELARDE:  Your Honor, I'd like to present the witness with an exhibit that has not been marked, because this is for rebuttal purposes.  I can present it to Mr. Valdes first via email.  I am not sure if that's the way your Honor would like to do it since we are on Zoom.

THE COURT:  Well, is it part of the record?

MR. VELARDE:  Not for the purposes of this motion, your Honor, because this testimony went outside of the scope of the amended preliminary injunction motion.  So it hasn't been made part of the record.

MR. VALDES:  I haven't seen this, Judge.  I would object to it.

MR. VELARDE:  I haven't presented it to Mr. Valdes yet.

THE COURT:  Is this an excerpt of testimony?

MR. VELARDE:  Your Honor, this is a summary which has previously been provided to Mr. Valdes in different context, the summary of all the invoices of Lewis Brisbois provided by Unisource Discovery, LLC to Lewis Brisbois from the year 2001, specifically from May 31, 2001 all the way through April 2001 -- 2020, your Honor.  I'm sorry.

THE COURT:  Mr. Velarde, I thought that Mr. Mijares testified that he doesn't know anything about the relationship between Lewis Brisbois and Unisource Discovery, LLC.

So what good is it going to do to show him invoices that pertain to the LLC?

MR. VELARDE: You are absolutely correct, your Honor. It was just out of an abundance of caution because the testimony, I didn't feel, was unequivocal that he had no knowledge. But I understand, your Honor. I do believe he ultimately said he didn't know.

THE COURT: He can correct me if I am wrong, but he said he doesn't know. I thought I heard him say he doesn't know about LLC's customers.

MR. VELARDE: Yes, your Honor.

THE COURT: On redirect that can be corrected, if need be.

MR. VELARDE: I will. In that case, I have no reason to show Mr. Mijares the invoices. So I will move on to my next question.

BY MR. VELARDE:

Q. Mr. Mijares, we are here today under preliminary motion -- or, rather, the motion for preliminary injunction regarding the trademark.

You are aware of that, correct?

A. Yes.

Q. You were also aware that Unisource Discovery, LLC was using that very same mark that is the subject of this lawsuit since 2001, correct?

A.   I am aware that Unisource Discovery, LLC had the name and the logo, and that was something that when Steven Cerasale met with me back in 2005 and we decided to create the company in 2006, we decided that the name would also be -- actually, I looked at other names, actually, and he decided that, along with me, that we would use the name Unisource Discovery.  So we registered Unisource Discovery, Inc. in the state of Florida as a separate entity.

Q.   When you mentioned the logo in your testimony, you are referring to the same design, that is, the mark that is the subject of this lawsuit, correct?

A.   Correct.  That was part of Steven's contribution in 2006, name, logo, and also software, our operating software, which was the primary reason why we even entered into business.

        That also provided us with full rights to the name and the logo.  It wasn't a trademark back then.

Q.   And that transfer was set forth in the 2006 operating agreement of Unisource Discovery, Inc., correct?

A.   That operating agreement in 2006 was at the very beginning where it detailed certain things, including the software.

        Years later we received legal notices that the software was an add-on by Steven Cerasale that he had prepared, you know, that he had told us that he had owned it.

        So multiple changes had to be made because he didn't own the software that he brought to the table as part of his

contribution.

At that time, and specific to the logo and the name, yeah, we had full rights to use the logo and the name, if that's your question.

Q.   Yes.   Just to clarify, because I want to make sure I understood, your testimony is that Steven Cerasale transferred to plaintiff all rights to the logo in June 2006, correct?

A.   No, counsel.   Steven Cerasale brought to the table the name and the software.   Years later the software turned out to be not owned by him.   We were presented with legal challenges, and we had to rectify that in.

In 2008, Steven Cerasale, being a 50 percent shareholder and board of directors, we decided that we were going to seek protection of the name and the logo because we had already expanded on a national level.   We registered with the United States Patent and Trademark Office, and in 2009 we received registration, full registration for the trademark.

Steven Cerasale was one of the first people to know that information.   And not only that --

THE COURT:   I am so sorry.   I am so sorry.   I hate to interrupt you.

You are just going on and on, and you have yet to answer the question.   You are telling me all this stuff that you want me to know about that is not in answer to the question.

Let me ask Jill, please, can you read the question?

And as to all of your answers, Mr. Mijares, just stick to answering the questions.  Your counsel will prompt information that he deems is appropriate and necessary.

THE WITNESS:  I am trying to answer the question as best I can.

THE COURT:  Right, I understand.  Oftentimes witnesses just, you know, want to tell the whole story, but you need to answer the question that is posed.  Otherwise, the day I have set aside will not even be enough.

(Question read back)

THE COURT:  That's a yes or no answer.

THE WITNESS:  Yes.

THE COURT:  Next.

BY MR. VELARDE:

Q.  You were aware and the plaintiff was aware that Unisource Discovery, LLC was using the same logo in 2006, correct?

A.  Yes.

Q.  And you were aware and the plaintiff was aware that Unisource Discovery, LLC was using the same logo from 2006 all the way through February 21, 2020, correct?

A.  I'm sorry, February what?

Q.  21st, 2020.

A.  No.

Q.  You did not know that Unisource Discovery, LLC was using

the logo during that time period?

A.  No, because in the time period that you mentioned it was just a logo and a name.  When we got it, we created the trademark.  We filed the trademark, which then produced a 2010 shareholder agreement that includes a trademark ownership and rights to it that Mr. Cerasale signed, as well as I did and the other shareholders of the company.

So it was a trademark up to February -- up to today. It's a trademark up to today.

Q.  Just so I understand your testimony.

You were aware and the plaintiff was aware that Unisource Discovery, LLC was using the logo from 2006, June 2006 through the date that you received your registration from the USPTO in 2009, correct?

A.  It was a transition.  So, yeah, we have full rights to use the name and the logo, and then we move --

THE COURT:  Again, again, listen to the question.

Jill, do you mind?  The last question.

(Question read back)

THE WITNESS:  Yes.

BY MR. VELARDE:

Q.  Then after the USPTO, the patent and trademark office -- after the patent and trademark office provided the plaintiff with a registration for the logo in 2009, you were aware that Unisource Discovery, LLC was using that trademark from 2009

through 2020, correct?

A. I'm sorry, I couldn't understand the first part of your question.

Q. Okay. I will split it up.

A. I couldn't hear it. I'm sorry.

Q. In 2009, the plaintiff received from the Patent and Trademark Office the registration for the trademark application, correct?

A. Correct.

Q. And in 2009, Unisource Discovery, LLC began using that trademark, correct?

A. Correct.

Q. And in 2009, you and the plaintiff were aware that Unisource Discovery, LLC was using that trademark, correct?

A. That is correct, yeah, correct. We uploaded the joint-owned website to include the trademark.

Q. And from 2009 through 2021, through the beginning of 2021, you and the plaintiff were aware that Unisource Discovery, LLC was using the trademark, correct?

A. Yes. Yes, of course. He was using the trademark, of course. He knew about the trademark since 2008 for registration.

Q. Not just knew, but you knew that they were using it? You knew that Unisource Discovery, LLC was using it in its business?

A.  Yes.  Unisource Discovery, Inc. provided a right to use. We didn't remove it.  We didn't ask for a licensing agreement in 2009.

In 2010, the shareholder agreement that specifically has the trademark listed, we didn't ask for a licensing agreement at that time.  You know, yes, he was using it.

Q.  I apologize.

You never asked for a licensing agreement from Unisource Discovery, LLC from 2009 through February 1, 2020, correct?

A.  That is correct.

Q.  And during that time period Unisource Discovery, LLC had the right to use the mark without restriction, correct?

A.  We had the right until we revoked the right in 2020.

Q.  Without restriction?

A.  We had the right.

Q.  Is that a yes?

A.  We revoked it, yes.

Q.  Before you got the registration in 2009.  I am only going to ask you from the period of June 2006 through 2009 when you received the registration.  Is that clear?

A.  And what is your question exactly, from June 2006 to 2009?

Q.  So my question is, Unisource Discovery, LLC had the right to use that logo, correct, in its business?

A.  Yes.  Both companies had -- excuse me, both companies had

the right to use the logo in the business.

Q.   Right.  And obviously that was not a secret, right?  You knew that at that time period?  You and the plaintiff both knew that during 2006 and 2009?

A.   The public knew that.

Q.   But the plaintiff knew that?

A.   The plaintiff very well knew that, yes.

Q.   Going back to the first line of questioning that I asked, if you remember, you testified that in June 2006 Mr. Cerasale transferred to you, or to the plaintiff, ownership of the logo, correct?  Did I remember that testimony correctly?

         MR. VALDES:  Could you repeat that?  I couldn't hear you, Victor.  I couldn't hear it very well.

         MR. VELARDE:  Sure.  I was asking Mr. Mijares if I remembered his testimony correctly, and the testimony was that in June 2006 Steven Cerasale transferred ownership of the logo to the plaintiff, and the question was, is that correct?

         MR. VALDES:  Okay.  I just wanted to get the question right.

A.   There was no agreement separated that stipulated that we had -- there was no licensing agreement.  I don't know if I understand your question because we were already a Florida registered corporation under Unisource Discovery, Inc. name. It had nothing to do from his other business, Steven Cerasale's other business, in California.

So it was a gradual transition that in 2010 -- from 2006 we had the right, full rights to the name and the logo.

In 2008, we registered it.

In 2009, we received registration certificate.

In 2010, we updated our shareholder agreement to reflect that.

So the intent was always, from the very beginning, this is how we are going to move things forward. And it did. That's how it happened.

So I think -- I hope that answers your question.

BY MR. VELARDE:

Q. I apologize. I don't think it did.

So in June 2006, Steven Cerasale transferred ownership of the logo to plaintiff?

A. In June 2006, Steven Cerasale brought, as part of his initial capital investment, the name, logo, and software.

Q. So the name Unisource Discovery Digital Document Retrieval, that's the name, and the logo, which is the subject that was trademarked in this case --

A. Yeah.

Q. -- your testimony is that both the name and the logo was transferred to the plaintiff as part of Steven Cerasale's contribution, initial contribution, to the plaintiff?

A. I think you are trying to mince the history here. You are trying to change things. I am trying to make it clear, for the

record, as best I can.

In 2006, when we did the original, the first shareholder agreement, we put everything that we needed to because we didn't know each other. We had just met. We were going into business initially. But we had the right to the name and the logo. That was clear. There was no disputing that.

In --

THE COURT: I'm sorry. How did you acquire that right in 2006? How did you get the right to the name and the logo?

THE WITNESS: Under the agreement. Under the understanding, your Honor, because otherwise we would have never named the company --

THE COURT: I'm sorry. Under the understanding, under the agreement.

What understanding? What agreement?

THE WITNESS: The original 2006 shareholder agreement.

THE COURT: So you had the right to the name and the logo pursuant to the 2006 shareholder agreement?

THE WITNESS: Correct, your Honor. Yes, we do.

THE COURT: And where did the name and the logo come from?

THE WITNESS: That was part of the contribution that Mr. Cerasale brought to do business in Florida with me.

THE COURT: So it came from Mr. Cerasale?

THE WITNESS: Correct.

THE COURT: So Mr. Velarde has been trying to determine from you whether Unisource Discovery, Inc. acquired the name and the logo from Mr. Cerasale, and you keep telling us that that's not quite right.

I think in good faith he's trying to establish what your view is of it, but he can't seem to get an answer from you.

I think I just got an answer from you, and you tell me if I am right or wrong.

THE WITNESS: You did, your Honor.

THE COURT: Unisource Discovery, Inc. acquired the name and the logo, meaning Unisource Discovery and the little picture --

THE WITNESS: Correct.

THE COURT: -- from Mr. Cerasale who brought it to the table when the shareholders agreement was executed? Is that correct, or am I missing something?

THE WITNESS: That is correct, your Honor.

THE COURT: All right.

Mr. Velarde, do you have any follow-up to that question?

MR. VALDES: I do, your Honor, just a quick clarification for the record.

BY MR. VELARDE:

Q. The shareholder agreement of 2006, I just want to make clear, Mr. Mijares, you are referring to the operating agreement for Unisource Discovery, Inc. that was executed in June 15, 2006, correct?

A. Yes.

MR. VELARDE: Your Honor, I don't have any further questions.

THE COURT: All right.

Redirect?

THE WITNESS: Can we have 15 seconds, your Honor?

THE COURT: In the middle of your testimony?

THE WITNESS: Well, no. Go ahead, go ahead.

MR. VALDES: I am in a spot that he is here. I want to move to --

THE WITNESS: I wanted to show him -- go ahead.

REDIRECT EXAMINATION

BY MR. VALDES:

Q. Mr. Mijares, is Unisource Discovery, Inc. the sole owner of the trademark?

A. Yes.

Q. All rights have been given to Unisource Discovery, Inc., correct?

A. That is correct.

Q. And when did you receive full rights, 100 percent,

ownership of the trademark and the logo?

A.   Well, it was first provided to us by the United States Patent and Trademark Office in 2009.  And for purposes of corporate due diligence we, all the shareholders and the board of directors, updated all company agreements in 2010, on June 28, 2010, under a closed corporation shareholder agreement that specifically details the trademark and the ownership of the trademark on that document.

Q.   I know Mr. Velarde mentioned an agreement back in 2006.

     After that agreement, were there any other agreements that were entered into between you and Mr. Cerasale?

A.   No.  The only agreement between 2006 and 2010 was that operating agreement, shareholder operating agreement, and that agreement became null and void in June 28, 2010 under the closed corporation shareholder agreement.

     The closed corporation shareholder agreement clearly has an entire section dedicated to specifically detailing all previous agreements between the parties.  Any type of agreements, all of them became null and void at that time.

Q.   And the closed corporation shareholders agreement, which you are referring to that was in 2010, is that the agreement that is in place now, that holds now?

A.   Correct.  That has been the agreement, active agreement until today, right now.  There's never been an amendment to that agreement.

Q.   What does that agreement in 2010, how does it speak to the trademark issue and the logo and ownership?

A.   The agreement is very specific and very direct.  The agreement states, under Section 13, trademarks, that the trademark Unisource Discovery Digital Records Retrieval is owned by Unisource Discovery, Inc.

Q.   To go back to the issue at hand, which is the preliminary injunction, in your opinion, as the owner of the trademark, how has that been infringed upon by Unisource Discovery, LLC, and how has that affected your business as far as infringing upon the patent?

A.   It's been awful.  It's been awful for the past year and a half because they have been actively reaching out to Florida and Louisiana clients of ours which they never did before.  In our entire business relationship they never did that.

We respected each other.  If we got -- if we got an order from California, that -- and they do.  They still -- to this day they call us from California, clients, and we just redirect them back to their telephone number or their email.

But that was always the courtesy.  That was always the -- not only a courtesy, but also part of the agreement in 2010.  The closed corporation shareholder agreement specifically prohibits that type of action.

But the infringements have been steady and very continuous for the past year and a half, reaching out to our

clients confusing them by saying they are Unisource Discovery when they are telling them yes.  They created an email, Records FL, to further confuse our clients.

We have, like I stated before, over 19 known instances of confusion with the use of our name and the use of our trademark.

MR. VELARDE:  Your Honor, I would, for the record, want to file the same objection.

THE COURT:  Yes.

MR. VELARDE:  There is nothing to deal with the trademark claim.  This is all pending action in state court.

MR. VALDES:  Well, that's what I was going to go back to.

THE COURT:  Your objection is noted, Mr. Velarde.

MR. VALDES:  I have one more question.

BY MR. VALDES:

Q.  So basically dealing strictly with the patent and the trademark logo --

THE COURT:  I'm sorry, Mr. Valdes.  You are talking patent?  This is not a patent case.

MR. VALDES:  I mean trademark.  I'm sorry.

BY MR. VALDES:

Q.  With the trademark -- this is dealing directly with the trademark and the mark that's been used, different names for it, the trademark and mark, how has Unisource Discovery, LLC

infringed upon and affected Unisource Discovery, Inc. in Florida, the mark itself, how they use the trademark?

A.   In correspondence.  Every time they correspond with our clients they are using our name and our logo, our trademark, confusing them, making our clients believe that they are actually negotiating and dealing with us when, in fact, our records, our subpoenas, are going to Texas and California.

MR. VALDES:  I don't have any other questions for Mr. Mijares at this time.

MR. VELARDE:  I have some quick redirect questions with -- or rather recross, I apologize.

THE COURT:  All right.  I will allow it, but it better be brief.

RECROSS-EXAMINATION

BY MR. VELARDE:

Q.   First, going to the 2010 shareholder agreement that you mentioned today, Mr. Mijares, in your recross that 2010 shareholder agreement that you referred to doesn't change the ownership or rights that plaintiff has over the name and logo, does it?

A.   I don't think I understand your question, counsel.  When you say doesn't change the rights, I don't understand what you are trying to say.

Q.   Was there an additional transfer from Mr. Cerasale to the plaintiff represented or reflected in that 2010 shareholder

agreement that you refer to?

A.   The shareholder agreement is the -- I'm sorry, I am not understanding your question.  If you could rephrase that a little bit better for me.  I am not understanding.

Q.   Sure.  I don't want to bring up previous testimony, but just for the purposes of our understanding here.

In June 2006, you testified that plaintiff received from Mr. Cerasale the name and the logo, correct?

A.   Correct.

Q.   Now, you mentioned in your recross there was another agreement in 2010 that nullifies the 2006 agreement, correct?

A.   It does, correct.

Q.   But that 2010 agreement doesn't change who owns the logo and the name Unisource Discovery, correct?

A.   Of course it does, yeah.  The 2010 agreement specifically has Section 13 in it for a reason, and that is to make sure that everyone understood that the trademark, the trademark name logo, who owns it, and it specifically states who owns it, Unisource Discovery, Inc.  There is no in between there.  It's very clear in black and white.

Q.   Mr. Mijares, you remember taking a deposition in this case, correct?

A.   Of course, yeah.

Q.   That deposition was June 30, 2021.  Do you remember that?

A.   Of course.

Q.   And your attorney was there and I was there?

A.   Yeah, yeah.  We spent all day there.

Q.   So Mr. Mijares, I'd like to present to you your testimony at that deposition.

A.   Sure.

Q.   If I may.

MR. VELARDE:  Mr. Valdes, your Honor, I am going to present pages 110 and 111 of the deposition transcript, which is Docket Entry 150-10.

I wonder if I may share the screen?

THE COURT:  Sure.

BY MR. VELARDE:

Q.   Mr. Mijares, do you see on your screen the excerpt of your deposition transcript, Docket Entry 150-10?

A.   Well, let me make sure.

THE COURT:  I'm sorry.  The way it's done, you have reminded him of his deposition.  Now you say do you remember being asked this question and giving this answer, and you recite him into the record.

MR. VELARDE:  I agree, your Honor.  I just wanted to make sure Mr. Mijares can see it because I am sharing my screen.  I just wanted to make sure there is no technical issues.

THE COURT:  We can all see it.

THE WITNESS:  Half of it.  I can only see half.

THE COURT:  I am sorry.  What do you mean you can only see half?

MR. VALDES:  There is the yellow portion, I guess, that's highlighted.  We can't really see that.  It's cut off there.  We could see the other page.

THE WITNESS:  There we go.

BY MR. VELARDE:

Q.  Mr. Mijares, do you remember that at your deposition I asked you whether --

MR. VELARDE:  I am going to read here the 2010 closed corporation shareholder agreement.

THE COURT:  I'm sorry, I'm sorry.  Deposition page and line, question.

MR. VELARDE:  Yes, your Honor.

BY MR. VELARDE:

Q.  Page 110, line 22 through page 111, line 5.

QUESTION:  "The 2010 closed corporation shareholder agreement that you referred to reaffirms but doesn't change the fact that it was transferred in 2006, correct?"

ANSWER:  "It just doesn't change the facts at all."

QUESTION:  "Right."

ANSWER:  "It doesn't change the facts of who owns the" --

MR. VALDES:  Victor, sorry.  With me it stops on line 25 where it says "correct."  We don't see anything more after

that, like the screen -- like that's the bottom of our screen.

MR. VELARDE:  Do you see this part?

MR. VALDES:  Move it a little more.

MR. VELARDE:  Let me see what I can do here.

BY MR. VELARDE:

Q.  The answer was, "It just doesn't change the facts at all."

The question was, "Right."

ANSWER:  "It doesn't change the fact of who owns the trademark.  It doesn't change the facts of who owns the name."

Mr. Mijares, you testified at your deposition that the 2010 shareholder agreement doesn't change who owns the logo, correct?

A.  Can you put that back up?  I want to read what's above it. I want to read your questions above it, because my statement there, my answer in the deposition -- what I have learned is there's always stuff above it that correlates to my response.

THE COURT:  I'm sorry, Mr. Mijares.  I will allow your attorney to seek completion of the testimony, but you seem to be trying to act as your own attorney, but you do have an attorney representing you.

One moment.

I will give you that opportunity, Mr. Valdes.  So this was a question and answer.  You remember the question and answer.

What's the next question?

MR. VELARDE: The next question, your Honor, is, was Mr. Mijares --

BY MR. VELARDE:

Q. Were you telling the truth at your deposition?

A. Yes.

THE COURT: Okay. Anything else?

MR. VELARDE: Yes, one more question, your Honor. I apologize.

Your Honor, no more questions.

THE COURT: Okay.

MR. VELARDE: Thank you.

THE COURT: I will give the opportunity to Mr. Valdes, if he deems it appropriate, to seek to introduce further portions of the deposition.

MR. VALDES: I am not going to, Judge, at this time.

THE COURT: Thank you.

That concludes Mr. Mijares' testimony and the exhibits that have been admitted in support of the motion for preliminary injunction, those exhibits being K and Q.

Anything else from the plaintiff before I hear from defendants on the motion for preliminary injunction by way of evidence?

MR. VALDES: No, Judge, because the last ones, I guess you still have to rule on their objections.

So, no, not at this time.

THE COURT:  I'm sorry, say that again?

MR. VALDES:  No.  The only thing -- I guess the ones that were agreed upon, we have entered that.

I said no, not at this time, I don't have -- I mean, I am just going to have to wait on I and J, for you to rule on those later.

THE COURT:  I'm sorry.  I thought you were withdrawing them.  I said you can try to introduce them during the course of the testimony, and you said you are not going to put them on now.

MR. VALDES:  I misunderstood, Judge, totally.  I thought we put those to the side to say those are being objected to, and you were going to, like, I guess rule on those.  I totally misunderstood, Judge.  I didn't know that that was the case.

THE COURT:  Well, that's how it's usually done.  If there is an agreement and no objection, I just introduce them.  I admit them ahead of time without objection.  Then if there's objection, then you try to introduce them, and then I hear the objection.  Because both Mr. Velarde said he objected to and he didn't give me any grounds.

MR. VALDES:  Right.

THE COURT:  So it sounded to me like you were not presenting them.

MR. VALDES:  I apologize, Judge.  Like I said, I

definitely was not waiving that. I just thought that you were going to address those later. I apologize.

THE COURT: Well, I don't see how I could address them later if it's not -- are you trying to introduce through your client, Mr. Mijares?

THE WITNESS: Yes, your Honor.

THE COURT: No, I am not addressing you, sir.

Mr. Valdes.

MR. VALDES: Yes.

THE COURT: Did you want to introduce I and J through Mr. Mijares?

MR. VALDES: Yes, yes. Definitely, Judge, yes.

THE COURT: All right. So tell me, then, what I and J are and what your basis is. I mean, what they are? And then I will hear Mr. Velarde's objections.

MR. VALDES: I will introduce I through Mr. Mijares.

THE COURT: Do you want to present that to Mr. Mijares and ask him if he recognizes it, and if you seek admission, then I will hear from Mr. Velarde his objection.

BY MR. VALDES:

Q. I am giving you Exhibit I. If you could take a minute to look at it.

A. Yes.

Q. Do you know what the document is?

A. I do.

Q. Can you please tell the court what the document entails?

A. Exhibit I, it is our report of known instances of customer confusion that Unisource Discovery, Inc. has experienced.

THE COURT: And your objection, Mr. Velarde?

MR. VELARDE: Your Honor, first, it's hearsay within hearsay. The document is Mr. Mijares' recitations regarding emails that were between nonparties who are not present at the court.

Second, your Honor, this is absolutely irrelevant to the issues. This has to do with, again, the allegations in the state court case of the plaintiff regarding the taking or poaching of clients.

And finally, your Honor, this was not mentioned as a basis in the preliminary injunction motion. It wasn't mentioned in any reply. It's not properly before the court.

THE COURT: All right.

Your response, Mr. Valdes?

MR. VALDES: I think if you look into this document, Judge, specifically, I guess, number 7, there was issues where the offices were contacted directly with the logo, the company letterhead, and it was issued through California.

So it just goes back to -- it's kind of like dealing, the poaching issue, dealing with the trademark issue. It kind of overlaps because they use the confusion of the trademark, the letterhead, these kind of bogus emails to kind of confuse

the clients.  I think it goes to the crux.

I will agree with Mr. Velarde that some of these are just dealing with actually poaching of clients, but some of the contact goes down to the issue of how they are using the trademark and their emails to their advantage.

THE COURT:  All right.  Anything else?

MR. VELARDE:  Your Honor, just one more point.

That doesn't change the fact this is a recitation of plaintiffs remembering what may or may not be included in some email communications from nonparties.  It's hearsay within hearsay.  It's completely inadmissible.

THE COURT:  All right.  The hearsay objection is well-taken.  Hearsay is not permitted to be introduced to support customer confusion.  I have done quite a few of those cases.

So Exhibit I will not be admitted.  It will be marked for identification, but the objection of hearsay, to the extent it seeks to support claims of customer confusion, that objection is sustained.

What about Exhibit J?

BY MR. VALDES:

Q.  Mr. Mijares, I am going to hand you Exhibit J.  Take a minute and review the document.

A.  (Witness perusing document)

Go ahead.  I am familiar with the document.

Q. Could you please speak to the court.

What does that document entail?

A. This is verified calculated damages as of May 2021 pertaining to the extent of losses from the trademark infringement.

Q. And Mr. Mijares, how did -- what does that document, what does it list, and how is it detailed stating that the trademark infringement by Unisource Discovery, LLC caused damages to Unisource Discovery, Inc.?

A. We listed damages that would pertain -- I am sorry, excuse me, that were listing damages that were caused by the trademark infringement by clients. We were listing clients from the orders per month the trademark infringement has cost us, we are listing also the unauthorized use of the trademark, the value of not having a license to use the trademark, and what that's cost us.

That's what we are detailing here along with a list of witnesses, potential witnesses, that we could call upon to assert those claims.

Q. And was that during the time where you revoked -- was some of the damages that were included there during the time when you revoked their use of the trademark and they weren't allowed to use it anymore?

A. Correct.

THE COURT: Any objection?

MR. VELARDE:  Your Honor, the objection is hearsay, lack of foundation, and completely irrelevant.

This is another summary which was prepared by Mr. Mijares, presumably, detailing numbers and supposedly damages from -- I see three or maybe four clients.

It's not best evidence, your Honor.  There hasn't been any invoices, any financial statements, financial documents, anything other than a two-page document prepared by Mr. Mijares ostensibly showing as proof, quote-unquote, proof of damages.

So it's hearsay, lack of foundation, and completely irrelevant because it has to do with the poaching of clients which is a pending case in state court.

THE COURT:  Well, as I alluded to before, the four prongs of the preliminary injunction burden on the plaintiff include a second prong, irreparable damage.  Irreparable damage is that damage that cannot be quantified in terms of dollars.

This does not seem to be in support of the preliminary injunction and may have something to do with other things, but that objection is also sustained.

So only K and Q are admitted, and of course I and J will be marked for identification.

That concludes the plaintiff's presentation.

Let me hear Mr. Velarde.

Do you have anything to present as to the preliminary injunction motion?

MR. VELARDE:  I apologize, your Honor.  I would have maybe a five-minute direct of Mr. Cerasale.

THE COURT:  All right.

MR. VELARDE:  The defendant would call Mr. Cerasale.

One administrative point, you Honor, that I wanted to bring to everyone's attention.

Mr. Cerasale has a knee condition which requires him to stand up from time to time.  I just wanted to make your Honor aware.  That's why he's been standing up.

THE COURT:  That's quite all right.  Actually, for that reason I wanted to get the evidentiary part done so as not to not unduly inconvenience anyone that doesn't necessarily need to be here.

So go ahead.

STEVEN CERASALE,

   called as a witness by the Defense,

   having been duly sworn, testified as follows:

THE DEPUTY CLERK:  State and spell name for the record.

THE WITNESS:  Steven Cerasale.  First name Steven, with a V.  Last name, C-E-R-A-S-A-L-E.

DIRECT EXAMINATION

BY MR. VELARDE:

Q.  Mr. Cerasale, we are here about the amended motion for preliminary injunction.  I am going to ask you a few questions

regarding your business, Unisource Discovery, LLC, and the subject logo.

First, when I refer to the logo, you understand that I am referring to the mark that was trademarked and is the subject of this litigation, correct?

A. Correct.

Q. Who create that had logo?

A. I did.

Q. When did you create that logo?

A. Early on in the business. Probably 2002 or 2000, right in that range. We started the business in April 2001. So sometime shortly thereafter. I don't remember how long, though.

Q. Do you remember when you began using the logo in your business?

A. Immediately. I think I sent you -- I think I just sent you an invoice. I think I sent you an invoice that shows that we billed -- that has a picture of the logo on it where we billed Lewis Brisbois in 2001.

Did you get that? I emailed that to you.

Q. I haven't checked emails yet, Mr. Cerasale, but I appreciate that.

So just to clarify your testimony, in 2001 you used the logo in your invoices?

A. Yes, we did.

Q.   And when I say "you," I mean Unisource Discovery, LLC used the logo in its invoices in 2001, correct?

A.   I'm sorry, I didn't understand.  Say it again, please.

Q.   Unisource Discovery, LLC used the logo in its invoices in 2001, correct?

A.   On an invoice -- as an example of an invoice I sent you from September 2001.

Q.   And Unisource Discovery, LLC also used the logo on its website, correct?

A.   Correct.

Q.   And that was as early as 2001 and 2002, correct?

A.   Correct.

Q.   How long has Unisource Discovery, LLC been using that logo?

A.   Well, since the beginning.  Since somewhere in the month or two or three after we started the company which is April in 2001.

Q.   To the present?

A.   Pardon?

Q.   All the way through the present, to today?

A.   Yeah, that is until today.

Q.   Has anyone ever restricted your ability to use that logo?

A.   No.

Q.   Has anyone ever policed how you use that logo?

A.   Policed?  Is that what you said?

Q.   Yes, policed.

A.   No, I don't think so.  They didn't tell me about it.

Q.   Just to be more specific, then, has the plaintiff in this case ever policed the way you use your logo?

THE COURT:  I'm sorry.  You know, policing is a term of art in intellectual property, and it sounds to me like Mr. Cerasale is not understanding that.  I think he's thinking of cops coming up at his door.  So how about if you explain it a little better.

MR. VELARDE:  Absolutely.

I apologize, Mr. Cerasale, if I wasn't clear.  I will rephrase the question.

BY MR. VELARDE:

Q.   Throughout Unisource Discovery, LLC's existence has defendant -- or, rather, the plaintiff in this case ever told you how to use that logo?

A.   No.

Q.   Has the plaintiff ever said you can't use the logo a certain way?

A.   No.

Q.   Who had the right to determine how that logo is used?

A.   Whoever was using it, as far as I know.  We were in -- Noel was, too, because he is -- he was using it.  So we had both been using it simultaneously ever since the Florida operation was in place.

Q.   And that started in 2006, correct, when the Florida

operation was in place?

A. Yeah, yes.

Q. And the idea -- what was the idea there? Would you guys mutually -- was it an amicable relationship between the defendant and the plaintiff?

A. Yes, it was. Initially that was true, yes.

Q. Did you ever transfer any ownership of that logo to the plaintiff?

A. No.

Q. Did you ever transfer any ownership of the name to the plaintiff?

A. No.

Q. To your recollection, how long has Lewis Brisbois been a client of Unisource Discovery, LLC?

A. At least since the invoice that I sent you, which was from September 2001.

Q. And has Lewis Brisbois been a continuing client of Unisource Discovery, LLC through the present?

A. Yes.

MR. VELARDE: Your Honor, I have no further questions.

THE COURT: All right.

Cross, Mr. Valdes?

CROSS-EXAMINATION

BY MR. VALDES:

Q. Good morning, Mr. Cerasale.

A.  Good morning.

Q.  I wanted to go over a few things.

You said that -- are you aware of the 2010 shareholders agreement, the closed corporation agreement?

A.  Yes.  I don't know it word for word, but I am aware of it.

Q.  Did you sign it?

A.  Yes.

Q.  And in that agreement -- you stated earlier on direct that you never had given any rights to Unisource Discovery, Inc. of the trademark?

MR. VELARDE:  Objection.  Mischaracterizes the evidence.

THE COURT:  I'm sorry.  That's not quite what I heard.

If you want to, I can ask Jill to look up that question and answer if you need to refresh your recollection.

MR. VALDES:  Yes, please.

THE COURT:  Jill, do you know where to look?

(Requested portion of the record read back)

THE COURT:  Those were the questions and answers, Mr. Valdes.

MR. VALDES:  Okay.

BY MR. VALDES:

Q.  So to go back, who owns the trademark and the logo at this time?

MR. VELARDE:  Object to the form of the question.

It's a double question in one.

THE COURT:  Yes.

MR. VALDES:  Let me rephrase that.

THE COURT:  Right.

Is there any dispute that there was a trademark issued by the trademark office?  There is not, right?

MR. VELARDE:  There is not, your Honor.

THE COURT:  Okay.  So there is a dispute as to whether the trademark is subject to cancellation.  So because of that I don't know that the question who owns it is appropriate, but I think I understand.

I don't think there is a dispute that Unisource Discovery, Inc. registered the trademark in 2009.  So you can go from there.

BY MR. VALDES:

Q.  Mr. Cerasale, when Unisource Discovery, Inc. registered for the trademark with the USPTO, did you object to that?

A.  No.

Q.  And as of --

MR. VALDES:  Give me one second.  My agreement got cut off here.

BY MR. VALDES:

Q.  Did you receive a right to use the use of the trademark? Did you receive a right from the company to use the trademark?

A.  No.

Q.   In the shareholders agreement in 2010, did you --

MR. VALDES:  I wanted to see if I could share the screen.  That's why I have an issue.  It's going to be difficult for a second.

THE COURT:  It's tricky.  It is tricky to share the screen.  Some people can do it, some people can't.

MR. VALDES:  The way I have it here, it's difficult the way I have it set up.  Give me one second.  I want to look at my pile right here.  Give me one second.

(Pause)

One part of the agreement, Judge, which is 1.3 in the closed shareholders agreement --

THE COURT:  All right.  Is the shareholders agreement part of the docket?

MR. VALDES:  Yes.

THE COURT:  If you point to Mr. Velarde, he can do us a favor of bringing it up.

MR. VALDES:  DE 222-6.

THE COURT:  All right, there you go.

MR. VALDES:  Thank you.

Thank you, Victor.

BY MR. VALDES:

Q.   Mr. Cerasale, I wanted to point you to 1.3.

THE COURT:  Do you want to read it out to him and ask him a question about it?

MR. VALDES: Yes, I will read it.

BY MR. VALDES:

Q. Mr. Cerasale, I am going to read this. This is the agreement that you said earlier that you signed, which is a closed corporation agreement, shareholders agreement. It's 1.3.

It says: "Trademark. Unisource Discovery Digital Document Retrieval is a registered U.S. trademark of the company. Without limiting the foregoing, the parties agree that the company shall be entitled to use the trademark Unisource Discovery as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise."

A. That's what I am reading, too.

Q. In your opinion does that state that Unisource Discovery, Inc. is the owner of the trademark?

A. It does not.

MR. VELARDE: Objection, your Honor.

THE COURT: I'm sorry, I'm sorry. Let me hear Mr. Velarde.

You had something? The question is compound?

MR. VELARDE: Yes, your Honor, the question asks for an opinion of a lay person regarding a document that's in writing. I am objecting on that basis.

MR. VALDES: Well, I was just asking if he was one of

the shareholders.

THE COURT:  I'm sorry.  You can ask him his understanding of that, if he has one.

MR. VALDES:  Exactly.  I am asking him as a shareholder/owner of the company that he signed the agreement.  And it's just one question.  I only have one last question.

BY MR. VALDES:

Q.  And my question, what does that paragraph -- what's your understanding of that paragraph?

A.  It says -- to me it says that Unisource Discovery, Inc. has the right to use the name and the logo.  It doesn't say that no one else can.

THE COURT:  Any other questions?

MR. VALDES:  No, no more questions, Judge.

THE COURT:  You can take it down, Mr. Velarde.

Any redirect?

MR. VELARDE:  No, your Honor.

THE COURT:  Thank you.

Did you have any documents to submit, Mr. Velarde?

MR. VELARDE:  No, your Honor, I do not.

THE COURT:  So just the testimony of Mr. Cerasale, all right.

Then on your rebuttal case, Mr. Valdes, anything?

MR. VALDES:  Anything?

THE COURT:  Do you have anything else to offer, sir?

MR. VALDES:  No.

THE COURT:  Okay.  So then we have completed the evidentiary portion of the hearing which only pertained to the preliminary injunction hearing, and as I said, this is a matter of which I would issue a report and recommendation to Judge Gayles.

I think now would be a good time to take a -- it's lunchtime.  We can take a lunch break.

MR. VALDES:  Judge, I didn't mean to interrupt you.  I was going to state something that I was going to say earlier.

THE COURT:  Yes.

MR. VALDES:  At around 1:00 I have an MRI that's been set.  I had a brain tumor a while back, and I had to go back, and I keep rescheduling it.  I really don't want to miss it because they are hard to get, and I just -- I probably do need a break during that time.

I did not know this was going to go that long.  I thought I could do it at the lunch break.

THE COURT:  Well, it was in the notice that we were going to address them all.

MR. VALDES:  Right.

THE COURT:  Are you telling me you want to keep going until 1 o'clock, and then you need to leave?

MR. VALDES:  Well, I was going to go -- I was going to try to go there now to try to see if they could get me earlier.

It probably takes 20 minutes to get there, and then reconvene.

THE COURT:  But an MRI is not something that it's like drinking a glass of water.  It takes time.

MR. VALDES:  It's an open one, yeah.

MR. VELARDE:  Your Honor, I would -- we need to have the motions for today.

MR. VALDES:  I understand we do.  I am just --

THE COURT:  All right.  Do you want to take an extended break now and come back later, like 2 o'clock, or something like that?

MR. VALDES:  That would work for me, yes.

THE COURT:  Okay.  So like I said, I don't have anything else scheduled.  So we can take a break now, come back at 2 o'clock.

If you run into trouble, call our chambers and let Mr. Velarde know, and we will start later.

MR. VALDES:  Okay.

THE COURT:  Hopefully you can get it done quickly, but I don't know.  Those things take time because it's a machine just going around and around taking pictures.

MR. VALDES:  It's an open one now.  It's not the one that's closed.  I don't have to take anything.  Hopefully everything -- I have been in the clear for a while, but I need to get it in.

THE COURT:  No, I am very mindful of health issues,

and I am always very conscious, but it was clear that we were going to address all of these motions today.

Do you have any objection to resuming at 2 o'clock, Mr. Velarde?

MR. VELARDE:  No, your Honor, as long as we resume.  I don't think we will need more than an hour to get through the rest.

THE COURT:  All right.  So let's plan to resume at 2 o'clock.  If your thing takes longer, you let us and Mr. Velarde know so we will know when to expect you.

MR. VALDES:  Thank you, Judge.

THE COURT:  And Mr. Cerasale is excused.  He doesn't meed to come back, unless Mr. Velarde wants him.

THE DEPUTY CLERK:  Before we take a recess I wanted to get some clarification as far as to the two objected exhibits.  I know you mentioned they would be noted for identification purposes.

THE COURT:  Yes.

THE DEPUTY CLERK:  They are not being admitted; is that correct?

THE COURT:  They are not.  They are not.

THE DEPUTY CLERK:  Thank you so much, Judge.  I appreciate it.

THE COURT:  Jill, are you available for the rest of the day?

THE COURT REPORTER:  Yes, Judge.

THE COURT:  We will meet again at 2 o'clock.  If there's any complications, Mr. Valdes will let us know.

Thank you very much.

MR. VALDES:  Thanks again.

THE COURT:  Of course.

(Recess taken 12:15 p.m. through 2:03 p.m.)

                    AFTERNOON SESSION

THE COURT:  Back in session.  Back on the record in case number 20-CV-23276, Unisource Discovery, Inc. v. Unisource Discovery, LLC, et al.

MR. VELARDE:  Before we continue, I had called your chambers about this.

I had received an email from Mr. Valdes who says that he needs to begin at 2:30 p.m.  The email I received was at 1:47 p.m. saying that he was just going into the MRI, and he expects it will last 15 minutes.

THE COURT:  All right.  And who do we have showing up for Mr. Valdes?  Do we have somebody there?

MR. VELARDE:  I believe it's Mr. Mijares, Mr. Valdes' client.

MR. MIJARES:  I am here, your Honor.

THE COURT:  So it sounds like your attorney needs more time to have the test.  So we will then all log back in at 2:30, and hopefully he will join us at that time.

THE WITNESS:  I appreciate that, your Honor.

THE COURT:  All right.  Thank you very much.

(Recess taken 2:03 p.m. through 2:32 p.m.)

MR. VELARDE:  Good afternoon, your Honor.  Thank you for coming back on.

Counsel for the parties discussed stipulating to the introduction of one more exhibit, your Honor, as evidence relating to the evidentiary portion of this hearing.

THE COURT:  All right.

MR. VELARDE:  That's Exhibit 8 in the defendant's exhibit list and Exhibit B -- it's the same exhibit -- Exhibit B in the plaintiff's.  It's the same.  The docket entry is 223-8.  It's also found in 150-4.  Your Honor, that's the trademark registration application that the plaintiff submitted to the USPTO.  We would like to introduce that with stipulation as an exhibit.

THE COURT:  As part of the defense case?

MR. VELARDE:  Yes, your Honor, as part of the defense case.

THE COURT:  No objection, Mr. Valdes?

MR. VALDES:  No objection, Judge.  I spoke to Mr. Velarde before reconvening.

THE COURT:  So the preliminary injunction record is supplemented with the addition of Defendant's Exhibit 8, and that's Docket Entry 213-8, correct?

MR. VELARDE:  Correct, your Honor.

(Defense Exhibit 8 received in evidence.)

MR. VALDES:  I just wanted to, because my client brought this up to me -- I don't know if Victor has an issue with this -- also, we would like to enter the renewals.

This is the renewals, Victor, of the trademark.  It's the renewal of the same thing.

This is all judicial notice, as we spoke about.  They are public records.  The renewal of the trademark, which is Exhibit C, it's DE 223 on the docket entry.

THE COURT:  I'm sorry.

I am reading Exhibit C, USPTO Notice of Acceptance Under Section 8, and Section 8 and 9, Renewals of Trademark, Docket Entry 222-3.

Plaintiff is seeking to supplement the record with that exhibit.

Any objection, Mr. Velarde?

MR. VELARDE:  It's a 29-page document.  I wanted to review it really quickly.  I apologize.

(Pause)

No, your Honor, no objection.

THE COURT:  That one is admitted and supplements the plaintiff's record for the preliminary injunction motion.

(Plaintiff Exhibit C received in evidence.)

THE COURT:  We can now proceed to the cross-motions

for summary judgment on Count 1 of the counterclaim where the defendant/counter plaintiff is seeking cancellation of the trademark, and each side is claiming that they are entitled to summary judgment on this claim.

Because plaintiff's motion, Docket Entry 141, was filed first, I will hear from plaintiff.  Then I will hear from defendant.  It's Docket Entry 151.

Let me just say, because they are cross-motions they are generally like two sides of the same coin.  So I will ask that each party, in their presentation, address their arguments and counter arguments so that we get a good picture of what exactly is at issue.

And you can point me -- I did note -- let me see.  I did note in the response to plaintiff's motion filed by defendant, the response being Docket Entry 149, that there was a statement that there was no statement of undisputed facts filed in support of plaintiff's motion.

As you know, our rules require that that be done.

So I will ask Mr. Valdes to also, among other things, address that issue.

Go ahead, Mr. Valdes.

MR. VALDES:  Judge, our issue, as it deals with their position of cancellation -- sorry, sorry, sorry -- as is stated in their counterclaim, the cancellation of trademark, they principally are at a fraud claim, an effort to circumvent the

four-year statute of limitations.

When the plaintiff sought to prevent the defendant's unauthorized and unlawful use of the trademark, it says it right here in our motion, and they have 12 years of continuous use, your Honor, okay, and then after 12 years of continuous use suddenly they bring up this claim of fraud when obviously it's been in the record -- we have seen the testimony prior to this -- that both had access to use the trademark.  And when you have an issue of fraud, it has to be pled with particularity, and in this case they have not even pled that at all.

I mean, the defendant in this case is a signatory to the closed corporation.  He is a member of the corporation.  He is a principal of the corporation.  Him and Mr. Mijares are pretty much even stockholders, give and take, that at the end Mr. Cerasale, for his purposes, had to give up 10 percent of his ownership over to Mr. Lutter.

However, it's really -- their claim is definitely subject to dismissal because of the fact that this has been going on.  The counterclaim is something that is just in order to circumvent, and this is something that's been contractually assigned, which both sides agree.

The closed corporation shareholder agreement signed by both parties, admitted by both parties, under testimony by Mr. Mijares, by Mr. Cerasale clearly states what the intent of

the parties were at the time of signing the agreement.

So that is our position in opposition to their motion.

THE COURT:  I'm sorry, I thought you were arguing your own motion for summary judgment?

MR. VALDES:  Oh, I thought I was arguing against theirs.

THE COURT:  I asked you to argue your points and counter their points.

Do you want to add anything in support of your own motion?

MR. VALDES:  Well, our motion, it goes actually hand in hand with theirs, with what I just argued.

Basically, there is not -- there was not exactly -- there was no fraud.  It was 13 years.  As I stated before, there was no fraud ever stated.  It was never stated with particularity.  It's really the same argument in a sense that this was -- we are bound here, as we sit here, and both the parties agreed.

Even you, your Honor, had questioned my client.  We have argued this, and we both are in agreement, or at least it's clear from the record that we are operating over one agreement, the closed corporation shareholders agreement, where that's what -- that's exactly what we are saying.

There's been no evidence of fraud, nothing to that point, not even, like, even a scintilla of evidence of any

fraud, and that's really our position at this point.

THE COURT: I'm sorry. But as I understood it, it was fraud on the trademark office that is the basis for cancellation?

Mr. Velarde, am I correct?

MR. VELARDE: That's correct, your Honor.

THE COURT: All right. So you are saying that there was no fraud --

MR. VALDES: No fraud.

THE COURT: -- to the submission of the application? Are you saying there's no fraud, or they failed to --

MR. VALDES: No, they --

THE COURT: Don't interrupt me.

MR. VALDES: Sorry.

THE COURT: Are you saying there's no fraud, or are you saying they didn't plead it with particularity as required by Rule 9(b), or both?

MR. VALDES: I'm sorry, Judge, for interrupting. I apologize. But I am actually pleading both.

One, there was no fraud. The applications were stated -- Mr. Cerasale stated under oath that he knew that this was being applied for. There was no objection to him applying for the trademark. There was no objection. Thirteen years under this, and so that's what we are stating.

Then, yes, number two, you know, assuming that there

was, that's arguendo, then there was no particularity that they pled it with.  But there was no (inaudible) this was applied for.  In fact, both parties are very well aware of it, and Mr. Cerasale knew.  He stated under oath that he knew that they were applying for it, and that was exactly the agreement.  And it was documented in the agreement, which is part of the record.

THE COURT:  Anything else either in support of your motion or against their motion before I turn to Mr. Velarde?

MR. VALDES:  That's it.

THE COURT:  Go ahead, Mr. Velarde.

MR. VELARDE:  Thank you, your Honor.  I will address the points how they were presented.

First, the argument regarding the statute of limitations has already been heard by your Honor at least on two or three different occasions.  Your Honor had ruled on that argument.

Docket Entry 118 your Honor held that the statute of limitations does not apply to the counterclaim for cancellation.

Docket Entry 167 your Honor again ruled for a second time the statute of limitation does not apply to the counterclaim on the cancellation of the trademark on the basis of fraud.

And the reason, your Honor, as we argued now several

times, is both the statute and the case law applying it clearly say that when a cancellation claim is brought on the basis of fraud, there is no statute of limitations.  Those can be brought, as the statute says, quote, at any time, end quote.

And the courts that have considered it, one example of the case law is *Progressive EMU v. Nutrition and Fitness, Inc*. Your Honor has cited that statute in support -- rather, that case in support on Docket Entry 118, and the quote from that case is:  "Section 1064 expressly provides that petitions can be brought at any time because the statutory text is clear the court need not provide further analysis.  The statute either supplies the statute of limitation, or, more accurately, eliminates all possible limitations."

So, again, to reiterate, the statute of limitations does not apply to the defendant's counterclaim to cancel the trademark on the basis of fraud.

And the next argument that was made is that the allegations in the counterclaim are not sufficient under Rule 9 to allege fraud.

Your Honor, I would like to point to the allegations in the counterclaim.

If I may share the screen, your Honor?

THE COURT:  Yes.

MR. VELARDE:  Your Honor, this is an excerpt of the counterclaim, Docket Entry 166.  Paragraph 29 of the

counterclaim states:

"On October 15, 2008, Unisource Florida" -- that's the plaintiff -- "through Noel Mijares filed a registration with the U.S. Patent and Trademark Office" -- USPTO -- "to register the mark."  And it cites to the trademark registration.

Paragraph 30.  "Unisource Florida's trademark registration application included the following material misrepresentations."

Number 1.  "Unisource Florida claimed that it was the owner of the mark when, in reality, Unisource California was the owner."

Number 2.  "Unisource Florida claimed that it first used the mark as early as March 1, 2001 when, in reality, Unisource Florida did not use the mark until after it was incorporated in June of 2006," and it cites plaintiff's response to defendant's request by admission.

Paragraph C.  "Unisource Florida falsely claimed it was the owner of the mark and no other person, firm, corporation, or association has the right to use the mark in commerce knowing full well that Unisource California was the owner of the mark, had been using the mark since 2001, and had every right to continue using the mark."

So, your Honor, that's paragraphs 29 and 30 of the counterclaim very clearly setting forth the date that the misrepresentations were made October of 2008, what the

misrepresentations were.  There were three misrepresentations that were quoted.  And who made them?  The plaintiff.  And to whom?  The USPTO.  So the allegations are very clear and sufficient to establish a fraud claim.

Finally, the argument was that the facts and evidence in the record do not establish fraud substantively.  Your Honor, the case law has been very clear on this.

Starting with *in re Bose*, B-O-S-E, which is a federal circuit case essentially establishing the type of scienter that a party needs to show to establish fraud to cancel the trademark, and *in re Bose* made it very clear, drew a very clear line of demarcation, and said if the applicant actually knew that the statements were false, that is fraud.  If you can only show that he should have known, that's not enough.

That's the distinction that *in re Bose* the federal circuit made, the distinction between actually knew that it was false or should have known that it was false.

And, your Honor, respectfully, I submit that we have presented more than enough evidence to show that the plaintiff actually knew that the three representations that are the subject of our counterclaim that it made to the USPTO were false when the plaintiff made those representations to the USPTO.

If I may share my screen, your Honor, I want to go through, very quickly, through each of those

misrepresentations.

So, your Honor, I have on the screen an excerpt of Docket Entry 150-4. This is included in our statement of material facts for our motion for summary judgment. This is an excerpt of the application, the trademark registration application, submitted by the plaintiff, and at the bottom it was signed by Noel Mijares as president of the plaintiff, and it was signed on October 15, 2008.

We are going to go one by one through each of the three misrepresentations very quickly, the first one being, "The undersigned declares that, to the best of his or her knowledge and belief, no other person, firm, corporation, or association has the right to use the mark in commerce." That's the misrepresentation number one.

Why is it false? In his deposition, Mr. Mijares, on behalf of the plaintiff, was asked, "So that's correct" -- this is page 214, line 21 of the deposition transcript, which is 150-10 -- "So that's correct" -- is the question -- "that Unisource Discovery, LLC" -- my client -- "had the right to use the mark in its business from 2006 to 2009, right?"

The answer is, "Yes."

Further on, page 140, line 90 -- excuse me, line 9, I asked Mr. Mijares, as the representative of the plaintiff, "Going back to the logo" -- so before the registration of the trademark of the logo -- "Unisource Discovery, LLC and

Unisource Discovery, Inc. both had the right to use the logo in their business, correct?"

ANSWER: "Yes."

QUESTION: "And they did use their logo in their business, both companies, Unisource Discovery LLC and Unisource Discovery Inc. starting in 2006?"

ANSWER: "Correct."

On line 22.

QUESTION: "They continue to use the logo on their business, on the website, starting June 2006 through September 16, 2019, correct?"

ANSWER: "Correct."

In other words, your Honor, the plaintiff knew that my client had the right to use the logo when he signed the application in October of 2008, and, yet, despite that knowledge, told the USPTO that nobody else has the right to use that logo.

The Eleventh Circuit in *Angel Flight of Georgia v. Angel Flight America* held: "Purposefully failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark."

The court went on to hold that: "The trial testimony revealed *Angel Flight West* was aware other organizations were using names such as the Angel Flight at the time the

registration application was filed but did not disclose that information to the Patent and Trademark Office."

Further, the district court ruled *"Angel Flight West* committed fraud in connection with its trademark application when Dennis Torres represented that to the best of his knowledge and belief no other person, firm, corporation, or association had the right to use the Angel Flight mark."

Ultimately, the Eleventh Circuit held:  "The district court did not err by invalidating the United States trademark registration that was at issue in that case on the basis of alleged fraud."

That is the exact same representation that the plaintiff made to the USPTO, that nobody else had a right to use that mark knowing full well when he made that representation that that was false.

Another example, *Sovereign Military Hospitaltaller*, this is an Eleventh Circuit.  The Eleventh Circuit held:  "To prove the fraud claim based on misrepresentations in the declaration oath, the Florida priori" -- the party in that case -- "was required to establish that Pace was aware other organizations were using the mark either in an identical form or a near resemblance, and knew or believed those other organizations had the right to use the mark."

That's all you have to prove to establish the necessary scienter for fraud, that the party knew it was false,

the party knew that somebody else was using the mark, and knew that somebody else had the right to use that mark.

The Eleventh Circuit went on to say: "This requirement is implicit in our holding in *Angel Flight*, but we upheld the district court's cancellation of the mark because the declarant purposely failed to disclose the right of others to use the mark at issue even though he was aware organizations throughout the country were using the mark and had the right to do so."

Your Honor, there is several examples. I am only going to address two. There's several examples where this type of fraud was sufficiently held to be -- rather, sufficiently proven for summary judgment.

Here is one example. *MPC Franchises v. Tarantino*, the Second Circuit in 2016. In that case, Tarantino had applied for a trademark, and one of the misrepresentations that were made was "to the best of his knowledge and belief no other person, firm, corporation, or association had the right to use the mark." The same representations that is at issue in this case.

The Second Circuit went on to state that *Tarantino* argued -- just like the plaintiff does here -- argued that he lacks fraudulent intent with respect to those representations.

"*Tarantino* argues that the Federal Circuit's 2009 decision in *Bose* makes clear that the scienter standard for

fraud on the PTL was met only when an applicant actually knew that the material statements in the trademark application were false, and that it is not enough that the applicant should have known about such falsity."

The Second Circuit went on to say:  "We agree with *Tarantino* about the degree of scienter required for the plaintiff to successfully allege fraudulent trademark procurement but nevertheless find no genuine issue of material fact that Tarantino fraudulently obtained his mark."

And the basis, your Honor, was that the district court found "no material issue of fact existed in Tarantino's actual knowledge of falsity with respect to the misrepresentations alleged by the plaintiff."

Citing the lower court, "Tarantino knew that plaintiffs were already franchising pizzerias using the very same mark that he was attempting to register for the same purpose."

It's same thing that happened in this case.  The plaintiff knew that the defendants were using the same mark in their business, knew that the plaintiff -- that the defendant had a right to continue to use the same mark in their business, and nonetheless misrepresented to the USPTO that nobody else other than the plaintiff has that right.

The Second Circuit affirmed the district court's grant of summary judgment on the claim seeking cancellation of the

mark in the *Tarantino* case.

*East West, LLC v. Rahmen*, Eastern District from Virginia (2012), same issue.  Summary judgment was entered to cancel the trademark on the basis of fraud because the applicant had misrepresented to the USPTO other people's rights to use the mark.

The Virginia District Court cited:  "It's undisputed that the defendant, Rahmen, had actual knowledge that plaintiff was using the name Caribbean Crescent in commerce well before he filed the application of the trademark registration."

So the court said, "Even viewing the evidence in a manner most favorable to the defendants, defendant Rahman's statement that no other person had the right to use the mark in commerce would still constitute a false and misleading statement.  Defendant's assertion on the registration application is both patently false as well as insufficient to satisfy defendant Rahman's duty to make a full disclosure as to all relevant facts."

And then, finally, "The mere fact that the defendant, Rahman, by his own admission asserts" -- this is the important part -- "The mere fact that the defendant, Rahman, by his own admission asserts that he submitted the application while having held such a belief entails clear and convincing evidence."

In other words, the fact that plaintiff admitted that

he knew that defendants had a right to use the mark, and he knew that when he submitted the application, that is clear and convincing evidence of fraud.

The Virginia district court granted summary judgment in favor of the plaintiff to cancel the registration.

To recap, your Honor, first, and, in my opinion, very clearly established misrepresentation to the USPTO is, "The undersigned declares that to the best of his or her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce."

The plaintiff knew that was false when he told the USPTO that.

The second misrepresentation, your Honor, is when did the plaintiffs start using the mark? And so I am going to discuss first how that was a misrepresentation, and second I am going to discuss why that's material.

First, Docket Entry 150-4, at page 2, this is again the trademark registration application that the plaintiff filed, signed off on, and submitted to the USPTO states: "The first use anywhere" -- the date of the first use anywhere by the plaintiff. "At least as early as March 1, 2001."

Next. "First use in commerce date." The first time, in other words, that the plaintiff ever used the mark in commerce.

Response: "At least as early as March 1, 2001."

So, first, why is that false?  To begin with, the plaintiff admitted that it was false.

In response to the defendant's request for admissions, Docket Entry 150-5, at page 1, the plaintiff states:  "Admitted that Unisource" -- the plaintiff -- "did not use the mark until it acquired ownership/title on June 15, 2006."

So the plaintiff admitted, because he has no choice but to admit, that the plaintiff did not use that mark until 2006.  Yet, the plaintiff told the USPTO that he first used the mark in March of 2001.

Docket Entry 150-11, the articles of incorporation of the plaintiff shows that the plaintiff didn't exist in 2001. The plaintiff's existence began when they filed the articles of incorporation on June 15, 2006, and on page 2 of the articles of incorporation said that the effective date of the corporation, i.e. the plaintiff, shall be July 1, 2006.

So this clearly establishes that what the plaintiff told the USPTO was false.  The plaintiff did not first use the mark in March of 2001.  Rather, the plaintiff used the mark first, by his own admission, June 15, 2006.  That's why it's false.

Let's discuss why that's material.

The defendants declared in their declaration, 150-1 at page 1, the defendants started their business in May, May 11, 2001.  That's when the defendants created the mark.  The mark

didn't exist before then. That's when the defendants started using the mark in their business, May 2001.

The Eleventh Circuit in 2016 held -- this is *FN Herstal v. Clyde Armory*: "Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over the other users." That's why that misrepresentation matters.

The plaintiff told the USPTO that it first used the mark in March 2001 two months before anybody used mark, two months before the defendants created the mark, and started using it in their business.

The reason is, if my clients now go to the USPTO and try to register their trademark, the USPTO will be under the false impression that the plaintiff actually used the mark before my clients did, and under the Eleventh Circuit holding the plaintiff, in the mind of the USPTO, the plaintiff would have the priority over that mark based upon a clear admitted misrepresentation by the plaintiff to the USPTO. That's why that misrepresentation is material.

So to recap.

THE COURT: I'm sorry, Mr. Velarde, are you saying it's material to the granting of the trademark?

MR. VELARDE: Yes, your Honor.

THE COURT: Because you seem to be saying it's material to your clients attempting to obtain its own

trademark.

MR. VELARDE:  Yes, your Honor.

THE COURT:  Materiality is, you know, you tell them a fib that is a little thing, and it doesn't matter.

So can you give me your rationale, and not that I am disputing, but can you clarify the materiality vis-à-vis the USPTO?

MR. VELARDE:  The materiality is simply that it gives the USPTO an understanding, a false understanding that this mark was used by plaintiff for at that point seven years, and it shows that the plaintiff has this priority over this mark. Anybody who comes in and says after 2001, after March 2001 doesn't have priority.

So as far as the USPTO is concerned, the plaintiff started using that mark in March 2001 and therefore has a priority of using the mark after March 2001.  So that's why it's material.

I understand your Honor's point about -- because this has been argued before in other cases, your Honor, as to whether or not the date is material, and it comes down to whether the plaintiff or the applicant would have received the registration had it told the truth, right?

And, your Honor, the truth is, at this point the reason why it's material is because it falsely gives -- it gives the USPTO the false impression of a priority in the

plaintiffs that doesn't exist.  It's a falsehood.  The plaintiff didn't use the mark until 2006.  That's why it's material, your Honor.

But to clarify, what I wanted to state is, this representation is the second of three, each of which the courts have held are sufficient by themselves to cancel the trademark.

So I wanted to reiterate, as well to summarize, the two misrepresentations that we have gone over so far, before I get into the third, one being the plaintiff told the USPTO that nobody else had the right to use the mark by itself enough to cancel a trademark under *Angel Flight*, Eleventh Circuit precedent, and under case law that I submitted to your Honor.

The second misrepresentation which, again, on its own is enough to cancel the trademark is the fact that the plaintiff told the USPTO that it first used the mark in March in 2001, but in reality the plaintiffs did not use the mark in March 2001 but not until 2006, and my clients used the mark in May of 2001.

So, your Honor, those two misrepresentations, again, each of those two misrepresentations is enough by themselves for the entry of summary judgment as to the cancellation of trademark.

The third misrepresentation is on page 4 of Docket Entry 150-4 where the plaintiff stated:  "The undersigned declares that he/she believes the applicant to be the owner of

the trademark/service mark sought to be registered."

This misrepresentation, your Honor, is not as clearcut as the other two that we went over. The other two the plaintiff simply admitted that they were false. This one the plaintiff has not admitted that it is false.

But under *in re Bose*, and the progeny that came after *in re Bose* including *Angel Flight*, "Fraud is established if you can show that the plaintiff actually knew that it was false or could not have held a reasonable belief that it was true."

So on this third misrepresentation, your Honor, I submit the plaintiff cannot have held a reasonable belief that this representation was true.

The reason is, your Honor, that the plaintiff testified in his deposition that in 2006 Mr. Cerasale, as part of his contribution, provided the name and logo to the plaintiff.

I am quoting from page 64, line 9 through 10 -- 9 through 11. "Steven Cerasale transferred part of his contributions the name and logo in 2006."

The transferring of the name and logo is set forth in the June 15, 2006 operating agreement of the plaintiff. And as the plaintiff admitted at his deposition, the 2006 operating agreement was effective until it was nullified in 2010 by a subsequent shareholder agreement.

So from 2006 through 2010 the document governing

whether or not the plaintiff owned the logo and the name was the 2006 operating agreement.

The 2006 operating agreement is part of the record at Docket Entry 150-3 at page 5 of that agreement, Section 4.10. The agreement reads as follows:

"The board of directors further agrees that in the case that Steven Cerasale is no longer a director, officer, or agent of the company" -- that is the plaintiff -- "at that time the board of directors shall modify the current name of the company Unisource Discovery to be different in name only."

Your Honor, this provision shows that Mr. Cerasale did not sell his rights, did not sell all of the rights to the name and logo to plaintiff. This provision shows that if Steven Cerasale left the plaintiff, for whatever reason, the plaintiff is required to change the name. It cannot keep the name.

That shows that the plaintiff, in 2006, when this was signed, could not have reasonably believed that it owned the mark, could not have reasonably believed that it owned the name because the agreement was clear if Steven Cerasale leaves, the name and the mark go with him, they don't stay with the company.

So to reiterate, misrepresentation number one, the plaintiff said the undersigned declares that to the best of his knowledge and belief no other person, firm, corporation, association has the right to use the mark in commerce.  Under

the applicable and binding case law, this misrepresentation is sufficient to cancel the trademark on its own.

Misrepresentation number two. Plaintiff's first use of the mark anywhere was at least as early as March 1, 2001. Plaintiff's first use of the commerce date in commerce was at least as early as March 1, 2001. The plaintiff admitted that's not true.

Plaintiff of course cannot claim otherwise because the plaintiff did not exist in 2001, and as I mentioned to your Honor, my clients, the defendants, did not use the mark. The mark didn't exist until May 2001.

The third misrepresentation. Plaintiff stated the undersigned declares that he/she believes the applicant to be the owner of the trademark/service mark sought to be registered.

I submit that the plaintiff could not have held a reasonable good faith belief that that was true when he told the USPTO that.

So, your Honor, those are the bases of the trademark cancellation counterclaim based on three very clear, at least in two of them, admitted misrepresentations to the USPTO, and as to the third one, the last one, a misrepresentation that is based upon -- or, rather, the plaintiff could not have reasonably believed was the truth when he made that representation in October of 2008.

Your Honor, as to the statement of material facts, we submitted the statement of material facts in support of our motion for summary judgment.

Docket Entry 150-1 is the declaration in support of the material facts, Docket Entry 150, and in that declaration, the defendants stated that they were not involved in preparing the registration application, that Unisource California, Unisource Discovery, LLC, the defendant, was not involved, and that neither of them had knowledge regarding the misrepresentations that were made to the USPTO.

That declared statement was not contradicted by any evidence, any affidavit, any statements by the plaintiff either in a responsive statement of material facts or in any other evidence submitted to the court.

For that reason, your Honor, we believe that the record evidence is more than sufficient to warrant the cancellation of the trademark on the basis of fraud.

THE COURT:  I did note that in your arguments against plaintiff's motion you said they had not submitted a statement of undisputed facts.

Did they submit a statement of disputed facts in a position to your client's motion?

MR. VELARDE:  No, your Honor.

THE COURT:  So that Rule 56 and the local rule, there is nothing pursuant to that rule that was filed by plaintiff?

Is that the state of the record?

MR. VELARDE:  Yes, your Honor, no statements of material fact or disputed facts were submitted.

THE COURT:  Okay.  Let me see.  Let me give Mr. Valdes an opportunity to add anything else with regard to the cross-motions before we move on.

MR. VALDES:  Yes, Judge.

As to the undisputed facts, I mean, it may have been titled differently, but it was -- our disputed facts was part of our introduction on our memorandum of law in opposition to the defendant's motion for summary judgment, which basically lays out all the disputed facts using the mark and so forth.

As far as where we stand in this case, this is really a case, Judge, where it's our position that did Noel Mijares and Unisource Discovery have the legal right to go ahead and use the mark and at the same time apply for the application with trademark, and our position that it is.  Okay.

There is case law that's very much on point, *Money Store v. Harriscorp Finance*, 689 F2d 666, 671 Seventh Circuit (1982).  All it says is that "any applicant who believes he possesses a legal right to use the mark."  And in that sense, if you have the legal right to use the mark, he could apply for the mark.

The 2001 date was provided to Mr. Mijares by Mr. Cerasale when they were going to apply for when the mark

was used.  This isn't when he was going to apply.  When the mark was used.

Remember, this did not become a trademark.  It did not become a trademark.  It did not go through the USPTO office until the Unisource Discovery, Inc. applied for it, approved, confirmed by it.  It was an initialed in the 2006 agreement. It was confirmed in writing in 2010.  There was never any objection.  There is nothing fraudulent that came out of it.

It was like both parties -- it's almost like when Mr. Velarde made his argument on the other side stating that Unisource Discovery, Inc. -- I mean California could not use the logo it had been using all these years.  It's kind of the same argument.

This is something that was agreed upon by the shareholders.  They applied for under oath, asked Mr. Cerasale if he knew that this patent was applied for.  He said yes.  I mean, they were partners.

The issue here that everything comes up after-the-fact that we both can agree upon that now we have a disagreement because that's why we are in litigation, but there was never any fraud until the USPTO office, it was applied for because he had the legal right, and that's all the law required.  As long as he has the legal right to apply for the trademark, and he did.

It was processed and ratified by -- it was initialed

by the 2006, and it was ratified and confirmed in writing by all parties in 2010 and to this day, and to the point that even in 2018, you even have Mr. Cerasale resigned from the board of directors.

This was all approved.  It was under oath.  There is no evidence of fraud, any intent by Mr. Mijares to provide any fraudulent information to the USPTO.  I think both parties wanted this to occur, and it was confirmed in writing.  That is our position on that.

THE COURT:  Okay.  Then let's see.  I also have plaintiff's second motion for sanctions, Docket Entry 183, and I believe that this is on the same grounds as was addressed before.

MR. VALDES:  Let me see.

MR. VELARDE:  We believe it is.  I don't know if the plaintiff has a different view of it.

THE COURT:  Mr. Valdes, I am looking up 183, second motion for sanctions, and I think, from what I read, it looks like it's basically the same arguments on your first motion for sanctions that was denied.

MR. VALDES:  Let me -- if you could give me a second, Judge, I could take a look at it.  One minute.

THE COURT:  Yes.

MR. VALDES:  Thank you.

THE COURT:  While we wait, Mr. Velarde, was the first

motion for sanctions also based on the Florida statute?

MR. VELARDE: Yes, your Honor.

THE COURT: Do you have handy the docket entry where it was denied?

MR. VELARDE: Your Honor, I believe that is 167. I will confirm that now.

MR. VALDES: Victor, wasn't the first case law statute of limitations?

THE COURT: I was asking as opposed to Rule 11, is what was catching my eye.

MR. VELARDE: Yes, your Honor, 167 is the docket entry.

THE COURT: I am looking at the order, Docket Entry 167 at page 2, and it says: "The motion for sanctions pursuant to 57.105 because defendant's proposed counterclaim is barred by the applicable statute of limitations and inadequately pled."

Now, is the second motion for sanctions, Mr. Velarde, addressed to the counterclaim or addressed to the motion for summary judgment, which I am looking on page 2? Because disputed facts exist regarding the alleged representation made to USPTO well over 12 years ago, defendant's motion for summary judgment is inappropriate on defendant's count for cancellation -- Count 1 for cancellation of trademark.

Was that your intent, to direct the second motion for

sanctions to the motion for summary judgment as opposed to the counterclaim?

MR. VALDES:  Yes.  It was directly linked to them filing their motion for summary judgment based --

THE COURT:  Okay.  So you are saying that -- so in your second motion, which you are now addressing, you are saying they should not have filed this motion.  I think -- all right, okay.

I don't think there I have delved into whether 57.105 was appropriate because I think there was some argument about the case had been removed.

Am I on the right track there, Mr. Velarde, or not?

MR. VELARDE:  No, your Honor.

THE COURT:  That must have been another case then.  All right, nevermind.

So we go on the assumption that 57.105 applies, which I am not 100 percent sure that it does, and that the motion for sanctions is addressed to the motion for summary judgment, and your basis, Mr. Valdes, is that this motion for summary judgment violates 57.105 because?  And can you tell me why?

MR. VALDES:  Well, because, as I stated, as was stated earlier from their motion, we feel is a frivolous motion.  It really -- it lacks sufficient evidentiary support as a matter of law that there was any fraud on the part of the plaintiff when they applied for the USPTO trademark application.  It was

something that was agreed upon.

They are trying to use -- manipulate my client, Mr. Mijares', deposition statements from the 2006 to 2010 agreement where, as we sit here today -- and Mr. Cerasale even admitted under oath that they knew that the application, the 1.3 paragraph in the closed corporation shareholders agreement stated it directly, that Unisource Discovery, Inc. -- forget about the ownership.  Unisource Discovery, Inc. was applying for the trademark application.  It was a partnership, and that's how they were going to move forward.

So to raise to the level of fraud is a giant leap, and I think it was an inappropriate motion to be filed, and that's why we are seeking sanctions.

THE COURT:  Do you have any comments on that, Mr. Velarde?

MR. VELARDE:  Yes, your Honor.

We reviewed the motion for sanctions.  Although we can assume that it's directed at the motion for summary judgment, the arguments are the same arguments that have already been made.  They are already ruled upon.

In their motion for sanctions, the plaintiff states that a 13-year delay in seeking to cancel the trademark is inappropriate.  That argument has been made and rejected already.

The second basis for the second motion for sanctions,

your Honor, is -- I am quoting here from the conclusion of the motion -- "Defendant's amended complaint does not contain the required particularity to satisfy the stringent burden under Rule 9."

In other words, while it might be addressed to the summary judgment motion, the argument, the substance of the motion is arguing the sufficiency of the pleading of the counterclaim, and that's something that your Honor has already ruled.  The sufficiency of a pleading is not the proper basis for a 57.105 motion.  Your Honor had ruled that before they filed the second motion.

So when plaintiff filed the first motion, your Honor, the defendants requested, in their opposition, that they be awarded attorney fees, reimbursement of attorney fees for having to respond to the motion because at that time your Honor had already ruled that the statute of limitations didn't apply.

Your Honor, in Docket Entry 167, declined to reimburse defendants their attorneys' fees.  Your Honor, the defendants again had requested, this time I think with more bases, that they be reimbursed their attorneys' fees for having to respond to the second motions for sanctions, which essentially we argue is the same thing that has already been addressed and ruled upon by your Honor.

THE COURT:  And then the last one, which is the one that most recently became ripe, is sort of like a global motion

that the defendants are making to strike or dismiss the complaint, to basically to strike plaintiff's pleadings, both the affirmative pleadings and the defensive pleadings, to the counterclaim, to enter default as to the counterclaim, and this one is based on failure to comply with the court's orders.

I will let you just hit the highlights of the motion. First Mr. Velarde, then I will hear Mr. Valdes' response.

MR. VELARDE:  Thank you, your Honor.

This was a motion I had mentioned to your Honor this morning that I believe is partially, if not completely, mooted by the court's order, Docket Entry 2021.

In Docket Entry 2021, the court extended the time --

THE COURT:  I'm sorry, you didn't mean 2021.  221?

MR. VELARDE:  221, yes.  221.  I apologize.

THE COURT:  Okay.

MR. VELARDE:  In Docket Entry 221, the court granted a motion for extension and allowed the parties until the end of this year, December 31, 2021, to submit a joint pretrial stipulation.

My motion for sanction -- my motion to dismiss that we are discussing now, your Honor, was based on the fact that I was unable to get the plaintiff's counsel to confer with me to prepare a joint pretrial stipulation.

For obvious reasons, the pretrial stipulation is necessary for the parties to discuss what evidence is

necessary, what issues are not in dispute.  It's the difference between a three-week trial and a two-day trial.

So I have attempted to confer with plaintiff's counsel.  I attempted over 12 different times in writing to schedule a conference with plaintiff's counsel, beginning on October 5, specifically saying that we need to discuss the joint pretrial stipulation, but have been ignored every -- I haven't been able to get plaintiff's counsel on the phone since at least October 5, 2021.

This motion was essentially, your Honor, a cry for help and also a representation to your Honor that we have not gotten any, any help in getting this joint motion -- joint stipulation prepared and filed by the plaintiff.

It's another example, your Honor, which is an issue that we have been having throughout the entire litigation, of plaintiff's refusal to confer and general uncooperativeness.

THE COURT:  So you are saying that because Docket Entry 221 has now granted an extension for the joint pretrial stipulation to December 31, 2021, that grounds for the motion has now sort of been mooted?

Do you contend that there are other grounds that support the motion, or do you want to hold the motion in abeyance pending compliance with the latest court order?  And then, if there is compliance, I mean, you can then give a status report.  How do you want to handle it?

MR. VELARDE:  Yes, your Honor, I will take the latter.

I will state, however, that there are other bases for the sanctions, and that's the uncooperativeness, the failure to comply with court orders, which is a pattern in this case.

But given we have an extension, I will hold it in abeyance, and I will advise the court if I have similar issues with submitting the joint pretrial stipulation, and, if necessary, I will renew my motion then.

THE COURT:  All right.  So we can do it one of two ways.  I can deny without prejudice to its renewal, or I can hold it in abeyance pending a supplemental status report.

How do you want to handle it, since it's your motion?

MR. VELARDE:  I will defer to hold it in abeyance, your Honor, pending a supplemental notice.

THE COURT:  Hold in abeyance pending supplemental status report.  And when would that be?  What's the latest in terms of pretrial, December 31?

MR. VELARDE:  Yes, your Honor.

THE COURT:  And trial is?  What's the date for trial?

MR. VELARDE:  I believe it's February -- I believe it's early February.

THE COURT:  So what about if I make it -- how about status report on January 14?

MR. VELARDE:  That's perfect, your Honor.

THE COURT:  Okay.  So that will be a very simple

ruling on that one.

Any objection to that, Mr. Valdes?

MR. VALDES:  No, Judge.

THE COURT:  Okay.  So I think we have covered everything that is ripe.

I do note that I was waiting on a response.  I think there was a motion on the payment of the sanctions that is pending, motion for reconsideration that was just filed December 7.

So that one -- you received a copy of that motion, right, Mr. Velarde?

MR. VELARDE:  Yes, your Honor, and as well as the attached affidavit.  I can make a response within a week.

THE COURT:  I am not in a hurry.  I just wanted to make sure that you knew that I didn't obviously add that because it's not ripe.

As I understand it, they are asking for an extension of the December 31 deadline to sometime in February.  That's my understanding of the motion --

MR. VELARDE:  Yes, your Honor.

THE COURT:  -- to deal with the sanctions.

MR. VELARDE:  My belief is that they want an extension until after the trial, which we will be opposing, your Honor, and the affidavit attached to it proves that the plaintiff had more than sufficient funds to pay a sanction award.  He just

chose not to.

THE COURT:  All right.  So you will file your response, and then I will wait for Mr. Valdes' reply, and then I will address it.

I think -- just scanning through, I don't think there's anything else pending before me at this time, unless there is something I might have missed.

MR. VELARDE:  There is a motion in limine, but I am not sure that's your Honor or Judge Gayles.

THE COURT:  No, it's not mine.  I mean, I don't usually do motions in limine unless they are expressly referred to me, and the referral here was a global one.  So unless directed otherwise, I do not intend to address that motion.

MR. VELARDE:  Understood, your Honor.

THE COURT:  All right.  Thank you very much for your time.

MR. VELARDE:  Thank you, your Honor.

MR. VALDES:  I wanted to thank everybody for giving me that extra time to get over there.  I appreciate it.

THE COURT:  Of course, of course.  We wish you good health, Mr. Valdes.

(Proceedings adjourned at 3:34 p.m.)

(Certificate on next page)

C E R T I F I C A T E


I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter. The foregoing transcript was prepared under the COVID pandemic via videoconference.

January 24, 2022        /s/ Jill M. Wells
                        Jill M. Wells, RMR, CRR, CSR
                        Official Court Reporter
                        400 N. Miami Avenue
                        Miami, Florida 33128
                        jill_wells@flsd.uscourts.gov

**BY MR. VALDES: [11]** 10/19 14/22 35/18 46/20 48/21 55/24 56/22 57/15 57/22 59/2 60/7
**BY MR. VELARDE: [14]** 21/15 22/18 24/17 27/15 28/21 32/11 34/25 39/15 41/12 42/7 42/15 43/5 51/23 54/12
**MR. MIJARES: [1]** 64/22
**MR. VALDES: [84]** 3/6 7/19 7/24 8/9 9/4 9/7 9/10 9/15 10/1 10/4 10/8 10/12 14/11 14/18 20/21 21/6 21/12 23/12 31/12 31/18 34/23 35/14 38/12 38/15 38/21 39/8 42/3 42/24 43/3 44/15 44/23 45/2 45/11 45/22 45/25 46/9 46/12 46/16 47/18 56/16 56/21 57/3 57/20 58/2 58/7 58/15 58/18 58/20 59/1 59/25 60/4 60/14 60/24 61/1 61/9 61/12 61/21 61/24 62/4 62/7 62/11 62/17 62/21 63/11 64/5 65/21 66/3 67/22 69/5 69/11 70/9 70/12 70/14 70/18 71/10 90/7 92/14 92/21 92/24 93/7 94/3 94/21 100/3 101/18
**MR. VELARDE: [85]** 3/10 4/10 4/12 4/18 6/9 6/16 8/5 8/10 8/13 8/19 14/14 19/4 21/13 23/2 23/8 23/14 23/17 24/3 24/11 24/14 31/14 35/7 38/7 38/10 39/10 41/7 41/20 42/10 42/14 43/2 43/4 44/1 44/7 44/11 47/5 48/7 50/1 51/1 51/4 54/9 55/20 56/11 56/25 57/7 59/18 59/22 60/17 60/20 62/5 63/5 64/12 64/20 65/4 65/10 65/18 66/1 66/18 70/6 71/12 72/24 83/23 84/2 84/8 89/23 90/2 92/15 93/2 93/5 93/11 94/13 95/16 97/8 97/14 97/16 99/1 99/13 99/18 99/20 99/24 100/12 100/20 100/22 101/8 101/14 101/17
**THE COURT REPORTER: [1]** 64/1
**THE COURT: [169]**
**THE DEPUTY CLERK: [6]** 3/2 3/8 51/18 63/14 63/19 63/22
**THE WITNESS: [20]** 9/21 27/5 27/13 28/20 33/11 33/17 33/20 33/23 34/1 34/11 34/15 34/19 35/11 35/13 35/16 41/25 42/6 46/6 51/20 65/1

## /

**/s [1]** 102/8

## 1

**1.3 [4]** 58/11 58/23 59/6 95/6
**10 [7]** 2/6 8/22 41/9 41/14 68/16 75/18 86/17
**100 percent [2]** 35/25 94/17
**1064 [1]** 72/9
**10:33 [1]** 3/1
**11 [6]** 8/23 14/20 82/11 82/24 86/18 93/9
**110 [2]** 41/8 42/16
**111 [2]** 41/8 42/16
**1114 [1]** 20/4
**1125 [1]** 20/5
**113 [1]** 18/14
**117th [1]** 1/13
**118 [2]** 71/18 72/8
**119 [1]** 1/7
**12 [4]** 68/4 68/5 93/22 98/4
**12:15 [1]** 64/7
**13 [3]** 37/4 40/16 69/14

**13-year [1]** 95/22
**1395 [1]** 1/17
**14 [3]** 13/6 17/18 99/23
**140 [1]** 75/22
**141 [1]** 67/5
**149 [1]** 67/15
**14th [1]** 1/18
**15 [13]** 13/6 13/11 20/3 20/4 35/5 35/11 64/17 73/2 75/8 82/6 82/14 82/20 86/21
**150 [1]** 89/5
**150-1 [2]** 82/23 89/4
**150-10 [3]** 41/9 41/14 75/18
**150-11 [1]** 82/11
**150-3 [1]** 87/4
**150-4 [4]** 65/13 75/3 81/17 85/24
**150-5 [1]** 82/4
**151 [1]** 67/7
**16 [1]** 76/11
**16155 [1]** 1/13
**166 [1]** 72/25
**167 [5]** 71/21 93/5 93/11 93/14 96/17
**17 [2]** 8/24 10/16
**183 [2]** 92/11 92/17
**19 [3]** 13/15 14/6 38/4
**1982 [1]** 90/20
**1:00 [1]** 61/12
**1:47 p.m [1]** 64/16

## 2

**20 [2]** 14/6 62/1
**20-CV-23276 [2]** 3/2 64/10
**20-CV-23276-DPG [1]** 1/2
**2000 [1]** 52/10
**2001 [36]** 21/21 23/20 23/21 23/22 24/25 52/11 52/19 52/23 53/2 53/5 53/7 53/11 53/16 55/16 73/13 73/21 81/21 81/25 82/10 82/12 82/19 82/25 83/2 83/9 84/12 84/12 84/15 84/16 85/16 85/17 85/18 88/4 88/6 88/9 88/11 90/24
**2002 [2]** 52/10 53/11
**2005 [1]** 25/3
**2006 [51]** 25/4 25/12 25/17 25/19 26/7 27/17 27/20 28/12 28/13 30/20 30/22 31/4 31/9 31/16 32/2 32/13 32/15 33/2 33/10 33/17 33/19 35/2 35/5 36/9 36/12 40/7 40/11 42/19 54/25 73/15 75/20 76/6 76/10 82/6 82/9 82/14 82/16 82/20 85/2 85/17 86/14 86/19 86/21 86/22 86/25 87/2 87/3 87/16 91/6 92/1 95/3
**2008 [8]** 26/12 29/21 32/3 73/2 73/25 75/8 76/15 88/25
**2009 [19]** 26/16 28/14 28/24 28/25 29/6 29/10 29/13 29/17 30/3 30/9 30/19 30/20 30/22 31/4 32/4 36/3 57/13 75/20 78/24
**2010 [27]** 28/4 30/4 32/1 32/5 36/5 36/6 36/12 36/14 36/21 37/1 37/22 39/16 39/17 39/25 40/11 40/13 40/15 42/10 42/17 43/11 56/3 58/1 86/23 86/25 91/7 92/2 95/3
**2012 [1]** 80/3
**2016 [2]** 78/15 83/3
**2018 [1]** 92/3
**2019 [1]** 76/11
**2020 [6]** 23/22 27/21 27/23 29/1 30/9 30/14
**2021 [12]** 1/5 10/25 29/17 29/17 40/24

49/3 97/11 97/12 97/13 97/18 98/9 98/19
**2022 [1]** 102/8
**20th [1]** 10/25
**21 [3]** 2/7 27/21 75/17
**213-8 [1]** 65/25
**214 [1]** 75/17
**21st [1]** 27/23
**22 [2]** 42/16 76/8
**221 [5]** 97/13 97/14 97/14 97/16 98/18
**222-10 [1]** 8/22
**222-11 [2]** 8/23 14/20
**222-17 [2]** 8/24 10/16
**222-3 [1]** 66/14
**222-6 [1]** 58/18
**222-9 [1]** 8/21
**223 [1]** 66/10
**223-8 [1]** 65/13
**23276 [2]** 3/2 64/10
**24 [1]** 102/8
**25 [1]** 42/25
**26 [1]** 18/7
**28 [2]** 36/6 36/14
**29 [2]** 72/25 73/23
**29-page [1]** 66/18
**2:03 [2]** 64/7 65/3
**2:30 [1]** 64/25
**2:30 p.m [1]** 64/15
**2:32 [1]** 65/3

## 3

**30 [3]** 40/24 73/6 73/23
**31 [5]** 23/21 97/18 98/19 99/17 100/18
**33128 [2]** 1/22 102/10
**33131 [1]** 1/18
**33177 [1]** 1/14
**35 [1]** 2/8
**39 [1]** 2/9
**3:34 [1]** 101/22

## 4

**4.10 [1]** 87/4
**40 percent [1]** 18/18
**400 [2]** 1/21 102/9
**4502 [1]** 18/13
**48 [2]** 21/23 22/8

## 5

**50 percent [1]** 26/12
**51 [1]** 2/11
**55 [1]** 2/12
**56 [1]** 89/24
**57.105 [5]** 93/15 94/9 94/16 94/20 96/10

## 6

**64 [1]** 86/17
**66 [2]** 2/17 2/18
**666 [1]** 90/19
**671 [1]** 90/19
**689 [1]** 90/19

## 7

**78228 [1]** 18/14

## 8

**85 [1]** 14/8

**A**

**a.m** [1] 3/1
**abeyance** [5] 98/23 99/6 99/11 99/13 99/15
**ability** [1] 53/21
**able** [5] 10/10 10/20 11/6 13/14 98/8
**about** [22] 4/17 5/10 12/2 17/2 23/24 24/10 26/24 29/21 48/20 51/24 54/1 54/7 58/25 64/13 66/8 79/4 79/6 84/18 94/10 95/8 99/22 99/22
**above** [4] 43/13 43/14 43/16 102/5
**above-entitled** [1] 102/5
**absolutely** [3] 24/3 47/9 54/9
**abundance** [1] 24/4
**accept** [1] 7/7
**Acceptance** [1] 66/12
**access** [1] 68/8
**accidentally** [1] 11/10
**accordingly** [1] 17/10
**account** [1] 18/11
**accurate** [1] 102/4
**accurately** [1] 72/12
**ACPA** [1] 20/6
**acquire** [1] 33/9
**acquired** [3] 34/3 34/12 82/6
**act** [2] 20/6 43/19
**action** [3] 19/6 37/23 38/11
**actions** [5] 17/9 17/12 17/20 18/1 18/19
**active** [1] 36/23
**actively** [6] 16/13 16/14 16/23 18/8 18/14 37/13
**actual** [2] 79/11 80/8
**actually** [15] 15/10 17/6 25/4 25/5 39/6 48/3 51/10 69/11 70/19 74/12 74/16 74/20 79/1 83/14 86/8
**add** [4] 25/22 69/9 90/5 100/15
**add-on** [1] 25/22
**addition** [1] 65/24
**additional** [4] 5/16 7/8 15/5 39/24
**address** [16] 3/16 3/21 4/14 6/3 6/8 8/25 46/2 46/3 61/20 63/2 67/10 67/20 71/12 78/11 101/4 101/13
**addressed** [6] 92/12 93/19 93/19 94/18 96/5 96/22
**addresses** [2] 4/15 16/7
**addressing** [3] 4/2 46/7 94/6
**adds** [1] 14/9
**adjourned** [1] 101/22
**administrative** [2] 4/20 51/5
**admission** [5] 46/18 73/16 80/20 80/22 82/20
**admissions** [1] 82/3
**admit** [2] 45/18 82/8
**admitted** [18] 8/24 44/18 48/16 50/20 63/19 66/22 68/24 80/25 82/2 82/4 82/7 83/17 86/4 86/5 86/22 88/6 88/21 95/5
**advantage** [3] 15/23 16/1 48/5
**advise** [1] 99/6
**affected** [2] 37/10 39/1
**affecting** [7] 13/19 13/19 16/17 16/17 16/18 16/19 16/20
**affidavit** [10] 10/20 10/24 10/25 11/23 12/2 12/23 22/9 89/12 100/13 100/24
**affirmative** [1] 97/3
**affirmed** [1] 79/24
**after** [16] 5/5 17/13 17/16 28/22 28/23

**36/10** 42/25 53/15 68/3 73/14 84/12 84/12 84/16 86/5 91/18 100/23
**afternoon** [2] 64/8 65/4
**again** [20] 16/10 17/19 18/7 19/22 21/4 22/4 22/8 28/17 28/17 45/1 47/10 53/3 64/2 64/5 71/21 72/14 81/17 85/13 85/19 96/19
**against** [3] 69/5 71/9 89/18
**agenda** [1] 3/13
**agent** [1] 87/8
**ago** [1] 93/22
**agree** [6] 41/20 48/2 59/9 68/22 79/5 91/19
**agreed** [4] 45/3 69/18 91/14 95/1
**agreement** [86] 4/6 5/11 17/10 17/16 17/17 19/8 25/18 25/19 28/5 30/2 30/4 30/6 30/8 31/20 31/21 32/5 33/3 33/11 33/15 33/16 33/17 33/19 34/17 35/2 35/4 36/6 36/9 36/10 36/12 36/13 36/13 36/14 36/15 36/16 36/20 36/21 36/23 36/23 36/25 37/1 37/3 37/4 37/21 37/22 39/16 39/18 40/1 40/2 40/11 40/11 40/13 40/15 42/11 42/18 43/11 45/17 56/4 56/4 56/8 57/20 58/1 58/11 58/12 58/13 59/4 59/5 59/5 60/5 68/23 69/1 69/20 69/22 69/22 71/5 71/6 86/21 86/23 86/24 87/2 87/3 87/4 87/5 87/19 91/6 95/4 95/6
**agreements** [4] 36/5 36/10 36/18 36/19
**agrees** [1] 87/6
**ahead** [10] 9/13 35/13 35/13 35/16 45/18 48/25 51/14 67/21 71/11 90/15
**AIG** [1] 18/11
**al** [1] 64/11
**ALICIA** [1] 1/9
**all** [75] 3/16 3/22 5/10 5/24 6/24 7/10 7/11 8/1 9/13 10/3 10/14 11/21 11/21 13/13 14/3 15/4 15/19 17/5 21/4 23/19 23/21 26/7 26/23 27/2 27/20 34/20 35/9 35/22 36/4 36/5 36/17 36/19 38/11 39/12 41/2 41/24 42/20 43/6 46/13 47/16 48/6 48/12 51/3 51/10 53/19 55/21 58/13 58/19 60/21 61/20 62/8 63/2 63/8 64/18 64/24 65/2 65/9 66/8 68/11 70/7 72/13 77/24 80/18 87/12 90/12 90/20 91/12 91/22 92/2 92/5 94/7 94/15 99/9 101/2 101/15
**allegations** [6] 19/9 20/24 47/10 72/18 72/20 74/3
**allege** [2] 72/19 79/7
**alleged** [6] 19/7 19/8 20/24 77/11 79/13 93/21
**allow** [4] 5/8 5/9 39/12 43/17
**allowed** [2] 49/22 97/17
**alluded** [1] 50/13
**almost** [2] 13/6 91/9
**along** [3] 10/17 25/5 49/17
**already** [13] 7/6 13/15 17/22 26/15 31/22 71/15 79/15 95/19 95/20 95/24 96/8 96/16 96/22
**also** [23] 6/6 11/13 11/16 12/2 12/18 15/14 17/2 17/4 22/25 24/23 25/4 25/13 25/15 37/21 49/14 50/19 53/8 65/13 66/5 67/19 92/10 93/1 98/11
**Although** [1] 95/17
**always** [5] 32/7 37/20 37/20 43/16 63/1
**am** [66] 4/2 7/11 7/12 10/4 12/21 12/21

**12/22** 14/11 14/14 21/8 21/17 21/22 22/1 22/4 22/6 23/5 24/8 25/1 26/20 26/20 27/5 30/19 32/25 34/10 34/18 35/14 40/2 40/4 41/7 41/21 42/1 42/10 44/15 45/5 46/7 46/21 48/22 48/25 49/10 51/25 52/4 56/5 59/3 59/14 59/24 60/4 62/7 62/25 63/1 64/22 66/12 70/5 70/19 78/10 81/14 81/15 84/5 86/17 92/17 93/13 93/20 94/12 94/17 96/1 100/14 101/8
**ambitious** [1] 3/13
**amended** [6] 3/24 5/5 19/16 23/10 51/24 96/2
**amendment** [1] 36/24
**America** [1] 76/19
**amicable** [1] 55/4
**amicably** [1] 19/1
**among** [2] 6/2 67/19
**amount** [1] 14/7
**amy** [6] 11/17 12/21 15/14 15/23 16/3 17/4
**analysis** [2] 19/24 72/11
**Angel** [9] 76/18 76/19 76/24 76/25 77/3 77/7 78/4 85/11 86/7
**another** [9] 12/2 14/12 17/3 18/7 40/10 50/3 77/16 94/14 98/14
**answer** [21] 12/20 26/23 26/24 27/5 27/9 27/12 34/7 34/9 41/18 42/20 42/22 43/6 43/8 43/15 43/23 43/24 56/15 75/21 76/3 76/7 76/12
**answering** [1] 27/3
**answers** [3] 27/2 32/10 56/19
**Anti** [1] 20/5
**Anti-Cybersquatting** [1] 20/5
**anticipated** [1] 5/19
**Antonio** [1] 18/14
**any** [52] 3/22 4/7 4/8 4/13 4/13 5/24 6/5 7/5 8/3 8/17 8/19 9/2 9/4 15/5 21/9 34/21 35/7 36/10 36/18 39/8 45/21 47/15 49/25 50/7 50/7 55/7 55/10 56/9 57/5 60/13 60/16 60/19 63/3 64/3 66/17 69/25 72/4 72/10 89/11 89/12 89/12 89/13 90/20 91/7 91/21 92/6 92/6 94/24 95/14 98/12 98/12 100/2
**anybody** [2] 83/9 84/12
**anymore** [1] 49/23
**anyone** [3] 51/12 53/21 53/23
**anything** [20] 3/15 11/6 19/16 20/9 23/24 42/25 44/6 44/20 48/6 50/8 50/24 60/23 60/24 60/25 62/13 62/22 69/9 71/8 90/5 101/6
**anywhere** [3] 81/20 81/20 88/4
**apologize** [13] 4/12 4/18 30/7 32/12 39/11 44/8 45/25 46/2 51/1 54/10 66/19 70/19 97/14
**appearance** [1] 3/5
**APPEARANCES** [1] 1/11
**appears** [2] 11/13 16/23
**applicable** [2] 88/1 93/16
**applicant** [8] 74/12 79/1 79/3 80/5 84/21 85/25 88/13 90/20
**application** [20] 29/8 65/14 70/10 73/7 75/5 75/6 76/15 77/1 77/4 79/2 80/10 80/16 80/22 81/2 81/18 89/7 90/16 94/25 95/5 95/9
**applications** [1] 70/20
**applied** [8] 70/22 71/2 78/15 91/5 91/15

**A**

**applied... [3]** 91/16 91/21 94/25
**applies [1]** 94/16
**apply [9]** 71/19 71/22 72/15 90/16 90/22 90/25 91/1 91/23 96/16
**applying [4]** 70/22 71/5 72/1 95/8
**appreciate [6]** 5/18 21/3 52/22 63/23 65/1 101/19
**approached [1]** 17/4
**appropriate [4]** 27/4 44/13 57/10 94/10
**approved [2]** 91/5 92/5
**April [4]** 10/25 23/22 52/11 53/15
**April 2001 [2]** 23/22 52/11
**Arch [1]** 1/17
**are [119]**
**area [1]** 12/3
**argue [2]** 69/7 96/21
**argued [6]** 69/12 69/20 71/25 78/22 78/22 84/19
**arguendo [1]** 71/1
**argues [1]** 78/24
**arguing [3]** 69/3 69/5 96/7
**argument [10]** 69/16 71/14 71/17 72/17 74/5 91/10 91/13 94/10 95/23 96/6
**arguments [7]** 6/4 67/10 67/11 89/18 92/19 95/19 95/19
**Armory [1]** 83/4
**around [3]** 61/12 62/20 62/20
**art [1]** 54/5
**articles [3]** 82/11 82/13 82/14
**as [117]**
**aside [1]** 27/10
**ask [14]** 4/6 8/1 20/16 27/1 30/2 30/5 30/20 46/18 51/25 56/14 58/24 60/2 67/9 67/19
**asked [8]** 30/8 31/8 41/18 42/9 69/7 75/16 75/23 91/15
**asking [6]** 14/4 31/14 59/25 60/4 93/9 100/17
**asks [1]** 59/22
**assert [1]** 49/19
**assertion [1]** 80/15
**asserts [2]** 80/20 80/22
**assigned [1]** 68/22
**association [6]** 73/19 75/13 77/7 78/18 81/9 87/25
**assume [1]** 95/18
**assuming [1]** 70/25
**assumption [1]** 94/16
**attached [2]** 100/13 100/24
**attempted [2]** 98/3 98/4
**attempting [2]** 79/16 83/25
**attempts [1]** 18/25
**attended [1]** 16/19
**attention [2]** 16/16 51/6
**attorney [12]** 12/10 12/11 15/6 15/15 17/22 41/1 43/18 43/19 43/20 64/23 96/14 96/14
**attorney's [1]** 22/15
**attorneys' [2]** 96/18 96/20
**audio [1]** 8/15
**available [1]** 63/24
**Avenue [4]** 1/13 1/17 1/21 102/9
**avoid [1]** 7/7
**award [1]** 100/25
**awarded [1]** 96/14

**aware [21]** 21/19,21/22 24/21 24/23 25/1 27/16 27/16 27/19 27/19 28/11 28/11 28/24 29/13 29/18 51/9 56/3 56/5 71/3 76/24 77/20 78/7
**awful [2]** 37/12 37/12

**B**

**B-O-S-E [1]** 74/8
**B17 [1]** 1/13
**back [29]** 7/11 11/22 12/22 14/3 15/17 17/8 25/3 25/16 27/11 28/19 31/8 36/9 37/7 37/19 38/12 43/13 47/22 56/18 56/23 61/13 61/13 62/9 62/13 63/13 64/9 64/9 64/24 65/5 75/24
**background [1]** 9/12
**bad [2]** 14/10 17/24
**balancing [1]** 20/14
**barred [2]** 17/15 93/15
**based [10]** 11/25 19/8 77/18 83/17 88/20 88/23 93/1 94/4 97/5 97/21
**bases [3]** 88/19 96/19 99/2
**basically [8]** 15/17 16/16 17/13 38/17 69/13 90/11 92/19 97/2
**basis [14]** 46/14 47/14 59/24 70/3 71/23 72/2 72/16 77/10 79/10 80/4 89/17 94/19 95/25 96/9
**be [51]** 3/17 3/23 4/22 5/3 5/7 6/2 7/14 12/15 19/3 20/9 24/12 24/13 25/4 25/24 26/9 27/10 39/13 43/19 48/9 48/13 48/16 48/16 50/16 50/17 50/21 51/13 54/2 58/3 59/10 61/7 63/16 67/18 68/9 72/3 72/10 78/12 82/16 83/13 83/24 85/25 86/1 87/10 88/13 88/14 95/12 96/5 96/13 96/20 99/16 99/25 100/23
**became [3]** 36/14 36/19 96/25
**because [58]** 3/13 4/1 5/15 5/23 6/21 9/11 12/12 12/15 12/20 13/19 16/17 19/3 20/23 22/6 23/3 23/9 24/4 25/24 26/5 26/14 28/2 31/22 33/4 33/12 37/13 41/21 43/14 44/23 45/20 47/24 50/11 54/22 57/9 61/15 62/19 66/3 67/5 67/8 68/19 72/10 78/5 80/4 82/7 83/24 84/18 84/24 87/19 88/8 91/20 91/21 93/15 93/20 94/10 94/20 94/21 96/15 98/17 100/16
**become [3]** 3/14 91/3 91/4
**been [57]** 4/1 6/20 9/18 11/2 11/3 11/3 11/7 13/6 13/9 13/14 14/10 18/8 18/14 21/7 21/19 23/3 23/10 23/18 34/2 35/22 36/23 36/24 37/9 37/12 37/12 37/13 37/24 38/24 44/18 50/6 51/9 51/17 53/13 54/23 55/13 55/17 61/12 62/23 68/7 68/19 68/21 69/24 71/15 73/21 74/7 84/19 90/8 91/12 94/11 94/14 95/19 95/23 96/22 98/7 98/8 98/15 98/20
**before [27]** 1/9 4/21 5/12 19/20 30/19 37/14 38/4 44/20 47/15 50/13 63/14 64/12 65/22 69/14 71/9 75/24 80/9 83/1 83/9 83/10 83/15 84/19 85/8 90/6 92/13 96/10 101/6
**began [3]** 29/10 52/14 82/13
**begin [4]** 4/21 5/12 64/15 82/1
**beginning [5]** 25/19 29/17 32/7 53/14 98/5
**behalf [2]** 3/6 75/16
**being [14]** 13/16 13/17 16/19 19/3 22/7 26/12 41/18 44/19 45/12 63/19 67/15

**belief [10]** 75/12 77/6 78/17 80/23 81/9 86/9 86/11 87/24 88/17 100/22
**believe [14]** 3/22 12/1 13/15 16/3 24/6 39/5 64/20 89/15 92/12 92/15 93/5 97/10 99/20 99/20
**believed [5]** 12/15 77/22 87/17 87/18 88/24
**believes [3]** 85/25 88/13 90/20
**benefit [1]** 9/19
**best [9]** 3/17 27/6 33/1 50/6 75/11 77/5 78/17 81/8 87/23
**better [5]** 5/3 9/12 39/12 40/4 54/8
**between [9]** 23/25 36/11 36/12 36/18 40/19 47/7 55/4 74/16 98/2
**big [1]** 14/9
**billed [2]** 52/18 52/18
**binding [1]** 88/1
**bit [1]** 40/4
**black [1]** 40/20
**board [5]** 26/13 36/4 87/6 87/9 92/3
**bogus [1]** 47/25
**Bose [6]** 74/8 74/11 74/15 78/25 86/6 86/7
**both [23]** 30/25 30/25 31/3 32/21 45/20 54/22 68/8 68/22 68/24 68/24 69/17 69/20 70/17 70/19 71/3 72/1 76/1 76/5 80/16 91/9 91/19 92/7 97/2
**bottom [2]** 43/1 75/6
**bound [1]** 69/17
**brain [1]** 61/13
**breach [1]** 19/14
**breaches [2]** 19/7 19/8
**break [7]** 3/18 5/10 61/8 61/16 61/18 62/9 62/13
**Brickell [2]** 1/17 1/17
**brief [1]** 39/13
**briefly [1]** 10/23
**bring [5]** 4/21 20/22 40/5 51/6 68/6
**bringing [1]** 58/17
**Brisbois [16]** 21/16 21/19 21/22 22/2 22/7 22/9 22/17 22/22 22/24 23/1 23/19 23/20 23/25 52/19 55/13 55/17
**Brisbois' [2]** 22/12 22/19
**brought [9]** 25/25 26/8 32/15 33/24 34/16 66/4 72/2 72/4 72/10
**burden [2]** 50/14 96/3
**Burglass [1]** 18/12
**Burnett [2]** 1/16 3/11
**business [30]** 13/19 16/14 16/18 16/24 17/16 18/9 25/14 29/25 30/24 31/1 31/24 31/25 33/5 33/24 37/10 37/15 52/1 52/10 52/11 52/15 59/12 75/20 76/2 76/5 76/10 79/20 79/21 82/24 83/2 83/11

**C**

**C-E-R-A-S-A-L-E [1]** 51/21
**calculated [1]** 49/3
**calculus [1]** 20/12
**California [18]** 11/11 11/18 13/9 13/20 15/8 15/9 16/12 21/25 22/20 31/25 37/17 37/18 39/7 47/21 73/10 73/20 89/7 91/11
**California/Texas [1]** 15/9
**call [8]** 9/6 9/13 9/15 14/3 37/18 49/18 51/4 62/15
**called [5]** 3/1 9/17 15/12 51/16 64/12

**C**

**Calling [1]** 3/2
**calls [2]** 11/17 13/2
**came [3]** 33/25 86/6 91/8
**can [55]** 3/16 4/11 5/11 6/24 7/6 7/14
 8/3 8/11 8/17 10/3 10/14 10/16 14/23
 21/10 23/4 24/8 24/12 27/1 27/6 33/1
 35/11 41/21 41/24 41/25 42/1 43/4 43/13
 45/8 47/1 56/14 57/13 58/6 58/16 60/2
 60/12 60/15 61/8 62/13 62/18 66/25
 67/13 72/3 72/9 74/13 84/5 84/6 86/8
 91/19 94/20 95/17 98/24 99/9 99/10
 99/10 100/13
**can't [5]** 17/15 34/7 42/4 54/17 58/6
**cancel [9]** 72/15 74/10 80/4 81/5 85/6
 85/11 85/14 88/2 95/22
**canceled [1]** 17/5
**cancellation [17]** 19/12 57/9 67/2 67/23
 67/24 70/4 71/20 71/23 72/2 76/21 78/5
 79/25 85/21 88/20 89/17 93/24 93/24
**cannot [4]** 50/16 86/11 87/15 88/8
**capital [2]** 16/10 32/16
**Caribbean [1]** 80/9
**carrier [1]** 17/6
**carriers [1]** 17/3
**case [50]** 1/2 3/1 3/2 11/6 14/2 14/7
 15/19 19/7 19/11 19/11 19/12 20/25
 21/20 24/14 32/19 38/20 40/21 45/15
 47/11 50/12 54/3 54/14 60/23 64/10
 65/17 65/19 68/10 68/12 72/1 72/6 72/8
 72/9 74/7 74/9 77/10 77/19 78/15 78/20
 79/18 80/1 85/12 87/7 88/1 90/13 90/14
 90/18 93/7 94/11 94/14 99/4
**cases [3]** 14/9 48/15 84/19
**Castillo [6]** 11/17 12/21 15/14 15/15
 16/3 17/4
**catching [1]** 93/10
**cause [1]** 18/20
**caused [8]** 11/8 12/16 17/7 17/20 18/2
 18/19 49/8 49/11
**caution [1]** 24/4
**cease [2]** 16/21 18/22
**Centerview [1]** 18/13
**CERASALE [50]** 2/10 16/15 18/7 25/2
 25/22 26/6 26/8 26/12 26/18 28/6 31/9
 31/16 32/13 32/15 33/24 33/25 34/4
 34/16 36/11 39/24 40/8 51/2 51/4 51/7
 51/15 51/20 51/24 52/21 54/6 54/10
 55/25 57/16 58/23 59/3 60/21 63/12
 68/16 68/25 70/21 71/4 86/14 86/18 87/7
 87/11 87/14 87/19 90/25 91/15 92/3 95/4
**Cerasale's [2]** 31/24 32/22
**certain [3]** 15/21 25/20 54/18
**certainly [1]** 19/15
**certificate [2]** 32/4 101/23
**certify [1]** 102/4
**cetera [1]** 6/7
**challenges [1]** 26/10
**chambers [2]** 62/15 64/13
**change [13]** 32/25 39/18 39/22 40/13
 42/18 42/20 42/22 43/6 43/8 43/9 43/11
 48/8 87/15
**changes [1]** 25/24
**checked [1]** 52/21
**choice [1]** 82/7
**chose [1]** 101/1

**circuit [15]** 74/9 74/16 76/18 77/8 77/17
 77/17 78/3 78/15 78/21 79/5 79/24 83/3
 83/15 85/11 90/19
**Circuit's [1]** 78/24
**circumvent [2]** 67/25 68/21
**cited [2]** 72/7 80/7
**cites [2]** 73/5 73/15
**Citing [1]** 79/14
**Civil [1]** 13/21
**claim [12]** 19/15 20/5 38/11 67/4 67/25
 68/6 68/18 72/2 74/4 77/18 79/25 88/8
**claimed [3]** 73/9 73/12 73/17
**claiming [1]** 67/3
**claims [6]** 19/25 20/2 20/4 20/8 48/18
 49/19
**clarification [2]** 34/24 63/15
**clarify [4]** 26/5 52/23 84/6 85/4
**clear [24]** 8/16 12/8 16/12 17/19 30/21
 32/25 33/6 35/3 40/20 54/10 62/23 63/1
 69/21 72/10 74/3 74/7 74/11 74/11 78/25
 80/23 81/2 83/17 87/19 88/20
**clearcut [1]** 86/2
**clearly [6]** 36/16 68/25 72/1 73/24 81/7
 82/17
**client [30]** 9/4 11/9 11/10 11/11 11/14
 11/14 11/24 11/25 12/1 12/2 12/5 12/6
 12/7 12/8 13/3 15/3 15/24 17/2 21/19
 22/2 22/10 46/5 55/14 55/17 64/21 66/3
 69/19 75/19 76/14 95/2
**client's [1]** 89/22
**clients [33]** 11/2 13/16 14/7 16/13 16/18
 16/24 17/14 18/3 18/17 18/21 18/23
 19/15 21/17 21/25 22/4 37/14 37/18 38/1
 38/3 39/4 39/5 47/12 48/1 48/3 49/12
 49/12 50/5 50/11 83/12 83/15 83/25
 85/17 88/10
**close [1]** 10/2
**closed [15]** 36/6 36/15 36/16 36/20
 37/22 42/10 42/17 56/4 58/12 59/5 62/22
 68/13 68/23 69/22 95/6
**Clyde [1]** 83/4
**coin [1]** 67/9
**Cole [1]** 18/12
**come [5]** 8/11 33/21 62/9 62/13 63/13
**comes [5]** 6/10 14/3 84/12 84/20 91/18
**comfortable [1]** 10/11
**coming [3]** 8/16 54/7 65/5
**comment [3]** 4/17 5/3 5/18
**comments [1]** 95/14
**commerce [12]** 73/20 75/13 80/9 80/14
 81/10 81/22 81/24 83/5 83/6 87/25 88/5
 88/5
**committed [1]** 77/4
**communications [1]** 48/10
**companies [3]** 30/25 30/25 76/5
**company [16]** 11/20 13/6 22/23 25/3
 28/7 33/13 36/5 47/20 53/15 57/24 59/9
 59/10 60/5 87/8 87/10 87/21
**complaint [2]** 96/2 97/2
**completed [2]** 4/19 61/2
**completely [4]** 48/11 50/2 50/10 97/10
**completion [1]** 43/18
**compliance [2]** 98/23 98/24
**complications [1]** 64/3
**comply [2]** 97/5 99/4
**compound [1]** 59/21

**computer [1]** 9/10
**concerned [1]** 84/14
**concludes [2]** 44/17 50/22
**conclusion [1]** 96/1
**condition [1]** 51/7
**confer [4]** 5/9 97/22 98/3 98/16
**conference [1]** 98/5
**conferred [1]** 5/20
**confirm [2]** 14/14 93/6
**confirmed [4]** 91/6 91/7 92/1 92/8
**confluence [1]** 6/2
**confuse [2]** 38/3 47/25
**confused [1]** 16/4
**confusing [4]** 12/15 16/3 38/1 39/5
**confusion [8]** 11/8 12/17 17/7 38/5 47/3
 47/24 48/14 48/18
**connection [1]** 77/4
**conscious [1]** 63/1
**consider [4]** 19/21 19/21 20/19 20/20
**consideration [1]** 5/17
**considered [1]** 72/5
**Considering [1]** 21/7
**constitute [1]** 80/14
**Consumer [1]** 20/5
**contact [1]** 48/4
**contacted [1]** 47/20
**contacting [1]** 18/22
**contain [1]** 96/2
**contend [1]** 98/21
**context [1]** 23/18
**continue [7]** 16/23 18/20 19/3 64/12
 73/22 76/9 79/21
**continuing [1]** 55/17
**continuous [3]** 37/25 68/4 68/5
**contract [1]** 17/7
**contracts [2]** 22/22 22/24
**contractually [1]** 68/21
**contradicted [1]** 89/11
**contribution [6]** 25/12 26/1 32/23 32/23
 33/23 86/15
**contributions [1]** 86/19
**control [1]** 12/11
**conversation [1]** 11/14
**convincing [2]** 80/23 81/3
**copied [2]** 15/10 15/14
**copies [1]** 15/4
**cops [1]** 54/7
**copy [1]** 100/10
**corporate [2]** 36/4 59/11
**corporation [23]** 31/23 36/6 36/15
 36/16 36/20 37/22 42/11 42/17 56/4 59/5
 68/13 68/13 68/14 68/23 69/22 73/19
 75/12 77/6 78/18 81/9 82/16 87/24 95/6
**correct [68]** 21/12 21/17 21/18 24/3
 24/8 24/21 24/25 25/11 25/12 25/18 26/7
 27/17 27/21 28/14 29/1 29/8 29/9 29/11
 29/12 29/14 29/15 29/15 29/19 30/10
 30/11 30/13 30/24 31/11 31/17 33/20
 34/1 34/15 34/18 34/19 35/5 35/23 35/24
 36/23 40/8 40/9 40/11 40/12 40/14 40/22
 42/19 42/25 43/12 49/24 52/5 52/6 53/2
 53/5 53/9 53/10 53/11 53/12 54/25 63/20
 65/25 66/1 70/5 70/6 75/16 75/18 76/2
 76/7 76/11 76/12
**corrected [1]** 24/12
**correctly [3]** 14/1 31/11 31/15

**C**

correlates [1] 43/16
correspond [1] 39/3
correspondence [1] 39/3
cost [2] 49/13 49/16
could [22] 4/7 6/23 15/1 31/12 40/3
 42/5 46/3 46/21 49/1 49/18 58/2 61/18
 61/25 86/9 87/17 87/18 88/16 88/23
 90/22 91/11 92/21 92/22
couldn't [5] 12/20 29/2 29/5 31/12
 31/13
counsel [13] 3/4 3/9 4/6 5/9 5/19 26/8
 27/3 39/21 65/6 97/22 98/4 98/5 98/8
count [3] 67/1 93/23 93/24
counter [3] 67/2 67/11 69/8
counterclaim [21] 4/24 5/4 67/1 67/24
 68/20 71/19 71/23 72/15 72/18 72/21
 72/25 73/1 73/24 74/21 88/20 93/15
 93/19 94/2 96/8 97/4 97/4
counterfeiting [1] 20/3
country [1] 78/8
couple [1] 5/6
course [12] 7/1 29/20 29/21 40/15
 40/23 40/25 45/8 50/20 64/6 88/8 101/20
 101/20
court [31] 1/1 1/21 3/1 9/20 9/25 15/1
 19/6 20/25 38/11 47/1 47/8 47/11 47/15
 49/1 50/12 72/11 76/23 77/3 77/9 79/10
 79/14 80/7 80/11 81/4 89/14 97/12 97/16
 98/23 99/4 99/6 102/9
court's [4] 78/5 79/24 97/5 97/11
courtesy [2] 37/20 37/21
courts [2] 72/5 85/5
covered [1] 100/4
COVID [1] 102/6
create [3] 25/3 52/7 52/9
created [5] 10/25 28/3 38/2 82/25 83/10
Crescent [1] 80/9
cross [11] 2/7 2/12 6/3 7/13 21/11
 21/14 55/22 55/23 66/25 67/8 90/6
cross-examination [3] 21/11 21/14
 55/23
cross-motions [4] 6/3 66/25 67/8 90/6
cross-references [1] 7/13
CRR [2] 1/20 102/8
crux [1] 48/1
cry [1] 98/10
CSR [2] 1/20 102/8
current [1] 87/9
currently [1] 19/6
customer [6] 15/17 16/4 16/5 47/2
 48/14 48/18
customers [1] 24/10
cut [2] 42/4 57/20
CV [3] 1/2 3/2 64/10
Cybersquatting [1] 20/5

**D**

Daka [2] 12/23 12/24
Dalacio [1] 11/15
damage [4] 18/20 50/15 50/15 50/16
damaged [1] 19/3
damages [9] 17/21 18/2 49/3 49/8
 49/10 49/11 49/21 50/5 50/9
date [11] 14/6 28/13 73/24 81/20 81/22
 82/15 83/5 84/20 88/5 90/24 99/19

dates [1] 44/7
David [1] 1/12
day [6] 27/9 37/18 41/2 63/25 92/2 98/2
ddvlaw [1] 1/14
DE [2] 58/18 66/10
deadline [1] 100/18
deal [5] 4/24 11/8 22/6 38/10 100/21
dealing [6] 38/17 38/23 39/6 47/22
 47/23 48/3
deals [1] 67/22
dealt [1] 22/25
December [6] 1/5 97/18 98/19 99/17
 100/9 100/18
December 31 [4] 97/18 98/19 99/17
 100/18
December 7 [1] 100/9
decided [4] 25/3 25/4 25/5 26/13
decision [1] 78/25
declarant [1] 78/6
declaration [4] 77/19 82/23 89/4 89/5
declared [2] 82/23 89/11
declares [5] 75/11 81/8 85/25 87/23
 88/13
declined [1] 96/17
dedicated [1] 36/17
deems [2] 27/4 44/13
default [1] 97/4
defendant [19] 1/7 1/16 3/9 4/2 21/20
 51/4 54/14 55/5 67/2 67/7 67/15 68/12
 79/20 80/8 80/12 80/17 80/19 80/21 89/8
defendant's [14] 4/24 6/6 65/10 65/24
 68/2 72/15 73/16 80/15 82/3 90/11 93/15
 93/22 93/23 96/2
defendant/counter [1] 67/2
defendants [16] 3/11 44/21 79/19 80/12
 81/1 82/23 82/24 82/25 83/1 83/10 88/10
 89/6 96/13 96/18 96/18 97/1
defense [5] 2/18 51/16 65/17 65/18
 66/2
defensive [1] 97/3
defer [1] 99/13
definitely [3] 46/1 46/12 68/18
degree [1] 79/6
delay [1] 95/22
delved [1] 94/9
demarcation [1] 74/12
denied [2] 92/20 93/4
Dennis [1] 77/5
deny [1] 99/10
department [1] 15/18
deposition [17] 40/21 40/24 41/4 41/8
 41/14 41/17 42/8 42/12 43/10 43/15 44/4
 44/14 75/15 75/17 86/14 86/22 95/3
Description [1] 2/3
design [1] 25/10
designation [1] 20/4
desist [2] 16/21 18/22
despite [1] 76/15
destroy [1] 15/3
detailed [2] 25/20 49/7
detailing [3] 36/17 49/17 50/4
details [1] 36/7
determine [2] 34/3 54/20
determined [1] 83/4
did [62] 6/6 8/8 11/5 12/7 12/7 12/8 15/6
 15/19 16/9 22/12 22/22 27/25 28/6 31/11

32/8 32/12 33/2 33/9 33/10 33/21 34/11
 35/25 37/14 37/15 46/10 49/6 52/8 52/9
 52/20 52/25 55/7 55/10 56/6 57/17 57/23
 57/24 58/1 60/19 61/17 67/13 67/14
 73/14 76/4 77/1 77/9 81/13 82/5 82/8
 82/18 83/15 85/16 87/11 87/12 88/9
 88/10 89/18 89/21 90/14 91/3 91/3 91/4
 91/24
didn't [26] 4/19 8/7 12/12 12/18 17/18
 19/1 24/5 24/7 25/24 30/2 30/2 30/5
 33/4 45/14 45/21 53/3 54/1 61/9 70/16
 82/12 83/1 85/2 88/11 96/16 97/13
 100/15
DIEGO [3] 1/12 1/12 3/6
difference [1] 98/1
different [7] 13/16 23/18 38/24 71/16
 87/10 92/16 98/4
differently [1] 90/9
difficult [3] 10/12 58/4 58/7
Digital [3] 32/17 37/5 59/7
diligence [1] 36/4
direct [8] 2/6 2/11 10/18 37/3 51/2
 51/22 56/8 93/25
directed [2] 95/18 101/13
directly [4] 38/23 47/20 94/3 95/7
director [1] 87/7
directors [5] 26/13 36/5 87/6 87/9 92/4
disagreement [2] 5/20 91/19
disclose [3] 76/19 77/1 78/6
disclosure [1] 80/17
DISCOVERY [85] 1/3 1/6 3/3 3/3 3/7
 12/4 16/24 18/3 18/16 18/18 18/20 18/23
 21/20 22/3 22/5 22/11 23/20 23/25 24/23
 25/1 25/6 25/7 25/18 27/17 27/20 27/25
 28/12 28/25 29/10 29/14 29/18 29/24
 30/1 30/9 30/12 30/23 31/23 32/17 34/3
 34/12 34/13 35/4 35/19 35/22 37/5 37/6
 37/9 38/1 38/25 39/1 40/14 40/19 47/3
 49/8 49/9 52/1 53/1 53/4 53/8 53/13
 54/13 55/14 55/18 56/9 57/13 57/16 59/7
 59/11 59/12 59/15 60/10 64/10 64/11
 75/19 75/25 76/1 76/5 76/6 87/10 89/8
 90/15 91/5 91/11 95/7 95/8
discuss [6] 6/10 81/15 81/16 82/22
 97/25 98/6
discussed [1] 65/6
discussing [1] 97/21
dismiss [2] 97/1 97/20
dismissal [1] 68/19
dispositive [1] 6/21
dispute [4] 57/5 57/8 57/12 98/1
disputed [5] 89/21 90/3 90/9 90/12
 93/21
disputes [2] 4/9 4/13
disputing [2] 33/6 84/6
disregard [1] 16/10
distinction [2] 74/15 74/16
district [10] 1/1 1/1 77/3 77/8 78/5
 79/10 79/24 80/2 80/7 81/4
do [70] 4/25 5/15 5/25 6/24 7/4 8/2 8/17
 9/2 11/6 12/9 13/25 16/8 17/15 19/11
 21/13 22/2 22/19 22/21 23/6 24/1 24/6
 28/18 31/24 33/20 33/24 34/21 34/23
 37/17 40/24 41/13 41/17 42/1 42/8 43/2
 43/4 43/19 46/17 46/24 46/25 47/10
 50/11 50/18 50/24 52/14 56/17 58/6

**D**

**do... [24]**  58/16 58/24 60/20 60/25 61/15 61/18 62/7 62/8 63/3 64/18 64/19 69/9 74/6 78/9 93/3 95/14 98/21 98/22 98/25 99/9 99/12 100/6 101/11 101/13

**docket [40]**  7/7 7/13 8/21 8/22 8/23 8/23 10/15 10/16 14/20 41/9 41/14 58/14 65/12 65/25 66/10 66/14 67/5 67/7 67/15 71/18 71/21 72/8 72/25 75/3 81/17 82/4 82/11 85/23 87/4 89/4 89/5 92/11 93/3 93/11 93/13 96/17 97/11 97/12 97/16 98/17

**document [18]**  14/24 14/25 32/17 36/8 46/24 47/1 47/6 47/18 48/23 48/24 48/25 49/2 49/6 50/8 59/8 59/23 66/18 86/25

**documentary [1]**  7/5

**documented [1]**  71/6

**documents [4]**  7/6 15/4 50/7 60/19

**does [20]**  7/12 14/25 37/1 37/1 39/20 40/12 40/15 49/2 49/6 49/7 50/17 59/15 59/17 60/8 71/19 71/22 72/15 78/22 94/17 96/2

**doesn't [21]**  5/8 23/24 24/9 24/9 39/18 39/22 40/13 42/18 42/20 42/22 43/6 43/8 43/9 43/11 48/8 51/12 60/11 63/12 84/4 84/13 85/1

**doing [1]**  14/4

**dollars [1]**  50/16

**Don [1]**  15/16

**don't [44]**  3/15 3/25 6/7 6/25 8/2 8/19 9/8 13/20 13/22 15/12 21/8 21/25 21/25 22/13 22/16 22/16 22/17 31/21 32/12 35/7 39/8 39/21 39/22 40/5 42/25 45/4 46/3 52/12 54/1 56/5 57/10 57/12 61/14 62/12 62/19 62/22 63/6 66/4 70/13 87/20 92/15 94/9 101/5 101/10

**done [8]**  3/19 5/21 41/16 45/16 48/14 51/11 62/18 67/18

**door [1]**  54/7

**double [1]**  57/1

**down [5]**  20/23 21/10 48/4 60/15 84/20

**DPG [1]**  1/2

**drew [1]**  74/11

**drinking [1]**  62/3

**Drive [1]**  18/13

**due [2]**  7/1 36/4

**duly [2]**  9/18 51/17

**duplicate [1]**  6/4

**during [7]**  28/1 30/12 31/4 45/8 49/20 49/21 61/16

**duties [1]**  19/8

**duty [1]**  80/17

**E**

**each [8]**  33/4 37/16 67/3 67/10 74/25 75/9 85/5 85/20

**earlier [5]**  56/8 59/4 61/10 61/25 94/22

**early [8]**  52/10 53/11 73/13 81/21 81/25 88/4 88/6 99/21

**East [1]**  80/2

**Eastern [1]**  80/2

**eating [1]**  3/19

**effective [2]**  82/15 86/23

**effort [1]**  67/25

**either [5]**  7/4 71/8 72/11 77/21 89/12

**elevated [1]**  13/3

**Eleventh [8]**  76/18 77/8 77/17 77/17 78/3 83/3 83/15 85/11

**eliminates [1]**  72/13

**else [16]**  3/15 44/6 44/20 48/6 60/12 60/25 62/13 71/8 76/16 77/13 78/1 78/2 79/22 85/10 90/5 101/6

**email [26]**  12/14 12/15 12/17 15/3 15/6 15/10 15/11 15/12 16/2 16/2 16/3 16/7 16/15 16/20 16/21 17/8 17/18 18/1 18/7 18/24 23/5 37/19 38/2 48/10 64/14 64/15

**emailed [2]**  16/10 52/20

**emailing [1]**  16/8

**emails [6]**  15/12 15/22 47/7 47/25 48/5 52/21

**employees [1]**  18/21

**EMU [1]**  72/6

**end [3]**  68/15 72/4 97/17

**enough [7]**  27/10 74/14 74/19 79/3 85/10 85/14 85/20

**entail [1]**  49/2

**entails [2]**  47/1 80/23

**enter [3]**  14/11 66/5 97/4

**entered [5]**  10/21 25/14 36/11 45/3 80/3

**entire [3]**  36/17 37/15 98/15

**entitled [3]**  59/10 67/3 102/5

**entity [1]**  25/8

**entries [2]**  7/7 7/13

**entry [38]**  8/21 8/22 8/23 8/24 10/15 10/16 14/20 41/9 41/14 65/12 65/25 66/10 66/14 67/5 67/7 67/15 71/18 71/21 72/8 72/25 75/3 81/17 82/4 82/11 85/21 85/24 87/4 89/4 89/5 92/11 93/3 93/12 93/13 96/17 97/11 97/12 97/16 98/18

**ePortal [2]**  13/22 13/25

**equities [1]**  20/14

**err [1]**  77/9

**error [2]**  16/9 16/11

**essentially [4]**  20/24 74/9 96/21 98/10

**establish [6]**  34/6 74/4 74/6 74/10 77/20 77/24

**established [2]**  81/7 86/7

**establishes [1]**  82/17

**establishing [1]**  74/9

**et [2]**  6/7 64/11

**even [13]**  17/5 25/14 27/10 68/10 68/15 69/19 69/25 69/25 78/7 80/11 92/2 92/3 95/4

**event [1]**  6/5

**ever [10]**  53/21 53/23 54/3 54/14 54/17 54/23 55/7 55/10 69/15 81/23

**every [4]**  9/11 39/3 73/22 98/7

**everybody [2]**  20/11 101/18

**everyone [2]**  17/17 40/17

**everyone's [1]**  51/6

**everything [7]**  3/19 16/20 21/1 33/3 62/23 91/18 100/5

**evidence [30]**  3/23 5/16 5/17 5/24 7/4 7/5 7/16 7/20 9/1 20/8 20/16 20/25 44/22 50/6 56/12 65/7 66/2 66/24 69/24 69/25 74/5 74/19 80/11 80/24 81/3 89/12 89/14 89/16 92/6 97/25

**evidentiary [5]**  5/12 51/11 61/3 65/8 94/23

**ex [2]**  3/23 3/25

**exact [1]**  77/12

**exactly [6]**  30/22 60/4 67/12 69/13

**examination [7]**  10/18 21/11 21/14 35/17 39/14 51/22 55/23

**example [5]**  53/6 72/5 77/16 78/14 98/14

**examples [2]**  78/10 78/11

**excerpt [5]**  23/16 41/13 72/24 75/2 75/5

**excuse [3]**  30/25 49/10 75/22

**excused [1]**  63/12

**executed [2]**  34/17 35/4

**exhibit [36]**  4/4 4/15 5/11 7/21 7/21 7/23 7/24 10/5 10/7 10/8 10/9 10/21 14/12 14/13 14/15 14/18 14/20 23/3 46/21 47/2 48/16 48/20 48/22 65/7 65/10 65/11 65/11 65/11 65/11 65/16 65/24 66/2 66/10 66/12 66/16 66/24

**Exhibit 8 [1]**  65/10

**Exhibit B [1]**  65/11

**Exhibit C [2]**  66/10 66/12

**Exhibit I [6]**  7/21 7/23 14/12 14/13 47/2 48/16

**Exhibit J [3]**  7/21 48/20 48/22

**Exhibit K [2]**  14/18 14/20

**Exhibit Q [5]**  7/24 10/5 10/8 10/9 10/21

**exhibits [11]**  4/7 4/14 5/10 5/12 5/20 8/20 9/1 21/8 44/17 44/19 63/15

**exist [6]**  82/12 83/1 85/1 88/9 88/11 93/21

**existed [1]**  79/11

**existence [2]**  54/13 82/13

**expanded [1]**  26/15

**expect [2]**  6/25 63/10

**expects [1]**  64/17

**experienced [1]**  47/3

**explain [4]**  11/10 12/11 15/1 54/7

**explained [2]**  11/20 12/13

**expressly [2]**  72/9 101/11

**extended [2]**  62/9 97/12

**extension [5]**  97/17 98/18 99/5 100/17 100/22

**extent [2]**  48/17 49/4

**extra [1]**  101/19

**extraneous [1]**  20/20

**eye [1]**  93/10

**F**

**F2d [1]**  90/19

**fact [16]**  3/13 39/6 42/19 43/8 48/8 68/19 71/3 79/9 79/11 80/19 80/21 80/25 85/14 90/3 91/18 97/21

**facts [19]**  42/20 42/22 43/6 43/9 67/16 74/5 75/4 80/18 89/1 89/2 89/5 89/13 89/20 89/21 90/3 90/8 90/9 90/12 93/21

**failed [2]**  70/11 78/6

**failing [1]**  76/19

**failure [2]**  97/5 99/3

**faith [2]**  34/6 88/17

**false [23]**  18/17 20/4 74/13 74/17 74/17 74/22 75/15 77/15 77/25 79/3 80/14 80/16 81/11 82/1 82/2 82/18 82/21 83/14 84/9 84/25 86/4 86/5 86/8

**falsehood [1]**  85/1

**falsely [2]**  73/17 84/24

**falsity [2]**  79/4 79/12

**familiar [1]**  48/25

**far [6]**  37/10 54/21 63/15 84/14 85/8

**F**

**far... [1]**  90/13
**favor [2]**  58/17 81/5
**favorable [1]**  80/12
**February [7]**  27/21 27/22 28/8 30/9
 99/20 99/21 100/18
**February 1 [1]**  30/9
**February 21 [1]**  27/21
**federal [3]**  74/8 74/15 78/24
**feel [2]**  24/5 94/22
**fees [4]**  96/14 96/14 96/18 96/20
**felt [1]**  21/2
**few [4]**  13/10 48/14 51/25 56/2
**fib [1]**  84/4
**fictitious [1]**  59/12
**fiduciary [1]**  19/7
**fielded [1]**  13/2
**file [2]**  38/8 101/2
**filed [17]**  7/21 28/4 67/6 67/14 67/17
 73/3 77/1 80/10 81/19 82/13 89/25 94/7
 95/12 96/11 96/12 98/13 100/8
**files [2]**  11/4 12/12
**filing [3]**  13/23 13/25 94/4
**finally [3]**  47/13 74/5 80/19
**Finance [1]**  90/19
**financial [2]**  50/7 50/7
**find [3]**  7/14 13/14 79/8
**fine [2]**  6/13 6/13
**finish [1]**  4/11
**firm [15]**  11/15 15/15 15/16 15/17 17/3
 18/11 18/12 21/22 22/23 73/18 75/12
 77/6 78/18 81/9 87/24
**firms [1]**  22/7
**first [43]**  3/21 4/22 5/4 5/15 5/25 7/2
 9/20 23/4 26/18 29/2 31/8 33/2 36/2
 39/16 47/5 51/20 52/3 67/6 71/14 73/12
 75/10 81/6 81/15 81/17 81/20 81/20
 81/22 81/22 82/1 82/9 82/18 82/20 83/5
 83/6 83/8 85/15 88/3 88/5 92/19 92/25
 93/7 96/12 97/7
**Fitness [1]**  72/6
**five [1]**  51/2
**five-minute [1]**  51/2
**FL [4]**  1/14 1/18 12/16 38/3
**Flight [9]**  76/18 76/19 76/24 76/25 77/3
 77/7 78/4 85/11 86/7
**Floor [1]**  1/18
**FLORIDA [33]**  1/1 1/4 1/22 11/2 11/12
 11/25 12/4 12/17 12/25 13/21 15/11
 15/12 16/14 17/14 17/16 18/10 22/10
 22/25 25/7 31/22 33/24 37/13 39/2 54/23
 54/25 73/2 73/9 73/12 73/14 73/17 77/19
 93/1 102/10
**Florida's [1]**  73/6
**flrecords [1]**  12/16
**flsd.uscourts.gov [2]**  1/22 102/10
**FN [1]**  83/3
**follow [3]**  10/17 21/13 34/21
**follow-up [2]**  21/13 34/21
**followed [4]**  16/2 16/15 17/19 18/6
**following [2]**  13/24 73/7
**follows [3]**  9/18 51/17 87/5
**foregoing [3]**  59/9 102/4 102/6
**forget [1]**  95/7
**form [2]**  56/25 77/21
**Fort [2]**  12/1 22/10

**forth [5]**  7/11 23/17 73/24 86/20 90/12
**forward [3]**  6/18 32/8 95/10
**found [3]**  15/7 65/13 79/11
**foundation [2]**  50/2 50/10
**four [6]**  4/23 6/5 20/11 50/5 50/13 68/1
**four-year [1]**  68/1
**fowler [3]**  1/16 1/19 3/10
**fowler-white.com [1]**  1/19
**Franchises [1]**  78/14
**franchising [1]**  79/15
**fraud [35]**  67/25 68/6 68/9 69/14 69/15
 69/24 70/1 70/3 70/8 70/9 70/11 70/15
 70/20 71/24 72/3 72/16 72/19 74/4 74/6
 74/10 74/13 77/4 77/11 77/18 77/25
 78/12 79/1 80/4 81/3 86/7 89/17 91/21
 92/6 94/24 95/11
**fraudulent [4]**  78/23 79/7 91/8 92/7
**fraudulently [1]**  79/9
**frivolous [1]**  94/22
**front [1]**  14/18
**frustrating [1]**  14/5
**full [10]**  18/3 25/15 26/3 26/17 28/15
 32/2 35/25 73/20 77/14 80/17
**funds [1]**  100/25
**further [9]**  17/9 35/7 38/3 44/13 55/20
 72/11 75/22 77/3 87/6

**G**

**Gayles [3]**  6/21 61/6 101/9
**general [1]**  98/16
**generally [2]**  6/2 67/9
**genuine [1]**  79/8
**Georgia [1]**  76/18
**get [22]**  3/19 7/10 12/7 16/16 19/1 31/18
 33/10 34/7 51/11 52/20 61/15 61/25 62/1
 62/18 62/24 63/6 63/15 67/11 85/9 97/22
 98/8 101/19
**getting [2]**  9/11 98/12
**giant [1]**  95/11
**give [13]**  21/9 43/22 44/12 45/21 57/20
 58/8 58/9 68/15 68/16 84/5 90/4 92/21
 98/24
**given [5]**  19/5 19/19 35/22 56/9 99/5
**gives [3]**  84/8 84/24 84/25
**giving [3]**  41/18 46/21 101/18
**glass [1]**  62/3
**global [2]**  96/25 101/12
**gmail.com [1]**  1/14
**go [31]**  6/18 8/3 9/13 12/22 17/13 20/23
 35/13 35/13 35/16 37/7 38/12 42/6 48/25
 51/14 56/2 56/23 57/14 58/19 61/13
 61/17 61/24 61/25 67/21 71/11 74/24
 75/9 83/12 87/20 90/15 91/4 94/16
**goes [4]**  47/22 48/1 48/4 69/11
**going [55]**  4/22 7/20 10/4 12/22 13/20
 13/23 14/4 14/11 17/8 17/13 17/16 17/23
 20/23 20/24 21/8 24/1 26/14 26/22 30/19
 31/8 32/8 33/5 38/12 39/7 39/16 41/7
 42/10 44/15 45/5 45/9 45/13 46/2 48/22
 51/25 58/3 59/3 61/10 61/10 61/17 61/20
 61/22 61/24 61/24 62/20 63/2 64/16
 68/20 75/9 75/24 78/11 81/14 81/16
 90/25 91/1 95/10
**gone [4]**  12/14 12/19 15/8 85/8
**good [10]**  3/19 24/1 34/6 55/25 56/1
 61/7 65/4 67/11 88/17 101/20

**got [6]**  28/3 30/19 34/9 37/16 37/16
 57/20
**gotten [1]**  98/12
**Govern [1]**  17/10
**governing [1]**  86/25
**gradual [1]**  32/1
**grant [1]**  79/24
**granted [3]**  81/4 97/16 98/18
**granting [1]**  83/22
**great [3]**  11/8 17/7 18/20
**grounds [4]**  45/21 92/12 98/19 98/21
**guess [5]**  42/3 44/23 45/2 45/13 47/19
**guys [2]**  14/4 55/3

**H**

**had [90]**  4/17 7/20 11/2 11/2 11/3 11/7
 11/9 11/10 11/13 11/16 11/16 12/9 12/11
 12/11 12/14 12/19 13/16 13/16 13/18
 15/7 15/10 15/10 16/11 17/2 17/5 17/22
 17/24 24/5 25/1 25/22 25/23 25/23 25/24
 26/3 26/11 26/15 30/12 30/14 30/16
 30/23 30/25 30/25 31/21 31/24 32/2 33/4
 33/5 33/18 52/7 54/20 54/22 56/9 59/21
 61/13 61/13 64/12 64/14 68/8 68/16
 69/19 71/16 73/21 73/21 75/19 76/1
 76/14 77/7 77/13 77/23 78/2 78/8 78/15
 78/18 79/21 80/5 80/8 80/13 81/1 84/22
 85/10 89/9 89/19 91/12 91/22 94/11
 96/10 96/16 96/19 97/9 100/24
**half [6]**  13/13 37/13 37/25 41/25 41/25
 42/2
**hand [6]**  10/4 11/8 37/7 48/22 69/11
 69/12
**handle [2]**  98/25 99/12
**handled [2]**  13/4 15/8
**hands [1]**  12/9
**handy [1]**  93/3
**happened [7]**  11/20 12/3 12/13 13/13
 17/24 32/9 79/18
**happy [1]**  6/2
**hard [1]**  61/15
**harm [1]**  20/13
**Harriscorp [1]**  90/19
**has [62]**  4/25 5/15 8/20 13/8 18/4 18/14
 18/15 19/11 21/19 21/25 22/5 23/3 23/17
 30/5 34/2 36/17 36/23 37/9 37/10 38/25
 39/19 40/16 47/3 47/10 49/13 50/11 51/7
 52/18 53/13 53/21 53/23 54/2 54/13
 54/17 55/13 55/17 60/3 60/10 66/4 68/9
 68/19 71/15 72/7 73/19 74/7 75/13 76/16
 79/23 81/10 82/7 84/11 84/15 84/19 86/5
 87/25 91/23 92/16 95/23 96/8 96/22
 98/18 98/20
**hasn't [2]**  23/10 50/6
**hate [1]**  26/20
**have [135]**
**haven't [5]**  5/21 23/12 23/14 52/21 98/8
**having [7]**  9/18 49/15 51/17 80/23 96/15
 96/20 98/15
**he [75]**  7/12 8/7 9/8 9/10 12/13 17/17
 20/17 21/10 23/24 24/5 24/6 24/7 24/8
 24/8 24/9 24/9 25/5 25/22 25/23 25/23
 25/24 25/25 27/4 29/20 29/21 30/6 34/7
 35/14 44/13 45/20 45/20 46/18 54/22
 54/22 58/16 59/25 60/3 60/5 63/12 64/15
 64/16 64/16 64/25 68/13 68/13 70/21

**H**

**he... [29]** 71/4 71/4 74/14 76/14 77/14 78/7 78/22 79/16 80/10 80/22 81/1 81/1 81/2 81/11 82/7 82/9 85/25 88/13 88/17 88/24 90/20 90/22 91/1 91/16 91/16 91/21 91/23 91/23 100/25
**he's [4]** 21/11 34/6 51/9 54/6
**he/she [2]** 85/25 88/13
**head [1]** 11/15
**headquarters [3]** 22/12 22/16 22/19
**health [2]** 62/25 101/21
**hear [17]** 4/16 7/2 7/16 8/7 10/3 29/5 31/12 31/13 44/20 45/19 46/15 46/19 50/23 59/19 67/6 67/6 97/7
**heard [7]** 4/23 5/4 5/5 5/15 24/9 56/13 71/15
**hearing [12]** 1/9 4/23 5/13 5/23 6/7 6/15 6/24 7/9 20/18 61/3 61/4 65/8
**hearsay [9]** 47/5 47/6 48/10 48/11 48/12 48/13 48/17 50/1 50/10
**held [11]** 71/18 76/19 77/8 77/17 78/12 80/23 83/3 85/6 86/9 86/11 88/16
**help [2]** 98/11 98/12
**her [6]** 11/20 13/1 16/5 16/6 75/11 81/8
**here [28]** 7/11 9/12 10/12 10/13 19/2 19/22 24/18 32/24 35/14 40/6 42/10 43/4 49/17 51/13 51/24 57/21 58/7 58/9 64/22 68/4 69/17 69/17 78/14 78/22 91/18 95/4 96/1 101/12
**hereby [3]** 18/19 18/21 102/4
**Herstal [1]** 83/4
**highlighted [1]** 42/4
**highlights [1]** 97/6
**him [22]** 9/8 10/6 12/14 17/11 17/12 17/24 24/1 24/9 26/10 35/16 41/17 41/19 46/18 51/7 58/24 58/25 60/2 60/4 63/13 68/14 70/22 87/20
**his [31]** 9/20 16/16 17/13 19/25 20/16 25/25 31/15 31/24 32/15 41/17 46/19 54/7 60/2 68/16 68/17 75/11 75/15 77/5 78/17 79/9 80/20 80/21 81/8 82/20 86/14 86/15 86/18 86/22 87/12 87/23 91/10
**history [1]** 32/24
**hit [1]** 97/6
**hold [7]** 7/22 76/23 98/22 99/5 99/11 99/13 99/15
**holding [4]** 11/9 12/9 78/4 83/15
**holds [1]** 36/22
**Honor [135]**
**Honor's [2]** 5/17 84/18
**HONORABLE [1]** 1/9
**hope [1]** 32/10
**hopefully [3]** 62/18 62/22 64/25
**Hospitaltaller [1]** 77/16
**hour [1]** 63/6
**how [33]** 10/24 12/4 12/8 12/13 13/8 13/10 32/8 32/9 33/9 33/10 37/1 37/8 37/10 38/25 39/2 45/16 46/3 48/4 49/6 49/7 52/12 53/13 53/23 54/7 54/15 54/20 55/13 71/13 81/15 95/10 98/25 99/12 99/22
**however [2]** 68/18 99/2
**hurry [1]** 100/14

**I**

**I'd [3]** 21/9 23/2 41/3

**I'm [32]** 7/22 8/13 10/7 21/12 22/14 23/22 27/22 29/2 29/5 33/9 33/14 38/19 38/21 40/2 41/16 42/12 42/12 43/17 45/1 45/7 53/3 54/4 56/13 59/19 59/19 60/2 66/11 69/3 70/2 70/18 83/21 97/13
**i.e [1]** 82/16
**idea [3]** 3/20 55/3 55/3
**identical [1]** 77/21
**identification [3]** 48/17 50/21 63/16
**identified [1]** 8/20
**ignored [1]** 98/7
**immediately [4]** 11/20 16/9 18/22 52/16
**implicit [1]** 78/4
**important [2]** 14/9 80/20
**impression [5]** 6/11 11/12 11/19 83/14 84/25
**inadequately [1]** 93/16
**inadmissible [1]** 48/11
**inappropriate [3]** 93/23 95/12 95/23
**inaudible [1]** 71/2
**INC [37]** 1/3 3/3 3/7 12/4 18/3 18/16 18/18 18/20 22/11 25/7 25/18 30/1 31/23 34/3 34/12 35/4 35/19 35/22 37/6 39/1 40/19 47/3 49/9 56/9 57/13 57/16 59/12 59/16 60/10 64/10 72/6 76/1 76/6 91/5 91/11 95/7 95/8
**incidences [1]** 13/10
**incident [2]** 11/1 12/2
**incidents [1]** 13/8
**include [2]** 29/16 50/15
**included [4]** 48/9 49/21 73/7 75/3
**includes [2]** 17/1 28/5
**including [2]** 25/20 86/7
**inconvenience [1]** 51/12
**incorporated [1]** 73/15
**incorporation [3]** 82/11 82/14 82/15
**incorrect [1]** 13/24
**information [8]** 14/2 14/7 18/17 22/1 26/19 27/4 77/2 92/7
**informed [5]** 11/14 11/15 15/21 15/24 18/8
**infringed [2]** 37/9 39/1
**infringement [7]** 19/12 19/25 20/3 49/5 49/8 49/12 49/13
**infringements [1]** 37/24
**infringing [1]** 37/10
**initial [2]** 32/16 32/23
**initialed [2]** 91/6 91/25
**initially [3]** 4/7 33/5 55/6
**injunction [26]** 3/24 4/3 5/1 5/5 5/23 6/19 6/22 7/25 9/24 10/24 19/17 19/23 20/12 23/10 24/19 37/8 44/19 44/21 47/14 50/14 50/18 50/25 51/25 61/4 65/23 66/23
**instances [5]** 13/15 14/6 15/2 38/4 47/2
**insufficient [1]** 80/16
**intellectual [1]** 54/5
**intend [3]** 9/2 9/6 101/13
**intent [8]** 16/12 17/11 18/6 32/7 68/25 78/23 92/6 93/25
**interest [1]** 20/15
**interfere [1]** 16/24
**interfered [1]** 18/10
**interference [1]** 16/22
**interfering [1]** 18/9
**internal [1]** 15/7

**interrupt [4]** 4/19 26/21 61/9 70/13
**interrupting [1]** 70/18
**introduce [8]** 44/13 45/8 45/17 45/19 46/4 46/10 46/16 65/15
**introduced [1]** 48/13
**introduction [2]** 65/7 90/10
**invalidating [1]** 77/9
**investment [1]** 32/16
**invoice [5]** 52/17 52/17 53/6 53/6 55/15
**invoices [7]** 23/19 24/1 24/15 50/7 52/24 53/2 53/4
**involved [2]** 89/6 89/8
**irrelevant [3]** 47/9 50/2 50/11
**irreparable [3]** 20/13 50/15 50/15
**is [257]**
**isn't [1]** 91/1
**issue [21]** 15/5 37/2 37/7 47/23 47/23 48/4 58/3 61/5 66/4 67/12 67/20 67/22 68/9 77/10 78/7 78/19 79/8 79/11 80/3 91/18 98/14
**issued [2]** 47/21 57/5
**issues [6]** 41/23 47/10 47/19 62/25 98/1 99/6
**it [248]**
**it's [77]** 4/1 8/15 9/12 10/12 13/13 13/19 13/19 14/4 14/10 15/11 16/3 16/17 16/17 16/19 16/20 20/2 22/14 28/9 37/12 37/12 40/19 41/16 42/4 45/16 46/4 47/5 47/15 47/22 48/10 48/11 50/6 50/10 57/1 58/3 58/5 58/7 59/5 60/6 61/7 62/2 62/4 62/19 62/21 62/21 64/20 65/11 65/12 65/13 66/6 66/10 66/18 67/7 68/7 68/18 69/16 69/21 79/18 80/7 82/20 83/22 83/24 84/17 84/24 85/1 85/2 90/14 91/9 91/12 92/19 95/18 98/1 98/14 99/12 99/20 99/21 100/16 101/10
**its [12]** 29/24 30/24 53/2 53/4 53/8 59/11 75/20 77/4 83/25 85/13 88/2 99/10
**itself [3]** 18/24 39/2 85/10

**J**

**Jack [1]** 8/14
**January [2]** 99/23 102/8
**January 14 [1]** 99/23
**Jeanette [1]** 15/15
**jill [10]** 1/20 1/22 27/1 28/18 56/14 56/17 63/24 102/8 102/8 102/10
**job [1]** 22/15
**Joe [3]** 11/16 12/21 17/4
**join [1]** 64/25
**joint [8]** 29/16 97/18 97/23 98/7 98/12 98/12 98/18 99/7
**joint-owned [1]** 29/16
**JUDGE [31]** 1/10 6/21 7/19 8/9 9/5 10/1 14/11 21/6 23/12 44/15 44/23 45/11 45/14 45/25 46/12 47/19 58/11 60/14 61/5 61/9 63/11 63/22 64/1 65/21 67/22 70/18 90/7 90/14 92/22 100/3 101/9
**judgment [23]** 5/9 5/15 6/3 6/23 67/1 67/4 69/4 75/4 78/13 79/25 80/3 81/4 85/21 89/3 90/11 93/20 93/23 94/1 94/4 94/18 94/20 95/18 96/6
**judicial [1]** 66/8
**July [1]** 82/16
**July 1 [1]** 82/16
**junction [1]** 16/13

**J**

**June [19]** 26/7 28/13 30/20 30/22 31/9 31/16 32/13 32/15 35/5 36/6 36/14 40/7 40/24 73/15 76/10 82/6 82/14 82/20 86/21
**June 15 [5]** 35/5 82/6 82/14 82/20 86/21
**June 2006 [10]** 26/7 28/13 30/20 30/22 31/9 31/16 32/13 32/15 40/7 76/10
**June 28 [2]** 36/6 36/14
**June 30 [1]** 40/24
**jury [1]** 19/20
**just [64]** 4/2 4/8 6/13 6/20 7/6 7/17 7/22 8/5 9/12 9/24 10/15 10/23 17/19 19/5 19/9 19/18 20/22 21/1 24/4 26/5 26/22 27/2 27/8 28/3 28/10 29/23 31/18 33/4 34/9 34/23 35/2 37/18 40/6 41/20 41/22 42/20 43/6 45/5 45/17 46/1 47/22 48/3 48/7 51/8 52/16 52/23 54/2 59/25 60/6 60/21 61/15 62/7 62/20 64/16 66/3 67/8 68/20 69/12 78/22 97/6 100/8 100/14 100/25 101/5
**justifying [1]** 76/21

**K**

**keep [5]** 7/13 34/4 61/14 61/22 87/15
**kill [1]** 3/18
**kind [5]** 47/22 47/23 47/25 47/25 91/12
**Kissane [1]** 18/13
**knee [1]** 51/7
**knew [31]** 29/21 29/23 29/23 29/24 31/3 31/3 31/5 31/6 31/7 70/21 71/4 71/4 74/12 74/16 74/20 76/13 77/22 77/25 78/1 78/1 79/1 79/14 79/19 79/20 81/1 81/2 81/11 86/8 91/16 95/5 100/15
**know [54]** 3/18 3/25 6/7 10/10 12/9 12/13 13/18 13/23 14/9 15/18 16/8 21/25 21/25 22/2 22/12 22/16 22/16 22/17 22/19 22/22 22/24 22/25 23/24 24/7 24/9 24/10 25/23 26/18 26/24 27/8 27/25 30/6 31/21 33/4 36/9 45/14 46/24 54/4 54/21 56/5 56/17 57/10 61/17 62/16 62/19 63/10 63/10 63/16 64/3 66/4 67/18 70/25 84/3 92/15
**knowing [4]** 13/25 16/11 73/20 77/14
**knowledge [12]** 13/14 18/3 24/6 75/12 76/16 77/6 78/17 79/12 80/8 81/8 87/24 89/9
**known [6]** 15/2 38/4 47/2 74/14 74/17 79/4
**knows [3]** 17/17 17/17 20/11

**L**

**lack [2]** 50/2 50/10
**lacks [2]** 78/23 94/23
**large [2]** 22/7 22/7
**last [11]** 9/20 13/12 13/13 15/2 28/18 44/23 51/21 60/6 64/17 88/22 96/24
**later [8]** 6/10 25/21 26/9 45/6 46/2 46/4 62/9 62/16
**latest [2]** 98/23 99/16
**latter [1]** 99/1
**Lauderdale [2]** 12/1 22/10
**law [19]** 11/15 15/15 15/16 15/16 17/3 18/11 18/12 21/22 22/6 72/1 72/6 74/7 85/12 88/1 90/10 90/18 91/22 93/7 94/24
**lawsuit [2]** 24/24 25/11

**lay [1]** 59/23
**lays [1]** 90/12
**leap [1]** 95/11
**learned [3]** 17/2 17/22 43/15
**least [10]** 6/11 55/15 69/20 71/15 81/21 81/25 88/4 88/6 88/20 98/9
**leave [2]** 5/2 61/23
**leaves [1]** 87/19
**left [1]** 87/14
**legal [7]** 25/21 26/10 90/15 90/21 90/22 91/22 91/23
**let [23]** 6/20 7/2 7/16 8/1 10/15 14/14 19/25 27/1 41/15 43/4 50/23 57/3 59/19 62/15 63/9 64/3 67/8 67/13 90/4 90/4 92/14 92/21 97/6
**let's [7]** 7/13 9/19 13/12 20/20 63/8 82/22 92/10
**letterhead [2]** 47/21 47/25
**letters [1]** 16/10
**letting [1]** 15/18
**level [2]** 26/15 95/11
**Lewis [18]** 21/16 21/19 21/22 22/2 22/7 22/9 22/12 22/16 22/19 22/22 22/24 23/1 23/19 23/20 23/25 52/19 55/13 55/17
**license [1]** 49/15
**licensing [4]** 30/2 30/5 30/8 31/21
**light [1]** 18/16
**like [34]** 6/18 9/11 13/8 13/10 15/22 21/9 22/8 22/8 23/2 23/6 38/4 41/3 43/1 43/1 45/13 45/23 45/25 47/22 54/5 62/2 62/9 62/10 62/12 64/23 65/15 66/5 67/9 69/25 72/20 78/22 91/9 91/9 92/19 96/25
**likelihood [2]** 19/24 20/12
**limine [2]** 101/8 101/11
**limit [1]** 20/16
**limitation [2]** 71/22 72/12
**limitations [9]** 68/1 71/15 71/19 72/3 72/13 72/14 93/8 93/16 96/16
**limiting [1]** 59/9
**line [11]** 31/8 42/13 42/16 42/16 42/24 74/12 75/17 75/22 75/22 76/8 86/17
**linked [1]** 94/3
**list [4]** 5/11 49/7 49/17 65/11
**listed [3]** 5/10 30/5 49/10
**listen [1]** 28/17
**listing [3]** 49/11 49/12 49/14
**lists [1]** 4/4
**litigation [3]** 52/5 91/20 98/15
**little [6]** 6/10 34/13 40/4 43/3 54/8 84/4
**live [4]** 5/24 7/10 9/2 9/4
**LLC [38]** 1/6 3/3 21/20 22/3 22/5 23/20 23/25 24/2 24/23 25/1 27/17 27/20 27/25 28/12 28/25 29/10 29/14 29/18 29/24 30/9 30/12 30/23 37/9 38/25 49/8 52/1 53/1 53/4 53/8 53/13 55/14 55/18 64/11 75/19 75/25 76/5 80/2 89/8
**LLC's [2]** 24/10 54/13
**local [1]** 89/24
**located [2]** 18/13 22/12
**location [1]** 12/20
**log [1]** 64/24
**logo [73]** 25/2 25/9 25/13 25/16 26/2 26/3 26/7 26/14 27/17 27/20 28/1 28/3 28/12 28/16 28/24 30/24 31/1 31/10 31/16 32/2 32/14 32/16 32/18 32/21 33/6 33/10 33/19 33/21 34/4 34/13 36/1 37/2

38/18 39/4 39/19 40/8 40/13 40/18 43/11 47/20 52/2 52/3 52/7 52/9 52/14 52/18 52/24 53/2 53/4 53/8 53/13 53/21 53/23 54/3 54/15 54/17 54/20 55/7 56/23 60/11 75/24 75/25 76/1 76/4 76/9 76/14 76/17 86/15 86/19 86/20 87/1 87/13 91/12
**long [7]** 12/4 52/12 53/13 55/13 61/17 63/5 91/22
**longer [3]** 17/23 63/9 87/7
**look [8]** 10/14 12/22 46/22 47/18 56/14 56/17 58/8 92/22
**looked [3]** 7/14 11/5 25/5
**looking [3]** 92/17 93/13 93/20
**looks [1]** 92/18
**losses [1]** 49/4
**lot [4]** 11/8 12/9 13/18 22/6
**Louisiana [5]** 17/2 17/3 18/9 18/15 37/14
**lower [1]** 79/14
**lunch [3]** 3/17 61/8 61/18
**lunchtime [1]** 61/8
**Lutter [1]** 68/17

**M**

**M-I-J-A-R-E-S [1]** 9/21
**machine [1]** 62/19
**made [20]** 16/11 18/25 23/11 25/24 72/17 73/25 74/2 74/11 74/16 74/21 74/22 77/13 77/14 78/17 88/24 89/10 91/10 93/21 95/20 95/23
**MAGISTRATE [1]** 1/10
**main [1]** 19/23
**make [17]** 4/8 4/17 6/14 10/2 17/19 26/5 32/25 35/2 40/16 41/15 41/21 41/22 51/8 80/17 99/22 100/13 100/15
**makes [3]** 5/14 11/9 78/25
**making [2]** 39/5 97/1
**malicious [1]** 16/21
**maliciously [1]** 18/16
**manager [1]** 12/25
**manipulate [1]** 95/2
**manner [1]** 80/12
**many [3]** 3/13 13/8 13/10
**March [13]** 73/13 81/21 81/25 82/10 82/19 83/9 84/12 84/15 84/16 85/15 85/17 88/4 88/6
**March 1 [5]** 73/13 81/21 81/25 88/4 88/6
**March 2001 [4]** 83/9 84/12 84/15 84/16
**MARIANO [1]** 1/16
**mark [78]** 7/8 24/24 25/10 30/13 38/24 38/25 39/2 52/4 73/5 73/10 73/13 73/14 73/18 73/19 73/21 73/21 73/22 75/13 75/20 77/7 77/14 77/21 77/23 78/1 78/2 78/5 78/7 78/8 78/19 79/9 79/16 79/19 79/21 80/1 80/6 80/13 81/1 81/10 81/14 81/23 82/5 82/8 82/10 82/19 82/19 82/25 82/25 83/2 83/6 83/9 83/9 83/10 83/14 83/17 84/10 84/11 84/15 84/16 85/2 85/10 85/15 85/16 85/17 86/1 87/18 87/20 87/25 88/4 88/10 88/11 88/14 90/12 90/16 90/21 90/22 90/23 90/25 91/2
**mark's [1]** 83/5
**marked [3]** 23/3 48/16 50/21
**marks [1]** 76/20

**M**

**material [20]** 73/7 75/4 76/21 79/2 79/8 79/11 81/16 82/22 83/19 83/22 83/25 84/17 84/20 84/24 85/3 89/1 89/2 89/5 89/13 90/3
**materiality [3]** 84/3 84/6 84/8
**matter [9]** 3/21 3/22 4/8 15/5 16/17 61/4 84/4 94/23 102/5
**matters [6]** 3/17 6/15 6/20 6/22 20/17 83/7
**may [20]** 11/16 12/21 17/4 18/7 23/21 41/6 41/10 48/9 48/9 49/3 50/18 72/22 74/24 76/20 82/24 82/24 83/2 85/18 88/11 90/8
**May 11 [1]** 82/24
**May 2001 [2]** 83/2 88/11
**May 2021 [1]** 49/3
**May 26 [1]** 18/7
**May 31 [1]** 23/21
**maybe [4]** 4/16 6/7 50/5 51/2
**me [60]** 5/22 6/20 6/21 6/25 7/2 7/16 7/17 8/1 8/17 9/10 10/15 14/14 14/19 20/1 24/8 25/3 25/6 26/23 26/24 27/1 30/25 33/24 34/9 40/4 41/15 42/24 43/4 45/21 45/23 46/13 49/11 50/23 54/1 54/5 57/3 57/20 58/8 58/9 59/19 60/10 61/22 61/25 62/11 66/4 67/8 67/13 67/13 70/13 75/22 84/5 90/4 90/4 92/14 92/21 92/21 94/20 97/22 101/6 101/12 101/18
**mean [15]** 4/19 14/8 38/21 42/1 45/4 46/14 53/1 61/9 68/12 90/8 91/11 91/17 97/13 98/24 101/10
**meaning [1]** 34/13
**meed [1]** 63/13
**meet [1]** 64/2
**member [1]** 68/13
**memorandum [1]** 90/10
**mentioned [10]** 25/9 28/2 36/9 39/17 40/10 47/13 47/15 63/16 88/9 97/9
**mere [2]** 80/19 80/21
**merits [2]** 19/25 20/13
**met [4]** 5/19 25/2 33/4 79/1
**Miami [7]** 1/4 1/14 1/18 1/21 1/22 102/9 102/10
**mic [1]** 10/2
**middle [1]** 35/12
**might [2]** 96/5 101/7
**MIJARES [49]** 2/5 9/5 9/6 9/15 9/16 9/19 9/23 10/4 10/20 13/8 14/23 21/9 21/10 21/16 23/23 24/15 24/18 27/2 31/14 35/3 35/19 39/9 39/17 40/21 41/3 41/13 41/21 42/8 43/10 43/17 44/2 46/5 46/11 46/16 46/17 48/22 49/6 50/4 50/8 64/20 68/14 68/25 73/3 75/7 75/15 75/23 90/14 90/24 92/6
**Mijares' [3]** 44/17 47/6 95/3
**Military [1]** 77/16
**mince [1]** 32/24
**mind [3]** 7/13 28/18 83/16
**mindful [1]** 62/25
**mine [1]** 101/10
**minute [5]** 14/23 46/21 48/23 51/2 92/22
**minutes [2]** 62/1 64/17
**Mischaracterizes [1]** 56/11
**misleading [1]** 80/14

**misrepresentation [16]** 73/14 81/7 81/13 81/15 83/7 83/18 83/19 85/13 85/23 86/2 86/10 87/22 88/1 88/3 88/12 88/22
**misrepresentations [14]** 73/8 73/25 74/1 74/1 75/1 75/10 77/18 78/16 79/12 85/8 85/19 85/20 88/21 89/10
**misrepresented [2]** 79/22 80/5
**miss [2]** 8/8 61/14
**missed [1]** 101/7
**missing [1]** 34/18
**misunderstood [2]** 45/11 45/14
**modify [1]** 87/9
**moment [1]** 43/21
**Money [1]** 90/18
**month [2]** 49/13 53/14
**months [3]** 13/11 83/9 83/10
**mooted [3]** 6/12 97/10 98/20
**more [18]** 17/19 21/9 38/15 42/25 43/3 44/7 44/9 48/7 54/2 60/14 63/6 64/23 65/7 72/12 74/19 89/16 96/19 100/25
**morning [3]** 55/25 56/1 97/10
**most [2]** 80/12 96/25
**motion [98]** 1/9 3/24 3/25 4/2 4/25 5/5 5/15 5/17 6/6 6/11 6/18 7/2 7/25 9/23 9/25 10/24 19/16 19/23 20/2 20/7 20/8 20/9 20/10 20/22 23/8 23/10 24/18 24/19 44/18 44/21 47/14 50/25 51/24 66/23 67/5 67/14 67/17 68/4 69/2 69/4 69/10 69/11 71/9 71/9 75/4 89/3 89/19 89/22 90/11 92/11 92/18 92/19 93/1 93/14 93/18 93/19 93/22 93/25 94/1 94/4 94/6 94/7 94/17 94/18 94/19 94/22 94/22 95/12 95/17 95/18 95/21 95/25 96/2 96/6 96/7 96/10 96/11 96/12 96/15 96/25 97/6 97/9 97/17 97/20 97/20 98/10 98/12 98/19 98/22 98/22 99/8 99/12 100/7 100/8 100/10 100/19 101/8 101/13
**motions [17]** 3/14 4/22 4/23 4/24 5/4 5/9 6/1 6/3 6/5 6/22 62/6 63/2 66/25 67/8 90/6 96/21 101/11
**move [9]** 19/4 19/18 24/15 28/16 32/8 35/15 43/3 90/6 95/10
**moved [1]** 21/2
**MPC [1]** 78/14
**Mr [54]** 2/6 2/7 2/8 2/9 2/11 2/12 4/16 5/3 7/16 8/2 9/3 9/22 31/9 33/25 34/4 34/16 34/21 35/19 36/9 36/11 38/14 38/16 38/22 39/24 40/8 42/8 44/3 45/20 46/15 46/19 47/4 51/2 51/4 51/7 51/24 52/21 58/22 64/14 64/20 65/20 66/17 67/19 67/21 68/14 68/16 68/17 68/25 70/5 70/21 83/21 90/4 92/6 92/25 94/12
**Mr. [111]**
**Mr. Cerasale [17]** 28/6 33/24 54/6 54/10 55/25 57/16 58/23 59/3 60/21 63/12 71/4 86/14 87/11 90/25 91/15 92/3 95/4
**Mr. Mijares [37]** 9/6 9/19 9/23 10/4 10/20 13/8 14/23 21/9 21/10 21/16 23/23 24/15 24/18 27/2 31/14 35/3 39/9 39/17 40/21 41/3 41/13 41/21 43/10 43/17 44/2 46/5 46/11 46/16 46/17 48/22 49/6 50/4 50/8 68/25 75/15 75/23 90/24
**Mr. Mijares' [3]** 44/17 47/6 95/3
**Mr. Noel [2]** 9/5 9/15
**Mr. Steven [1]** 18/7

**Mr. Valdes [24]** 7/3 8/20 9/10 19/22 20/16 21/4 23/4 23/14 23/18 38/19 41/7 43/22 44/12 46/8 47/17 55/22 56/20 60/23 64/3 64/19 92/17 94/19 100/2 101/21
**Mr. Valdes' [3]** 64/20 97/7 101/3
**Mr. Valdes's [1]** 7/12
**Mr. Velarde [23]** 6/6 6/18 14/11 23/23 34/2 48/2 50/23 58/16 59/20 60/15 60/19 62/16 63/4 63/10 63/13 65/22 71/9 71/11 91/10 93/18 95/15 97/7 100/11
**MRI [3]** 61/12 62/2 64/16
**much [9]** 3/12 12/14 13/13 63/22 64/4 65/2 68/15 90/18 101/15
**multiple [4]** 16/24 17/1 23/1 25/24
**must [1]** 94/14
**mutually [1]** 55/4
**my [33]** 4/17 6/14 9/4 10/16 14/21 17/11 22/9 24/15 30/23 41/21 43/14 43/15 43/16 57/20 58/9 60/8 66/3 69/19 74/24 75/19 76/13 81/6 83/12 83/15 85/17 88/10 93/10 95/2 97/20 97/20 99/8 100/18 100/22
**myself [1]** 15/14

**N**

**N-O-E-L [1]** 9/21
**name [51]** 9/20 13/23 25/1 25/4 25/6 25/13 25/15 26/2 26/3 26/8 26/14 28/3 28/16 31/23 32/2 32/16 32/17 32/18 32/21 33/6 33/10 33/18 33/21 34/4 34/13 38/5 39/4 39/19 40/8 40/14 40/17 43/9 51/18 51/20 51/21 55/10 59/11 59/12 60/11 80/9 86/15 86/19 86/20 87/1 87/9 87/10 87/12 87/15 87/15 87/18 87/20
**named [1]** 33/13
**names [4]** 14/7 25/5 38/24 76/25
**national [5]** 17/3 17/6 18/11 21/22 26/15
**near [1]** 77/22
**necessarily [1]** 51/12
**necessary [5]** 27/4 77/25 97/25 98/1 99/8
**need [15]** 7/14 9/24 17/13 19/4 24/12 27/8 51/13 56/15 61/15 61/23 62/5 62/23 63/6 72/11 98/6
**needed [2]** 15/24 33/3
**needs [5]** 20/9 20/17 64/15 64/23 74/10
**negative [1]** 18/16
**negotiating [1]** 39/6
**neither [1]** 89/9
**never [9]** 30/8 33/13 36/24 37/14 37/15 56/9 69/15 91/7 91/20
**nevermind [1]** 94/15
**nevertheless [1]** 79/8
**next [7]** 24/15 27/14 43/25 44/1 72/17 81/22 101/23
**no [78]** 1/2 6/23 8/13 12/11 17/23 24/5 24/14 26/8 27/12 27/24 28/2 31/20 31/21 33/6 35/13 36/12 40/19 41/22 44/9 44/23 44/25 45/2 45/4 45/17 46/7 53/22 54/1 54/16 54/19 55/9 55/12 55/20 57/18 57/25 60/11 60/14 60/14 60/17 60/20 61/1 62/25 63/5 65/20 65/21 66/21 66/21 67/16 69/14 69/15 69/24 70/8 70/9 70/11 70/12 70/15 70/20 70/22 70/23 71/1 71/2

**N**

**no... [18]**  72/3 73/18 75/12 77/6 78/17 79/8 79/11 80/13 81/9 82/7 87/7 87/24 89/23 90/2 92/6 94/13 100/3 101/10
**nobody [4]**  76/16 77/13 79/22 85/10
**NOEL [8]**  2/5 9/5 9/15 9/16 54/21 73/3 75/7 90/14
**non [1]**  4/7
**non-objection [1]**  4/7
**nonetheless [1]**  79/22
**nonparties [2]**  47/7 48/10
**not [140]**
**note [7]**  4/4 19/21 20/19 67/13 67/14 89/18 100/6
**noted [2]**  38/14 63/16
**nothing [6]**  19/11 31/24 38/10 69/24 89/25 91/8
**notice [6]**  16/21 18/19 61/19 66/8 66/12 99/14
**noticed [1]**  18/21
**notices [2]**  14/1 25/21
**noticing [1]**  7/12
**notified [3]**  11/3 11/21 12/19
**now [25]**  11/5 14/18 21/10 22/6 36/22 36/22 36/24 40/10 41/17 45/10 61/7 61/25 62/9 62/13 62/21 66/25 71/25 83/12 91/19 93/6 93/18 94/6 97/21 98/18 98/20
**null [2]**  36/14 36/19
**nullified [1]**  86/23
**nullifies [1]**  40/11
**number [10]**  3/2 37/19 47/19 64/10 70/25 73/9 73/12 75/14 87/22 88/3
**Number 2 [1]**  73/12
**number one [1]**  75/14
**number two [2]**  70/25 88/3
**numbers [1]**  50/4
**numerous [1]**  18/25
**Nutrition [1]**  72/6
**nutshell [1]**  11/23

**O**

**o'clock [6]**  61/23 62/9 62/14 63/3 63/9 64/2
**oath [6]**  70/21 71/4 77/19 91/15 92/5 95/5
**object [9]**  8/5 8/11 8/17 8/19 19/4 22/15 23/13 56/25 57/17
**objected [9]**  10/5 14/12 14/13 14/15 14/16 21/7 45/13 45/20 63/15
**objecting [1]**  59/24
**objection [35]**  4/7 8/4 8/12 8/24 11/3 11/7 12/10 13/25 15/19 18/5 38/8 38/14 45/17 45/18 45/19 45/20 46/19 47/4 48/12 48/17 48/19 49/25 50/1 50/19 56/11 59/18 63/3 65/20 65/21 66/17 66/21 70/22 70/23 91/8 100/2
**objections [5]**  8/3 8/25 16/18 44/24 46/15
**obtain [1]**  83/25
**obtained [1]**  79/9
**obvious [1]**  97/24
**obviously [5]**  6/25 15/18 31/2 68/6 100/15
**OC [1]**  18/4
**occasions [1]**  71/16

**occur [1]**  92/8
**occurred [3]**  11/19 13/8 13/10
**October [9]**  15/3 17/18 73/2 73/25 75/8 76/15 88/25 98/6 98/9
**October 14 [1]**  17/18
**October 15 [2]**  73/2 75/8
**October 5 [2]**  98/6 98/9
**October of [1]**  73/25
**off [3]**  42/4 57/21 81/19
**offer [1]**  60/25
**office [15]**  11/17 13/3 15/9 18/13 26/16 28/22 28/23 29/7 36/3 57/6 70/3 73/4 77/2 91/4 91/21
**officer [1]**  87/7
**offices [3]**  21/23 23/1 47/20
**Official [2]**  1/21 102/9
**Oftentimes [1]**  27/7
**Oh [1]**  69/5
**okay [24]**  7/23 8/15 10/9 12/22 13/1 13/5 29/4 31/18 44/6 44/10 56/21 57/8 61/2 62/12 62/17 68/5 90/4 90/17 92/10 94/5 94/8 97/15 99/25 100/4
**omission [1]**  76/21
**Once [1]**  13/3
**one [61]**  3/22 4/25 5/7 5/23 5/25 9/10 11/1 11/3 12/10 13/2 13/4 14/12 14/15 15/2 15/11 17/3 21/17 22/7 26/18 38/15 43/21 44/7 48/7 51/5 57/1 57/20 58/8 58/9 58/11 59/25 60/3 60/6 60/6 60/12 62/4 62/21 62/21 65/7 66/22 69/21 70/20 72/5 75/9 75/9 75/10 75/14 78/14 78/16 85/9 86/4 87/22 88/22 88/22 92/22 96/24 96/24 97/5 99/9 100/1 100/10 101/12
**ones [5]**  14/13 14/15 17/6 44/23 45/2
**only [18]**  5/23 8/20 9/23 22/24 26/19 30/19 36/12 37/21 41/25 42/1 45/2 50/20 60/6 61/3 74/13 78/10 79/1 87/10
**open [2]**  62/4 62/21
**operating [11]**  25/13 25/17 25/19 35/3 36/13 36/13 69/21 86/21 86/22 87/2 87/3
**operation [2]**  54/23 55/1
**operations [3]**  12/25 18/9 18/15
**opinion [4]**  37/8 59/15 59/23 81/6
**opportunity [3]**  43/22 44/12 90/5
**opposed [2]**  93/9 94/1
**opposing [1]**  100/23
**opposition [3]**  69/2 90/10 96/13
**option [1]**  3/17
**order [13]**  3/1 4/22 6/14 11/5 11/10 11/12 15/7 18/4 37/17 68/20 93/13 97/11 98/23
**orders [15]**  11/21 12/19 13/17 14/8 14/8 15/18 15/25 15/25 16/4 16/6 17/5 18/2 49/13 97/5 99/4
**organizations [4]**  76/24 77/21 77/23 78/7
**origin [1]**  20/4
**original [3]**  13/2 33/2 33/17
**Orlando [2]**  12/3 17/23
**ostensibly [1]**  50/9
**OTAZO [1]**  1/9
**OTAZO-REYES [1]**  1/9
**other [42]**  6/1 8/20 16/6 21/8 25/5 28/7 31/24 31/25 33/4 36/10 37/16 39/8 42/5 50/8 50/18 60/13 67/19 73/18 75/12 76/13 76/20 76/24 77/6 77/20 77/22

78/17 75/23 80/5 80/13 80/25 81/9 81/23 83/7 84/19 86/3 86/3 87/24 89/13 91/10 96/5 98/21 99/2
**others [2]**  21/7 78/6
**otherwise [5]**  27/9 33/12 59/13 88/8 101/13
**our [61]**  11/1 11/6 11/19 12/25 13/14 13/19 13/19 13/23 15/11 15/17 16/13 16/14 16/17 16/17 16/18 16/19 17/3 17/23 18/9 18/10 18/15 18/17 19/11 19/11 19/15 21/7 25/13 32/5 37/15 37/25 38/3 38/5 38/5 39/3 39/4 39/4 39/4 39/5 39/6 39/7 40/6 43/1 47/2 62/15 67/18 67/22 68/4 69/2 69/11 70/1 74/21 75/3 75/4 78/4 89/2 90/9 90/10 90/10 90/14 90/17 92/9
**ours [2]**  22/10 37/14
**ourselves [1]**  3/18
**out [17]**  8/16 11/17 11/24 12/1 12/2 13/16 17/18 17/23 22/9 22/10 24/4 26/9 37/13 37/25 58/24 90/12 91/8
**outside [1]**  23/9
**over [18]**  5/9 10/20 11/11 12/11 13/15 38/4 39/19 56/2 68/17 69/21 83/6 83/17 84/11 85/8 86/3 93/22 98/4 101/19
**overlaps [1]**  47/24
**own [10]**  25/25 43/19 69/4 69/9 80/20 80/21 82/20 83/25 85/13 88/2
**owned [7]**  25/23 26/10 29/16 37/6 87/1 87/17 87/18
**owner [10]**  35/19 37/8 59/16 60/5 73/10 73/11 73/18 73/21 85/25 88/14
**owners [1]**  13/20
**ownership [13]**  28/5 31/10 31/16 32/13 36/1 36/7 37/2 39/19 55/7 55/10 68/17 82/6 95/8
**ownership/title [1]**  82/6
**owns [9]**  40/13 40/18 40/18 42/22 43/8 43/9 43/11 56/23 57/10

**P**

**P.A [2]**  1/12 1/16
**p.m [7]**  64/7 64/7 64/15 64/16 65/3 65/3 101/22
**Pace [1]**  77/20
**page [20]**  2/3 6/14 42/5 42/12 42/16 42/16 50/8 66/18 75/17 75/22 81/17 82/4 82/14 82/24 85/23 86/17 87/4 93/14 93/20 101/23
**pages [2]**  1/7 41/8
**pandemic [1]**  102/6
**papers [1]**  7/10
**paragraph [6]**  60/8 60/9 72/25 73/6 73/17 95/6
**paragraphs [1]**  73/23
**paralegal [2]**  11/15 15/16
**Pardon [1]**  53/18
**part [26]**  4/1 7/6 12/22 23/7 23/11 25/12 25/25 29/2 32/15 32/22 33/23 37/21 43/2 51/11 58/11 58/14 59/11 65/17 65/18 71/6 80/21 86/14 86/18 87/3 90/9 94/24
**parte [2]**  3/24 3/25
**partially [1]**  97/10
**particular [1]**  4/14
**particularity [5]**  68/10 69/16 70/16 71/1 96/3

**P**

**parties [15]** 6/3 20/14 36/18 59/9 65/6 68/24 68/24 69/1 69/18 71/3 91/9 92/2 92/7 97/17 97/25
**partners [1]** 91/17
**partnership [1]** 95/9
**party [7]** 4/14 67/10 74/10 77/19 77/25 78/1 83/5
**pass [1]** 21/10
**past [5]** 13/10 13/11 13/11 37/12 37/25
**patent [12]** 26/16 28/22 28/23 29/6 36/3 37/11 38/17 38/20 38/20 73/4 77/2 91/16
**patently [1]** 80/16
**pattern [1]** 99/4
**Pause [2]** 58/10 66/20
**pay [1]** 100/25
**payment [1]** 100/7
**pending [9]** 19/6 38/11 50/12 98/23 99/11 99/14 99/15 100/8 101/6
**people [4]** 10/11 26/18 58/6 58/6
**people's [1]** 80/5
**per [1]** 49/13
**percent [5]** 18/18 26/12 35/25 68/16 94/17
**perfect [1]** 99/24
**period [5]** 28/1 28/2 30/12 30/20 31/3
**permitted [1]** 48/13
**person [8]** 59/23 73/18 75/12 77/6 78/18 80/13 81/9 87/24
**pertain [2]** 24/2 49/10
**pertained [1]** 61/3
**pertaining [1]** 49/4
**pertains [1]** 11/7
**perusing [1]** 48/24
**petitions [1]** 72/9
**phone [2]** 13/2 98/8
**picked [1]** 20/7
**picture [3]** 34/14 52/18 67/11
**pictures [1]** 62/20
**pile [1]** 58/9
**pizzerias [1]** 79/15
**place [3]** 36/22 54/24 55/1
**plaintiff [119]**
**plaintiff's [22]** 3/23 7/2 19/9 19/23 50/22 65/12 66/23 67/5 67/14 67/17 73/15 82/13 88/3 88/5 89/19 92/11 97/2 97/22 98/3 98/5 98/8 98/16
**plaintiffs [5]** 48/9 79/15 81/14 85/1 85/16
**plan [1]** 63/8
**plead [1]** 70/16
**pleading [3]** 70/19 96/7 96/9
**pleadings [3]** 97/2 97/3 97/3
**please [8]** 3/4 15/3 15/21 27/1 47/1 49/1 53/3 56/16
**pled [4]** 68/9 68/10 71/2 93/17
**poached [1]** 13/17
**poaching [6]** 16/14 19/14 47/12 47/23 48/3 50/11
**point [17]** 12/7 12/18 19/2 21/9 48/7 51/5 58/16 58/23 67/13 69/25 70/1 72/20 84/10 84/18 84/23 90/18 92/2
**points [4]** 4/20 69/7 69/8 71/13
**policed [4]** 53/23 53/24 53/25 54/3
**policing [1]** 54/4
**portion [6]** 5/12 6/11 42/3 56/18 61/3

**portions [1]** 44/14
**portrayed [1]** 18/15
**posed [1]** 27/9
**position [8]** 13/1 67/23 69/2 70/1 89/22 90/14 90/17 92/9
**possesses [1]** 90/21
**possible [1]** 72/13
**potential [1]** 49/18
**precedent [1]** 85/12
**predicated [2]** 20/2 20/8
**preferred [1]** 18/11
**prejudice [1]** 99/10
**preliminary [26]** 3/24 4/3 5/1 5/5 5/22 6/19 6/22 7/24 9/24 19/16 19/23 20/12 23/10 24/18 24/19 37/7 44/19 44/21 47/14 50/14 50/17 50/24 51/25 61/4 65/23 66/23
**prepare [1]** 97/23
**prepared [6]** 6/8 25/22 50/3 50/8 98/13 102/6
**preparing [1]** 89/6
**presence [1]** 22/8
**present [15]** 7/17 7/18 9/2 9/25 20/25 23/2 23/4 41/3 41/8 46/17 47/7 50/24 53/17 53/19 55/18
**presentation [3]** 3/23 50/22 67/10
**presented [6]** 7/17 8/25 23/14 26/10 71/13 74/19
**presenting [1]** 45/24
**president [1]** 75/7
**presumably [1]** 50/4
**pretrial [7]** 97/18 97/23 97/24 98/7 98/18 99/7 99/17
**pretty [4]** 12/14 13/13 14/14 68/15
**prevailing [2]** 19/24 20/13
**prevent [1]** 68/2
**previous [2]** 36/18 40/5
**previously [1]** 23/18
**primary [1]** 25/14
**principal [1]** 68/14
**principally [1]** 67/25
**prior [1]** 68/7
**priori [1]** 77/19
**priority [6]** 83/6 83/17 84/11 84/13 84/16 84/25
**privy [2]** 22/1 22/4
**probably [4]** 3/17 52/10 61/15 62/1
**problems [1]** 13/18
**Procedure [1]** 13/21
**proceed [3]** 5/21 5/22 66/25
**proceedings [2]** 101/22 102/5
**process [3]** 13/21 13/22 13/22
**processed [1]** 91/25
**procurement [1]** 79/8
**produced [1]** 28/4
**production [1]** 14/1
**progeny [1]** 86/6
**Progressive [1]** 72/6
**prohibits [1]** 37/23
**prompt [1]** 27/3
**prong [2]** 19/24 50/15
**prongs [2]** 20/11 50/14
**proof [2]** 50/9 50/9
**proper [1]** 96/9
**properly [2]** 16/19 47/15

**property [1]** 54/5
**propose [4]** 7/4 7/17 7/18 7/20
**proposed [1]** 93/15
**proposing [1]** 4/15
**protection [2]** 20/5 26/14
**prove [2]** 77/18 77/24
**proven [1]** 78/13
**proves [1]** 100/24
**provide [2]** 72/11 92/6
**provided [8]** 23/18 23/19 25/15 28/23 30/1 36/2 86/15 90/24
**provides [1]** 72/9
**providing [1]** 18/17
**provision [2]** 87/11 87/13
**PTL [1]** 79/1
**public [3]** 20/15 31/5 66/9
**pull [1]** 10/15
**purge [1]** 18/17
**purpose [1]** 79/17
**Purposefully [1]** 76/19
**purposely [1]** 78/6
**purposes [8]** 7/8 20/17 23/4 23/8 36/3 40/6 63/17 68/16
**pursuant [3]** 33/19 89/25 93/14
**put [6]** 8/2 18/19 33/3 43/13 45/9 45/12

**Q**

**qualify [1]** 76/21
**quantified [1]** 50/16
**question [47]** 22/13 24/16 26/4 26/23 26/25 27/1 27/5 27/9 27/11 28/17 28/18 28/19 29/3 30/22 30/23 31/17 31/18 31/22 32/10 34/22 38/15 39/21 40/3 41/18 42/13 42/17 42/21 43/7 43/23 43/23 43/25 44/1 44/7 54/11 56/15 56/25 57/1 57/10 58/25 59/21 59/22 60/6 60/6 60/8 75/18 76/4 76/9
**questioned [1]** 69/19
**questioning [2]** 9/23 31/8
**questions [12]** 21/13 27/3 35/8 39/8 39/10 43/14 44/9 51/25 55/20 56/19 60/13 60/14
**quick [2]** 34/23 39/10
**quickly [4]** 62/18 66/19 74/25 75/10
**quite [4]** 34/5 48/14 51/10 56/13
**quote [6]** 3/23 19/14 50/9 72/4 72/4 72/8
**quote-unquote [2]** 19/14 50/9
**quoted [1]** 74/2
**quoting [2]** 86/17 96/1

**R**

**Rahman [2]** 80/20 80/21
**Rahman's [2]** 80/12 80/17
**Rahmen [2]** 80/2 80/8
**raise [1]** 95/11
**raised [1]** 11/7
**range [1]** 52/11
**rather [7]** 24/19 39/11 54/14 72/7 78/12 82/19 88/23
**ratified [2]** 91/25 92/1
**rationale [1]** 84/5
**re [5]** 74/8 74/11 74/15 86/6 86/7
**reach [1]** 5/11
**reached [2]** 11/24 13/16
**reaching [2]** 37/13 37/25

**R**

**read [13]** 10/20 20/2 27/1 27/11 28/19 42/10 43/13 43/14 56/18 58/24 59/1 59/3 92/18
**reading [2]** 59/14 66/12
**reads [1]** 87/5
**reaffirms [1]** 42/18
**reality [3]** 73/10 73/13 85/16
**realized [1]** 16/9
**really [11]** 3/25 5/23 17/12 42/4 61/14 66/19 68/18 69/16 70/1 90/13 94/23
**reason [12]** 5/22 5/24 24/14 25/14 40/16 51/11 71/25 83/12 84/24 86/13 87/14 89/15
**reasonable [3]** 86/9 86/11 88/17
**reasonably [3]** 87/17 87/18 88/24
**reasons [3]** 5/6 5/7 97/24
**rebuttal [2]** 23/4 60/23
**recap [2]** 81/6 83/20
**receive [3]** 35/25 57/23 57/24
**received [18]** 9/1 11/17 15/2 15/3 15/4 25/21 26/17 28/13 29/6 30/21 32/4 40/7 64/14 64/15 66/2 66/24 84/21 100/10
**recently [1]** 96/25
**recess [3]** 63/14 64/7 65/3
**recitation [1]** 48/8
**recitations [1]** 47/6
**recite [1]** 41/19
**recognizes [1]** 46/18
**recollection [2]** 55/13 56/15
**recommendation [3]** 6/24 7/1 61/5
**reconsideration [1]** 100/8
**reconvene [1]** 62/1
**reconvening [1]** 65/22
**record [29]** 3/5 4/1 4/8 5/16 7/6 7/15 7/21 17/20 18/1 18/24 23/7 23/11 33/1 34/24 38/7 41/19 51/19 56/18 64/9 65/23 66/15 66/23 68/7 69/21 71/7 74/6 87/3 89/16 90/1
**recorded [2]** 13/15 14/6
**records [9]** 12/16 15/4 15/7 15/11 15/12 37/5 38/2 39/7 66/9
**recordsfl [1]** 15/13
**recordsflorida [1]** 15/22
**recross [5]** 2/9 39/11 39/14 39/17 40/10
**RECROSS-EXAMINATION [1]** 39/14
**rectify [1]** 26/11
**redirect [7]** 2/8 24/12 35/10 35/17 37/19 39/10 60/16
**refer [2]** 40/1 52/3
**reference [2]** 7/7 17/1
**references [1]** 7/13
**referral [1]** 101/12
**referred [4]** 6/21 39/18 42/18 101/11
**referring [4]** 25/10 35/3 36/21 52/4
**reflect [1]** 32/6
**reflected [1]** 39/25
**refresh [1]** 56/15
**refusal [1]** 98/16
**regard [1]** 90/5
**regarding [11]** 5/20 21/1 21/16 24/19 47/6 47/11 52/1 59/23 71/14 89/9 93/21
**regards [1]** 15/6
**register [3]** 73/4 79/16 83/13
**registered [9]** 25/7 26/15 31/23 32/3 57/13 57/16 59/8 86/1 88/15

**registration [23]** 26/17 26/17 28/13 28/24 29/7 29/22 30/19 30/21 32/4 65/14 73/3 73/5 73/7 75/5 75/24 77/1 77/10 80/10 80/15 81/5 81/18 84/22 89/7
**reimburse [1]** 96/17
**reimbursed [1]** 96/20
**reimbursement [1]** 96/14
**reiterate [3]** 72/14 85/7 87/22
**rejected [1]** 95/23
**relates [2]** 10/24 11/1
**relating [1]** 65/8
**relationship [3]** 23/24 37/15 55/4
**relevance [1]** 22/15
**relevancy [1]** 22/13
**relevant [3]** 19/15 19/15 80/18
**remark [1]** 4/17
**remember [10]** 31/9 31/11 40/21 40/24 41/17 42/8 43/23 52/12 52/14 91/3
**remembered [1]** 31/15
**remembering [1]** 48/9
**remind [2]** 6/20 19/22
**reminded [1]** 41/17
**remove [3]** 15/21 16/6 30/2
**removed [1]** 94/11
**renew [1]** 99/8
**renewal [3]** 66/7 66/9 99/10
**renewals [3]** 66/5 66/6 66/13
**repeat [1]** 31/12
**rephrase [3]** 40/3 54/11 57/3
**reply [2]** 47/15 101/3
**report [8]** 6/24 7/1 47/2 61/5 98/25 99/11 99/16 99/23
**REPORTED [1]** 1/20
**reporter [3]** 1/21 9/20 102/9
**reports [1]** 14/2
**representation [7]** 77/12 77/15 85/5 86/12 88/25 93/21 98/11
**representations [4]** 74/20 74/22 78/19 78/23
**representative [2]** 19/9 75/23
**represented [2]** 39/25 77/5
**representing [1]** 43/20
**request [2]** 73/16 82/3
**requested [3]** 56/18 96/13 96/19
**requests [1]** 15/25
**require [1]** 67/18
**required [6]** 70/16 77/20 79/6 87/15 91/22 96/3
**requirement [1]** 78/4
**requires [3]** 3/22 5/24 51/7
**rescheduling [1]** 61/14
**resemblance [1]** 77/22
**resigned [1]** 92/3
**resolve [2]** 18/25 19/1
**resolved [1]** 5/20
**respect [4]** 6/17 9/23 78/23 79/12
**respected [1]** 37/16
**respectfully [1]** 74/18
**respond [2]** 96/15 96/20
**responded [1]** 18/4
**responding [3]** 15/17 16/4 16/5
**response [12]** 4/1 43/16 47/17 67/14 67/15 73/16 81/25 82/3 97/7 100/6 100/13 101/3
**responsive [1]** 89/13
**rest [2]** 63/7 63/24

**restricted [2]** 26/9 53/21
**restriction [2]** 30/13 30/15
**resubmitted [1]** 11/22
**resume [2]** 63/5 63/8
**resuming [1]** 63/3
**Retrieval [3]** 32/17 37/5 59/8
**revealed [1]** 76/24
**revenue [1]** 16/17
**review [5]** 10/6 14/23 15/7 48/23 66/19
**reviewed [1]** 95/17
**revoked [4]** 30/14 30/18 49/20 49/22
**REYES [1]** 1/9
**right [90]** 8/1 9/13 10/14 21/4 27/7 30/1 30/13 30/14 30/14 30/16 30/23 31/1 31/2 31/2 31/19 32/2 33/5 33/9 33/10 33/18 34/5 34/10 34/20 35/9 36/24 39/12 42/21 43/7 45/22 46/13 47/16 48/6 48/12 51/3 51/10 52/10 54/20 55/21 57/4 57/6 57/23 57/24 58/9 58/13 58/19 60/11 60/22 61/21 62/8 63/8 64/18 65/2 65/9 68/4 70/7 73/19 73/22 75/13 75/19 75/20 76/1 76/14 76/16 77/7 77/13 77/23 78/2 78/6 78/8 78/18 79/21 79/23 80/13 81/1 81/10 84/22 85/10 87/25 90/15 90/21 90/22 91/22 91/23 94/8 94/12 94/15 99/9 100/11 101/2 101/15
**rights [16]** 25/15 26/3 26/7 28/6 28/15 32/2 35/22 35/25 39/19 39/22 56/9 76/20 80/5 83/4 87/12 87/12
**ripe [4]** 3/14 96/25 100/5 100/16
**RMR [2]** 1/20 102/8
**route [1]** 20/23
**Rudi [2]** 12/23 12/24
**rule [12]** 5/8 6/23 44/24 45/5 45/13 70/17 72/18 89/24 89/24 89/25 93/9 96/4
**ruled [8]** 71/16 71/21 77/3 95/20 96/9 96/10 96/16 96/22
**rules [2]** 13/21 67/18
**ruling [3]** 6/25 21/3 100/1
**run [1]** 62/15
**Ryan [1]** 15/15

**S**

**S.W [1]** 1/13
**said [26]** 6/5 8/7 8/9 11/25 18/1 19/16 24/7 24/9 45/4 45/8 45/9 45/20 45/25 53/24 54/17 56/3 59/4 61/4 62/12 74/12 80/11 82/15 83/6 87/23 89/19 91/16
**same [28]** 6/14 12/3 19/9 24/24 25/10 27/17 27/20 38/8 65/11 65/12 66/7 67/9 69/16 76/20 77/12 78/19 79/16 79/16 79/18 79/19 79/21 80/3 90/16 91/13 92/12 92/19 95/19 96/22
**San [1]** 18/14
**sanction [2]** 97/20 100/25
**sanctions [16]** 92/11 92/18 92/20 93/1 93/14 93/18 94/1 94/18 95/13 95/17 95/21 95/25 96/21 99/3 100/7 100/21
**satisfy [2]** 80/17 96/3
**Sawyer [1]** 15/15
**say [17]** 13/6 13/12 17/24 24/9 39/22 39/23 41/17 45/1 45/12 53/1 53/3 60/11 61/10 67/8 72/2 78/3 79/5
**saying [17]** 7/11 16/6 16/10 16/11 38/1 64/16 69/23 70/7 70/11 70/15 70/16 83/21 83/24 94/5 94/7 98/6 98/17

**S**

**says [11]**  12/15 42/25 59/7 60/10 60/10 64/14 68/3 72/4 84/12 90/20 93/14
**scanning [1]**  101/5
**schedule [1]**  98/5
**scheduled [1]**  62/13
**scienter [4]**  74/9 77/25 78/25 79/6
**scintilla [1]**  69/25
**scope [1]**  23/9
**Scott [1]**  18/12
**screen [13]**  10/10 10/16 14/21 41/10 41/13 41/22 43/1 43/1 58/3 58/6 72/22 74/24 75/2
**script [1]**  21/5
**second [26]**  7/22 47/9 50/15 57/20 58/4 58/8 58/9 71/21 78/15 78/21 79/5 79/24 81/13 81/15 85/5 85/13 92/11 92/17 92/21 93/18 93/25 94/6 95/25 95/25 96/11 96/21
**Secondly [1]**  5/14
**seconds [1]**  35/11
**secret [1]**  31/2
**section [8]**  20/4 36/17 37/4 40/16 66/13 66/13 72/9 87/4
**see [22]**  5/11 9/8 20/1 22/13 41/13 41/21 41/24 41/25 42/2 42/4 42/5 42/25 43/2 43/4 46/3 50/5 58/2 61/25 67/13 90/4 92/10 92/14
**seek [4]**  26/14 43/18 44/13 46/18
**seeking [5]**  66/15 67/2 79/25 95/13 95/22
**seeks [1]**  48/18
**seem [4]**  34/7 43/18 50/17 83/24
**seen [2]**  23/12 68/7
**sell [2]**  87/12 87/12
**send [1]**  15/24
**sense [4]**  5/14 11/9 69/16 90/21
**sent [8]**  11/10 15/11 16/20 52/16 52/16 52/17 53/6 55/15
**separate [1]**  25/8
**separated [1]**  31/20
**September [3]**  53/7 55/16 76/11
**September 16 [1]**  76/11
**September 2001 [2]**  53/7 55/16
**serious [1]**  12/10
**seriously [1]**  17/12
**seriousness [1]**  17/25
**service [3]**  22/25 86/1 88/14
**services [2]**  13/20 17/23
**serving [1]**  11/4
**session [2]**  64/8 64/9
**set [11]**  3/12 3/15 4/23 6/6 10/12 12/14 25/17 27/10 58/8 61/13 86/20
**sets [1]**  9/11
**setting [2]**  6/15 73/24
**seven [1]**  84/10
**Seventh [1]**  90/19
**several [3]**  71/25 78/10 78/11
**shall [3]**  59/10 82/16 87/9
**share [6]**  10/10 41/10 58/2 58/5 72/22 74/24
**shareholder [27]**  17/10 17/16 18/18 19/8 26/13 28/5 30/4 32/5 33/3 33/17 33/19 35/2 36/6 36/13 36/15 36/16 37/22 39/16 39/18 39/25 40/2 42/11 42/17 43/11 60/5 68/23 86/24

**shareholder/owner [1]**  60/5
**shareholders [14]**  18/21 28/7 34/17 36/4 36/20 56/4 58/1 58/12 58/13 59/5 60/1 69/22 91/15 95/6
**sharing [1]**  41/21
**she [15]**  11/16 11/19 11/20 12/25 13/3 16/4 16/4 16/5 16/8 16/9 16/9 16/9 16/11 85/25 88/13
**She's [2]**  13/2 13/6
**shortly [1]**  52/12
**should [4]**  74/14 74/17 79/3 94/7
**show [8]**  20/17 24/1 24/15 35/16 74/10 74/14 74/19 86/8
**showed [1]**  17/5
**showing [2]**  50/9 64/18
**shows [6]**  52/17 82/12 84/11 87/11 87/13 87/16
**shuffling [1]**  7/10
**side [3]**  45/12 67/3 91/10
**sides [2]**  67/9 68/22
**sign [1]**  56/6
**signatory [1]**  68/12
**signed [10]**  17/17 28/6 59/4 60/5 68/23 75/7 75/8 76/14 81/19 87/17
**significantly [1]**  14/9
**signing [1]**  69/1
**similar [2]**  76/20 99/6
**simple [1]**  99/25
**simply [2]**  84/8 86/4
**simultaneously [1]**  54/23
**since [13]**  13/9 19/20 21/20 23/6 24/24 29/21 53/14 53/14 54/23 55/15 73/21 98/8 99/12
**sir [3]**  22/14 46/7 60/25
**sit [2]**  69/17 95/4
**situation [2]**  12/8 13/1
**so [133]**
**software [8]**  25/13 25/13 25/20 25/22 25/25 26/9 26/9 32/16
**sole [1]**  35/19
**some [12]**  6/1 10/11 14/8 39/10 48/2 48/3 48/9 49/20 58/6 58/6 63/15 94/10
**somebody [3]**  64/19 78/1 78/2
**something [14]**  8/8 25/2 34/18 50/18 59/21 61/10 62/2 62/10 68/20 68/21 91/14 95/1 96/8 101/7
**sometime [2]**  52/12 100/18
**somewhere [1]**  53/14
**sorry [42]**  7/22 8/15 10/7 16/10 21/12 22/14 23/22 26/20 26/20 27/22 29/2 29/5 33/9 33/14 38/19 38/21 40/2 41/16 42/1 42/12 42/12 42/24 43/17 45/1 45/7 49/10 53/3 54/4 56/13 59/19 59/19 60/2 66/11 67/23 67/23 67/23 69/3 70/2 70/14 70/18 83/21 97/13
**sort [3]**  3/18 96/25 98/20
**sought [3]**  68/2 86/1 88/14
**sounded [1]**  45/23
**sounds [2]**  54/5 64/23
**SOUTHERN [1]**  1/1
**Sovereign [1]**  77/16
**speak [3]**  10/15 37/1 49/1
**speaking [1]**  22/9
**speaks [1]**  18/24
**specific [6]**  15/4 15/21 18/10 26/2 37/3 54/2

**specifically [9]**  23/21 30/4 36/7 36/17 37/23 40/15 40/18 47/19 98/6
**spell [2]**  9/20 51/18
**spent [1]**  41/2
**split [1]**  29/4
**spoke [2]**  65/21 66/8
**spoken [1]**  11/16
**spot [2]**  8/2 35/14
**staff [3]**  16/19 17/13 18/4
**stand [2]**  51/8 90/13
**standard [1]**  78/25
**standing [1]**  51/9
**start [2]**  62/16 81/14
**started [7]**  52/11 53/15 54/25 82/24 83/1 83/10 84/15
**starters [1]**  17/15
**starting [3]**  74/8 76/6 76/10
**starts [1]**  9/11
**state [19]**  3/4 10/23 11/2 11/24 14/25 19/6 20/25 22/24 25/7 38/11 47/11 50/12 51/18 59/15 61/10 78/21 85/4 90/1 99/2
**stated [16]**  22/8 38/4 56/8 67/23 69/14 69/15 69/15 70/21 70/21 71/4 85/24 88/12 89/6 94/21 94/21 95/7
**statement [12]**  43/14 67/16 67/16 75/3 80/13 80/15 89/1 89/2 89/11 89/13 89/19 89/21
**statements [6]**  50/7 74/13 79/2 89/12 90/2 95/3
**states [17]**  1/1 1/10 10/24 16/25 17/1 21/23 22/8 26/16 36/2 37/4 40/18 68/25 73/1 77/9 81/19 82/4 95/21
**stating [3]**  49/7 70/24 91/10
**status [5]**  18/11 98/25 99/11 99/16 99/23
**statute [15]**  68/1 71/14 71/18 71/22 72/1 72/3 72/4 72/7 72/11 72/12 72/14 93/1 93/7 93/16 96/16
**statutory [1]**  72/10
**stay [1]**  87/20
**steady [1]**  37/24
**step [1]**  21/10
**STEVEN [25]**  2/10 16/15 16/20 16/23 17/15 17/20 18/7 25/2 25/22 26/6 26/8 26/12 26/18 31/16 31/24 32/13 32/15 32/22 51/15 51/20 51/20 86/18 87/7 87/13 87/19
**Steven's [1]**  25/12
**stick [3]**  9/24 21/4 27/2
**still [4]**  16/8 37/17 44/24 80/14
**stipulated [1]**  31/20
**stipulating [1]**  65/6
**stipulation [8]**  65/15 97/19 97/23 97/24 98/7 98/13 98/19 99/7
**stockholders [1]**  68/15
**stolen [2]**  18/2 18/4
**stop [6]**  11/4 11/21 15/18 17/12 17/13 17/18
**stops [1]**  42/24
**Store [1]**  90/19
**story [1]**  27/8
**strictly [1]**  38/17
**strike [6]**  6/7 19/5 19/18 20/22 97/1 97/2
**stringent [1]**  96/3
**stuff [3]**  20/20 26/23 43/16

**S**

**subject [9]** 21/11 24/24 25/11 32/18 52/2 52/5 57/9 68/19 74/21
**submission [2]** 7/12 70/10
**submissions [1]** 7/8
**submit [10]** 5/2 5/16 6/24 7/4 60/19 74/18 86/11 88/16 89/21 97/18
**submitted [11]** 4/5 65/14 75/6 80/22 81/2 81/19 85/12 89/2 89/14 89/19 90/3
**submitting [2]** 14/1 99/7
**subpoenas [4]** 11/4 14/8 15/5 39/7
**subsequent [1]** 86/24
**substance [1]** 96/6
**substantial [2]** 19/24 20/12
**substantively [1]** 74/6
**successfully [1]** 79/7
**such [3]** 76/25 79/4 80/23
**suddenly [1]** 68/6
**suffering [1]** 19/2
**sufficiency [2]** 96/7 96/9
**sufficient [7]** 72/18 74/4 85/6 88/2 89/16 94/23 100/25
**sufficiently [2]** 78/12 78/12
**suggestion [1]** 6/17
**Suite [2]** 1/13 18/13
**summarize [1]** 85/7
**summary [28]** 5/8 5/15 6/3 6/22 10/23 14/25 23/17 23/19 50/3 67/1 67/4 69/4 75/4 78/13 79/25 80/3 81/4 85/21 89/3 90/11 93/20 93/22 94/1 94/4 94/18 94/19 95/18 96/6
**supplement [1]** 66/15
**supplemental [3]** 99/11 99/14 99/15
**supplemented [1]** 65/24
**supplements [1]** 66/22
**supplies [1]** 72/12
**support [14]** 9/25 44/18 48/14 48/18 50/17 67/17 69/9 71/8 72/7 72/8 89/2 89/4 94/23 98/22
**supports [1]** 20/10
**supposedly [1]** 50/4
**sure [17]** 6/14 10/2 14/14 22/6 23/5 26/5 31/14 40/5 40/16 41/5 41/11 41/15 41/21 41/22 94/17 100/15 101/9
**sustained [2]** 48/19 50/19
**sworn [2]** 9/18 51/17
**system [1]** 11/6

**T**

**table [3]** 25/25 26/8 34/17
**take [17]** 3/16 3/17 14/23 16/13 46/21 48/22 60/15 61/7 61/8 62/8 62/13 62/19 62/22 63/14 68/15 92/22 99/1
**taken [3]** 48/13 64/7 65/3
**takes [3]** 62/1 62/3 63/9
**taking [4]** 19/14 40/21 47/11 62/20
**talking [1]** 38/19
**talks [1]** 12/2
**Tankersley [1]** 18/12
**Tarantino [8]** 78/14 78/15 78/21 78/24 79/6 79/9 79/14 80/1
**Tarantino's [1]** 79/11
**technical [1]** 41/22
**telephone [1]** 37/19
**tell [11]** 3/15 7/17 8/17 17/13 27/8 34/9 46/13 47/1 54/1 84/3 94/20

**telling [6]** 16/6 26/23 34/4 36/2 44/4 61/22
**term [1]** 54/4
**terms [2]** 50/16 99/17
**test [1]** 64/24
**testified [10]** 9/18 19/10 21/1 21/16 23/24 31/9 40/7 43/10 51/17 86/14
**testimony [27]** 7/5 9/3 9/4 19/5 19/18 21/9 23/9 23/16 24/5 25/9 26/6 28/10 31/11 31/15 31/15 32/21 35/12 40/5 41/3 43/18 44/17 45/9 52/23 60/21 68/7 68/24 76/23
**Texas [5]** 11/17 15/9 16/13 18/14 39/7
**text [1]** 72/10
**than [6]** 50/8 63/6 74/19 79/23 89/16 100/25
**thank [21]** 3/8 3/12 7/19 16/6 20/21 44/11 44/16 58/20 58/21 60/18 63/11 63/22 64/4 65/2 65/4 71/12 92/24 97/8 101/15 101/17 101/18
**Thanks [1]** 64/5
**that [640]**
**that's [70]** 3/19 6/13 6/13 8/21 10/14 18/6 20/7 21/18 22/15 22/17 23/5 26/4 27/12 32/9 32/18 34/5 38/12 38/24 42/4 43/1 45/16 49/15 49/17 51/9 51/10 56/13 58/3 59/14 59/23 61/12 62/22 65/10 65/13 65/25 68/21 69/23 69/23 70/1 70/6 70/24 71/1 71/10 73/2 73/23 74/14 74/15 75/13 75/16 75/18 77/24 81/16 82/20 82/22 82/25 83/1 83/7 83/18 84/16 85/2 88/6 90/18 91/20 91/22 95/10 95/12 96/8 99/3 99/24 100/18 101/9
**their [35]** 6/4 7/7 11/3 15/24 37/19 37/19 44/24 48/5 48/5 49/22 67/10 67/10 67/22 67/24 68/18 69/2 69/8 71/9 76/2 76/4 76/4 76/9 79/20 79/21 82/23 82/24 83/2 83/11 83/13 94/4 94/22 95/21 96/13 96/18 96/20
**theirs [2]** 69/6 69/12
**them [33]** 6/2 6/23 7/7 7/8 7/14 11/21 12/12 12/20 15/18 15/21 16/8 17/5 17/6 22/25 36/19 37/19 38/1 38/2 39/5 45/8 45/8 45/9 45/17 45/18 45/19 45/24 46/3 61/20 74/2 84/3 88/21 89/9 94/3
**themselves [2]** 85/6 85/20
**then [41]** 4/8 4/14 4/25 5/4 7/6 11/21 14/3 16/9 20/13 20/14 25/16 28/4 28/16 28/22 45/18 45/19 45/19 46/13 46/14 46/19 54/2 60/23 61/2 61/23 62/1 64/24 67/6 68/5 70/25 71/1 80/19 83/1 92/10 94/14 96/24 97/7 98/24 98/24 99/8 101/3 101/3
**there [77]** 4/4 4/6 4/8 6/1 6/23 8/1 8/3 11/3 13/24 15/14 17/2 31/20 31/21 33/6 36/10 38/10 39/24 40/10 40/19 40/19 41/1 41/1 41/2 41/22 42/3 42/5 42/6 43/15 45/17 47/19 49/21 50/6 55/3 57/5 57/5 57/6 57/7 57/8 57/12 57/14 58/19 61/25 62/1 64/19 67/15 67/16 69/13 69/13 69/14 69/15 70/7 70/20 70/22 70/23 70/25 71/1 71/2 72/3 74/1 78/10 89/24 90/18 91/7 91/8 91/20 92/5 94/9 94/10 94/12 94/24 98/21 98/24 99/2 100/7 101/7 101/8 101/19
**there's [12]** 4/1 4/13 8/17 36/24 43/16

45/18 64/3 69/24 70/11 70/15 78/11 101/6
**thereafter [1]** 52/12
**therefore [1]** 84/15
**thereof [1]** 18/3
**these [10]** 3/16 6/20 7/10 14/8 14/8 17/12 47/25 48/2 63/2 91/12
**they [77]** 6/21 8/25 11/4 11/10 12/17 12/18 13/20 13/22 13/23 14/3 15/10 15/10 15/24 17/4 17/15 29/23 37/13 37/14 37/15 37/17 37/17 37/18 38/1 38/2 38/2 39/2 39/3 39/4 39/5 46/14 47/24 48/4 49/22 54/1 61/15 61/25 63/16 63/19 63/21 63/21 66/8 67/3 67/8 67/8 67/24 68/4 68/6 68/10 70/11 70/12 70/16 71/1 71/4 71/13 76/4 76/9 82/13 86/4 87/20 89/6 89/19 89/21 90/25 91/15 91/17 94/7 94/25 95/2 95/5 95/10 95/20 96/10 96/13 96/20 100/17 100/22 101/11
**thing [8]** 12/3 17/24 45/2 63/9 66/7 79/18 84/4 96/22
**things [9]** 7/14 13/24 25/20 32/8 32/25 50/18 56/2 62/19 67/19
**think [34]** 4/16 5/14 14/12 14/13 18/24 21/8 32/10 32/12 32/24 34/6 34/9 39/21 47/18 48/1 52/16 52/16 52/17 54/1 54/6 57/11 57/12 61/7 63/6 92/7 92/18 94/7 94/9 94/10 95/12 96/19 100/4 100/6 101/5 101/5
**thinking [1]** 54/6
**third [6]** 16/21 85/9 85/23 86/10 88/12 88/22
**Thirteen [1]** 70/23
**this [133]**
**those [27]** 4/8 4/14 4/24 6/25 8/3 12/12 12/19 20/7 20/17 44/19 45/6 45/12 45/12 45/14 46/2 48/14 49/19 56/19 62/19 72/3 74/22 74/25 77/22 78/23 85/19 85/20 88/19
**though [3]** 17/5 52/13 78/7
**thought [12]** 4/19 8/7 12/17 16/5 23/23 24/9 45/7 45/12 46/1 61/18 69/3 69/5
**three [12]** 4/23 5/4 13/12 50/5 53/15 71/16 74/1 74/20 75/10 85/5 88/20 98/2
**three-week [1]** 98/2
**through [30]** 10/21 13/24 23/21 27/21 28/13 29/1 29/17 29/17 30/9 30/20 42/16 46/4 46/10 46/16 47/21 53/19 55/18 63/6 64/7 65/3 73/3 74/25 74/25 75/9 76/10 86/17 86/18 86/25 91/4 101/5
**throughout [4]** 23/1 54/13 78/8 98/15
**time [46]** 3/16 9/11 11/13 11/16 12/19 17/11 17/22 20/20 26/2 28/1 28/2 30/6 30/12 31/3 36/19 39/3 39/9 44/15 44/25 45/4 45/18 49/20 49/21 51/8 51/8 56/24 61/7 61/16 62/3 62/19 64/24 64/25 69/1 71/22 72/4 72/10 76/25 81/22 87/8 90/16 96/15 96/19 97/12 101/6 101/16 101/19
**times [3]** 14/7 72/1 98/4
**title [1]** 82/6
**titled [1]** 90/9
**today [17]** 3/13 3/16 4/23 5/8 6/25 10/13 21/16 24/18 28/8 28/9 36/24 39/17 53/19 53/20 62/6 63/2 95/4
**told [11]** 25/23 54/14 76/16 81/11 82/9 82/18 83/8 84/22 85/9 85/15 88/17

## I

**too [2]** 54/22 59/14
**Torres [1]** 77/5
**tortuously [1]** 18/10
**totally [2]** 45/11 45/14
**track [1]** 94/12
**trademark [117]**
**trademark/service [2]** 86/1 88/14
**trademarked [2]** 32/19 52/4
**trademarks [1]** 37/4
**transcript [4]** 41/8 41/14 75/17 102/6
**transcription [1]** 102/5
**transfer [4]** 25/17 39/24 55/7 55/10
**transferred [7]** 26/6 31/10 31/16 32/13 32/22 42/19 86/18
**transferring [1]** 86/20
**transition [2]** 28/15 32/1
**trial [7]** 20/24 76/23 98/2 98/2 99/19 99/19 100/23
**tricky [2]** 58/5 58/5
**tried [1]** 19/1
**triggering [1]** 12/18
**trouble [1]** 62/15
**true [5]** 55/6 86/9 86/12 88/7 88/17
**truth [4]** 44/4 84/22 84/23 88/24
**try [6]** 18/25 45/8 45/19 61/25 61/25 83/13
**trying [13]** 3/18 16/16 18/14 27/5 32/24 32/25 32/25 34/2 34/6 39/23 43/19 46/4 95/2
**tumor [1]** 61/13
**turn [1]** 71/9
**turned [1]** 26/9
**two [22]** 4/20 8/21 13/14 20/14 50/8 53/15 63/15 67/9 70/25 71/16 78/11 83/9 83/9 85/8 85/19 85/20 86/3 86/3 88/3 88/21 98/2 99/9
**two-day [1]** 98/2
**two-page [1]** 50/8
**type [4]** 36/18 37/23 74/9 78/11

## U

**U.S [2]** 59/8 73/4
**U.S.C [2]** 20/3 20/4
**ultimately [2]** 24/7 77/8
**unable [1]** 97/22
**unauthorized [2]** 49/14 68/3
**uncooperativeness [2]** 98/16 99/3
**under [32]** 6/10 11/11 11/19 13/23 15/19 18/4 24/18 31/23 33/11 33/11 33/14 33/14 36/6 36/14 37/4 66/13 68/24 70/21 70/24 71/4 72/18 83/13 83/15 85/11 85/12 86/6 87/25 91/15 92/5 95/5 96/3 102/6
**undermine [1]** 18/15
**undersigned [5]** 75/11 81/8 85/24 87/23 88/13
**understand [18]** 6/1 9/22 13/21 13/22 21/3 24/6 27/7 28/10 29/2 31/22 39/21 39/22 52/3 53/3 57/11 62/7 84/18 100/17
**understanding [12]** 33/12 33/14 33/16 40/3 40/4 40/6 54/6 60/3 60/9 84/9 84/9 100/19
**understood [5]** 8/10 26/6 40/17 70/2 101/14
**undisputed [4]** 67/16 80/7 89/20 90/8

**unduly [1]** 51/12
**unequivocal [1]** 24/5
**UNISOURCE [101]** 1/3 1/6 3/3 3/3 3/6 11/11 11/18 12/4 12/5 13/9 15/8 16/24 17/14 18/2 18/16 18/18 18/20 18/22 21/20 22/3 22/4 22/10 23/20 23/25 24/23 25/1 25/6 25/7 25/18 27/16 27/20 27/25 28/12 28/25 29/10 29/14 29/18 29/24 30/1 30/9 30/12 30/23 31/23 32/17 34/3 34/12 34/13 35/4 35/19 35/22 37/5 37/6 37/9 38/1 38/25 39/1 40/14 40/19 47/3 49/8 49/9 52/1 53/1 53/4 53/8 53/13 54/13 55/14 55/18 56/9 57/12 57/16 59/7 59/11 59/11 59/15 60/10 64/10 64/10 73/2 73/6 73/9 73/10 73/12 73/14 73/17 73/20 75/19 75/25 76/1 76/5 76/5 82/5 87/10 89/7 89/8 90/15 91/5 91/11 95/7 95/8
**unisourcediscovery.com [5]** 12/16 15/13 15/22 15/23 15/23
**unisourcediscovery.net [2]** 15/25 16/1
**UNITED [5]** 1/1 1/10 26/16 36/2 77/9
**unlawful [1]** 68/3
**unless [4]** 63/13 101/6 101/11 101/12
**unquote [2]** 19/14 50/9
**until [15]** 30/14 36/24 53/20 61/23 73/14 82/5 82/8 85/2 85/17 86/23 88/11 91/5 91/21 97/17 100/23
**up [34]** 4/21 6/10 7/14 9/11 10/13 12/8 12/14 14/10 16/2 16/15 17/19 20/7 20/22 21/13 22/14 28/8 28/8 29/9 29/4 34/21 40/5 43/13 51/8 51/9 54/7 56/14 58/8 58/17 64/18 66/4 68/6 68/16 91/18 92/17
**updated [2]** 32/5 36/5
**upheld [1]** 78/5
**uploaded [1]** 29/15
**upon [12]** 37/9 37/10 39/1 45/3 49/18 83/17 88/23 91/14 91/19 95/1 95/20 96/23
**upset [1]** 12/10
**urge [1]** 6/3
**us [24]** 5/8 5/9 9/12 11/4 11/14 11/16 11/22 14/3 14/3 14/10 16/5 16/12 25/15 25/23 34/5 36/2 37/18 39/6 49/13 49/16 58/16 63/9 64/3 64/25
**use [70]** 17/23 25/6 26/3 28/15 30/1 30/13 30/24 31/1 38/5 38/5 39/2 47/24 49/14 49/15 49/22 49/23 53/21 53/23 54/3 54/15 54/17 57/23 57/23 57/24 59/10 60/11 68/3 68/5 68/6 68/8 73/14 73/19 75/13 75/19 76/1 76/4 76/9 76/14 76/16 76/20 77/7 77/14 77/23 78/2 78/7 78/18 79/21 80/6 80/13 81/1 81/10 81/20 81/20 81/22 82/5 82/8 82/18 83/5 85/2 85/10 85/16 87/25 88/3 88/5 88/10 90/16 90/21 90/22 91/11 95/2
**used [18]** 38/24 52/23 53/1 53/4 53/8 54/20 73/13 81/23 82/9 82/19 83/8 83/9 83/14 84/10 85/15 85/17 91/1 91/2
**users [1]** 83/7
**users' [1]** 76/20
**uses [1]** 83/6
**using [36]** 24/23 27/17 27/20 27/25 28/12 28/25 29/10 29/14 29/19 29/20 29/23 29/24 30/6 39/4 48/4 52/14 53/13 54/21 54/22 54/23 73/21 73/22 76/25

**77/21 76/1 78/8 79/15 79/19 80/9 81/14 83/2 83/11 84/15 84/16 90/12 91/12**
**USPTO [37]** 28/14 28/22 57/17 65/15 66/12 73/4 74/3 74/21 74/23 76/16 77/13 79/22 80/5 81/7 81/12 81/19 82/9 82/18 83/8 83/12 83/13 83/16 83/18 84/7 84/9 84/14 84/25 85/9 85/15 88/18 88/21 89/10 91/4 91/21 92/7 93/22 94/25
**usually [3]** 3/19 45/16 101/11

## V

**VALDES [42]** 1/12 1/12 2/6 2/8 2/12 3/6 5/3 7/3 7/16 8/20 9/3 9/22 10/10 19/22 20/16 21/4 23/4 23/14 23/18 38/16 38/19 38/22 41/7 43/22 44/12 46/8 47/17 55/22 56/20 58/22 60/23 64/3 64/14 64/19 65/20 67/19 67/21 90/4 92/17 94/19 100/2 101/21
**Valdes' [3]** 64/20 97/7 101/3
**Valdes's [1]** 7/12
**value [1]** 49/14
**VELARDE [43]** 1/16 2/7 2/9 2/11 3/10 4/10 4/16 6/6 6/18 8/2 14/11 23/23 34/2 34/21 36/9 38/14 44/3 45/20 46/19 47/4 48/2 50/23 58/16 59/20 60/15 60/19 62/16 63/4 63/10 63/13 65/22 66/17 70/5 71/9 71/11 83/21 91/10 92/25 93/18 94/12 95/15 97/7 100/11
**Velarde's [1]** 46/15
**vendor [1]** 18/11
**vendors [1]** 22/22
**verified [1]** 49/3
**very [34]** 3/12 3/12 12/10 14/4 14/10 14/10 22/7 24/24 25/19 31/7 31/13 32/7 37/3 37/3 37/24 40/20 62/25 63/1 64/4 65/2 71/3 73/24 74/3 74/7 74/11 74/11 74/25 75/10 79/15 81/6 88/20 90/18 99/25 101/15
**via [3]** 1/9 23/5 102/7
**VICTOR [9]** 1/16 3/10 4/10 31/13 42/24 58/21 66/4 66/6 93/7
**videoconference [2]** 1/9 102/7
**view [2]** 34/7 92/16
**viewing [1]** 80/11
**violates [1]** 94/20
**violation [1]** 17/9
**Virginia [3]** 80/3 80/7 81/4
**vis [2]** 84/6 84/6
**vis-à-vis [1]** 84/6
**Vivian [1]** 11/14
**void [2]** 36/14 36/19
**vs [1]** 1/5
**vvelarde [1]** 1/19

## W

**wait [3]** 45/5 92/25 101/3
**waiting [1]** 100/6
**waiving [1]** 46/1
**want [26]** 5/25 8/2 10/5 26/5 26/24 27/8 35/2 35/14 38/8 40/5 43/13 43/14 46/10 46/17 56/14 58/8 58/24 61/14 61/22 62/8 69/9 74/24 98/22 98/25 99/12 100/22
**wanted [24]** 3/21 4/20 6/13 11/4 12/13 20/22 31/18 35/16 41/20 41/22 51/5 51/8 51/11 56/2 58/2 58/23 63/14 66/3 66/18 85/4 85/7 92/8 100/14 101/18

## W

**wants [1]** 63/13
**warrant [1]** 89/16
**was [253]**
**wasn't [4]** 25/16 47/14 54/10 93/7
**waste [1]** 20/20
**water [1]** 62/3
**way [15]** 6/23 7/4 7/5 10/12 19/1 23/5 23/21 27/21 41/16 44/21 53/19 54/3 54/18 58/7 58/8
**ways [1]** 99/10
**we [211]**
**website [3]** 29/16 53/9 76/10
**week [2]** 98/2 100/13
**well [31]** 5/3 5/18 17/7 20/11 21/11 23/7 28/6 31/7 31/13 35/13 36/2 38/12 41/15 45/16 46/3 48/13 50/13 53/14 59/25 61/19 61/24 69/11 71/3 73/20 77/14 80/9 80/16 85/7 93/22 94/21 100/12
**well-taken [1]** 48/13
**wells [5]** 1/20 1/22 102/8 102/8 102/10
**went [8]** 9/10 17/18 23/9 76/23 78/3 78/21 79/5 86/3
**were [66]** 4/5 5/10 6/14 10/20 11/6 11/21 12/19 14/13 14/16 14/16 16/16 24/23 26/10 26/13 27/16 27/19 28/11 28/24 29/13 29/18 29/23 31/22 33/4 36/10 36/11 44/4 45/3 45/7 45/13 45/23 46/1 47/7 47/20 49/11 49/11 49/12 49/21 54/21 56/19 61/19 63/1 69/1 69/3 70/20 71/5 71/13 73/25 74/1 74/1 74/2 74/13 74/21 76/24 77/21 78/8 78/16 79/2 79/15 79/19 86/4 89/6 89/10 90/3 90/25 91/17 95/10
**weren't [1]** 49/22
**West [3]** 76/24 77/3 80/2
**what [59]** 7/4 7/16 7/17 10/23 11/20 12/15 13/1 13/25 14/4 14/25 19/21 19/21 20/7 20/19 20/19 21/25 24/1 27/22 30/22 33/16 33/16 34/6 37/1 38/12 39/22 42/1 43/4 43/15 46/13 46/14 46/14 46/24 47/1 48/9 48/20 49/2 49/6 49/6 49/15 49/17 53/24 55/3 56/13 59/14 60/8 67/11 68/25 69/12 69/23 69/23 70/24 73/25 82/17 85/4 92/18 93/10 97/25 98/1 99/22
**what's [6]** 14/4 43/13 43/25 60/8 99/16 99/19
**whatever [1]** 87/14
**when [56]** 6/2 6/10 7/10 7/14 11/5 11/24 11/24 13/24 16/9 17/11 25/2 25/9 28/3 30/20 33/2 34/17 35/25 38/2 39/6 39/21 49/21 52/3 52/9 52/14 53/1 54/25 57/16 63/10 68/2 68/6 68/8 72/2 73/10 73/13 74/22 76/14 77/5 77/14 79/1 81/2 81/11 81/13 82/13 82/25 83/1 87/16 88/17 88/24 90/25 90/25 91/1 91/1 91/9 94/25 96/12 99/16
**where [21]** 12/7 13/15 19/6 22/12 22/16 22/25 25/20 33/21 42/25 47/19 49/20 52/18 56/17 67/1 69/22 78/11 85/24 90/13 90/14 93/3 95/4
**whether [8]** 22/2 34/3 42/9 57/8 84/20 84/21 87/1 94/9
**which [45]** 3/21 7/21 8/21 8/21 10/5 10/7 11/2 11/15 15/19 16/5 16/16 21/1 23/17 25/13 28/4 32/18 36/20 37/7 37/14

41/8 56/3 50/12 51/7 53/15 55/13 58/11 59/4 61/3 61/5 66/9 68/22 71/6 74/8 75/17 85/5 85/13 90/11 93/20 94/6 94/16 96/21 96/24 98/14 99/4 100/23
**while [5]** 61/13 62/23 80/22 92/25 96/5
**white [3]** 1/16 3/10 40/20
**white.com [1]** 1/19
**who [22]** 12/24 22/22 22/24 34/16 40/13 40/18 40/18 42/22 43/8 43/9 43/11 47/7 52/7 54/20 56/23 57/10 64/14 64/18 74/2 83/5 84/12 90/20
**whoever [2]** 9/24 54/21
**whole [1]** 27/8
**whom [1]** 74/3
**why [21]** 5/25 12/18 16/8 21/1 22/17 25/14 51/9 58/3 75/15 81/16 82/1 82/20 82/22 83/7 83/18 84/16 84/24 85/2 91/20 94/20 95/13
**will [61]** 3/15 3/17 4/14 4/16 5/2 5/21 6/2 6/9 7/8 8/24 15/18 19/20 19/22 20/19 20/25 24/14 24/15 27/3 27/10 29/4 39/12 43/17 43/22 44/12 46/15 46/16 46/19 48/2 48/16 48/16 50/21 54/10 59/1 62/16 63/6 63/10 64/2 64/3 64/17 64/24 64/25 67/6 67/6 67/9 67/19 71/12 83/13 93/6 97/6 97/7 99/1 99/2 99/5 99/6 99/8 99/13 99/25 100/23 101/2 101/3 101/4
**Winters [1]** 15/16
**wish [1]** 101/20
**withdrawing [1]** 45/7
**within [3]** 47/5 48/10 100/13
**without [9]** 3/19 8/3 8/12 8/24 30/13 30/15 45/18 59/9 99/10
**witness [6]** 4/4 9/14 9/17 23/3 48/24 51/16
**witnesses [3]** 27/7 49/18 49/18
**wonder [1]** 41/10
**word [2]** 56/5 56/5
**words [4]** 76/13 80/25 81/23 96/5
**work [3]** 11/21 15/19 62/11
**working [2]** 12/5 13/9
**would [37]** 3/23 4/6 5/2 5/3 5/7 5/7 5/9 5/19 5/19 6/18 8/5 10/23 13/6 19/18 20/16 23/5 23/12 25/4 25/6 33/12 38/7 49/10 51/1 51/4 55/3 61/5 61/7 62/5 62/11 63/16 65/15 66/5 72/20 80/14 83/16 84/21 99/16
**wouldn't [1]** 5/16
**writing [6]** 17/12 59/24 91/7 92/1 92/8 98/4
**wrong [3]** 12/20 24/8 34/10
**wrote [1]** 17/11

## Y

**yeah [11]** 26/3 28/15 29/15 32/20 40/15 40/23 41/2 41/2 53/20 55/2 62/4
**year [8]** 13/11 13/13 23/20 37/12 37/25 68/1 95/22 97/18
**years [15]** 12/6 13/7 13/11 13/12 13/14 23/1 25/21 26/9 68/4 68/5 69/14 70/23 84/10 91/12 93/22
**yellow [1]** 42/3
**yes [79]** 4/18 6/16 7/19 8/9 8/19 9/7 10/1 10/4 10/22 12/1 21/6 21/12 21/24 24/11 24/22 26/5 27/12 27/13 27/18 28/20 29/20 29/20 30/1 30/6 30/17 30/18

36/25 31/7 33/26 35/6 35/21 38/2 38/9 42/14 44/5 44/7 46/6 46/9 46/12 46/12 46/12 46/23 52/25 53/25 55/2 55/6 55/6 55/19 56/5 56/7 56/16 57/2 58/15 59/1 59/22 61/11 62/11 63/18 64/1 65/18 70/25 72/23 75/21 76/3 83/23 84/2 90/2 90/7 91/16 92/23 93/2 93/11 94/3 95/16 97/14 99/1 99/18 100/12 100/20
**yet [6]** 7/17 23/15 26/22 52/21 76/15 82/9
**you [292]**
**your [214]**
**yourself [1]** 17/10

## Z

**ZOOM [4]** 1/9 7/11 9/8 23/6