**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.:  20-cv-23276-DPG**


UNISOURCE DISCOVERY, INC.,      )
                                )
                Plaintiff,      )          May 25, 2021
v.                              )
                                )
UNISOURCE DISCOVERY LLC,        )          Pages 1 - 19
et al.,                         )
                                )
                Defendants.     )
_____/


DISCOVERY HEARING

BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


Counsel on behalf of Plaintiff:

          DIEGO DAVID VALDES, P.A.
          16155 S.W. 117 Avenue
          Suite B 17,
          Miami, FL 33177
          BY:  DIEGO D. VALDES, ESQ.

APPEARANCES CONTINUED:


Counsel on behalf of Defendants:

                FOWLER WHITE BURNETT
                1395 Brickell Avenue
                14th Floor,
                Miami, FL 33131
                BY:  VICTOR M. VELARDE, ESQ.




Transcribed By:

                BONNIE JOY LEWIS, R.P.R.
                7001 SW 13 Street
                Pembroke Pines, FL  33023
                954-985-8875
                caselawrptg@gmail.com

(Thereupon, the following proceeding was held:)

THE COURTROOM DEPUTY:  Unisource Discovery, Inc. versus Unisource Discovery LLC, et al.; Case Number 20-cv-23276-Gayles.

Counsel, please state your appearances for the record.

MR. VALDES:  Diego Valdes on behalf of Unisource Discovery, Inc.

THE COURT:  All right.

MR. VELARDE:  Victor Velarde from Fowler White Burnett on behalf of Defendants.

THE COURT:  All right.  Thank you very much.

So I received the report from Mr. Velarde and then I received two responsive reports from Mr. Valdes.

I'm not sure quite sure if he meant to submit two or what the rationale for submitting two documents was, but from what I can tell from Mr. Velarde, there has been full compliance with the third request for production and the second request for admission.  That was the third and fourth items on the list.

That's how they went, Mr. Velarde, on your report; am I correct?

MR. VELARDE:  Yes, Your Honor, you are correct.

THE COURT:  All right.  So, then, there seems to be a dispute regarding full compliance with the second interrogatories and the second request for production.  And

with regard to the interrogatories, Mr. Valdes seems to claim that, yes, he did provide witnesses to support the damages claim.  I am not quite sure.  I will hear exactly what you've got, Mr. Velarde and, then, I will hear from Mr. Valdes.

And then, regarding the second request for production, there seems to be some illusion to a thousand documents having been produced, but I think Mr. Velarde's issue has to do with how they were produced.  And again, I will hear from Mr. Velarde and then Mr. Valdes.

Let me just say that this is a serious matter.  I put on very strict requirements on the Plaintiff to finally get around to complying with its discovery obligations.  There still seems to be some issues.

I wanted to give Mr. Valdes the opportunity to address those issues before I make a final decision regarding what I said that lack of compliance would bring as a consequence. There has been at least fifty percent full compliance with two out of four items.  So let me hear what happened with the other two items.

And again, I will hear from Mr. Velarde first on what your issues are regarding full compliance with the second interrogatories and I will hear from Mr. Valdes on that and, then, we will take the second request for production.  We will take those two in order.

MR. VELARDE:  Thank you, Your Honor.

Yes.  If I may share my screen, Your Honor, I can show Your Honor exactly what I received regarding the interrogatories so we are all on the same page.

THE COURT:  Yes, you can share screens if you know how to do it.

MR. VELARDE:  Yes.

THE COURT:  All right.

MR. VELARDE:  Your Honor, I believe I am showing, but I don't see the green out light for some reason.

Do you see the interrogatory, Interrogatory Number 3?

THE COURT:  I see Interrogatory Number 3 for each category of damages that you are seeking.  It is highlighted.

MR. VELARDE:  Yes.

THE COURT:  Identify all documents and witnesses that you contend support the damages claim, I guess, something.  The amount of damages and calculation --

MR. VELARDE:  Correct.

THE COURT:  -- with the request.

And then, the response?

MR. VELARDE:  The response is:

"Plaintiff's damages are ongoing to the extent that Plaintiff does not know the full scale, depth, and scope of business losses at this time because Defendants have refused to turn over discovery.  Plaintiff has lost clients, business offers, damaged reputation, which have been caused by

Defendants' willful actions of approaching clients and using Plaintiff's trademark as a weapon to destroy Plaintiff's name and relationships.

Based on a preliminary examination, an investigation absent discovery that Defendants have not produced, Plaintiff calculates damages around $840,000 as a result of Defendants' willful actions under the trademark infringement enclosed shareholder agreement violations.  See attached chart."

So the response does not identify witnesses and it identifies one document and that's the attached chart.  If we look at the attached chart, it's a copy and paste of the same response.

And then, it breaks down the categories of damages and, then, it says:

"Other damages unknown at this time as Plaintiff is pending discovery from Defendants to see the extent of the client poaching in Florida."

And then, that's it; no identification of witnesses, which is not my place to tell the Plaintiff you have witnesses on this.  You have documents on this.  However, I did request that they be identified if they have them.

And before these were produced, Your Honor, in the morning of May 19th, I had a pretty lengthy discussion with Mr. Valdes specifically about Interrogatory Number 3.  And the point was the interrogatory asks Plaintiff to identify

witnesses and documents that, A, contends support the claim of damages.  This, of course, is vitally important for Defendants to prepare their defense in this case because it tells us which witnesses we need to take depositions of and which documents we need to look at to substantially support the claims of damages.

And I made it also very clear during our conference that if none are identified, then that means that the Plaintiff is taking the position that there are none.  There are no witnesses and there are no documents that support their claim for damages and that needs to be stated in the interrogatory answer.

So after we received this response, Your Honor, which was timely produced, I sent an e-mail to Mr. Valdes at 4:47 p.m. before the deadline that Your Honor set forth.  This is about less than ten minutes after we got the responses and I said:

"The answers regarding damages does not identify any witnesses or documents.  It is either incomplete or your client is confirming that there are no documents or witnesses supporting the claimed damages."

In response Mr. Valdes stated:

"We have provided previously uploading sees and desist letters correspondence to this effect identifying the clients, et cetera."

So they are taking both positions.  Either there is

none, or there are some they produced previously, but we're just not going to identify them as the interrogatory requires.

In response, or rather, I then received another e-mail at 5:11 p.m. from Mr. Valdes saying:

"You are asking for information at this time that my clients are still gathering based on the ongoing poaching that last occurred as early as May 14th."

So this occurred days before the interrogatory was answered and it says:

"As we mentioned in the response, we have identified and provided documents of the clients poaching, names of those clients, actual e-mails of each occurrence.  You already have this.  Again, taking the position that these documents exist that would be responsive to the interrogatory.  We have just refused to identify them."

In response, at 5:15, I sent an e-mail saying:

"Plaintiff is required to respond to the interrogatories.  The interrogatories ask Plaintiff to identify documents and witnesses supporting the damages that Plaintiff is claiming.

Plaintiff's response does not identify any witnesses nor does it identify a single document, other than a one-page self-serving document that your client typed up.  Your interrogatory answer confirms the following:

Your client does not have any witnesses or documents

that support the claimed damages. If you disagree with that statement, then your interrogatory answer is materially incomplete and does not comply with the Court's order."

Your Honor, the reason why I am engaging in this exercise is to avoid another hearing, avoid more discovery issues, and avoid more attorney's fees being wasted on the responsive interrogatories that was very clear.

In response to this, I received an e-mail at 5:42 p.m. from Mr. Valdes confirming what has been produced and attaching -- I don't know if this is meant to supplement the response to the interrogatory, but I would assume that it is. This e-mail attached the very same document that was attached to the interrogatory answers, but with the new provision provided for witnesses.

So now we have witnesses and an unverified document that is not attached to the interrogatory and that is not verified as correct by the Plaintiff that is attached to an e-mail from counsel identifying, one, two, three, four, over six, seven, several witnesses that were not included in the interrogatory answer.

Even taken into account whether assuming that he has been responsive, we are still in a very difficult position where I have an interrogatory answer that does not identify witnesses and crucially does not identify a single document. But, then, I have e-mails from Plaintiff's counsel saying, no,

documents exist.  We provided them to you.  I am just not going to identify them.

So it is one or the other.  Either documents do not exist and the answer to the interrogatory needs to state such, or documents do exist and the response to the interrogatory he just refuses to identify them.

So that's the conundrum that we are in, in terms of the interrogatory responses, Your Honor.  I mean, for self-evident reasons it is vitally important that we get this information and that is why we requested it.

THE COURT:  Well, let me just say, Mr. Valdes, it seems to me that this exercise that we are having to engage in feels like pulling teeth.

And it seems like you finally came up with a list of witnesses, but you did not amend your interrogatory answer to have that be a sworn answer to an interrogatory.  So that is one shortcoming of the way you have done this.

And the other one is that this supposed document is just something -- it's more like a summary of damages, but it is not something that supports these figures.  It is just what you are saying are the damages.  Documents that support damages would be lost profits, cancelled orders.  Things of that nature.

Now, if you don't have them, you don't have them and you have to say so.  You cannot produce something that you do

not have, but it seems like we have been dancing around this issue quite long enough.  It took a very stern order that I issued for you to at least fully comply with two out of the four discovery requests and we are still trying to get the other two resolved.

So let me ask you, Mr. Valdes, are these witnesses identified in Paragraph 4 what should have been responded from way back when to this interrogatory?  And are you prepared to amend the interrogatory to incorporate those witnesses and make it a sworn answer?

MR. VALDES:  Yes, Judge.

And I would like to say one thing.  When you stated in that order on that date, Judge, I took it very seriously.  I went to my clients.  I was very specific with them.

I am very thankful for Mr. Velarde.  Actually, we did say -- it was actually for two hours that day and I told him thank you because I really want to make this right and I want to move this along.

So I have given everything that my client has given to answer questions except for (inaudible).  Am I going to amend this to have it sworn, yes.  I am trying to get everything and that's why I provided it that way and got it to be uploaded.  But, as we sit here, to make this correctly and amend my answers and have this sworn, yes, I would include those witnesses to do that.

And as far as the damages, I know Mr. Velarde just like we would like to know the damages.  There as to be, you know, Judge, down the road there is going to have to be an expert and a forensic accountant.  There is going to be a lot of things to calculate the damages, but I will put --

THE COURT:  I'm sorry, Mr. Valdes.

The issue is do you have documents that support these damages claims.  If you have them, they should have been produced.  If you don't have them, then you have to tell --

MR. VALDES:  Okay.

THE COURT:  -- opposing counsel I don't have any documents.  Of course, things are supplemented as they move along, but do you see where you have been sort of leading us down to finally get to what any beginning lawyer would know that an interrogatory answer needs to be sworn?

MR. VALDES:  Yes, Judge.  I understand.

Like I said, as I answered your question, I will amend the -- given the opportunity by Your Honor to amend and have these witnesses and any documents amended.  If they are not there, they are not there and I will get my client --

THE COURT:  I'm sorry.  By now you should know if you have documents that support these numbers.

Do you have them or do you not have them at this present time?

MR. VALDES:  Yes, we do.  I'm with my client right

now.

THE COURT:  And where are those documents?  Why have they not been produced?  Mr. Valdes, did you hear --

MR. VALDES:  The answer is that the documents have been uploaded.  This is straight from my client.  He said that the documents responsive to that calculation of damages has been uploaded to opposing counsel on this matter.  That's what he just let me know.

THE COURT:  Right.

MR. VALDES:  I'm only --

THE COURT:  I'm sorry.  Uploaded when and where and which documents are they?

MR. VALDES:  If you give me a second, I'm working from a computer that is not mine and go back to my (inaudible).

All right.  Judge, I want to answer your questions specifically.  So what are the actual questions I have uploaded from my (inaudible) and I did this on my phone.

THE COURT:  All right.  We squared away the witnesses and you are amending the answer to include the list of witnesses.

MR. VALDES:  Right.

THE COURT:  my second question was do you have documents?  You said they have been uploaded.  I asked you when and where; where are those documents uploaded and to whom and to where?

MR. BERNSTEIN:  And Judge, the documents just stating on the documents that --

THE COURT:  I'm sorry.  You are breaking up.  I can't understand what you are saying.

MR. VALDES:  The documents that deal with the damages you are saying?

THE COURT:  The documents that support your damages claims.  You either have them or you don't.

MR. VALDES:  Okay.

THE COURT:  Did you understand my question, sir?

MR. VALDES:  Yes, I did, Judge.

I'm just trying to collect documents (inaudible) because on my computer.  The only documents that -- hold on. Let me see.

The only documents are documents that have been sent to opposing counsel and, specifically, they are general statements.  Nothing specifically that says the calculation or any kind of like stating that the stuff that you set in.

Judge, lost profits or anything like that, no.  Just general statements and general stuff being calculated and I guess comes from my client and client e-mails and that's exactly what has been produced and nothing else.

THE COURT:  Then, whatever this stuff is you need to identify it by Bates -- well, too much.  The documents, have the documents been Bates numbered, sir?

MR. VALDES:  No, they have not.

THE COURT:  Figures.

All right.  You will need to Bates number all of your documents and then you need to get a list of all your numbers of documents that support the damages claim.  And that will be your amended answer to Interrogatory Number 3 of the second set of interrogatories.

One amendment consists of including those witnesses and the second amendment consists of including the Bates numbers of the documents that you claim support the damages claim, whether they would be e-mails, profit and loss statements, newspaper clippings.  Whatever the nature is, but they need to be identified by Bates numbers.

Have I made myself clear on that?

MR. VALDES:  Yes.

THE COURT:  So I will give you until the close of business tomorrow to do that.  You are going to have to burn the midnight oil.

Now, on the second request for production there was the matter of how the documents were produced.  Whether they were produced in the ordinary course of business or by request number.  It seems that neither.  it seems like the thousand documents were just dumped on Mr. Velarde.

MR. VELARDE:  Yes, Your Honor, that's correct.

But before we move on to the second request, I wanted

to make one more point on the second interrogatory --

THE COURT:  Yes, sir.

MR. VELARDE:  -- specific to the identification of witnesses.

THE COURT:  Yes, sir.

MR. VELARDE:  Your Honor, just to avoid issues in the future, tomorrow specifically, the interrogatories specifically asked for us to identify, which is a defined term in the interrogatories.

And it is defined as providing their name, their last known business or residential address, telephone number and e-mail addresses of the individuals identified.  And the reasons for that is personal and we can get to them if we need to, to set the depositions, et cetera.

So I would request that that be put in Mr. Valdes' amended interrogatory answer that it include that information as requested in the interrogatory.

THE COURT:  All right.  So it will be the witnesses and their contact information.  Now if these are people that you control, you can give the contact information to be yours, Mr. Valdes.  And they can set those witnesses for deposition, or whatever through you, but if you have no control over them, the last known contact information for them.

Do you understand?  Mr. Valdes?

MR. VALDES:  Yes, yes.

THE COURT:  Did you understand?

MR. VALDES:  Yes.  Yes.  Did you hear me?

THE COURT:  I just heard you say yes, yes.  I didn't hear you before.

MR. VALDES:  Yes, I understand.  I wrote that down.

THE COURT:  Okay.  All right.  So the way the document production took place, I am now requiring you, Mr. Valdes, to Bates number your production.

And I believe, Mr. Velarde, that your issue was that they were not identified as to request and they were not produced in the ordinary course of business.

MR. VELARDE:  That's correct, Your Honor.

THE COURT:  All right.  Let me hear from Mr. Valdes.

How did you go about doing this production?  Did you produce these documents as they were kept in the ordinary course of business?

MR. VALDES:  They were produced as I was receiving them from my client.  And even, obviously, with the time crunch, I was trying to produce and I didn't as put them as specific.  That is correct.

THE COURT:  So once --

MR. VALDES:  Just everything, Your Honor.

THE COURT:  So once you have Bates label the documents --

MR. VALDES:  Yes.

THE COURT: -- then you are going to have to amend your request for production to at if Bates numbers of the documents that are responsive to those requests.

Is that clear?

MR. VALDES: Yes, Judge, it is.

THE COURT: And those will be new requests for production and you need to do all this by the close of business tomorrow. And that will be full compliance with my order.

Understood?

MR. VALDES: Yes, sir.

THE COURT: Ma'am. I'm not a sir.

MR. VALDES: Did I say sir? I said understood.

THE COURT: All right. Mr. Velarde, you should receive everything by the close of business tomorrow. It is before a holiday weekend. I anticipate that there will be no further issues with Plaintiff's discovery.

MR. VELARDE: Thank you, Your Honor. Appreciate it.

THE COURT: Now, Plaintiff had been wanting me to address their issues. I said that I would only address them after there has been a meet and confer.

Obviously, the parties have been busy with Plaintiff's production. You can meet and confer and seek a hearing again on those issues that cannot be resolved following my discovery procedure.

MR. VELARDE: Yes, Your Honor.

THE COURT:  All right.  Mr. Valdes, I anticipate that you will fully comply.

Do you have any questions?

Make sure that you understood your instructions and let me tell you there will a written order also.

MR. VALDES:  Understood, Judge.

THE COURT:  All right.  We will issue a written order. Thank you very much.

MR. VELARDE:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  Court is adjourned.

(Thereupon, the proceedings concluded.)

CERTIFICATE


        I hereby certify that the foregoing transcript is an

accurate transcript of the audio recorded proceedings in the

above-entitled matter.


10/18/21                          Bonnie Joy Lewis,
                          Registered Professional Reporter
                             CASE LAW REPORTING, INC.
                            7001 Southwest 13 Street,
                          Pembroke Pines, Florida 33023
                                954-985-8875