**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

    Plaintiff,

    v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

    Defendants.

_____

### PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [DE 277]

Plaintiff, Unisource Discovery, Inc., by and through its undersigned counsel, files its Reply to Defendants' Response to Plaintiff's Objections to the Report and Recommendation [DE 267] relating to Plaintiff's Motion for Preliminary Injunction [DE 277], and states,

    A.    **Plaintiff's Reply to Defendants Response Section III "Plaintiff's Objection Nos. 3 and 4"**

Not wavering from their spurious arguments, the Defendants literally attempt to reshape Plaintiff's Objection in a different way than Plaintiff argues to the Court, and then ironically argues against the very "spin" that Defendants place upon Plaintiff's objection.

Here is a simple example of how Defendants reshape Plaintiff's objection and want this Court to believe that Plaintiff argues the 2010 Close Corporation Shareholder Agreement "transferred" ownership of the Mark. Plaintiff never made such an argument. Namely, in Defendants Response [DE 277] they argue "Nothing in the Agreement transfers any ownership of the subject Mark or name to Plaintiff. And nothing in the Agreement grants any sort of exclusive right to Plaintiff."

What is correct about Defendants above statement is that the Mark was never transferred from Defendants to Plaintiff in the 2010 Close Corporation Shareholder Agreement -- but not for reasons that Defendants argue.  Specifically, Defendants' statement is correct only because Plaintiff always owned the Mark as the person that registered the Mark with the USPTO [over 12 years ago] -- not Defendants who *never objected thereafter*. *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So.2d 381, 383 (Fla. 5th DCA 2005) ("It is well-established that the parties' intent governs contract construction and interpretation.") Because the Mark was never owned by Defendants, and always owned by Plaintiff, there is/was no provision in the 2010 Close Corporation Shareholder Agreement that "transferred" ownership of the Mark that was already owned by Plaintiff at the time the agreement was executed.

Apparently, the Defendants also want this Honorable Court to rely upon an "assumption" that because the word "transfer" [or similar] is missing from the 2010 Close Corporation Shareholder Agreement the Mark could not be owned by Plaintiff.  That is simply a tactical argument without support, and complete fiction.  *BMW of N. Am., Inc. v. Krathen,* 471 So. 2d 585, 587 (Fla. 4th DCA 1985 ("[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted.")

When the Court deconstructs the simple English used in Section 1.3 of the 2010 Close Corporation Shareholder Agreement, the parties clearly acknowledge and contractually agreed that "UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company". *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001) ("In order to determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance.")

In its Objection [DE 267], the Plaintiff deconstructs Section 1.3 in the following manner:

> "First, the Plaintiff turns its attention to the plain meaning of the following first sentence in Section 1.3 "Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL ***is a*** registered US trademark of the Company." (emphasis added") Merriam-Webster defines the word "is" as "to show or describe (someone or something)

2

clearly and completely" (last visited January 23, 2022). The New Oxford American Dictionary defines the word "is" as "having a definite outline or specifications, precisely marked or stated".

Then, the Plaintiff closely analyzes the plain meaning of the next sentence in Section 1.3, "Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, ***or otherwise***." (emphasis added). Merriam-Webster defines "or otherwise" as "used to refer to something that is different from something already mentioned" (last visited January 23, 2022). The New Oxford American Dictionary defines "otherwise" as "circumstances different from those present or considered, or else.""

(emphasis added)

However, in Defendants' Response [DE 277] they assert unsupported statements such as, "The record is replete with evidence confirming that Defendants—not Plaintiff—own the subject Mark and never transferred any ownership of the Mark or name to Plaintiff". Yet, as argued in Plaintiff's Objection [DE 267] and interposed above, under Florida law contract interpretation begins with plain meaning of words used, and words are "to be given their natural, ordinary meaning." *See Ferox, LLC v. ConSeal Int'l, Inc.,* 175 F. Supp. 3d 1363, 1371 (S.D. Fla. 2016).

Apparently, the Defendants are implicitly pushing this Court to re-write Section 1.3 of the 2010 Close Corporation Shareholder Agreement using the "record" instead of the parties intent and interpreting its plain meaning as contractually agreed by the parties in year 2010. And contrarily, Plaintiff is simply asking the Court to interpret Section 1.3 applying its plain meaning – nothing more and nothing less. *John M. Floyd & Associates, Inc. v. First Florida Credit Union,* 443 F. App'x 396, 398 (11th Cir. 2011) (finding that one interpretation was not reasonable where that interpretation "would require inserting words into the provision").

Likewise, when the Defendants argue that the "record" also supports that Defendants "… never transferred any ownership of the Mark or name to Plaintiff …" that is, yet again, correct for a different reason. On the same basis that there is no language "transferring" ownership of the Mark found in the 2010 Close Corporation Shareholder Agreement -- because Plaintiff always owned the Mark as the party

3

that registered the Mark *et al* -- the record simply would not support something that could factually never happen, *i.e.*, the Defendants transferring ownership of the Mark it never owned. Defendant's argument is, again, an attempt to reshape Plaintiff's Objection and a distraction that hopefully has been placed into proper context.

In conclusion, if anything is clear it should be the "plain meaning" of the sentence in Section 1.3 that states "Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company. (emphasis added)  There can be no unclarity or ambiguity because according to the "plain meaning", and applying simple English , Section 1.3 that provides that the Mark " … is a registered trademark of Company …" *Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. 3d DCA 2007) (If it is determined that no ambiguity exists, then the contract is interpreted according to its plain meaning.")

Defendants ignore the plain meaning of Section 1.3 and want the Court to instead rely on the "record" [over 12-years later] as opposed to the terms of an enforceable agreement and the parties contractual intent.  In the same breath, Defendants wishes to effectively have the Court re-write Section 1.3 using their arguments of what occurred, or did not occur, in the record.

Defendants' Response [DE 277] does not address contract interpretation, its plain meaning, the fact the parties mutually drafted the 2010 Close Corporation Shareholder Agreement, and the integration clause (cited in Plaintiff's Objection [DE 267]) that simply does not permit the Court to use the "record" to re-write, add, or modify its terms.  For these reasons, and those in Plaintiff's Objection [DE 267], the Plaintiff sincerely hopes that this Court agrees with its well-supported Objection.

B.      **Plaintiff's Reply to Defendants' Response - "II. Plaintiff's Objection Nos. 1 and 2."**

The gist of Defendants arguments against Plaintiff's objection to the Court not finding an implied license is as follows:

4

"It further is undisputed that Plaintiff did not seek a licensing agreement from either of Defendants. Hr. Tr., Dec. 9, 2020 (DE 272) at 30:7–18 (Plaintiff's testimony: "Q. ... You never asked for a licensing agreement from Unisource Discovery, LLC from 2009 through February 1, 2020, correct? A. That is correct.").

Plaintiff's Objection (DE 267) does not contend otherwise. Rather, Plaintiff argues that" Plaintiff is not required to enter into a ***written*** license agreement" and that the law somehow imposed an "implied license." Objection (DE 267) at p. 6. The fact that the parties did not enter into a written license agreement is undisputed. This is not the proper subject of an objection."

Candidly, through the Defendants Response [DE 277] they have allowed the Plaintiff to further provide an Eleventh Circuit case that found implied licenses arose without a written document, in the context of trademarks, and with the same procedural posture as here.  *See* Exhibit "A"

This Eleventh Circuit case is *Nakava, LLC v. S. Pac. Elixir Co.*, Case No.: 19-cv-81128-SINGHAL/Matthewman (S.D. Fla. Aug. 10, 2020) that involves trademark infringement under the Lanham Act, as well as common-law trademark infringement and unfair competition.  The claims emanate from the defendants continued use of *Nakava LLC's* registered trademark.  The procedural posture of the case is virtual identical -- before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment.

Factually, and analogous, in *Nakava LLC* the Plaintiff allowed Defendant to continue operating the business under the same name bearing the Mark before their dispute, and during the dispute the Defendants continued to use the mark after cease-and-desist letters were served upon defendants.  The plaintiff claims likelihood of confusion in its trademark infringement claims.

And exactly as this case, in *Nakava LLC* the Defendants argued that the Plaintiff never "mentioned any existing license, 'implied' or otherwise".  In response, the Court found Defendant's argument "misses the point" and further opined,

"The only way to interpret this is an implied license by Nakava LLC to SPEC. "Acquiescence to one's use of a trademark is analogous to an implied license to use the mark." *Coach House Rest.*, *Inc. v. Coach & Six Rests*. *Inc.*, 934 F.2d 1551, 1563 (11th Cir. 1991)." *Nakava, LLC v. S. Pac. Elixir Co.*, Case No.: 19-cv-81128-SINGHAL/Matthewman, 9 (S.D. Fla. Aug. 10, 2020)"

5

> "The law does not require any express contract, promise, or even certain words to find an implied license. The very nature of an implied license is creation-by-conduct—that the owner "permits the use of a copyrighted work in a particular manner." *Karlson v. Red Door Homes*, *LLC*, 611 F. App'x 566, 569 (11th Cir. 2015) (quotation omitted). In other words, "[t]he grant of a nonexclusive license does not require a writing under the Copyright Act, and it may occur orally or may be implied from the copyright owner's conduct." *Id.* That *Nakava LLC* knew SPEC operated the Kava Bar under the name of the Mark and allowed it to continue after the 2005 Assignment is sufficient to establish an implied license."

As demonstrated, under very similar circumstances the Eleventh Circuit supports Plaintiff's position and likewise Objection that Defendants were using the Mark under implied license – without a written agreement -- after Plaintiff registered the Mark with the USPTO.

In light of Plaintiff's supported position that an implied license arose by operation of law under Eleventh Circuit law, and because Defendants Response [DE 277] is without similar legal support, this Honorable Court will hopefully agree with Plaintiff's Objection.

C.       <u>**Plaintiff' Reply to Defendants' Response – "I. Plaintiff does not object to the Magistrate Judge's finding that "Plaintiff failed to establish irreparable harm." Report and Recommendation (DE 250) at p. 16."**</u>

Defendants' entire argument is found in the first sentence of their Response [DE 277], when stating,

> "Plaintiff's Objection (DE 267) does not object to the Magistrate Judge's finding that Plaintiff failed to establish irreparable harm. And Plaintiff concedes that a showing of irreparable harm is essential to the entry of a preliminary injunction. *See* Objection (DE 267) at p. 4. This, alone, warrants a denial of Plaintiff's Objection.

Defendants are amiss with this argument. In Plaintiff's Response and Memorandum In Opposition to Defendants' Motion *In Limine* [DE 258], applying real-time (and not abstract) trial experience, the Plaintiff argued,

> "Before addressing each of Defendants arguments, in real-time (and without merely applying legal theory) determining damages is fact intensive and can only be properly determined by the factfinder/jury at trial, upon a finding of liability and harm. And, depending on how Plaintiff presents its evidence of damages, Defendants still may be able to reassert its argument at trial by making a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50.  Of course, the Defendants did not inform this Court that Plaintiffs are also entitled to statutory damages under the Lanham Act. 15 U.S.C. § 1117(c) if it prevails."

For Defendants to argue that "Plaintiff's delay confirms that there is no irreparable harm" is simply untrue as this matter was addressed in the record.  In all due respect, because Defendants' argument is utterly devoid of merit, the Plaintiff respectfully believes its reply requires no further discussion on this matter.

D.     **Plaintiff's Reply to Defendants' Objection "IV. Plaintiff's Objection No. 5."**

Here, the Defendants cite a finding from the Honorable Magistrate[1], and then argues: (1) "First, it is undisputed that Defendant Unisource Discovery LLC is not a party to the 2010 Close Corporation Shareholder Agreement; (2) nothing in the 2010 Close Corporation Shareholder Agreement in any way governs how either of Defendants use the subject mark and logo; and (3) Finally, Plaintiff does not—and cannot—identify any record evidence or even proffer any facts that show how Defendants were "restricted" in any way in their use of the subject Mark and name."

The Plaintiff will respond in-kind to each of the three (3) arguments that Defendants put-forth.

First, in the context of Defendants first argument  that "Unisource Discovery LLC is not a party to the 2010 Close Corporation Shareholder Agreement", as the Eleventh Circuit held in *Babbit Electronics, Inc. v. Dynascan Corp*., 38 F.3d 1161 (11th Cir. 1994), "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity [i.e., trademark infringement], is personally liable for such infringement without regard to piercing of the corporate veil." *Id*. at 1184. The same principle applies to claims for unfair competition and trademark infringement under Florida common law and the Florida Deceptive and Unfair Trade Practices Act. *See Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC,* No. 13-24342, 2014 WL 11906611, at 4 (S.D. Fla. Mar. 10, 2014).  Here,

---

[1] The Magistrate ruled, "In 2006, Cerasale and Mijares formed Unisource Inc. and Cerasale allowed Plaintiff to begin using the Unisource Mark as part of their joint venture to expand the 'Unisource Discovery' brand beyond California. Since that time: both Plaintiff and Defendants have used the Unisource Mark; Plaintiff has been aware of Defendants' use of the Unisource Mark; and Plaintiff has not restricted Defendants' ability to use the Unisource Mark or sought a licensing agreement from Unisource LLC or Cerasale to use."

for this reason the Defendants argument is entirely without merit under applicable law.

Defendants' second argument that "nothing in the 2010 Close Corporation Shareholder Agreement in any way governs how either of Defendants use the subject mark and logo" is simply non-sensical in all due respect.   As the 2010 Close Corporation Shareholder Agreement provides in Section 12 ("Construction"), the parties "participated jointly in the negotiation and drafting …" and "…construed as if drafted jointly …" Therefore, it was the parties mutual contractual intent that the "… UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company." (emphasis added) Indeed, there is no language that "… any way governs how either of Defendants use the subject mark and logo …", as Defendants assert, simply because the parties clearly elected not to include such language over 12-years ago.  The Court should not need to read any further into the 2010 Close Corporation Shareholder Agreement than what the parties mutually intended.

And third, the Defendants argue that "Finally, Plaintiff does not—and cannot—identify any record evidence or even proffer any facts that show how Defendants were "restricted" in any way in their use of the subject Mark and name" again they miss the point. The Plaintiff does not need to present evidence that Defendants were "restricted".  Another somewhat odd argument.

As Defendants know or should know, they are "restricted" under application of law – whether there are provision(s) in an agreement or not.  Once the Defendants began causing actual client confusion, applicable law prevents further harm if the party – here, the Defendants – do not self "restrict" themselves. The omission of "restricting" language in the 2010 Close Corporation Shareholder Agreement, though may have been practical to include in year 2010, does not prevent Plaintiff from invoking applicable law to "restrict" bad conduct and cease further damage(s) in the context of trademark infringement.

For the reasons set-forth above, Defendant's arguments are simply without merit.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven Cerasale, individually on this 14th day of February, 2022.

Respectfully submitted,

/s/ *Diego David Valdes*

Diego David Valdes,
Esq. Florida Bar No.
251010 Email:
ddvlaw@gmail.com
ddv@ddvlawgroup.com

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite
403B Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

Counsel for Plaintiff: Unisource Discovery, Inc.