**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**


UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**OBJECTIONS TO  REPORT AND RECOMMENDATION  [DE 275]**

Plaintiff, Unisource Discovery, by and through its undersigned counsel, files its  Reply  to Defendants' Response [DE 275] to Plaintiff's Objections to the Report and Recommendation relating to Plaintiff's Motion for Summary Judgment [DE 262], and states,

1.    **Plaintiff's Reply to Defendants' Response: Rule 9 Pleading Fraud — Intent to Deceive**

Defendants' counterclaim for cancellation of trademark – filed over 12-years since Plaintiff registered the Mark with the USPTO – is a fraud claim " … on the grounds that the registration was obtained fraudulently." *Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 340 (Fed. Cir. 1997) (citing 15 U.S.C. § 1064(3)). "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the [US]PTO." *In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009).

Defendants filed their Response to Plaintiff's Objection [DE 275] stating that "… the Counterclaim alleges as follows: [Plaintiff's] Trademark registration application included the following material misrepresentations:

a. [Plaintiff] claimed that it was the "owner" of the Mark when, in reality, Unisource California was the owner.

b. [Plaintiff] claimed that it first used the Mark "as early as March 1, 2001" when, in reality, Unisource Florida did not use the Mark until after it was incorporated in June 2006. …

c. [Plaintiff] falsely claimed … "no other person, firm, corporation, or association has the right to use the [M]ark in commerce" knowing full well that Unisource California … had been using the Mark since 2001, and had every right to continue using the Mark."

First, the Plaintiff clarifies Defendants' implicit misstatement in subsection c, above, when telling this Court that Plaintiff "… knowing full well that Unisource California … had been using the Mark since 2001, and had every right to continue using the Mark." That is 100% untrue. Defendants never registered the "name" and "logo" in California, and never registered Mark with the USPTO.

Plaintiff have maintained that Count I is insufficiently pleaded because Defendants fail to plead the requisite elements of fraud upon the USPTO.[1] Specifically, Defendants do not plead facts demonstrating Plaintiff's "intent" to deceive the USPTO.

Defendants claim fails because it does not point to a single allegation demonstrating that Plaintiff had any subjective intent to defraud the USPTO. *Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336 (Fed. Cir. 1997).

The court in *Metro Traffic Control* noted the legal distinction between a "false" statement and a "fraudulent" statement. *Metro Traffic Control,* 104 F.3d at 340. An "honest misunderstanding, inadvertence [or] negligent omission" may be false, but without demonstrating

---

[1] Federal Rule of Civil Procedure 9(b) requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Holguin v. Celebrity Cruises, Inc.,* Nos. 10-20215-Civ, 10-20545-Civ, 10-20546-Civ, 2010 WL 1837808, at 2 (S.D. Fla. May 4, 2010).

A plaintiff must allege "(1) precisely what statements were made in  what documents or oral representations . . . , and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)

an "intent to deceive[,]" such false statements are not "fraudulent." *Id.* Conversely, a false statement made with intent to deceive is fraudulent. *See id.*

This distinction is important because Defendants does not specifically allege Plaintiff's intent to deceive the USPTO, and Plaintiff's allegedly false statements simply do not rise to the level of being fraudulent.

The person that registered the Mark over 12-years ago -- with the Defendants full knowledge and without objection -- is CEO of Plaintiff Unisource, Mr. Noel Mijares.   Not using an attorney but an on-line service, it was the first time Mr. Mijares registered the Mark and did so with all parties having full knowledge at all relevant times since Defendant Steven Carasele was a board member, a shareholder, and majority owner of Plaintiff Unisource. This is undisputed in the record. And it is not disputed that Mr. Mijares has no legal background.

Similarly, the court in *Metro Traffic Control* found that the person who made the false statements had "an unclear understanding of the legal implications of his statement[s]." *Metro Traffic Control,* 104 F.3d at 341. The misstatements were not made in a "conscious effort to obtain for his business a registration to which he knew it was not entitled." *Id.* In other words, the misstatements, while false, were not fraudulent because they were not made with an intent to deceive.

Construed in the light most favorable to Plaintiff and under the Rule 9 standard, given the cumulative facts in the record it cannot be reasonably inferred that Plaintiff consciously tried to register the Trademark to which it knew it was not entitled — and by doing so necessarily attempted to deceive the USPTO.

Therefore, Defendants did not sufficiently plead that Plaintiff's alleged false statements were made with fraudulent intent. For these well-reasoned arguments that have legal basis and

support under applicable law and the record -- unlike Defendants speculative assertions -- the Plaintiff sincerely hopes that the Court agrees with its Objection.

2. **Plaintiff's Reply to "Defendants' Motion for Summary Judgment was supported by clear and convincing evidence of Plaintiff's intent to defraud the USPTO."**

Consistently advancing their unprofessional conduct and showing *chutzpah*, the Defendants now claim the Plaintiff <u>lied</u> to three (3) times.  First, besides finding Defendants' accusation is utterly offending and now draining because Defendants have been authoring comparable insults in a countless numbers of documents filed with the Court, the Court likewise never entered an Order finding there were three (3) "lies"  told by Plaintiff.  Effectively, the Defendants want this Court to re-write the record and re-open discovery.

Second, and similar to the other objections/replies filed by Defendants, the Plaintiff must now untangle Defendants bogus arguments concerning these three (3) lies. Simply put, when Plaintiff addresses each of Defendants' fraudulent arguments relating to the three (3) lies,  the Court will find Defendants arguments are meritless and will hopefully agree that Defendants have crossed the line into unethical conduct.

A. **Plaintiff's Reply to Defendants fabricated "first lie"**

 The Defendants "kick-off" their unprofessional set of arguments with,

"First Lie: "[N]o other person, firm, corporation, or association has the right to use the mark in commerce."

The Defendants continue their argument by stating, "Plaintiff admitted at its deposition that it knew and believed that Defendant Unisource Discovery, LLC (i.e., "another person") had the right to use the mark:

> Q. … [A]s to the use from 2006 through 2009, before the registration of the trademark, Unisource Discovery, LLC had the right to use the mark in its business, correct?
>
> A. I think I've already answered that multiple times.

4

Q. Well, I apologize. I just want to summarize. So that's correct: that Unisource Discovery, LLC had the right to use the mark in its business from 2006 to 2009, right?

A. Yes. Pl.'s Dep. (DE 150-10) at 213:13–24; id. at 140:9–13 ("Q. … before the registration of the trademark of the logo, Unisource Discovery, LLC and Unisource Discovery, Inc. both had the right to use the logo in their business, correct? A. Yes.")."

However, it is vividly clear that Defendants have literally ignored and elected not to educate this Court that in order for the Defendants to seek cancellation on the basis of fraud they must prove their claim by *clear and convincing evidence*. *Angel Flight*, 522 F.3d at 1209; *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Jerusalem*, 702 F.3d 1279 (11th Cir. 2012). It is also no secret that throughout the "*entire*" litigation Plaintiff has maintained it granted Defendants' an implied license – that is, Plaintiff did not create this "fact" on the cusp of trial or even approaching trial.

When Plaintiff responds to the above cited open-ended deposition question, as a non-lawyer, that is how Mr. Noel Mijares (the deponent) understood the question – that, Defendants had a revocable implied license and could use the license at that time under that arrangement. While objective factors are important in assessing intent and the likelihood of confusion between two marks, courts must also examine the *defendant's subjective intent*." *Canes Bar & Grill of S. Fla.*, *Inc. v. Sandbar Bay*, *LLC*, 343 F. Supp. 3d 1236, 1244 (S.D. Fla. 2018). (emphasis added) The Defendant carries a heavy burden, and "any doubt must be resolved against the charging party." *In re Bose Corp.*, 580 F.3d 1240, 1243, 1245 (Fed.Cir.2009) *Bose*, 580 F.3d at 1243.

The Defendants entirely avoided addressing "subjective" intent and similarly avoids their burden of clear and convincing.

Specifically, in the trademark application, the declarant-focused text of the application oath requires the signatory's good-faith, *subjective belief* in the truth of its contents. *Id* ("Subjective intent to deceive ... is an indispensable element in the [fraud] analysis.") (emphasis added);

*Marshak v. Treadwell*, 240 F.3d 184, 196 (3d Cir.2001); *Sovereign Military Hospitaller Order of Saint John of ... 702 F.3d 1279 (11th Cir. 2012); United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227 (10th Cir.2000)

"[W]e focus on the 'declarant's subjective, "honestly held, good faith" belief.' *San Juan Prods., Inc. v. San Juan Pools, Inc*., 849 F.2d 468, 472 (10th Cir.1988))); *see also McCarthy on Trademarks* § 31:76 ("The oath is phrased in terms of a subjective belief such that it is difficult, if not impossible, to prove objective falsity and fraud so long as the affiant or declarant has an honestly held, good faith belief.").

These facts clearly shows that  Plaintiff could not have intended to deceive the USPTO in attesting to an oath that it believed was entirely accurate.

B.      **Plaintiff Response to "B. Evidence submitted as to the second lie—i.e., "[Plaintiff] believes [itself] to be the owner of the trademark/service mark sought to be registered.**

Simply put, the Defendants argue:

> Second Lie: "[Plaintiff] believes [itself] to be the owner of the trademark/service mark sought to be registered.

Because Defendants arguments are "muddy" and fairly unclear, rather than re-stating their bad arguments Plaintiff must interpose same, *to wit,*

> "Plaintiff confirmed that in "the year 2006 Operating Shareholder Agreement the parties contractually agreed to permit Plaintiff to use the logo." Opposition (DE 174) at p. 11. Plaintiff also clearly attested under oath that it "had full rights under implied license to use the name and logo until year 2010" and that "Steven Cerasale by his own actions and investment, provided [Plaintiff] a license to use the name and logo and therefore [Plaintiff] had full rights and undisputed permission from 2006 … until 2010." Pl. Aff. (DE 182-1) at ¶¶ 10, 13 (emphasis added).

> "The record evidence, therefore, clearly and unequivocally establishes that Plaintiff subjectively believed it did not own the subject mark/logo or the name in October 2008 (i.e., when it submitted its trademark application to the USPTO). Despite its own admitted knowledge/belief, Plaintiff represented to the USPTO that "[Plaintiff] believes [itself] to

be the owner of the trademark/service mark sought to be registered." Pl.'s Trademark Application (DE 150-4) at p. 4."

Once again, the Defendants want this Court to re-open discovery based upon the above layered and convoluted arguments. Yet, as maintained throughout the entire litigation the Defendants' statements are completely incorrect because Plaintiff always owned the Mark as the person that registered the Mark with the USPTO over 12 years ago -- not Defendants who never objected thereafter. *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So.2d 381, 383 (Fla. 5th DCA 2005) ("It is well-established that the parties' intent governs contract construction and interpretation.") .

The Defendants argue that Plaintiff did *not* own the Mark prior to its registration is another misleading argument because the name and logo was *never* a registered "Mark" prior to Plaintiff's registration with the USPTO and/or the State of California at all revenant times.

Worse, the Defendants consistently ignore Section 1.3 of the 2010 Close Corporation Shareholder Agreement whereas the parties clearly and contractually agreed that "UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company". *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001) ("In order to determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance.") (emphasis added)

The Defendants are consistent with one argument: they are implicitly pushing this Court to re-write section 1.3 of the 2010 Close Corporation Shareholder Agreement using the selected portions "record" instead of the parties actual intent and interpreting its plain meaning as contractually agreed by the parties in year 2010. *John M. Floyd & Associates, Inc. v. First Florida Credit Union,* 443 F. App'x 396, 398 (11th Cir. 2011) (finding that one interpretation was not reasonable where that interpretation "would require inserting words into the provision").

And lastly, since the Plaintiff always owned the Mark as the party that registered the Mark *et al* the record simply would not support something that could factually never happen, *i.e.*, the Defendants transferring ownership of the Mark it never owned.

How that name and logo was transferred to Plaintiff is candidly <u>not important</u> to the inquiry because, if one fact is complete absolutely clear, it is the contractual "plain meaning" of the sentence in Section 1.3 where the parties contractually agreed "Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL <u>is a</u> registered US trademark of the Company. *Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. 3d DCA 2007) (If it is determined that no ambiguity exists, then the contract is interpreted according to its plain meaning.") (emphasis added)

In other words, while it is not contractually memorialized just "how" that Plaintiff obtained ownership, and the exact date etc., the parties unequivocally agreed that the Trademark, UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL, *is a* registered US trademark of the Company", Unisource Discovery, Inc.  (emphasis added)

The Court's does not need to inquire any further than the contracts plain meaning and parties actual intent found therein. For these reasons, the Plaintiff sincerely hopes that this Court disagrees with Defendants' unsupported Response to Plaintiff's Objection.

C.       **Plaintiff's Response to Defendants argument that "Evidence submitted as to the third lie—i.e., Plaintiff first used the subject mark "[a]t least as early as 03/01/2001."**

Once again, the Plaintiff must first clarify the Defendants  misleading statement to the Court that "[i.e.] Plaintiff first used the subject *mark* "[a]t least as early as 03/01/2001". (emphasis added)  As stated previously, until the Plaintiff registered the name and logo in year 2009 the Defendants never registered the name and logo with the State of California and/or the USPTO.

Then, the Defendants oddly argue that, "In other words, Plaintiff confirmed that it does not have any foundation to deny Defendants' evidence of Plaintiff's fraud. Plaintiff confirmed it could not remember what happened when it filed the trademark application with the USPTO and concludes with "Plaintiff's Objection now argues that despite the unrebutted evidence showing that Plaintiff knowingly misrepresented facts to the USPTO, there is no evidence that Plaintiff "subjectively intended" to defraud the USPTO."

Despite the fact that this argument is severally repetitive (as Defendants have raised this argument many times but asserted same in different ways) the Plaintiff responds that:

(1) at all relevant times Defendant Steven Carasele had actual knowledge of the trademark registration, Plaintiff's use, and Mr. Casasele still prepared and entered into the 2010 Close Corporation Shareholder Agreement with provision 1.3 Trademark;

(2) according to the 2010 Close Corporation Shareholder Agreement – as already discussed above – the Defendants contractually agreed, and therefore intended, that Plaintiff Unisource owns the Mark under provision 1.3 Trademark; and

(3) although Defendant Steven Carasele is a majority shareholder and held a position on the board of directors, and with actual knowledge of the trademark registration and renewals, he never filed an objection at all relevant times; and

(4) there is not a single mention or entry in the 2006 Shareholder Operating Agreement, or the active 2010 Close Corporation Shareholder Agreement that Defendant Unisource Discovery, LLC is mentioned or listed, in any capacity.

If anything, Defendants continued line of arguments confirms that the only evidence Defendants can leverage to support their floundering cancelation claim is the altered Deposition of Noel Mijares, the CEO of Plaintiff Unisource.  Defendants offer no further direct evidence other than cherry picking the record rather than addressing the terms of the active 2010 Close Corporation Shareholder Agreement and section 1.3: Trademark.

D.      **Defendants Cited Cases Are Highly Distinguishable**

The Defendants rely-upon and cite "extreme" cases that are vastly distinguishable from the instant case.

First, the Defendants cite *East West, LLC v. Rahman*, 896 F. Supp. 2d 488 (ED VA 2012). This case involves defendants that entered into a purchase and sale agreement and non-complete agreement to transfer ownership of certain inventory and its trademark.  Unlike here, in *East West, LLC* the court opined,

> "In its previous Memorandum Opinion on Defendants' Motion to Dismiss, this Court examined the language of the pertinent agreements relating to the 2003 sale of business assets between the parties. [Dkt. 68.] This Court found that Defendants had indeed transferred the common law rights, goodwill, and interest to the trade name to Plaintiff. To be sure, it is clear from the respective language of both the Sale Agreement and Financing Agreement that Defendant Rahman assigned the extent of his ownership of the trade name CARIBBEAN …"

Exemplifying the extreme nature of *East West, LLC,* court then found that,

> "Indeed, **Defendants were not even entitled to use the mark and trade name** at their principal place of business in Laurel, Maryland, which is also the address that appears on the Principal Register. **Nor would Defendants be entitled to use the trade name at their location in Reston, Virginia.** Defendant Rahman's claim of exclusive use is a false, material representation of fact. However, there remains the issue of whether Defendants intended to deceive the Patent and Trademark Office."

The other "very extreme" case the Defendants heavily rely-upon is *MPC Franchise, LLC v. Tarntino*, 826 F.3d 652 (2d Cir. 2016) affirming the district court's finding that Defendant-Appellant Brent Tarntino ("Tarntino") committed fraud on the United States Patent and Trademark Office ("USPTO"). In this case, the Court of Appeals for the Second Circuit clarified the scienter required to establish fraudulent trademark procurement.

However, the facts are very different than the instant case.

The *MPC Franchise LLC* case arose out of a dispute among cousins over the ownership of the name "Pudgie's" for pizza restaurants. In 1973, the brothers formed Pudgie's Pizza Franchising Corporation ("PPFC") to sell franchises for additional Pudgie's pizza parlors. PPFC also registered the trademark PUDGIE'S with the USPTO.  Shortly after the formation of PPFC, a sister of the three brothers, Bernadette Tarntino, purchased a Pudgie's franchise and opened a Pudgie's pizza

restaurant several miles from the original pizza parlors. Bernadette Tarntino formed Pudgie's Pizza Corporation Horseheads ("PPCH") to manage the new location.

Unlike here, in 1985 the USPTO cancelled PPFC's registration for the PUDGIE'S mark after PPFC failed to file certain maintenance documents. Then, in 1993, after one of the brothers passed away, PPFC dissolved. Over fifteen years later, in 2009, two sons of one of the Cleary brothers formed MPC Franchise, LLC ("MPC Franchise") to start franchising Pudgie's pizza restaurants again. Meanwhile, in 2007, Bernadette Tarntino passed away, leaving a one-third interest in PPCH to each of her three children, one of whom was Defendant-Appellant Tarntino.

In 2010, Tarntino applied to register the mark PUDGIE'S with the USPTO for "pizza parlors" and "restaurant services featuring pizza, pasta, and subs." The specimen that Tarntino submitted with his application was a photograph of a pizza box from the Pudgie's location that his mother had opened, which displayed under the PUDGIE'S mark the words "® Pudgie's Pizza Franchising Corporation 1972.". The USPTO issued Tarntino a registration for the PUDGIE'S mark. Then, in 2011, MPC Franchise and MP Cleary, Inc. ("MP Cleary," and together with MPC Franchise, "Appellees"), an entity that owned one of the original Pudgie's pizza restaurants, filed suit against Tarntino in the District Court for the Western District of New York, asserting various causes of actions, including that Tarntino had fraudulently obtained the PUDGIE'S trademark registration.

As exceptionally distinguishable from this case, the district court granted the Appellees' motion for summary judgment on the fraud claim, finding that Tarntino "knew that [Appellees] were already franchising pizzerias, using the very same mark that he was attempting to register for that same purpose." Tarntino appealed to the Second Circuit. The Second Circuit first explained that "[f]raud in procuring a trademark registration occurs when an applicant knowingly makes false, material, representations of fact in connection with his application."

11

The Second Circuit agreed that negligence was not enough, and that the scienter standard for a fraud claim requires that the person making the representation to the USPTO knows that the representation is false. That mere negligence was not sufficient was consistent with Second Circuit precedent, as well as decisions by other Courts of Appeal. ***However, Tarntino's arguments about the requisite degree of scienter did not aid him because he admitted that he had never individually used the PUDGIE'S mark, despite applying for the mark in his individual capacity.***

The Defendants fit the classic case of wanting to Court to push "a square-peg in a round hole" when citing, and completely relying-upon, *MPC Franchise LLC* and *East West, LLC.* Candidly, neither case requires a close review to determine how vastly distinguishable from the instant case.

Therefore, Defendants' Response to Plaintiff's Objection is exceptionally unsupported and to a large extent insultingly so.

**WHEREFOFE,** Plaintiff, Unisource Discovery Inc., prays this Court agrees with its Objection and enter an Order consistent to Plaintiff's arguments and any other relief this Court believes is just and fair.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on Juan C. Zorilla, Esq., jzorilla@fowler-white.com, Fowler, White, Burnett, P.A., counsel for Defendants Unisource Discovery, LLC and Steven Cerasale, individually on this 21st day of February, 2022.

Respectfully submitted,
/s/ *Diego David Valdes*

12

Diego David Valdes,
Esq. Florida Bar No.
251010 Email:
ddvlaw@gmail.com
ddv@ddvlawgroup.com

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite
403B Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

Counsel for Plaintiff: Unisource Discovery, Inc.

13