# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-23276-DPG

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, a
California limited liability company, and
STEVEN A. CERASALE, individually,

      Defendants.

_____

## VERIFIED MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS

      Pursuant to Rule 54(d) and Local Rule 7.3(a), Defendants/Counter-Plaintiffs Unisource Discovery LLC and Steven A. Cerasale (collectively, "Defendants") hereby move for an award of attorney's fees in the amount of $311,582.50 and non-taxable costs in the amount of $24,117.97 against Plaintiff/Counter-Defendant Unisource Discovery Inc. ("Plaintiff").

## ARGUMENT

### I.    Defendants are the prevailing parties and entitled to an award of attorney's fees/costs.

### A.    Attorney's fees/costs under the Lanham Act.

      Under the Lanham Act, "[t]he Court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). Defendants prevailed in their counterclaim for cancellation as well as in Plaintiff's claims under the Lanham Act (i.e., Counts I, II, and V). *See* Jury Verdict (DE 364 and 365). Therefore, it cannot be reasonably disputed that Defendants are the "prevailing parties" under the Lanham Act.

      This Motion, therefore, turns on whether this case is an "exceptional case" within the meaning of the Lanham Act.

Under Supreme Court precedent, "an 'exceptional' case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).[1] Ultimately, "[w]hether a particular case stands out from the others was to be left to the discretion of district courts, considering the totality of the circumstances." *Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018).

This case is "exceptional" under both independent bases recognized by the Supreme Court. That is, this case is exceptional based upon (1) the extraordinary and unreasonable manner in which Plaintiff litigated this case and (2) the substantive strength of its litigating position.

### B.    Plaintiff litigated this case in an extraordinarily unreasonable manner.

The Eleventh Circuit has considered the following findings to be "[e]specially compelling" when determine whether a case was litigated in an unreasonable manner under the Lanham Act: whether the party brought "what the court viewed as baseless motions for sanctions and accusations of perjury" and "repeatedly [sought] to add parties." *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018). Courts have also considered whether the party "was unsuccessful on essentially every substantive motion that was filed in the case." *Warren Tech., Inc. v. UL LLC*, 21-11168, 2021 WL 4940833, at *3 (11th Cir. Oct. 22, 2021).

---

[1] "We conclude that to be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated. *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Octane Fitness, LLC*, 134 S. Ct. at 1756).

1.     **Throughout this litigation, Plaintiff violated virtually every Court Order that required it to act.**

Plaintiff's repeated violations of Court Orders led to no less than **_four_** Orders to Show Cause requiring Plaintiff to show cause why it should not be sanctioned, several Orders imposing sanctions against Plaintiff, and even more Orders compelling Plaintiff to comply with the Order imposing sanctions. *See* Orders to Show Cause (DE 21, 192, 254, and 276); *see also* Sanctions Orders (DE 40, 46, 118, 140, 168, 215)

For example, the Court's Order (DE 14) required the parties to jointly "prepare and file a Joint Scheduling Report, as well as Certificates of Interested Parties and Corporate Disclosure Statements" "on or before October 13, 2020." Plaintiff refused to comply with the Court's Order despite the undersigned counsel's repeated attempts. Plaintiff's refusal to comply led to the Court's first Order to Show Cause (DE 21) instructing Plaintiff to show cause why its Complaint should not be dismissed for non-compliance. Because Plaintiff thereafter complied "albeit over six weeks past the original due date," the Court "impose[d] on Plaintiff's counsel the costs incurred by Defendants in litigating the Motion to Dismiss and attending the hearing." *See* Order (DE 32).

Plaintiff also repeatedly disregarded the Court's discovery Orders, which required hearing after hearing. In fact, Plaintiff's disregard of the Court's discovery Orders was so pervasive and egregious that the Court had to warn Plaintiff "that failure to comply with this Order will result in the undersigned's immediate issuance of a recommendation that Plaintiff's case be dismissed as a discovery sanction … **_given Plaintiff's repeated disregard for the undersigned's prior Discovery Orders_**." Order (DE 106) at p. 2 (emphasis added).

Plaintiff's repeated discovery violations led the Court to impose monetary sanctions against Plaintiff. *See* Sanctions Order (DE 140). And Plaintiff ignored the Court's Sanctions Order and refused to comply. *See* Pl.'s Affidavit (DE 205) at ¶ 4 (claiming that Plaintiff did not pay the

monetary sanctions simply because it did not calendar any deadline to pay). In the Court's own words, "***it took a number of discovery hearings and Orders, spanning several months, for Plaintiff to comply with its discovery obligations***." Order (DE 118) at p. 2 (emphasis added).

When Plaintiff ignored the Court's Order imposing sanctions (DE 140), the Court gave Plaintiff another chance to comply. The Court's next Order (DE 215) provided that "Plaintiff SHALL COMPLY … by … no later than December 31, 2021." The Court was clear about the consequences of non-compliance: "FAILURE TO COMPLY MAY SUBJECT PLAINTIFF TO CONTEMPT OF COURT." *See* Order (DE 215).

Plaintiff ***again*** ignored the Court's second Order requiring compliance. Egregiously, Plaintiff argued that its own willful act of "missing the sanction deadline of December 31, 2021, changes the dynamics" and "therefore '… the factual or legal underpinning upon which the [Court's sanctions] decision was based'" also changed, which somehow warranted reconsideration of the Court's Orders. Plaintiff's Response (DE 255) at p. 4.

Plaintiff also repeatedly violated the Court's Orders requiring Plaintiff to cooperate with Defendants to prepare a Joint Pretrial Stipulation. Plaintiff's counsel refused to coordinate the Joint Pretrial Stipulation, refused to even agree to confer, and did not even attend the Calendar Call on December 1, 2021. Shortly after the December 1, 2021 Calendar Call, the Court issued an Order (DE 221) requiring Plaintiff to confer and coordinate preparing a Joint Pretrial Stipulation by December 31, 2021.

In light of Plaintiff's repeated misconduct, the Court also ordered Defendants' undersigned counsel to file a Status Report regarding whether Plaintiff complied with the Court's Orders. *See* Order (DE 230) at 1 (holding in abeyance Defendants' Motion to Strike as a sanction for Plaintiff's

non-compliance and providing that Defendants shall "file a Status Report re: Compliance by January 14, 2022").

Unsurprisingly, Plaintiff again refused to coordinate drafting the Joint Pretrial Stipulation by the new deadline, which required additional litigation.

In the Court's words, "[i]t is clear … that Plaintiff has failed to comply with the Court's Scheduling Order and has failed to pay Defendant the discovery sanctions amount, as required by the undersigned." Order (DE 268) at p. 3.[2]

## 2. Plaintiff also repeatedly attempted to add a non-party to this litigation (i.e., Equicopy Inc.) for baseless reasons.

At its deposition, Plaintiff admitted that "Equicopy [Inc.] did not infringe on the trademark." Pl. Dep. Tr. (DE 351-23) at 158:1–3.

Despite that fact, Plaintiff filed an untimely Motion for Leave to Amend "[to] include Equicopy, Inc. as an additional Defendant" to this trademark action. In its first Motion to Amend, Plaintiff argued that this case was somehow "still in its earlier stages" despite the fact that the deadline to amend had expired more then four months earlier. *See* First Motion to Amend (DE 114) at p. 2.

The Court denied that first motion for leave to amend. *See* Order (DE 161) at p. 4.

Plaintiff then filed a "Renewed Motion for Leave to Amend" (DE 171) based upon supposed "recently obtained new evidence." Plaintiff did not address the fact that it had already admitted that Equicopy Inc. did not infringe on any alleged trademark right and also did not identify any supposed "new evidence" it ostensibly "recently obtained."

---

[2] Moreover, from the beginning of this litigation, Plaintiff has refused to confer for any motion, any discovery dispute, and any scheduling issue. Plaintiff's refusals to confer even led to the Court ordering counsel for Plaintiff to "attend a standing conferral call every Friday at 4:00 p.m. to address any issues or motions that may arise." Order (DE 138) at ¶ 2.

The Court then denied Plaintiff's Renewed Motion because there was "no basis for granting the Renewed Motion to Amend." Order (DE 197) at p. 1.

Plaintiff filed both Motions despite the fact that, as the Court noted, "Plaintiff has admitted that ***Equicopy, Inc. is not involved in its trademark infringement claims***." Order (DE 266) at p. 2 (emphasis added).

### 3. Plaintiff also filed and—despite having the opportunity to withdraw—insisted on prosecuting frivolous motions for sanctions.

On March 21, 2021, Plaintiff filed a Motion for Sanctions (DE 73) accusing the undersigned counsel of making "fraudulent" and "untrue representations" supposedly to secure the scheduling of a hearing. *See* Motion for Sanctions (DE 73) at p. 2. Plaintiff's accusations were made despite the fact that the hearing was actually scheduled by the Court (not the undersigned) and was scheduled during a telephonic conference with Plaintiff and Plaintiff's counsel both present on the phone. Remarkably, to somehow support its Motion, Plaintiff also contended that "[t]o date, Plaintiff has not received a single page of discovery from Defendants" despite the fact that Plaintiff had not yet propounded ***any*** discovery requests. *Id.* at p. 8.

The Court denied Plaintiff's Motion for Sanctions. *See* Order (DE 84).

Plaintiff then filed a second Motion for Sanctions (DE 115) this time claiming that Defendants' Counterclaim was "barred by the Statute of Limitations" and that the Counterclaim was not plead "with any amount of specificity/particularity as mandated under … Rule 9."

Shortly thereafter, the Court separately ruled that "the limitations period invoked by Plaintiff does not apply to Defendants' [Counterclaim] because it is based on Plaintiff's alleged fraud and such claims can be brought 'at any time.'" *See* Order (DE 118) at p. 6. In light of the Court's ruling, the Court gave Plaintiff the option to withdraw its second Motion for Sanctions because it was based upon a "flawed statute of limitations argument." *Id.* at p. 7.

Plaintiff, however, did not back down. Plaintiff insisted on prosecuting its baseless second Motion for Sanctions. Plaintiff's insistence required Defendants to file a response and attend a separate hearing on the second Motion for Sanctions.

Because Plaintiff refused to withdraw its second Motion for Sanctions, the Court conducted another hearing and entered an Order (DE 167) denying Plaintiff's second Motion for Sanctions. In its Order, the Court found that "the undersigned already found it to be lacking in merit." Order (DE 167) at p. 4. The Court also found that Plaintiff's argument under Rule 9 (i.e., "the purported pleading deficiency") is not a sufficient basis to support sanctions. *Id.*

Undeterred, Plaintiff then filed a third Motion for Sanctions (DE 183). This time, Plaintiff argued—again—that Defendants' Counterclaim "does not contain the required particularity to satisfy the stringent burden under Rule 9" and used this argument to seek "sanctions" related to Defendants' Motion for Summary Judgment. *See* Third Motion for Sanctions (DE 183) at p. 6.

The Court denied Plaintiff's third Motion for Sanctions (DE 253). The Court also noted that Plaintiff's arguments were "redundant, superfluous and not the proper subject for consideration of … sanctions." Order (DE 253) at p. 1.

> **4.     Plaintiff has been unsuccessful on essentially every substantive motion that was filed in this case.**

Plaintiff has filed numerous (sometimes lengthy) substantive motions and was unsuccessful on each. All of Plaintiff's substantive motions were either denied or stricken.

Specifically, Plaintiff filed no less than three Motions for Preliminary Injunction (DE 18, 88, 139). Two of those motions were denied as moot, and the third motion was denied on the merits after an evidentiary hearing. *See* Orders (DE 98, 153, 250, 288).

Plaintiff also filed two separate Motions for Summary Judgment (DE 141, 182),[3] each of which was either denied or stricken. *See* Orders (DE 210, 257).

Plaintiff also filed two separate Motions seeking to strike Defendants' affirmative defense of "naked license" (DE 313, 327). Both motions were denied. *See* Orders (DE 326, 332).

In fact, the only substantive Motion that Plaintiff filed and prevailed on was Plaintiff's "Motion for Voluntary Dismissal Without Prejudice," which sought the dismissal of Plaintiff's own improper "appeal" of the Court's Order denying Plaintiff's Motion for Reconsideration of the sanctions Order. *See* Motion to Dismiss Appeal (DE 256) at p. 1 ("Plaintiff … moves this Court for voluntary dismissal without prejudice of [Plaintiff's] appeal …."); *see also* Order (DE 265) (granting Plaintiff's Motion for Voluntary Dismissal).

### 5.    Plaintiff also violated the Court's Order *in Limine* during the trial.

During trial, Plaintiff violated the Order *in Limine* (DE 266) not only during its presentation of evidence (i.e., introducing testimony and documentary evidence of the "underlying dispute" with Alfred Lutter in April 2010, which the Court's Order barred) but also made reference to such barred evidence during Plaintiff's opening statement. Separately, Plaintiff (through counsel) also disingenuously suggested before the jury that Defendants had refused to produce documents in discovery that Plaintiff had, in reality, not requested or pursued in discovery.

### C.    In addition to Plaintiff's extraordinary misconduct and unreasonable litigation practices, this case is "exceptional" because of the weakness in Plaintiff's substantive case.

Plaintiff's case heavily depended on whether Plaintiff owned the subject mark and/or knowingly misrepresented his ownership of the subject mark when Plaintiff registered the mark with the USPTO.

---

[3] Plaintiff had also filed a third Motion for Summary Judgment (DE 180), which Plaintiff thereafter withdrew (DE 181).

Plaintiff, however, admitted under oath in an affidavit that it "had full rights under implied license to use the name and logo" when Plaintiff submitted the trademark registration application in October 2008. *See* Plaintiff's Affidavit (DE 366-29) at ¶ 10. Plaintiff further admitted that Defendants had "provided [Plaintiff] a license to use the name and logo," which "license" was in place when Plaintiff applied to register the mark with the USPTO in October 2008. *Id.* at ¶ 11. Plaintiff even admitted that it only had "permission" to use the mark—not ownership. *Id.*

Despite these clear admissions—which completely defeat Plaintiff's position—Plaintiff failed or refused to reevaluate the merits of its case. In fact, when confronted with these clear admissions at the trial, Plaintiff did not have any explanation. And Plaintiff testified to the jury that Plaintiff very well knew the difference between a "license" and "ownership" when it made those important admissions in the affidavit (DE 366-29). *See Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306–07 (Fed. Cir. 2017) (holding that the District Court did not abuse its discretion in finding that the case was "exceptional' under the Lanham Act because the plaintiff "marched onward with a view of its case that was not supported by its witnesses").

Additionally, on January 10, 2022, the Magistrate Judge found that "Plaintiff has failed to establish by a preponderance of the evidence that it has a substantial likelihood of success on the merits," "failed to establish irreparable harm," and that "requiring Defendants to cease using the Unisource Mark associated with their business would disserve the public interest." Rep. and Rec. (DE 250) at pp. 15–16. The Court ratified the Report and Recommendation (DE 288).

Despite this ruling, Plaintiff again failed or refused to reevaluate and continued to prosecute its claims (including seeking injunctive relief) through trial.

Plaintiff's case, therefore, was substantively very weak. In light of the weakness of Plaintiff's case, the jury found by clear and convincing evidence that Plaintiff committed fraud when it misrepresented to the USPTO that Plaintiff owned the subject mark in October 2008.

**D.      Separately, Defendants are entitled to attorney's fees and non-taxable costs as the prevailing parties in Plaintiff's FDUTPA claim.**

In Count VIII of its Amended Complaint, Plaintiff raised claims against both Defendants for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") under Fla. Stat. § 501.204. *See* Am. Compl. (DE 310) at pp. 11–12. Plaintiff sought an award of its reasonable attorney's fees under FDUTPA. *See id.* at p. 15 (demanding an award of reasonable attorney's fees and costs under "Florida law").

Plaintiff's FDUTPA claim was based upon Defendants allegedly infringing on Plaintiff's trademark, "creating a likelihood of public confusion as to the source of Defendants' … services," and "represent[ing] to customers that they have a right to render [ ] services under the [ ] mark." *Id.* at ¶¶ 74–75.

Defendants are the prevailing parties on Plaintiff's FDUTPA claim. *See* Jury Verdict (DE 365) at p. 3 (finding that Plaintiff did not prove its claim for violation of FDUTPA).

Under FDUTPA, "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party," and "[t]he trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case." Fla. Stat. § 501.2105.

The deadline for Plaintiff to appeal the Final Judgment was January 30, 2023. Plaintiff did not appeal. Therefore, Defendants are now entitled to their reasonable attorney's fees and costs under FDUTPA.

"[T]he fees recoverable under FDUTPA are those relating to the entire action, 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'" *Chow v. Chak Yam Chau*, 640 Fed. Appx. 834, 843 (11th Cir. 2015); *Temurian v. Piccolo*, 18-62737-CIV, 2021 WL 1121003, at \*3 (S.D. Fla. Mar. 24, 2021) ("Defendants, as prevailing parties on their FDUTPA claim, are entitled to an award of attorneys' fees up until the time the FDUTPA claim was no longer applicable.").

## II.    Defendants' Reasonable Attorney's Fees.

Courts in the Eleventh Circuit follow the "lodestar" method to determining reasonable attorney fees. "[A] reasonable attorney's fee is calculated using the 'lodestar' method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. … The 'reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.' … In establishing a reasonable hourly rate, the court may consider certain factors, and rely on its own expertise." *Domond v. PeopleNetwork APS*, 750 Fed. Appx. 844, 847-848 (11th Cir. Sep. 20, 2018).

### A.    The identity, experience, and qualifications for each timekeeper for whom fees are sought.

***Victor M. Velarde, Esq.:*** The undersigned is a Shareholder in the firm Fowler White Burnett, P.A. (the "Firm") and was the lead attorney primarily responsible for this litigation. The undersigned has been practicing civil, commercial, and intellectual property litigation since September 24, 2013 when he was admitted to the Florida Bar (i.e., a little over nine years). The undersigned also graduated *magna cum laude* from the University of Miami School of Law. In total, Defendants are seeking reimbursement of 558.60 hours of the undersigned's time.[4]

---

[4] Defendants are not seeking reimbursement for 72.50 hours of the undersigned's time.

*Juan C. Zorrilla, Esq.:* Attorney Zorrilla been a member in good standing of the Florida Bar since November 23, 1983 and is a Shareholder of the Firm. Attorney Zorrilla has almost forty years of litigation experience. In total, Defendants are seeking reimbursement of 67.90 hours of Attorney Zorrilla's time.

*Lauren N. Alvarez, Esq.:* Attorney Alvarez joined the Firm in 2019 as a Law Clerk and became an Associate Attorney of the Firm when she was admitted into the Florida Bar on March 20, 2021. Attorney Alvarez graduated *magna cum laude* from the University of Miami School of Law. Defendants are seeking reimbursement of 170.85 hours of Attorney Alvarez's time expended as an attorney and 112.91 hours expended on attorney-level work as a law clerk.

*Joseph R. Englander, Esq.:* Attorney Englander is a Shareholder of the Firm and has been practicing intellectual property law (including litigation of trademark and patent disputes) for more than 30 years. In total, Defendants are seeking reimbursement of only 14.50 hours of Attorney Englander's time.

*Esther E. Galicia, Esq.:* Attorney Galicia is a Shareholder of the Firm with 37 years of litigation and appellate experience. Attorney Galicia provided assistance in this case in the form of legal research in preparation for the trial. In total, Defendants are seeking reimbursement of only 4.50 hours of Attorney Galicia's time.

*Vanessa Brizo, Esq.:* Attorney Brizo is an Associate Attorney of the Firm. She was admitted to the Florida Bar on June 5, 2014 and has more than eight years of litigation experience. Attorney Brizo provided assistance in this case in preparation for the trial. In total, Defendants are seeking reimbursement of only 3.10 hours of Attorney Brizo's time.

*Matthew Shalna:* Mr. Shalna is a Law Clerk of the Firm. He performed attorney-level work on this case. In total, Defendants are seeking 49.85 hours of Mr. Shalna's time.

**B.      The number of hours reasonably expended by each timekeeper.**

In total, Defendants' counsel have dedicated 978.71 hours in this case. A lot of that time was expended as a result of Plaintiff's refusals to confer, refusals to comply with Court Orders, sharp litigation tactics, and misconduct (explained above).

The hours expended and a description of each task done during those hours is set forth in detail in Exhibit "1" hereto (along with the underlying invoices).

Below is a summary of the timekeepers and hours expended:

| Timekeeper | Hours |
|---|---|
| Victor M. Velarde, Esq. | 558.60 |
| Juan C. Zorrilla, Esq. | 67.90 |
| Lauren N. Alvarez, Esq. | 170.85 |
| Joseph R. Englander, Esq. | 14.50 |
| Esther E. Galicia, Esq. | 4.50 |
| Vanessa Brizo, Esq. | 3.10 |
| Lauren N. Alvarez (Law Clerk) | 112.91 |
| Matthew Shalna (Law Clerk) | 49.85 |
| **Total** | **982.21** |

**C.      The hourly rates claimed for each timekeeper.**

As a result of the long-standing relationship between Defendants and the undersigned's law firm, the undersigned's law firm agreed to significantly reduce the hourly rates charged to Defendants.

As shown above, the undersigned's hourly rate for this case was significantly reduced to only $210.00. Similarly, Juan C. Zorrilla, Esq. is an attorney with almost 40 years of litigation experience, but he billed an hourly rate of only $400.00. Also, Joseph R. Englander, Esq. is an attorney with more than 30 years of experience who specializes in trademark/patent law, but he also billed at an hourly rate of only $400.00. And Esther Galicia, Esq. is an attorney with 37 years of litigation experience, but she billed at an hourly rate of only $400.00. The associate attorneys

who contributed to this case (i.e., Lauren N. Alvarez, Esq.; Vanessa Brizo, Esq.; and Chloe M. Horton, Esq.)[5] also billed at significantly reduced hourly rates of between $200.00 and $210.00. And the Law Clerk who performed attorney-level work in this case billed at a rate of $175.00.

The reduced hourly rates set forth above are significantly below the market based upon the attorneys' respective experience, skill, and reputation.

The Eleventh Circuit has held that "the agreed-upon fee rate does not necessarily act as a cap or ceiling in determining the reasonable hourly rate. Instead, as the magistrate judge correctly noted, an agreed-upon rate is relevant evidence to determine the fee rate, but it is not necessarily determinative." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) (awarding a higher hourly rate than was charged by the attorneys to the party); *see also City of Huntsville v. Proliance Energy, LLC*, CV-02-HS-1296-NE, 2005 WL 8158017, at *1 (N.D. Ala. July 1, 2005) ("[T]he court must reject the defendants' argument that the court is prohibited from awarding more than the plaintiff's contract-rate. Instead, the court must issue an award that provides 'the reasonable worth of services rendered.' The only limitation ... is that the rate the court awards must not result in a 'windfall for the prevailing party.'").

Rather, the reasonable hourly rate to be awarded "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Moreover, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.*

---

[5] Defendants have voluntarily chosen not to seek reimbursement for the time expended by Attorney Horton.

Defendants respectfully submit that the following hourly rates are reasonable, well in line with (and even below) the market rates, and should be awarded:

(i)   $350.00 for the undersigned's time;

(ii)  $500.00 for Juan C. Zorrilla, Esq.'s, Joseph R. Englander, Esq.'s, and Esther E. Galicia, Esq.'s time;

(iii) $250.00 for Vanessa Brizo, Esq.'s time;

(iv)  $230.00 for Lauren N. Alvarez, Esq.'s time; and

(v)   $200.00 for the time of the Law Clerks (Matthew Shalna and Lauren N. Alvarez before admission to the Florida Bar).

*See CBRE, Inc. v. Capital Commercial Real Estate Group, Inc.*, 19-61235-CIV, 2019 WL 7708503, at *2 (S.D. Fla. Oct. 10, 2019), *report and recommendation adopted*, 19-CIV-61235-RAR, 2019 WL 7708499 (S.D. Fla. Oct. 28, 2019) (holding that the following rates were reasonable in a trademark infringement case: $360.00 for "an associate … [who] has practiced since 2013"; $350.00 for an "associate in the firm who has been practicing law for 5 years"; $185.00 for "a paralegal with the firm since 2014"); *Tobinick v. Novella*, 14-80781-CV, 2018 WL 6978637, at *5 (S.D. Fla. Nov. 20, 2018), *report and recommendation adopted*, 9:14-CV-80781, 2018 WL 6978629 (S.D. Fla. Dec. 6, 2018) (awarding the following hourly rates in a trademark case: $325.00 for "an associate attorney … [who] has been practicing for four years"; and $400.00 for "a partner … [who] has been practicing for eleven years"); *see also Domond v. PeopleNetwork APS*, 750 Fed. Appx. 844, 848 (11th Cir. 2018) (finding that "Miami rates … included an average partner rate of $655").

Moreover, the American Intellectual Property Law Association ("AIPLA") publishes a bi-annual economic survey that estimates the attorneys' fees and costs for federal trademark litigation. Federal Courts routinely rely on the AIPLA survey in assessing whether the amount of attorneys' fees claimed is reasonable. *See Pelc v. Nowak*, 8:11-CV-79-T-17TGW, 2013 WL

3771233, at *4 (M.D. Fla. July 17, 2013), *aff'd*, 596 Fed. Appx. 768 (11th Cir. 2015); *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enterprises, Inc. (U.S.A.)*, CV 08-7587 R JWJX, 2009 WL 9137315, at *3 (C.D. Cal. Dec. 14, 2009) ("In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ('AIPLA') economic survey results published every other year."); *T&M Inventions, LLC v. Acuity Brands Lighting, Inc.*, 2016 U.S. Dist. LEXIS 178767, at *2-3 (E.D. Wis. Dec. 27, 2016) ("Courts in this circuit have routinely relied on the American Intellectual Property Law Association (AIPLA) survey to determine the reasonableness of requested fees.").

According to the 2021 AIPLA survey, a federal trademark litigation (***not including trial***) with an amount in controversy of between $1 million and $10 million has a nationwide mean "total cost" of $514,000.00. *See* 2021 AIPLA Survey (Exhibit "2" hereto) at p. 21. If the cost of trial is included in the calculation (as well as appeal where applicable), the mean "total cost" for a trademark infringement litigation with an amount in controversy of between $1 million and $10 million increases to $892,000.00. *Id.* at p. 22.

Additionally, the AIPLA survey provides that the "minimum billing rate" for an attorney (i.e., a first-year associate) in the southeast region of the county is between $276.00 and $325.00. *See id.* at p. 33. And the "maximum billing rate" for the same region is between $549.00 and $605.00. *Id.*

Defendants, therefore, respectfully request that they be awarded fees based upon the reasonable hourly rates set forth above.

Applying the requested reasonable rates, Defendants' request an award of reasonable attorney's fees of $311,582.50 as follows:

| Timekeeper | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Victor M. Velarde, Esq. | 558.60 | $350.00 | $ 195,510.00 |
| Juan C. Zorrilla, Esq. | 67.90 | $500.00 | $ 33,950.00 |
| Lauren N. Alvarez, Esq. | 170.85 | $230.00 | $ 39,295.50 |
| Joseph R. Englander, Esq. | 14.50 | $500.00 | $ 7,250.00 |
| Esther E. Galicia, Esq. | 4.50 | $500.00 | $ 2,250.00 |
| Vanessa Brizo, Esq. | 3.10 | $250.00 | $ 775.00 |
| Lauren N. Alvarez (Law Clerk) | 112.91 | $200.00 | $ 22,582.00 |
| Matthew Shalna (Law Clerk) | 49.85 | $200.00 | $ 9,970.00 |
| **Total** | **982.21** | | **$ 311,582.50** |

The total amount of $311,582.50 in attorneys' fees is reasonable, especially when compared to the AIPLA survey data (which provides for total costs of between $514,000.00 and $892,000.00 and hourly rates of $276.00 to 605.00) and the applicable case law above, and based on the work required to litigate this case (especially when multiplied by the meritless litigation positions, delay tactics, and extraordinary misconduct of Plaintiff).

Alternatively, Defendants would be entitled to an award of attorney's fees of $218,192.75 based upon the significantly reduced hourly rates as set forth below.

| Timekeeper | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Victor M. Velarde, Esq. | 558.60 | $ 210.00 | $ 117,306.00 |
| Juan C. Zorrilla, Esq. | 67.90 | $ 400.00 | $ 27,160.00 |
| Lauren N. Alvarez, Esq. | 283.76 | $ 200.00 | $ 56,752.00 |
| Joseph R. Englander, Esq. | 14.50 | $ 400.00 | $ 5,800.00 |
| Esther E. Galicia, Esq. | 4.50 | $ 400.00 | $ 1,800.00 |
| Vanessa Brizo, Esq. | 3.10 | $ 210.00 | $ 651.00 |
| Matthew Shalna | 49.85 | $ 175.00 | $ 8,723.75 |
| **Total** | **982.21** | | **$ 218,192.75** |

### III.    Defendants' Non-Taxable Costs.

Defendants incurred a total of $24,117.97 in non-taxable costs relating to this case. A spreadsheet detailing each of Defendants' non-taxable costs (along the respective invoices / receipts) is attached hereto as Exhibit "3."

"FDUTPA allows for the award of non-taxable costs, i.e. those costs that are not taxable under federal law at 28 U.S.C. § 1920." *Chow v. Chak Yam Chau*, 640 Fed. Appx. 834, 836 (11th Cir. 2015) (affirming the award to prevailing FDUTPA defendant of $182,992.12 in cost, of which $54,461.57 were non-taxable).

In brief, Defendants expended the following non-taxable costs: (i) $2,389.35 in deposition transcripts of witnesses in this case that were taken in other cases (but were used to prepare for trial in this case); (ii) $84.44 in long distance telephone calls; (iii) $14,094.24 in travel expenses (including travel/hotel of the undersigned to meet with Defendants and travel/hotel of Defendants and witness, Alfred Lutter, to attend trial); (iii) $76.80 in PACER charges; and (iv) $7,473.14 in Westlaw research charges. *See Burgos v. SunTrust Bank, N.A.*, 13-21197-CIV, 2020 WL 2299937, at *10 (S.D. Fla. Mar. 31, 2020), *report and recommendation adopted,* 13-21197-CIV, 2020 WL 2299936 (S.D. Fla. May 7, 2020) (awarding non-taxable costs to prevailing party in FDUTPA case, which costs "include[d] expenses related to photocopies, long distance telephone calls, postage, Westlaw charges, and document retrieval services").

### <u>CONCLUSION</u>

For the reasons set forth above, Defendants/Counter-Plaintiffs Unisource Discovery LLC and Steven A. Cerasale respectfully request an award of attorney's fees in the amount of $311,582.50 and non-taxable costs in the amount of $24,117.97 against Plaintiff Unisource Discovery Inc. and for such further relief as the Court deems just and appropriate under the circumstances.

## <u>VERIFICATION</u>

I declare under penalty of perjury that the foregoing facts are true and correct.

Executed on February 9, 2023.

_____

VICTOR M. VELARDE

## CERTIFICATE OF GOOD FAITH CONFERENCE

Prior to filing this Motion, Defendants' undersigned counsel attempted to confer with Plaintiff's counsel regarding the relief requested in this Motion, but has been unable to confer.

Specifically, on January 5, 2023 at 8:41 p.m., the undersigned emailed a complete draft of this Motion and a detailed spreadsheet setting forth the date, description, timekeeper, and hours for each time entry supporting this Motion. The undersigned also requested a date/time to confer.

Plaintiff's counsel did not respond.

On January 10, 2023 at 7:33 p.m., the undersigned again emailed Plaintiff's counsel requesting a time to confer. On January 11, 2023 at 9:43 a.m., Plaintiff's then-counsel Jesus Sanchelima, Esq., asked the undersigned to coordinate the conference with Plaintiff's other counsel Diego D. Valdes, Esq. The undersigned then again requested a conference with Plaintiff's counsel Attorney Valdes. Plaintiff's counsel again did not respond.

On January 26, 2023 at 4:58 p.m., the undersigned advised Plaintiff's counsel that their deadline to provide objections was January 26, 2023 under the Local Rule and asked about the status of their objections (if any). Plaintiff's counsel, Attorney Valdes, responded requesting an extension until January 31 and then another extension until February 7. The undersigned agreed.

February 7, 2023 came and went, and Plaintiff did not provide any response or objections to Defendants' time entries, hourly rates, or costs. Plaintiff's counsel also did not agree to confer.

On February 8, 2023 at 4:47 p.m., the undersigned again asked Plaintiff's counsel if Plaintiff had any objections. Plaintiff's counsel requested another extension until close of business on February 9, 2023. The undersigned then again requested a conferral with Plaintiff's counsel.

As with every other Motion or issue in this case, Plaintiff did not agree to confer. As of the time of this filing (i.e., after close of business on February 9, 2023), Plaintiff has not served any objection or response to the undersigned regarding the fees/costs requested herein.

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on February 9, 2023, on all counsel or parties of record on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde

| SERVICE LIST | |
|---|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* **Case No. 20-CIV-23276-DPG** | |
| Diego David Valdes, Esq. Fla. Bar No. 251010 Diego David Valdes, P.A. 2350 Coral Way, Suite 403B Coral Gables, Florida 33145 Telephone: (305) 910-6602 Facsimile: (305) 513-5924 E-mail: ddvlaw@gmail.com  *Counsel for Plaintiff, Unisource Discovery, Inc.* | |