**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

    Plaintiff/Counter-defendant,

    v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

    Defendants/Counter-plaintiffs
_____

**PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE IN OPPOSITION TO DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [372-1,2,3] AND NUNC PRO TUNC MOTION TO EXTEND THE PAGE LIMIT PURSUANT TO LOCAL RULE 7.1**

Plaintiff/Counter-defendant, Unisource Discovery Inc. ("Counter-defendant") opposes the Counter-plaintiffs, Unisource Discovery LLC, Steven Cerasale, and Alfred Lutter ("Counter-plaintiffs") fee and cost request [DE 372-1,2,3]. The case presented straightforward trademark and cancellation of trademark claims which the Counter-plaintiffs prevailed after a jury trial.

Counter-plaintiffs seek compensation for 982.21 hours worked by six (6) lawyers and two (2) paralegals/pre-law clerks. The Counter-plaintiffs ask for $311,582.50 in attorneys' fees and non-taxable costs in the amount of $24,117.97 against Plaintiff Unisource Discovery Inc. Apart from the numerous issues in the Counter-plaintiffs' submission, the expenditure of so much time on this straightforward case is unreasonable. Because of the defects in the Counter-plaintiffs' submission, a fee within the range $230,000-$250,000 is reasonable. Notwithstanding that plaintiffs failed to show "exceptionality", the Court should otherwise deny/grant, in part, their request for costs and expenses since the Counter-plaintiffs have *across-the-board* failed to show how all of those charges were necessary for the case and not for the lawyers' convenience.

1

## **ARGUMENT**

As appropriate here, there is prologue from a recent Eleventh Circuit trademark infringement and cancellation case that states, "Courts, unlike the NFL, are not in the business of declaring winners; they are in the business of settling legal disputes. And, sometimes, legal disputes do not have a clear winner (in legalese, a "prevailing party"). As such, courts are not required to declare a winner—or a "prevailing party"—in every case." *Royal Palm Props. v. Pink Palm Props.*, 38 F.4th 1372 (11th Cir. 2022)(The Eleventh Circuit held that does not require a court to name a winner)

### A. **The Counter-plaintiffs Did Not Show "Exceptionality" Of Their Case By A Preponderance Of The Evidence**

In their Motion, Counter-plaintiffs leverage a variety of "kitchen-sink" arguments to show exceptionality. However, because an exceptional case is "where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner …" the Counter-plaintiffs do not nearly meet the threshold. *Burger King v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.1994)

### i.      **Legal Standard For "Exceptionality" Under The Lanham Act**

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[T]o be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (*emphasis added*) (quoting *Octane Fitness, LLC v. ICON Health and Fitness*,         572         U.S.         545,         554         (2014)). Courts have fairly broad discretion in finding what constitutes an "exceptional case."

Courts are instructed to consider the "totality of the circumstances," and, "[a]s in the comparable context of the Copyright Act, '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations

we have identified.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)). However, even if a court determines that a case qualifies as exceptional, the ultimate decision to award fees "remains within the discretion of the trial court." *Tobinick*, 884 F.3d at 1118.

Counter-plaintiffs, as movants, have the burden of demonstrating the exceptionality of their case by a preponderance of the evidence. *See Peschke Map Techs. LLC v Miromar Dev. Corp*., 2017 WL 991481, at *2 (M.D. Fla. Mar. 15, 2017) (citing *Octane Fitness*, 572 U.S. at 557).

The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees "only in exceptional circumstances and on evidence of **fraud or bad faith**." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.,* 675 F.2d 1160, 1169 (11th Cir. 1982)(emphasis added).  The Eleventh Circuit later stated that the legislative history of the Lanham Act suggests that exceptional cases are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." *Tobinick*, 884 F.3d at (emphasis added).

Likewise, courts may consider a nonexclusive list of facts including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 572 U.S. at n.6 (quoting *Fogerty*, 510 U.S. at 534)

    ii.    **Counter-plaintiffs Primary Arguments That They Have An Exceptional Case**

Counter-defendant provides responses to Counter-plaintiffs arguments [DE 372 at 2, 3, 5, 6, 7, 8] that this is an exceptional case, *to wit*:

    aa.    **Counter-plaintiffs Argues, "Throughout this litigation, Plaintiff violated virtually every Court Order that required it to act"**

The crux of Counter-plaintiffs argument can be found in the opening paragraph,

> "Plaintiff's repeated violations of Court Orders led to no less than four Orders to Show Cause requiring Plaintiff to show cause why it should not be sanctioned, several Orders imposing sanctions against Plaintiff, and even

> more Orders compelling Plaintiff to comply with the Order imposing sanctions. See Orders to Show Cause (DE 21, 192, 254, and 276); see also Sanctions Orders (DE 40, 46, 118, 140, 168, 215")

[DE 372 at 3]

Clearly, Counter-plaintiffs did not cite "every" Court Order but two (2) Court Orders in violation. Therefore, Counter-plaintiffs claim that "Plaintiff violated virtually every Court Order that "required it to act" is inflated and merely an attempt to black-eye the losing party, Unisource Discovery Inc.

Specifically, Counter-plaintiffs discuss two Court orders that impose financial sanctions. First, the Court entered an Order for sanctions on December 17, 2020, because Counter-defendant's noncompliance with the Joint Scheduling Report and not a litigation matter. [DE 40] Second, the Court granted in part, and denied in part, Counter-plaintiffs motion for sanctions. Here, the Court entered financial sanctions against Counter-defendant on July 22, 2021, for Rule 37 scheduling matters. [DE 140].

Counter-defendant is unclear how two court violations would demonstrate its failure to present "a scintilla of evidence" on materiality or reliance and that, without more, that rose to the level of an exceptional case. *See Tire Kingdom, Inc.*, 253 F.3d at 1336.

Likewise, Counter-plaintiffs do not cite one case to support their position that a violation of two Court orders, regardless of the type of Court Order and severity, amounts to exceptionality – especially since Counter-defendants made their best effort to satisfy ALL Court orders (and one Order was a joint scheduling matter) during the pendency of a rather long case. Either Counter-plaintiffs were not materially injured by these violations, or were compensated and made whole at that time. In fact, the complexity of the legal issues, the amount of evidence, length of the case, the closeness of the parties, the notoriety of the trademark, and contentious nature of the dispute, there is no Court Order found in the docket (including those cited by Counter-plaintiffs) were the Court

held that Counter-defendant's litigation conduct was frivolousness, motivation, objective [and] unreasonableness …" *Id.*

To the contrary, and regardless of the jury's decision and/or two sanction awards, Counter-defendant showed continued attempts to comply with all Orders in the several years this case was pending. When sanctions were awarded Counter-defendant financially compensated Counter-plaintiffs at that time and in compliance with the Court's Orders. **Reasonably speaking, it would be prejudicial because Counter-defendant would be double-punished for the same court violations (Counter-defendant paid Counter-plaintiffs the awarded amounts and made them whole) and the Counter-plaintiffs would receive double-recovery for the same occurrences if the Court now uses these violations towards any finding of exceptionality – somewhat akin to Florida's independent tort doctrine**. *Perez v. Scottsdale Ins. Co.*, 2019 WL 5457746 (S.D. Fla. Oct. 24, 2019). (this doctrine "prohibits claims in tort for damages, which are the same as for breach of contract so prevent plaintiffs from recovering duplicative damages for the same wrongdoing.")

On this basis, Counter-plaintiffs did not show it was an "exceptional case" pursuant to *Octane Fitness LLC, Safeway Stores, Inc., Tobinick, Tire Kingdom, Inc.* and *Burger King*.

        bb. **Counter-plaintiffs Arguments that, "Plaintiff also filed and—despite having the opportunity to withdraw— insisted on prosecuting frivolous motions for sanctions" and "Plaintiff also repeatedly attempted to add a non-party to this litigation (i.e., Equicopy Inc.) for baseless reasons"**

Counter-plaintiffs assert that Counter-defendant advanced <u>frivolous</u> motions for sanctions. [DE 372 at 6] However, Counter-plaintiffs legal conclusion that a claim/motion is frivolous is a legal conclusion reserved exclusively to the Court. *Gomez v. City of Miami Beach*, 2012 WL 12948518, at *1 (S.D. Fla. Mar. 2, 2012) (precluding defendants' experts from testifying that plaintiff's claims are "frivolous" or "have no merit"); *Jones v. Int'l Riding Helmets*, Ltd., 49 F.3d

692, 694-95 (11th Cir. 1995)("focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney **at the time of filing**,")(emphasis added)

In this context, the undersigned finds no Court order(s) in the docket that makes a finding that Counter-defendant was "frivolous" with any moving paper and "at the time of filing". *Id.* And ironically, in their Motion For Attorneys' Fees [DE 372] Counter-plaintiffs admits that the Court never entered any findings against Counter-defendant that its filing(s) was "frivolous" when arguing, "The Court **denied** Plaintiff's Motion for Sanctions. See Order (DE 84)." [DE 372 at 7] (emphasis added)  Simply put, it is safe to assert the parties would all agree that a denial of a motion in itself does not equate to a "frivolous" filing(s).

Also, Counter-plaintiffs argue that "Plaintiff also repeatedly attempted to add a non-party to this litigation  (i.e., Equicopy Inc.) for baseless reasons". Stated another way, Counter-plaintiffs are really arguing that this effort was "frivolous."  But again, frivolous is a legal conclusion reserved exclusively to the Court and at the time of filing. *Id.* The Court simply denied Counter-defendant's effort to add Equicopy as a Defendant and did not enter a finding that Counter-defendant was "frivolous" because there was indeed a strong basis to add Equicopy as a defendant (Counter-defendant asserted the Equicopy was also being used to confuse clients with Unisource Discovery LLC – both entities are owned by Counter-plaintiff Steven Cerasale).

Plainly, these arguments do not satisfy the criteria for an "exceptional case" pursuant to *Octane Fitness LLC, Safeway Stores, Inc., Tobinick, Tire Kingdom, Inc.* and *Burger King*

       cc.   **Counter-plaintiffs claim that "Plaintiff also violated the Court's Order in Limine during the trial"**

Counter-plaintiffs make an exceptionally unclear argument that,

> "During trial, Plaintiff violated the Order in Limine (DE 266) not only during its presentation of evidence (i.e., introducing testimony and documentary evidence of the "underlying dispute" with Alfred Lutter in April 2010, which the Court's Order barred) but also made reference to such barred evidence during Plaintiff's opening statement. Separately, Plaintiff (through counsel) also disingenuously suggested

6

before the jury that Defendants had refused to produce documents in discovery that Plaintiff had, in reality, not requested or pursued in discovery."

[DE 372 at 8]

It is well understood the trial counsel can seek to exclude improper arguments or improper conduct of opposing counsel, parties, or witnesses. It is also well understood to preserve allegations of improper arguments or conduct on appeal, a timely objection must be made to bring the trial court's attention to the alleged error. *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1540 n.1 (11th Cir. 1989).

Also, if Counter-defendant's legal counsel "… made reference to such barred evidence …" to minimize any allege damage (there was no damage because Counter-plaintiffs prevailed) stemming from such arguments or conduct, Counter-plaintiffs trial counsel could have moved for a mistrial and/or seek a curative instruction for the jury. *Id.*

However, Counter-plaintiffs does not reference in their Motion that they objected and/or moved for mistrial/seek curative instructions. Counter-plaintiffs also do not provide a trial transcript except showing this occurred as they describe. Candidly, it is difficult to understand Counter-plaintiffs legal basis for this argument because it appears that "if" Counter-defendant's  legal counsel  accidentally  "… made reference to such barred evidence …" an objection would have resolved this matter, and if not, then a mistrial or curative instructions.  However, if it happened this trial matter does not raise to the level of "exceptionality" under prevailing case law; especially when it is not clear that Counter-plaintiffs preserved their objection at trial and unclear what exactly occurred other than Counter-plaintiffs description.

In this context, Counter-plaintiffs arguments  does not fit within the ambit of "exceptional case" pursuant to *Octane Fitness LLC, Safeway Stores, Inc., Tobinick, Tire Kingdom, Inc.* and *Burger King*

    dd.  **Counter-plaintiffs Arguments: (a) "In addition to Plaintiff's extraordinary misconduct and unreasonable litigation practices, this case is 'exceptional'**

**because of the weakness in Plaintiff's substantive case; (b) "Plaintiff has been unsuccessful on essentially every substantive motion that was filed in this case" and (c) "Plaintiff litigated this case in an extraordinarily unreasonable manner"**

Here, Counter-plaintiffs argue that the Court must impose a "weakness" standard in order to prove that a case is exceptional. However, that is not the standard.

In *Octane Fitness*, the Supreme Court made clear that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," and that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." 134 S. Ct. at 1756

Counter-defendant's case certainly does not stand-out from the others. Here, there was a provision in the controlling 2010 Close Corporation Agreement related to the transferring ownership of the trademark to Counter-defendant that apparently was open to two interpretations. Counter-defendant has been using the trademark for over 15 years and the party that registered the Mark with the United States Patent and Trademark Office – not Counter-plaintiffs. Prior to filing its complaint, Counter-defendant attempted to avoid litigation on numerous occasions when serving Counter-plaintiffs with cease-and-desist letters. Counter-defendant did experience actual client confusion and incurred actual damages. During the litigation, the parties were applying widely used and well-known statutes and case law – nothing too complex. In this context, Counter-defendant made a reasonable and good faith legal assessment of the controlling agreements between the parties, the facts surrounding registration and infringement, the law, and elected to advance their trademark claim against Counter-plaintiffs given the overriding fiduciary duty to protect Unisource Discovery Inc. *see* F.S. §607.0830(2)(authorizes directors to rely on information, opinions, and reports provided by corporate officers and employees and legal counsel, public accountant, and

other experts, so long as the directors reasonably and in good faith believe them to be reliable and competent.)

Likewise, the Court docket does not contain any Court Orders that support Counter-plaintiffs assertion that Counter-defendant exhibited " … extraordinary misconduct and unreasonable litigation practices …". *Id*.  This is mere argument and opinion.  But if that was the case, Counter-plaintiffs would have moved to strike Counter-defendant's complaint as a sham pleading, or moved for summary judgement on this basis, or moved to dismiss the case, and the Court would have granted these motions if the conduct was indeed "extraordinary".  *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018)(the Court found a case was "unusually weak" because a nonjudicial panel in another dispute between the two parties had first concluded that BP.com used the marks first and plaintiffs issued threats against the opposing party, demanded licensing fees to settle the case, and even accused the district court of conspiring to help the defendant when the case was appealed).

Counter-plaintiffs also argues that "Plaintiff, however, admitted under oath in an affidavit that it "had full rights under implied license to use the name and logo" when Plaintiff submitted the trademark registration application in October 2008. See Plaintiff's Affidavit (DE 366-29) at ¶ 10."

Unfortunately, this affidavit contains a typographical error that materially changed its meaning – it was supposed to provide testimony that Counter-plaintiffs did "NOT" have a license. In fact, there are other filings (judicial admissions) in the Court record whereas Counter-defendant argues it never had a license.  However, Counter-defendant's legal counsel during the trial, Mr. Sanchelima, Esq. failed to provide arguments that the affidavit contains a major typographical error that changes its meaning. That is, when this affidavit was placed on projector screen and enlarged to the jury, for reasons unknown Mr. Sanchelima, Esq. decided not to examine the document, cross examine and examine witnesses, and left this faulty affidavit with an error to the jury "as-is".  For this reason, and because Counter-defendant never had an implied license and there are several

9

judicial admissions in the Counter-defendant's filings asserting that it does not have a license, Counter-defendant's conduct was not unreasonable leading to trial.

In light of Counter-defendant's reasonable legal position for infringement, whether [or not] all or some of their motion(s) were granted is unquestionably not the barometer used to evaluate exceptionally under prevailing law.

Likewise, a jury disagreeing with Counter-defendant's contract interpretation does not connote "extraordinary misconduct" in the world of trials and certainly does not "stand out from others …" *see Tobinick*, 884 F.3d at 1118.

Similar to Counter-plaintiffs other arguments in it Motion, this argument does satisfy the criteria for an "exceptional case" pursuant to *Octane Fitness LLC, Safeway Stores, Inc., Tobinick, Tire Kingdom, Inc.* and *Burger King.*

ee. **Counter-plaintiffs Allegation that, "Separately, Defendants are entitled to attorney's fees and non-taxable costs as the prevailing parties in Plaintiff's FDUTPA claim**."

Counter-plaintiffs seek fees pursuant to the prevailing party provision under FDUTPA. This is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. § 501.202(2). "A consumer claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (citation omitted

Under FDUTPA, courts have the discretion to grant fees and costs to a prevailing party. *See* Fla Stat. § 501.2105(1) (stating that a prevailing party "may receive [its] reasonable attorney's fees and costs from the nonprevailing party"); Fla. Stat. § 501.2105(3) ("The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit."). In *Humane Society of Broward*

*County*, the Fourth District enumerated seven factors that a court may consider in determining whether to exercise that discretion: (1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law. 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007).

If a party is entitled to fees and costs, FDUTPA also allows for the recovery of taxable and non-taxable costs. *See Chow v. Chak Yam Chau,* 640 F. App'x 834, 836 n.4 (11th Cir. 2015) ("In addition to [an] award of taxable costs, FDUTPA allows for the award of non-taxable costs, i.e., those costs that are not taxable under federal law at 28 U.S.C. § 1920.") (citing Fla. Stat. § 501.2105(1)-(4)). Therefore, unless otherwise prohibited, "[a] prevailing party may recover costs as a matter of course," and "the losing party bears the burden of demonstrating that a cost is not taxable, unless knowledge regarding the proposed cost is within the exclusive control of the prevailing party." *Monelus v. Tocodrian,* Inc., 609 F. Supp. 2d 1328, 1332-33 (S.D. Fla. 2009) (citations omitted)

Clearly, Counter-defendant has no option but concede that Counter-plaintiffs are the *prevailing party and concedes it has not filed any appeals to stay the Court's ruling. Likewise,* "judgment" in "civil litigation" refers to the entire case containing a FDUTPA claim, such that the "prevailing party" must obtain a favorable judgment in the entire case, not just on the FDUTPA claim, in order to recover FDUPTA attorney's fees. *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 270 (Fla. 1st DCA 1985)).

Because Counter-plaintiffs prevailed on their claims Counter-defendant does not dispute entitlement under FDUPTA; however, because they are mutually exclusive, in no manner does

11

granting attorneys' fees in-connection with FDUPTA satisfy the "exceptionality" requirement under The Lanham Act. *See* 15 U.S.C. § 1117(a) or any other claims.

### 2. Counter-plaintiffs Requested Attorneys Fees

Even though Counter-plaintiffs did not show "exceptionality" and entitlement of attorney's fees under The Lanham Act, Counter-defendant will address the reasonableness of the requested attorney's fees.

In determining an appropriate fee award, The Eleventh Circuit employs the lodestar method and established a strong presumption that the lodestar represents the reasonable' fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983) If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.*

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin*, 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman,* 836 F.2d at 1302.

Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304. In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.*, 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness."). An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he Norman Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens*, 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

(1)  **The Reasonable Hourly Rate**

Counter-defendant's first step is to address the reasonable hourly rate. This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir. 1994) (quoting Norman, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427.

Applicable, the relevant legal community is South Florida. Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc*. 488 F.2d 714, 717-719 (5th Cir. 1974). The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the

13

requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting Norman, 836 F.2d at 1303).[1]

>     a.   <u>Victor M. Velarde, Esq</u>.

Counter-plaintiffs requests an hourly rate of $350.00 for their legal counsel, Victor M. Velarde, Esq, an attorney working for the law firm of Fowler White Burnett who has been admitted to the Florida Bar since 2013. When describing Mr. Velarde's nine-years of legal experience, Counter-plaintiffs did not identify any similar and/or historical trademark experience -- whether ligation experience and/or trial experience -- when disclosing Mr. Velarde's "… has been practicing civil, commercial, and intellectual property litigation …".

However, Counter-defendant does not oppose Counter-plaintiffs requested fee of $350.00 for Mr. Velarde, which accurately reflects the prevailing rate in our South Florida market for an attorney having little or no trademark experience and nine years of legal experience in Florida.

---

[1] The 12 *Johnson* factors are as follows:
>     (1) the time and labor required;
>     (2) the novelty and difficulty of the questions;
>     (3) the skill requisite to perform the legal service properly;
>     (4) the preclusion of other employment;
>     (5) the customary fee;
>     (6) whether the fee is fixed or contingent;
>     (7) the time limitations imposed by the client or circumstances;
>     (8) the amount involved and the results obtained;
>     (9) the experience, reputation, and ability of the attorneys;
>     (10) the undesirability of the case;
>     (11) the nature and length of the professional relationship with the client; and
>     (12) the awards in similar cases.

*See Johnson*, 488 F.2d at 717-719.

Exercising the Court's expertise in awarding attorney's fees in similar cases, together with a review of the record and little supporting materials attached to the motion, the Court should find that a $350.00 hourly rate is a reasonable rate for Counter-plaintiffs' legal counsel, Mr. Velarde.

      b.  <u>Juan C. Zorrilla, Esq</u>.

According to Counter-plaintiffs Motion, Mr. Zorrilla has 40 years of general litigation experience. Counter-defendant cannot find any information relating to his experience in trademark law. He was billed at $500.00 per hour.

Given Mr. Zorrilla's lack of trademark experience, Counter-defendant will object to Counter-plaintiffs requested fee and believe that $500.00 inaccurately reflects the prevailing rate in our South Florida market for an attorney having 40 years of general litigation experience and without trademark experience. Understanding that the Court is deemed an expert on the issue of hourly rates, Counter-defendant believes an hourly rate of $400.00 is reasonable and proper. *Lee v. American Eagle Airlines Inc*., 93 F. Supp. 2d 1322 (S.D. Fla. 2000)(A lawyer should not be paid premium rates when the lawyer is litigating outside the scope of his experience); *Tobin v. Haverford School*, 936 F. Supp. 284, 292 (E.D. Pa. 1996) (20-year lawyer without experience in field not entitled to top rate)

      c.  <u>Vanessa Brizo, Esq</u>.

As for Ms. Vanessa Brizo, Esq., it appears that The Florida Bar has an error related to her Bar admission date. It provides a date of "06/05/<u>2014</u>". Counter-defendant will presume The Florida Bar meant June 5, 2022. Counter-plaintiffs are requesting are hourly rate of 250.00 per hour when Vanessa Brizo, Esq. only has approximately eight months of experience.

Counter-defendant does not oppose her hourly rate of $250.00.

      d.  <u>Joseph R. Englander, Esq</u>.

Mr. Englander has approximately 30 years of experience and Counter-defendant confirmed that he specializes in trademark/patent law. He was billed at an hourly rate of $500.00. Counter-defendant does not oppose his $500 hourly rate given his notable trademark experience.

e. <u>Esther E. Galicia, Esq</u>**.**

Apparently, Ms. Galicia, Esq. is an attorney with 37 years of significant <u>appellate court experience</u> according to the Fowler White Burnett website.  In this case, Counter-defendant never filed an appeal (whether interlocutory or post-trial), and Counter-plaintiffs provides no information or affidavit that explains to how Ms. Garcia's appellate court experience was reasonably applied to a trademark dispute.

On this basis, Counter-defendants must oppose Ms. Garcia, Esq. $500.00 hourly rate for a trademark case when it appears she has little litigation and trademark experience.  Given Ms. Garcia's apparent lack of trademark experience and litigation/trial experience, and understanding that the Court is deemed an expert on the issue of hourly rates, Counter-defendant believes that $400.00 per hour accurately reflects the prevailing rate in our South Florida market for an attorney with little to no litigation and trademark experience in Florida. *Id.*;  *Storfer v. Guarantee Trust Life Insurance Co*., 2011 WL 213461 (S.D. Fla. 2011) ($315/hour awarded to attorney with 26 years' experience but none in the subject area of the case);

f. <u>Matthew Shalna $200.00 and Lauren N. Alvarez (pre-bar law clerks)</u>

Counter-defendant does not oppose the 200.00 per hour rate for Matthew Shalna and Lauren N. Alvarez.

(2) **The Counter-plaintiffs Overlawyered The Case And Unreasonably Inflated The Number Of Compensable Hours**

Although it may be reasonable for a client to pay to overstaff a case, that does not mean it is reasonable for the court to impose that cost on a defeated litigant. *In re North*, 59 F.3d 184, 193 (D.C. Cir. 1995). This case presents a classic example of big firm overstaffing that generated a total

number of hours out of all proportion to what was reasonably necessary to litigate this case to judgment.

Compensation for multiple attorneys should be denied when the same act is performed by more than one lawyer. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983). "The problem of duplication of hours is frequently encountered in cases of multiple representation because too many attorneys (all billing their time) are present at meetings, hearings and depositions…" *Jane L. v. Bangerter*, 828 F. Supp. 1544, 1549 (D. Utah 1993) rev'd on other grounds, 62 F.3d 1505 (10th Cir. 1995)2 ; *Schlacher v. Law Office of Phillip J. Rotche & Associates PC,* 574 F.3d 852, 859 (7th Cir. 2009) ("overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees"), *U.S. v. One Star Class Sloop Sailboat*, 546 F.3d 26 (1st Cir. 2008) (overstaffing a familiar problem in cases where fee-shifting is a prospect). Duplication inevitably occurs when plaintiffs' lawyers hold conferences, call each other on the phone, write each other letters and memoranda, or when several plaintiffs' lawyers bill for reading the same document received from the defendants or the court. *See Sklar v. Clough*, 2008 WL 5381961 at 2 (N.D. Ga. 2008).

The courts must closely scrutinize fee petitions involving billings by multiple lawyers, and the level of scrutiny should increase with the number of lawyers involved. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001); *Pearson v. Fair*, 980 F.2d 37, 47 (1st Cir. 1992) (15 billing lawyers was "an unreasonable number of lawyers. Courts 'should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.'"); *Kansas Judicial Watch v. Stout*, 2012 WL 1033634 (D. Kan. 2012) (12 billers unreasonable).

Staffing a case with so many lawyers usually result in requests to compensate the lawyers for doubling the research, conferring with each other, doubling PACER expenses etc.

Here, Counter-plaintiffs using six attorneys and two pre-bar law clerks is by itself clearly excessive. *Pearson v. Fair*, 980 F.2d 37, 47 (1st Cir. 1992) (15 billing lawyers was "an unreasonable number of lawyers. Courts 'should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.'"); Kansas Judicial Watch v. Stout, 2012 WL 1033634 (D. Kan. 2012) (12 billers unreasonable).

Counter-defendant has identified many hours that are unreasonable and excessive on specific matters. There is a total of 225.7 hours of more than two attorneys working the same case matter (or similar) and/or doubling-up on the similar work such as research. [DE 372-1 at 110, 120, 125]

For instance, the Counter-plaintiffs expended 14.90 hours for what appears to be doubling their research efforts. The following is an example:

**Summary of Timekeeper Fees**

| Timekeeper | Hours | Rate/Hour | Dollars |
|---|---|---|---|
| Joseph R. Englander (JRE) | 8.20 | 400.00 | 3,280.00 |
| Vanessa Brizo (VB) | 0.60 | 210.00 | 126.00 |
| Victor M. Velarde (VMV) | 6.10 | 210.00 | 1,281.00 |
| TOTAL | 14.90 | $ | 4,687.00 |

[DE 372-1 at 125]

Using this example, it appears there was three attorning expending a total of 14.90 hour on the same or similar research and addressing similar legal matters. Such time was unreasonable and unnecessary and should not be compensated to the extent three attorneys were needed. *Sloan Valve Co. v. Zum Industries Inc*., 2012 WL 3716961 (N.D. Ill. 2012); *Coleman v. Shinseki,* 2012 WL 3101782 (Vet. App. 2012).

(3) **Reasonable Number of Hour Expended**

The next step of the lodestar analysis requires the Court to determine the reasonable number of hours expended. The award must exclude compensation for hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of

counsel. *American Civil Liberties Un. of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. Id. If the fee applicant fails to exercise required billing judgment, the Court is obligated to A[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary *Id*.

As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is perfectly proper to award attorney's fees based solely on affidavits in the record *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Here,  Counter-plaintiffs seeks to recover fees for a total of 978.71 hours litigating this case. There does not appear to be any actual reductions. Our review of the time records indicates that these time entries are excessive in part given that this was a single-plaintiff case involving straightforward trademark issues. Moreover, the time records submitted contain numerous entries that either bill excessively for the task at hand, reflect work done by Victor M. Velarde, Esq. that could have been accomplished by paralegals/law clerks, or fail to describe with sufficient particularity the activity billed for making it difficult to assess whether the activity was something that required the knowledge and experience of a lawyer.

The Counter-plaintiffs claim 89.79 hours for preparation for and taking part in the hearing on the motion for preliminary injunction. [DE 372-1 at 1-23] Notwithstanding that much of the work for opposing the injunction could have been done by law clerk (because the majority concerns research) and other work could have been completed by the two 1–3-year associates, this was excessive for a one-hour hearing that required only legal argument. *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009). The Counter-plaintiffs then seek compensation for six lawyers that either

attended the hearing, conferred or conducted research. However, only one lawyer argued, and compensation for more than two (2) attorneys is unreasonable. *Planned Parenthood of Cent. New Jersey v. Attorney General of New Jersey*, 297 F.3d 253 (3d Cir. 2002) (25 hours of preparing for a 30-minute hearing was excessive.); *Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001) (160 hours for oral argument preparation excessive; reduced to 24).

There are 41 court notices (for example, notice of hearing) drafted and reviewed by Victor M. Velarde, Esq. at a rate of $350.00 per hour. Clearly, an associate, paralegal or even law clerk should be drafting and filing these type of court notices.  These time entries should be reduced to the associate rate of $250.00 from the total hours.

Counter-plaintiff Steven Cerasale did not want to attend the trial in-person and motioned the Court to testify via Zoom/Remotely.  However, after Counter-plaintiffs first motion to appear via zoom was heard and then the trial was continued, Counter-plaintiffs did not renew their effort and Mr. Cerasale did physically appear at the trial.

Here, Mr. Velarde expended 7.5 hours (@ $350 per hour) researching and drafting motion(s) and reply(s) for Mr. Cerasale to attend the trial via Zoom/remotely. [372-1 at 26, 28]  All attorney fees generated in-connection with attending the trial via Zoom/remotely should not be charged Counter-defendant. *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002)(The court must ensure that the fee request does not compensate for "over litigation.");

(4) **Objection As To Specific Tasks And Time**

a. **Insufficient detail**

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999). Attorneys are required to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437. Fee applications must include contemporaneous records of time spent on a case and time sheets must be sufficiently detailed to

20

allow the court to assess whether hours were reasonably expended and necessary. Id. at 433; *Mannings v. School Board of Hillsborough County*, 851 F. Supp. 436, 443, 444 (M.D. Fla. 1994); *In re Donavan*, 877 F.2d 982, 994 (D.C. Cir. 1989). Attorneys "must submit a full and precise accounting of their time, including specific information about the number of hours, dates, and the nature of the work performed …" *Deary v. City of Gloucester*, 9 F.3d 191, 198 (1st Cir. 1993). Fee applicants must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D.Fla.1996) (quoting FMC Corp. v. Varonos, 892 F.2d 1308, 1317 (7th Cir.1990)). Time should be detailed enough to permit "meaningful review of whether particular hours were reasonably expended on this litigation." *League of United Latin American Citizens v. Roscoe*, 119 F.3d 1228, 1233 (5th Cir. 1997). Where hours are not documented sufficiently, awards may be reduced by the district court accordingly. *Hensley,* 461 U.S. at 433.

Counter-defendant has identified 36 out of 47 entries that do not sufficiently describe the nature of the attorneys "conferring" with each other so that the Court can determine whether the billing was directly and reasonably incurred in securing federal relief. Here, these time entries are vague because they do not identify the reason for the conferral and the matter *et al*. For example, in one time entry (all are identically worded depending on the attorney it is referencing) it simply shows "Confer with Attorney Velarde" and nothing more. [DE 372-1 at 1, 9, 11, 13, 14, 15, 16, 19, 20, 21, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33]

These vague time expense, considering the voluminous number of entries, should be eliminated in total. *Franklin v. Hartford Life Insurance Co*., 2010 WL 916682 at 3-4 (M.D. Fla. 2010) (finding "meetings," "conference," "review," and "research" insufficient); *Eugene v. 3Don & Partner Estate Group*, 2009 WL 996016 at 8-9 (S.D. Fla. 2009) ("[c]onf with Tony ... Telephone Conf ... Preparation /Receipt and Review of Complaint" insufficiently detailed; "legal research,"

21

"conf's with Aldo" vague and not compensable; among other things the entry fails to state the subject of the conference, which is a required detail)

There are a substantial number of fees labeled "Westlaw Research" with no other information [DE 372-3 at 5-7] While there could be many Westlaw Research entries that are reasonable, that is a guess without more details. *League of United Latin American Citizens v. Roscoe*, 119 F.3d 1228, 1233 (5th Cir. 1997)(Time should be detailed enough to permit "meaningful review of whether particular hours were reasonably expended on this litigation."); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) ("hearing preparation'; 'prepare for hearing'; 'review records'; 'telephone conference with client'; 'prepare for discovery'" found insufficient)

Similarly, there are several entries titled "Pacer Service Center" without more details. Without offering more,  Counter-defendant must object for the same reason it objected to the "Westlaw Research" entries. [DE 372-3 at 1-5] *Id.*

### b. **Attorney travel expenses from Florida to California.**

Counter-plaintiffs includes a cost in their motion for attorney's fees that is extravagant and unnecessary. [DE 372-3 at 66] Apparently, one of the lead attorneys for Counter-plaintiffs, Victor M. Velarde, Esq. decided to physically meet this client, Mr. Cerasale, in California prior to the trial and charging Counter-defendants for the airfare and hotel costs. On June 22,2022, Mr. Velarde expended $667.20 for the flight from Florida to California and $798.94 on the hotel in California (JW Marriot).   With the Zoom, even court hearings rarely require physical attendance – notwithstanding the fact the Counter-plaintiff Mr. Cerasale sought to testify via Zoom for the trial and therefore endorses this method of conferring.

 Counter-defendant must object and oppose this unwarranted hotel and flight expense that is really a mini-vacation and a good example of "overlawyering".   Expenses that are merely for counsel's convenience are not compensable. *Monelus v. Tocodrian Inc*., 609 F.Supp.2d 1328 (S.D.

22

Fla. 2009) Nothing in the Counter-plaintiffs' papers indicate how these charges were necessary for prosecution of the case and are not for counsel's convenience. *Cartier Int'l B.V. v. Gorski,* 3:01-CV-01948-PCounter-defendant, 2003 WL 25739624 4 (D. Conn. Apr. 30, 2003). Therefore, these travel costs are not compensable.

However, Counter-defendant does not oppose Mr. Velarde's time entries while he was staying in California and meeting with Mr. Cerasale because those time entries appear reasonable, and it would likely be the same amount of time Mr. Velarde would have expended if they conducted Zoom meetings remotely.

## CONCLUSION

Counter-plaintiffs failed to show this is an exceptional case pursuant to The Lanham Act and, therefore, their request for attorneys' fees and costs should be denied on this basis. 15 U.S.C. § 1117(a) Alternatively, for the reasons set-forth herein the Counter-plaintiffs' attorney time submissions and request for costs should be denied in part, granted in part.

## MOTION TO EXTEND PAGE LIMIT PRO NUNC TUNC

Pursuant to Local Rule 7.1(c)(2) there is a page limit of 20-pages. Pursuant to The Lanham Act there is an additional step of showing or disproving this is an "exceptional" case and, therefore, Counter-defendant needed to provide an additional response (and thorough basis) as to the reasons Counter-plaintiffs failed to show this is an exceptional case. As such, the Counter-defendant motions the Honorable Court to extend the page limit to just 23-pages pro nunc tunc (three additional pages).

## CERTIFICATE OF SERVICE

I hereby certify that this notice was served via the PACER E-Filing Portal on upon: Juan C. Zorilla, Esq., jzorilla@fowler-white.com Fowler, White, Burnett, P.A., counsel for Unisource Discovery, LLC and Steven A. Cerasale on this day 22nd of March, 2023.

**Diego David Valdes, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: */s/ Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email:  ddvlaw@gmail.com
         legal@ddvlawgroup.com
Attorney for Plaintiff: Unisource Discovery, Inc.