**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

     Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, et al.,

     Defendants.

---

### REPLY TO RESPONSE TO MOTION FOR FEES AND NON-TAXABLE COSTS

Defendants/Counter-Plaintiffs (collectively, "Defendants") hereby file their Reply to

Plaintiff/Counter-Defendant's ("Plaintiff") Opposition to Motion for Attorney's Fees (DE 383).

## ARGUMENT

Defendants are entitled to attorney's fees based upon (1) the Lanham Act; and (2) the Florida Deceptive and Unfair Practices Act ("FDUTPA").

Plaintiff "does not dispute entitlement under FDUPTA," but only disputes entitlement under the Lanham Act. Pl.'s Opp. (DE 383) at pp. 11–12. Plaintiff also argues that "a fee within the range $230,000–$250,000 is reasonable," and objects to only one costs (i.e., the undersigned's flight to California to meet with his client). *Id.* at p. 1. Each argument will be addressed below.

**I.      Defendants are entitled to their reasonable attorney's fees under the Lanham Act.**

**A.      As a threshold matter, Plaintiff argues the incorrect / abrogated *Burger King* standard instead of the applicable *Octane Fitness* standard.**

Plaintiff argues that Defendants are not entitled to fees because they have not shown that Plaintiff "act[ed] in a malicious, fraudulent, deliberate, or willful manner." Pl.'s Opp. (DE 383) at p. 2 (citing *Burger King v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.1994)). The Eleventh Circuit has squarely rejected this argument.

In *Tobinick v. Novella*, the Eleventh Circuit "abrogated" its *Burger King* precedent and "conclude[d] that to be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' ***either*** based on the strength of the litigating positions ***or*** the manner in which the case was litigated." 884 F.3d 1110, 1117–18 (11th Cir. 2018) (emphasis added). "This standard for attorneys' fees is more liberal than the Eleventh Circuit's previous standard, which required that a case be 'malicious, fraudulent, deliberate, and willful' in order to warrant attorneys' fees." *Sream, Inc. v. Onive Food Inc.*, 2018 WL 8345099, at *3 (S.D. Fla. Sept. 27, 2018).

Plaintiff's reliance on case law applying the *Burger King* standard, therefore, is misplaced. And under the applicable standard, this case is "exceptional" under both independent prongs— i.e., (1) the manner in which Plaintiff litigated; and (2) the strength of Plaintiff's case.

**B.      Plaintiff litigated this case in an extremely unreasonable manner.**

**1.      Plaintiff's claim that it violated only "two Court orders" is false.**

The Court was clear: Plaintiff engaged in "repeated disregard for the undersigned's prior Discovery Orders." Order (DE 106) at p. 2. The docket is replete with such violations:

> Plaintiff's failure to comply with the undersigned's December 11, 2020 Order. …
>
> Plaintiff's failure to comply with the undersigned's January 19, 2021 Order. …
>
> Plaintiff's failure to comply with the undersigned's March 18, 2021 Order …
>
> On May 20, 2021, Defendants reported that Plaintiff had failed to fully comply with the undersigned's May 17, 2021 Order.

Order (DE 118) at pp. 2–4. And when the Court sanctioned Plaintiff for its "repeated disregard for the … Discovery Orders," Plaintiff disregarded the Sanction Order—which led to another Court Order compelling compliance. *See* Order (DE 215) at p. 1. And when Plaintiff disregarded that compliance Order, the Court ordered that "Plaintiff shall … show cause why … it should not be held in contempt of court for failing to comply with the Court's Order." Order (DE 276) at p. 1.

And these are just the violations that led to monetary sanctions. Plaintiff also disregarded several other Orders that did not lead to sanctions but did cause unnecessary litigation and delay. *See* Order (DE 268) at p. 3 ("Plaintiff's failure to comply with the Court's scheduling order ….").

Plaintiff's surprising claim that it violated only "two Court orders" is, therefore, baseless. Pl.'s Opp. (DE 383) at p. 4. And Plaintiff's contention that "two court violations" are not enough to warrant a finding of exceptionality is equally meritless.

**2.      Plaintiff's "double-punishment" argument is meritless.**

Plaintiff raises a novel (and meritless) argument that the severity and pervasiveness of its own litigation misconduct somehow insulates it from an "exceptionality" finding. Specifically,

2

Plaintiff argues that it "would be double-punished for the same court violations … if the Court now uses [Plaintiff's] violations towards any finding of exceptionality." Pl.'s Opp. (DE 383) at p. 5. This argument is meritless for several reasons.

First, Defendants' Motion for Fees (DE 372) does not seek any fees that the Court has already awarded in the Sanctions Orders. So, Plaintiff would not be "double-punished."

Second, and for self-evident reasons, a plaintiff cannot insulate itself from paying attorney's fees by engaging in misconduct to such an extent that the Court issues sanctions more than once. Plaintiff's novel argument, if adopted, would encourage litigants to engage in pervasive and egregious litigation misconduct to avoid a finding of "exceptionality."

Third, Plaintiff's extraordinary misconduct throughout this litigation did not always result in an award of sanctions. For example, The Court's January 25, 2022 Order found that "Plaintiff has failed to comply with the Court's Scheduling Order" but such non-compliance was not enough to deny Plaintiff's day in court. Order (DE 268) at p. 3. The Court, therefore, ruled that Defendants may "seek[] alternative remedies" in connection with such misconduct. *Id.*

### 3.      Plaintiff insisted on prosecuting frivolous motions for sanctions.

Plaintiff's first Motion for Sanction (DE 73) was based upon two frivolous (and knowingly false) arguments: (1) that Defendants had not produced any responsive documents in discovery despite the fact that Plaintiff had not served any discovery requests; and (2) that the undersigned ostensibly secured a hearing date by making "fraudulent" and "untrue representations" (which, in reality, was a hearing date scheduled by the Court and counsel for Plaintiff). *See* Pl.'s Mot. for Sanctions (DE 73) at p. 2.[1] Plaintiff's Opposition (DE 383) does not address this frivolous Motion for Sanctions, nor does Plaintiff explain why it filed and prosecuted the frivolous motion.

---

[1] This was not the only time where Plaintiff falsely accused the undersigned of "fraud" only to later recant the accusation. As the Court noted in ruling on another motion, "Plaintiff claimed …

Plaintiff's second Motion for Sanctions (DE 115) was based upon arguments that the Court had already rejected. The Court gave Plaintiff the option to withdraw its second Motion for Sanctions. *Id.* at p. 7. But Plaintiff persisted. The Court denied the second Motion because "the undersigned already found it to be lacking in merit." Order (DE 167) at p. 4.

Plaintiff's third Motion for Sanctions (DE 183) again was based upon arguments the Court had already rejected. The Court—again—denied the Motion noting that Plaintiff's arguments were "redundant, superfluous and not the proper subject for … sanctions." Order (DE 253) at p. 1

Plaintiff's Opposition (DE 383) does not even attempt to defend these frivolous motions. Rather, Plaintiff merely argues that the Court never incanted the magic word "frivolous" when denying the motions. Pl.'s Opp. (DE 383) at p. 6. Plaintiff's argument that its frivolous motions cannot be frivolous because the Court never said they were is, for self-evident reasons, meritless.

### 4.    Plaintiff lost every substantive motion that was filed in this case.

Plaintiff's Opposition (DE 383) does not dispute that none of its numerous (and lengthy) substantive motions were successful. All such motions were either denied or stricken.

### 5.    Plaintiff violated the Court's Order *in Limine* during the trial.

Surprisingly, Plaintiff seems to argue that it did not violate the Order *in Limine*. Plaintiff argues that Defendants did "not reference in their Motion that they objected" to Plaintiff's violation of the Order *in Limine* and did not "provide a trial transcript [ ] showing this occurred" and, therefore, Plaintiff somehow must not have violated the Order. Pl.'s Opp. (DE 383) at p. 7.

---

that Defendants' representation … was an 'intentional misrepresentation' that was 'notoriously false[] and egregious ....' At the Hearing, Plaintiff conceded that … the foregoing statement was false." Order (DE 118) at pp. 4–5.

Plaintiff knows that Defendants objected. Plaintiff knows that there were discussions with the Judge and counsel regarding Plaintiff's repeated violations of the Court's Order *in Limine* during trial. Plaintiff's argument to the contrary is plainly false.[2]

**C.      As a separate and independent basis for an "exceptional" finding, Plaintiff's case was extraordinarily weak.**

Before the trial, Plaintiff admitted that it knew it had only a license to use the subject mark when it registered the trademark with the USPTO. *See* Pl.'s Aff. (DE 366-29) at ¶ 10. Plaintiff even admitted that it only had "***permission***" to use the mark—not ownership. *Id.* (emphasis added).

Plaintiff's Opposition does not dispute that this affidavit essentially defeats Plaintiff's claims and confirms Defendants' Counterclaim. In other words, Plaintiff does not dispute that—in light of its own admissions—Plaintiff's case was extraordinarily weak.

Rather, Plaintiff now disingenuously argues that its "affidavit contains a typographical error" and that it "was supposed to [state that Plaintiff] did 'NOT' have a license." Pl.'s Opp. (DE 383) at p. 9. Plaintiff's new claim is demonstrably false and should be discarded for several reasons.

First, Plaintiff does not support this "evidence" with an affidavit, testimony, or document.

Second, Plaintiff did not only admit that it had "a license." Plaintiff went much further:

> [Plaintiff] had full rights under ***implied license*** to use the name and logo until year 2010 ….
>
> [Defendant] Steven Cerasale … provided [Plaintiff] a ***license*** to use the name and logo …
>
> [Plaintiff] had full rights and undisputed ***permission*** from 2006 … until 2010 ….

Pl.'s Aff. (DE 366-29) at ¶¶ 10, 13 (emphasis added). Plaintiff now claims that a simple "typographical error" caused all of those material admissions. That is clearly false.

---

[2] Although Defendants do not believe it is necessary for the Court's ruling, Defendants have ordered the trial transcript excerpt and will file a very brief supplement once received.

Third, Plaintiff "submit[ted] this Affidavit in support" of its Partial Motion for Summary Judgment (DE 182). *Id.* at ¶ 3. That Motion stated, in no uncertain terms, that "[d]uring the time Plaintiff registered the name and logo as a Trademark, the ***Defendants provided Plaintiff Unisource an 'implied license' to use the name and logo***," not ownership. Pl.'s Mot. (DE 182) at p. 2 (emphasis added). Was this a "typographical error" as well?

Fourth, Plaintiff had its day in court to explain away its admissions. And Plaintiff testified that it understood what it had admitted (i.e., that it only had a license and not ownership), never once claiming that it was a "typographical error."[3]

In brief, Plaintiff knew it had an extraordinarily weak case and still persisted with its claims, refused to mediate (despite being ordered to do so), and forced a trial.

Plaintiff's remaining arguments are equally meritless. For example, Plaintiff argues that the "2010 Close Corporation Agreement related to the transferring ownership of the trademark to [Plaintiff] that apparently was open to two interpretations." Pl.'s Opp. (DE 383) at p. 8. This contention has already been rejected by the Court: "the 2010 close corporation Shareholder Agreement did not transfer ownership." Rep. & Rec. (DE 250) at p. 13; *see also* Order (DE 288).

Plaintiff also argues that if this case were truly exceptional, then the Court would have dismissed the Complaint "as a sham pleading." Pl.'s Opp. (DE 383) at p. 9. Of course, the *Octane Fitness* standard does not require the case to be a "sham" or the Complaint to be dismissed.

### D.      Plaintiff concedes that Defendants are entitled to fees under FDUTPA.

"[T]he fees recoverable under FDUTPA are those relating to the entire action, 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'" *Chow v. Chak Yam Chau*, 640 Fed. Appx. 834, 843 (11th Cir. 2015).

---

[3] Defendants have requested this excerpt of the trial transcript and will file a very brief supplement to this Reply once received.

Plaintiff concedes that Defendants are entitled to their reasonable attorney's fees under FDUTPA. Pl.'s Opp. (DE 383) at pp. 10–12 (arguing that considering the "factors that a court may consider" to award fees under FDUPTA, Plaintiff "does not dispute entitlement under FDUPTA"). Because Plaintiff's FDUTPA claim was based upon alleged trademark infringement, the fees recoverable under FDUTPA are "those relating to the entire action." *Id.*

## II. Defendants' Reasonable Attorney's Fees.

### A. Plaintiff's objection to the hourly rates of two attorneys should be overruled.

"If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter." S.D. Fla. Local Rule 7.3(a). "Local Rule 7.3's requirements are not optional, but mandatory." *Flava Works, Inc. v. A4A Reseau, Inc.*, 14-23208-CIV, 2018 WL 8807832, at *3 (S.D. Fla. Sept. 20, 2018).

Plaintiff objected to the hourly rates of Juan C. Zorrilla, Esq. and Esther E. Galicia, Esq. Pl.'s Opp. (DE 383) at pp. 15–16. Plaintiff, however, did not submit any affidavit and did not provide its firm's hourly rates as required by Local Rule 7.3(a). Additionally, Plaintiff's objection to these hourly rates is that Attorneys Zorrilla and Galicia do not have significant "trademark" experience. *Id.* But neither attorney billed for "learning" trademark law or performing tasks outside of their expertise. Plaintiff's objection to these two hourly rates, therefore, should be overruled.

### B. Plaintiff's objections to the number of hours expended are meritless.

None of Plaintiff's objections have merit. And even if all of objections were sustained, Plaintiff does not come close to justifying a reduction in fees from $311,582.50 to "within the range $230,000–$250,000." Pl.'s Opp. (DE 383) at p. 1.

#### 1. Plaintiff's "duplicative" objections should be overruled.

Plaintiff claims there "is a total of 225.7 hours of more than one attorney working the same case matter." Pl.'s Opp. (DE 383) at p. 18. As support, Plaintiff identifies pages 110, 120, and 125

of Defendants' time entries (DE 372-1), which reflect 14 time entries for a total of 33.80 hours—none of which are duplicative. Plaintiff's unsupported contention that 225.7 hours are duplicative is, therefore, meritless.

Plaintiff then argues that Defendants "expended 14.90 hours for what appears to be doubling their research efforts" and points to the "Summary of Time Entries" section of the invoice dated January 19, 2023 (DE 372 at p. 125). Plaintiff does not identify *a single* duplicative time entry. Rather, Plaintiff would have the Court and Defendants ferret out what time entries Plaintiff could possibly be referring to and argue whether the objection might be warranted. This is improper. But even if we were to review all the time entries that Plaintiff might be referring to (i.e., entries in the invoice dated January 19, 2023), a cursory review confirms that there are no duplicative entries. That invoice reflects a total of five time entries relating to research for a total of 3.9 hours (not "14.90 hours"). *See* Time Entries (DE 372-1) at p. 124. And none are duplicative.

### 2. Plaintiff's "no actual reductions" objections should be overruled.

Plaintiff argues that "[t]here does not appear to be any actual reductions" in Defendants' time entries. Pl.'s Opp. (DE 383) at p. 19. There is no requirement reduce fees. But in any event, Defendants did (in fact) reduce their request for fees.

As Plaintiff knows, Defendants' initial draft motion (served on Plaintiff on January 5 and 11) requested a total of $336,158.50 in attorney's fees based upon 1,053.34 hours. *See* Email (Exhibit "1" hereto). Defendants' Motion (DE 372) seeks reduced fees of $311,582.50 based upon 982.21 hours. Defendants voluntarily reduced their request before filing their Motion.

### 3. Plaintiff's "excessiveness" objections should be overruled.

Plaintiff argues that "89.79 hours for … the motion for preliminary injunction" is excessive. Pl.'s Opp. (DE 383) at p. 19. As support, Plaintiff refers to 23 pages of time entries (reflecting 764 time entries). *Id.* Without addressing any specific time entry, Plaintiff argues that the "research"

8

entries "could have been done by law clerk" and the rest of the work—which includes an evidentiary hearing—"could have been completed by the two 1–3-year associates." *Id.* Plaintiff's contentions are self-evidently unfounded and meritless.

Plaintiff then argues that Defendants billed "six attorneys" for work relating to Plaintiff's Motions for Preliminary Injunction. *Id.* This is plainly false. Two attorneys—not six—billed time relating to Plaintiff's Motions for Preliminary Injunction (i.e., the undersigned and Lauren Alvarez, Esq.) and only one attorney (the undersigned) attended and billed for the hearing.

Plaintiff also ignores that it filed no less than ***three*** very lengthy Motions for Preliminary Injunction (DE 18, 88, 139), which requires significant time to analyze, respond to, and argue.

Next, Plaintiff argues that "[t]here are 41 court notices (for example, notice of hearing) drafted and reviewed by Victor M. Velarde, Esq." when "an associate, paralegal or even law clerk should be drafting … these type of court notices." Pl.'s Opp. (DE 383) at p. 20. Once again, Plaintiff does not identify a single time entry. And the hearing notices Plaintiff refers to could not have been drafted by a "clerk" or "paralegal" because the Court's Order (DE 3) required the notices to "specify the substance of the discovery matter" and because Plaintiff's extraordinary discovery misconduct required lengthy notices. *See, e.g.*, Notice (DE 125) at pp. 2–8.

### 4. Plaintiff's objections re: to the "Zoom" motion should be overruled.

Plaintiff argues that "7.5 hours" were expended "researching and drafting motion(s) and reply(s) for Mr. Cerasale to attend the trial via Zoom." Pl.'s Opp. (DE 383) at p. 20. In reality, the time billed was 6.0 hours (not 7.5) reflected in five time entries (0.6 to draft the motion, 0.4 to draft Mr. Cerasale's declaration, 0.5 to review the opposition, 1.9 to research, and 2.6 to draft the reply). Plaintiff does not set forth any reason why this time is not recoverable other than Plaintiff's opinion that it should not be charged. This objection, therefore, should be overruled.

**5.     Plaintiff's "insufficient detail" objections should be overruled.**

Plaintiff argues that "36 out of 47 entries [ ] do not sufficiently describe the nature of the attorneys 'conferring' with each other" and "simply shows 'Confer with Attorney Velarde' and nothing more." Pl.'s Opp. (DE 383) at p. 21. There are, in fact, 24 entries of Attorney Zorrilla wherein he bills for "Confer[ing] with Attorney Velarde" without stating the purpose of the conferral. Although these entries are reasonable (especially since the undersigned did not bill his time for conferring), Defendants will agree to reduce these 9.70 hours—i.e., $4,850.00.

Plaintiff next argues that "[t]here are a substantial number of fees labeled 'Westlaw Research' with no other information" and "titled 'Pacer Service Center' without more details." Pl.'s Opp. (DE 383) at p. 22. These objections are meritless because the supposed "entries" are, in reality, costs—not attorney's fees. Specifically, DE 372-3 (which Plaintiff cites as the objectionable "time entries") identifies the Defendants' costs, not the attorney's fees.

**III.     Plaintiff's objection to the cost to meet with Defendants should be overruled.**

Plaintiff objected to the undersigned's flight and hotel costs to meet with Defendants in California before the trial because that flight was "really a mini-vacation and a good example of 'overlawyering.'" Pl.'s Opp. (DE 383) at pp. 23–24. Defendants live in California. Plaintiff knew that. But Plaintiff chose to file this lawsuit in Florida. The undersigned met with his clients in person only ***once*** to prepare for trial, and the requested flight/hotel cost relate to that one meeting.

The undersigned flew into California at 10:22 p.m. on May 25, 2022, met with his client on May 26, 2022, and flew back to Miami at 6:00 a.m. on May 27, 2022. *See* Flight (DE 372-3) at pp. 43–44. Plaintiff's claim that this was "really a mini-vacation" is clearly false.

## CONCLUSION

Defendants/Counter-Plaintiffs respectfully request an award of attorney's fees of $306,732.50 (i.e., $311,582.50, less $4,850.00) and costs of $24,117.97 against Plaintiff.

10

Respectfully submitted,

/s/ Victor M. Velarde
Juan C. Zorrilla
Fla. Bar No. 381403
Email: jzorrilla@fowler-white.com
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:    (305) 789-9201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice

of Electronic Filing generated by CM/ECF, on March 29, 2023, on all counsel or parties of record

on the Service List below.

/s/ Victor M. Velarde
Victor M. Velarde

| SERVICE LIST |
|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* |
| **Case No. 20-CIV-23276-DPG** |

| | |
|---|---|
| Diego David Valdes, Esq. Fla. Bar No. 251010 Diego David Valdes, P.A. 2350 Coral Way, Suite 403B Coral Gables, Florida 33145 Telephone: (305) 910-6602 Facsimile: (305) 513-5924 E-mail: ddvlaw@gmail.com<br><br>*Counsel for Plaintiff, Unisource Discovery, Inc.* | |

11