**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23276-CIV-DPG**

UNISOURCE DISCOVERY, INC.,

     Plaintiff,

     v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

     Defendants.

_____

**UNISOURCE DISCOVERY INC. OBJECTION AND FOR A PROTECTIVE ORDER TO THE SUBPOENA DUCES TECUM ISSUED BY UNISOURCE DISCOVERY LLC. AND STEVEN A. CERASALE ON NON-PARTY, THE MIAMI-DADE COUNTY ATTORNEY'S OFFICE, AND  SUPPORTING MEMORANDUM OF LAW**

Plaintiff/Counter-defendant Unisource Discovery Inc. (sometimes referred to as "judgment debtor") objects and moves for a protective order to the subpoena duces tecum issued by Defendants/Counter-Plaintiffs, Unisource Discovery, LLC. and Steven A. Cerasale (sometimes referred to as "judgment creditors") to non-party, The Miami-Dade County Attorney's Office, and the grounds are as follows:

**PRELIMINARY STATEMENT AND BACKGROUND**

This case does not involve claims and/or judgments that are associated with theft, fraud, or deceit.  In fact, the case directly and indirectly involves two business partners, Steven A. Cerasale and Noel Mijares (who is not a named party), that owns similarly named companies (Unisource Discovery) that have been using the exact same trademark for years with the portmanteau/name "Unisource Discovery."

Because using the same trademark (i.e., name and logo) was causing actual confusion with the Florida consumers, and because the board of directors have a fiduciary duty to Unisource Discovery Inc., a trademark infringement lawsuit was initiated by judgment debtor Unisource Discovery Inc. and similarly a cancellation of trademark counterclaim was advanced by judgment creditors Unisource Discovery LLC and Steven A. Cerasale. At the conclusion of the jury trial, Steven A. Cerasale and Unisource Discovery LLC prevailed on their trademark cancellation counterclaim.

Judgment creditor, Steven A. Cerasale, will not dispute that he owns Unisource Discovery LLC. And possibly unknown to the Court, judgment creditor Steven A. Cerasale will not dispute that he is also the majority owner (40% ownership interest) of judgment debtor Unisource Discovery Inc. In other words, judgment creditor Steven Cerasale is the majority owner of both judgment creditor Unisource Discovery LLC (a California company) and judgment debtor Unisource Discovery, Inc. (a Florida company) and therefore has majority control over both entities.

In light of his majority interest in judgment debtor Unisource Discovery, Inc., judgment creditor Mr. Cerasale has both a contractual fiduciary duty and Florida statutory fiduciary duty to judgment debtor Unisource Discovery Inc. to act in its best interest and not be conflicted.

That is, pursuant judgment debtor Unisource Discovery Inc. executed 2010 Corporation Agreement ¶ 1.10(b) between the owners,

> "The Duty to Avoid Conflicts of Interest. The employee may not place himself in a position where he has obligations to any third party, or interests of his own, which are in any way in conflict with or competitive to the interests of his Company. If any such conflicting obligations or interests arise, the employee must remove himself from the situation or relationship which gives rise to such a conflict of interest."

*See* Exhibit "A" (2010 Close Corporation Agreement).

Likewise, pursuant to Fla. Stat. § 607.0830(1) "General standards for directors":

2

(1) Each member of the board of directors, when discharging the duties of a director, including in discharging his or her duties as a member of a board committee, must act: (a) In good faith; and (b) In a manner he or she reasonably believes to be in the best interests of the corporation."

The Miami-Dade County Attorney's Office (referred to as "Client"), as with any governmental client, has the ability to provide debtor Unisource Discovery Inc. a steady stream on constant business and involving this Client in this litigation is not in the best interest of Unisource Discovery Inc.

## **LEGAL STANDARD**

The scope of discovery under a subpoena is the same as the scope of discovery under Rules 26 and 34. *Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647 at *3 (S.D. Fla. 2007) (citing *Chamberlain v. Farmington Sav. Bank, No.* 3:06CV01437 (CFD), 2007 WL 2786421 at *1); *Wagner v. Viacost.com,* No. 06-81113-Civ, 2007 WL 1879914 (S.D. Fla. 2007). Therefore, the court must determine whether the scope of the subpoenas duces tecum in this case is overbroad, burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence or is otherwise overreaching and subject to objection.

Fed.R.Civ.P. 26(b)(1) provides "parties may obtain discovery regarding any non-privileged matter that is relevant to any parties claim or defense. . . . The party resisting discovery has the burden to prove its objections by showing that the request "(1) does not come within the scope of relevance as defined in Fed.R.Civ.P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Id*.

If an objection is made, then the party who issued the subpoena cannot view the acquired materials without an order of the court from which the subpoena was issued. *See* Rule 45(c)(2)(B).

In addition, the scope of discovery in aid of execution is provided by Fed.R.Civ.P. 69, which states:

3

(1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) Obtaining Discovery. In aid of the judgment or execution, the judgment creditor` or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69; *see also Pronman v. Styles*, No. 12-80674-CIV, 2016 WL 4613384, at *3 (S.D. Fla. Aug. 19, 2016) (citing Florida Rule of Civil Procedure 1.560 as the applicable Florida law equivalent). "The scope of post-judgment discovery is broad[,]" and courts allow a judgment creditor the freedom of inquiry to discover concealed assets of a judgment debtor. *Santana v. RCSH Operations, LLC*, No. 10-61376-CIV, 2013 WL 12239127, at *2 (S.D. Fla. Jan. 22, 2013) (internal quotation marks and citation omitted).

Furthermore, "the creditor has the right to discover any assets . . . that the debtor might have recently transferred." *Am. U. of the Caribeean v. Tien*, No. 04-CV-20834, 2018 WL 1193339, at *1 (S.D. Fla. Feb. 28, 2018) (citing Regions *Bank v. MDG Frank Helmerich, LLC,* 118 So. 3d 968, 970 (Fla. 2d DCA 2013). "[A]ll assets (whether held individually or jointly) are relevant to collecting the debt owed." *Id.* Moreover, "a nonparty may be subject to post-judgment discovery where the judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor." 2245 *Venetian Court Bldg. 4, Inc. v. Harrison*, 149 So. 3d 1176, 1179 (Fla. 2d DCA 2014) (citing *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 942 (Fla. 2d DCA 2013).

## **ARGUMENT**

Applying the principles set forth above, as shown below, Unisource Discovery, LLC, and Steven A. Cerasale has not met their burden to establish the necessity for the Discovery Requests pertaining to judgment debtor's client, The Miami-Dade County Attorney's Office.

A. **General Objections**

First, because judgment creditor Steven A. Cerasale is also the majority owner (40% interest) of judgment debtor Unisource Discovery Inc. he has the ability to directly acquire the requested documents without a subpoena from judgment-debtor Unisource Discovery Inc.  Indeed, that method of obtaining the information/documents is in the best interest of Unisource Discovery Inc.

Likewise, since this case does not involve any type of theft, fraud, or deceit there is no reason to believe that judgment debtor has a predisposition to hide documents, assets, or be untruthful.  For this reason, judgment creditors' non-party subpoena with requests that are based solely upon skepticism is harassing to judgment creditor and non-party Client.

Noticeable from the requests themselves, Judgment creditors did not issue their subpoena [to Client] to discover assets and/or information that may lead to the discovery of the judgment-debtor Unisource Discovery Inc's assets, including bank accounts, insurance policies, and information about how judgment-debtor Unisource Discovery Inc pay its bills. Judgment creditor Steven Cerasale already has this information as majority owner of judgment-debtor Unisource Discovery Inc and/or may obtain this information within arms-reach pursuant to Fla. Stat. § 607.1602.

Therefore, the information sought is not necessary or relevant for judgment creditors to determine whether judgment debtor Unisource Discovery Inc. is transferring monies in order to evade collection of the judgment. *Democratic Republic of Congo v. Air Capital Grp., LLC,* No. 12- CIV-20607, 2018 WL 324976, at *1–3 (S.D. Fla. Jan. 8, 2018) (finding on successor or alter

ego theories that certain facts established a close relationship between judgment-debtor and nonparties making discovery requests necessary and relevant)

B. **Specific Objections**

(1) **Judgment Creditors Overbroad and Irrelevant Requests**

A party objecting must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *Panola Land Buyers Ass'n. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985); *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000)

If the burden to sustain an objection is satisfied, the requesting party will have to show with specificity how the information is relevant and necessary, and proportional to the particular needs of the case. *Lombardi v. NCL (Bahamas) Ltd*., No. 15-20966-CIV-COOKE/TORRES, 2015 WL 12085849, at *1 (S.D. Fla. Dec. 11, 2015)

A third-parties' assets may be discoverable upon a "heightened showing of necessity and relevance," meaning "at least some demonstration of concealed or fraudulent transfers or alter ego relationship with the judgment debtor," is generally warranted. *Trustees of Amalgamated Ins. Fund v. Jordan Mfg. Corp.,* 2008 WL 343132, at 1 (S.D. Fla. Feb. 5, 2008)

i. **The Scope Of The Discovery Requests 1 and 2  Are Overbroad, Irrelevant, And Unclear**

Requests 1 and 2 are:

> "1. All documents reflecting payments made or monies transferred in connection with services provided by Unisource Discovery Inc. from January 1, 2023 to the present.
>
> 2. All documents that reflect payments made or monies transferred to Unisource Discovery Inc. from January 1, 2023 to the present."

These requests are not specific but requesting a broad-range of "… all documents …" that reflect payment(s) "… made or monies transferred …" to judgment-debtor Unisource Discovery

6

Inc since January 1, 2023 to present – 11-12 months of unknown transactions.  Unlike the broad nature of these requests, judgment creditors must limit their discovery to specifically identified transactions which they have yet to describe. *Panola Land Buyers Ass'n. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)

Stated another way, judgment creditors broad requests are not limited to specific transactions between Client and judgment debtor Unisource but a large range of  transactions that occurred in the span of 11-12 months.  Here, judgment creditors can sufficiently investigate by limiting its discovery to information about <u>specific transactions</u> and not *catch-all* requests for 11-months of "all" transactions from Client.  With such wide-ranging and general discovery requests, judgment creditors are attempting to "fish" for unknown information they are guessing could or could not exist.

Essentially, and despite their lack of relevance, judgment creditors seem to be using aid-in-execution to conduct an internal accounting or harassment purposes rather than properly using same for collection purposes.

As already mentioned, Steven Cerasale is 40% owner of judgment-debtor Unisource Discovery Inc. and Mr. Cerasale has easy access to this information whether on-line or through a shareholders request pursuant to Fla. Stat. § 607.1602  – without implicating this governmental Client that provides judgment-debtor Unisource Discovery Inc. steady revenue. Mr. Cerasale also has direct access of judgment-debtor Unisource Discovery Inc.'s corporate tax returns and all accounting information as majority owner.

Given the foregoing, the Court must find that judgment creditors requests 1 and 2 are overbroad, irrelevant, and unwarranted.

      ii.     **Discovery Requests 3, 7 and 9 Related to Non-Parties, Noel Mijares and Lisa Cote, Are Duplicative Requests, Harassing, Overbroad And Not Reasonably Calculated to Lead to Admissible Evidence**

The following are requests 3, 7 and 9:

> "3. All documents that reflect payments made or monies transferred at the direction of Noel Mijares and/or made in connection with services provided by Noel Mijares from January 1, 2023 to the present.
>
> 7.  All communications with Noel Mijares from January 1, 2023 to the present.
>
> 9.  All communications with Lisa Cote from January 1, 2023 to the present."

While Noel Mijares and Lisa Cote are both minority shareholders of judgment debtor Unisource Discovery Inc., judgment creditors are referring to both Noel Mijares and Lisa Cote in their personal capacity rather than referring to them in their corporate capacity in these requests – that is, no distinction has been made between personal capacity and professionally capacity in these requests.

Because of this perceived unclarity with appearing to be a duplicative request, on November 24, 2023, the undersigned emailed judgment creditors attorney for clarification related to request no. 3 and 5. On November 26, 2023, undersigned received the following response,

> "Request No. 3 seeks all documents reflecting payments made / monies transferred at the direction of Noel Mijares. And Request No. 5 seeks documents reflecting agreement for payment of monies or delivery of services with Unisource Discovery Inc."

If requests 3, 7 and 9 are referring to Noel Mijares and Lisa Cote in their professional capacity as a representative and/or employee of judgment debtor Unisource Discovery, Inc. -- as the above email response appears to confirm -- then these requests are duplicative in light of requests 1 and 2 that are asking for "all documents" from Unisource Discovery Inc., *vis-à-vis*, any document(s) that reflects the "… services provided by …" Noel Mijares and/or Lisa Cote, as employ/representative of judgment debtor Unisource discovery Inc., are the same documents that judgment debtors are describing in requests 1 and 2.   It cannot be viewed any other way

8

However, any documents involving Lisa Cote and Noel Mijares in their <u>personal capacity</u> are not only harassing, confidential and proprietary but a fishing expedition -- the disclosure of which would be harmful to them and would violate public policy. Because Lisa Cote and Noel Mijares are not a party to these proceedings, and are not named in the non-party subpoena, the Court should not allow unlimited and non-relevant intrusion into their personal papers. *Salvato v. Miley*, 2013 WL 2712206, at *2 (M.D. Fla. Jun 11, 2013) ("The mere hope that Brown's private text-messages, e-mails, and electronic communication might include an admission against interest, without more, is not a sufficient reason to require Brown to provide Plaintiff open access to his private communications with third parties. Indeed, Plaintiff has "essentially sought permission to conduct 'a fishing expedition' . . . on the mere hope of finding relevant evidence."); *Mackelprang v. Fidelity Nat'l Title Agency of Nevada, Inc.*, 2007 WL 119149, at *7 (D. Nev. Jan.9, 2007) ("Ordering ... release of all of the private email messages on Plaintiff's Myspace.com internet account would allow Defendants to cast too wide a net for any information that might be relevant and discoverable.")

It is also critical to note that Lisa Cote and Noel Mijares' personal papers are the property of Lisa Cote and Noel Mijares and not the property of Judgment Creditor Unisource Discovery Inc.'s or its Client.  Noel Mijares and Lisa Cote have not been provided with the opportunity (due process) to object in light of the fact they are not parties to these proceedings and were not served with the subpoena since they are not a named party in the subpoena.

Rules 26(c) and 45 provides that this Court should protect non-parties such as Lisa Cote and Noel Mijares from irrelevant, annoying, oppressive, unreasonable, burdensome, and overreaching discovery requests – even though they are not even a "non-party deponent" named in the subpoena itself.

In light of the foregoing, the Court should respectfully grant judgment creditors objections forthwith.

### iii. Discovery Requests 4 and 6 Related to Non-Party, The Subpoena, Summons, and Affidavit Company, Is Irrelevant. Harassing, Overbroad And Not Reasonably Calculated to Lead to Admissible Evidence

The following are requests 4 and 6:

"4.  All documents that reflect payments made or monies transferred to The Subpoena, Summons, and Affidavit Company from January 1, 2023 to the present.

6. All documents that reflect an agreement for services, goods, or any deliverable at the direction of, per an agreement with, or in connection with The Subpoena, Summons, and Affidavit Company from January 1, 2023 to the present."

The Subpoena, Summons, and Affidavit Company (referred to as "Subpoena Company") has been a separate entity that was incorporated 21-years ago in Florida.  It is not a named party in these proceedings and not a named party within the body of the subpoena itself. If judgment creditor wishes to obtain documents from the Subpoena Company, if any exist, it should issue a subpoena to the Subpoena Company rather than issuing a subpoena to the Miami-Dade County Attorney's office that is entirely harassing.

Besides the harassing nature of these requests, judgment creditors have not laid the proper predicate when failing to identify specific transfers of money. *See 2245 Venetian Court Bldg. 4, Inc.*, 149 So. 3d at 1179 ([T]"he creditor has the right to discover any assets the debtor might have that could be subject to levy or execution to satisfy the judgment, or assets that the debtor might have recently transferred.") (emphasis added).

Procedurally, Judgment creditors need to show a "heightened showing of necessity and relevance," for these requests -- meaning "at least some demonstration of concealed or fraudulent transfers or alter ego relationship with the judgment debtor," is generally warranted. *Trustees of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664

(M.D. Fla. 1993)("When the ground for the discovery is an alleged alter ego relationship with the judgment debtor, there must be facts before the Court to show the basis for the allegation.")

Second, judgment creditors cannot articulate a reasonable suspicion that at least some of the funds flowing from Client to judgment creditor Unisource Discovery Inc.'s accounts are actually for another person's personal benefit or somehow being re-directed to the Subpoena Company.

Lastly, and despite the fact it is not Subpoena Company that was subpoena[ed], there is no link between judgment debtor Unisource Discovery Inc. and the Subpoena Company other than Lisa Cote, and the information sought is not necessary and relevant for judgment creditors to determine whether a third party (here, the Client) is transferring and/or re-directing monies to the Subpoena Company to assist judgment debtor evade collection of the judgment. *See Democratic Republic of Congo v. Air Capital Grp., LLC*, No. 12- CIV-20607, 2018 WL 324976, at 1–3 (S.D. Fla. Jan. 8, 2018) (finding on successor or alter ego theories that certain facts established a close relationship between judgment-debtor and nonparties making discovery requests necessary and relevant).

The record does not adequately demonstrate that the non-party (the Subpoena Company) and the judgment debtor share a close relationship in that they have many of the (1) same principals other than Lisa Cote, (2) same place of business, and (3) same registered agents. *2245 Venetian Ct. Bldg. 4, Inc. v. Harrison*, 149 So. 3d 1176, 3 1179 (Fla. 2d DCA 2014)  ("Here it is the combination of factors that leads us to conclude that a "close link" has been established: timing of the corporate name change and appointment of new officers shortly following Bateman's default, the fact that the two Venetian entities involved in this appeal share the same address, the fact that the Venetian entities share  corporate officers, and the fact that Bateman was still involved either as an owner or officer with several of the Venetian entities even after the judgment was obtained.")

11

In sum, the information sought is irrelevant, and constitutes confidential, commercial, and financial information that will subject the non-party to undue burdens and expenses. Therefore, the Court should respectfully grant judgment creditors objection because judgment creditors (a) cannot make a heightened showing of fraudulent concealment or an alter ego relationship between the judgment debtor and the non-party, (2) the subpoena violates Rule 45 of the Federal Rules of Civil Procedure, and (3) the subpoena requires the Client, as non-party, to compile extensive materials that will cause an undue burden and expense.

iv. **The Documents Related To Request no. 5 Do Not Exist And The Request Is Harassing**

Pursuant to request no. 5, judgment creditors are asking for,

> "5. All documents that reflect an agreement for services, goods, or any deliverable at the direction of, per an agreement with, or in connection with Unisource Discovery Inc. from January 1, 2023 to the present."

As with most governmental entities or agencies that are a client for these types of legal support services, the service agreement is customarily at-will and not in writing -- therefore, Miami-Dade County works with judgment debtor on a *case-by-case* basis and Miami-Dade County has the ability to simply stop ordering more work at-will. Once work is provided to the County, it is paid by check to judgment debtor Unisource Discovery Inc. Clearly, it would be impossible to hide a check issued from Miami-Dade County that is endorsed to Unisource Discovery Inc. despite the fact the judgment debtor would never intentionally hide revenue for any reason.

However, judgment creditor Steven Cerasale knows or should know because he is in the same legal support business and majority owner of judgment debtor Unisource Discovery Inc. that these types of agreements are customarily at-will when working with a governmental entity or agency.

This request is entirely harassing in light of the fact that judgment creditor Steven Cerasale is fully aware that he simply needs to review the corporate records of the company he has majority interest, judgment debtor Unisource discovery Inc.

Because there are no agreements with Miami-Dade County, and judgment debtors know there are no agreements with Miami-Dade County, this request is solely to harass and to cause financial damage to Unisource discovery Inc.

C. **Non-Waiver**

This Objection does not waive, and is not intended to waive, but hereby preserves their right to assert in the future:

    a.  All questions or objections as to the privilege or admissibility as evidence, for any purpose, at any trial or hearing in this case, or in any related or subsequent action or proceeding, of any of the documents produced or the subject matter thereof;

    b.  The right to object on any ground at any time to a demand for further documents; and

    c.  The right to revise, supplement, amend, correct or add to this Objection.

## CERTIFICATION OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for judgment debtor, Unisource Discovery Inc., Diego Valdes, Esq. certifies that, prior to filing the instant objection, on November 24, 2023, there was an attempt to confer in writing with judgment creditors legal counsel with a question that was answered on November 29, 2023.

## CERTIFICATE OF SERVICE

I hereby certify that this notice was served via the CM/ECF E-Filing Portal on this 27th day of November 2023, upon all parties listed in the service list and notified via email.

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924 By:

/s/ Diego David Valdes
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email: ddvlaw@gmail.com
legal@ddvlawgroup.com

Attorney for Unisource Discovery, Inc.

15

EXHIBIT "A"

# CLOSE CORPORATION SHAREHOLDER AGREEMENT

This Close Corporation Shareholder Agreement (this "Agreement") is entered into as of June 28, 2010, by and between Alfred W. Lutter, III ("Lutter"), Noel Mijares ("Mijares"), Lisa D. Cote ("Cote"), Steven Cerasale ("Cerasale"), and Unisource Discovery, Inc., a Florida corporation ("Company").

## RECITALS

A.      Concurrently herewith the parties to this Agreement are entering into that certain Stock Purchase and License Agreement of even date herewith (the "Stock Purchase and License Agreement").

B.      Mijares, Cote, and Cerasale (collectively, "Existing Shareholders") are the existing shareholders of Company. Effective at and following the Closing (as defined in Section 4 below), the Existing Shareholders and Lutter shall collectively be referred to as the "Shareholders" and individually as a "Shareholder".

C.      Company operations have heretofore been conducted pursuant to, in part, that certain Operating Agreement dated effective as of June 15, 2006, by and among the Existing Shareholders (the "Operating Agreement") is made part of the Unisource Discovery, Inc. Corporate By-Laws.

D.      The parties now wish to restate, amend, and incorporate into this Agreement provisions regarding certain ongoing rights and obligations of the parties previously set forth in the Operating Agreement, and to provide for certain additional shareholder protections for the benefit of each of the Shareholders.

Accordingly, the parties to this Agreement hereby agree as follows:

## AGREEMENT

1.      Corporate Governance in General.

1.1      Operating Agreement. The Operating Agreement is terminated effective as of the Closing and shall be of no further force or effect following the Closing. The provisions of the Operating Agreement are superseded by the provisions of this Agreement.

1.2      Board of Directors.

(a)      The Board of Directors shall consist of a total of three board seats, unless such arrangement is changed in the corporate bylaws by a majority vote and written consent of the shareholders voting on the basis of shares held by each of them.

(b)     Notwithstanding any provision to the contrary set forth in the Articles or Bylaws of the Company, the Board of Directors of the Company shall consist of Cerasale, Mijares, and Cote (the "Directors"). The Directors shall remain in such positions from year-to-year until such time as they may be removed by resignation, death, disability, or written consent of the Shareholders. Annual shareholder meetings for the purpose of electing directors shall not be required and are hereby waived. Each Director shall devote only such time and effort as such Director deems appropriate for the furtherance of the Company's business.

(c)     Without limiting the generality of the provisions of this Agreement set forth below relating to fiduciary duties, the Directors of the Company are prohibited from engaging in any business or employment activities competitive to the business of the Company. The parties hereto acknowledge and agree that the business of the Company includes expansion plans nationwide in the business of records retrieval, eDiscovery, and legal discovery case and records management. The parties agree that presently existing businesses operated by the Directors are complementary to the business of the Company, and it is anticipated that working relationships, cross referrals, another collaborative activities may be conducted between the Company and such other businesses.

1.3     Trademark. UNISOURCE DISCOVERY DIGITAL DOCUMENT RETRIEVAL is a registered US trademark of the Company. Without limiting the foregoing, the parties agree that the Company shall be entitled to use the trademark "Unisource Discovery", as part of its corporate name, Unisource Discovery, Inc., or as a fictitious business name, or otherwise.

1.4     The Subpoena Company. The parties acknowledge and agree that the Company shall have the exclusive rights to utilize the Florida Platform of "the Subpoena Company" to establish a presence in the region.

1.5     Company Bylaws. Effective at or before the Closing, the Existing Shareholders shall, by unanimous written consent, adopt bylaws in the form attached hereto as Exhibit "A".

1.6     Corporate Minute Book. At or before the Closing, the Company shall create or update a corporate minute book, to be maintained in the custody of the president or secretary of the Company, or such other custodian as may be authorized by the Board of Directors of the Company, containing copies of the Articles of Incorporation, the amendment thereto provided for herein below, the corporate bylaws adopted as provided herein, a stock ledger recording the issuance and transfer of the Common Stock, all minutes and forms of actions by written consent of the shareholders and directors, including such items as are contemplated as set forth in this Agreement, a copy of the current annual statement as filed with the Florida Department of State together with such prior annual filings as may be available, a copy of the statement of registered agent

accepting appointment as such, and such other corporate organizational documents and filings as are customarily maintained in such minute books.

1.7     Annual Meeting, Election of Directors, Election of Officers.  At or before the Closing, the Existing Shareholders shall, by unanimous written consent, conduct the annual meeting of shareholders of the Company and elect directors for the following year and shall, immediately thereafter, use their best efforts to cause the directors so elected to conduct the annual organizational meeting of directors for the purpose of electing the officers of the Company for the following year.

1.8     Amendment of Articles.  At or before the Closing, the Existing Shareholders shall, by unanimous written consent, authorize and adopt an amendment to the Articles of Incorporation of the Company, and the Company shall cause to be filed with the Florida Department of State the amendment so adopted and further providing that, "Stockholder agreements imposing reasonable restrictions on transfer of stock are authorized and permitted."

1.9     Compliance with Laws and Governing Instruments.  The Existing Shareholders who may, from time to time, serve as officers, directors, or managing agents of the Company shall use their best efforts to observe and comply with, and to cause the Company to observe and comply with, the articles and bylaws all the Company together with all federal, state and local statutes, regulations, ordinances and administrative rules and orders applicable to the conduct of the business of the Company and its corporate existence and organization.  Without limiting the foregoing, (i) at or before the Closing the Existing Shareholders shall confirm that the annual statement required to be filed with the Florida Department of State is current or, if not current, shall immediately file and bring current such annual statement; (ii) the Company shall prepare and deliver to its Shareholders, as required by Florida law Section___, annual financial statements that include balance sheet, income statement and statement of cash flow for each fiscal year.

1.10    Fiduciary Duties.  The Existing Shareholders acknowledge that officers, directors, managing agents, and other executive or high-level employees (collectively referred to herein as an "Employee" or "Employees") maintain a relationship with the Company in which high degrees of confidence and trust are reposed in the Employee. (Controlling shareholders also have certain fiduciary duties to the other shareholders of a company.) An Employee's fiduciary duties to the Company include the following:

(a)     The Duty of Undivided Loyalty.  In addition to the straightforward meaning of those terms, the employee may not benefit himself, a competitor, or any other person, to the detriment of the Company, in anything which the employee does within the scope or during the term of his employment or on company time.  All of employee's efforts and activities conducted while being compensated by the Company, or within the scope and course of the employment relationship, must be undertaken solely in the interests of the Company.

(b)     The Duty to Avoid Conflicts of Interest.  The employee may not place himself in a position where he has obligations to any third party, or interests of his own, which are in any way in conflict with or competitive to the interests of his Company.  If any such conflicting obligations or interests arise, the employee must remove himself from the situation or relationship which gives rise to such a conflict of interest.

(c)     The Duty of Full Disclosure.  The employee is obligated to disclose to the Company all information which comes into the possession of the employee which is relevant to the business or affairs of the Company including, without limitation, all information relating to the activities of the employee within the course and scope of his employment.

(d)     The Duty to Avoid Self Dealing.  The employee may not engage in any transaction, directly or through the use of third parties, middlemen, or otherwise, with the Company, without full disclosure to and consent from the Company as to all of the material terms and details of the transaction.  The employee is not permitted to make "secret profits" of any kind.  Secret profits include any profit or other type of benefit obtained by the employee which results from the employment relationship, or from any of the activities of the employee conducted in the course and scope of the employment relationship, which have not been fully disclosed to, and consented to by, the Company in all material respects and detail.

(e)     The Duty of Fair Dealing.  Transactions between the employee and the Company which are arranged, brought about, or conducted by the Employee, must be fair and reasonable as to the Company even if they are fully disclosed.

(f)     The Duty to make available to the Company all "Corporate, Business, or Partnership Opportunities".  All business or commercial opportunities which fall within the type of business conducted by the Company, or which are within the type of business planned for future activities by the Company, or which are within the general scope of the types of business activities into which the Company might reasonably be expected to expand its business, are considered to fall within the "Corporate Opportunity Doctrine" (also referred to as the "Partnership Opportunity Doctrine" or the "Business Opportunity Doctrine" depending upon the form of the business entity involved).  All business opportunities which fit that description and which become available to or known by the employee during the term of his employment must be disclosed to and made available to the Company.  The employee may not take advantage of any such business opportunities for his own account unless and until the Company has knowingly elected not to avail itself of each such opportunity after full disclosure of all material elements and details of the opportunity.  (The employee still may be unable to avail himself of such a

business opportunity if doing so would violate any of the employee's other fiduciary duties.)

In addition to and supplementing the foregoing fiduciary duties, there are also state and federal statutory and regulatory provisions, including, without limitation, Florida statute 607.0901, imposing duties and limitations with respect to transactions and activities of Company insiders and their affiliates.

To the extent they serve as officers, directors, managing agents, or other employees of the Company, the Existing Shareholders agree to abide by all such fiduciary obligations to the Company and its shareholders.

1.11    General Corporate Management.  Except as otherwise expressly provided in this Agreement, the business and affairs of the Company shall be managed and all corporate powers shall be exercised by or under the direction of the Board of Directors. Notwithstanding the foregoing, neither the Company nor any officer or Director of the Company may engage, permit, waive, or suffer any breach of fiduciary duty to the Company or its shareholders other than with the express written consent of all of the Shareholders].

1.12    Taxes; Dividends of Distributable Cash.  To the extent reasonably possible to do so given the financial capabilities of the Company, the Board of Directors of the Company shall declare and the Company shall distribute dividends at least quarterly to the Shareholders in an annualized amount not less than 50% of the net income projected to be reported on the shareholder K-1s for the then current taxable year for federal income taxes.  The Company shall timely provide the Shareholders with federal and state K-1s, including K-1s compliant with the requirements of the state of residence of the Shareholders, with copies of the full federal and any state tax returns filed by the Company.

1.13    Access to Records.  The Shareholders shall have access at all reasonable times to all Company financial information, including through access to accounting software utilized by Company, together with the corporate minute book, and other corporate records generally.

1.14    Indemnity.  The Company shall indemnify any Director and may indemnify any officer or other person who was or is a party to, or threatened to be made a party to, any pending or completed action, suit, or proceeding by reason of the fact that he or she or it is or was an officer, director, employee, or agent, or is or was serving at the request or for the benefit of the Company, to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.

2.    Tag-Along Right.

2.1    In the event that any of the Existing Shareholders (the "Offering Party") shall determine to sell shares of Common Stock to any person or entity (individually a "Third Party" and collectively, "Third Parties") in any one transaction or any series of related

transactions, directly or indirectly, such sale or other disposition shall not be permitted unless the Offering Party shall offer (or cause the Third Party to offer) to the other Shareholders the right to elect to include, at the sole option of such other Shareholders, such number of shares of Common Stock owned by the other Shareholders making such election as shall be determined in accordance with subsection 2.2 below in the sale or other disposition to the Third Party.  The Offering Party shall give written notice to the other Shareholders describing the transactions (the "Tag-Along Notice").  At any time within sixty (60) days after the giving of the Tag-Along Notice, any one or more of the other Shareholders may make an election to include any number of shares of Common Stock owned or controlled by such other Shareholders in such a sale or other disposition (the "Inclusion Election") by giving written notice thereof to the Offering Party proposed proposing to sell such Common Stock and delivering to the Offering Party a stock certificate or certificates representing such shares (the "Tag-Along Shares"), together with a limited power of attorney authorizing the Offering Party to sell or otherwise dispose of such Tag-Along Shares pursuant to the terms of such Third Party's offer.

2.2     The other Shareholders who make such Inclusion Election (the "Included Shareholders") shall have the right to sell, pursuant to the Third Party's offer, that percentage of the shares of Common Stock of each the Included Shareholders which shall be equal to the ratio (expressed as a percentage) of the shares of Common Stock to be sold by the Offering Party as compared to the aggregate number of shares of Common Stock then owned by the Offering Party; provided, however, that if the Third Party's offer is for a maximum number of shares of Common Stock, and such number is less than the number that would be sold by application of the foregoing, then the right to sell Common Stock pursuant to the Third Party's offer shall be allocated on a pro rata basis between the Offering Party and the Included Shareholders in proportion to the number of shares of Common Stock owned by the Offering Party and the Included Shareholders.

2.3     The purchase from the Included Shareholders pursuant to this Section 2 shall be on the same terms and conditions, including the price per share and the date of sale or other disposition, as are received by the Offering Party and stated in the Tag-Along Notice.

2.4     Promptly (but in no event later than five business days) after the consummation of the sale or other disposition of shares of Common Stock of the Offering Party and the Included Shareholders to the Third Party pursuant to the Third Party's offer, the Offering Party shall (i) notify the Included Shareholders of the completion thereof, (ii) cause to be remitted to the Included Shareholders the total sales price attributable to the shares of Common Stock which the Included Shareholders sold or otherwise disposed of pursuant thereto, and (iii) furnish such other evidence of the completion and time of completion of such share or other disposition and the terms thereof as may be reasonably requested by the Included Shareholders.

2.5     If, within sixty (60) days after the Tag-Along Notice is given, no other Shareholders have accepted the offer to make an Inclusion Election, the other Shareholders will be deemed to have waived any and all of their rights to participate in the sale or other disposition of shares of Common Stock pursuant to this Section 2.

Promptly upon the earlier of expiration of such sixty (60) day period, written waiver by all of the other Shareholders of any Tag-Along rights under this Section 2, or receipt of an Inclusion Election from any of the other Shareholders, Offering Party shall give the right of first refusal "Notice" as defined in Section 3.1 (a) below.

2.6    If, at the end of the time period specified hereinbelow for completion of any such sale, Offering Party shall not have completed the sale of shares of Common Stock and the Included Shareholders in accordance with the terms of the Third Party's offer, Offering Party shall return to the Included Shareholders all certificates representing shares of Common Stock which the Included Shareholders shall have delivered for sale pursuant to Section 2.1 above, and each of the restrictions on sale contained in this Agreement with respect to Common Stock owned by Offering Party shall again be in effect.

2.7    The rights provided in this Section 2 shall not be applicable to any merger or other reorganization involving the Company in which the shares of Common Stock owned by any Shareholder are in substantial part exchanged for or converted into securities of another corporation or cash or both.

3.    Right of First Refusal.

3.1    **Definitions**. For purposes of this Section 3, Right of First Refusal, in addition to terms defined elsewhere herein, the following terms shall have the definitions ascribed to them below:

(a)    **Notice**. "Notice" shall mean the notice to be provided by an Offering Party of the intended issuance, sale, transfer, assignment or other disposition of any Offered Shares. The Notice shall contain all of the conditions of the Offering Party's intended disposition of the Offered Shares, and shall constitute the Offering Party's offer to sell the Offered Shares to the Remaining Shareholders on the terms specified herein. If the Offering Party has received a bona fide offer from a third party to purchase the Offered Shares, such Notice shall contain all material terms and conditions of such offer, including the name of the proposed purchaser, the purchase price and terms of payment for the Offered Shares, or if such Offering Party intends a gift or other transfer of the Offered Shares other than sale, the terms and conditions thereof.

(b)    **Offered Shares**. "Offered Shares" shall mean any shares of Common Stock (or any other shares or equity interest, or right or option to acquire shares or equity interest in or to the Company) proposed to be issued, sold, transferred, or otherwise disposed of by the Offering Party. If any other Shareholder delivers an Inclusion Election to the Offering Party pursuant to Section 2.1 above, the Offered Shares shall be deemed to include the Common Stock of the Included Shareholders to be included in the sale or other disposition of shares as determined pursuant to Section 2 above.

(c)     **Offering Party**. "Offering Party" shall mean the Company or the Shareholder who desires to sell, transfer, assign or dispose of any Offered Shares, together with the legal heirs, successors and assigns of such Shareholder or the Company. If any other Shareholder delivers an Inclusion Election to the Offering Party pursuant to Section 2.1 above, the Included Shareholders shall be deemed to be included within the meaning of Offering Party for purposes of this Section 3.

(d)     **Remaining Shareholders**. "Remaining Shareholders" shall mean the Shareholders other than the Offering Party. If any other Shareholder delivers an Inclusion Election to the Offering Party pursuant to Section 2.1 above, the Included Shareholders shall not be included within the term Remaining Shareholders for purposes of this Section 3. If no other Shareholder delivers an Inclusion Election to the Offering Party pursuant to Section 2.1 above, all other Shareholders shall be deemed to be included among the Remaining Shareholders for purposes of this Section 3.

3.2     **Grant**. The Company and each Shareholder hereby grants to each of the other Shareholders, and each Shareholder hereby grants to the Company, a right of first refusal to purchase the Offered Shares on the terms specified herein, subject to the condition that in the event the Company and the Remaining Shareholders, as applicable, do not elect to purchase all of the Offered Shares, the Offering Party shall not be required to sell any of the Offered Shares to the Company or the Remaining Shareholders. The Offering Party agrees to sell the Offered Shares to the Company and the Remaining Shareholders in accordance with the terms of this Section 3. In accordance with such right of first refusal, the Offering Party shall, prior to the intended sale, transfer, assignment or other disposition of the Offered Shares, give Notice thereof to the Remaining Shareholders.

3.3     **Exercise Period; Unsubscribed Shares**. The Remaining Shareholders and the Company, as applicable, shall have the right, for a period of ninety (90) days from the date of the Notice (such date being determined in accordance with Section 7 below) to collectively purchase all but not less than all of the Offered Shares for the price and on the terms set forth in the Notice, or on terms no less favorable that those set forth in the Notice.

3.4     **Manner of Exercise**. If any of the Remaining Shareholders or the Company wish to exercise their rights of first refusal, they shall so notify each of the Offering Party, the Company, and the Remaining Shareholders, in writing, within a period of sixty (60) days from the date of the Notice. The Remaining Shareholders and the Company, where applicable, may each elect to purchase any number or all of the Offered Shares and shall specify the number which they elect to so acquire in their written notice. If the number of shares which the Company and the Remaining Shareholders elect in the aggregate to purchase exceeds the total number of Offered Shares, the Company shall purchase or acquire all of the number of the Offered Shares specified by it in its notice given pursuant to this Section 3.4, and any Offered Shares remaining thereafter shall be purchased or acquired by the Remaining Shareholders in such portions of the remainder of the Offered

Shares not purchased or acquired by the Company proportionate to the number of Offered Shares specified in their respective notices given pursuant to this Section 3.4. If the number of shares which the Company and the Remaining Shareholders elect in the aggregate to purchase exceeds the total number of Offered Shares, the Company and the Remaining Shareholders may increase the number of the Offered Shares which they elect to purchase by giving written notice to each of the Offering Party, the Company, and the Remaining Shareholders not later than ninety (90) days from the date of the original Notice. Upon receipt of notices of exercise sufficient to acquire all of the Offered Shares, the Company and the Remaining Shareholders shall be bound to purchase, and the Offering Party shall be bound to sell, the Offered Shares.  The closing of such transaction shall take place at the principal executive offices of the Company on that date five (5) business days following the expiration date of the right of first refusal.  If notices of exercise sufficient to acquire all of the Offered Shares have not been delivered within ninety (90) days from the date of the original Notice pursuant to the foregoing provisions, then all of the Offered Shares may be sold or otherwise transferred by the Offering Party only to the person or persons specified in the Notice, within a period of ninety (90) days after the expiration of the right of first refusal provided herein.  Such sale or other disposition shall be made to such persons only upon the terms and conditions contained in the Notice.

3.5     **Appraisal**.  In the event the terms offered by the third party purchaser involve the transfer or assignment to the Offering Party of consideration other than cash, the Remaining Shareholders shall be entitled to exercise their rights of first refusal by tendering, in lieu of such consideration, cash in the amount of the fair market value thereof.  The fair market value shall be determined by an independent appraiser selected by the Remaining Shareholders and who is reasonably acceptable to the Offering Party. The cost of the appraisal performed pursuant to this Section 3.5 shall be borne in equal amounts by the Offering Party on the one hand and the Remaining Shareholders on the other hand.  In the event the fair market value of the property is determined in the above manner, the period specified in Section 3.3 above during which the Remaining Shareholders may elect to exercise their rights to purchase the Offered Shares shall be extended until that date ninety (90) days from the date on which the parties are notified of such appraised fair market value.

3.6     Notwithstanding the foregoing, any Shareholder shall have the right to transfer by gift all or any portion of his interest in his Common Stock to his spouse, children or grandchildren, or to a trust established by such Shareholder for the benefit of himself, his spouse, children or grandchildren, without such transfer being subject to the provisions of this Section 3; provided that the recipient of such gift shall agree in writing prior to the completion of the transfer to be bound by the terms and conditions of this Agreement including, without limitation, this right of first refusal.

4.     Closing.  The "Closing" hereunder, at which time those documents to be delivered at the Closing, as specified elsewhere herein and in the Stock Purchase and License Agreement, shall be delivered, and at or by which time those acts or events to be effected at or before the Closing, as specified herein, shall take place by electronic exchange of documents at such time as may be agreed upon by the parties hereto but, in any event, not later than 2:00 PM Pacific Standard

Time, on June 28, 2010. The Closing hereunder and under the Stock Purchase and License Agreement shall occur simultaneously.

5.      Representations and Warranties of the Parties. Each of the representations and warranties set forth in the Stock Purchase and License Agreement are hereby incorporated herein by this reference and each of the parties hereto, and Company's agent or agents executing this Agreement on behalf of Company, hereby jointly and severally, reiterate and reconfirm such warranties and representations.

6.      Further Acts. The parties to this Agreement shall promptly take such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement. Without limiting the generality of the foregoing, in the event any court, county recorder, secretary of state of any state, any federal agency, or any other governmental agency may require any additional or different documents or actions in order to effect the purposes contemplated by this Agreement, the parties to this Agreement shall execute the necessary documents and take the necessary steps to comply with those requirements.

7.      Notices. Unless otherwise provided herein, any notice, offer, exercise of rights or other communication required or permitted to be given hereunder shall be in writing and shall be given by registered or certified mail, confirmed facsimile or telecopy (with a hard copy deposited in overnight mail), or overnight delivery service such as Federal Express if a receipt is obtained showing delivery, at such party's address set forth next below or such other address as such party may hereafter specify by notice to the other parties hereto, or by actual personal delivery. Any notice or other communication shall be deemed to have been given as of the date so personally delivered or transmitted by confirmed telecopy or like transmission, on the date of delivery shown on the receipt when sent by overnight delivery service, or on the date shown on the return receipt for delivery or, if refused, the date of first attempted delivery, when given by registered or certified mail. Any party may change its address for notice by notice to the other party given in accordance with this Section. Address and fax numbers for such notice are as follows:

If to Lutter, to:

        Mr. Alfred W. Lutter, III
        Lutter Consulting
        2934 Quarry Mountain Road
        Park City, UT 84098
        Facsimile:  435-655-9292
        Confirming no:  (949) 500-2007

With a copy to:

        Ed Sybesma, Esq.
        Rutan & Tucker, LLP
        611 Anton Boulevard
        Suite 1400
        Costa Mesa, CA 92626
        Facsimile:          (714) 546-9035

Confirming no:      (714) 641-3427

If to Company, to:

          Name:             Noel Mijares
          Title:               Director
          Company:     Unisource Discovery
          Address:       5810 Biscayne Blvd
          City, State, ZIP:  Miami, FL  33137
          Facsimile:     866-580-9070
          Confirming no:  305-757-5739

With a copy to:

          Name:             Lisa Cote
          Title:               Director
          Company:     Unisource Discovery
          Address:       5810 Biscayne Blvd
          City, State, ZIP:  Miami, FL  33137
          Facsimile:     866-580-9070
          Confirming no:  305-757-5739

And a copy to:

          Name:             Steven Cerasale
          Title:               Director
          Company:     Unisource Discovery
          Address:       2881 Forrester Avenue
          City, State, ZIP:  Los Angeles, CA 90064
          Facsimile:     310-837-5588
          Confirming no:  310-837-2889

8.      <u>Entire Agreement</u>.  This Agreement together with the exhibits hereto and the Stock Purchase and License Agreement effective concurrently herewith constitute the entirety of the agreements between the parties hereto concerning the subject matter hereof and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether oral or written, of the parties, and there are no warranties, representations or agreements, express or implied, among the parties except as set forth herein.  No amendment, supplement, modification, waiver, or termination of this Agreement, or any provision hereof, shall be binding unless executed in writing by the party against whom any of the foregoing is sought to be enforced.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision (whether similar or not), nor shall any waiver constitute a continuing waiver unless otherwise expressly provided hereunder or in writing signed by the party against whom any such waiver is sought to be enforced.

9.      Counterparts. This Agreement may be executed in counterparts, and each executed counterpart shall be deemed to be a duplicate original of this Agreement. This Agreement may be delivered by facsimile or other electronic communication. Facsimile or electronic images of signatures shall be treated as original signatures for all applicable purposes.

10.     Headings. The captions and headings contained in this Agreement are for convenience only and shall not affect the construction or interpretation of any provisions of this Agreement.

11.     Attorneys' Fees. If any party breaches any obligation under this Agreement, or any dispute arises out of or with respect to this Agreement, the non-breaching party (or the prevailing party in the event of any litigation or alternate dispute resolution procedure) shall be entitled to its reasonable expenses, attorneys' fees, experts' fees, and costs, incurred as a result of any such breach, dispute, or litigation, including, without limitation, in any action taken, with or without litigation, to enforce, work out, or renegotiate the terms of this Agreement, or to remedy or compensate for such breach.

12.     Construction. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The word "including" shall mean including without limitation and is used in an illustrative sense rather than a limiting sense. Terms used with initial capital letters will have the meanings specified, applicable to singular and plural forms, for all purposes of this Agreement. Reference to any gender will be deemed to include all genders and the neutral form.

13.     No Third Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any person other than the parties hereto and their permitted successors and assigns, and only in accordance with the express terms of this Agreement.

14.     Reformation and Severability of Provisions. If any provision of this Agreement is declared invalid, in whole or in part, by a court of competent jurisdiction, such provision may be modified or limited in its effect to the extent necessary to cause it to be enforceable. If any provision cannot be so modified or limited, then such provision shall be severed and the remainder of this Agreement shall remain in full force and effect.

15:     Applicable Law. The obligations, rights , duties, powers and remedies under this agreement shall be governed and construed by the laws of the State of Florida. If any legal action is necessary to enforce the terms and conditions of this agreement, the parties agree that the Circuit Court of Miami Dade County Florida, or, if applicable, federal district court sitting in Miami Dade county, shall be the sole venue and jurisdiction for the bringing of such action.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Dated:  June 28, 2010

_____
Alfred W. Lutter, III

Dated:  June 28, 2010

_____
Noel Mijares

Dated:  June 28, 2010

_____
Lisa D. Cote

Dated:  June 28, 2010

_____
Steven Cerasale

Dated:  June 28, 2010

Unisource Discovery, Inc., a Florida corporation

By: _____
Noel Mijares, CEO, President

By: _____

_____, Secretary

<u>Exhibit "A"</u>

<u>BYLAWS OF</u>

<u>UNISOURCE DISCOVERY, INC.,</u>

<u>A FLORIDA CORPORATION</u>

By Laws not attached or reviewed.