**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CIV-23276-DPG**

UNISOURCE DISCOVERY, INC.

      Plaintiff,

v.

UNISOURCE DISCOVERY, LLC, and
STEVEN A. CERASALE, individually,

      Defendants.

_____

**OMNIBUS RESPONSE TO PLAINTIFF'S OBJECTIONS TO SUBPOENAS**
**AND SECOND MOTION FOR PROTECTIVE ORDER (DE 419 and DE 420)**

Defendants/Counter-Plaintiffs/Judgment Creditors, Unisource Discovery, LLC and Steven

A. Cerasale ("Defendants"), hereby file their Response to Plaintiff's Objections to Non-Party

Subpoenas and Second Motions for Protective Order (DE 419 and DE 420).

**ARGUMENT**

**I.**     **The subpoenas seek documents that Plaintiff has refused to produce.**

The two subpoenaed parties are Plaintiff's customers. The subpoenas seek documents

reflecting the customers' payments for Plaintiff's services and communications with Plaintiff's

officers.

From 2022 to the present, Plaintiff has continued to collect revenue from its customers

(according to its principal, Noel Mijares). However, all four of Plaintiff's bank accounts confirm

that Plaintiff has not been receiving such revenues.

Where is Plaintiff diverting its revenues to? All post-judgment discovery has been

dedicated to answering this question. And Plaintiff has purposefully evaded answering. The

subpoenas aim to answer this question by asking Plaintiff's customers directly. As explained

below, Plaintiff is diverting revenues and is attempting to hide this fact by stonewalling discovery.

Plaintiff's bank accounts have a total collective balance of less than $100.00. *See* Garnishee Bank Answers (Composite Exhibit "1" hereto). Below are the specific balances of each of Plaintiff's bank accounts as of the date of this Response[1]:

- Citibank (Acct. No. ending in 1409) has **$4.01**
- Citibank (Acct. No. ending in 1412) has **-$9.57** (negative)
- Axos Bank (Acct. No. ending in 8450) has **$0.73**
- Bluevine has **$103.10**

To avoid showing where the money is actually going, Plaintiff has flouted its discovery obligations. Almost one year ago (i.e., in August 2023), Defendants requested Plaintiff to produce its invoices, receipts, and other documents reflecting payments by its customers and communications with its customers.

Plaintiff ignored those discovery requests and chose not to appear at the hearing on Defendant's motion to compel a response. *See* Order (DE 401) at p. 1 ("Plaintiff's counsel had due notice of the Hearing but elected not to appear …."). The Court compelled Plaintiff to respond by November 7, 2023. *Id.* at p. 1. But Defendant ignored that Order as well.

After refusing to respond in spite of the Court's Order, the Court scheduled a contempt hearing on June 20, 2024. *See* Minute Entry (DE 426). The day before the contempt hearing, Plaintiff decided to raise—for the first time—supposed "objections without objecting," provided evasive responses, and produced nothing of substance. *See* Pl.'s Response (DE 425) at pp. 1–3 (stating that Plaintiff "has not raised any objections" and then proceeding to raise numerous objections and "incorporate[] by reference every general objection ... into each specific response," claiming "not [to] waive any general objection").

At the contempt hearing, the Court again ordered Plaintiff to produce the documents.

---

[1] None of the accounts have received any deposits since their garnishment. Citibank was garnished on July 12, 2023; Axos Bank on December 27, 2023; and Bluevine Bank on April 16, 2024.

In the meantime, Plaintiff has used this additional time to build and operate a business by the name of iLegal Records Retrieval—which competes with Plaintiff and which Plaintiff's principal started ***two days*** after Plaintiff lost the jury trial in this case. *See* Comparison of Plaintiff's Website and iLegal Records Retrieval's Website (Composite Exhibit "2" hereto); *see also* Dec. 9, 2022 Reinstatement of iLegal Systems Inc. signed by Noel Mijares (Exhibit "3" hereto).

Also, two months after Plaintiff lost the jury trial (i.e., in February 2023), Plaintiff recorded a "Loan Agreement" supposedly indebting itself to The Subpoena, Summons, & Affidavit Company ("The Subpoena Company")—which is a company owned and operated by Plaintiff's principal—in the amount of $662,389.64. *See* Loan Agr. (Exhibit "4" hereto); *see also* Apr. 29, 2022 Annual Report of The Subpoena Company (Exhibit "5" hereto) (identifying Noel Mijares and Lisa Cote as officers of The Subpoena Company).

Plaintiff's scheme appears to be clear: Plaintiff is diverting its revenues to other companies controlled by Plaintiff's officers—i.e., The Subpoena Company and/or iLegal Records Retrieval—and is doing everything in its power to stonewall Defendant's ability to trace the revenues.

In light of the above, the two subject subpoenas are crucial. The subpoenas seek documentation that would show where Plaintiff's revenues are being diverted. The requested communications would also show whether Plaintiff's officers have instructed Plaintiff's customers to divert their payments to other companies (which are owned by Plaintiff's officers) or have instructed them to do business with the new competing business that Plaintiff's principal set up.

Such subpoenaed documents are directly related to Defendants' attempt to collect on their judgment against Plaintiff and, therefore, discoverable.

Each of Plaintiff's arguments to the contrary is meritless. And each argument will be addressed below.

**II.      Plaintiff's objection that the subpoenas are "overbroad" is meritless.**

Plaintiff claims that the subpoenas are overbroad because they request "documents …' that reflect payment(s) … to judgment-debtor Unisource Discovery Inc. since January 1, 2023 to present—11–12 months of unknown transactions." 2d. Mots. (DE 419 and 420) at pp. 6–7.

A scope of "11–12 months" is reasonable in almost any situation. But this is particularly true when the facts show that Plaintiff has been attempting to "shield" its assets from collection starting in December 2022 (when Plaintiff's principal started a competing business), continued through early 2023 (when Plaintiff "indebted" itself to a company owned by Plaintiff's principal), and through the present.

Plaintiff's contention that Defendants "must limit their discovery to specifically identified transactions" is also self-evidently meritless. *See* 2d. Mots. (DE 419 and 420) at p. 7. The subpoenas seek all "transactions" that the subpoenaed parties have had with Plaintiff or Plaintiff's officers,  not just certain "specific transactions." But Plaintiff's objection in this regard is particularly insidious where Plaintiff has refused to comply with its discovery obligations and has refused to "identify" any transactions. Requiring Defendants to divine all possible "transactions" with "specificity" while Plaintiff sits back and refuses to answer discovery is unreasonable.

In fact, Plaintiff's own case law disagrees with Plaintiff. Plaintiff cited *Trustees of the North Florida Operating Engineers Health and Welfare Fund, et al. v. Lane Crane Service, Inc.*, 148 F.R.D. 662, 663 (M.D. Fla. 1993). In that case, the Middle District noted that Rule 69(a) allows "requests which seek invoices or bills of sale documenting equipment transactions between the Defendant, who is the judgment debtor, and Movant [subpoenaed party]." *Id*. at 663.

4

**III.     Defendants do not have access to this information because Plaintiff has refused to produce it, and this information is not found in tax returns or bank statements.**

Plaintiff repeatedly asserts that Defendant Steven Cerasale "has the ability to directly acquire the requested documents without a subpoena from judgment-debtor Unisource Discovery Inc." 2d Mots. (DE 419 and 420) at p. 7, 8. This contention is obviously false and unquestionably refuted by the record in this case.

Not only has Plaintiff refused to answer discovery, but Plaintiff has even required the filing of several motions to compel, a discovery hearing, a contempt hearing, and more than one Court Order—all over the period of almost one year. And despite all that time, fees, and effort, Plaintiff *has still refused to respond to discovery*.

To be clear, Plaintiff has still not produced requested documents and has still not provided non-evasive answers to discovery. And even if Plaintiff ever does respond to discovery, Plaintiff has shown—beyond question—that Plaintiff cannot be trusted to be forthcoming with the truth.

Plaintiff also repeatedly claims that the subpoenaed information can be obtained from Plaintiff's corporate tax returns and "all accounting information." 2d Mots. (DE 419 and 420) a pp. 7, 8. This contention is also self-evidently baseless. The tax returns do not show invoices, receipts, or communications. And whatever "accounting information" Plaintiff is referring to has been requested, and Plaintiff has either refused to produce it or has provided evasive answers.

**IV.     Communications between Plaintiff's customers and Lisa Cote and/or Noel Mijares are discoverable.**

Plaintiff objects that Request Nos. 3, 7 and 9 are "harassing, confidential and proprietary [and] a fishing expedition" to the extent they seek communications with Lisa Cote or Noel Mijares "in their personal capacity." 2d Mots. (DE 419 and 420) at p. 9. Plaintiff even claims that "disclosure" of these communications "would be harmful to them and would violate public policy." *Id.* These objections are meritless.

5

To be clear, Lisa Cote and Noel Mijares are officers and owners of Plaintiff. Not coincidentally, Lisa Cote and Noel Mijares also are owners and officers of The Subpoena Company (to whom Plaintiff voluntarily "indebted" itself after Plaintiff lost the trial in this case) and are also owners and/or officers of iLegal Records Retrieval (which is a newly organized business that competes with Plaintiff).

Of course, no matter what proverbial hat Lisa Cote or Noel Mijares wear, their communications with two of Plaintiff's customers (i.e., the subpoenaed parties) are discoverable. In light of the above facts, it seems that Noel Mijares and/or Lisa Cote have acted for The Subpoena Company or for iLegal Records Retrieval when communicating with Plaintiff's customers. All such communications are not only discoverable, but they also are highly relevant. If Lisa Cote or Noel Mijares communicated with Plaintiff's customers ostensibly on behalf of The Subpoena Company, then such communications are relevant because they would show whether Plaintiff's customers were directed to redirect their payment to The Subpoena Company instead of to Plaintiff. If Lisa Cote or Noel Mijares communicated with Plaintiff's customers ostensibly on behalf of iLegal Records Retrieval, then such communications are relevant because they would show whether Plaintiff's customers were instructed to no longer do business with Plaintiff and, instead, do business with Plaintiff's newly-organized competitor iLegal Records Retrieval.

Importantly, Plaintiff has not identified—or even suggested—how any such communications with Plaintiff's customers could possibly be "proprietary" or "confidential."

In fact, Plaintiff's own argument shows that Plaintiff is playing litigation games and is merely attempting to control the document production to continue its fraudulent transfer scheme. For example, Plaintiff contends that instead of subpoenaing Plaintiff's customers, Defendants "should issue a subpoena to the Subpoena Company [i.e., the company owned and controlled by

6

Plaintiff's officers] rather than issuing a subpoena to [Plaintiff's customers] that is entirely harassing." 2d Mots. (DE 419 and 420) at pp. 10, 11. If the requested documents truly were "proprietary" or "confidential," how would a subpoena to The Subpoena Company resolve this objection? The truth is that Plaintiff wants to continue to control the document production and prevent Defendants from confirming that Plaintiff is diverting its revenues.

**V.      Plaintiff does not have standing to object that the subpoena is "unduly burdensome."**

Plaintiff further objects that the subpoena requests are "annoying, oppressive, unreasonable, burdensome, and overreaching." 2d Mots. (DE 419 and 420) at p. 9. Plaintiff does not have standing to make these objections.

A party "do[es] not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Hernandez v. Burrows*, No. 20-22721, 2021 WL 5999431 (S.D. Fla. Dec. 20, 2021) ("But she does not have standing  to seek protection for non-parties on personal issues affecting only the non-parties.").

**VI.     If the documents do not exist, then let the subpoenaed party tell us themselves.**

Finally, Plaintiff contends that request No. 5 (which requests "all documents that reflect an agreement for services, goods, or any deliverable at the direction of, per an agreement with, or in connection with Unisource Discovery Inc. from January 1, 2023 to the present) is harassing because the documents do not exist.

If the documents do not exist, then the subpoenaed parties can say so. This is not a viable reason to prevent the non-parties from answering the subpoenas.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court overrule Plaintiff's objections, deny Plaintiff's Second Motions for Protective Order (DE 419 and 420), and order that the subpoenaed parties must respond to the subpoenas.

Respectfully submitted,


/s/ Victor M. Velarde
_____
Victor M. Velarde
Fla. Bar No. 105620
Email: vvelarde@fowler-white.com

Chloe M. Horton
Fla. Bar No. 1039500
Email: chorton@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:   (305) 789-9201

CASE NO. 20-CIV-23276-DPG

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on June 25, 2024, on all counsel or parties of record on the Service List below.

    /s/ Victor M. Velarde
Victor M. Velarde
Fla. Bar No. 105620

| SERVICE LIST | |
|---|---|
| *Unisource Discovery, Inc. v. Unisource Discovery, LLC and Steven A. Cerasale* **Case No. 20-CIV-23276-DPG** | |
| Diego David Valdes, Esq. Fla. Bar No. 251010 Diego David Valdes, P.A. 2350 Coral Way, Suite 403B Coral Gables, Florida 33145 Telephone: (305) 910-6602 Facsimile: (305) 513-5924 E-mail: ddvlaw@gmail.com  *Counsel for Plaintiff* | |

9