**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-23276-CIV-DPG

UNISOURCE DISCOVERY, INC.,

      Plaintiff/Counter-defendant,

      v.

UNISOURCE DISCOVERY, LLC
and STEVEN A. CERASALE,

      Defendants/Counter-plaintiffs

---

## UNISOURCE DISCOVERY INC.  SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' REQUEST FOR DOCUMENTS AND INTERROGATORIES

Plaintiff, Unisource Discovery Inc., ("Unisource") by and through its attorney, and pursuant to Rules 33 and Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds to Defendants/judgement creditors, Unisource Discovery LLC and Steven A. Cerasale ("Defendants") Request for documents and interrogatories as follows:

### PRELIMINARY STATEMENT

1.      On July 1, 2024, the Court entered its discovery Order [DE 429] after the contempt hearing that was held on June 20, 2024. This second supplement is in response and compliance with the Court's July 1, 2024, discovery Order [DE 429].

2.      Unisource's investigation and development of various facts and circumstances relating to Defendants requests and interrogatories are ongoing. Because Unisource did not raise any objections, these responses are made without prejudice to, and are not a waiver of, right to rely on other facts or documents upon further discovery.

1

3.      By making the accompanying responses to Defendants' requests for documents and interrogatories, Unisource does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.

4.      Unisource will produce responsive documents only to the extent that such documents are in its possession, custody, or control, as set forth in the Federal Rules of Civil Procedure. Unisource's possession, custody, or control does not include any constructive possession that may be conferred by Defendants right or power to compel the production of documents or information from third parties.

5.      A response to a document request indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Unisource performed any of the acts described in the document request or definitions and/or instructions applicable to the document request, or that Unisource's acquiesces in the characterization of the conduct or activities contained in the document request, or definitions and/or instructions applicable to the document request.

6.      Unisource expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

7.      Unisource will make the produced documents available for inspection via electronic transmission.

## RESPONSES TO INTERROGATORIES

Interrogatory No. 7:

2

Identify all documents reflecting communications (including, but not limited to, correspondence, emails, facsimiles, cancelled checks, wire transfer receipts, invoices, and texts) relating to the November 21, 2022 Loan Agreement (Loan Agreement). As part of your answer, state the date, content, author(s), and recipient(s) of each such document and/or communication.

Revised Response:

Although Unisource is not objecting to this request, Defendants request for "….all documents reflecting communications (including, but not limited to, correspondence, emails, facsimiles, cancelled checks, wire transfer receipts, invoices, and texts) relating to the November 21, 2022 Loan Agreement …" is *exceptionally broad* for an interrogatory because the original loan agreement and its revisions – that have been reflected yearly on Unisource's federal tax returns and thus fully disclosed to Defendants at all times – has been in existence for 16 years.

As for the " …. cancelled checks, wire transfer receipts …" relating to the November 21, 2022 Loan Agreement, pursuant to Rule 33(d) Unisource is providing Defendants a business ledger that is responsive to this interrogatory. *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir.1983). In *Rainbow Pioneer*, an interrogatory asked about certain funds a party was alleged to have diverted to itself. The party responded that the answers could be found in partnership books of accounts, banking accounts, records, computer printouts, ledgers and other documents . . . ." *Id.* The Ninth Circuit held that the responding party must specify precisely where in the records the requested information could be found.

In the ledger, and in compliance with *Rainbow Pioneer,* the specific transactions and records showing "cancelled checks, wire transfer receipts" from January 1, 2020 to present (a more expansive disclosure) are the following:

**Bill Pay: IRS Payments / EFTPS**
03/07/2022 2028 IRS Payment $7,181.56

03/07/2022 2029 IRS Payment $19,447.21

03/07/2022 2030 IRS Payment $4,014.50

03/07/2022 2031 IRS Payment $60.68

03/07/2022 2032 IRS Payment $22,798.69

03/07/2022 2033 IRS Payment $19,927.96

03/07/2022 2034 IRS Payment $7,861.26

03/03/2022 2035 IRS Payment $1,812.00

**Bill Pay: LEGAL - Sanchelima & Associates**

11/19/22 Litigation Legal Invoice $132,500.00

**INCOMING WIRE DEPOSITS FROM THE SUBPOENA COMPANY TO UNISOURCE DISCOVERY: Citibank 1409, 1412**

03/20/20 $1,200

09/03/20 $1,250

12/14/21 $700

03/11/22 $9,500

03/14/22 $3,000

04/08/22 $900

05/06/22 $2,000

05/27/22 $1,550

07/15/22 $ 800

07/27/22 $1,000

08/18/22 $970

08/24/22 $500

06/14/23 $2,500

**LOAN PAYMENTS from UNISOURCE DISCOVERY TO THE SUBPOENA COMPANY:**

**Bluevine Bank**

03/01/24 $1,500

02/29/24 $5,000

01/25/24 $4,000

01/08/24 $9,500

12/07/23 $9,250

12/12/23 $7,500

12/21/23 $4,500

12/29/23 $9,500

10/02/23 $3,700

10/25/23 $850

09/13/23 $12,500

09/27/23 $750

07/19/23 $500

07/20/23 $350

07/28/23 $3,000

**Citibank**

01/03/20 $550

01/23/20 $3,500

01/24/20 $250

03/11/20 $350

03/11/20 $800

03/13/20 $300

03/18/20 $400

07/13/21 $650

07/15/21 $650

07/09/21 $500

07/19/21 $550

07/19/21 $950

08/27/21 $450

10/06/21 $650

10/22/21 $470

10/26/21 $100

10/26/21 $100

02/25/22 $400

02/22/22 $5,000

03/03/22 $5,000

05/18/22 $7,500

05/16/22 $3,000

06/17/22 $12,500

09/06/22 $1,500

09/14/22 $3,000

09/16/22 $2,000

09/19/22 $1,850

09/19/22 $3,500

09/20/22 $1,000

09/28/22 $4,000

10/27/22 $1,500

10/27/22 $3,500

11/01/22 $2,500

11/02/22 $4,000

11/03/22 $3,000

11/04/22 $2,000

12/06/22 $2,000

12/08/22 $4,000

12/12/22 $3,000

12/28/22 $3,250

12/29/22 $3,500

01/11/23 $4,500

02/07/23 $3,000

02/14/23 $1,500

02/15/23 $2,000

04/12/23 $4,000

04/18/23 $3,000

04/19/23 $1,500

04/19/23 $750

04/24/23 $1,500

04/26/23 $3,000

05/01/23 $500

05/03/23 $2,000

05/31/23 $7,500

05/12/23 $1,150

06/12/23 $4,750

06/15/23 $3,000

06/02/23 $1,000

06/12/23 $589.27

06/12/23 $3,500

06/20/23 $750

07/06/23 $800

07/10/23 $400

As for "correspondence, emails, facsimiles", and after a diligence search, Unisource does not have these documents in their possession, custody, or control to review. Therefore, Unisource cannot review these documents and provide a written description for each "correspondence, emails, facsimiles" that Defendants are requesting. *Solyom v. World Wide Child Care Corp.*, No. 14-80241-CIV, 2015 WL 1886274, at *3 (S.D. Fla. Apr. 16, 2015) ("The Court cannot compel [d]efendants to give better answers to interrogatories to which they have sworn (after conducting an expanded search) that they do not know the answer."); *Waite v. All Acquisition Corp.*, No. 15-CV-62359, 2016 WL 4433719, at *2 (S.D. Fla. May 3, 2016) (ordering that if the responding party does "not know the answers to all or part of an interrogatory, they must specifically state so")

However, if there are specific "correspondence, emails, facsimiles" that Defendants want a description thereof, Defendants should direct same to Unisource and Unisource will make an ongoing effort to locate the specific "correspondence, emails, facsimiles" and provide the requested description if available.

Interrogatory No. 8:

Identify all documents reflecting the money transfer by the Subpoena, Summons, & Affidavit Company to you made in accordance with or as reflected in the Loan Agreement (Exhibit "1" hereto).

Revised Response:

Because this request for interrogatory appears to be duplicative of Interrogatory no. 7, above (as it reference payment to the same Loan Agreement) Unisource incorporates the revised response for Interrogatory no. 7 into this revised response.

Interrogatory No. 9:

Identify all documents that demonstrate how you used the money you received from the Loan Agreement (Exhibit 1 hereto).

Revised Response:

As Unisource's bank statements [that were already produced] reflects the funds from the loan were used to pay the following operating expenses from time-to-time:

1. legal expenses

2. accounting fees

3. custodial fees

4. employee payroll and private contractor payments

5. monthly office rent

6.  auto tolls

7.  federal taxes and state taxes

8.  office moving expenses

9.  office computers

10. misc. office supplies (paper, folders, paperclips, pens, cleaning supplies and similar)

11. office copy machine expenses

12. office internet expense(s)

13. office phone system expense

Interrogatory No. 10:

Identify all documents that show any payments you have made in accordance with the Loan Agreement (Exhibit 1 hereto).

Revised Response:

The specific payments from Unisource to The Subpoena Company "in accordance with the Loan Agreement" are as follows:

Bluevine Bank Statements
Transactions:
03/01/24 $1,500
02/29/24 $5,000
01/25/24 $4,000
01/08/24 $9,500
12/07/23 $9,250
12/12/23 $7,500
12/21/23 $4,500
12/29/23 $9,500
10/02/23 $3,700

10/25/23 $850

09/13/23 $12,500

09/27/23 $750

07/19/23 $500

07/20/23 $350

07/28/23 $3,000

Citibank Statements

Transactions:

01/03/20 $550

01/23/20 $3,500

01/24/20 $250

03/11/20 $350

03/11/20 $800

03/13/20 $300

03/18/20 $400

07/13/21 $650

07/15/21 $650

07/09/21 $500

07/19/21 $550

07/19/21 $950

08/27/21 $450

10/06/21 $650

10/22/21 $470

10/26/21 $100

10/26/21 $100

02/25/22 $400

02/22/22 $5,000

03/03/22 $5,000

05/18/22 $7,500

05/16/22 $3,000

06/17/22 $12,500

09/06/22 $1,500

09/14/22 $3,000

09/16/22 $2,000

09/19/22 $1,850

09/19/22 $3,500

09/20/22 $1,000

09/28/22 $4,000

10/27/22 $1,500

10/27/22 $3,500

11/01/22 $2,500

11/02/22 $4,000

11/03/22 $3,000

11/04/22 $2,000

12/06/22 $2,000

12/08/22 $4,000

12/12/22 $3,000

12/28/22 $3,250

12/29/22 $3,500

01/11/23 $4,500

02/07/23 $3,000

02/14/23 $1,500

02/15/23 $2,000

04/12/23 $4,000

04/18/23 $3,000

04/19/23 $1,500

04/19/23 $750

04/24/23 $1,500

04/26/23 $3,000

05/01/23 $500

05/03/23 $2,000

05/31/23 $7,500

05/12/23 $1,150

06/12/23 $4,750

06/15/23 $3,000

06/02/23 $1,000

06/12/23 $589.27

06/12/23 $3,500

06/20/23 $750

07/06/23 $800

07/10/23 $400

## RESPONSES TO DOCUMENT REQUESTS

Request No.7:

All communications with Noel Mijares, The Subpoena, Summons, & Affidavit Company ("the Subpoena Company"), and/or Unisource Discovery Inc relating to any loan agreement(s) made between the Subpoena Company and Unisource Discovery, Inc.

Revised Response:

Although this is an *exceptionally broad* document request Unisource will not object and makes its best effort to produce. The written communications -- which are emails -- would have occurred since year 2007.

**First, Unisource has no responsive documents in its custody and/or control because Steven Cerasale, 65% owner of Unisource, and the person that controls Unisource's corporate emails and websites, without Board approval, disconnected 22 of Unisource's corporate email accounts and likely deleted all communications. Therefore, because Unisource cannot gain access to its corporate email accounts in light of Mr. Cerasale preventing access, Unisource does not have these emails in its possession, custody or control**

12

**and has no method to produce the requested emails.** *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Benjamin v. Home Depot, U.S.A., Inc.*, No. 09-82381-CIV, 2010 WL 11602739, at *3 (S.D. Fla. Aug. 13, 2010) (requiring plaintiff "to produce the documents responsive to these requests, or provide [d]efendant with a supplemental response" that describes "the steps taken by [p]laintiffs to locate such documents")

Also, as a small closely held company it is not Unisource's business practice to indefinitely store internal business communications and/or store communications by subject matter. And Unisource does not store internal email (or text) communications between officers and employees in a way that Unisource can easily identify the subject matter of each email or text in a keyword search of 1000s of possible emails/texts throughout the last 16 years.

Nonetheless, since Defendants' request for production of documents was served upon Unisource, Unisource has otherwise made a number of diligent searches for the requested communications in other possible locations (for example, physical files) and found it could not locate the requested communications. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 5299847, at *4 (S.D. Fla. Nov. 15, 2021)("Rule 26(g) does not require a comprehensive search of all possible locations where responsive evidence may be found. Nor does it require a perfect or even optimal search. It requires a 'reasonable' inquiry.")

Request No. 8:

All meeting minutes from any meeting(s) relating to any loan agreement(s) made between the Subpoena Company and Unisource Discovery, Inc. This may include, but is not limited to, negotiations or shareholder meetings relating to any loan agreement made between the Subpoena Company and Unisource Discovery, Inc.

13

Revised Response:

First, Defendant/judgement creditor Steven Cerasale, who is also the majority owner (65%) of Plaintiff/judgment debtor Unisource, knows or should know that Unisource never took minutes of any board meeting(s) since Unisource's incorporation in 2006. That is, Unisource never took minutes because it is a closely held company with only four (3) board members that had worked intimately together and never applied typical board rules -- such as properly posting an agenda, using Roberts rules, taking minutes of each meeting, and reading and approving minutes of the last meeting, etc.

Also, after a diligent search of Unisource's corporate records it appears that Defendant Steven Cerasale (and/or any other board member) did not make the effort to have minutes taken at any board meeting, and thereafter, did not provide the minutes to Unisource to be read and approved at the following board meetings.

Second, because board member Mr. Cerasale resides in California, since year 2015 all board meetings occurred via telephonic conference calls that were highly informal – again, rarely has there been a properly posted agenda, Roberts rules were never applied, and minutes were never taken and approved by the board, etc.

Given the forgoing, Defendant Steven Cerasale knows or should know that minutes were never taken at all Unisource's board meetings, and therefore, the requested minutes are not in Unisource's custody or control because they do not exist. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (defining "control" within the meaning of Fed. R. Civ. P. 34(b) as "not only as possession, but as the legal right to obtain the documents requested upon demand").

14

However, the loan agreement was discussed and approved by the board of directors and has been reflected on Unisource's annual tax returns since year 2007 and bank statements that were previously produced.

Request No. 9:

All documents that you contend support the following statement set forth in the Loan Agreement dated November 21, 2022 (Exhibit "1" hereto): "The Lender has provided a loan of $662,389.64 USD to the Borrower."

Revised Response:

Although Unisource is not objecting and will attempt to produce, this request is vague and exceptionally broad because no production dates are provided -- given the original loan and its amendments are 16 years old the Defendants are requesting 16 years of documents to produce.

The executed loan agreement *itself* shows that the "… Lender has provided a loan of $662,389.64 USD to the Borrower." Otherwise, requesting "All documents that you contend support the following statement … [that] The Lender has provided a loan …" is exceptionally vague because there was no loan approval letter provided to Unisource and the sole documents that shows Unisource was "provided a loan" is indeed the loan agreement itself and payments in-connection with the loan that can be found in the produced corporate bank statements and corporate IRS tax return filings. *Martin v. Zale Delaware, Inc.*, No. 8:08-cv-47, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008) ("Objections stating that a request is "vague," "overly broad," or "unduly burdensome" are meaningless standing alone").

Additionally, the lack of documents in existence to satisfy Defendants request is also a by-product of the shareholders informal governance of Unisource.

15

However, despite the vague and broad nature of Defendants' request Unisource has produced Unisource's corporate Tax Returns and corporate banks statements that shows "The Lender has provided a loan of $662,389.64 USD to the Borrower" to the extent that Defendants is requesting documents from January 1, 2020 to present.

Request No. 10:

All documents reflecting that Unisource Discovery Inc informed its shareholders that Unisource Discovery Inc intended to sign the Loan Agreement (Exhibit 1 hereto).

Revised Response:

The loan was agreed-to by all board members (who are also shareholders) at the relevant board meetings and likewise the loan agreement was reflected on Unisource's yearly corporate IRS tax returns for the last 16 years.

In fact, each board member and shareholder, including Steven Cerasale, was provided Unisource's corporate tax returns for their own personal tax filings that reflects the "signed" loan agreement. Therefore, to the extent that Unisource's tax returns are not on extension, Unisource has provided all annual corporate tax returns that fully discloses the loan and therefore discloses it was signed and not disputed by any shareholder at any time.

Lastly, as mentioned, Unisource never took minutes and never applied customary board rules during its board meetings -- such as properly posting an agenda, applying Roberts rules, taking minutes of each meeting, and reading and approving minutes of the last meeting, etc. Therefore, Unisource cannot produce minutes of each meeting that would show the proper parties "informed its shareholders that Unisource Discovery Inc intended to sign the Loan Agreement ..." because the minutes do not exist.

Request No. 12:

16

All documents reflecting that Unisource Discovery Inc informed its shareholders that Unisource Discovery Inc intended to encumber and/or place a security interest on the property set forth in the UCC-1 Financing Statement (Exhibit "2" hereto).

Revised Response:

Defendants request is clearly tied into request no. 10, above, because the UCC-1 financing statement merely provides the lender a lien against Unisource's personal property and equipment as collateral for the loan agreement. Therefore, Unisource incorporates the same request for request no. 10 into this response.

Request No. 13:

All meeting minutes from any meeting(s) wherein the UCC-1 Financing Statement (Exhibit 2 hereto) was discussed or was intended to be discussed

Revised Response:

Similar to Unisource's revised response for Request no. 8, Defendant Steven Cerasale, who is the majority 65% owner of Plaintiff/judgment debtor Unisource, knows that Unisource never took minutes of any board meeting(s) since Unisource's incorporation. Given the informal nature in which board members (who are also the shareholders) worked together in this small company, they never applied the customary board rules -- such as properly posting an agenda, applying Roberts rules, taking minutes of each meeting, and reading and approving minutes of the last meeting, etc.

Therefore, Unisource cannot produce documents that are not in its custody and control because the requested minutes do not exist.

Request No. 14:

17

All documents reflecting $662,389.64 being provided to Unisource Discovery Inc. by The Subpoena Company (including, but not limited to, bank account statements, wire transfer confirmations, canceled checks, receipts, etc.).

Revised Response:

Please note: This response has been supplemented to comply with the Court's July 1, 2024, Order [DE 429] when stating, *inter alia*, "Plaintiff shall produce any documents from which Plaintiff used to derive the data from the produced accounting ledger for the relevant time period of January 1, 2022 to the present. In amending its responses, if there are no responsive documents to a request, Plaintiff shall so specifically state in a verified response." In this revised response, Unisource has explained its steps taken to investigate the location of the request documents and provide verification.

First, Defendants' Request is substantially similar to Request no. 9, above, that seeks "All documents that you contend support the following statement set forth in the Loan Agreement dated November 21, 2022 (Exhibit "1" hereto): "The Lender has provided a loan of $662,389.64 USD to the Borrower."

Second, Unisource incorporates into this response its revised response to Request no. 8.

Lastly, Unisource has [again] produced all relevant IRS payments, legal payments, wire deposits, and bank statements that shows the funds that were transferred subject to the loan agreement -- whereas the specific loan transactions are also detailed in Unisource's revised response to Interrogatory No. 7. Therefore, the ledger referenced in Unisource's answer to interrogatory no. 7 is incorporated into this response.

Request No. 15:

18

All documents reflecting what Unisource Discovery Inc did with the $662,389.64 ostensibly loaned by The Subpoena Company.

Revised Response:

Please note: This response has been supplemented to comply with the Court's July 1, 2024, Order [DE 429] when stating, *inter alia,* "Plaintiff shall produce any documents from which Plaintiff used to derive the data from the produced accounting ledger for the relevant time period of January 1, 2022 to the present. In amending its responses, if there are no responsive documents to a request, Plaintiff shall so specifically state in a verified response." In this revised response, Unisource has explained the steps taken to investigate the location of the request documents and provide verification.

The ledger referenced in Unisource's answer to interrogatory no. 7 is incorporated into this response. Unisource has already produced the documents reflected in the referenced ledger on multiple occasions but will produce again if necessary.

Also, because the funds derived from the loan were used for Unisource's operating expenses (for example, IRS, legal, rental, payroll, supplies, etc.) Unisource's banks statements from January 1, 2022, reflects what "Unisource Discovery Inc did with the $662,389.64 …". Unisource has produced the relevant bank statement and will produce again if necessary. *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984). ("[e]ven if a party has control of documents, the court may limit the extent of discovery through document production if the "discovery sought is unreasonably cumulative or duplicative ….").

Request No. 18:

Any documents reflecting any agreement to transfer or divert Unisource Discovery Inc.'s funds, revenues, costs, expenses, and/or accounts receivable to any person or entity.

Revised Response:

Because all of Unisource's "funds, revenues, costs, expenses, and/or accounts receivable" were always deposited into Unisource's bank accounts and reflected on these corporate bank statements, Unisource will again produce a duplicative copy of the bank statements if necessary. *Id.*

Otherwise, there are [and were] no agreement(s) in existence that would show an "agreement to transfer or divert revenues or funds to any person or entity."

Request No. 19:

For the period of January 1, 2022 to the present, the documents (including, but not limited to invoices, emails, and other correspondence) reflecting the amounts charged or requested for any services or goods provided by Unisource Discovery Inc.

Revised Response:

Please note: This response has been supplemented to comply with the Court's July 1, 2024, Order [DE 429] when stating, *inter alia*, "Plaintiff shall produce any documents from which Plaintiff used to derive the data from the produced accounting ledger for the relevant time period of January 1, 2022 to the present. In amending its responses, if there are no responsive documents to a request, Plaintiff shall so specifically state in a verified response." In these revised responses, Unisource has explained the steps taken to investigate the location of the request documents and provide verification.

**Emails: Unisource has no responsive documents in its custody and/or control because Steven Cerasale, owner of Unisource, and person that controls Unisource's corporate emails and websites, (without Board approval), disconnected all of Unisource Discovery corporate email accounts, a total of up to 22 corporate email accounts of Unisource's were unilaterally**

**disconnected by Steven Cerasale, and likely deleted all communications. Therefore, because Unisource cannot gain access to its corporate email accounts in light of Mr. Steven Cerasale preventing access, Unisource does not have possession, custody or control and has no method to produce the requested emails.** *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *see also Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470–71 (S.D. Fla. 2011) (allowing discovery based on a "practical ability to obtain" responsive documents)

**Invoices: In January 2024 Mr. Steven Cerasale, through his business partner Alfred Lutter, and (without Board approval), disconnected both Unisource's client and internal database, software and all supporting folders that contained the requested correspondence. Because Unisource cannot gain access to the database through no fault of its own – and because of Steven Cerasale - it does not have these requested invoices in its custody, possession and/or control.**

In addition, The Subpoena company directly paid several of Unisource's vendors from the loan agreement – akin to a credit card or credit line. Therefore, Unisource has also produced these documents, receipts or similar that The Subpoena Company paid directly to Unisource's vendors from the loan agreement.

Request No. 20:

All documents reflecting that Rudina Daka notarized the signatures on the Loan Agreement (Exhibit 1 hereto) on or around November 21, 2022 and not on a later date (including, but not limited to, the original scan of the Loan Agreement with all metadata preserved).

Revised Response:

Unisource has produced the relevant page(s) from Ms. Daka's notary journal that provides

a record of the notarized signatures on the loan agreement.

<u>**REVISED VERFICATION**</u>

<u>**UNISOURCE DISCOVERY INC.  INTERROGATORY RESPONSES**</u>
<u>**AND**</u>
<u>**REQUEST FOR PRODUCTION OF DOCUMENTS**</u>

STATE OF __CT__

COUNTY OF __Hartford__

} ss.Wethersfield
}
}

 **BEFORE ME**, this day personally appeared Noel Mijares, as corporate representative of Unisource Discovery Inc., who, after being duly sworn, deposes and says that the answers to the Judgement Creditor's Interrogatories heretofore propounded are true and correct to the best of Unisource Discovery Inc. belief and knowledge.

 SWORN TO and SUBSCRIBED before me this 5th day of July 2024.

_____
Signature of Noel Mijares

(Print, Type or Stamp Commissioned Name of Notary Public)

My commission expires

Personally Known _____ OR Produced Identification

Type of Identification Produced: Florida Drivers Lic.

LYNN HOULIHAN
Notary Public, Connecticut
My Commission Expires March **31, 2025**

_____
Signature of Notary Public

22

**CERTIFICATE OF SERVICE**

1 HEREBY CERTIFY that on this 6th day of July 2024 a copy was sent to all Parties listed in the Service List and to Assistant State Attorney's Office.

**LAW OFFICES OF DIEGO DAVID VALDES, P.A.**
Attorney for Plaintiff
2525 SW 27th Avenue, Suite #100A
Miami, Florida 33131
Telephone: (305) 992-3368
Facsimile: (786) 360-1098
Primary Email: legal@ddvlawgroup.com

By: */s/ Diego David Valdes*
DIEGO DAVID VALDES, ESQUIRE
FLORIDA BAR NO.: 0251010
Attorney for: Unisource Discovery, Inc.

23